# EXHIBIT I

```
 1  NEW YORK STATE

 2  COURT OF CLAIMS
                                          X CLAIM NO.: 132554
    _____
 3  KAMIAR ALAEI,
          Claimant
 4  VS

 5  STATE OF NEW YORK,
          Defendant
 6  _____X

    DATE:          June 6, 2022 at 10:50 a.m.
 7                 Trial - Day 1

 8  LOCATION:      Capitol Station, Courtroom 1
                   Albany, New York 12224
 9

10  BEFORE:        HONORABLE FRANK P. MILANO

11  APPEARANCES:   JOSEPH F. CASTIGLIONE, ESQ.
                   JESSE SOMMER, ESQ.
12                 YOUNG/SOMMER, L.L.C.
                        - For the Claimant
13
                   ANTHONY ROTONDI, A.A.G.
14                 AMANDA MALESZWESKI (Counsel SUNY Albany)
                   OFFICE OF THE ATTORNEY GENERAL
15                      - For the Defendant

16

17

18

19                                  OFFICIAL COURT COPY

20

21  DIGITALLY RECORDED PROCEEDING
    TRANSCRIBED BY: Hannah Allen
22  ASSOCIATED REPORTERS INT'L., INC.
    10 River Drive
23  Massena, NY 13662

24

25
```

```
 1              W I T N E S S E S

 2   FOR THE CLAIMANT:                          Page:
     DR. KAMIAR ALAEI:
 3   DX by Mr. Castiglione                      11
     CX by Mr. Rotondi                          124
 4   RD by Mr. Castiglione                      146

 5   DR. KEVIN WILLIAMS:
     DX by Mr. Castiglione                      154
 6   CX by Mr. Rotondi                          183
     RD by Mr. Castiglione                      185

 7

 8

 9            E X H I B I T   L I S T

10   COURT EXHIBITS

11   One - CONGRESSIONAL RECORD 6/4/2015-2 PAGES  27

12   CLAIMANT EXHIBITS

13   One - SUNYA Appt Letter for Alaei dated     7
            04/16/2014 & 12/09/2014-2 PAGES
14   Two - Reappointment letter from SUNYA dated 7
            12/04/2017 for Dr. Alaei, with form
15   Three - from Kevin Williams to Kamiar Alaei 7
            05/31/2017
16   Four - from SUNY chancellor to Alaei        7
            02/10/2017
17   Five - Agreement b/t the United University  7
            Professions and the SONY 07/02/2011-07/01/2016
18   Six - SUNY Policies of the Board of Trustees 7
            dated April 2017
19   Seven - Certified documents from NYSUT in   7
            response to subpoena w/ cover letter dated 04/19/2022
20   Eight - from SUNY to Alaei regarding        7
            Alternate Assignment 02/08/2018
21   Nine - from Selchick to SUNYA personnel     7
            02/08/2018
22   Ten - Chain of emails between SUNYA         7
            personnel 02/08/2018
23   Eleven - EMAIL 2/8/18                       7
     Twelve - EMAIL 2-14-18                      7
24   Thirteen - EMAIL 2-15-18                    7
     Fourteen - EMAIL 3-4-18                     7
25   Fifteen - EMAIL - 2/9/18                    7
```

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1   Sixteen - EMAIL 7/2/19                          7
     Seventeen - EMAIL 2/22/18                       7
 2   Eighteen - EMAIL 2/9/18                         7
     Nineteen - EMAIL 2/14/18                        7
 3   Twenty - EMAIL 2/22/18                          7
     Twenty-one - EMAIL 2/13/18                      7
 4   Twenty-two - EMAIL 2/8/18                       7
     Twenty-three - EMAIL 2/27/18                    7
 5   Twenty-four - LETTER 2/14/18                    7
     Twenty-five - LETTER 2/16/18                    7
 6   Twenty-six - LETTER 2/28/18                     7
     Twenty-seven - EMAIL 3/7/18                     7
 7   Twenty-eight - LETTER 3/20/18                   7
     Twenty-nine - EMAIL 3/26/18                     7
 8   Thirty - ER 11/25/20                            7
     Thirty-one - NOTES 4/31                         7
 9   Thirty-two - LETTER 4/27/18                     7
     Thirty-three - EMAIL 4/28/18                    7
10   Thirty-four - EMAIL 4/30/18                     7
     Thirty-five - LETTER 4/30/18                    7
11   Thirty-six - EMAIL 5/14/18                      7
     Thirty-seven - LETTER 5/22/18                   7
12   Thirty-eight - LETTER 5/21/18                   7
     Thirty-nine - email 7/6/18                      7
13   Forty - EMAIL 7/10/18                           7
     Forty-one - EMAIL 7/9/18                        7
14   Forty-two - MEMO 8/9/18                         7
     Forty-three - EMAIL 2/23/21                     7
15   Forty-four - LETTER 8/10/18                     7
     Forty-five - NOTICE OF CLAIM 1/23/19            7
16   Forty-six - LETTER DEAR UNIVERSITY OF ALBANY    7
              OFFICIALS
17   Forty-seven - LETTERS                           7
     Forty-eight - LETTER 4/7/16                     7
18   Forty-nine - LETTER 8/13/18                     7
     Fifty - LETTER 8/21/18                          7
19   Fifty-one - EMAIL 2/9/18                        7
     Fifty-two - LETTER 7/27/18                      7
20   Fifty-three - EMAIL 3/8/18                      7
     Fifty-four - APPOINTMENT RENEWAL 5/1/18         7
21   Fifty-five - EMAIL 3/1/18                       7
     Fifty-six - EMAIL 2/14/18                       7
22   Fifty-seven - EMAIL 2/14/18                     7
     Fifty-eight - EMAIL 2/14/18                     7
23   Fifty-nine - EMAIL 2/15/18                      7
     Sixty - LETTER 6/7/18                           7
24   Sixty-one - UNITED UNIVERSITY PROFESSIONS       7
     Sixty-two - LETTER 5/8/14                       36
25   Sixty-three - APPOINTMENT REQUEST 4/29/14       149
```

```
 1  Sixty-four - EMAIL 2/15/18
    Sixty-five - EMAIL 2/8/18
 2  Sixty-six - EMAIL 3/9/18
    Sixty-seven - PACKET- STIPULATION OF
 3        SETTLEMENT BETWEEN STATE UNIVERSITY OF ALBANY AND ARASH
          ALAEI 9/18/17
 4  Sixty-eight - DEF THUMB DRIVE

 5  STATE EXHIBITS

 6  A - MEMO 5/23/18 (3) PAGES                    6
    B - LETTER 4/22/2014 (2) PAGES                6
 7  C - LETTER 5/20/14 (1) PAGE                   6
    D - LETTER 2/5/15 (1) PAGE                    6
 8  E - LETTER 10/20/15 - 1 PAGE                  6
    F - LETTER 10/20/15 - 1 PAGE                  6
 9  G - 4/6/17 1 PAGE                             6
    H - LETTER 12/4/17 1 PAGE                     6
10  I - LETTER 10/10/18 1 PAGE                    6
    J - CBA BETWEEN STATE OF NY AND UNITED        6
11        UNIVERSITY PROFESSIONS 7/2/16-7/1/22 - 140 pages
    K - TITLE D. TERM APPOINTMENT PAGES 33-43     6
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Alaei v SONY – 6/6/2022

1                    (The trial commenced at 10:49 a.m.)

2                    THE COURT:  Good morning, everyone.  It is

3      Monday, June 6, 2022.  I'm Judge Frank P. Milano of the

4      New York State Court of Claims sitting in Albany, New

5      York.  We are here in the matter of Dr. Kamiar Alaei

6      versus State University of New York and the State

7      University of New York at Albany and the State of New

8      York.

9                    It's claim number one three two five five four.

10     This claim was filed on January 23rd, 2019.  Could we have

11     appearances made first for the Claimant?

12                   MR. CASTIGLIONE:  Joseph Castiglione, Your

13     Honor, with Young Sommer, also Jessie Sommer with Young

14     Sommer for the Claimant.

15                   THE COURT:  Welcome counselors and --

16                   MR. CASTIGLIONE:  Thank you, Your Honor.

17                   THE COURT:  -- is this your client, Claimant?

18                   MR. CASTIGLIONE:  Yes, this is my client Dr.

19     Kamiar Alaei.

20                   THE COURT:  Doctor, welcome.  The claimant, Dr.

21     Alaei, is present in the Courtroom.  And for the

22     Defendant, please?

23                   MR. ROTONDI:  Anthony Rotondi, Your Honor.

24                   THE COURT:  Okay.  And do you care to make known

25     your associate?

Alaei v SONY – 6/6/2022

1          MR. ROTONDI:  Amanda Maleszweski, she is SUNY

2     counsel.

3          THE COURT:  All right.

4          MR. ROTONDI:  SUNY Albany counsel.

5          THE COURT:  All right.  Amanda, could you please

6     spell your last name for me?

7          MS. MALESZWESKI:  M-A-L-E-S- like Sam, Z like

8     Zebra, -W-E-S like Sam, K-I.

9          THE COURT:  And can I call you Ms. Amanda,

10    please?

11         MS. MALESZWESKI:  Yes.

12         THE COURT:  Thank you.  Appreciate that.  All

13    right.  Let's go over a few logistical matters before we

14    either entertain opening statements or calling our first

15    witness.  We are operating under uniform court protocols

16    consistent with Coronavirus protocols.

17         All people in the Courtroom are socially

18    distanced and are wearing masks.  This is an open

19    courtroom open to the public, there aren't so many people

20    here that would make that a problem.  So -- but it is an

21    open courtroom, anyone who's not affiliated with the trial

22    or a witness to be can be in the Courtroom at any given

23    time.

24         We have a number of exhibits that are marked and

25    are being marked.  We have Defendant's Exhibits A through

Alaei v SONY - 6/6/2022                    7

 1    K.  Mr. Castiglione, would there be any objection to

 2    stipulating A through K into evidence, sir?

 3              MR. CASTIGLIONE:  Defendant's Exhibit A through

 4    K, no -- no --

 5              THE COURT:  Okay.

 6              MR. CASTIGLIONE:  -- Your Honor.

 7              THE COURT:  No objection?

 8              MR. CASTIGLIONE:  No objection.  So Defendant's

 9    Exhibits A through K are admitted without objection.  And

10    I would do the same for the Claimant's exhibits, and I

11    believe there are sixty-one in all currently, but the list

12    is still being compiled.

13              Mr. Rotondi, would you be in a position to --

14    you had mentioned prior to the trial in chambers

15    conference that you would be willing to stipulate to

16    perhaps all, but seven or eight of them.  Are you in a

17    position now to stipulate to them, do you know the

18    numbered exhibits by which you would be able to stipulate

19    them into evidence, sir?

20              MR. ROTONDI:  I know the number -- I know the

21    exhibits that I'm objecting to, Your Honor.

22              THE COURT:  Well, why don't you -- are they

23    marked?

24              MR. ROTONDI:  Well, they're marked as far as I

25    know that -- I don't have the sheet --

Alaei v SONY – 6/6/2022

1         THE COURT:  All right.

2         MR. ROTONDI:  -- I have the numbers.

3         THE COURT:  I -- I was advised by our court

4     monitor that the list would be available to the Court

5     sometime later this morning.  So we'll - we'll proceed

6     apace, if you wish to admit a marked exhibit we'll do it

7     one by one until after lunch at which time, Mr.

8     Castiglione, we will do it in a global fashion.

9         I should say that we will endeavor to conduct

10    court each and every day from nine thirty till no later

11    than four forty-five in the afternoon with an hour for

12    lunch, obligatory, and the lunch period would be taken

13    anywhere from noon to one.

14        So it'll either run from twelve to one, twelve

15    fifteen to one fifteen or from one to two, it's just going

16    to be the one hour block will be sometime between the

17    hours of twelve and two.  So that's how we'll proceed.

18    Any questions, Mr. Castiglione, I -- I had asked if you

19    had tried a case in the Court of Claims, you've indicated

20    (unintelligible).

21        Do you need procedures -- non jury, of course,

22    are you -- you don't need to direct all your comments to

23    me.  And when you're questioning the witness, if you ask

24    me to instruct the witness, you can do so.  Any questions

25    before we begin?

```
 1                 MR. CASTIGLIONE:  No, Your Honor.

 2                 THE COURT:  Okay.  Anything from you, Mr.

 3       Rotondi?

 4                 MR. ROTONDI:  No, Your Honor.

 5                 THE COURT:  All right.  Mr. Castiglione, does

 6       the Claimant wish to make an opening statement?

 7                 MR. CASTIGLIONE:  No, Your Honor, we move --

 8       waive the statement and move right to our first witness.

 9                 THE COURT:  Very good.  Doctor, since we're in

10       the Court of Claims and opening statements are not

11       considered evidentiary in any event, and there's no jury,

12       that is a common practice for a Claimant to waive opening,

13       so that having been said, Mr. Castiglione, please call the

14       Claimant's first witness.

15                 MR. CASTIGLIONE:  The Claimant calls Dr. Kamiar

16       Alaei.

17                 THE COURT:  All right.  Before you come forward,

18       Doctor, you and any additional witnesses that come

19       forward, I'm going to ask you to keep your mask on, come

20       to the witness stand which is my immediate left.  Stand to

21       be sworn when you get here, there are clear face shields

22       behind you.

23                 I want you to keep the mask on, put the face

24       shield on and then remove the mask.  But have the face

25       shield in place before you take your mask off, so please
```

Alaei v SONY - 6/6/2022

1    come forward.  Remain standing.  Put that on if you would,

2    sir.  Raise your right hand.

3              THE MONITOR:  Do you solemnly swear the

4    testimony you're about to give is the truth, the whole

5    truth and nothing but the truth so help you God?

6              MR. ALAEI:  Yes.

7              WITNESS; KAMIAR ALAEI; Sworn

8              THE MONITOR:  Be seated.

9              THE WITNESS:  Thank you.

10             THE MONITOR:  State and spell your name for the

11   record?

12             THE WITNESS:  Thank you, Your Honor.  My name is

13   Kamiar Alaei, K-A-M-I-A-R and my last name is Alaei, A-L-

14   A-E-I.

15             THE COURT:  Okay.  Doctor, please keep your

16   voice up.  That does not amplify -- the microphone does

17   not amplify your voice.

18             THE WITNESS:  Sorry.

19             THE COURT:  It merely records it so you need to

20   speak up so I can hear you and the attorneys can hear you.

21             THE WITNESS:  Sure.

22             THE COURT:  Judge, this is what we call the shot

23   clock.  It's a method by which I'm able to keep track of

24   when testimony is provided by time of the day.  Okay.

25   Your witness, Mr. Castiglione.

Alaei v SONY - 6/6/2022

1              THE WITNESS:  Your Honor, may I get water in

2        case it gets dry?

3              THE COURT:  Absolutely.

4              THE WITNESS:  Thank you.

5              THE COURT:  Your witness, Mr. Castiglione.

6              MR. CASTIGLIONE:  Thank you, Your Honor.

7              DIRECT EXAMINATION BY MR. CASTIGLIONE:

8        Q.  Dr. Alaei, you're the Claimant in this matter?

9        A.  Yes.

10       Q.  Okay.  I just want to talk to you generally before we

11  start getting into questions.  You were -- were you employed in

12  February 2018?

13       A.  Where, at UAlbany, yes.

14       Q.  So UAlbany, you mean the State University of New York

15  at Albany?

16       A.  Yes.

17       Q.  Okay.  If I refer to SUNY Albany or University Albany,

18  I'm referring to the State University of New York at Albany.

19  Is that clear?

20       A.  Yes.

21       Q.  Okay.  Can you explain to me what your position was

22  with UAlbany at that time?

23       A.  Sure.  I had different positions, academic positions -

24  -

25              THE COURT:  Louder, please.

**Associated Reporters Int'l., Inc.   518-465-8029**

1          THE WITNESS:  Sorry.  I had it -- because this

2     doesn't let me do.  I had a different position -- is it

3     better?

4          THE COURT:  No, don't worry about the

5     microphone, it will pick you up.  You need to speak louder

6     so I can hear you.

7          THE WITNESS:  Oh, from here, I see, sorry.  Yes,

8     I had a faculty appointment as a associate research

9     professor and lecturer at the Department of Public

10    Administration and Policy at the Rockefeller College.  And

11    also, I served as a director of the Global Institute for

12    Health and Human Rights.

13          BY MR. CASTIGLIONE:  (Cont'g.)

14    Q.  Okay.

15    A.  And also, as associate dean for global and

16 interdisciplinary research at the University at Albany.

17    Q.  Okay.  And so you just referenced the Global Institute

18 of Health and Human Rights.  If I refer to that as G.I.H.H.R.

19 going forward.  That's clear to you?

20    A.  Yes.

21    Q.  Okay.  Or the institute?

22    A.  Sure.

23    Q.  Okay.  Can you explain to me generally, how long have

24 you been employed by University of Albany at that point?

25    A.  So I was employed around April 2014.

Alaei v SONY - 6/6/2022

1       Q.   Okay.

2       A.   So I mean by that time was less than four years.

3       Q.   Okay.  Do you recall something impacting your

4   employment on February 8, 2018?

5       A.   Yes.

6       Q.   Can you explain to me what you recall?

7       A.   Yeah.  All of a sudden, you know, I was -- received a

8   call from the Human Resource that go and, you know, and meet

9   with them.  And then when I went there, they said you are on

10  alternative assignments.

11      Q.   Do they tell you why you were being put on alternative

12  assignment?

13      A.   Not at all.

14      Q.   Did the alternative assignment ever end?

15      A.   After six months, which was the last day that I had a

16  meeting on August 9, that they said the process was completed

17  and nothing was found, and you can go back to work next day

18  nine a.m.

19      Q.   And -- and what happened when you went back to work

20  the next day?

21      A.   So I was on my way to go to work after six months

22  (unintelligible) and I received a call, come to Human Resource.

23  So I -- I was there and they show me a letter and said you are

24  terminated with no reason.

25      Q.   They didn't give you any reason why they were

Alaei v SONY - 6/6/2022

1  terminating you?

2       A.  Not at all.  They said this is a -- this -- this is

3  what it is.

4       Q.  Okay.  And --.

5       A.  Sorry, I didn't want to be emotional.

6       Q.  That's okay.  And -- and based on your experience, you

7  commenced this lawsuit.  Is that fair to say?

8       A.  Yeah.

9            THE COURT:  Hold on a sec, Mr. Castiglione.

10      Let's go off the record just for a moment.

11           MR. CASTIGLIONE:  Sure.

12           THE MONITOR:  Off --

13           (Off the record; 11:00:07 to 11:00:27)

14           THE MONITOR:  On the record.

15           THE COURT:  Go ahead, Mr. Castiglione.

16           BY MR. CASTIGLIONE:  (Cont'g.)

17      Q.  So Dr. Alaei, I want to talk to you about your

18  background history.  Can you explain to me where -- where were

19  you born?

20      A.  Yeah, I was born in Iran.

21      Q.  Okay.

22      A.  Tehran, capital.

23      Q.  And can you explain to me your ethnic background?

24      A.  Yes.  So I am Muslim, Shia, and I am Kurdish from

25  Middle East.  And my faith is Sufi.

Alaei v SONY – 6/6/2022

1    Q.  I'm sorry, can you spell that?

2    A.  S-U-F-I.

3    Q.  Okay.  And where do you currently reside?

4    A.  Now in California.

5    Q.  Okay.  Where in California?

6    A.  In Albany, Southern California.

7    Q.  How long have you lived there?

8    A.  Less than two years.

9    Q.  Okay.  And when did you come to the United States to

10   live here?

11   A.  So I came here in 2005 because I received admission

12   from University of Harvard to come -- to continue my study.

13   Q.  Okay.  Well, let me talk to you about your education

14   background.  Can you explain to me what education background

15   you have?

16   A.  Yes.  So my first, you know, degree was a medical

17   doctorate, I received in Iran.  We have a national exam that

18   over one million go to the same competition.  And the first one

19   thousand get admitted to the medical school and the first one

20   hundred get to the top medical school, which means you have to

21   get ninety-nine point ninety-nine percentiles to get into the

22   top university.

23       And I was very fortunate to be at the medical school at

24   the University at Isfahan Medical University and Shahid

25   Beheshti Medical Universities were the top universities in the

Alaei v SONY - 6/6/2022

16

1  country.

2           THE COURT:  Doctor, did I understand you you

3       just testified you received in Iraq --

4           THE WITNESS:  Iran.

5           THE COURT:  -- medical degree --

6           THE WITNESS:  Yes.

7           THE COURT:  -- a doctor of certain kind of

8       medicine?

9           THE WITNESS:  Yes, medicine.

10          THE COURT:  What kind of medicine?

11          THE WITNESS:  It -- it was the internal

12      medicine.

13          THE COURT:  Internal medicine?

14          THE WITNESS:  Yes.  Then I focused on HIV/AIDS,

15      I got the fellowship on HIV/AIDS later.

16          THE COURT:  So you were certified to practice

17      internal medicine in Iraq?

18          THE WITNESS:  Iran.

19          THE COURT:  Okay.

20          THE WITNESS:  Iran.

21          MR. CASTIGLIONE:  Iran.

22          THE WITNESS:  I-R-A-N.

23          THE COURT:  Iran, I'm sorry.

24          THE WITNESS:  Yeah.

25          BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY – 6/6/2022

1    Q.  When did you get that medical doctorate?

2    A.  When or where?

3    Q.  When?

4    A.  So it was 2000.

5    Q.  Okay.  Do you have any other degrees?

6    A.  Yes, I got an advanced graduate degree in

7 epidemiology, which study outbreaks like COVID, HIV/AIDS from

8 Tehran University, which was the best in the Middle East

9 region.  Then I continued my education to the -- come to the

10 U.S. at Harvard School of Public Health that I got admitted to

11 study global health, which -- how to control pandemics like

12 COVID after it started from China, how it gets globally.

13    You know, engaged with full scholarship, which was I think

14 among very few among my cohort which got full scholarship.  And

15 then after that, I continued my education to get a second

16 doctorate on health policy and  --

17    Q.  I'm sorry, before you -- before you continue, when did

18 you get your graduate degree for international health from

19 Harvard?  What year?

20    A.  Yes.  So I received that one in 2007, before that I

21 received my epidemiology in 2005 from Tehran.

22    Q.  Okay.  Now, you were talking about another doctorate?

23    A.  Yes.

24    Q.  What -- can you explain to me what -- what doctorate

25 that is?

Alaei v SONY – 6/6/2022

1    A.  Yes, it was the second doctorate on health policy and

2  management, how we should design or redesign health policy and

3  system, which is what we are struggling today based on COVID.

4  And that was my second doctorate from SUNY Albany.

5    Q.  And what year did you get that doctorate?

6    A.  I finished that in December 2013.

7    Q.  Okay.  And as to Harvard, did you pay for attending

8  school there?

9    A.  No, I received full scholarship.

10    Q.  Okay.  Do you have any other degrees?

11    A.  Yes, I got a law degree from University of Oxford, New

12  College, which was the second oldest college at the University

13  of Oxford.  I received International Human Rights Law, that was

14  my focus on human rights, how to promote rights from a

15  disadvantaged population with scholarship.

16    And most of my classmates they were lawyers, had a

17  terminal degree in law.  They were a professor of law, there

18  was a supreme judge from Australia, among others, it was very

19  competitive.  I think I was the second in the history of that

20  program as a doctor got admitted.

21    Q.  And while at Oxford, did you undertake any particular

22  efforts besides your studies?

23    A.  Yes, while I was studying, I applied for a grant,

24  federal grant.  I know I received almost one point six million

25  dollars for their grants to train three hundred lawyers about

Alaei v SONY – 6/6/2022

```
 1  global health and human rights.  And I was fortunate to hire

 2  some of my professors at Oxford to join me, including some

 3  professors from Albany Law School here.

 4      Q.  Okay.  You have degrees in public health and policy,

 5  obviously, do you have any professional work experience in

 6  public health and policy?

 7      A.  Yes.

 8      Q.  Can you explain to me some of your experience over

 9  time?

10      A.  Sure, yes.  I was director of HIV/AIDS in Kermanshah

11  Department of Health, which oversees two million population

12  about HIV/AIDS when I was at the age of twenty-six, twenty-

13  seven.  And also, I developed the first HIV program in the

14  Middle East, which was documented by United Nation as a best

15  practice in the world is fifty plus pages is documented online.

16      And then I was part of the team to apply for a global

17  fund, because United Nations Secretary General announced in

18  2001 to fight for HIV/AIDS, we need a global commitment, so

19  that was in 2002.  I work with a team and we applied, and we

20  received fifteen point eight million dollars grant to support

21  disadvantaged population because they had no health insurance,

22  no money.

23      So we wanted to make sure they get the best quality

24  medication with no price.

25      Q.  And -- and where was that program focused?
```

Alaei v SONY – 6/6/2022

1        A.  In Iran -- in Iran.

2        Q.  I'm sorry?

3        A.  Iran, I-R-A-N.

4        Q.  Iran, okay.

5        A.  Yes.

6        Q.  Can you explain to me now the other relevant

7    professional experience you have?

8        A.  Yes, I continue my work.  I serve as a temporary

9    advisor for the United Nations in different capacities.  One of

10   them was Eastern Mediterranean Regional Office in EMRO, they

11   invited me as a, you know, regional expert and a panelist.

12       And over the time, I was invited by the United Nation

13   PAHO, Pan American Health Organization to be a consultant in

14   Pan American region.  And my work was globally recognized, I

15   was so fortunate that in -- at the age of twenty-seven I

16   received one of the highest, you know, national awards from the

17   Vice-President of country for my work on the control addiction

18   in Iran.

19       It -- it was the international day for, you know, control

20   of addiction when I was in -- in twenty-seven.  I think I was

21   the youngest in that history.  And then they invited me over

22   the time I, you know, went to more than thirty countries as a

23   keynote speakers, and they were coming to visit our best

24   practice and they replicated the model.

25       And that was the reason the (unintelligible) foundation,

Alaei v SONY - 6/6/2022

1  they gave me a fellowship because they came and visited our

2  best practice and I came to the United States in 2003 to visit

3  the AIDS Institute in New York State Department of Health,

4  which is one of the largest in the country.

5      I was so fortunate to be here and share my best practice

6  with them and learn from them.

7      Q.  And -- and let me ask you.  Why did you focus your

8  academic and professional endeavors on public health and HIV?

9      A.  That's a really good questions, because I was

10  fortunate to be top medical students in my cohort, and at that

11  time, most of the medical students went to the luxury fields of

12  medicine.  But I did my first study to find what is the main

13  cause of mortality among people living with HIV/AIDS.

14      We thought maybe it's due to immunosuppressant, but

15  surprising the fifty-eight percent they committed suicide due

16  to social isolation, so that was my motivation.  I said, let me

17  help them now and save their life and that was all my

18  motivation.

19      Q.  Okay.

20      A.  That time till today.

21      Q.  Now, did you ever suffer any adverse consequences

22  related to your professional work?

23      A.  Yes.

24      Q.  Can you explain to me --

25              THE COURT:  Can we be a little bit more specific

Alaei v SONY - 6/6/2022

1       on that, Counsel?

2                      MR. CASTIGLIONE:  Sure.

3                      BY MR. CASTIGLIONE:  (Cont'g.)

4       Q.  Have you ever encountered any difficulties or any

5  sanctions by governments?

6       A.  Yes, because I was focusing to promote right off

7  disadvantaged population who have been exposed to HIV/AIDS like

8  LGBT IQ's, ex-prisoners, injecting drug users.  And then when

9  the government of Iran change the new president in Columbia --

10 University of Colombia in 2007, we have no gays.

11      And then in 2008 they came and put me in prison while I

12 was visiting Iran and brought a group of students to do

13 research.

14      Q.  And so -- I'm sorry, you were put in prison in 2008?

15      A.  Yes, it's about political reason.

16      Q.  Were you told why you were put in prison?

17      A.  For -- for six months there was no reason, even my

18 family had no idea for three months.  I was in solitary cell

19 for several months without telling me anything.  And after six

20 months, there was five minute trial and they said, you are

21 communicating with enemy government, which is United States,

22 and that was the reason.

23                      THE COURT:  I'm sorry, after a brief trial, what

24      was the result?

25                      THE WITNESS:  So they -- they put me in -- in

Alaei v SONY – 6/6/2022

```
 1        trial five minutes and said, this is due to communication

 2        with the enemy government, which is United States.

 3        Because at that time, I was studying at Harvard, and

 4        later, I was studying at UAlbany.

 5               So they wanted to --.

 6               BY MR. CASTIGLIONE:  (Cont'g.)

 7        Q.  So after trial -- what happened after at the end of

 8  the trial?

 9        A.  There was a global campaign in eighty-five countries.

10        Q.  No, I'm sorry.  After the trial ended, what happened?

11        A.  They sentenced me to three years.

12               THE COURT:  They -- I'm sorry?

13               THE WITNESS:  They sentenced me to three years.

14               THE COURT:  In --

15               THE WITNESS:  Iran.

16               THE COURT:  -- prison in Iran?

17               THE WITNESS:  Yes.  In Evin, E-V-I-N, which is

18        political prisoners, they put them there with no access to

19        attorney.  I had no access to attorney.

20               BY MR. CASTIGLIONE:  (Cont'g.)

21        Q.  How long were you in prison?

22        A.  I was there two-and-a-half years.

23        Q.  And did there come a point you get out, you were

24  released?

25        A.  Yeah, I -- I finished the term, but before that, they
```

Alaei v SONY - 6/6/2022

1   said if you finish two-thirds of the term, you can be released

2   six months sooner, but the condition of within next five years,

3   we can bring you back to prison without any reason if you

4   continue working on, you know, HIV/AIDS.

5       Q.  And -- and was there any assistance provided to try to

6   help you get out of prison?

7       A.  Yes, there was a huge global campaign that Nobel Prize

8   winners wrote letters.  American Medical Association wrote

9   letters, World Medical Association, which has six million

10  doctors wrote letters.  The -- the President of the European

11  Union wrote a letter, all World Health Assembly, two hundred

12  ministers of health of the world, they wrote letter.

13      There was global campaign, physician for human rights that

14  they received Nobel Peace Prize advocated and campaigned for

15  us.  And every national AIDS conference, they had a huge

16  campaign for us to be released.

17      Q.  And while you were undergoing your prison term in

18  Iran, did you suffer any health issues?

19      A.  Yeah, it was a very difficult, you know, time being in

20  solitary.  And they don't tell you for six months the reason

21  and this is what I saw again at UAlbany.

22      Q.  So at some point -- and I'm, you know, obviously, if

23  you need to take a second.

24      A.  Thank you.

25      Q.  So after you -- I'm sorry.  After you were let out of

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/6/2022

25

1  prison, what did you do?

2      A.  So they said you have to leave the country in three

3  days so I -- I left the country, and then came back to the U.S.

4  --

5      Q.  Did you --

6      A.   -- continue my education -- yeah.

7      Q.  And -- and when you came back to the U.S., what did

8  you do?

9      A.  Yeah, I continue my education at University of Albany

10  --

11      Q.  So you --

12      A.   -- because they did campaign for me, the -- the

13  former president of the university, the dean of Harvard, you

14  know, did a campaign, National Academy of Science, National

15  Academy of Medicine, National Academy of Engineering, the

16  triple A, all -- they did a campaign, yeah.

17      And that was a time that I came back to continue my

18  education and continue my work.

19      Q.  Okay.  Now, have you ever received any awards or -- or

20  acknowledgments related to your work overtime?

21      A.  Yes, I receive awards -- several awards, you know,

22  just some of them, New York Academy of Science for the human

23  rights.  I received awards from Global Health Council, which is

24  the largest health professionals.

25      The Jonathan Mann Award of human rights, because the

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1  Jonathan Mann is the father of the Health and Human Rights.

2  And then I receive Elizabeth Taylor Award, the actress that did

3  three decades campaigns for rights of people living with

4  HIV/AIDS.  And when she died, for her recognition, they had

5  immigrant and I was fortunate to be the first one to this -- to

6  be a recipient of Elizabeth Taylor Award that (unintelligible)

7  flew from California to give the award to me.  And then I

8  received --.

9       Q.  I'm sorry, when -- when did you receive that award?

10      A.  It was 2012, I think twenty-five thousand people came

11  and I was a recipient of the award for International AIDS

12  Conference.  And then I received from the United Nation, PAHO,

13  Pan American Health Organization, the immigrant and other

14  immigrant from the Health and Human Rights leadership.

15      And then I received Ellis -- Ellis Island Medal of Honor,

16  that's seven U.S. presidents receive that and similar Nobel

17  Prize winners and associate judge of Supreme Court was in my

18  cohort that we were -- the recipients of the awards among, you

19  know, like -- the -- the -- the world champion boxer that

20  receive, you know, five gold medal was in my cohort in 2015.

21           MR. CASTIGLIONE:  Your -- Your Honor, at this

22      time, we'd ask that the Court take judicial notice of the

23      congressional record for June 4, 2015, identifying my

24      client as a recipient of the Ellis Island Award, along

25      with other such people as Justice Sandra Day O'Connor, as

```
 1        he just testified.

 2                    THE COURT:  Any response to that, Mr. Rotondi?

 3                    MR. ROTONDI:  No Objection, Your Honor.

 4                    THE COURT:  Okay.  Very well, so noted.

 5                    MR. CASTIGLIONE:  Approach?

 6                    THE COURT:  Yeah.  Are we going to mark that or

 7        not?

 8                    MR. CASTIGLIONE:  Yeah, we're just submitting it

 9        to the Court for judicial notice.

10                    THE COURT:  Okay, thank you.  Well, why don't we

11        mark it Court Exhibit Number One, please?

12                    MR. CASTIGLIONE:  Okay.

13                    THE COURT:  Without objection, Court Exhibit

14        One.  No objection, Mr. Rotondi?

15                    MR. ROTONDI:  No objection, Your Honor.

16                    BY MR. CASTIGLIONE:  (Cont'g.)

17        Q.  As to your Ellis Island Award, were you working with

18   SUNY Albany at that time?

19        A.  Yes, I was working at SUNY Albany and the former

20   president, you know, had a really coverage like I said, make

21   our University and the SUNY system visible globally, because

22   it's very competitive process.

23        And I think I was one of the youngest to -- to be the

24   recipients of that recognition.  And also, I received the

25   University at Albany Citizenship Award, and that was a kind of
```

Alaei v SONY - 6/6/2022

1   a lot of coverage by media from University at Albany.

2       Q.  And do you know -- did SUNY Albany provide any

3   recognition as part of the --

4       A.  Yes.

5       Q.   -- university communications?

6       A.  Yes, on their website they had a magazine, they had a

7   lot of coverage, you know, and the Board of Trustees was happy.

8   The chancellor was happy because I don't think from UAlbany in

9   -- in the past one hundred sixty anybody receive that award.

10      Q.  Okay.  So you were employed at -- you -- you testified

11  earlier at SUNY Albany in 2018, correct?

12      A.  Yes.

13      Q.  Do you recall when you started working for University

14  at Albany?

15      A.  Yes, I started April, I don't know the exact date.

16  But in April 2014 I was employed at University at Albany.

17              MR. CASTIGLIONE:  Your Honor, may I approach and

18      grab an exhibit for the client -- thank you, for the

19      witness.

20              Your Honor, I request to move into evidence

21      what's been marked as Claimant's Exhibit One.

22              THE COURT:  Your microphone, please.

23              MR. CASTIGLIONE:  I'm sorry.

24              THE COURT:  What is Claimant's Exhibit One?

25              MR. CASTIGLIONE:  Claimant's Exhibit One is a

1      letter from University at Albany to Dr. Kamiar Alaei,

2      dated April 16, 2014.

3              THE COURT:  Is it what has been referred to in

4      the pleading as an appointment letter?

5              MR. CASTIGLIONE:  Yes.

6              THE COURT:  All right.  Any objection, Mr.

7      Rotondi?

8              MR. ROTONDI:  No, Your Honor.

9              THE COURT:  Without objection Claimant's Exhibit

10     One is admitted.

11             MR. CASTIGLIONE:  Okay.

12             THE COURT:  Can you see that, Doctor?

13             THE WITNESS:  Yes.

14             MR. CASTIGLIONE:  Okay.

15             BY MR. CASTIGLIONE:  (Cont'g.)

16     Q.  Dr. Alaei, do you recognize this document and I can

17     move it around a little bit so that you can see --.

18     A.  Yes.

19             THE COURT:  Is it one page, Mr. Castiglione?

20             MR. CASTIGLIONE:  It's two pages, Your Honor.

21             THE COURT:  Okay.

22             THE WITNESS:  I see the first page, yes.

23             BY MR. CASTIGLIONE:  (Cont'g.)

24     Q.  Okay.  Let me just flip it over so you can see that.

25     A.  Yes.

1       Q.  What was your primary appointment underneath this

2   appointment letter?

3       A.  Sure.  My primary appointment was Research Associate

4   Professor --.

5               THE COURT:  Research Associate, what?

6               THE WITNESS:  Professor -- Professor --

7       Professor, P-R-O-F-E-S-S-O-R.  Professor, sorry for my

8       accent.

9               THE COURT:  Okay.

10              THE WITNESS:  Research Associate Professor and

11      also lecturer in the Department of Public Administration

12      and Policy at Rockefeller College.

13              BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.  Okay.  Did you have any other appointments under this

15  letter?

16      A.  Yes, I had additional appointments, I -- I continued

17  to serve as a director of Global Institute for Health and Human

18  Rights that we call it G.I.H.H.R.  And also, I had a -- a

19  faculty appointment at School of Criminal Justice, which is one

20  of the top schools of criminal justice in the country.

21      And also, department of health policy, because I had five

22  graduate degrees, each department wanted me to join there, so

23  that was additional in the faculty appointments.

24      Q.  And did you ultimately accept this offer of

25  employment?

Alaei v SONY – 6/6/2022

1    A.  Yes, I did.

2    Q.  And is this your signature on the back page --

3    A.  Yes.

4    Q.   -- at the bottom?

5    A.  Yes.

6    Q.  Before you accepted this appointment, if I can refer

7   you to the third paragraph.  The third paragraph says, in this

8   appointment, you will report to the chair -- excuse me, I'm --

9   I'm referring you to the second paragraph.  I apologize, that

10  one.

11       That paragraph says, your initial appointment will be for

12  three years commencing on May 1, 2014 to coincide with the end

13  date of your current appointment with SUNY Research Foundation.

14  Can you explain to me what they're referring to about the SUNY

15  Research Foundation?

16       A.  Yes.  So before that, I received a grant when I was a

17  student at University at Albany, I received two point five

18  million dollars grants.  And I was hired by Research Foundation

19  to implement the grants.  So that was the referring, you know,

20  I was hired October 2011.

21       Q.  Is the SUNY Research Foundation part of SUNY Albany?

22       A.  No, they are separate entities, is a non-for-profit

23  that focused on grants which are federal or over five hundred

24  thousand dollars.  And they are directly focused on -- this is

25  a systemwide SUNY system.

1      But the office is located at Albany, they said SUNY

2 Research Foundation, I know it's confusing when we call about

3 SUNY but this is completely a different entity.

4      Q.  So the -- the research foundation is for SUNY entire

5 wide, not just UAlbany?

6      A.  Exactly.

7      Q.  Okay.  The second paragraph then says, you will have a

8 twelve-month fulltime obligation.  The lecture budget title is

9 a non-tenure track position in accordance with the policies of

10 the trustees of the State University of New York, to give you

11 the security of at least two years of employment, the

12 appointment will be reviewed annually for possible extension

13 for another year, your starting annual salary will be ninety-

14 two thousand six hundred thirty dollars.

15      Do you have any understanding of what that language is

16 referring to about having the security of at least two years

17 and your appointment being reviewed annually?

18      A.  Yes, that was a special initiative that the governor

19 of the New York State at that time, I think around 2013 they

20 call it Evergreen initiative of 2020 that how they can attract

21 the talented faculties to bring more external funding and bring

22 more innovative interdisciplinary degrees to attract gifted

23 students and generate more revenue to the universities by

24 having more units.

25      And that --.

Alaei v SONY - 6/6/2022

1      Q.  So -- sorry, go ahead.

2      A.  Yeah, and that was the reason they came up with a new

3   mechanism, they call it Evergreen that each university apply

4   for that SUNY system apply for that.  And sixty-five campuses

5   that we have some of them they apply for that, it was very

6   competitive.

7      And at University at Albany a lot of department centers,

8   they applied for them.  Most of them they didn't get, I was

9   fortunate when I was a director of G.I.H.H.R. I was working and

10  apply for that and we received that Evergreen.

11     And they said to give you more security to those gifted

12  faculties that they were not tenure, instead of having one-year

13  appointment, to have two years appointment, which means the

14  appointment start from 2014 to 2017.  So there is an annual

15  evaluation the next year, which means in 2015 they evaluate.

16     If you do good, they add one more year to the end, which

17  means the end in 2015 was 2017, so one more will be 2018.  So

18  by this way, instead of having a traditional one year annual

19  contract, give you security of two years to attract gifted

20  faculty to stay within state universities, because there was a

21  trend of a lot of state faculties who are on non-tenure.

22     They got, you know, hired by private or other universities

23  as a tenure, so that was a kind of --.

24             THE COURT:  Let me stop you there, Doctor, next

25     question, please?

Alaei v SONY – 6/6/2022

```
 1            BY MR. CASTIGLIONE:  (Cont'g.)
 2       Q.  How did you know -- learn about the concept of
 3  Evergreen at the time?
 4       A.  That was a call -- an invitation for different
 5  departments and centers to apply for that.
 6       Q.  Okay.  Did you work with anybody at the time on this
 7  Evergreen concept with SUNY?
 8       A.  Yes, when the proposal was approved in that
 9  competitive process, there was a team that (unintelligible)
10  designated, including -- I think it was Bruce, I can't remember
11  the last name, but was working with the office of the
12  (unintelligible) Kevin Williams, and there were others to work
13  and define in collaboration with the dean of Rockefeller
14  College, among others.
15       So we developed a set of metrics because it should be a
16  very clear metrics by 2020 this position, how many amount of
17  external funding will bring and how many units will be
18  increased.
19       Q.  And -- and you said, Bruce, is that Bruce Szelest?
20       A.  Yes.
21       Q.  Okay. Did you have any conversations with Mr. Szelest
22  at the time about this Evergreen issue?
23       A.  Yes, we had an in-person meeting, we had an image
24  exchange, so there are -- all of them available at my UAlbany
25  account.  And we went through all the metrics and we defined
```

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1  those metrics and those metrics were reviewed by all the deans

2  and by the (unintelligible) and it was finalized, I think, in

3  March before this appointment, yeah.

4      Q.  Okay.  Exhibit -- excuse me, exhibit -- which would be

5  Exhibit Two now, I think.

6              THE COURT:  What is it?

7              MR. CASTIGLIONE:  It was marked Exhibit One

8         initially, but I think it's Exhibit Two now or we're just

9         calling it one?  Yes, from those.

10             UNIDENTIFIED SPEAKER:  (unintelligible).

11             MR. CASTIGLIONE:  Okay.

12             BY MR. CASTIGLIONE:  (Cont'g.)

13     Q.  So what's been identified as Claimant's Exhibit One on

14  the second page it talks about fringe benefits available to

15  members of professional staff.  Do you have any understanding

16  what this appointment letter was providing as to your status?

17     A.  Yes, so it was a U.U.P., it was the Union's to -- to

18  protect the rights of faculty so that was -- I joined the

19  U.U.P. after I received the, you know, appointments.

20     Q.  Okay.  If I can refer you to --.

21             MR. CASTIGLIONE:  If I can approach, Your Honor.

22             THE COURT:  Are you getting number two?

23             MR. CASTIGLIONE:  I'm going to get a different

24        one, I think it's -- I have them marked differently in my

25        --.

Alaei v SONY - 6/6/2022                    36

 1                    THE COURT:  Joe, let's go off the record for a

 2        minute.

 3                    THE MONITOR:  Okay.

 4                    (Off the record; 11:28:42 to 11:29:47)

 5                    THE MONITOR:  On the record.

 6                    THE COURT:  We have marked as Claimant's Exhibit

 7        Sixty-two, University of Albany SUNY letterhead dated May

 8        8, 2014, a letter to Dr. Alaei from James Mancuso.  Do you

 9        have a copy of this, Mr. Rotondi?

10                    MR. ROTONDI:  Yes, I do.

11                    THE COURT:  Are you going to move it?

12                    MR. CASTIGLIONE:  Yes, Your Honor, I'd like to

13        move this into evidence.

14                    THE COURT:  Any objection, Mr. Rotondi?

15                    MR. ROTONDI:  No.

16                    THE COURT:  Claimant's Exhibit Number Sixty-two,

17        May 8, 2014 letter admitted without objection.

18                    MR. CASTIGLIONE:  Thank you, Your Honor.

19                    BY MR. CASTIGLIONE:  (Cont'g.)

20        Q.  Dr. Alaei, I'm showing you what's been marked as

21   Exhibit Sixty-two -- Claimant's Exhibit Sixty-two.  Can you

22   take a look at this letter, and do you recognize this letter?

23        A.  Yes.

24        Q.  Okay.

25                    THE COURT:  Okay.  Mr. Castiglione.

1          BY MR. CASTIGLIONE:  (Cont'g.)

2      Q.  Dr. Alaei, this letter says and part of the first

3  paragraph on behalf of the president, it's my pleasure to

4  formally confirm your fulltime term appointment to the

5  University at Albany faculty as lecturer --

6              UNIDENTIFIED SPEAKER:  Counselor, can you speak

7      (unintelligible).

8              MR. CASTIGLIONE:  Sure.

9              BY MR. CASTIGLIONE:  (Cont'g.)

10      Q.  Dr. Alaei, this letter says, on behalf of the

11  president it is my pleasure to formally confirm your fulltime

12  term appointment to the University of Albany faculty as

13  lecturer, campus title research professor for the period

14  beginning May 1st, 2014 and ending on April 13, 2017.

15      Do you have any understanding of what that term is that

16  they're referring to there?

17      A.  Yeah, that was just internal in a letter from the

18  Human Resource.

19      Q.  Okay.

20      A.  This is a term of three years, yeah.

21      Q.  Okay.  This document also says, this appointment --

22  this is an appointment to a United University Professions

23  represented position.  Do you have any understanding or can you

24  explain to me your understanding what the United University

25  professions or U.U.P. is?

Alaei v SONY – 6/6/2022

1    A.  Yes, this is a Union that protects rights of faculty

2  members and that was -- I became part of the Union as a member.

3    Q.  Okay.  And is that your signature at the bottom of

4  this document?

5    A.  Yes.

6    Q.  Okay.  The -- did the union -- sorry, did the U.U.P.

7  contact you around the time you received this letter?

8    A.  Yes.

9    Q.  Okay.

10    A.  They contacted me, yes.

11    Q.  Do you recall what they contacted you about?

12    A.  Yes, this is the membership and I said yes, I'm happy.

13  And I started paying them from -- I think, the time of -- I

14  receive the first salary I think, May -- May 2013.

15         MR. CASTIGLIONE:  You Honor, if I can approach

16     again to get another exhibit?

17         THE COURT:  You don't need to ask my permission

18     for that.

19         MR. CASTIGLIONE:  Okay.

20         THE COURT:  What's it marked, Mr. Castiglione?

21         MR. CASTIGLIONE:  This is identified as Exhibit

22     Sixty-one, Your Honor.

23         THE COURT:  And what is it, please?

24         MR. CASTIGLIONE:  It's a letter from United

25     University Professions, there is no date on it, it's from

```
 1        Frederick Powell (phonetic spelling).

 2                    THE COURT:  Is it to the doctor?

 3                    MR. CASTIGLIONE:  No, it's to dear colleague.

 4                    THE COURT:  Okay.  Any -- any objection, Mr.

 5        Rotondi?

 6                    MR. ROTONDI:  No, Your Honor.

 7                    THE COURT:  Without objection -- you want it

 8        admitted?

 9                    MR. CASTIGLIONE:  Yes.

10                    THE COURT:  Without objection Exhibit Sixty-one

11        is admitted.

12                    MR. CASTIGLIONE:  Just to be clear, Your Honor,

13        also it's a benefit trust (unintelligible) for 2013, 2014.

14                    THE COURT:  One more time?

15                    MR. CASTIGLIONE:  It has a -- it's accompanied

16        by benefit trust fund benefit, dated 2013 and 2014.

17                    THE COURT:  Okay.

18                    BY MR. CASTIGLIONE:  (Cont'g.)

19        Q.  Dr. Alaei, are these -- do you recognize these

20   materials that are being shown on the screen?

21        A.  Yes, they gave me a package from the U.U.P.

22        Q.  And these -- are these the materials you had received?

23        A.  Yes, I received all the benefits, all my rights.

24        Q.  Do you recall -- did you receive a copy of a U.U.P.

25   agreement itself as well?
```

 1        A.  Yes, it was a booklet I received.

 2                THE COURT:  I didn't understand -- what did you

 3        say it in response?

 4                THE WITNESS:  It was a booklet --.

 5                THE COURT:  What was the question, did you

 6        receive a what?

 7                BY MR. CASTIGLIONE:  (Cont'g.)

 8        Q.  Did you receive a copy of the U.U.P. agreement itself?

 9        A.  Yes.

10                THE COURT:  I mean, if there are a number of

11        exhibits that Mr. Rotondi has no issue with, you don't

12        need to authenticate them to this witness.  Just so --.

13                MR. CASTIGLIONE:  Okay.  I'm just establishing

14        he received these documents --

15                THE COURT:  That's fine.

16                MR. CASTIGLIONE:  -- as part of his appointment.

17                BY MR. CASTIGLIONE:  (Cont'g.)

18        Q.  The Exhibit One had talked about at paragraph two,

19   that your appointment would be renewed annually with

20   extensions, was there a subsequent renewal of your contract at

21   any time?

22        A.  Yes.

23        Q.  Okay.  Can you explain to me generally, what you

24   recall about the renewal process for your contract to your

25   initial appointment?

Alaei v SONY – 6/6/2022

1    A.  Yeah, because there was metrics clear that was, you

2  know, established before this appointment letter.  So every

3  year, they just check to what extent and I met those metrics

4  and --.

5    Q.  Can you -- can you explain to me what you're referring

6  to by when you say metrics were, what do you mean?

7    A.  Yeah, there was a -- yeah, there was a detailed, I

8  think, if I pronounced correctly addendum number twenty-six was

9  developed by Bruce, which was attached and had a specific

10  detail in Excel sheets.  That how many -- how much grants I

11  have to raise that I think there was two faculty appointment

12  for one of them was one hundred eighty-six thousand dollars

13  something like that, within five years.

14    And then how many units I have to generate as a faculty,

15  and I think it was around, you know, one hundred ninety-six

16  within five years.  So each year they review that and if it is

17  toward that trend, because that has by year, it means you

18  increase by year how many and it was just extended as

19  Evergreen.

20    Q.  Okay.  If I can show you several documents that are

21  being identified as Claimant's Exhibit Forty-seven which

22  include a letter dated July 18, 2016 from SUNY Albany to Dr.

23  Alaei, as well as, a letter dated April 6, 2017 from SUNY

24  Albany to Dr. Alaei.

25          THE COURT:  Are they marked separately?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/6/2022

1                MR. CASTIGLIONE:  There's just one sticker on

2        for Forty-seven.

3                THE COURT:  Are -- are these renewal letters?

4                MR. CASTIGLIONE:  Yes.

5                THE COURT:  Any objections, Mr. Rotondi?

6                MR. ROTONDI:  No, Your Honor.

7                THE COURT:  Without objection Claimant's Exhibit

8        Forty-seven was admitted.

9                MR. CASTIGLIONE:  Thank you, Your Honor.

10               BY MR. CASTIGLIONE:  (Cont'g.)

11       Q.  Dr. Alaei, this letter I'm showing you dated July 18,

12   2016 from SUNY Albany.  Do you recognize this --?

13               THE COURT:  It's part of Forty-seven?

14               MR. CASTIGLIONE:  Yes, it's part of Forty-seven.

15               THE COURT:  Okay.

16               BY MR. CASTIGLIONE:  (Cont'g.)

17       Q.  Dr. Alaei, I'm showing you part of Exhibit Forty-seven

18   which is a letter from SUNY Albany dated July 18, 2016.  Can

19   you explain to me your understanding of what's reflected in

20   this letter?

21       A.  Yeah, it's -- it's a renewal, which was approved by

22   the Senior Vice President for Academic Affairs and Provost.

23       Q.  So this says this renewal is for the period beginning

24   May 1, 2017 and ending April 30th, 2018.  Your annual salary

25   will be a hundred and thirty thousand subject to any changes as

Alaei v SONY – 6/6/2022

1   me authorized or required by law.  Let me ask you in the first

2   place, did you receive a salary increase?

3       A.  Yes, significant thirty-five percent due to my, you

4   know, achievements.

5       Q.  And your prior -- your initial appointment letter was

6   for approximately ninety-two thousand?

7       A.  Yes, and I -- I was offered to be served as associate

8   dean of global and interdisciplinary research due to my

9   achievements.

10      Q.  Okay.  And this renewal term about you were being

11  renewed for the period beginning May 1, 2017 and ending April

12  30, 2018.  Can you explain to me what that means under the

13  terms of what you were explaining your Evergreen appointment?

14      A.  It means that was continued.

15      Q.  Okay.

16      A.  And in addition, was increased, it means I -- I

17  targeted beyond the initial set targets.

18      Q.  So in your understanding of your Evergreen

19  appointment, what would your terms be in terms of employment

20  years under this letter?

21      A.  It means that if you are meeting the metrics, it

22  automatically will be renewed.

23      Q.  Okay.

24      A.  If you don't meet, that will be a stop, and as soon as

25  it gets a stop you have to have two years.

Alaei v SONY – 6/6/2022

1    Q.  So -- so you were renewed through 2018 under this

2  letter, how many years would you be entitled to under your --?

3    A.  Yeah, two years at least.  Yeah.

4    Q.  Two years at least after 2018?

5    A.  I don't know from this letter.

6              THE COURT:  Well, for the trier of fact to

7        determine whether or not --.

8              MR. CASTIGLIONE:  Okay.

9              THE COURT:  Move on.

10              BY MR. CASTIGLIONE:  (Cont'g.)

11    Q.  I'm showing you what was part of the Exhibit Forty-

12  seven is a letter dated April 6, 2017 from SUNY Albany to Dr.

13  Alaei.  Do you recall this letter or recognize this letter?

14    A.  Yes, it was renewed again due to my achievement and

15  was extended until April 30th, 2019.

16    Q.  Okay.  And so your salary was the same, a hundred and

17  thirty thousand?

18    A.  Yes, it was the same.  Which means if --.

19              THE COURT:  Well, that's good, Doctor.

20              THE WITNESS:  Okay.

21              BY MR. CASTIGLIONE:  (Cont'g.)

22    Q.  I'm going to show you, Dr. Alaei --.

23              MR. CASTIGLIONE:  I'd like to move into evidence

24        document identified as a letter dated April 7, 2016, from

25        University to Albany to Dr. Alaei which is identified as

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/6/2022

1    Claimant's Number Forty-eight.  And this was GG in my

2    list.

3              THE COURT:  Any objection, Mr. Rotondi?

4              MR. ROTONDI:  No objection.

5              THE COURT:  Admitted without objection

6    Claimant's Forty-eight.

7              BY MR. CASTIGLIONE:  (Cont'g.)

8    Q.  Dr. Alaei, I'm showing you what's been identified as

9    Claimant's Forty-eight, a letter from SUNY Albany to you dated

10   April 7, 2016.  This reflects a change in your employment

11   status indicated below salary increase effective date, January

12   1, 2016.

13       Was there any title or -- or other responsibility increase

14   associated with this?

15   A.  Yes, I became in addition to all the previous

16   appointment, I served as the associate dean for global and

17   interdisciplinary research, which was a university-wide

18   position to engage faculties from different departments,

19   colleges and schools to be more engaged in research and more

20   global initiatives.

21   Q.  Okay.

22             THE COURT:  Was that understanding, Doctor,

23       based upon discussions or oral representations made to you

24       because as reflected in that exhibit, those terms are not

25       set forth in that exhibit.  So how were you made aware of

1     the additional responsibilities?

2              THE WITNESS:  Because the dean had a meeting

3     with me, Harvey Charles wrote a letter of justification

4     --.

5              THE COURT:  Which dean?

6              THE WITNESS:  The dean of the international

7     education and global strategies.

8              THE COURT:  Name?

9              THE WITNESS:  Harvey Charles.  Harvey, H-A-R-V-

10    E-Y --.

11             THE COURT:  Charles.

12             THE WITNESS:  Charles, yes.

13             THE COURT:  Go ahead, Counsel.

14             THE WITNESS:  And there's a letter that he wrote

15    about the justification.

16             BY MR. CASTIGLIONE:  (Cont'g.)

17    Q.  Following up to the judge's point, can you explain to

18    me your various jobs and responsibilities between 2014 and

19    2018?

20    A.  Yeah, I had, you know, several, you know,

21    responsibilities, you know, as a director of the Global

22    Institute for Health and Human Rights, I was able to attract a

23    lot of faculties and students.  So we started with three

24    students ended up having fifty-nine students, you know, working

25    with me.

Alaei v SONY – 6/6/2022

```
 1      Because I realized a lot of them are gifted students, but

 2   they were working at restaurants.  I said, they deserve to be

 3   (unintelligible) in research.  I engage them in research, and

 4   they were working with me on grants, and they hired themselves

 5   on those grants.

 6      And they applied for a very competitive prestigious

 7   (unintelligible) opportunities like, you know, N.I.H., C.D.C. -

 8   -.

 9              MR. ROTONDI:  Your Honor, it's not responsive to

10         the question.

11              THE COURT:  I'll give him a little latitude, Mr.

12         Rotondi, overruled.  Go ahead.

13              THE WITNESS:  So by this -- the point at the

14         G.I.H.H.R. was to have more interdisciplinary research.

15         As a faculty, I was teaching and develop the first Global

16         Health and Human Rights index SUNY system and also I

17         developed a course for honors students, which was the --

18         all the honors of students from different departments,

19         they join us.

20              And also, as an associate dean for global and

21         interdisciplinary research brought an engage different

22         research centers and faculties to apply for grants.

23              BY MR. CASTIGLIONE:  (Cont'g.)

24   Q.    Okay.  Who was Harvey Charles?

25   A.    Harvey Charles was a dean of international education
```

Alaei v SONY – 6/6/2022

1  and global strategist and also associate provost for

2  international education, I think.

3        Q.  Did you work for Dr. Charles or work with Dr. Charles?

4        A.  Yes, he became my supervisor.

5        Q.  Okay.  Do you -- for your work overtime, did you

6  receive any performance reviews about your work efforts or work

7  product?

8        A.  Yes.

9        Q.  Can you explain to me what you received --

10       A.  Yes.

11       Q.   -- if anything?

12       A.  I -- I had an annual report for him for the

13  evaluation, and always he was happy with the evaluation.

14       Q.  Okay.  Did you -- do recall receiving any negative

15  performance reviews for your work?

16       A.  Not at all, and it -- my work was always published in

17  the annual report as a spotlights of achievements, both for the

18  -- the magazine that they have been created by Office of

19  International Education also by the Vice President for

20  Research, James Diaz, that they like selected very few each

21  year that they had a -- well-establishment of research and work

22  was highlighted in that report.

23       Q.  Okay.  If I can refer you to --.

24            THE COURT:  Did – was Harvey Charles who would

25       provide you with your performance evaluations?

Alaei v SONY - 6/6/2022

1                    THE WITNESS:  Yes.

2                    MR. CASTIGLIONE:  I'm identifying to introduce

3        Claimant's Number Four, a letter from the SUNY Chancellor

4        dated February 10, 2017 to my client and his brother.

5                    THE COURT:  Any objection, Mr. Rotondi?

6                    MR. ROTONDI:  Which one is that?

7                    MR. CASTIGLIONE:  Which was Exhibit B in my

8        list.

9                    MR. ROTONDI:  No objection.

10                   THE COURT:  Without objection, Claimant's Four

11       is admitted.  Who's it from, Mr. Castiglione?

12                   MR. CASTIGLIONE:  Nancy Zimpher Chancellor of

13       SUNY.

14                   BY MR. CASTIGLIONE:  (Cont'g.)

15       Q.  Dr. Alaei, I'm showing you what's been identified as

16   Claimant's Exhibit Four, a letter dated February 10, 2017.  Do

17   you recall this document?

18       A.  Yes.

19       Q.  Can you explain to me what this document reflects?

20       A.  Yeah, that was the -- the Chancellor of the SUNY

21   system which oversees sixty-five campuses that directly send

22   this letter to me.  And, you know, recognize or achievements

23   not only for the, you know, service to the department or campus

24   to the, you know, New York State.

25       Q.  Okay, thank you.  Did G.I.H.H.R. have a Board of

Alaei v SONY - 6/6/2022

1  Directors?

2       A.  Yes.

3       Q.  Can you explain generally how people were qualified to

4  be on the Board of Directors?

5       A.  Sure.  So to establish --.

6               THE COURT:  Briefly.

7               THE WITNESS:  Sorry.

8               BY MR. CASTIGLIONE:  (Cont'g.)

9       Q.  Briefly, yeah.

10      A.  Can you repeat your question, I forgot, sorry.

11      Q.  Sure.  Can you briefly explain to me how somebody

12  became on the Board of Directors for --

13      A.  Yes.

14      Q.   -- G.I.H.H.R.?

15      A.  So when we established a G.I.H.H.R. we submitted all

16  of the structure including Board of Directors, advisory board

17  and affiliated faculties with their information and letters.

18  It was reviewed by the University Senate and approved by the

19  university.

20      Q.  And -- and what type of people were on the Board of

21  Directors?

22      A.  Board of Directors were senior administrators at the

23  university in the capacity of chairs of significant

24  departments, dean of schools, dean of colleges and vice

25  presidents in respective areas.

```
 1      Q.  Do you know who Kevin Williams is?

 2      A.  Yes, he was the vice provost.

 3              THE COURT:  What was the question?

 4              MR. CASTIGLIONE:  Do you know who Kevin Williams

 5      is?

 6              THE COURT:  Go ahead.

 7              THE WITNESS:  Yes, he is the vice provost.

 8              BY MR. CASTIGLIONE:  (Cont'g.)

 9      Q.  Was he on the board Of Directors?

10      A.  Yes.

11      Q.  Do you know who Fardin, F-A-R-D-I-N Sanai, S-A-N-A-I

12  is?

13      A.  He's the vice president of the University at Albany.

14      Q.  Was he on the Board of Directors?

15      A.  Yes.

16      Q.  Did you directly report to the Board of Directors?

17      A.  Yes.

18      Q.  Okay.  Did you have meetings with the Board of

19  Directors?

20      A.  Yes, every four months.

21      Q.  Okay.  And you had mentioned there was another board,

22  an advisory board?

23      A.  Yes.

24      Q.  Can you explain to me what that was?

25      A.  Sure.  The advisory board were the prestigious members
```

 1  from academia, including the presidents of Albany Law School,

 2  the president of College of Pharmacy, and the world class

 3  experts from Harvard University, Johns Hopkins, Yale

 4  University, Brown Medical University, Columbia, that they were

 5  serving at a capacity of Health and Human Rights in their

 6  respective -- including Director of Center for Health and Human

 7  Rights at Johns Hopkins.

 8      Q.  Did the advisory board ever meet with the board of

 9  directors?

10      A.  Yes, every year they were invited by the president and

11  they were hosted by the vice presidents.  So we had one day-

12  long meeting that they came here and we reported to them.

13      Q.  Okay.  As of January 2018, what was your primary

14  position with the University of Albany at that point?

15      A.  I was the faculty member, associate research professor

16  and lecturer.  And also, I was the director of the G.I.H.H.R.

17  and associate dean for global and international research.

18      Q.  Okay.  Were you undertaking any efforts to advance

19  your career at that point?

20      A.  Yes.

21      Q.  Can you explain to me what kind of efforts you were

22  taking?

23      A.  Sure.  Because there was a discussion, I was non-

24  tenure, even I had Evergreen for two years, but in long run it

25  was not very sustainable.  So there was a conversation I had

```
 1  with Bill (unintelligible) and the provost at that time was

 2  James Stellar.

 3       And they said, if you can show these achievements and get

 4  some offers from other places, that may be a good way that we

 5  talk to the new president, because we have a new president, and

 6  that will be opportunity to be a tenure or get another

 7  position.

 8       So I talked to the vice -- vice -- vice associate provost

 9  Kevin Williams and he said, this is usually common practice

10  that you get offered from other universities and show and that

11  may be a good, you know, justification to give you tenure.

12       Q.  Did you do anything to --

13       A.  Yes.

14       Q.   -- trying to get other offers?

15       A.  Yes.

16       Q.  What did you do?

17       A.  So I was informed that there is an opportunity as a

18  deanship, dean of the college which oversees seven departments

19  over two hundred faculties at York College, Y-O-R-K College.

20       Q.  And where is York College?

21       A.  In New York City.

22       Q.  Okay.

23                 THE COURT:  Where is it?

24                 THE WITNESS:  In New York City.

25                 BY MR. CASTIGLIONE:  (Cont'g.)
```

Alaei v SONY – 6/6/2022

1    Q.  Okay.  Can you explain to me your experience with York

2   College?

3    A.  Yes, so I -- I submitted my, you know, sixty plus

4   pages of C.V.s and cover letter and they invited me for the

5   virtual interview, so I went to the virtual interview and I

6   shared with the vice provost, and he was happy because that was

7   very senior position.

8        And I was very, you know, like in that age, young.  And

9   then after that, it was very successful and they invited me in

10  December 2017, as a top finalist to go to campus interview.

11   Q.  And -- and that was for the dean of the entire York

12  College?

13   A.  Yes.

14   Q.  Okay.  What happened next with York?

15   A.  So we scheduled that and they suggested some date, I

16  think, if I'm not wrong, I went in January 16 of 2018 as the

17  first finalist candidate to the campus interview.

18   Q.  Okay.  So you said you were a finalist candidate?

19   A.  Yes.

20   Q.  Did York communicate that to you in any way?

21   A.  So it was -- it went very well, they were very

22  supportive and they said that the process each they will --

23  they asked me to fill out the form and introduce my supervisors

24  and the university contact.  And they said in, you know, after

25  they finished the interviews there is contact the University at

1  Albany for reference check.

2      Q.  So you provided them with your references?

3      A.  Exactly --

4      Q.  Okay.

5      A.   -- in a form they had with all the details, numbers,

6  images and so on.

7      Q.  Who did your references identify?

8      A.  I can't remember all, but one of them was my direct

9  supervisor, which was Harvey Charles --

10     Q.  Okay.

11     A.   -- vice provost for international education.

12     Q.  Okay.  I want to talk to you about the alternative

13  assignment, the -- in the first place, so under the U.U.P. do

14  you have any general understanding of what membership provided

15  to you?

16     A.  Yeah, they said, if something happened, you know, you

17  are protected by, you know, union -- U.U.P. agreement with

18  SUNY.  And, you know, just -- if something happened, you know,

19  tell us and we protect your right.

20     Q.  Okay.  I want to show you a letter from SUNY Albany.

21          MR. CASTIGLIONE:  I'd like to introduce into

22      evidence, this is identified as plaintiffs -- plaintiffs

23      -- excuse me, Claimant's Exhibit Eight.  It's a letter

24      from SUNY Albany to Dr. Alaei dated February 8, 2018, with

25      some attachments.  And that is Exhibit F on my list.

Alaei v SONY – 6/6/2022

1              MR. ROTONDI:  No objection.

2              THE COURT:  Without objection, Claimant's Eight

3       is admitted.  Date on the letter again?  February 8, okay.

4              MR. CASTIGLIONE:  Yes.

5              THE COURT:  Got it, yeah.

6              BY MR. CASTIGLIONE:  (Cont'g.)

7       Q.  Dr. Alaei, do you recognize what this document is?

8       A.  Yes.

9       Q.  Is this the alternative assignment letter that you

10      were given by SUNY Albany?

11      A.  Yes.

12      Q.  Okay.  How did you receive this letter?

13      A.  So it was in February, I think 8 --.

14             THE COURT:  I'm sorry?

15             THE WITNESS:  February 8th of 2018, that I

16      received an email from the, you know, Human Resource.  And

17      then a few minutes after I received a call, the gentleman

18      who on the phone said, come to human resource.  I said,

19      why?  They said, just come here.

20             BY MR. CASTIGLIONE:  (Cont'g.)

21      Q.  Did you talk to anybody before going to Human

22      Resources?

23      A.  I went to my, you know, direct supervisor   --.

24      Q.  Who is that?

25      A.  Harvey Charles.

1      Q.  Harvey Charles?

2      A.  And I said, this is shocking, why Human Resource

3  called me because I can't remember that he called me.  Yeah, so

4  I was very shocked and nervous, what's happening.

5      Q.  So what happened when you went to Human Resources?

6      A.  So I went there, there were two gentlemen was sitting

7  there and they show me that -- this letter.  And they said, you

8  are in alternative assignment, even it was confusing for me.

9  What's the reason, I'm very shocking, and they said, you

10  shouldn't go back to work.

11      I said, why?  And they didn't give me a reason.  And I

12  asked them, please give me just some explanation, what's the

13  reason, you know, I studied law I know that is a kind of right

14  to know what is the reason.

15      Particularly I study human rights as a basic rights, you

16  have to know -- they said no.  And I said, I want to consult

17  with my attorney, I wanted to find -- talk to U.U.P. or anyone.

18  They said, no, you don't need to talk, just sign it.

19      They insisted me to sign but I didn't, and they said you

20  shouldn't talk to anyone, any current or former students or

21  staff.  I said --.

22      Q.  Let me -- let me ask you before you -- you continue.

23  This letter in the first paragraph says, that  -- and it's from

24  Randy Stark, I'm conducting a disciplinary investigation.  Did

25  they explain to you what that meant?

Alaei v SONY – 6/6/2022

1      A.  Not at all.

2      Q.  Okay.  They told you -- it says in the first paragraph

3  to perform an alternative assignment and an alternate work

4  location.  What did they explain to you about that?

5      A.  They said that --.

6              THE COURT:  I'm going to stop you there,

7          Counsel, that's -- hearsay the letter speaks for itself.

8          What he's about to testify to is hearsay, so unless you

9          can otherwise --.

10             MR. CASTIGLIONE:  I would say would be an

11         admission by SUNY Albany.

12             THE COURT:  Well, I'll hear that, and I'll hear

13         the answer and then I'll move on the Court's objection,

14         ask the question again.

15             MR. CASTIGLIONE:  Okay.

16             BY MR. CASTIGLIONE:  (Cont'g.)

17     Q.  About the alternative assignment, alternative

18  location, do they tell you anything about that?

19     A.  Yes, they said, you shouldn't go back to work and if

20  you have some things you wanted to pick up, we send a police

21  officer to come with you.  And I said, I have fifty-nine

22  students working there, I go with the police as a criminal.

23     So I -- I said, I can't go to my office.  And then they

24  said, you just report to Harvey Charles about those assignment

25  that is listed here.

```
 1              THE COURT:  Okay, Counsel, go ahead.

 2              MR. CASTIGLIONE:  Okay.  Thank you, Judge.

 3              BY MR. CASTIGLIONE:  (Cont'g.)

 4      Q.  This talks about in -- in one of these bullet points

 5  in the second paragraph, and it's the one, two, three, fourth

 6  bullet point down.  It says, Dr. Charles, who advised you as to

 7  those who have been identified to fulfill this role in your

 8  absence and with whom you will be permitted to contact.

 9      The foregoing sentence talks about including but not

10  limited to you being available to be contacted by others to

11  answer questions from those who may be assigned to provide

12  oversight of the grants awarded to G.I.H.H.R.  Can you explain

13  to me what grants they're talking about in this letter?

14      A.  Yeah, I had several grants, including two major

15  federal grants that they were very sensitive, it was funded by

16  the U.S. Department of State and super confidential.  And this

17  is non-solicited grants, and I was leading those two grants was

18  for human rights education for lawyers inside Iran to train

19  three hundred.

20      And also, health professionals on the Women's Center

21  rights for two hundred seventy professionals, very sensitive.

22      Q.  And did you say Iraq?

23      A.  Iran, I-R-A-N.

24      Q.  Iran, okay.

25      A.  Yes.
```

Alaei v SONY - 6/6/2022

60

1    Q.  I'm sorry.  The -- the second page of Claimant's

2  Exhibit Eight, which I'm putting into focus.  The second page

3  of Claimant's Exhibit Eight directed you not to discuss this

4  matter in any way with others, including not limited to -- or

5  it's -- includes but not limited to current and former

6  students.  Do they explain to you anything about what that

7  meant?

8    A.  No, because they didn't say any -- anything.  I said,

9  what should I talk and this is like, we had one hundred sixty

10  thousand students alumni, this means anywhere I should go in

11  Albany, I should ask them.

12    Are you a UAlbany alumni, if yes, I shouldn't communicate

13  with them.  And I said, even my, you know, family members, my

14  sister is, you know, students at Albany.  So it was really very

15  extensive and outrage that not to communicate for anyone on

16  what, and they don't tell me anything.

17              THE COURT:  Doctor, did you earlier testify that

18        you declined to sign this.  Is that what you had said?

19              THE WITNESS:  Yes.

20              THE COURT:  Okay.  Go ahead, Counsel.

21              MR. CASTIGLIONE:  Thank you, Your Honor.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23    Q.  Did you have any work scheduled for that day?

24    A.  Yes, I had a presentation which was scheduled six

25  months in advance, it was campus wide and they wanted to screen

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1  award B.B.C. document, which was about one of my best

2  practices, which received 2005 award.

3      And it was the -- the -- the -- the T.V. of the week for

4  Channel Two of the B.B.C.

5      Q.  Do they -- did you tell them about your -- your work

6  schedule that day?

7      A.  Yes, I said everybody's coming from entire campus to

8  talk about rights of people living with HIV/AIDS, especially

9  women's rights, but they said, no, you shouldn't go.

10     Q.  How did the meeting with H.R. end that day?

11     A.  So it was very stressful, it was shocking for me.

12 (unintelligible) I had five (unintelligible) in Iran, but that

13 wasn't Iran wish we had crazy regime, you can't expect human

14 rights.  But here is New York, (unintelligible) --

15             MR. ROTONDI:  Your Honor, --

16             THE WITNESS:  -- very democratic --

17             MR. ROTONDI:  Objection, this is non-responsive

18     to the question.  The question was, how did the meeting

19     end.

20             THE COURT:  Yea, sustained.  What was the

21     conclusion of the meeting, Doctor?

22             THE WITNESS:  This is what it is, you shouldn't

23     go back to work.  And I said, I have a lot of projects, I

24     have a lot of meetings --

25             THE COURT:  When did you -- when he left the

1      H.R. meeting where did he go?

2                   THE WITNESS:  I go home.

3                   THE COURT:  Okay.  Next question.

4                   BY MR. CASTIGLIONE:  (Cont'g.)

5      Q.  How did it make you feel going through that

6   experience?

7      A.  It was (unintelligible) several weeks I couldn't sleep

8   because I was the human rights advocate globally.  And my right

9   was not recognized in the university that I develop graduate

10  degrees on human rights.

11     Q.  There's -- just so you know there's tissues on the

12  corner --

13     A.  Thank you.

14     Q.   -- Dr. Alaei.  This exhibit, the -- the February 8th

15  letter from SUNY putting you on alternative assignment, it

16  referred to Dr. Charles reaching out to you about the grants.

17  Did he ever contact you about the grants?

18     A.  So we had --.

19                  THE COURT:  Yes or no.

20                  THE WITNESS:  Yes.

21                  BY MR. CASTIGLIONE:  (Cont'g.)

22     Q.  Okay.  What did he say?

23     A.  Said, these are very important, very sensitive grants.

24  Please, let me continue the grants, I had a lot of projects, I

25  had the project with International AIDS Society.  I had a high-

Alaei v SONY - 6/6/2022                                63

1  level consultation with fifteen countries leaders, I said all

2  often, they need to be supervised.

3      Q.  Okay.  If I can show you Claimant's -- it is

4  Claimant's Exhibit Number Twenty-three, it's an email from Dr.

5  Alaei to Harvey Charles.

6              MR. CASTIGLIONE:  If I can move this into

7      evidence?

8              THE COURT:  Do you have it, Mr. Rotondi?

9              MR. ROTONDI:  Yes.

10             THE COURT:  Any objection?

11             MR. ROTONDI:  No.

12             THE COURT:  Claimant's Twenty-three is admitted

13     without objection.  Can we just go off the record for a

14     moment and have counsel come approach?

15             (Off the record; 12:06:20 to 12:08:25)

16             THE MONITOR:  On the record.

17             BY MR. CASTIGLIONE:  (Cont'g.)

18     Q.  Dr. Alaei, I'm showing you what's been identified and

19  introduced as Claimant's Exhibit Twenty-three.  Do you

20  recognize this document?

21     A.  Yes.

22     Q.  Okay.  In this document you're advising Dr. Charles

23  that the university has barred you from communicating with the

24  grants and programs you're administering.  Is that accurate, a

25  --?

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1              UNIDENTIFIED SPEAKER:  (unintelligible).

 2              BY MR. CASTIGLIONE:  (Cont'g.)

 3         Q.  This letter said -- excuse me, this email says the

 4    university has barred you from communicating on grants or

 5    programs you had been working on before your alternative

 6    assignment.  Is that correct?

 7         A.  Yes.

 8         Q.  That's what happened?

 9         A.  Yes.

10         Q.  Okay.  You've said this, you had shared concerns over

11    the phone twice about the work being done with Iran?

12         A.  Yes.

13         Q.  Okay.  And then you identified that the grants were

14    very sensitive and needed constant oversight.  And then you

15    were expressing your deep concern.  Is that consistent with

16    what you'd been raising?

17         A.  Yes.

18         Q.  Do you recall that Harvey Charles ever provided any

19    substantive response about the concerns you're raising here?

20         A.  He just say I will, you know, thank you for sending

21    this, I will consider that.  But there was no follow-up and I

22    shared how important it was because it was during the sensitive

23    time that a lot of people were arrested in Iran, for similar

24    trainings.

25              And these need a very technical specialty first to know
```

Alaei v SONY - 6/6/2022

1  the language of Farsi, and second is about the human rights

2  which needs to advance training and get qualified clearance

3  from the State Department in advance, but I think they didn't

4  do any of those.

5      Q.  Okay.  Do you know -- do you have personal knowledge

6  of what happened to the grants you were working on?

7      A.  So I think they gave it to two interim directors

8  overnight.

9              THE COURT:  They what?

10             THE WITNESS:  They -- they gave it to two

11      interim -- interim -- interim directors of the G.I.H.H.R.

12      overnight.

13             THE COURT:  Yeah but, the question was, do you

14      know what happened with the grant applications?

15             BY MR. CASTIGLIONE:  (Cont'g.)

16      Q.  Yeah, ultimately, what had -- do you know what

17  happened with these grants?

18      A.  So I -- I don't know, they just -- because I had no

19  communication for six months.

20      Q.  Okay.

21             MR. CASTIGLIONE:  Thank you, Your Honor, we can

22      take a break.

23             THE COURT:  All right.  We're going to break at

24      this time for lunch, we're going to return at one fifteen

25      sharp.

Alaei v SONY - 6/6/2022

1           Doctor, you are not to discuss anything about
2       the case with your attorney.  Do you understand, you can
3       go to lunch with them, you can talk about anything but the
4       case --
5               THE WITNESS:  Sure.
6               THE COURT:  -- understood?
7               THE WITNESS:  Definitely.
8               THE COURT:  And counsel, as an officer of the
9       Court I'll -- of course, expect you will abide by the
10      Court's instruction.
11              MR. CASTIGLIONE:  Yes, sir.
12              THE COURT:  Okay.  Anything from you, Mr.
13      Rotondi, before we break?
14              MR. ROTONDI:  No, Your Honor.
15              THE COURT:  All right.  We stand in recess until
16      one fifteen, thank you.
17              (Off the record; 12:11:06 to 13:21:01)
18              THE MONITOR:  On the record.
19              THE COURT:  Good afternoon, everyone.  We have
20      reconvened on the matter of Dr. Kamiar Alaei, claim number
21      one three two five five four.  All parties were present
22      including the doctor who was providing direct testimony
23      when we recessed for lunch, all parties have returned.
24      Thank you to your (unintelligible) in accordance with the
25      judges wishes -- the Court's wishes.

Alaei v SONY - 6/6/2022

1           In the interim during the luncheon break court

2     monitor Graziano was kind enough to compile for me the

3     sixty-three item Claimant's exhibit list and several of

4     them have already been admitted.

5           Mr. Rotondi, of the remaining exhibits can you

6     tell me -- would you tell me which would be agreeable to

7     stipulate into evidence?

8           MR. ROTONDI:  Let's see.  No, I don't think I

9     can, Your Honor.

10          THE COURT:  Okay.

11          MR. ROTONDI:  I still need -- I would need -- I

12    would need to go up and look.

13          THE COURT:  Okay.  Maybe during the next recess,

14    we can do that.

15          MR. ROTONDI:  Sure.

16          THE COURT:  Do you want -- do you want to take a

17    few minutes now?

18          MR. ROTONDI:  We're working on it right now, I

19    mean, I can just go up and introduce until -- yeah -- no,

20    I'm going to identify the ones and then you're going to

21    --.

22          THE COURT:  Off the record, Joe.

23          MR. ROTONDI:  Sorry, off the record.

24          THE MONITOR:  Off the record.

25          (Off the record; 13:22:42 to 13:23:3)

Alaei v SONY - 6/6/2022

1           THE MONITOR:  On the record.

2           THE COURT:  Okay.  Mr. Castiglione, you can

3      resume your direct examination of the Claimant.

4           MR. CASTIGLIONE:  Your Honor, I apologize, can I

5      -- can we just go off the record for a minute, Mr. Rotondi

6      had identified certain exhibits on our list that I just

7      want to give to him so he can keep those out.

8           THE COURT:  Off the record, please.

9           (Off the record; 13:23:52 to 13:26:56)

10          THE MONITOR:  On the record.

11          THE COURT:  Okay.  Mr. Castiglione, please

12     continue your examination of the doctor.  Thank you.

13          MR. CASTIGLIONE:  Thank you, Your Honor.

14          BY MR. CASTIGLIONE:  (Cont'g.)

15     Q.  Dr. Alaei, I refer you to what has been marked as

16  Claimant's Exhibit Twenty-One.

17          THE COURT:  Right.  Mr. Sommer, if you will, in

18     short order, complete your cross referencing

19     (unintelligible) pass let us know because I want to give

20     Mr. Rotondi the opportunity to stipulate en masse, if

21     possible, okay?

22          MR. SOMMER:  Got you, Your Honor.

23          THE COURT:  Okay.  Thanks.  Go ahead, Counsel.

24          MR. CASTIGLIONE:  Claimant's Exhibit Twenty-one

25     is a letter -- or email, excuse me, from Harvey Charles to

Alaei v SONY - 6/6/2022

1          Dr. Alaei dated February 13th, 2018.  Anthony, this would

2          be Exhibit N in my book.  If we could move this into

3          evidence, I think the parties have stipulated to it.

4                    MR. ROTONDI:  No objection.

5                    THE COURT:  Without objection, Claimant's

6          Exhibit Twenty-one is admitted.

7                    BY MR. CASTIGLIONE:  (Cont'g.)

8          Q.  Dr. Alaei -- Dr. Alaei, this Exhibit N is an email

9     from Harvey Charles to you.  It talks about off campus

10    engagements.  It says, I wanted to alert you to the fact that

11    I'm aware that you have had commitments for presentations in

12    various places around the U.S. and even possibly other

13    countries.

14         It goes on to say you can participate in these events as a

15    private individual but not in your former capacity as a

16    G.I.H.H.R.  Can you explain to me what -- what these events or

17    presentations that are being referred to, what they are.?

18         A.  Yes, they were very prestigious like one of them was

19    Los Alamos.  That's the largest national lab with eleven

20    thousand staff that they had an event organized

21    (unintelligible) U.S. Ambassador to United Nation, and they

22    wanted to have a special panel and they invited me to present

23    over there.

24         Q.  Okay.  And so in other words, these were off-campus

25    speaking engagements you had been involved in?

Alaei v SONY – 6/6/2022

1    A.  Yes.  With global visibility and coverage.

2    Q.  And Harvey Charles advised you could participate as a

3 private individual but not as affiliate with SUNY Albany.  Is

4 that correct?

5    A.  Yes.

6         MR. CASTIGLIONE:  Okay.  Dr. Alaei, I'd like to

7         refer you to what's being identified as Claimant's Exhibit

8         Nineteen.  An email from Harvey Charles to a Linda

9         Zrgykowski, Z-R-G-Y-K-O-W-S-K-I, to -- email from Mr.

10        Charles to Ms. Zrgykowski.

11             Preceding in front of it, there was an email

12        from Ms. Zrgykowski to Mr. Harvey, both dated February

13        14th.  It's identified as Claimant's Number Nineteen

14        which, Anthony, it would be M One on my list.  I'd like to

15        move this into evidence, Your Honor.

16             MR. ROTONDI:  No objection.

17             THE COURT:  Without objection Claimant's

18        Nineteen is admitted.

19             BY MR. CASTIGLIONE:  (Cont'g.)

20    Q.  So I'm going to show this to you, Doctor.  I'm going

21 to show this to you, Dr. Alaei.  In this email, there is a

22 reference from Ms. Zrgykowski to Harvey Charles about the

23 (unintelligible) library.

24    It says in part I understand that Kamiar will no longer be

25 participating.  We will take his name off the promotional

**Associated Reporters Int'l., Inc.   518-465-8029**

1  materials and we'll backfill a slot with another person from

2  the university community.

3      It says at the bottom we will not be including Dr. Alaei

4  any L-LC related events this spring.  Can you explain to me

5  what this human library program was?

6      A.  Yeah, there was a very special program that they

7  invited very well-established authors to share about their

8  memos and they invited me to share my case, which was

9  recognized.  It was, you know, scheduled six months in advance

10  and they invited the entire campus for that.

11      And the other one about Living Learning Community was the

12  community within UAlbany that I developed to help students from

13  freshmen who wanted to focus on human rights.  We, you know,

14  train.

15      So from the first semester, they were working with me for

16  four years and the retention rate one -- was one hundred

17  percent.  So it was one of the most successful programs of

18  living learning community.

19      When I had a phone conversation with Harvey Charles, he

20  said you should not use --.

21              MR. ROTONDI:  Objection, Your Honor.

22              THE COURT:  Sustained.  You can stop here,

23      Doctor.  Next question.

24              MR. CASTIGLIONE:  But Your Honor, that would be

25      an admission by SUNY.

```
 1              THE COURT:  Well, I don't know that -- I don't

 2        know if it's an admission.  And second of all, I don't

 3        know that the individual involved had speaking authority

 4        for the university, so move on.

 5              BY MR. CASTIGLIONE:  (Cont'g.)

 6        Q.  As to this email from Harvey Charles to Ms.

 7   Zrgykowski, did you tell Ms. Zrgykowski you were not going to

 8   be attending this conference?

 9        A.  I told Harvey because I was not allowed to say to

10   anybody else besides Harvey Charles.

11              MR. CASTIGLIONE:  Okay.  Thank you.  If I can

12        move into evidence an email chain between Brian Selchick,

13        Harvey Charles and others.  Excuse me.  No, I won't do

14        that.  I'm sorry.

15              Claimant's Exhibit Eighteen is part of it.

16        There is an email from a John Ventura to Dr. Alaei dated

17        February 8th, 2018 and as well as an email from James Diaz

18        to Dr. Alaei dated February 8th, 2018.  This would be,

19        Anthony, Exhibit Twenty.  I'd like to move this into

20        evidence.

21              MR. ROTONDI:  Do you know what the old number

22        is?

23              MR. CASTIGLIONE:  Yes.  The old numb -- I'm

24        sorry.  Exhibit M.  I'm sorry.

25              MR. ROTONDI:  No objection.
```

Alaei v SONY - 6/6/2022

1          THE COURT:  Without objection Eighteen is

2      admitted.

3          BY MR. CASTIGLIONE:  (Cont'g.)

4      Q.  Dr. Alaei, if I could point your attention to the

5  email on the screen from John Ventura to you dated February

6  8th, 2018.  It says in part, for seventy-five years, Los Alamos

7  National Laboratory has provided technical solutions to the

8  nation's most talent -- challenging national security

9  questions.

10          It goes on to talk about our plan would be for you to sit

11  on a panel with North Korean refugees and U.S. Ambassador to

12  U.N., Nikki Haley.  Did you receive -- you receive this email

13  as reflected in the email above?

14      A.  Yes.

15      Q.  And then I see you reached out to James Diaz about

16  this?

17      A.  Yes.

18      Q.  Who is/was Mr. Diaz

19      A.  He was the Vice President for Research.

20      Q.  Okay.

21      A.  Oversees all the research institution including

22  G.I.H.H.R.

23      Q.  And so this says, for Mr. Diaz, thanks for sharing.  I

24  was surprised about your meeting with H.R.  Please discuss this

25  opportunity with Harvey for guidance.  It may be possible as a

Alaei v SONY – 6/6/2022

1  private citizen.

2      Was SUNY not letting you participate in these events as an

3  employee or faculty member of SUNY?

4      A.  Yes.  Unfortunately, they told me you cannot use any

5  affiliation title even from University at Albany.  So it was

6  very embarrassing for me to go there and say I am

7  (unintelligible) citizen.

8      Q.  Okay.

9              MR. ROTONDI:  Your Honor, I move to strike that

10         last -- last portion.

11              THE COURT:  Sustained.  Last part is stricken.

12              BY MR. CASTIGLIONE:  (Cont'g.)

13     Q.  How did it make you feel not being able to represent

14  yourself as an employee of SUNY for speaking engagements you

15  had been dealing with?

16              MR. ROTONDI:  Objection, Your Honor, relevance.

17              MR. CASTIGLIONE:  Your Honor, part of the claim

18         here is emotional distress and part of the claim here is

19         wrongful termination based on not following protocol for

20         the disciplinary --.

21              THE COURT:  Means there is a -- there is a --

22         there is an emotional distress from Mr. Rotondi.

23              MR. CASTIGLIONE:  We're not going to

24         (unintelligible), Your Honor, as opposed to the fact that

25         allegedly caused the emotional distress.

Alaei v SONY - 6/6/2022

1           THE COURT:  Doesn't it?

2           MR. ROTONDI:  No, because the issue is not only

3       we have a wrongful termination claim based in part that

4       SUNY wasn't following.  They can't properly discipline my

5       client before they did an investigation, before they did

6       findings, including precluding him from speaking at events

7       and representing himself as an employee of SUNY.

8           It goes to suffering.  Actually, in order to

9       have an emotional distress claim, you have to suffer

10      emotional distress before you can measure the damages.

11          THE COURT:  Let's take it as an article of faith

12      he has testified to that he has been distressed by these

13      events and we'll leave it to that.  Other than that, the

14      objection is sustained.

15          MR. CASTIGLIONE:  Okay.

16          THE COURT:  Would it be fair to say, Doctor,

17      based upon your prior testimony you were distressed by all

18      of these events?  Is that a fair statement?

19          THE WITNESS:  More than distress, it's

20      embarrassing.

21          THE COURT:  Okay.

22          BY MR. CASTIGLIONE:  (Cont'g.)

23  Q.  If I can refer you back to your alternative assignment

24  letter.

25          THE COURT:  Is that number one?

Alaei v SONY – 6/6/2022

```
 1                MR. CASTIGLIONE:  I think it was --

 2                THE COURT:  Well, excuse me.  Appointment letter

 3       was number one.  Yeah.  It's number eight.

 4                BY MR. CASTIGLIONE:  (Cont'g.)

 5       Q.  Referring back to -- referring back to Claimant's

 6  Exhibit Eight.  This alternative assignment had directed you to

 7  do certain work and then had communications with Harvey Charles

 8  about that work.  How did you communicate that work or transmit

 9  that work to Harvey Charles?

10       A.  I submitted every other week a report.

11                THE COURT:  What did you say?

12                THE WITNESS:  I submitted -- submitted.

13                THE COURT:  One more time.

14                THE WITNESS:  Submitted.

15                MR. CASTIGLIONE:  Submitted.

16                THE WITNESS:  Submitted.

17                THE COURT:  How?

18                THE WITNESS:  By email.

19                THE COURT:  Email?

20                THE WITNESS:  Yes.

21                THE COURT:  Okay.  Go ahead, Counsel.

22                THE WITNESS:  Every other week and also we had

23       the phone conversation with Harvey.

24                BY MR. CASTIGLIONE:  (Cont'g.)

25       Q.  What email did you use to submit --?
```

**Associated Reporters Int'l., Inc.   518-465-8029**

77

Alaei v SONY - 6/6/2022

1        A.   So I use my yahoo email.

2        Q.   Now, what email did you use to transmit your work

3   while on alternative assignment?

4        A.   K-A-M-I-A-R dot A-L-A-E-I @ yahoo dot com.

5                  THE COURT:  At what?

6                  THE WITNESS:  Yahoo.

7                  THE COURT:  Personal email is the point I think

8        I was trying to ask.

9                  MR. CASTIGLIONE:  Yes, personal email.

10                 THE WITNESS:  Yes.

11                 BY MR. CASTIGLIONE:  (Cont'g.)

12       Q.   Why would -- why did -- did you not have a SUNY Albany

13   email account?

14       A.   No, unfortunately, even it was not included in

15   alternative assignment and nobody told me.  When I go home, I

16   realized that I have no access to my emails.

17       Q.   So in other words, you were prohibited from using your

18   SUNY Albany email account?

19       A.   Without any notice, yes.

20       Q.   Were you able to contact people you would otherwise

21   have been contacting using that email?

22       A.   No, I lost all the contacts.

23       Q.   Okay.  Earlier you had testified about SUNY Albany

24   putting certain information about you on their website.  Did

25   SUNY Albany take any action as to website information while you

1  were on alternative assignment?

2        A.  Yes, unfortunately, they removed me from the website.

3        Q.  When you say they removed you from the website, can

4  you explain to me what they did?

5        A.  Yes.  So they removed all the reports.  I had the

6  annual report.  I had the older projects on the G.I.H.H.R.

7  website.  In a few days, even they had no interrogation of me

8  or didn't start the process.  They removed all of them.

9              THE COURT:  Now, Doctor, when you say the

10        website, was there a dedicated website to -- to the

11        institute?

12             THE WITNESS:  Yes.

13             THE COURT:  G --?

14             THE WITNESS:  I.H.H.R.  It was albany.edu.

15             THE COURT:  G.I.H.H.R. website?

16             THE WITNESS:  As part of university.

17             THE COURT:  And in reference to that, from which

18        your information was removed, is that what you're saying?

19             THE WITNESS:  Yes.

20             THE COURT:  Go ahead, Counsel.

21             MR. CASTIGLIONE:  Thank you, Your Honor.

22             BY MR. CASTIGLIONE:  (Cont'g.)

23        Q.  Dr. Alaei, while you were on alternative assignment,

24  did anyone try to reach out to you to inquire why you were on

25  alternative assignment?

Alaei v SONY - 6/6/2022

1      A.  Yes.

2      Q.  Can you just identify generally for me, what types of

3  people reached out to you?

4      A.  Different people because it was, you know, announced.

5  There was a meeting that they came and, you know, people went

6  in that meeting.  It was not private meeting, it was public

7  meeting.  And they said they removed me from the G.I.H.H.R. the

8  next day.

9      Same day, they gave me alternative assignment, they just

10  send that email.  It means they just made their decision before

11  they start the process.

12              MR. CASTIGLIONE:  Okay.  If I can identify -- if

13      I can identify for introduction Claimant's Exhibit Eleven,

14      email from Harvey Charles dated February 8th, 2018

15      invitation -- sorry.  It's Claimant's number Eleven,

16      invitation to a G.I.H.H.R. wide meeting Friday two slash

17      nine from Harvey Charles to a number of individuals.  And

18      I believe that is Exhibit I on my list.

19              MR. ROTONDI:  No objection.

20              THE COURT:  Without objection, Claimant's Eleven

21      is admitted.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.  Dr. Alaei, I'm showing you -- Alaei, I'm showing you

24  what's identified as Claimant's number Eleven, email from

25  Harvey Charles.  There is a subject line, an invitation to a

1  G.I.H.H.R. wide meeting on Friday two slash nine.

2      It says in part, I am writing to invite you to a meeting

3  Friday in the University Hall to discuss the leadership of the

4  institute.  Is this the email that you're referring to?

5      A.  Yes.

6              MR. CASTIGLIONE:  Okay.  Your Honor, I'd like to

7          -- Your Honor, I'd like to offer into evidence what's been

8          identified as -- what's been identified as Claimant's

9          number Fifteen.  It's the email from Harvey Charles dated

10         February 9th, 2018.  Subject is G.I.H.H.R.  Sent to a

11         number of individuals.  It was Exhibit K Two, Anthony, on

12         my list.

13             MR. ROTONDI:  No objection.

14             THE COURT:  Without objection, Claimant's

15         Fifteen is admitted.

16     BY MR. CASTIGLIONE:  (Cont'g.)

17     Q.  Dr. Alaei, I'm referring you to Claimant's Fifteen, an

18 email from Harvey Charles dated February 9th, 2018.  Obviously,

19 there is a number of recipients there.  There is a Kevin

20 Williams, Karl Rothermeyer, number of different email

21 addresses.  The subject is G.I.H.H.R.

22     It says in part, Dear G.I.H.H.R. colleagues and

23 supporters, I am writing to inform you that effective today

24 I've named Dina Refki and Gina Volynsky as interim Co-Directors

25 of the Global Institute for Health and Human Rights at the

Alaei v SONY – 6/6/2022

1    University of Albany.  Is this one of the emails you were

2    referring to about --

3         A.  Yes.

4         Q.  -- SUNY contacting people and telling them?

5         A.  Yes.

6         Q.  Okay.

7              THE COURT:  We don't, you know, at some point

8         it's going to come in, again, we don't have to take the

9         time, trouble and expense through this witness.

10             Now, if after we convene or confer, I should

11        say, and Mr. Sommer's finished with his job and Mr.

12        Rotondi says all of his comments, unless you want to

13        specifically examine the doctor, don't.  If you do, do.

14             MR. CASTIGLIONE:  Understood.

15             THE COURT:  And if -- I even allow you to recall

16        him but I, you know, these are coming in anyway, I assume.

17             MR. CASTIGLIONE:  Okay.

18             THE COURT:  I don't need him chapter and verse

19        on all of this.

20             MR. CASTIGLIONE:  Understood, Your Honor.

21             THE COURT:  Thank you.  And I'll give you

22        latitude if there is an important point or we miss one

23        later, we'll bring him back.

24             MR. CASTIGLIONE:  Thank you, Your Honor.

25             MS. MALESZWESKI:  Judge, if I may add --.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/6/2022

1                   THE COURT:  No, you may not.

2                   MS. MALESZWESKI:  After that --.

3                   THE COURT:  Thank you.

4         BY MR. CASTIGLIONE:  (Cont'g.)

5         Q.  So in response to emails similar to the ones we went

6    through, did people reach out to you?

7         A.  Yes.

8         Q.  Okay.  What type of people reached out to you?

9         A.  Those board members, advisory boards, some of them

10   called me, some of them came to my house.  Say what's happened?

11   Because I was there the day before.

12        Q.  When people came to your house, did you generally

13   answer the door?

14        A.  I just opened the door because there was no

15   expectation, say, what happened, why they removed you, and I

16   couldn't explain the situation.  But this was really shocking.

17   When do they start the process, they removed me and replaced

18   me.

19                   MR. ROTONDI:  Objection, Your Honor.  Move to

20        strike that last part.

21                   THE COURT:  I didn't understand the last thing

22        he said.  What do you what -- what -- to what?

23                   MR. CASTIGLIONE:  What they were saying -- what

24        they were saying to the doctor?

25                   THE COURT:  I will -- I'll allow it.  It wasn't

Alaei v SONY - 6/6/2022

1      for the truth of what they were saying.  I think the point

2      of the exchange is people were wondering, and he was at a

3      loss to be able to explain.  So I'll allow.

4      BY MR. CASTIGLIONE:  (Cont'g.)

5      Q.  What about projects and grants you were working on,

6   did anybody reach out to you to let you know they had been

7   informed about your alternative assignment?

8      A.  Yeah.  Because I had several projects, you know,

9   besides two federal projects.  I had international project, one

10  of them was in Iraq.

11     Q.  So let me ask you about this project in Iraq.  Who was

12  the the person from Iraq who had contacted you?

13     A.  He was the Director of the Center for Women's Right to

14  Health that we established in Kurdistan of Iraq to support

15  women in Iraq who were suffered by ISIS.

16     Q.  And do you -- what's that person's name?

17     A.  It was Handia, H-A-N-D-I-A.

18     Q.  And have you -- how long have you known that person?

19     A.  For several years because we received a grant from

20  IREX.  So we went there, I brought a group of faculty from New

21  Albany over there and we invited a group of faculty from them,

22  including her to come to the U.S. UAlbany, visited us for one

23  week.

24              THE COURT:  Doctor, the question was how long

25      did you know this fellow?

1            THE WITNESS:  So I wanted to just -- 2015 to --

2       till that time that they reached out to me, at that time

3       was three years.

4       BY MR. CASTIGLIONE:  (Cont'g.)

5       Q.  Okay.  Did that person know you were under

6   investigation?

7            MR. ROTONDI:  Objection, Your Honor.

8            THE COURT:  Sustained.  Next question.

9            MR. CASTIGLIONE:  Your Honor, I would say it

10      goes to state of mind, part of the claims here, defamation

11      by SUNY.

12            THE COURT:  He can't speak to what was in the

13      person's mind and if he can, that's hearsay.  Next

14      question.

15      BY MR. CASTIGLIONE:  (Cont'g.)

16      Q.  Based on your understanding of your discussion with

17  that person, did that person have accurate information about

18  your employment status with SUNY?

19      A.  She says she called --.

20            MR. ROTONDI:  Your Honor, it's still hearsay.

21            MR. CASTIGLIONE:  It's his understanding.

22            THE COURT:  No, sustained, Counsel.  Next

23      question.

24      BY MR. CASTIGLIONE:  (Cont'g.)

25      Q.  As to the way SUNY Albany was treating you going

Alaei v SONY – 6/6/2022

1  through this, did you ever assert any objections to SUNY Albany

2  about what was going on?

3      A.  So I talked to Harvey.  I said, from one side, they

4  told me not to communicate with anyone but from the other side,

5  they talked to the group about, you know, they removed me and

6  put me on alternative assignment and a lot of those partners,

7  international partners are reaching out to me and asking me

8  that they tried to find me, they couldn't find me.  They called

9  the G.I.H.H.R., and they said Kamiar is under investigation.

10     Q.  Did you retain legal counsel at that point?

11     A.  Immediately.

12     Q.  Okay.  Did legal counsel undertake any efforts on your

13  behalf?

14     A.  Yes, they sent letters on my behalf but no response.

15             THE COURT:  To whom?

16             THE WITNESS:  To University at Albany.

17             THE COURT:  And --

18             THE WITNESS:  To Randy --

19             THE COURT:  -- a lawyer or law firm --

20             THE WITNESS:  Law firm.

21             THE COURT:  -- sent a letter to SUNY?

22             THE WITNESS:  Yes.

23             THE COURT:  Okay.

24     BY MR. CASTIGLIONE:  (Cont'g.)

25     Q.  And who did you hire to represent you?

1      A.  So yourself, and gentleman, your colleague Kennett

2  (phonetic spelling).

3      Q.  Okay.

4      A.  Yeah.  Your firm.

5      Q.  Okay.  And you said we put together letters.  Are you

6  generally able to identify what issues those letters raised?

7      A.  Yes, that was all my consent.  First, it was the

8  alternative assignment without telling me any reason and going

9  to all those people in my G.I.H.H.R. Institute and say Kamiar

10 is removed one hour after they just informed me about the

11 alternative assignment.

12     The next, they send it to all those global's around the

13 world.  I can list how many countries and even including

14 personal emails.

15          THE COURT:  Okay.  Doctor, I'm going to stop

16      you.  Would it be fair to say that the letters raised in

17      the legal firm's letter are raising many of the same

18      concerns and issues we're talking about today?

19          THE WITNESS:  Yes.

20          THE COURT:  All right.

21          And did you testify just a moment ago that SUNY

22      did not respond to that letter?

23          THE WITNESS:  No.

24          THE COURT:  You testified to that?

25          THE WITNESS:  Yes.

Alaei v SONY – 6/6/2022

1              THE COURT:  Okay.  Go ahead, Counsel.

2              MR. CASTIGLIONE:  Thank you, Your Honor.

3         BY MR. CASTIGLIONE:  (Cont'g.)

4         Q.  Was the email access ever returned to you?

5         A.  Never.

6         Q.  You are -- you testified earlier you were a member of

7    the U.U.P.  Is that correct?

8         A.  Yes.

9         Q.  And did the U.U.P. undertake any activities on your

10   behalf?

11        A.  Yes.

12             MR. CASTIGLIONE:  If I can identify, I'd like to

13        offer into evidence, Your Honor, exhibit Claimant's

14        Exhibit Twenty-eight.  It's a series of letter from

15        N.Y.S.U.T. on behalf of the Claimant.  The first one is

16        dated March 20th, 2018 to Leslie Ziegelbauer with SUNY

17        System Administration.  The next letter is --

18             THE COURT:  What's the date of that one?

19             MR. CASTIGLIONE:  The first one is March 20,

20        2018.

21             THE COURT:  Okay.  Go ahead.

22             MR. CASTIGLIONE:  The second is --.

23             THE COURT:  No, that's I just wanted to --

24             MR. CASTIGLIONE:  Okay.

25             THE COURT:  -- (unintelligible)this point.

Associated Reporters Int'l., Inc.   518-465-8029

1              MR. CASTIGLIONE:  Okay.

2              THE COURT:  So would cross reference, is it for

3        Mr. Rotondi?

4              MR. CASTIGLIONE:  That would be --.

5              MR. ROTONDI:  Your Honor, I stipulated.

6              THE COURT:  Okay.  Without objection, Exhibit

7        Twenty-eight is in.

8              MR. CASTIGLIONE:  Thank you, Your Honor.

9        BY MR. CASTIGLIONE:  (Cont'g.)

10       Q.  I'm showing you here what's been identified as

11  Claimant's Exhibit Twenty-eight.  This is a first letter March

12  20th, 2018.  Can you explain to me what U.U.P. did on your

13  behalf?

14       A.  Yes.  So they reached out to the university as my

15  representative and they reached out to those articles based on

16  the agreement that U.U.P. had with the SUNY system which was,

17  you know, violated, including my rights because they put me on

18  alternative assignment.

19       And alternative assignment is not a disciplinary action

20  but they (unintelligible) acted.  And also, they -- they

21  damage, you know, all my rights and access --.

22             THE COURT:  I'm going to stop you, Doctor.  Is

23        it fair to say that this exhibit represents the union

24        initiating a grievance on your behalf?

25             THE WITNESS:  Yes.

Alaei v SONY – 6/6/2022

1          THE COURT:  Next question.

2      BY MR. CASTIGLIONE:  (Cont'g.)

3      Q.  Okay.  And I'm just going to read from this.  As part

4  of this grievance, you were raising the following.  Despite the

5  contractual mandate of this alternative assignments not a form

6  of discipline, UAlbany had taken several disciplinary measures

7  against Dr. Alaei.

8      For example, Dr. Alaei was directed not to discuss the

9  matter with anyone including not contacting his students,

10  current or former or university staff, which includes over one

11  thousand six -- or excuse me, one hundred and sixty thousand

12  University of Albany from around the world.

13      Dispute -- despite contractual mandate, that alternative

14  assignment is not a form of discipline, UAlbany has blocked Dr.

15  Alaei from accessing his university email account.

16      Despite the contractual mandate that alternative

17  assignment is not a form of discipline, Dr. Charles advised

18  numerous individuals in other universities that he had been

19  appointed interim co-directors of G.I.H.H.R., thereby removing

20  Dr. Alaei from his position in the eyes of the community, and

21  in fact, this was confirmed by email from Dr. Charles.

22      Despite contractual mandates that alternative assignment

23  is not a form of discipline, UAlbany removed Dr. Alaei from

24  G.I.H.H.R. website listing the interim directors as in charge

25  of the institute.  None of the foregoing actions are authorized

Alaei v SONY - 6/6/2022

1    by Article 19.10 or any other provision of the agreement.

2         After the grievance was submitted and you were pursuing

3    those claims, what happened with the grievance?

4         A.  So there was no response, unfortunately, even Harvey

5    Charles directly told me you shouldn't use your formal capacity

6    which means technically they removed me --.

7                   THE COURT:  Say again.  Say again.

8                   THE WITNESS:  So which part?  The last part?

9                   THE COURT:  Yes.

10                  THE WITNESS:  Yeah.  Harvey Charles told me that

11            not to use your former capacity from the G.I.H.H.R. and

12            Albany, which means they technically removed me from my

13            position before they started the process, and also,

14            removing me from the website and removing my access.  That

15            was the grievance was reached out to them but not response

16            and --.

17                  THE COURT:  Let's go off the record for a

18            minute.

19                  MR. CASTIGLIONE:  Okay.

20                  (Off the record; 13:56:57 p.m. to 13:58:07 p.m.)

21                  THE MONITOR:  On the record.

22                  THE COURT:  In the interest of clarity and that

23            I get the -- the set of facts correct, I've asked Counsel

24            Castiglione to represent to the Court, how the grievance

25            procedure played out, subject to Mr. Rotondi, of course,

Alaei v SONY – 6/6/2022

1    objecting to anything either on a factual or legal basis.

2    And then if it's agreeable and acceptable, Mr. Rotondi

3    will so stipulate without going through the witness.  Go

4    ahead, Mr. Castiglione.

5        MR. CASTIGLIONE:  Okay.  So Your Honor, the

6    first letter dated March 20, 2018.  The U.U.P. submitted a

7    grievance on behalf of my client, they identified as the

8    statement of grievance on the third page, what the issues

9    of contention were, the alleged violations.

10        The fourth page, they identified the remedy they

11    were seeking, which includes cease and desist from

12    violating the agreement post notice that UAlbany violated

13    his rights and disciplinary rights, restored Dr. Alaei to

14    Director of GIHA -- G.I.H.H.R., put him back on the

15    website, give him access to his email, rescind the

16    statements they made, otherwise make him whole.

17        After this grievance step was -- was filed, it

18    was step two.  There was a meeting between my client and

19    SUNY personnel about trying to resolve it.  It seemed like

20    it was possible at the meeting.

21        THE COURT:  He was represented at that meeting

22    by union representation?

23        MR. CASTIGLIONE:  By union representation.

24        THE COURT:  Go ahead.

25        MR. CASTIGLIONE:  And so union representation

1      had a meeting.  I believe it was Valley Heirs (phonetic

2      spelling) on behalf of SUNY, trying to resolve it.

3      Unfortunately, nothing came of it.  The process went to

4      step three, which is reflected in this letter dated May

5      23rd, 2018, where the union says, step two didn't do

6      anything.  We're doing step three.

7            Unfortunately, nothing happened with step three.

8      So it went on to arbitration.  Here is a letter from the

9      union U.U.P. people dated February 27, 2019, saying we're

10     going to pursue arbitration.

11           My client had been terminated in August, 2018.

12     Even though he had paid his dues for 2019, the union

13     advised him at some point, they were no longer going to

14     pursue the grievances because he was no longer an employee

15     at SUNY.

16           SUNY and the U.U.P. have always taken the

17     position that once a grievance is filed, it's the property

18     of U.U.P. and they're the ones who have the rights to

19     enforce it.  And so they decided they were no longer going

20     to enforce the grievances.

21           THE COURT:  Okay.  Do you wish to respond or?

22           MR. ROTONDI:  My understanding, Your Honor, that

23     after step three, there was settlements between the U.U.P.

24     and SUNY Albany.

25           MR. CASTIGLIONE:  We were not -- my client was

Alaei v SONY - 6/6/2022

1      not a party, has no knowledge of that.

2              MR. ROTONDI:  It's U.U.P. owns, as Mr.

3      Castiglione said, owns the grievance, not the doctor.

4              THE COURT:  Right.  So now, do you expect the

5      balance of the Claimant's case or on the Defendant's case

6      that that information is going to come before the Court?

7              MR. ROTONDI:  It could come before the Court

8      through a number of witnesses.

9              THE COURT:  It could or could not?

10             MR. ROTONDI:  It could.

11             THE COURT:  Is it possible?

12             MR. ROTONDI:  Yes.

13             THE COURT:  Okay.  With that one caveat or in

14     addition as it were, do you wish to contradict or -- or --

15     or not contest what mister -- the representations Mr.

16     Castiglione has made?

17             MR. ROTONDI:  Yeah.  We're not agreeing to

18     anything where SUNY Albany said this or SUNY Albany does

19     that.

20             THE COURT:  I'm sorry.  We're not agreeing to

21     anything what?

22             MR. ROTONDI:  We're assuming where mister -- I

23     mean, if Mr. Castiglione had merely rear -- essentially

24     reiterated.

25             THE COURT:  Reiterated.

1          MR. ROTONDI:  Reiterated, excuse me, the

2     essentials of what was in the letter --.

3          THE COURT:  Which by the way is in evidence.

4          MR. ROTONDI:  Right.  Which is fine but what I

5     did here was SUNY said this, SUNY does this.

6          THE COURT:  Well, what I -- all I was trying to

7     do is elicit what happened.  So I understand your point

8     but there is no dispute, factual dispute that the

9     grievance process ultimately ended.

10         MR. ROTONDI:  Yes.

11         THE COURT:  And it ended with the matter going

12    to arbitration.

13         MR. CASTIGLIONE:  They were supposed to, but we

14    were told, my client, excuse me, my client was told by the

15    U.U.P., they were no longer going to pursue it because he

16    was not employed by SUNY.

17         THE COURT:  All right.  Is that true?

18         THE WITNESS:  Yes.

19         THE COURT:  Okay.  Then, we're good.  Okay.

20         MR. CASTIGLIONE:  And sure.  And just as to the,

21    if there was a settlement between SUNY and the U.U.P., as

22    far as that --.

23         THE COURT:  Save that -- save that for argument.

24    Okay.

25         MR. CASTIGLIONE:  I was just going to point out,

Alaei v SONY – 6/6/2022

1       the -- the relief sought by my client, he was never told

2       that that was awarded, so.  If there was a settlement, it

3       didn't -- he wasn't awarded --.

4                   THE COURT:  Ask him the question.

5       BY MR. CASTIGLIONE:  (Cont'g.)

6       Q.  Dr. Alaei, the -- the relief you requested, which is

7    reflected on page three of the letter dated March 20th, 2018.

8    Did you ever receive any of this relief from U.U.P. or SUNY as

9    part of any agreement?

10      A.  None of that.

11      Q.  Okay.  Dr. Alaei, did there come a time when you had a

12   meeting --?

13                  THE COURT:  Your notes are on the screen.

14                  MR. CASTIGLIONE:  Thank you, Your Honor.

15      BY MR. CASTIGLIONE:  (Cont'g.)

16      Q.  Dr. Alaei, did there come a time when you had a

17   meeting with SUNY Albany personnel regarding the disciplinary

18   investigation?

19      A.  Yes.  After three months, the first meeting.

20                  THE COURT:  Was that in May of '18?

21                  THE WITNESS:  Yes.  May 9th of 2018, yes.

22                  THE COURT:  '18?

23                  THE WITNESS:  Yes.

24                  THE COURT:  Go ahead, Counsel.

25                  MR. CASTIGLIONE:  Thank you.

Alaei v SONY – 6/6/2022

1        BY MR. CASTIGLIONE:  (Cont'g.)

2        Q.  So this meeting on May 9, 2018, do you recall who, if

3   anybody, attended this meeting?

4        A.  Yes.

5        Q.  Who attended?

6        A.  There were three gentlemen from the University.  One

7   of them was diet -- was in charge of human resource, I think it

8   was Randy.  The other one is the attorney Brian and Harvey

9   Charles.

10       Q.  So Randy Stark, Brian Selchick for SUNY Albany?

11       A.  Yes.  And Harvey Charles.

12       Q.  And Harvey Charles, your supervisor?

13       A.  Yes.

14       Q.  Okay.  Do you recall what was generally discussed at

15   that meeting?

16       A.  Yes.  So initially, because Harvey Charles was there,

17   I said, based on the policy only should be human resource or

18   attorney.  I objected to be somebody who is not designated but

19   he insisted to be there.  And they talk about alter -- the

20   procedure of three months.

21            THE COURT:  May I ask a couple of questions real

22       quick?

23            MR. CASTIGLIONE:  Sure.

24            THE COURT:  How did this meeting come to exist?

25       What happened to cause the meeting to happen?

Alaei v SONY - 6/6/2022

1              THE WITNESS:  Yeah.  So it started from, I

2      think, nine thirty and took until five thirty p.m.

3              THE COURT:  Who -- someone reached out to you?

4              THE WITNESS:  Yeah.  They contacted me to come

5      to the meeting.

6              THE COURT:  Come to this meeting.

7              THE WITNESS:  Yes.  And then my representative

8      joined us too.

9              THE COURT:  You men -- you mentioned these three

10     people.

11             THE WITNESS:  Yes.

12             THE COURT:  Were you the only person

13     representing yourself?

14             THE WITNESS:  No, Joe was there.

15             THE COURT:  Go ahead, counsel.

16             MR. CASTIGLIONE:  Thank you, Your Honor.

17     BY MR. CASTIGLIONE:  (Cont'g.)

18     Q.  Do you -- can you just briefly identify for me the

19     general topics that were discussed at the meeting?

20     A.  Yes.  It was about a G.I.H.H.R. structure and also, it

21     was about our trip to Beirut, that we had a conference over

22     there organized and also about my brother.

23     Q.  Okay.  Do you recall what was the conclusion of that

24     meeting?

25     A.  There was no clear conclusion.  Even it took until

1  five thirty p.m.

2       Q.  But at some point, the meeting ended?

3       A.  Yes.

4       Q.  Okay.  Did anybody from University of Albany meet with

5  you before that May 9th meeting to talk to you about the

6  disciplinary investigation or issues?

7       A.  Not at all for three months.

8       Q.  Okay.  Did your counsel subsequently prepare a letter

9  and submit it to H.R. on your behalf?

10      A.  Yes, after that.

11      Q.  Okay.  I want to talk to you now about the non-renewal

12 process.  Do you recall a time when UAlbany initiated non-

13 renewal of your appointment?

14      A.  Yes.  It was, I think, end of April, means before I

15 started to have interrogation, they did not renew me.

16           MR. CASTIGLIONE:  So if I can identify, I'd like

17      to move into evidence, Your Honor, Claimant's Thirty-four,

18      emails between Harvey Charles and Kamiar Alaei and William

19      Hedberg and Kamiar Alaei, dated April 30th.  This would be

20      Exhibit Thirty-four.

21           MR. ROTONDI:  No objection.

22           THE COURT:  Without objection, Thirty-four is

23      admitted.

24 BY MR. CASTIGLIONE:  (Cont'g.)

25      Q.  I'm showing you what's been identified as Claimant's

1  Thirty-four, Dr. Alaei.  This document is an email from

2  initially, William Hedberg, dated 04/30/18 at four forty-one

3  p.m.  As I have received the attached form to non-renew your

4  university appointment, I also mailed you a copy home.

5      You are entitled to provide a written response before the

6  document is presented to the -- presented to the provost.  Who

7  is Bill Hedberg or William Hedberg?

8      A.  He was the Senior Vice President in charge of all the

9  academic efforts.

10     Q.  Okay.  And I see here, Dr. Charles had responded and

11 asked if you have any questions about the form to let him know

12 and the form at issue was the third page.  Take a look at this

13 document.

14     It says, please issue one year notice of non-renewal.

15 It's signed by Harvey Charles.  Do you have any understanding

16 of why Dr. Charles signed or signed this Notice of Renewal?

17     A.  No, it was shocking because there was a memo.  As I

18 said, Evergreen was no return and approved base.  It was

19 another addendum Twenty-six --.

20             MR. ROTONDI:  Objection, Your Honor.

21             THE COURT:  Sustained.  Next question.

22             MR. CASTIGLIONE:  If I can refer you to -- if I

23      can introduce Claimant's Exhibit Thirty-five.  It's a

24      letter dated April 30th, 2018 from Bill Hedberg,

25      Claimant's Exhibit B Four.  B Four, which is the letter.

```
 1                 MR. ROTONDI:  No objection.

 2                 THE COURT:  Without objection, Thirty-five is

 3        admitted.

 4        BY MR. CASTIGLIONE:  (Cont'g.)

 5        Q.  Dr. Alaei, if you see this, is this the formal

 6   correspondence you received?

 7        A.  Yes.

 8        Q.  Okay.  And it has a copy of that form?

 9        A.  Yes.  And they asked me to response by May 8th, which

10   was the day before my first interrogation.

11        Q.  So by this letter, they did ask you to respond.  Did

12   you prepare a response?

13        A.  Yes, I wrote the comprehensive response to that.

14                 MR. CASTIGLIONE:  Okay.  Hold on.  I'd like to

15        introduce Claimant's Exhibit Thirty-six, which is an email

16        from William Hedberg to Dr. Alaei, James Stellar, Harvey

17        Charles dated May 14th, 2018.

18                 With it are some attached forms including a

19        letter from my client to Mr. Hedberg.  We'd like to

20        introduce these into evidence, it would be --

21                 THE COURT:  What number?

22                 MR. CASTIGLIONE:  -- W.  This is Thirty-six.

23        It's Exhibit W.

24                 MR. ROTONDI:  No objection.

25                 THE COURT:  Without objection, Thirty-six is
```

1      admitted.

2      BY MR. CASTIGLIONE:  (Cont'g.)

3      Q.  As part of Claimant's Exhibit Thirty-six, I'm

4  referring you to a letter dated May 8th, 2018.  Is this the

5  letter that you prepared to Mr. Hedberg for his email?

6      A.  Yes.

7      Q.  Okay.  And in this letter, you identified various

8  issues about your concerns with being renewed or not not being

9  renewed.  Is that fair to say?

10      A.  Yes.

11      Q.  Okay.  I want to ask you a couple of questions about,

12  sorry.

13      I want to ask you a couple of questions about issues

14  raised in this letter.

15      On the first page of your letter, in the bullet points you

16  identified, you secured six point five million dollars in

17  extramural funding as a P.I., co-P.I. and externally funded

18  projects.  Is that correct?

19      A.  Yes.

20      Q.  That you developed the first L.L.M. degree in Health

21  and Human Rights in collaboration with Albany Law School?

22      A.  Yes.

23      Q.  You developed new undergraduate and graduate courses,

24  have been very popular with students?

25      A.  Yes.

Alaei v SONY - 6/6/2022

1    Q.  Developed numerous projects in over ten countries?

2    A.  Yes.

3    Q.  In this letter, you also identify, I've never received

4  a negative evaluation from Dean Karl Rethemeyer, R-E-T-H-E-M-E-

5  Y-E-R, Chair Victor Asal, A-S-A-L, Dr. Harvey Charles or any

6  other member of the university administration and see no basis

7  for the non-renewal decision?

8    A.  Yes.

9    Q.  And you say I've only received positive feedback?

10    A.  Yes.  And I defer that to MoU because my renewal was

11  based on MoU, which was I address here, that I not only met all

12  the metrics --.

13          THE COURT:  Okay.  I'm going to stop you,

14      Counsel.

15          MR. CASTIGLIONE:  Sure.  And I'm sorry.

16      BY MR. CASTIGLIONE:  (Cont'g.)

17    Q.  The next paragraph, you're talking about, there is a

18  Memorandum of Understanding between the provost, me as the

19  Director of G.I.H.H.R. and the Deans of School of Public

20  Health, School of Criminal Justice and Rockefeller College in

21  2014 for two -- 2020 faculty positions for G.I.H.H.R.

22    Can you explain to me quickly that -- the MoU and the

23  metrics you're discussing?

24    A.  Sure.  This was the memo.  It was developed in during

25  March, 2014 before my appointment letter and defined all the

1  metrics that I will be evaluated based on those metrics, which

2  was called metrics addendum number twenty-six, which had

3  specific numbers.

4      And one of the numbers was how many units I will generate

5  within five years and I was able to meet four times within two

6  years.  And also, how much external funding I have to receive

7  like one hundred eighty-five thousand in five years, and I

8  receive almost four million.  That's twenty-one times higher

9  than the metric.

10      Q.  So in other words, there was certain standards that

11  were developed as part of your program and you were explaining

12  how you met those standards and surpassed those standards?

13      A.  Exactly.

14      Q.  Okay.  And if I could refer you to the next page.  It

15  says, respect to funding, you can also find the projected

16  funding required for each of the two faculty lines a hundred

17  and eighty-five thousand five hundred in the attached Excel

18  sheet.

19      I've also included the actual funding from 2015 to 2017

20  that I was able to get three -- three million nine hundred and

21  sixteen thousand and change.  Despite the absence of the

22  secondary faculty line, this means I was able to reach over

23  twenty-one times higher than the target.  Is that what you were

24  just referring to?

25      A.  Yes.

1    Q.  Okay.  As part of Claimant's Exhibit Thirty-six.  The

2  beginning page is an email from Mr. Hedberg to you, J. Stellar

3  and Harvey Charles dated May 14th.  Who was James Stellar at

4  the time?

5    A.  Was the provost.

6    Q.  So what is -- what does that position entail in terms

7  of your employment?

8    A.  So he is the Vice President for Academic.  He is in

9  charge of all the academic part of the university.

10    Q.  Did he oversee Harvey Charles?

11    A.  Yes.

12    Q.  And so he oversaw your employment --

13    A.  Yes.

14    Q.  -- with Harvey Charles as your supervisor?

15    A.  Yes.

16    Q.  Okay.  This letter says Dear Kamiar, the provost has

17  signed the form from Dean Harvey Charles for non-renewal of

18  your appointment.  A copy is attached together with your letter

19  dated May 8.  Did anybody explain to you why the provost signed

20  off on your non-renewal?

21    A.  No, I have no idea because my direct supervisor was

22  Harvey Charles not the provost.

23    Q.  Okay.  This says the next step in this process is for

24  the President to review the file and make his decision.  Before

25  the decision, however, you have five working days to review the

Alaei v SONY - 6/6/2022

```
 1   file and submit a statement in response to any item in it.  Did
 2   you subsequently prepare a response?
 3        A.  Yes.
 4             MR. CASTIGLIONE:  Submit into evidence
 5        Claimant's Exhibit Thirty-seven.  It's a letter dated May
 6        22nd, 2018 to President Rodriguez from Dr. Alaei.
 7             MR. ROTONDI:  No objection.
 8             THE COURT:  Without objection, Exhibit Thirty-
 9        seven is admitted.  And Mr. Castiglione, this is the
10        aforementioned Claimant's response?
11             MR. CASTIGLIONE:  This is the response to the
12        President, yes, based on the last email, Your Honor.
13        BY MR. CASTIGLIONE:  (Cont'g.)
14        Q.  Dr. Alaei, is this the response you prepared to Mr.
15   Hedberg's email after the provost signed your non-renewal?
16        A.  Yes.
17        Q.  Okay.  And, in here, you identify a number of similar
18   type of acknowledgements and -- and achievements about your
19   work.  Is it fair to say?
20        A.  Yes.
21        Q.  Okay.  And I see in the first -- the first page,
22   you're talking again about the fundraising of about four
23   million dollars and twenty-one times higher and you continue to
24   identify the similar types of points about securing six million
25   five hundred thousand.
```

Alaei v SONY - 6/6/2022

1      At the end, I want to read this paragraph that says, by

2  laying out the enrollment and research grants that I have

3  generated, it's clear that there is no performance based or

4  financial reason for the non-renewal.

5      In the absence of any performance based justification for

6  this action, a reasonable person can only assume it's -- it is

7  related to reasons that I've been placed in alternative

8  assignment.  As part of this non-renewal process, did anybody

9  ever explain to you why it was non-renewal and if it was

10  related to the alternative assignment?

11      A.  Technically, they made the decision before they

12  started my interrogation.

13      Q.  Okay.

14      A.  The date was April 30th and my first interrogation was

15  May 9th.

16          MR. ROTONDI:  Your Honor, move to strike as non-

17      responsive.

18          THE COURT:  And to the extent that he is

19      attributing motives to others, that's a reasonable

20      objection.  Sustained.

21          MR. CASTIGLIONE:  Sure.

22  BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.  Let me ask you this, Dr. Alaei.  Did anyone explain to

24  you why they were seeking non-renewal even after submitting

25  these letters to the President Rodriguez to Bill Hedberg.  Did

Alaei v SONY - 6/6/2022

1    anyone explain it to you?

2        A.   No.

3        Q.   Okay.  But they started the non-renewal process before

4    you had your first meeting with SUNY about the alternative

5    assignment disciplinary investigation?

6        A.   Yes.

7        Q.   Okay.

8        A.   While I met all the metrics.

9        Q.   So when did the disciplinary investigation ultimately

10   end?

11       A.   So it ends six months later.  I think it was May --

12   not May.  August 9th, 2018.

13       Q.   Okay.  And can you explain to me how the disciplinary

14   investigation, how you learned it came to an end?

15       A.   So they invited me go to a meeting and in the meeting

16   was two gentlemen, you know, Randy and Brian from the

17   University were there and I and my representative, you, were

18   there.

19       Q.   Okay.  And that was at SUNY's campus?

20       A.   Yes, it was in SUNY campus.  And then they told me,

21   there is nothing founded.  And you are good to go back to work

22   next day nine a.m. and I said, I haven't had access to my

23   emails for six months.  All my projects was damaged.  They

24   said, no problem.  We fix it.  Tomorrow morning, you will have

25   access to email.  I will talk, even Randy said, I will talk to

Alaei v SONY – 6/6/2022

1   I.T.S.

2                    THE COURT:  Okay.  Doctor, who was this meeting

3        with?

4                    THE WITNESS:  Randy and Brian from university.

5                    MR. CASTIGLIONE:  Randy Stark and Brian Selchick

6        with Human Resources.

7                    THE COURT:  Okay.  Got it.

8        BY MR. CASTIGLIONE:  (Cont'g.)

9        Q.  And at that meeting on the 9th, were you told they

10   were going to impose discipline against you?

11       A.  No, they said nothing found.

12       Q.  Were you told they were going to -- there were any

13   policy violations?

14       A.  No.

15       Q.  Okay.

16       A.  They said go -- go back to work.

17                    THE COURT:  Okay.  Good.  Just come back to work

18       tomorrow.

19                    THE WITNESS:  Yeah.

20       BY MR. CASTIGLIONE:  (Cont'g.)

21       Q.  Okay.  so the next day, did you go back to work?

22       A.  Yes.  After six months, I couldn't believe it.

23       Q.  Well, tell me what happened when you went back to

24   work?

25       A.  I was on my way to go to work, they called me up to

Alaei v SONY - 6/6/2022

1  Office of Human Resource.  I didn't know why.  But then I went

2  there.  Again, Brian and Randy were there and show me a letter

3  that you're terminated.

4      Q.  If I could --.

5      A.  I said why?  This is what it is.

6           MR. CASTIGLIONE:  If I can refer you to --

7      introducing Claimant's Exhibit Forty-four, Exhibit CC in

8      my list.  A letter from SUNY Albany dated August 10th,

9      2018 to my client?

10           MR. ROTONDI:  No objection.

11           THE COURT:  Without objection, Exhibit Forty-

12      four is admitted.

13      BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.  Dr. Alaei, is this the letter you received that you

15  were just referencing?

16      A.  Yes.

17      Q.  This says, in part this letter will also serve to

18  notify you that your term appointment as a lecturer in a GI --

19  Global Institute for Health and Human Rights, G.I.H.H.R. will

20  not be extended beyond the present termination date.  Close of

21  business August 9th, 2019.

22      It also says in accordance with Article 32.3 of the U.U.P.

23  agreement, the university is exercising its right and has

24  elected to terminate your appointment effective August 10th,

25  2018.  We will pay the balance of salary remaining under term

1   appointment from August 10th, 2018 through August 9th, 2019.

2       Did SUNY subsequently pay for that year, '18 through '19?

3       A.  Yes, they paid that but they just paid for one year

4   because Evergreen had two years.

5       Q.  Did they --?

6                   THE COURT:  But the question was --

7                   THE WITNESS:  Yes.

8                   THE COURT:  -- in the letter, it seems to

9           reflect they wrote you a check for one-year salary?

10                  THE WITNESS:  Yes.

11  BY MR. CASTIGLIONE:  (Cont'g.)

12      Q.  Did -- they didn't pay you for the year 2020?

13      A.  No.

14      Q.  Nor 2021?

15      A.  No, even they didn't pay for the benefits.

16                  THE COURT:  Is it fair to say, Doctor, that on

17          this day, you were notified that your employment was

18          ending and that you were not to report to work again but

19          that they would pay you one additional year of salary?  Is

20          that what happened?

21                  THE WITNESS:  Yes, they gave me one year but no

22          benefits.

23                  THE COURT:  I understand.  Okay.  Go ahead.

24  BY MR. CASTIGLIONE:  (Cont'g.)

25      Q.  Did they give you any benefits?

Alaei v SONY – 6/6/2022

1      A.  No, no benefits while I was entitled for sixty percent

2   of salary as benefit, which is reported no benefits.  That was

3   I got no health insurance after.

4      Q.  And you had -- your health insurance was terminated?

5      A.  Yes.

6      Q.  When -- do you recall when it was terminated?

7      A.  Say it again.

8      Q.  Do you recall -- do you recall when it was terminated?

9      A.  Few weeks.

10     Q.  Few weeks after you were given this letter?

11     A.  Yeah.

12     Q.  Okay.  Dr. Alaei, I'd like to talk to you now about

13  your claim in this matter for emotional distress.  How did you

14  feel going through this process with SUNY Albany while on

15  alternative assignment, and dealing with the issues we've

16  discussed today?

17     A.  Yeah.

18          MR. ROTONDI:  Objection, Your Honor.

19          THE COURT:  Again, Counsel, I thought we'd cross

20     this bridge.  I know the doctor both here and -- the Court

21     will make a record observation that several times the

22     doctor has become emotional during his testimony.

23          He has testified to the fact that he was

24     distressed.  He has testified to the fact that he was

25     embarrassed.  Isn't any further inquiry along those lines

Alaei v SONY – 6/6/2022

112

1    properly heard in damages if liability is found.

2            MR. CASTIGLIONE:  Well, I think part of showing

3    that you suffered emotional distress is identifying what

4    you've suffered and treatment you've received and doctors

5    you've seen, I don't mind stipulating to it.

6            We had submitted a number of documents -- we

7    have additional documents, what doctors he's seen are

8    provided, diagnosis and whatnot and explained what kind of

9    treatment he received, medication he was put on, what he

10    had to do to deal with these things.

11            I understand, Your Honor, moving things along

12    but I do think for an emotional distress, you have to show

13    you suffered emotional distress and that somebody -- you

14    were seeing somebody to address the conditions.

15            You know, besides, that's not a quantification

16    of well, how do you put a dollar value on that.  It's

17    about, well, did you suffer the emotional distress.

18            THE COURT:  Well, to take his point, Mr.

19    Rotondi, who established a prima facie case that emotional

20    distress was endured, wouldn't that help him prove that

21    point about it necessarily, use counsel's words, assigning

22    the quantification to it.

23            MR. CASTIGLIONE:  I think it's -- I think it

24    goes beyond that, Your Honor.  He -- the doctor specified

25    certain acts.

113

Alaei v SONY – 6/6/2022

1           THE COURT:  I'm sorry.

2           MR. CASTIGLIONE:  The doctors testified to

3      certain acts.  You have indicated and asked him, I

4      believe, that what SUNY did to you caused you stress and

5      anxiety and -- and embarrassment.  We know that.

6           After that point, I think anything that delves

7      into, you know, where you went, what type of treatment,

8      all that goes to damages.

9           THE COURT:  Well --

10          MR. CASTIGLIONE:  Does it act itself?

11          THE COURT:  -- let me argue -- again, let me

12     argue (unintelligible) Claimant's brief on that point.  To

13     the extent that I, as the finder of fact, just say, well,

14     anybody is going to say that.  It made me feel bad.

15          And -- and -- and if I, as the finder of fact,

16     heard such testimony and concluded, well, that's all self-

17     serving, anybody's going to say that.  Doesn't this help

18     prove and support his trial testimony that he did endure

19     emotional distress.

20          MR. ROTONDI:  Well, he, to recover from

21     emotional distress, there has to be some type of personal

22     injury, or you have to be you know, in the zone of danger,

23     right?

24          MR. CASTIGLIONE:  There -- there is case law

25     that talks about fear for safety if -- if -- if SUNY did

Alaei v SONY – 6/6/2022

1    something that caused a fear for safety on the part of my

2    client, he is able to talk about how he had fear for

3    safety.  He is able to talk about what I went through

4    caused me these things to -- to -- to get treatment.

5         Because like you said, Your Honor, if somebody

6    just went through them and didn't go see a doctor and

7    didn't get medication and didn't have all these physical

8    and emotional problems, you'd say, well, there is no

9    evidence of emotional injury, so you don't sustain that

10   burden.  But I think that's part of it.

11        We're not talking about the money aspect of

12   what, you know, how much money should be based on, you

13   know, these things he went through.  So it -- to me, it's

14   inherently part of it.  But in terms of emotional

15   distress, if he had fear for his safety or he had fear

16   about what he was going through and it could be based on

17   his prior experiences, I think we're -- we're -- we're

18   willing to explore it.  That's what --.

19        THE COURT:  I don't know that the Court would be

20   so willing to entertain proof that because of his prior

21   incarceration in Iran, this triggered emotional distress

22   here.  That to me raises a -- a strong proximate cause

23   issue.  So I don't -- I don't know that that's your

24   strongest argument.

25        To the extent that I think it's appropriate, Mr.

Alaei v SONY - 6/6/2022

1    Rotondi, for me to hear some limited proof that this is

2    further support of the -- the doctor's trial testimony

3    that he was distressed because this is what happened

4    after.

5         And -- and I think to counsel's point, had he

6    had not seen a doctor or not taken ameliorative steps,

7    that certainly would be fertile ground for you to cross

8    examine him on that.

9         So I'm going to permit it.  I'll note an

10   objection for the record that you make and I'll say this,

11   I'll reserve ultimately on -- on whether or not I'll

12   consider it and then within the confines of the trial

13   decision, I'll -- I'll make a ruling and -- and I'll say

14   this was properly before me or this was not properly

15   before me.

16        But I'll give you a limited leeway.  And what --

17   and I -- I guess I would ask you to lead the witness in

18   this respect, did you go see a doctor, did you do this.

19   But I -- I -- I'll forewarn you now, I'm not going to --

20   I'm not going to permit questions where the answer is, I

21   feared for my safety because I was imprisoned in Iran.

22   I'm not going to hear that testimony.

23        MR. CASTIGLIONE:  Okay.

24        THE COURT:  I'll tell you that now.  Do you want

25   to make an objection to the line of inquiry, Mr. Rotondi?

Alaei v SONY – 6/6/2022

1           MR. ROTONDI:  I mean, I think I already have,

2      Your Honor.  My only point is that whether I think the

3      question at the liability trial should be whether the

4      complaint rises to the level of where it would create

5      emotional distress, regardless of what happened

6      afterwards.

7           THE COURT:  I -- I -- I'd say that's a fair

8      point, but that's a legal point.  You know, the --

9           MR. ROTONDI:  Yes.

10          THE COURT:  -- as described to me, Judge Milano,

11     this doesn't meet the legal definition of -- of -- or --

12     or -- or meet my burden, the Claimant's burden on

13     emotional distress, so.

14          MR. CASTIGLIONE:  Understood.  And I -- I can do

15     that.  I just need to grab one document right here.

16          THE COURT:  Let's go off the record for a

17     minute.

18          (Off the record; 14:32:57 p.m. to 14:34:34 p.m.)

19          THE MONITOR:  On the record.

20          THE COURT:  Thank you.

21     BY MR. CASTIGLIONE:  (Cont'g.)

22     Q.  Dr. Alaei, I want to talk to you about mental or

23     physical health problems.  Can you explain to me your,

24     basically, your health condition before February, 2018 about

25     how your life was mentally, emotionally?

**Associated Reporters Int'l., Inc.   518-465-8029**

1    A.    Yeah.    I was very active doing, you know, physical

2    exercise, happy faces, you know, making -- engaged in the

3    community and I was very engaged with a family and was very

4    active in my professional career.

5    Q.    And what about after the incident?

6    A.    Unfortunately, after that, I -- I know I suffered

7    depression.    I couldn't sleep for several weeks.    I got

8    (unintelligible) due to stress, that -- was admitted to the

9    hospital in Italy and then after a few weeks, I had some impact

10   on my vision, in -- in my -- one side of vision due to stress.

11   And then my -- I had a very healthy hair, in -- in few

12   weeks after the sudden, I lost significant parts of it due to

13   stress which was under medication for several years.    And also,

14   I -- I -- I saw a -- a psychologist and he -- she tried to help

15   me to overcome, but unfortunately it was not very successful.

16   Then, had additional damage to my -- I got a psoriasis

17   (unintelligible) due to the stress.    So it went, coming back

18   and also, there was some, you know, due to the helpless

19   adjuster due to stress, one side of my face was completely

20   changed while I used to have T.V. interviews regularly, I was

21   embarrassed to go for a while.    Then over the time they got a

22   little better.

23   Q.    Let me ask you about medical assistance.    Did you see

24   a Dr. Naveen, N-A-V-E-E-N, Achar, A-C-H-A-R, a psychiatrist?

25   A.    Yes.

Alaei v SONY – 6/6/2022

```
 1              THE COURT:  Connect the question.

 2       BY MR. CASTIGLIONE:  (Cont'g.)

 3       Q.  Did you see a Kathleen Morris, psychologist?

 4       A.  Yes.

 5       Q.  Did you see a Dr. Reza A-Z-I-M-I, ophthalmologist?

 6       A.  Yes.

 7       Q.  Did you see a Dr. Stefano Bucci, B-U-C-C-I an

 8  Otolaryngologist?

 9       A.  Yes.

10              THE COURT:  What kind of doctor is that?

11              THE WITNESS:  He is E.N.T.

12              THE COURT:  A what?

13              THE WITNESS:  E.N.T., audio.

14              THE COURT:  Okay.  Go ahead.

15       BY MR. CASTIGLIONE:  (Cont'g.)

16       Q.  Did you see a Maniejeh, M-A-N-I-E-J-E-H contractor

17  ophthalmologist?

18       A.  Yes.

19       Q.  What about a Mehdi, M-E-H-D-I, Rashighi, R-A-S-H-I-G-

20  H-I, dermatologist?

21       A.  Yes.

22       Q.  Did you see --?

23              THE COURT:  And are all of these visits after

24       August of 2018?

25              THE WITNESS:  Yes.
```

Alaei v SONY - 6/6/2022

1          THE COURT:  Go ahead, Counsel.

2      BY MR. CASTIGLIONE:  (Cont'g.)

3      Q.  Were some of them during the time of alternative

4  assignment?

5      A.  Yes, during February, I started and continuing --.

6              THE COURT:  Right.  I think you've made your

7      point, Counsel.

8      BY MR. CASTIGLIONE:  (Cont'g.)

9      Q.  Well, there is additional doctors, but let me ask you

10  this.  Were -- did any of these doctors prescribe any

11  medication for you based on how you were feeling and -- and

12  what the doctor had decided was appropriate?

13      A.  Yes.  Medication and in -- invasive diagnostic

14  procedure, for example, for my eyes, they did.

15      Q.  What -- can you tell me what types of medication you

16  were taking?

17      A.  So different medication based -- for each of them, for

18  like for mental health, I was under anti-depression, anti-

19  anxiety, for dermatology was under medication for dermatology,

20  for each of them was respective medication and therapy.  I had

21  several session of, you know, psychology therapy.

22      Q.  Did there come a time where you -- you had mentioned

23  earlier, you didn't have health insurance?

24      A.  Yes, unfortunately.

25      Q.  Were you able to seek medical attention during that

Alaei v SONY - 6/6/2022

1  time?

2       A.  Unfortunately, I couldn't but I reach out to some of

3  those who provided pro bono until I got new health insurance.

4       Q.  And under your new health insurance, did you continue

5  to seek medical help?

6       A.  Yes.

7       Q.  Okay.  And are you seeking -- are you still seeing

8  medical treatment today?

9       A.  Yes.

10       Q.  Okay.  I want to talk to you additionally about

11  impacts on community relationships.  Can you explain to me the

12  type of community relationships you were engaged in before you

13  were placed on alternative assignment before February, 2018?

14       A.  Yes, I was the leader of my Persian American

15  community.  I established Persian American Community College in

16  Albany that we organized major events in Albany law school.

17  Every year we had at least, you know, two to three events.  And

18  also, I was part of the Iranian American Alliance, which was

19  the top one hundred Iranian Americans successful in the

20  country.

21       Q.  What about after going through alternative assignment

22  and being terminated by SUNY Albany?

23       A.  Unfortunately, I couldn't continue because some of

24  them, they participate in the meeting that Harvey Charles had

25  the day after my assignments and that was huge, you know,

Alaei v SONY - 6/6/2022

1   misinformation among Persian community.

2       Q.  What about marital situation?  Were you married before

3   being on alternative assignment?

4       A.  Yes.

5       Q.  Can you --?

6               THE COURT:  I'll ask counsel to move on from

7       that.

8       BY MR. CASTIGLIONE:  (Cont'g.)

9       Q.  What about professional opportunity?  We had talked

10  about you were deprived access to your SUNY email account.  Can

11  you explain to me what impacts that might have had or that had

12  on efforts you were pursuing at the time?

13      A.  Sure.  There was significant --.

14              MR. ROTONDI:  Objection.  I -- this doesn't

15      sound -- this sounds more like, you know, lost business

16      opportunities.

17              THE COURT:  And -- and again, I'm going to

18      sustain the objection, Counsel, because I don't think this

19      witness is competent to testify that his experiences with

20      SUNY did or didn't result in -- in decisions other made.

21              MR. CASTIGLIONE:  Well --.

22              THE COURT:  Now, he did reference one New York

23      college opportunity that came in but to the extent that

24      you would seek to elicit from him, this cost him other job

25      opportunities.  That's too far afield and two, and this

Alaei v SONY - 6/6/2022

1      witness was not competent to testify to this.

2      BY MR. CASTIGLIONE:  (Cont'g.)

3      Q.  Well, can I ask him, did you ever hear back from your

4      college after January?

5      A.  No, because I had no access to my email.

6      Q.  And do you know --?

7              THE COURT:  Next question.  It -- it -- they

8          filled the position.  They abolished the college.  The

9          college went bankrupt, again, toward -- unless in

10         admissible form, I get proof that somebody from your

11         college says he did not get a job offer because of this,

12         that incompetent testimony.

13     BY MR. CASTIGLIONE:  (Cont'g.)

14     Q.  Before this, you had received a number of awards

15     before the incident.  Have you received any awards similar to

16     what you had received before this incident?

17     A.  Unfortunately, during the past three years, none.

18     While I received a significant human rights award because I was

19     human right advocate and now it was opposite that there are a

20     lot of questions about this.

21     And also, the project I was working with C.D.C. for three

22     years about criminal justice, about H.I.V. disclosure,

23     completely destroyed.  When I reached out to the C.D.C., they

24     said we are not anymore interested due to what happened in

25     UAlbany.

**Associated Reporters Int'l., Inc.   518-465-8029**

1      And also, I wrote a chapter in textbook that because I

2   couldn't communicate for six week, I lost that chapter of

3   textbook.

4      Q.  The opportunity to submit that chapter to textbook.

5      A.  And also, there was another project I was working

6   three years on youth health.  I lost --.

7                  MR. ROTONDI:  Objection.

8                  THE COURT:  Yes, you've gone beyond the scope of

9          the question, Doctor, thank you.

10                 Counsel?

11   BY MR. CASTIGLIONE:  (Cont'g.)

12      Q.  Dr. Alaei, had you been nominated for a Nobel Peace

13   prize in your life?

14      A.  Yes.  When I was in prison.

15                 MR. ROTONDI:  Objection, relevance.

16                 THE COURT:  Who hasn't?

17                 MR. CASTIGLIONE:  Well, Your -- Your Honor, this

18         obviously goes to the type of situation of how he was

19         treated before this.

20                 THE COURT:  No, I'll sustain the objection,

21         counsel.  Next question.

22   BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.  Grant you had been working on beforehand that you were

24   consistently receiving support from. did that type of support

25   continue after being terminated by SUNY Albany?

Alaei v SONY – 6/6/2022

1      A.  No.  Unfortunately, I used to receive, you know,

2  several federal grants from state departments but after what

3  happened to that, unfortunately, I can't.

4              MR. CASTIGLIONE:  Okay.  Those are all the

5      questions I have besides re-direct, Your Honor.

6              THE COURT:  Okay.

7              MR. CASTIGLIONE:  Thank you.

8              THE COURT:  We want to go forward.  We want to

9      take a five-minute recess, folks.

10             MR. ROTONDI:  I'll take -- sure.

11             THE COURT:  All right.  Let's -- let's make it a

12     seven-minute recess.  So back at two fifty.  Thank you.

13     Off the record.

14             (Off the record; 14:43:57 p.m. to 14:56:43 p.m.)

15             THE MONITOR:  On the record.

16             THE COURT:  Okay.  We just concluded the direct

17     examination of the claimant.  Mr. Rotondi, cross

18     examination?

19             MR. ROTONDI:  Yes, Your Honor.  All set.

20             MR. CASTIGLIONE:  We're good.

21             CROSS EXAMINATION BY MR. ROTONDI:  (Cont'g.)

22     Q.  Good afternoon, Doctor.  How are you?

23     A.  Good, and you?

24     Q.  Before we begin, when we talk about the G.I.H.H.R.,

25  I'm going to call it the Global Institute, okay?

Alaei v SONY – 6/6/2022

1       A.  I know.

2       Q.  Now, you had the SUNY email account because you were a

3   SUNY employee, correct?

4       A.  Yes.

5       Q.  You were listed on the G -- you were listed on the

6   Global Institute website because you were a SUNY employee,

7   correct?

8       A.  Because I was director of G.I.H.H.R.

9       Q.  What's that?

10      A.  Because I was director of G.I.H.H.R.

11      Q.  All right.  But you were director because you were a

12  SUNY employee?

13      A.  Yes.

14      Q.  Correct?

15      A.  Yes.

16              THE COURT:  Off the record for a minute.

17              THE MONITOR:  Off the --.

18              (Off the record; 14:57:55 p.m. to 14:58:08 p.m.)

19              THE MONITOR:  On the record.

20      BY MR. ROTONDI:  (Cont'g.)

21      Q.  Your brother, Arash, he had been co-director of the

22  Global Institute, correct?

23      A.  Yes.

24      Q.  Did you two live together --

25      A.  Yes.

Alaei v SONY – 6/6/2022

1    Q.  -- while you were employed at SUNY Albany

2    A.  For some part, yes.

3    Q.  Was he ever placed on alternate assignment?

4    A.  Yes.

5    Q.  Okay.  Do you know when?

6    A.  I think it was a year before me.

7              THE COURT:  Say that again.

8              THE WITNESS:  A year before me.  It was 2017.

9    Yeah.

10             THE COURT:  A week before, a year before?

11             THE WITNESS:  A year, a year.

12             THE COURT:  One year?

13             THE WITNESS:  One year.

14   BY MR. ROTONDI:  (Cont'g.)

15   Q.  Could you -- could I -- could I ask you to just keep

16   your voice up?

17   A.  Sorry.  Sorry.

18   Q.  No, no, no need to apologize.  Did your brother tell

19   you why he was placed on alternate assignment?

20   A.  No.

21   Q.  Okay.  While he was on alternate assignment, did he

22   work from home?

23   A.  Yes.

24   Q.  Did you ever discuss any restrictions that may have

25   been placed on your brother while he was an alternate

1  assignment with anyone?

2      A.  No.

3      Q.  Did you ever discuss those restrictions with your

4  brother?

5      A.  No.

6      Q.  When you were on alternate assignment, you were paid

7  your salary, correct?

8      A.  Say it again.

9      Q.  When you were on alternate assignment, you were paid

10 your salary?

11     A.  My university paid my salary.

12     Q.  Yes.

13     A.  Yes.

14     Q.  And you -- you performed work, correct?

15     A.  Yes.

16     Q.  Did you have any contact -- who is Fardin Sanai?  Do

17 you know him?

18     A.  He is Vice President and board member of the

19 G.I.H.H.R.

20     Q.  Did you have any contact with Fardin Sanai when you

21 were on alternate assignment?

22              THE COURT:  When -- when the witness was on

23      alternate assignment?

24              MR. ROTONDI:  Yes.

25              THE WITNESS:  I -- I can't remember.  Maybe

```
 1        because he was part of Persian community as well,

 2        participated in Persian communities.

 3                THE COURT:  Did you say Persian community?

 4                THE WITNESS:  Yes.

 5                THE COURT:  Okay.  Go ahead, Counsel.

 6        BY MR. ROTONDI:  (Cont'g.)

 7        Q.  Did you have any contact with Kevin Williams when you

 8   were on alternate assignments?

 9        A.  Yes.  A lot of people contacted me, came to my house

10   because they were board members of G.I.H.H.R. and they were

11   shocked, nobody consulted with them.

12                THE COURT:  Okay.  That's fine, Doctor.

13                MR. ROTONDI:  Doctor, I'm going to show you

14        what's been marked as -- there are (unintelligible)

15        exhibit, Joe.  They've already --.

16                MR. CASTIGLIONE:  Yeah.  The one that's in.

17                THE COURT:  Just that I need read into the

18        record what the admitted exhibit number is as we're doing

19        this.

20                MR. ROTONDI:  Well, they're mine.  These are my

21        exhibits.

22                THE COURT:  Okay.  Defendant's exhibits.

23                MR. ROTONDI:  Yes.  That's my understanding that

24        they're all in.

25                THE COURT:  And they were all admitted.  So what
```

Alaei v SONY - 6/6/2022

129

1      exhibit are we looking at here, Mr. Rotondi?

2      BY MR. ROTONDI:  (Cont'g.)

3      Q.  I got Exhibit A, Doctor.  Okay.  Let's scroll down.

4    Is that an email from you to President Rodriguez dated May

5    22nd, 2018?

6      A.  Yes.

7      Q.  Okay.  May I ask you to look at the fourth paragraph?

8            THE COURT:  Number four?

9            MR. ROTONDI:  Yes.

10           THE WITNESS:  I can't see the title.  Yeah.

11     Yes.

12     BY MR. ROTONDI:  (Cont'g.)

13     Q.  Can you see that?

14     A.  Yes.

15     Q.  I think I can sharpen it for you if you need to.

16     A.  Thank you.  No, that's fine.

17     Q.  All right.  Correct me if I'm wrong but the paragraph

18   says, in addition, my initial appointment dated April 16th,

19   2014 and signed by President Robert J. Jones states that, "to

20   give you the security of at least two years employment, the

21   appointment will be reviewed annually for possible extension by

22   another year".  Therefore, the initial end date, April 30th,

23   2019 of my last term renewal form signed by interim provost on

24   April 6th, 2017 is incorrect.

25           Did you ever back what you stated in paragraph four that

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1   the -- that the contract renewal with the initial end date of

2   April 30th, 2019, do you ever bring -- bring a grievance based

3   on that?

4       A.  No.

5       Q.  And is it fair to say that by April 30th, 2018, you

6   were aware that steps were being taken to non-renew your

7   contracts?

8       A.  That was my response to that, yes.

9       Q.  And it's fair to say at that time, at least by April

10  30th of 2018, you also knew that the SUNY was going to give you

11  one-year notice -- one-year salary, correct?

12      A.  No, they just say we don't want to renew you.

13      Q.  I'm sorry?

14      A.  They just say we don't want to renew you.  They just

15  started the process but it was not decision.  It was just

16  initiating.

17      Q.  Is it fair to say though by the end of April of 2018,

18  you knew that the non-renewal process had started?

19      A.  Yes.  They told me by letter.

20      Q.  And you also knew that the intention was to give you

21  one-year salary, correct?

22      A.  No, they wanted to non-renew me.  They didn't say one

23  year or two-year salary.

24              MR. ROTONDI:  All right.  Can we just -- can I -

25      - sorry, Your Honor.

Alaei v SONY - 6/6/2022

1          THE COURT:  Yeah.

2               (Off the record; 15:05:48 p.m. to 15:06:57 p.m.)

3          THE MONITOR:  On the record.

4          THE COURT:  On the record.

5     BY MR. ROTONDI:  (Cont'g.)

6     Q.  Doctor, I'm showing you what's been previously --

7   previously marked as Plaintiff's Exhibit Thirty-six.

8          THE COURT:  In evidence?

9     BY MR. ROTONDI:  (Cont'g.)

10    Q.  In evidence, and ask you does that contain a letter

11  from you to Bill Hedberg -- William Hedberg?

12    A.  Yes.

13    Q.  Dated May 8th, 2018?

14    A.  Yes.

15    Q.  Okay.  And I'll refer you to the last paragraph.  Can

16  you read that to yourself?

17          THE COURT:  Doctor, it'd be fair to say as of

18       May 8th, you're aware -- you were aware that SUNY was

19       taking the position (unintelligible) one year?

20          THE WITNESS:  Yes.

21          THE COURT:  Would you agree with that?

22          THE WITNESS:  Yes.

23          THE COURT:  Counsel.

24          MR. ROTONDI:  Yes.

25    BY MR. ROTONDI:  (Cont'g.)

Alaei v SONY - 6/6/2022

132

```
1      Q.  Did you ever grieve -- bring a grievance based on the
2   fact that SUNY was going to give you one-year notice?
3      A.  Yes, I talk to U.U.P. and the U.U.P. said I will fix
4   it because they are wrong.
5      Q.  Okay.  So you -- you grieved that?
6      A.  Maureen, yes -- and she said I would just call them
7   and that's done because I did it a year ago and they fixed it.
8      Q.  Let me show you what's been stipulated into evidence
9   as Defendant's Exhibit B.
10                 THE COURT:  B as in boy?
11                 MR. ROTONDI:  B as in boy.
12                 THE COURT:  Okay.
13     BY MR. ROTONDI:  (Cont'g.)
14     Q.  Okay.  It looks like we already talked about this,
15  right?  This is --
16     A.  Yeah.
17     Q.  -- the initial appointment letter?
18     A.  Yes.
19     Q.  All right.  I'm going to refer you to that second
20  paragraph.  It says your initial appointment will be for three
21  years, commencing on May 1st, 2014, correct?
22     A.  Yes.
23     Q.  So that would end on April 30th, 2017, correct?
24     A.  Yes.
25     Q.  All right.  It also looks like -- the initial
```

**Associated Reporters Int'l., Inc.   518-465-8029**

133

1   paragraph where it says it's my pleasure to offer you an

2   appointment to the University at Albany as Research Associate

3   Professor and lecturer in the Department of Public

4   Administration and Policy, correct?

5        A.  Yes.

6        Q.  And the lecturer title was non-tenure track, correct?

7        A.  Yes.

8        Q.  And it also paid a salary of, at the time, ninety-two

9   thousand six hundred and thirty dollars, correct?

10       A.  There were two position, one is Associate Professor --

11   Research Associate Professor and one was lecturer.  For

12   lecturer, I supposed to teach.  For Research Associate

13   Professor are supposed to do research.

14       Q.  Down in the second paragraph though it does say, the

15   third line, the lecturer budget title is a non-tenure track?

16       A.  Yeah.

17       Q.  Okay.  You also had -- and I'm going to direct your

18   attention to the second to last paragraph, you will have three

19   complimentary non-stipendiary appointments.  Those are

20   appointments that don't pay any money, correct?

21       A.  Yes.

22       Q.  And was one of them director of G.I.H.H.R.?

23       A.  It was continued of director because I was appointed

24   before this by James Diaz, yes.

25       Q.  I'm just asking you if your G -- G-I-H-H-R

1    appointment, did not come with a salary, correct?

2        A.   No.

3        Q.   And I'll show you what's in evidence as Defendant's

4    Exhibit ,C.  Do you recognize that?

5        A.   Yes.

6        Q.   And you signed that on May 28th, 2014?

7        A.   Yes.

8        Q.   And is it fair to say that Exhibit C is a confirmation

9    of your appointment?

10       A.   It was an internal letter because it was not signed by

11   the president.

12       Q.   I'm sorry, what?

13       A.   It was internal letter because it was not signed by

14   the president.

15       Q.   But it's a confirmation of your -- of your full-time

16   term appointment?

17       A.   Yeah, it was internal letter, yes.

18       Q.   Posted to you, correct?

19       A.   Say it again?

20       Q.   It's sent to you, correct?

21       A.   Yeah, it's sent to me it was internal, which means

22   just human resource sent it to me.  It was not my appointment

23   letter.  My appointment letter was signed by the president.

24       Q.   And down below on May 20th, 2014 you accepted the

25   appointment?

Alaei v SONY – 6/6/2022

1    A.  I already accepted in the previous appointment letter,

2  it was just for the process.

3    Q.  Who -- how was that appointment letter negotiated?

4    A.  It was through the Evergreen 2020 that State of New

5  York gave to academic institution an opportunity to attract

6  talented faculties to a stay longer than short term period.

7  And that was a call by the chancellor of SUNY system to all

8  sixty-five campuses to submit the proposal.  It was a

9  competitive process.

10    And at University at Albany, several departments and

11  centers they submitted the proposal some of them they were not

12  accepted.  We submitted from G.I.H.H.R. which was accepted.

13  And as part of that -- so Bruce who -- who was designated by

14  Office of Provost among other provost team members that are

15  working to develop those metrics in March 2014.

16    Q.  Did -- did your appointment letter mention the word

17  Evergreen?

18    A.  No, they don't use the word Evergreen, yeah.

19    Q.  Does your appointment letter mention the word

20  Evergreen?

21    A.  This letter, no.  But everything was about Evergreen.

22    Q.  Does the appointment letter mention the word metrics?

23        THE COURT:  Mentioning what?

24        MR. ROTONDI:  Metrics.

25        THE COURT:  Metrics, okay.  Did -- did you

**Associated Reporters Int'l., Inc.   518-465-8029**

1        answer the question?

2                    THE WITNESS:  So the -- the letter didn't say

3        about metrics but the metrics was a memo was -- was linked

4        because the funding came from outside of university,

5        meaning that was --.

6                    THE COURT:  Doctor -- that -- that's enough,

7        Doctor.  Go ahead, Counsel.

8                    MR. ROTONDI:  If I ask you a question --.

9                    THE COURT:  No, I'll instruct the witness.

10       BY MR. ROTONDI:  (Cont'g.)

11       Q.  Let's go back to your appointment letter, your initial

12       appointment letter, Doctor.  Paragraph two, it says to give you

13       the security of at least two years of employment the

14       appointment will be reviewed annually for possible extension of

15       another year.  Now this letter doesn't say that possible

16       extension by another year is guaranteed, does it?

17       A.  No, but at least I have two years guaranteed.

18       Q.  Where does it say you have two years --?

19       A.  They say to give you --.

20                   THE COURT:  Hold on.  Stop, Doctor, and -- and

21               the counsel's attempt to make a point with you.  I'm going

22               just ask that you answer the question that's asked and not

23               unless asked by me not to expand, just -- if it's a yes or

24               no, yes, no.  Go ahead, Counsel.

25       BY MR. ROTONDI:  (Cont'g.)

Alaei v SONY – 6/6/2022

1      Q.  Can you show me where in the appointment letter in

2  paragraph two you are guaranteed two years' salary or two

3  years' notice?

4      A.  To give you the security of at least two years that's

5  the security word and two years is minimum is clearly of

6  employment.  That's clear.  And all the conversation during

7  that time was based on the Evergreen.

8      Q.  Mr. Kamiar, this is not responsive to my question.

9          THE COURT:  To the extent that the witness is

10         offering collateral information, of course I'm not going

11         to consider it, and -- and to the point you post, both of

12         them, a lot of what I see in front of me is going to be

13         for the finder of facts to interpret not -- unless it goes

14         to the -- the making of the bargain and making the

15         contract, it's for me to decide what the language means.

16         Go ahead, Counsel.

17     BY MR. ROTONDI:  (Cont'g.)

18     Q.  Let's go back to my other question when you started to

19  discussed Evergreen.  What I'm asking you specifically is when

20  -- did you have conversations with Robert Jones, PhD, about the

21  terms of your contract?

22     A.  I talked with the Provost and Office of the Provost

23  who are designated academic in charge of all these academic

24  terms.

25     Q.  So you had conversations with them about the terms of

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

138

1    your -- your --

2        A.  Yes.

3        Q.  -- appointment?

4        A.  Because it was the conversation based on all the

5    metrics and memos, and in my employment letter it is listed.

6            THE COURT:  Ask him a leading question.  Ask him

7        a leading question.

8            MR. ROTONDI:  I was asking a yes or no question,

9        Your Honor --

10           THE COURT:  Okay.

11           MR. ROTONDI:  -- but --.

12           THE COURT:  Did you talk to Robert Jones about

13       the terms of employment?

14           THE WITNESS:  No.

15           THE COURT:  Yes or no?

16           THE WITNESS:  No, there's two thousand

17       faculties, they don't talk individually about this stuff.

18           THE COURT:  Go ahead, Counsel.

19   BY MR. ROTONDI:  (Cont'g.)

20       Q.  You didn't get the U.U.P., which is United University

21   Professions, correct?

22       A.  I got U.U.P. with the practice.

23       Q.  You did not get them involved in this appointment

24   letter, did you?

25       A.  I shared everything with them.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/6/2022

1      Q.  When did you share it?

2      A.  When -- when this was -- all these processes happening

3  and non-renewal everything and they said they would call human

4  resource to fix it.  And this was --.

5              THE COURT:  I think counsel's point -- was the

6         point of your question in negotiating this letter U.U.P.

7         is not involved?

8              MR. ROTONDI:  Correct.

9              THE COURT:  Is that correct?

10             MR. ROTONDI:  Yes --

11             THE COURT:  Correct?

12             MR. ROTONDI:  -- that's all I'm asking.

13             THE WITNESS:  So based on my conversation with

14        U.U.P., they said they will fix it by phone.

15             THE COURT:  No -- no -- no -- no.

16             THE WITNESS:  But they tried.  But I don't know

17        in final decision what's there.

18             THE COURT:  Doctor, the question is when the

19        terms of this appointment letter were being discussed,

20        U.U.P. was not involved, correct?

21             THE WITNESS:  I don't know.

22             THE COURT:  You don't know.  Is that your

23        answer?

24             THE WITNESS:  Yeah, I don't know in 2014 U.U.P.

25        --

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1                    THE COURT:  Right.

2                    THE WITNESS:  -- was involved or not.  I have to

3        check with U.U.P.  In fact, in the other letter --

4                    THE COURT:  Stop.

5                    THE WITNESS: -- said U.U.P.

6        BY MR. ROTONDI:  (Cont'g.)

7        Q.  I'm showing you what's been entered into evidence as

8        Defendant's D.  Did you recognize that, Doctor?

9        A.  Yes.

10        Q.  And is that an appointment as a Clinical Associate

11        Professor without stipend?

12        A.  Yeah, that's a different appointment is pro bono

13        appointment.

14        Q.  I'm showing you what's Defendant's Exhibit F dated

15        July 18th, 2016.  Is this a renewal letter?

16        A.  Yes.

17        Q.  Okay.  And it's for the appointment to the faculty as

18        lecturer (Associate Dean Global\Interdisciplinary Research),

19        correct?

20        A.  Yeah, that was my appointment for Associate Dean.

21        Q.  And it says in -- in the second sentence this renewal

22        is for the period beginning May 1st, 2017 and ending April 30th

23        of 2018, correct?

24        A.  For my Associate Dean, yes.  Because you can be

25        faculty and you can be Associated Dean for one year and go back

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1    to your faculty.

2         Q.  It says lecturer, doesn't it?

3         A.  But in parenthesis Associate Dean, yes.

4         Q.  But it says lecturer as well, correct?

5         A.  Yes.  As I said I had --.

6              THE COURT:  Doctor, let's not argue with

7         counsel, let's just try and answer the question as asked.

8              MR. ROTONDI:  And it gives him --.

9              THE COURT:  And (unintelligible)  Mr. Rotondi.

10        If counsel, your lawyer thinks that a different

11        explanation or further explanation is necessary they'll

12        ask you about it.  But let's not debate counsel, okay?

13             THE WITNESS:  Sure.

14             THE COURT:  Go ahead, Counsel.

15   BY MR. ROTONDI:  (Cont'g.)

16        Q.  And do you recognize Defendant's Exhibit G?

17        A.  Yes.

18        Q.  Okay.  And that's dated April 6th, 2017, correct?

19        A.  Yes.

20        Q.  And it's confirming a renewal of your full-time term

21   appointment to the faculty as lecturer, correct?

22        A.  Yes.

23        Q.  And it was for the period beginning May 1st, 2018 and

24   ending April 30th of 2019, correct?

25        A.  Yes.

Alaei v SONY – 6/6/2022

1    Q.  That's one year, isn't it?

2    A.  For this letter, yes, because the salary was increased

3  --

4    Q.  One-year term?

5    A.  -- for one hundred thirty thousand dollars, yes,

6  because that was temporary increase.

7    Q.  Okay.

8    A.  It was not permanent increase.

9    Q.  And this is the August 10th, 2018.

10         THE COURT:  What do we have here, number or

11    letter?

12         MR. ROTONDI:  This is -- I'm sorry, this is I,

13    Doctor.

14    BY MR. ROTONDI:  (Cont'g.)

15    Q.  And this was renewing your term appointment as

16  lecturer, correct?

17    A.  Yes.

18    Q.  For the one hundred and thirty thousand dollars,

19  correct?

20    A.  Yes.

21    Q.  Okay.  And down below then they exercise a right to

22  terminate your appointment and pay the balance of that one

23  year, correct?

24    A.  For the G.I.H.H.R., yes.  But my primary appointment -

25  -.

Alaei v SONY - 6/6/2022

143

1                THE COURT:  Stop.  Next question.

2        BY MR. ROTONDI:  (Cont'g.)

3        Q.  Can you tell me if the term Evergreen appears in the

4   U.U.P. contract?

5                MR. CASTIGLIONE:  Objection.  My client can't be

6        held accountable to know what the entire U.U.P. agreement.

7                THE COURT:  Well, if he knows -- if he knows, he

8        can answer.

9                MR. CASTIGLIONE:  Okay.

10                THE COURT:  Do you know if the term Evergreen is

11        in the U.U.P. contract?

12                THE WITNESS:  No.

13                THE COURT:  No, it isn't or you don't know?

14                THE WITNESS:  I don't know.

15                THE COURT:  Next question.

16                THE WITNESS:  Because that was a new term.

17                THE COURT:  Stop, Doctor.

18                THE WITNESS:  I will.

19                THE COURT:  By the way, is the U.U.P. contract

20        one of the marked exhibits?

21                MR. CASTIGLIONE:  There's two.

22                THE COURT:  Okay.

23                MR. CASTIGLIONE:  Yes.

24                THE COURT:  Are either of those two yet

25        admitted?

Alaei v SONY - 6/6/2022

1                MR. CASTIGLIONE:  I -- I am fine with Claimant's

2         2011 to 2016 and I have the 2016, so --.

3                THE COURT:  But they're not in yet?

4                MR. CASTIGLIONE:  I haven't --

5                THE COURT:  It's --?

6                MR. CASTIGLIONE:  -- I haven't gone through --

7                THE COURT:  No, it's fine.  We'll take care of

8         it when we do housekeeping.  But they're coming in I

9         assume?

10               MR. CASTIGLIONE:  Yes.

11               THE COURT:  Good.

12               MR. CASTIGLIONE:  Okay.

13               THE COURT:  Mr. Rotondi?

14        BY MR. ROTONDI:  (Cont'g.)

15        Q.  The grants you discuss with Mr. Castiglione, those

16    were grants for the Global Institute?

17        A.  Yes.

18        Q.  So they were SUNY grants, correct?

19        A.  It depends how you define that because this is based

20    on P.I.s and when P.I.s move, they can bring those grants to

21    others.  This is a common practice across all the university.

22               THE COURT:  And what moves?

23               THE WITNESS:  The grants.  It's P.I.s in those

24        grants.

25               THE COURT:  (unintelligible) P.I.?

Alaei v SONY – 6/6/2022

1              THE WITNESS:  Principal Investigators.

2              THE COURT:  Principal --?

3              THE WITNESS:  Investigators.

4              THE COURT:  All right, go ahead.

5       BY MR. ROTONDI:  (Cont'g.)

6       Q.  Because those -- the grants you were working on were

7  to help, at least in part, fund the Global Institute, correct?

8       A.  Part of that, yes.

9       Q.  Are you aware if the term metrics is in the U.U.P.

10  contract?

11      A.  I don't know.

12      Q.  You spoke to your counsel about certain emotional

13  injuries you claim to have suffered.  Did they begin while you

14  were still a SUNY employee?

15      A.  After this happened, yes, is in February.  Everything

16  started at February.

17      Q.  Everything started after February?

18      A.  Yes.

19              MR. ROTONDI:  Just one second, Your Honor.

20              THE COURT:  Okay.

21              MR. ROTONDI:  That's all I have, Your Honor.

22              THE WITNESS:  Thank you.

23              THE COURT:  Anyone re-direct, please?  It's --

24              MR. CASTIGLIONE:  Yes, Your Honor, I'll be

25       brief.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1                   THE COURT:  Re-direct?

2                   MR. ROTONDI:  I can use --.

3                   MR. CASTIGLIONE:  Yeah -- yeah.

4                   MR. ROTONDI:  I was just going to use

5          (unintelligible).

6                   MR. CASTIGLIONE:  I was just going to have an

7          order to appointment letter and then the fifteenth and --.

8                   THE COURT:  Great, inform Mr. (unintelligible).

9          Great.

10                   MR. CASTIGLIONE:  Yeah.

11                   THE COURT:  Can you return all admitted exhibits

12          -- all marked exhibits to the Court monitor at the close

13          of business today?

14                   RE-DIRECT EXAMINATION BY MR. CASTIGLIONE:

15          Q.  Dr. Alaei, just to (unintelligible) some issues raised

16     by counsel, Defendant's Exhibit B, the initial appointment

17     letter April 16th, 2014, it says your initial appointment will

18     be for three years, you will have a twelve-month full-time

19     obligation.  Do you have an understanding what your initial

20     term appointment was?

21          A.  Yes, it was three years from the date it was said May

22     1st, 2014 until 2017.  Each year it will be reviewed, so it

23     means next year 2015 I will be extended for another year from

24     2017 to 2018.  So I had at least two years of secured

25     employment by university at Albany.

Alaei v SONY – 6/6/2022

1        Q.  So in other words, every year this three-year term was

2   reviewed and if it was pushed forward another year, you were

3   renewed the three-year term was renewed?

4        A.  Exactly.

5        Q.  Okay.  And if I can refer you to Defendant's Exhibit C

6   where this said confirm your full-time term appointment for the

7   period beginning May 1, 2014 April 30th, 2017.  Is that

8   consistent with your understanding about the term being three

9   years?

10       A.  Yes.

11       Q.  Okay.  If I can refer you to Defendant's Exhibit F.

12  This says the renewal -- this -- it reflects is my pleasure to

13  confirm a renewal of your full-time term appointments, the

14  renewals for the period beginning May 1, 2017 and ending April

15  30th, 2018.  What is your understanding at that point about

16  what your term appointment was supposed to be at that point?

17       A.  At this point, it was a new appointment added to my

18  primary appointment as Associate Dean and as -- if you look at

19  the date it's July 18th.  Because if you do renewal of faculty

20  should be in April not in July.  So they significantly

21  increased my salary because no lecturer at the University

22  received one hundred and thirty thousand dollars.  So that was

23  the renewal of the new Associate Deanship.

24       Q.  So would this be a renewal of a three-year period with

25  the first year being 2017 and 2018?

Alaei v SONY - 6/6/2022

```
1              MR. ROTONDI:  Objection, Your Honor.

2              THE COURT:  Sustained.  These are all questions

3       that are ultimately the finding that the finder of fact

4       will review and determine.  Next question, please.

5              MR. CASTIGLIONE:  Your Honors -- Your Honor, I

6       think my client would have an understanding of his

7       appointment term and what he was being appointed for.

8              THE COURT:  And -- and he could opine that he

9       thought he was being appointed to twenty-two thirty-four.

10      And if it's not the Court's understanding and

11      interpretation of the written document that -- that's not

12      going to hold water.

13      BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.  Okay.  Dr. Alaei, when you first got appointed, did

15  you have -- the discussions you said with Bruce Selchick?

16      A.  Yes.

17      Q.  Do you know what position he has now with SUNY?

18      A.  I think he is Chief of Staff.

19      Q.  And did you discuss --?

20              THE COURT:  You think he is what?  I'm sorry.

21              THE WITNESS:  Chief of Staff.

22      BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.  Chief of Staff for the President?

24      A.  Yes.

25      Q.  And at the time he was working for the Provost?
```

Alaei v SONY – 6/6/2022

1      A.  At that time he was working at the Office of Provost.

2      Q.  And you discussed the Evergreen -- Evergreen concept

3  with him?

4      A.  Yes.

5      Q.  And that was before you signed your appointment

6  letter?

7      A.  Yes, that was when they received the funding from the

8  SUNY system because that was a special appointment.  That was

9  not a regular appointment.  They -- they received money from

10  the state and they had to report by 2020.  If you see my

11  employment form that I gave it to you, it shows 2020 source

12  which is different than existing source.  This was not

13  University at Albany money, it was the state of New York money.

14      Q.  If I can refer you to Claimant's Exhibit Sixty-three.

15          THE COURT:  What is Sixty-three?

16          MR. CASTIGLIONE:  Sixty-three is an appointment

17      request by SUNY University at Albany that's signed out by

18      department heads.  This was reviewed by counsel.  This was

19      prepared by SUNY Albany, signed by (unintelligible).

20          THE COURT:  Are -- are we going to stipulate to

21      this or not, Mr. Rotondi?

22          MR. ROTONDI:  Yes, Your Honor.

23          THE COURT:  So Exhibit Sixty-three is admitted

24      without objection.

25      BY MR. CASTIGLIONE:  (Cont'g.)

**Associated Reporters Int'l., Inc.   518-465-8029**

```
1        Q.  If I can, Dr. Alaei, this document it says it's an

2   appointment request.  It appears to be for you.  It says your -

3   - your budget titled Lecturer, campus title Research Professor.

4   At the bottom it says 2020 R-2/P-26.  Is that reflective of

5   this 2020 program with Evergreen you had been referring to?

6        A.  Yes.  And that was the memo of P-26 which is attached

7   that I showed in my non-renewal as a memo which was addressed

8   here and it says that this is 2020 funding in handwritten.

9        Q.  And let me show you to the next page here change of

10  status request.  That also refers to this 2020 number.  It does

11  say appointment code term it says transfer effective date

12  05/01/14 through five 05/01/17.  Is that the term appointment

13  you were receiving?

14       A.  And then -- yes.  And in the remark they said 2020 R-

15  2/P-26 with reference to that memo attached with all the

16  metrics.  This is linked to the metrics.

17       Q.  Okay.  Mr. Rotondi asked you about filing a formal

18  grievance -- Mr. Rotondi asked you about filing a formal

19  grievance whether you're getting one year or two year.  Do you

20  recall that -- that the U.U.P. filed a formal grievance and

21  start any of the steps on that issue?

22       A.  So when I talked to Maureen, who was the

23  representative --.

24                 THE COURT:  Yes or no, do you know?

25                 THE WITNESS:  I don't know.  I don't remember.
```

Alaei v SONY - 6/6/2022

1          THE COURT:  No, do you know -- do you know

2     whether they did or not?

3          THE WITNESS:  They said they will do, but I

4     can't remember they formally did it or not.

5     BY MR. CASTIGLIONE:  (Cont'g.)

6     Q.  Do you -- do you know who -- Can you identify Maureen

7     Seidel is?

8     A.  Yes, she was my representative at the University at

9     Albany for the U.U.P.?

10     Q.  And did you raise the issue of one year versus two

11     years --

12     A.  Yes.

13     Q.  -- with her?

14     A.  And she said that she did it a year ago for another

15     case and what was successful and she ... will fix it.

16     Q.  Okay.  And was that issue ever resolved as far as

17     you're aware?

18     A.  Never.

19     Q.  Lastly, you had mentioned grants, and the P.I.  Can

20     you explain to me again what -- what does P.I. stand for?

21     A.  Sure.  They don't give grants to the universities.

22     They give grants to faculties who submit a proposal and have

23     all the qualification and get that.  For example, the federal

24     grants that are non-solicitated, which means the only special

25     people who were identified as experts like these two from U.S.

Alaei v SONY - 6/6/2022

1  Department of States or the P.I. of the projects.

2      Q.  Let me ask you --?

3              MR. CASTIGLIONE:  Sorry, Your Honor.

4              THE COURT:  No, go ahead.

5      BY MR. CASTIGLIONE:  (Cont'g.)

6      Q.  Would you have had the opportunity if you voluntarily

7  left SUNY Albany in February or March or April of the P.I. for

8  your grants to take them with you?

9      A.  No, and that was the violation of federal agreement

10  with the University at Albany --.

11     Q.  No, my question is would you, if you decided to

12  voluntarily leave, could you have had the opportunity to take

13  those grants with you if -- because you are P.I. on certain

14  grants?

15     A.  That was the common practice.

16     Q.  Okay.

17             MR. CASTIGLIONE:  Thank you.  That's it.

18             THE COURT:  Okay, re-cross?

19             MR. ROTONDI:  None -- none, Your Honor.

20             THE COURT:  Okay, you can put your mask on and

21     take the shield off, Doctor.  You're free to step down.

22     You can discard the mask into the waste bin next to you.

23     Thank you.  Okay.

24             THE WITNESS:  Thank you, your honor.

25             THE COURT:  Claimant, please call the next --

Alaei v SONY - 6/6/2022

153

1      Claimant please call your next witness.

2                 MR. CASTIGLIONE:  Dr. Kevin Williams with SUNY

3      Albany, Your Honor.

4                 THE COURT:  Okay.  You can grab them if you

5      wish.  Thank you.  Dr. Kevin Williams.

6                 MR. CASTIGLIONE:  Yes, Your Honor.

7                 THE COURT:  Dr. Williams, please?  You may step

8      into the witness box.  Could you please keep your mask on?

9                 MR. WILLIAMS:  Yeah.

10                THE COURT:  Put a face shield over your face,

11     and once it's in place, then you remove the mask.  Thank

12     you.  And you're going to be sworn.

13                THE MONITOR:  Raise your right hand.  Do you

14     solemnly swear the testimony you're about to give is the

15     truth, the whole truth, and nothing but the truth, so help

16     you God?

17                MR. WILLIAMS:  I do.

18                WITNESS; KEVIN WILLIAMS; Sworn

19                THE MONITOR:  Be seated.  State and spell your

20     name for the record.

21                THE WITNESS:  Kevin Williams K-E-V-I-N W-I-L-L-

22     I-A-M-S.

23                THE COURT:  Can we do just some (unintelligible)

24     pedigree, if I may.  Doctor, are you currently employed?

25                THE WITNESS:  Yes.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1              THE COURT:  Where?

2              THE WITNESS:  University at Albany.

3              THE COURT:  SUNY Albany?

4              THE WITNESS:  Yes.

5              THE COURT:  Since when?

6              THE WITNESS:  1987.

7              THE COURT:  Okay.  And what is your current

8      position?

9              THE WITNESS:  I am Vice Provost for Academic

10     Affairs and Dean at the graduate school.

11             THE COURT:  Okay.  And very, very broadly, as

12     Vice Provost what are your duties and requirements?

13             THE WITNESS:  So I provide general leadership

14     for graduate education at the University, oversight of

15     their policies and procedures for graduate programs,

16     program administration, new -- new program development.

17             THE COURT:  You were -- you were in that

18     position and discharging those duties in the -- in the

19     period of 2014 to 2018?

20             THE WITNESS:  Yes, I was.

21             MR. CASTIGLIONE:  Thank you, Your Honor.

22             DIRECT EXAMINATION BY MR. CASTIGLIONE:

23     Q.  Good afternoon, Dr. Williams.  Do you know who Kamiar

24  Alaei is?

25     A.  Yes, I do.

Alaei v SONY – 6/6/2022

1     Q.  And you used to work with him at SUNY, Albany?

2     A.  Yes.

3     Q.  Okay.  If I can show you what's been previously marked

4   as Claimant's One.  And -- and just so you're aware we'll be

5   putting them on this desk here and it'll show you up on the

6   screen what I'm looking at.  I'm referring to Claimant's

7   Exhibit One.

8          THE COURT:  The exhibit is (unintelligible),

9     fair?

10          THE WITNESS:  Yes.

11     BY MR. CASTIGLIONE:  (Cont'g.)

12     Q.  Claimant's Exhibit One, do you recall when Dr. Alaei

13   was hired by the University of Albany?

14     A.  Yes, I do.

15     Q.  Did you do any work in helping develop the appointment

16   for Dr. Alaei in 2014?

17     A.  No, I do not -- I did not develop that appointment.

18     Q.  Did you at the time have any involvement in developing

19   a concept called Evergreen appointments?

20     A.  No -- no, I did not.

21     Q.  No?  Okay.  Are you familiar with what the term

22   Evergreen appointment refers to?

23     A.  Yes.

24     Q.  Can you explain to me your understanding of what an

25   Evergreen appointment is?

Alaei v SONY – 6/6/2022

156

```
 1        A.  Yeah, it was a new concept at -- at the time I -- I
 2   heard about it.  And it was to provide semi-permanent
 3   appointment, not permanent, I should rephrase that.  It
 4   provides the ability to appointment, whether it would be a
 5   continual rollover of the contract --
 6                  THE COURT:  Was --
 7                  THE WITNESS:  -- each year will be evaluated.
 8                  THE COURT:  -- it particular -- particularly
 9        addressed to non-tenured positions?
10                  THE WITNESS:  Yes, it was for non-tenured
11        positions as a way of, excuse me, a way of giving -- my
12        understanding was that as a way of giving longer contracts
13        to non-tenured track faculty.
14   BY MR. CASTIGLIONE:  (Cont'g.)
15        Q.  Do you -- can you explain to me what the general terms
16   were in terms of time for an Evergreen appointment?
17                  MR. ROTONDI:  I'm going to object, Your Honor to
18        foundation to this -- of this witness' knowledge of
19        Evergreen --
20                  THE COURT:  Well --
21                  MR. ROTONDI:  -- appointments.
22                  THE COURT:  -- are you -- are you aware of --
23        what was the question?
24                  MR. CASTIGLIONE:  The -- the duration, the time
25        period for an Evergreen appointment.
```

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/6/2022

```
 1                   THE COURT:  Are you aware of that?

 2                   THE WITNESS:  I -- I believe that can vary for

 3          -- for this one.

 4                   THE COURT:  I'll -- I'll overrule the objection.

 5          I'll overrule it.  Go ahead, sir.

 6                   THE WITNESS:  Okay.  I believe for this

 7          Evergreen is two years.

 8          BY MR. CASTIGLIONE:  (Cont'g.)

 9          Q.  So when you say --.

10                   MR. ROTONDI:  Objection, move to strike.  We

11          have -- we -- this one he's referring to -- it was

12          referring to Dr. Alaei's initial appointment.  It's an

13          opinion --.

14                   THE COURT:  And I don't want you to -- so

15          counsel, I don't want you to guess.  Do you know what the

16          Evergreen application for Dr. Alaei was?

17                   MR. CASTIGLIONE:  Your Honor, I could ask him a

18          question and --.

19                   THE COURT:  Well, we'll (unintelligible).  Go

20          ahead, Counsel.

21          BY MR. CASTIGLIONE:  (Cont'g.)

22          Q.  Dr. Williams, let me refer you back to what's on the

23     screen is April 16th, 2014 letter.  Are you familiar with this

24     document?  Have you seen it before?

25          A.  It looks familiar.
```

1    Q.  In the second paragraph, it says your initial

2    appointment will be for three years commencing on May 1, 2014

3    to coincide with the end date of your current appointment with

4    SUNY Research Foundation.  You will have a twelve-month full-

5    time obligation.  The lecturer budget title is a non-tenured

6    track position in accordance with the policies of the trustees

7    of the State University of New York to give you the security of

8    at least two years of employment.

9        The appointment will be reviewed annually for possible

10    extension by another year.  Now as to that language about

11    security of two years' employment and possible -- renew

12    annually and possible extension by another year, do you have an

13    understanding of what that language is referring to?

14                THE COURT:  Don't answer that question.  Let's

15        go off the record.

16                (Off the record; 15:39:28 to 15:40:13)

17                THE MONITOR:  On the record.

18                THE COURT:  Ask him the next question.  Defense

19        counsel objected.  The objection is sustained, Counsel.

20        BY MR. CASTIGLIONE:  (Cont'g.)

21    Q.  Dr. Williams, if I can show you this letter on the

22    other side.  You were a Vice Provost Kevin Williams or that

23    person?

24    A.  Yes.

25    Q.  And so why would you have received a copy of this

 1 | letter?

 2 |     A.  Not -- not exactly sure.  I was involved in the

 3 | program that I think it was called at that time -- I'm not sure

 4 | if it was called G.I.H.H.R. yet or I.A.P., it's previous

 5 | version, but I was involved with Kamiar on that project.

 6 |     Q.  So you were working on G.I.H.H.R. in the past or at

 7 | about the time of this letter?

 8 |     A.  I was involved with it.

 9 |     Q.  Okay.

10 |     A.  I was not employed by it.

11 |     Q.  In your role as the Vice Provost who -- who's -- who

12 | did -- who's your supervisor?

13 |     A.  The Provost.

14 |     Q.  And who's the Provost?

15 |             THE COURT:  Then?  Then?

16 | BY MR. CASTIGLIONE:  (Cont'g.)

17 |     Q.  Right now and then?

18 |     A.  Probably it's Carol Kim.

19 |             THE COURT:  Carol Kim?

20 | BY MR. CASTIGLIONE:  (Cont'g.)

21 |     Q.  Sorry?

22 |     A.  Carol Kim.

23 |     Q.  Okay.  And in April 2014, who was it?

24 |     A.  I believe that would have been Susan Phillips.

25 |     Q.  Okay.  Yes, and actually on the other side of the

Alaei v SONY – 6/6/2022

1    letter it says Susan Provost -- Susan Phillips.  Is the -- you

2    worked with the Provost Office?

3        A.  Yes.

4        Q.  And can you explain to me what the responsibilities of

5    the Provost's Office are?

6        A.  Provost is the Vice President for Academic Affairs at

7    the University.  So the Provost Office generally runs all

8    academic affairs which is the educational program.

9        Q.  Does the Provost Office deal with employment issues

10   for faculty?

11       A.  Yes.

12       Q.  So would contract terms be part of the work that the

13   Provost Office deals with?

14       A.  Yes.

15       Q.  So it would be within the work of the Provost Office

16   to deal with an issue referred to or understanding of payment

17   terms as reflected in the agreement like Claimant's Exhibit One

18   that's in front of you?

19       A.  Can you rephrase?

20       Q.  Sure.  Would it be consistent with the Provost's

21   responsibilities to be familiar with and -- and work with

22   faculty on their appointment letters similar to what's in front

23   of you as Exhibit One?

24       A.  Yes, the Provosts --

25       Q.  Okay.

1    A.  -- would do that.

2    Q.  So with your understanding of an Evergreen term, can

3  you explain to me what a three-year term for an Evergreen

4  appointment would entail?

5              MR. ROTONDI:  Objection, Your Honor.

6              THE COURT:  Ms. Castiglione, I've made my

7         position on this quite clear.

8              MR. CASTIGLIONE:  But this is about his

9         understanding.

10              THE COURT:  No.  And I interpret this line of

11         questioning as an attempt to (unintelligible) the ruling

12         that the Court made.  The objection is sustained.

13              MR. CASTIGLIONE:  Let's see here.  If I can

14         refer you to -- what's that document?  Three.  Which one

15         is A-Three?

16              MR. SOMMER:  I'll get it up there.

17              MR. CASTIGLIONE:  Your Honor, I'd like to

18         identify and offer into evidence what's been marked as

19         Plaintiff's Exhibit A-Three, an email from Kevin Williams

20         dated May 31, 2017 to Dr. Alaei.

21              THE COURT:  What is it marked?

22              MR. CASTIGLIONE:  It's marked Plaintiff's

23         Exhibit Three.

24              THE COURT:  Okay.  And Mr. Rotondi?

25              MR. ROTONDI:  It's marked as Claimant's Exhibit

Alaei v SONY – 6/6/2022

 1        Three which was the --.

 2                  MR. CASTIGLIONE:  I think it was A-Three?

 3                  MR. ROTONDI:  A-Three?  Exhibit A-Three.

 4                  THE COURT:  Yeah.

 5                  MR. CASTIGLIONE:  Yeah.

 6                  MR. ROTONDI:  No objection.

 7                  THE COURT:  Without objection, Claimant's Three

 8        is admitted.  And the date on this, Mr. Castiglione?

 9                  MR. CASTIGLIONE:  It is May 31, 2017, Your

10        Honor.

11        BY MR. CASTIGLIONE:  (Cont'g.)

12        Q.  Dr. Williams, do you recall looking at this email what

13     it is?

14        A.  Yes.

15        Q.  Okay.  Is this an email from you to Dr. Kamiar Alaei?

16        A.  Yes.

17        Q.  Okay.  Can you explain to me what you were discussing

18     in this email?

19        A.  Yes, we were discussing the appointment for Dr.

20     Alaei's brother, Arash, which was a similar contract.

21        Q.  Okay.  And so you were having this conversation or

22     discussion with Dr. Alaei about language and his appointment

23     letter about his brother?

24        A.  His brother's, yes.

25        Q.  Okay.  And in this appointment letter you identified -

Alaei v SONY - 6/6/2022

1  -?

2             THE COURT:  And it is your understanding at

3      least with regards to the brother who was a continual, to

4      quote the language in the letter if you can remember

5      continual through your contract.  Is that what your

6      understanding --?

7             THE WITNESS:  That's my understanding, yes.

8             THE COURT:  May I have the lawyers come up?  Off

9      the record.

10             (Off the record; 15:46:54 to 15:48:21)

11             THE MONITOR:  On the record.

12      BY MR. CASTIGLIONE:  (Cont'g.)

13      Q.  Dr. Williams, you had testified earlier you used to

14  work with Dr. Alaei, correct?

15      A.  Correct.

16      Q.  And did you work with him on any research projects

17  over time?

18      A.  Yes.

19      Q.  So would you -- did you work with them on any research

20  projects in 2017 or '18?  If you recall?

21      A.  I don't recall if I was working on specific projects

22  at that date.

23             THE COURT:  Could you define for me worked

24      together what does -- on a given project?  What does that

25      mean?

Alaei v SONY – 6/6/2022

1          THE WITNESS:  So there are ongoing research

2     activities that the center, the institute would do.  When

3     it first started I was actively involved in writing the

4     grants, helping manage the project.  By 2017-18 I know I

5     was still on the advisory board.  I don't know if I was

6     heavily involved in the design of the projects.

7          THE COURT:  Okay, go ahead.

8          MR. CASTIGLIONE:  Thank you, Your Honor.

9     BY MR. CASTIGLIONE:  (Cont'g.)

10    Q.  Oh, you, I'm sorry, I think you just said in 2018 you

11    were on a board for G.I.H.H.R.?

12    A.  Yes.

13    Q.  Okay.  But otherwise --

14    A.  (unintelligible).

15    Q.  -- you had worked with Dr. Alaei in the past on other

16    matters besides G.I.H.H.R.?

17    A.  Yes.

18    Q.  Okay.  What was your opinion of Dr. Alaei's work when

19    you were working with him?

20          MR. ROTONDI:  Objection, Your Honor.

21          THE COURT:  Overruled.  You may answer the

22    question.

23          THE WITNESS:  I thought it was a very high

24    quality.

25    BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY - 6/6/2022

165

1     Q.   Okay.  Were you aware of any fundraising efforts by

2   Dr. Alaei while he was working as director of G.I.H.H.R.?

3     A.   Yes.

4     Q.   Were his fundraising activities of any significance?

5     A.   Yes.

6     Q.   Can you explain to me what you mean?

7     A.   He brought in -- and can I -- if I define fundraising

8   broadly between the grants and fundraising, he really brought

9   in substantial amounts of money to the institute.

10     Q.   Okay.  And did -- do you recall did you help in the

11   formation of G.I.H.H.R. coming to SUNY Albany?

12     A.   I wrote to grant -- I was the principal investigator

13   in the grant that generated the money that led to what was

14   called the International Academic Program which then turned

15   into G.I.H.H.R.

16     Q.   Okay.  Did there ever come a time where you were made

17   aware that there was an investigation concerning Dr. Alaei?

18     A.   Yes.

19     Q.   Do you recall how you became aware?

20     A.   My recollection is Kamiar told me.

21             THE COURT:  I'm sorry, my recollection is what?

22             THE WITNESS:  Kamiar told me.

23             THE COURT:  He told you?

24             THE WITNESS:  Yeah.

25             THE COURT:  The Doctor?

Alaei v SONY - 6/6/2022

1    BY MR. CASTIGLIONE:  (Cont'g.)

2        Q.  If I can -- if I can refer you to your deposition

3  transcript.

4                THE COURT:  Was that -- is the answer the Doctor

5        gave (unintelligible) with the deposition transcript?

6                MR. CASTIGLIONE:  I'm just going to raise

7        something and ask him if it -- maybe it was an additional

8        --.

9                THE COURT:  Refresh his recollection?

10               MR. CASTIGLIONE:  Yes.

11               THE COURT:  Okay.  You can show it to him for

12       that purpose.

13   BY MR. CASTIGLIONE:  (Cont'g.)

14       Q.  Your deposition do you want a, I'm sorry, do you want

15  a copy?  No?  Your deposition -- if I can first, I'm sorry,

16  this might help refresh his recollection page -- February 8th

17  litter -- letter.  I'm sorry.

18               THE COURT:  Do you recall giving a deposition,

19       sir?

20               THE WITNESS:  Actually, I (unintelligible).

21               THE COURT:  But you recall that?

22               THE WITNESS:  Yeah.

23               THE COURT:  Say it.  Say the word.

24               THE WITNESS:  Yes.

25               THE COURT:  Okay.

Alaei v SONY - 6/6/2022

1        MR. CASTIGLIONE:  No -- yeah, I didn't

2    (unintelligible).  February number eight.

3        THE COURT:  Counsel, do you want to ask him a

4    leading question on that one question?

5    BY MR. CASTIGLIONE:  (Cont'g.)

6    Q.  I was just going to say do you recall seeing the

7    alternative assignment letter that was given to Dr. Alaei?

8    A.  Yes.

9    Q.  Okay.  And do you recall at your deposition when being

10   shown that letter -- can you explain to me what your

11   understanding was when you first had that understanding about

12   SUNY Albany investigating, Dr. Alaei?

13   A.  Can you rephrase that, please?

14   Q.  Sure.  I asked you did you ever learn about SUNY

15   Albany's underlying basis for conducting its investigation

16   regarding Dr. Alaei in 2018?  You said, yes.  I said can you

17   explain to me what your understanding was and when you first

18   have that understanding?  My understanding of the basis of this

19   letter, referring to the appointment letter, yes.

20       I don't know the exact dates, but I had a conversation

21   with the Provost, Provost stopped me and mentioned that there

22   was an investigation going on.  And who was the provost?  James

23   Stellar.

24   A.  I recall that, yes.

25   Q.  Do you recall that?

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/6/2022

1       A.  I'm not sure which came first.

2       Q.  Okay.  But at some point you did talk to Dr. Alaei?

3   Is that what you're --?

4       A.  Correct.

5       Q.  Do you recall when that was?

6       A.  No.

7       Q.  Did anyone ever contact you to solicit information

8   about Dr. Alaei during the investigation?

9       A.  No.

10              MR. CASTIGLIONE:  Okay.  If I can identify --

11          what was this one?  Exhibit K.  Exhibit J, Exhibit Twelve.

12          Your Honor, I'd like to introduce what's been marked as

13          Plaintiff's Exhibit Twelve, Exhibit C.

14              THE COURT:  How would Mr. Rotondi know it?

15              MR. CASTIGLIONE:  Yes, Exhibit Twelve is J-Two

16          or no, J-One.  It's an email from Mr. Williams to Provost

17          Stellar in February 14th, 2018 which contains an email

18          from an L.M. Pourtaher P-O-U-R-T-A-H-E-R in February 14th,

19          2018.  It was J.

20              MR. ROTONDI:  Oh, J-One?

21              MR. CASTIGLIONE:  J-One.

22              MR. ROTONDI:  Yeah -- yeah, Your Honor, I have

23          an objection.

24              THE COURT:  You -- you do have an objection?

25              MR. ROTONDI:  I do.

Alaei v SONY – 6/6/2022

1          THE COURT:  Can I see the document, please?

2          MR. CASTIGLIONE:  Sure.

3          THE COURT:  All right, let me read it first.

4    Let's go off the record just for a moment.

5          (Off the record; 15:56:46 to 15:57:36)

6          THE MONITOR:  On the record.

7          THE COURT:  Okay, Mr. Rotondi, there is an

8    objection, can you state the basis of your objection?

9          MR. ROTONDI:  The objection is not to the -- the

10   top email from K. Williams to Stellar, James.  It's from

11   the L.M. Pourtaher to Williams and it's hearsay and

12   relevancy.

13         THE COURT:  And -- and is it not hearsay, Mr.

14   Castiglione?

15         MR. CASTIGLIONE:  Well, Your Honor, the -- the

16   email at issue we would say in the first instance was an

17   adoptive admission by Mr. Williams as his deposition

18   testimony admits or says he had similar concerns and I can

19   read it to you when going through that email.  If you want

20   me to I can read it to you, Your Honor.

21         But he -- he basically took that email said I

22   had concerns about there was a meeting on February 9th,

23   things were said about my client by SUNY personnel.  He

24   then forwards that student's concerns because he shared

25   the concerns on to his supervisor.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/6/2022

170

1          THE COURT:  Okay, hold on a second.  All right,

2     well, the gentleman is sitting here, you can examine him

3     on that.  But the point Mr. Rotondi has made is -- is --

4     is accurate.  The -- eighty-five percent of this is right,

5     it's hearsay and I -- I'm not going to permit that to come

6     in.  I mean you can -- you can ask him about the content

7     of it since he's here, subject to cross examination.  So

8     the objection is sustained.

9          MR. CASTIGLIONE:  Well, Your Honor, we would

10     also say that's part of a business record.  The -- adopted

11     for admission would be an exception business record,

12     because Mr. Williams --.

13          THE COURT:  Okay, but that's a foundational

14     issue unrelated to whether or not it contains hearsay.  So

15     the objection is sustained.

16          MR. CASTIGLIONE:  But a business record would be

17     an exception to hearsay.

18          THE COURT:  You know, except you have them in

19     here.  And the basis of your argument to rebut the

20     objection is that it's an adopted position.  Well, you can

21     ask him about it.

22          MR. CASTIGLIONE:  Okay.  But in order to ask

23     him, I think he did need to see the email.

24          THE COURT:  Well, you know I -- let's go down

25     the path a step at a time.

Alaei v SONY – 6/6/2022

```
 1              MR. CASTIGLIONE:  Okay.

 2              THE COURT:  Okay.  Do you recall this -- do you

 3      recall having these discussions?

 4              MR. CASTIGLIONE:  Sure.

 5              THE COURT:  So not in for now.

 6      BY MR. CASTIGLIONE:  (Cont'g.)

 7      Q.  Dr. Williams, do you recall receiving an email from

 8 Harvey Charles, indicating there was going to be a meeting with

 9 G.I.H.H.R. staff and students about a change or transition in

10 leadership?  And I can show you --.

11      A.  It does --

12      Q.  Well, let me try to --

13      A.  -- let me direct it.  Are you asking if I received it?

14      Q.  If you recall the meeting?  And I --?

15      A.  Yes, I recall the meeting.

16      Q.  You recall the meeting.  Did -- are you -- do you

17 recall students or people who attended that meeting reaching

18 out to you about what was said at that meeting?

19      A.  Yes.

20      Q.  Do you recall students raising concerns with you about

21 how SUNY personnel were treating Dr. Alaei in this manner and

22 making statements at that meeting?

23              MR. ROTONDI:  Objection, Your Honor.  That's --

24      he wasn't at the meeting.  So anything he hears you now --

25      now we're -- it's like double hearsay almost.
```

Alaei v SONY – 6/6/2022

1              THE COURT:  Well, I'm going to allow it.  The

2        objection is overruled.  It -- I'm not necessarily

3        crediting the content.  I'm not permitting it in for the

4        truthfulness of what is being related to the witness, but

5        I'm going to allow him to testify as to what he heard.

6        BY MR. CASTIGLIONE:  (Cont'g.)

7        Q.  Well, did students reach out to you and -- and send

8   you concerns they had with what was said at that meeting about

9   Dr. Alaei?

10       A.  Yes.

11       Q.  And -- and -- and do you recall any of the concerns

12  that were being raised?

13       A.  Yes.

14       Q.  Can you explain to me what you recall?

15              MR. ROTONDI:  Objection, Your Honor, it's

16       hearsay.

17              THE COURT:  I'm going to permit it, Mr. Rotondi.

18       Overruled.  Go ahead.

19              THE WITNESS:  In general they were -- they were

20       concerned about the removal of Dr. Alaei from the center.

21       They were concerned about -- I don't know -- and I don't

22       know if they use the word accusation?  They were -- they

23       were concerned about the actions taking against Dr. Alaei

24       without allowing him to have input.  That was sort of the

25       gist of what I recall.

Alaei v SONY – 6/6/2022

```
1         BY MR. CASTIGLIONE:  (Cont'g.)

2         Q.  Would you say you refresh your recollection is in that

3    right now as you sit there, you don't have a recollection of

4    exactly what was in those emails and what was raised?

5         A.  I have a general recollection, yes.

6                   THE COURT:  Is it -- is it fair to say is your

7              testimony going to fairly summarized to say the

8              expressions of support for the doctor was they believed

9              he'd been treated unfairly?

10                  THE WITNESS:  Correct.

11        BY MR. CASTIGLIONE:  (Cont'g.)

12        Q.  Was there statements made by students about SUNY

13   Albany making accusations vague or implicitly at that meeting

14   concerning Dr. Alaei and what SUNY assumed had been done?

15                  MR. ROTONDI:  Objection.

16                  THE COURT:  You know what, Counsel, I -- I -- I

17             think you've gotten from this witness what you need to, as

18             far as -- I'll sustain that objection.

19        BY MR. CASTIGLIONE:  (Cont'g.)

20        Q.  Well, let me ask, do you recall any students raising

21   concerns about racial discrimination?

22                  MR. ROTONDI:  Objection --

23                  THE WITNESS:  Yes.

24                  MR. ROTONDI:  -- relevance.

25                  MR. CASTIGLIONE:  Your Honor --
```

1           MR. ROTONDI:  And hearsay.

2           MR. CASTIGLIONE:  -- there's a wrongful

3     termination --.

4           THE COURT:  Let me -- let me hear that.

5     Counsel, go ahead.

6           MR. CASTIGLIONE:  My -- my point or the --?

7           THE COURT:  Yours, if you want to, you were

8     going to --.

9           MR. CASTIGLIONE:  The -- the claim goes to

10    wrongful termination that there was wrongful motivation

11    here for terminating my client.  And if students who

12    attended this meeting --

13          THE COURT:  All right, I --

14          MR. CASTIGLIONE:  -- and this is --

15          THE COURT:  -- I don't believe, correct me if

16    I'm wrong.  Correct me if I'm wrong.  I don't believe

17    there's anything in the pleading that either states that

18    or intimates that's racial animus.  Is that correct?

19          MR. CASTIGLIONE:  No, there's discrimination and

20    wrongful termination basis that violates federal and

21    constitutional rights.

22          THE COURT:  The objection is sustained.  Next

23    question.

24          MR. CASTIGLIONE:  Your Honor, we would say those

25    -- that goes to the defamation component that statements

Alaei v SONY - 6/6/2022

1    were made by SUNY.

2                    THE COURT:  You know we can -- it -- that's all

3        well and good, Counsel, but if it had been pled, it might

4        have been a different ruling.  But the objection is

5        sustained.

6                    MR. CASTIGLIONE:  Well, Your Honor, I think it

7        is pled that it was --

8                    THE COURT:  Well, I --

9                    MR. CASTIGLIONE:  -- discriminatory

10        determination.

11                    THE COURT:  -- to the -- to your point, the --

12        the language in the pleading quoted is -- is vague.  Next

13        question.

14        BY MR. CASTIGLIONE:  (Cont'g.)

15        Q.  Do you recall receiving any of these concerns from

16    students about statements made by SUNY by email?  I'll

17    rephrase.

18        A.  Yeah, I'm not sure what you're asking.

19        Q.  Sure.  Do you recall receiving -- do you recall

20    receiving concerns from students by email?

21                    THE COURT:  Counsel, I'm going to ask you to

22        move on.  Now, I didn't hear a word out of the doctor

23        during, you know, several hours of testimony that his --

24        his thought that he was being discriminated against --

25        against X, Y, or Z reasons.  And without personal

1    knowledge from this witness we'd only be recounting what

2    others who are not in this courtroom, were not going to be

3    called in this courtroom have concerns it -- it -- it's

4    not an appropriate line of questioning with all due

5    respect.  Next question.

6            MR. CASTIGLIONE:  Well, Your Honor, we -- I

7    mean, I disagree.  I understand we would say this is a

8    business record subject to hearsay exception, we'll just

9    note our objection for the record.  Thank you.

10   BY MR. CASTIGLIONE:  (Cont'g.)

11   Q.  Any -- any concerns you received from students did --

12   what did you do with those concerns?

13   A.  I believe at that time, I went to my boss Provost

14   Stellar and expressed -- well, told him that I had been

15   receiving these messages and then expressed my concern and

16   asked for clarification or insight.

17   Q.  Do you know if -- you said your boss, you mean Provost

18   Stellar?

19   A.  Correct.

20   Q.  Do you know if he did anything in response to issues

21   you were raising?

22   A.  Don't remember exactly, but to the effect of thank you

23   for your email.

24   Q.  Okay.

25            THE COURT:  The ubiquitous thank you for your

Alaei v SONY – 6/6/2022

1    email.  It says nothing.

2                    THE WITNESS:  You got it.

3    BY MR. CASTIGLIONE:  (Cont'g.)

4    Q.  Dr. Williams, if you -- in your position as Vice

5    Provost and otherwise is it normal when you receive any types

6    of concerns from students that you -- you pass them along to

7    your boss?

8    A.  Yes, unless I can deal with them specifically myself.

9    Q.  So if there's something you can't address you pass it

10   along?

11   A.  Correct.

12   Q.  Okay.  Do you recall receiving an email from Harvey

13   Charles -- actually strike that.  I'm going to go right --

14   let's see here.  Fifteen.

15                    THE COURT:  Go off the record just for a quick

16        minute and have counsel come up.

17                    THE MONITOR:  Off --.

18                    (Off the record; 16:07:38 to 16:09:59)

19                    THE MONITOR:  On the record.

20   BY MR. CASTIGLIONE:  (Cont'g.)

21   Q.  I'm referring to you Claimant's Exhibit Fifteen

22   (unintelligible).

23                    THE COURT:  It is in evidence.

24                    MR. CASTIGLIONE:  It is in evidence?

25                    THE COURT:  It is.

1        BY MR. CASTIGLIONE:  (Cont'g.)

2        Q.  I'm showing you what's been identified as Claimant's

3    Exhibit Fifteen.  This is an email from (unintelligible) to

4    Harvey Charles dated February 9th, 2018.  It's there so you can

5    see (unintelligible) your email address.  Were you a recipient?

6        A.  Yes.

7        Q.  Okay.  You were on the board of directors of

8    G.I.H.H.R. in February 2018?

9        A.  I believe I still was, yes.

10        Q.  Okay.  In this letter, Dr. Charles says I'm writing to

11    inform you that effective today (unintelligible) G.I.H.H.R.  Do

12    you recall did Dr. Charles or anybody else confer with you as a

13    board of director person about removing Dr. Alaei or as -- as

14    appointing new term directors?

15        A.  They do not.

16        Q.  No?  You're familiar with the process for SUNY Albany

17    or the University of Albany to non-renew employees?

18              THE COURT:  Or faculty shall we say?

19        BY MR. CASTIGLIONE:  (Cont'g.)

20        Q.  Or faculty?  I'm sorry.

21        A.  Yes.

22        Q.  Okay.  Generally speaking, does non-renewal -- can you

23    explain to me what the non-renewal process for faculty

24    involves?  Or do you --

25              THE COURT:  This would -- this would be for --

Alaei v SONY – 6/6/2022

1              MR. CASTIGLIONE:  (unintelligible) faculty.

2              THE COURT:  -- untenured -- for untenured

3     people?

4              THE WITNESS:  Well, there's --.

5              THE COURT:  (unintelligible).

6              MR. CASTIGLIONE:  When -- yeah, I'll -- I'll

7     explain.

8              THE COURT:  Thank you.

9     BY MR. CASTIGLIONE:  (Cont'g.)

10     Q.  For people without tenure of faculty positions for

11 non-renewal is it generally there's an annual performance

12 reviewed -- annual performance reviews for employees that are

13 measured against their work plan as part of the non-renewal

14 process?

15     A.  Yes.

16     Q.  Okay.  And unfavorable reviews can result in a non-

17 renewal of a contract?

18     A.  Yes.

19     Q.  Okay.  Do you generally -- does the non-renewal

20 process generally work through human resources?

21     A.  Yes.

22     Q.  Okay.  Is it generally involving notice of

23 unsatisfactory performance?

24     A.  For performance reasons, yes.

25     Q.  Okay.  Generally, who's the responsibility for

Alaei v SONY – 6/6/2022

1  initiating the non-renewal process?

2      A.  To the supervisor.

3      Q.  Okay.  After the supervisor initiates the non-renewal

4  process, what would happen next generally?

5      A.  Well, I guess I'm not exactly sure because I've never

6  had a non-renewal faculty member.  But it -- it would -- no --.

7              THE COURT:  Sorry?

8              THE WITNESS:  I'm -- I was lucky.

9              THE COURT:  I'm sorry.

10              THE WITNESS:  I've been lucky.

11              THE COURT:  Okay, so you're -- you're not

12      recalling an instance where a member was non-renewed?

13      BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.  Are you saying you never personally had to non-renew?

15      A.  Yes, that's what I'm saying, I --

16      Q.  Somebody --

17      A.  -- I personally never have.

18      Q.  -- underneath you that you were supervising you've

19  never had to non-renew?

20      A.  Yes.

21      Q.  But you're familiar with the --

22      A.  Yes.

23      Q.  -- non-renewal process generally?

24      A.  Correct.

25      Q.  Okay.  Does it generally go from the supervisor to the

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/6/2022

1  Provost?

2       A.  It depends.  So if it's a faculty member in a

3  department, it would go to the dean then to the Provost.

4       Q.  Okay.  Have you ever experienced a situation while you

5  were with Albany at the Provost's Office where somebody asked a

6  supervisor to make a -- a recommendation of non-approval?

7       A.  No.

8       Q.  Have you ever experienced a situation where somebody

9  had asked the supervisor to make a recommendation of non-

10 approval and that supervisors said they were not comfortable

11 making that recommendation?

12      A.  No.

13      Q.  Are you aware -- how long have you worked with the

14 Provost?  Strike that.  I'm sorry.  Before the new Provost came

15 in, how long have -- had you been working with Provost James

16 Stellar?

17              THE COURT:  I -- I don't --

18              THE WITNESS:  Four -- four years.

19              THE COURT:  -- hold on.  I don't understand the

20      question.  Could you rephrase it?

21              MR. CASTIGLIONE:  Sure.

22      BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.  There's a new provost, correct?

24      A.  There's been a couple since Provost Stellar.

25      Q.  Do you know when Provost Stellar left his position?

Alaei v SONY - 6/6/2022

1       A.  2000 and -- end of 2018.

2       Q.  Okay.  And had you -- how long had you worked with

3   Provost Stellar before 2018?

4       A.  At least four years.

5       Q.  Okay.  During that time, are you aware of him

6   requesting that a supervisor pursue non-renewal even though the

7   supervisor had not made a recommendation to non-renew?

8       A.  I'm not aware of that, no.

9       Q.  Okay.  Do you recall Dr. Alaei approaching you in

10  January 2018 about seeking deanship with your college?

11      A.  Yes.

12      Q.  Do you recall having conversations with him at about

13  that time about his pursuits of that endeavor?

14      A.  Yes.

15      Q.  Do you recall if Dr. Alaei had told you he had been

16  identified as a finalist for the deanship for your college?

17      A.  It's -- I know he advanced and I don't know if he's a

18  finalist.  I don't recall.

19      Q.  Okay.  If I can refer you to your deposition

20  transcript page thirty-six to thirty-seven.  I asked, so I

21  would like to ask you were you aware of whether he, Dr. Alaei

22  was selected as a finalist for a senior administrative position

23  like dean of your college around the time the investigation

24  started?  You said oh -- yeah, actually that does sound

25  familiar now, yes.  It might have been them contacting him.

Alaei v SONY – 6/6/2022

1  Does that sound familiar?

2      A.  Yes.

3      Q.  Okay.

4              MR. CASTIGLIONE:  Thank you, Your Honor.  No

5      more questions.

6              THE COURT:  When was the deposition letter, the

7      date?

8              MR. CASTIGLIONE:  January 13th, 2021.

9              THE COURT:  Thanks.  Cross examination, sir?

10             MR. ROTONDI:  Just briefly, Your Honor.  Can I

11     stay seated?

12             THE COURT:  You may.

13             MR. ROTONDI:  Thank you.

14             THE COURT:  You're welcome.

15             CROSS EXAMINATION BY MR. ROTONDI:

16     Q.  You didn't take part in the non-renewal process for --

17  for the doctor, did you?

18     A.  No, I did not.

19     Q.  And that's not something you typically do in -- in

20  your -- as part of your job responsibilities, correct?

21     A.  I would not be -- correct, I would not be involved in

22  non-renewal of someone who didn't report to me.

23     Q.  Okay.  And you have no idea in terms of non-renewals

24  where they start whether at the supervisor level or above for -

25  - for other departments?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/6/2022

1      A.  No.

2      Q.  For instance the History Department, correct?  You

3   don't -- you don't know if there's been any instance where a

4   dean, a Provost or the President has recommended non-renewal,

5   correct?

6      A.  Could you rephrase that?

7      Q.  Sure.  Sorry, bad question.  You're familiar with non-

8   renewals for your unit, correct?

9      A.  Yes, as --

10      Q.  And -- and --

11      A.  -- well as the university.

12      Q.  I'm sorry?

13      A.  As well as the university.

14      Q.  Well, you don't do non-renewals for the History

15   Department, do you?

16      A.  I do not do them I may be aware of them.

17      Q.  You don't work on non-renewals for the math

18   department?

19      A.  I do not work on them.

20      Q.  Okay.  And you didn't work on this one --

21      A.  No.

22      Q.  -- Doctors?  Okay.  And in fact, you -- you've only

23   been involved with one non-renewal for your unit?

24      A.  Correct.

25      Q.  Okay.

Alaei v SONY – 6/6/2022

185

1          MR. ROTONDI:  That's all I have.

2          THE COURT:  Well --.

3          MR. CASTIGLIONE:  Just a quick response.

4          RE-DIRECT EXAMINATION BY MR. CASTIGLIONE:

5     (Cont'g.)

6     Q.  Dr. Alaei -- Dr. Alaei, I'm sorry, in 2018 he was

7     under the supervision of the Provost of your office.  Is that

8     correct?

9     A.  I believe he reported to Dr. Charles.

10    Q.  And was -- did Dr. Charles report to Provost Stellar

11    at the time?

12    A.  Yes.

13    Q.  Okay.

14          MR. CASTIGLIONE:  Thank you.

15          THE COURT:  Anything further?

16          MR. ROTONDI:  No, Your Honor.

17          THE COURT:  Okay.  Thank you, Doctor.  You can

18     put your mask on right now.  Thank you.  And you can then

19     throw out the face shield right next to you.  And I thank

20     you for your time.  And do either of the lawyers need to

21     speak to the witness before I send him on his way, anyone?

22          MR. CASTIGLIONE:  No thank you.

23          THE COURT:  You folks?

24          MR. ROTONDI:  No, Your Honor.

25          THE COURT:  Thank you, you're free to go, sir.

Alaei v SONY - 6/6/2022

1          THE WITNESS:  Thank you.

2          THE COURT:  (unintelligible) that will conclude

3     the production of witnesses today, correct, Mr.

4     Castiglione?

5          MR. CASTIGLIONE:  Yes, Your Honor.

6          THE COURT:  All right.  So in terms of

7     housekeeping overnight -- well, first of all, no one

8     leaves the Courtroom without having the exhibits in the

9     possession of Mr. Graziano -- Graziano, excuse me.  So all

10    of the admitted -- all of the marked exhibits should be

11    with Joe Graziano.

12          If any of you want to leave any of your

13    materials here, you may.  If you're obligated to, but if

14    there's access stuff you don't want to be (unintelligible)

15    around overnight leave it in the Courtroom, the Courtroom

16    will be locked.

17          Overnight I want everybody to work for first

18    thing tomorrow permitting, because Mr. Rotondi is being

19    provided with cross reference keys I'm referring to it be

20    in a position to say Judge I'm going to (unintelligible)

21    all of these exhibits I'm unwilling to stipulate with each

22    other.

23          So whatever homework needs to be done in that

24    regard let's please do it overnight.  I'm going to ask you

25    folks to report to the Courtroom at nine-fifteen a.m.

1    sharp, with an eye for me taking the bench at nine-thirty

2    a.m. sharp.  So if you -- if you -- if you want to come a

3    few minutes earlier I think we'll have the Courtroom open

4    by nine.  Is that -- is that doable, Joe?

5              THE MONITOR:  Yes.

6              THE COURT:  If you want to come a little bit

7    earlier that's fine, but my goal is to be on the bench at

8    nine-thirty.  If you want to come at nine-ten, nine-

9    fifteen, please do.  Any housekeeping matters in this

10   testimony that we have to talk about?

11             MR. CASTIGLIONE:  No, Your Honor.

12             THE COURT:  And Mr. Rotondi?

13             MR. ROTONDI:  No, Your Honor.

14             THE COURT:  You said that with some reservation?

15             MR. ROTONDI:  No, it was just -- we can do it

16   off the record.

17             THE COURT:  Okay.  What else?  Okay, that's it

18   for right now.  Off the record.

19             (The trial adjourned at 4:21 p.m.)

20

21

22

23

24

25

Alaei v SONY – 6/6/2022

1                    CERTIFICATION

2    I, Hannah Allen, certify that the foregoing transcript of

3    proceedings in the State of New York, Court of Claims, Kamiar

4    Alaei v SONY, Claim #132554, was prepared using digital

5    transcription equipment and is a true and accurate record of the

6    proceedings to the best of our skill and ability.

7    _____ / DATED:  8/1/2022
     Hannah Allen, Transcriptionist
8    Associated Reporters Int'l., Inc.
     10 River Drive
9    Massena, New York  13662

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

800.523.7887                    6-6-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 1

## A

**A-C-H-A-R** 117:24
**A-E-I** 10:14
**A-L-** 10:13
**A-L-A-E-I** 77:4
**A-S-A-L** 102:5
**A-Three** 161:15,19 162:2,3,3
**A-Z-I-M-I** 118:5
**A.A.G** 1:13
**a.m** 1:6 5:1 13:18 107:22 186:25 187:2
**abide** 66:9
**ability** 156:4 188:6
**able** 7:18 10:23 46:22 74:13 77:20 83:3 86:6 103:5,20,22 114:2,3 119:25
**abolished** 122:8
**absence** 59:8 103:21 106:5
**Absolutely** 11:3
**academia** 52:1
**academic** 11:23 21:8 42:22 99:9 104:8,9 135:5 137:23,23 154:9 160:6,8 165:14
**Academy** 25:14,15,15,22
**accent** 30:8
**accept** 30:24
**acceptable** 91:2
**accepted** 31:6 134:24 135:1,12 135:12
**access** 23:18,19 77:16 87:4 88:21 90:14 91:15 107:22,25 121:10 122:5 186:14
**accessing** 89:15
**accompanied** 39:15
**account** 34:25 77:13,18 89:15 121:10 125:2
**accountable** 143:6
**accurate** 63:24 84:17 170:4 188:5
**accusation** 172:22
**accusations** 173:13
**Achar** 117:24
**achievement** 44:14
**achievements** 43:4,9 48:17 49:22 53:3 105:18
**acknowledgements** 105:18
**acknowledgments** 25:20
**act** 113:10
**acted** 88:20

**action** 77:25 88:19 106:6
**actions** 89:25 172:23
**active** 117:1,4
**actively** 164:3
**activities** 87:9 164:2 165:4
**actress** 26:2
**acts** 112:25 113:3
**actual** 103:19
**add** 33:16 81:25
**added** 147:17
**addendum** 41:8 99:19 103:2
**addiction** 20:17,20
**addition** 43:16 45:15 93:14 129:18
**additional** 9:18 30:16,23 46:1 110:19 112:7 117:16 119:9 166:7
**additionally** 120:10
**address** 102:11 112:14 177:9 178:5
**addressed** 150:7 156:9
**addresses** 80:21
**adjourned** 187:19
**adjuster** 117:19
**administering** 63:24
**administration** 12:10 30:11 87:17 102:6 133:4 154:16
**administrative** 182:22
**administrators** 50:22
**admissible** 122:10
**admission** 15:11 58:11 71:25 72:2 169:17 170:11
**admit** 8:6
**admits** 169:18
**admitted** 7:9 15:19 17:10 18:20 29:10 36:17 39:8,11 42:8 45:5 49:11 56:3 63:12 67:4 69:6 70:18 73:2 79:21 80:15 98:23 100:3 101:1 105:9 109:12 117:8 128:18,25 143:25 146:11 149:23 162:8 186:10
**adopted** 170:10,20
**adoptive** 169:17
**advance** 52:18 60:25 65:2,3 71:9
**advanced** 17:6 182:17
**adverse** 21:21
**advised** 8:3 59:6 70:2 89:17 92:13
**advising** 63:22
**advisor** 20:9

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 2

**advisory** 50:16 51:22,25 52:8
  82:9 164:5
**advocate** 62:8 122:19
**advocated** 24:14
**affairs** 42:22 154:10 160:6,8
**affiliate** 70:3
**affiliated** 6:21 50:17
**affiliation** 74:5
**afield** 121:25
**aforementioned** 105:10
**afternoon** 8:11 66:19 124:22
  154:23
**age** 19:12 20:15 54:8
**ago** 86:21 132:7 151:14
**agree** 131:21
**agreeable** 67:6 91:2
**agreeing** 93:17,20
**agreement** 2:17 39:25 40:8 55:17
  88:16 90:1 91:12 95:9 109:23
  143:6 152:9 160:17
**ahead** 14:15 33:1 46:13 47:12
  51:6 59:1 60:20 68:23 76:21
  78:20 87:1,21 91:4,24 95:24
  97:15 110:23 118:14 119:1
  128:5 136:7,24 137:16 138:18
  141:14 145:4 152:4 157:5,20
  164:7 172:18 174:5
**AIDS** 21:3 24:15 26:11 62:25
**Alaei** 1:3 2:2,13,14,15,16,20
  4:3 5:5,19,21 9:16 10:6,7,13
  10:13 11:8 14:17 29:1,16 36:8
  36:20 37:2,10 39:19 41:23,24
  42:11,17 44:13,22,25 45:8
  49:15 55:24 56:7 62:14 63:5
  63:18 66:20 68:15 69:1,8,8
  70:6,21 71:3 72:16,18 73:4
  78:23 79:23,23 80:17 89:7,8
  89:15,20,23 91:13 95:6,11,16
  98:18,19 99:1 100:5,16 105:6
  105:14 106:23 109:14 111:12
  116:22 123:12 146:15 148:14
  150:1 154:24 155:12,16 157:16
  161:20 162:15,22 163:14
  164:15 165:2,17 167:7,12,16
  168:2,8 171:21 172:9,20,23
  173:14 178:13 182:9,15,21
  185:6,6 188:4
**Alaei's** 157:12 162:20 164:18
**Alamos** 69:19 73:6
**Albany** 1:8,14 3:16 4:3 5:4,7

6:4 11:15,17,17,18 12:16,24
15:6 18:4 19:3 25:9 27:18,19
27:25 28:1,2,11,14,16 29:1
31:17,21 32:1 33:7 36:7 37:5
37:12 41:22,24 42:12,18 44:12
44:25 45:9 51:13 52:1,14 55:1
55:20,24 56:10 58:11 60:11,14
70:3 74:5 77:12,18,23,25 81:1
83:21 84:25 85:1,16 89:12
90:12 92:24 93:18,18 95:17
96:10 98:4 101:21 109:8
111:14 120:16,16,22 123:25
126:1 133:2 135:10 146:25
149:13,17,19 151:9 152:7,10
153:3 154:2,3 155:1,13 165:11
167:12 173:13 178:16,17 181:5
**Albany's** 167:15
**albany.edu** 78:14
**alert** 69:10
**alleged** 91:9
**allegedly** 74:25
**Allen** 1:21 188:2,7
**Alliance** 120:18
**allow** 81:15 82:25 83:3 172:1,5
**allowed** 72:9
**allowing** 172:24
**alter** 96:19
**alternate** 2:20 58:3 126:3,19,21
  126:25 127:6,9,21,23 128:8
**alternative** 13:10,11,14 55:12
  56:9 57:8 58:3,17,17 62:15
  64:5 75:23 76:6 77:3,15 78:1
  78:23,25 79:9 83:7 85:6 86:8
  86:11 88:18,19 89:5,13,16,22
  106:7,10 107:4 111:15 119:3
  120:13,21 121:3 167:7
**alumni** 60:10,12
**Amanda** 1:14 6:1,5,9
**Ambassador** 69:21 73:11
**ameliorative** 115:6
**American** 20:13,14 24:8 26:13
  120:14,15,18
**Americans** 120:19
**amount** 34:16
**amounts** 165:9
**amplify** 10:16,17
**animus** 174:18
**announced** 19:17 79:4
**annual** 32:13 33:14,18 42:24
  48:12,17 78:6 179:11,12

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

**annually** 32:12,17 40:19 129:21
  136:14 158:9,12
**answer** 58:13 59:11 82:13 115:20
  136:1,22 139:23 141:7 143:8
  158:14 164:21 166:4
**Anthony** 1:13 5:23 69:1 70:14
  72:19 80:11
**anti-** 119:18
**anti-depression** 119:18
**anxiety** 113:5 119:19
**anybody** 28:9 34:6 56:21 72:10
  83:6 96:3 98:4 104:19 106:8
  113:14 178:12
**anybody's** 113:17
**anymore** 122:24
**anyway** 81:16
**apace** 8:6
**apologize** 31:9 68:4 126:18
**appearances** 1:11 5:11
**appears** 143:3 150:2
**application** 157:16
**applications** 65:14
**applied** 18:23 19:19 33:8 47:6
**apply** 19:16 33:3,4,5,10 34:5
  47:22
**appointed** 89:19 133:23 148:7,9
  148:14
**appointing** 178:14
**appointment** 3:20,25 4:11 12:8
  29:4 30:1,2,3,19 31:6,8,11,13
  32:12,17 33:13,13,14 35:3,16
  37:4,12,21,22 40:16,19,25
  41:2,11 43:5,13,19 45:16 76:2
  98:13 99:4 102:25 104:18
  109:18,24 110:1 129:18,21
  132:17,20 133:2 134:1,9,16,22
  134:23,25 135:1,3,16,19,22
  136:11,12,14 137:1 138:3,23
  139:19 140:10,12,13,17,20
  141:21 142:15,22,24 146:7,16
  146:17,20 147:6,16,17,18
  148:7 149:5,8,9,16 150:2,11
  150:12 155:15,17,22,25 156:3
  156:4,16,25 157:12 158:2,3,9
  160:22 161:4 162:19,22,25
  167:19
**appointments** 30:14,16,23 35:19
  133:19,20 147:13 155:19
  156:21
**Appreciate** 6:12

**approach** 27:5 28:17 35:21 38:15
  63:14
**approaching** 182:9
**appropriate** 114:25 119:12 176:4
**approval** 181:10
**approved** 34:8 42:21 50:18 99:18
**approximately** 43:6
**Appt** 2:13
**April** 2:18 12:25 28:15,16 29:2
  37:14 41:23 42:24 43:11 44:12
  44:15,24 45:10 98:14,19 99:24
  106:14 129:18,22,24 130:2,5,9
  130:17 132:23 140:22 141:18
  141:24 146:17 147:7,14,20
  152:7 157:23 159:23
**Arash** 4:3 125:21 162:20
**arbitration** 92:8,10 94:12
**areas** 50:25
**argue** 113:11,12 141:6
**argument** 94:23 114:24 170:19
**arrested** 64:23
**article** 75:11 90:1 109:22
**articles** 88:15
**Asal** 102:5
**asked** 8:18 54:23 57:12 90:23
  99:11 100:9 113:3 136:22,23
  141:7 150:17,18 167:14 176:16
  181:5,9 182:20
**asking** 85:7 133:25 137:19 138:8
  139:12 171:13 175:18
**aspect** 114:11
**Assembly** 24:11
**assert** 85:1
**assigned** 59:11
**assigning** 112:21
**assignment** 2:20 13:12,14 55:13
  56:9 57:8 58:3,17,24 62:15
  64:6 75:23 76:6 77:3,15 78:1
  78:23,25 79:9 83:7 85:6 86:8
  86:11 88:18,19 89:14,17,22
  106:8,10 107:5 111:15 119:4
  120:13,21 121:3 126:3,19,21
  127:1,6,9,21,23 167:7
**assignments** 13:10 89:5 120:25
  128:8
**assistance** 24:5 117:23
**associate** 5:25 12:8,15 26:17
  30:3,5,10 43:7 45:16 47:20
  48:1 52:15,17 53:8 133:2,10
  133:11,12 140:10,18,20,24

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 193 of 558

800.523.7887          6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 4

141:3 147:18,23
**associated** 1:22 45:14 140:25
  188:8
**Association** 24:8,9
**assume** 81:16 106:6 144:9
**assumed** 173:14
**assuming** 93:22
**attached** 41:9 99:3 100:18
  103:17 104:18 150:6,15
**attachments** 55:25
**attempt** 136:21 161:11
**attended** 96:3,5 171:17 174:12
**attending** 18:7 72:8
**attention** 73:4 119:25 133:18
**attorney** 1:14 23:19,19 57:17
  66:2 96:8,18
**attorneys** 10:20
**attract** 32:20,22 33:19 46:22
  135:5
**attributing** 106:19
**audio** 118:13
**August** 13:16 92:11 107:12 109:8
  109:21,24 110:1,1 118:24
  142:9
**Australia** 18:18
**authenticate** 40:12
**authority** 72:3
**authorized** 43:1 89:25
**authors** 71:7
**automatically** 43:22
**available** 8:4 34:24 35:14 59:10
**award** 25:25 26:2,6,7,9,11,24
  27:17,25 28:9 61:1,2 122:18
**awarded** 59:12 95:2,3
**awards** 20:16 25:19,21,21,23
  26:18 122:14,15
**aware** 45:25 69:11 130:6 131:18
  131:18 145:9 151:17 155:4
  156:22 157:1 165:1,17,19
  181:13 182:5,8,21 184:16

---

**B**

**B** 2:9 4:6 49:7 99:25,25 132:9
  132:10,11 146:16
**B-U-C-C-I** 118:7
**B.B.C** 61:1,4
**b/t** 2:17
**back** 13:17,19 24:3 25:3,7,17
  31:2 57:10 58:19 61:23 75:23
  76:5,5 81:23 91:14 107:21

108:16,17,21,23 117:17 122:3
  124:12 129:25 136:11 137:18
  140:25 157:22
**backfill** 71:1
**background** 14:18,23 15:14,14
**bad** 113:14 184:7
**balance** 93:5 109:25 142:22
**bankrupt** 122:9
**bargain** 137:14
**barred** 63:23 64:4
**base** 99:18
**based** 14:6 18:3 45:23 74:19
  75:3,17 84:16 88:15 96:17
  102:11 103:1 105:12 106:3,5
  114:12,16 119:11,17 130:2
  132:1 137:7 138:4 139:13
  144:19
**basic** 57:15
**basically** 116:24 169:21
**basis** 91:1 102:6 167:15,18
  169:8 170:19 174:20
**beginning** 37:14 42:23 43:11
  104:2 140:22 141:23 147:7,14
**behalf** 37:3,10 85:13,14 87:10
  87:15 88:13,24 91:7 92:2 98:9
**Beheshti** 15:25
**Beirut** 97:21
**believe** 7:11 79:18 92:1 108:22
  113:4 157:2,6 159:24 174:15
  174:16 176:13 178:9 185:9
**believed** 173:8
**bench** 187:1,7
**benefit** 39:13,16,16 111:2
**benefits** 35:14 39:23 110:15,22
  110:25 111:1,2
**best** 17:8 19:14,23 20:23 21:2,5
  61:1 188:6
**better** 12:3 117:22
**beyond** 43:17 109:20 112:24
  123:8
**Bill** 53:1 99:7,24 106:25 131:11
**bin** 152:22
**bit** 21:25 29:17 187:6
**block** 8:16
**blocked** 89:14
**board** 2:18 28:7 49:25 50:4,12
  50:16,16,20,22 51:9,14,16,18
  51:21,22,25 52:8,8 82:9
  127:18 128:10 164:5,11 178:7
  178:13

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 194 of 558

800.523.7887          6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 5

**boards** 82:9
**bono** 120:3 140:12
**book** 69:2
**booklet** 40:1,4
**born** 14:19,20
**boss** 176:13,17 177:7
**bottom** 31:4 38:3 71:3 150:4
**box** 153:8
**boxer** 26:19
**boy** 132:10,11
**break** 65:22,23 66:13 67:1
**Brian** 72:12 96:8,10 107:16
  108:4,5 109:2
**bridge** 111:20
**brief** 22:23 113:12 145:25
**briefly** 50:6,9,11 97:18 183:10
**bring** 24:3 32:21,21 34:17 81:23
  130:2,2 132:1 144:20
**broadly** 154:11 165:8
**brother** 49:4 97:22 125:21
  126:18,25 127:4 162:20,23
  163:3
**brother's** 162:24
**brought** 22:12 47:21 83:20 165:7
  165:8
**Brown** 52:4
**Bruce** 34:10,19,19 41:9 135:13
  148:15
**Bucci** 118:7
**budget** 32:8 133:15 150:3 158:5
**bullet** 59:4,6 101:15
**burden** 114:10 116:12,12
**business** 109:21 121:15 146:13
  170:10,11,16 176:8

---

### C

**C** 4:7 134:4,8 147:5 168:13
**C.D.C** 47:7 122:21,23
**C.V.s** 54:4
**California** 15:4,5,6 26:7
**call** 6:9 9:13 10:22 13:8,22
  30:18 32:2,20 33:3 34:4 56:17
  124:25 132:6 135:7 139:3
  152:25 153:1
**called** 57:3,3 82:10 84:19 85:8
  103:2 108:25 155:19 159:3,4
  165:14 176:3
**calling** 6:14 35:9
**calls** 9:15
**campaign** 23:9 24:7,13,16 25:12

25:14,16
**campaigned** 24:14
**campaigns** 26:3
**campus** 37:13 49:23 54:10,17
  60:25 61:7 69:9 71:10 107:19
  107:20 150:3
**campuses** 33:4 49:21 135:8
**can't** 75:4
**candidate** 54:17,18
**capacities** 20:9
**capacity** 50:23 52:5 69:15 90:5
  90:11
**capital** 14:22
**Capitol** 1:8
**care** 5:24 144:7
**career** 52:19 117:4
**Carol** 159:18,19,22
**case** 8:19 11:2 66:2,4 71:8 93:5
  93:5 112:19 113:24 151:15
**Castiglione** 1:11 2:3,4,5,6 5:12
  5:12,16,18 7:1,3,6,8 8:8,18
  9:1,5,7,13,15 10:25 11:5,6,7
  12:13 14:9,11,15,16 16:21,25
  22:2,3 23:6,20 26:21 27:5,8
  27:12,16 28:17,23,25 29:5,11
  29:14,15,19,20,23 30:13 34:1
  35:7,11,12,21,23 36:12,18,19
  36:25 37:1,8,9 38:15,19,20,21
  38:24 39:3,9,12,15,18 40:7,13
  40:16,17 42:1,4,9,10,14,16
  44:8,10,21,23 45:7 46:16
  47:23 49:2,7,11,12,14 50:8
  51:4,8 53:25 55:21 56:4,6,20
  58:10,15,16 59:2,3 60:21,22
  62:4,21 63:6,17 64:2 65:15,21
  66:11 68:2,4,11,13,14,24 69:7
  70:6,19 71:24 72:5,11,23 73:3
  74:12,17,23 75:15,22 76:1,4
  76:15,24 77:9,11 78:21,22
  79:12,22 80:6,16 81:14,17,20
  81:24 82:4,23 83:4 84:4,9,15
  84:21,24 85:24 87:2,3,12,19
  87:22,24 88:1,4,8,9 89:2
  90:19,24 91:4,5,23,25 92:25
  93:3,16,23 94:13,20,25 95:5
  95:14,15,25 96:1,23 97:16,17
  98:16,24 99:22 100:4,14,22
  101:2 102:15,16 105:4,9,11,13
  106:21,22 108:5,8,20 109:6,13
  110:11,24 112:2,23 113:2,10

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 195 of 558

800.523.7887                 6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 6

113:24 115:23 116:14,21 118:2
118:15 119:2,8 121:8,21 122:2
122:13 123:11,17,22 124:4,7
124:20 128:16 143:5,9,21,23
144:1,4,6,10,12,15 145:24
146:3,6,10,14 148:5,13,22
149:16,25 151:5 152:3,5,17
153:2,6 154:21,22 155:11
156:14,24 157:8,17,21 158:20
159:16,20 161:6,8,13,17,22
162:2,5,8,9,11 163:12 164:8,9
164:25 166:1,6,10,13 167:1,5
168:10,15,21 169:2,14,15
170:9,16,22 171:1,4,6 172:6
173:1,11,19,25 174:2,6,9,14
174:19,24 175:6,9,14 176:6,10
177:3,20,24 178:1,19 179:1,6
179:9 180:13 181:21,22 183:4
183:8 185:3,4,14,22 186:4,5
187:11
**cause** 21:13 96:25 114:22
**caused** 74:25 113:4 114:1,4
**caveat** 93:13
**CBA** 4:10
**CC** 109:7
**cease** 91:11
**cell** 22:18
**center** 52:6 59:20 83:13 164:2
172:20
**centers** 33:7 34:5 47:22 135:11
**certain** 16:7 68:6 76:7 77:24
103:10 112:25 113:3 145:12
152:13
**certainly** 115:7
**CERTIFICATION** 188:1
**certified** 2:19 16:16
**certify** 188:2
**chain** 2:22 72:12
**chair** 31:8 102:5
**chairs** 50:23
**challenging** 73:8
**chambers** 7:14
**champion** 26:19
**chancellor** 2:16 28:8 49:3,12,20
135:7
**change** 22:9 45:10 103:21 150:9
171:9
**changed** 117:20
**changes** 42:25
**Channel** 61:4

**chapter** 81:18 123:1,2,4
**charge** 89:24 96:7 99:8 104:9
137:23
**Charles** 46:3,9,11,12 47:24,25
48:3,3,24 55:9 56:25 57:1
58:24 59:6 62:16 63:5,22
64:18 68:25 69:9 70:2,8,10,22
71:19 72:6,10,13 76:7,9 79:14
79:17,25 80:9,18 89:17,21
90:5,10 96:9,11,12,16 98:18
99:10,15,16 100:17 102:5
104:3,10,14,17,22 120:24
171:8 177:13 178:4,10,12
185:9,10
**check** 41:3 55:1 110:9 140:3
**Chief** 148:18,21,23
**China** 17:12
**citizen** 74:1,7
**Citizenship** 27:25
**City** 53:21,24
**claim** 1:2 3:15 5:9,10 66:20
74:17,18 75:3,9 111:13 145:13
174:9 188:4
**claimant** 1:3,12 2:2,12 5:11,14
5:17,20 9:6,12,15 11:8 68:3
87:15 124:17 152:25 153:1
**Claimant's** 7:10 9:14 28:21,24
28:25 29:9 35:13 36:6,16,21
41:21 42:7 45:1,6,9 49:3,10
55:23 56:2 60:1,3 63:3,4,12
63:19 67:3 68:16,24 69:5 70:7
70:13,17 72:15 76:5 79:13,15
79:20,24 80:8,14,17 87:13
88:11 93:5 98:17,25 99:23,25
100:15 101:3 104:1 105:5,10
109:7 113:12 116:12 144:1
149:14 155:4,6,12 160:17
161:25 162:7 177:21 178:2
**Claimant's** 49:16
**claims** 1:2 5:4 8:19 9:10 84:10
90:3 188:3
**clarification** 176:16
**clarity** 90:22
**class** 52:2
**classmates** 18:16
**clear** 9:21 11:19 12:19 34:16
39:12 41:1 97:25 106:3 137:6
161:7
**clearance** 65:2
**clearly** 137:5

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 196 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 7

client 5:17,18 26:24 28:18 49:4
  75:5 91:7,18 92:11,25 94:14
  94:14 95:1 100:19 109:9 114:2
  143:5 148:6 169:23 174:11
Clinical 140:10
clock 10:23
close 109:20 146:12
co-director 125:21
co-directors 80:24 89:19
co-P.I 101:17
code 150:11
cohort 17:14 21:10 26:18,20
coincide 31:12 158:3
collaboration 34:13 101:21
collateral 137:10
colleague 39:3 86:1
colleagues 80:22
college 12:10 18:12,12 30:12
  34:14 52:2 53:18,19,19,20
  54:2,12 102:20 120:15 121:23
  122:4,8,9,11 182:10,16,23
colleges 45:19 50:24
Colombia 22:10
Columbia 22:9 52:4
com 77:4
come 9:17,18,19 10:1 13:22 15:9
  15:12 17:9 23:23 56:18,19
  58:21 63:14 81:8 83:22 93:6,7
  95:11,16 96:24 97:4,6 108:17
  119:22 134:1 163:8 165:16
  170:5 177:16 187:2,6,8
comfortable 181:10
coming 20:23 61:7 81:16 117:17
  144:8 165:11
commenced 5:1 14:7
commencing 31:12 132:21 158:2
comments 8:22 81:12
commitment 19:18
commitments 69:11
committed 21:15
common 9:12 53:9 144:21 152:15
communicate 54:20 60:12,15 76:8
  85:4 123:2
communicating 22:21 63:23 64:4
communication 23:1 65:19
communications 28:5 76:7
communities 128:2
community 71:2,11,12,18 89:20
  117:3 120:11,12,15,15 121:1
  128:1,3

competent 121:19 122:1
competition 15:18
competitive 18:19 27:22 33:6
  34:9 47:6 135:9
compile 67:2
compiled 7:12
complaint 116:4
complete 68:18
completed 13:16
completely 32:3 117:19 122:23
complimentary 133:19
component 174:25
comprehensive 100:13
concept 34:2,7 149:2 155:19
  156:1
concern 64:15 176:15
concerned 172:20,21,23
concerning 165:17 173:14
concerns 64:10,19 86:18 101:8
  169:18,22,24,25 171:20 172:8
  172:11 173:21 175:15,20 176:3
  176:11,12 177:6
conclude 186:2
concluded 113:16 124:16
conclusion 61:21 97:23,25
condition 24:2 116:24
conditions 112:14
conduct 8:9
conducting 57:24 167:15
confer 81:10 178:12
conference 7:15 24:15 26:12
  72:8 97:21
confidential 59:16
confines 115:12
confirm 37:4,11 147:6,13
confirmation 134:8,15
confirmed 89:21
confirming 141:20
confusing 32:2 57:8
congressional 2:11 26:23
Connect 118:1
consent 86:7
consequences 21:21
consider 64:21 115:12 137:11
considered 9:11
consistent 6:16 64:15 147:8
  160:20
consistently 123:24
constant 64:14
constitutional 174:21

800.523.7887              6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 8

consult 57:16
consultant 20:13
consultation 63:1
consulted 128:11
Cont'g 12:13 14:16 16:25 22:3
  23:6,20 27:16 29:15,23 30:13
  34:1 35:12 36:19 37:1,9 39:18
  40:7,17 42:10,16 44:10,21
  45:7 46:16 47:23 49:14 50:8
  51:8 53:25 56:6,20 58:16 59:3
  60:22 62:4,21 63:17 64:2
  65:15 68:14 69:7 70:19 72:5
  73:3 74:12 75:22 76:4,24
  77:11 78:22 79:22 80:16 82:4
  83:4 84:4,15,24 85:24 87:3
  88:9 89:2 95:5,15 96:1 97:17
  98:24 100:4 101:2 102:16
  105:13 106:22 108:8,20 109:13
  110:11,24 116:21 118:2,15
  119:2,8 121:8 122:2,13 123:11
  123:22 124:21 125:20 126:14
  128:6 129:2,12 131:5,9,25
  132:13 136:10,25 137:17
  138:19 140:6 141:15 142:14
  143:2 144:14 145:5 148:13,22
  149:25 151:5 152:5 155:11
  156:14 157:8,21 158:20 159:16
  159:20 162:11 163:12 164:9,25
  166:1,13 167:5 171:6 172:6
  173:1,11,19 175:14 176:10
  177:3,20 178:1,19 179:9
  180:13 181:22 185:5
contact 38:7 54:24,25 59:8
  62:17 77:20 127:16,20 128:7
  168:7
contacted 38:10,11 59:10 83:12
  97:4 128:9
contacting 77:21 81:4 89:9
  182:25
contacts 77:22
contain 131:10
contains 168:17 170:14
content 170:6 172:3
contention 91:9
contest 93:15
continual 156:5 163:3,5
continue 15:12 17:17 20:8 24:4
  25:6,9,17,18 57:22 62:24
  68:12 105:23 120:4,23 123:25
continued 17:9,15 30:16 43:14

133:23
continuing 119:5
contract 33:19 40:20,24 130:1
  137:15,21 143:4,11,19 145:10
  156:5 160:12 162:20 163:5
  179:17
contractor 118:16
contracts 130:7 156:12
contractual 89:5,13,16,22
contradict 93:14
control 17:11 20:17,19
convene 81:10
conversation 52:25 71:19 76:23
  137:6 138:4 139:13 162:21
  167:20
conversations 34:21 137:20,25
  182:12
copy 1:19 36:9 39:24 40:8 99:4
  100:8 104:18 158:25 166:15
corner 62:12
Coronavirus 6:16
correct 28:11 64:6 70:4 87:7
  90:23 101:18 125:3,7,14,22
  127:7,14 129:17 130:11,21
  132:21,23 133:4,6,9,20 134:1
  134:18,20 138:21 139:8,9,11
  139:20 140:19,23 141:4,18,21
  141:24 142:16,19,23 144:18
  145:7 163:14,15 168:4 173:10
  174:15,16,18 176:19 177:11
  180:24 181:23 183:20,21 184:2
  184:5,8,24 185:8 186:3
correctly 41:8
correspondence 100:6
cost 121:24
Council 25:23
counsel 1:14 6:2,4 22:1 46:13
  58:7 59:1 60:20 63:14 66:8
  68:23 76:21 78:20 84:22 85:10
  85:12 87:1 90:23 95:24 97:15
  98:8 102:14 111:19 119:1,7
  121:6,18 123:10,21 128:5
  131:23 136:7,24 137:16 138:18
  141:7,10,12,14 145:12 146:16
  149:18 157:15,20 158:19,19
  167:3 173:16 174:5 175:3,21
  177:16
counsel's 115:5 136:21 139:5
counsel's 112:21
Counselor 37:6

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 198 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 9

**counselors** 5:15
**countries** 20:22 23:9 63:1 69:13
 86:13 102:1
**country** 16:1 20:17 21:4 25:2,3
 30:20 120:20
**couple** 96:21 101:11,13 181:24
**course** 8:21 47:17 66:9 90:25
 137:10
**courses** 101:23
**court** 1:2,19 2:10 5:2,4,15,17
 5:20,24 6:3,5,9,12,15 7:5,7
 7:22 8:1,3,3,4,10,19 9:2,5,9
 9:10,17 10:15,19,22 11:3,5,25
 12:4 14:9,15 16:2,5,7,10,13
 16:16,19,23 21:25 22:23 23:12
 23:14,16 26:17,22 27:2,4,6,9
 27:10,11,13,13 28:22,24 29:3
 29:6,9,12,19,21 30:5,9 33:24
 35:6,22 36:1,6,11,14,16,25
 38:17,20,23 39:2,4,7,10,14,17
 40:2,5,10,15 41:25 42:3,5,7
 42:13,15 44:6,9,19 45:3,5,22
 46:5,8,11,13 47:11 48:24 49:5
 49:10 50:6 51:3,6 53:23 56:2
 56:5,14 58:6,12 59:1 60:17,20
 61:20,25 62:3,19 63:8,10,12
 65:9,13,23 66:6,8,9,12,15,19
 67:1,10,13,16,22 68:2,8,11,17
 68:23 69:5 70:17 71:22 72:1
 73:1 74:11,21 75:1,11,16,21
 75:25 76:2,11,13,17,19,21
 77:5,7 78:9,13,15,17,20 79:20
 80:14 81:7,15,18,21 82:1,3,21
 82:25 83:24 84:8,12,22 85:15
 85:17,19,21,23 86:15,20,24
 87:1,18,21,23,25 88:2,6,22
 89:1 90:7,9,17,22,24 91:21,24
 92:21 93:4,6,7,9,11,13,20,25
 94:3,6,11,17,19,23 95:4,13,20
 95:22,24 96:21,24 97:3,6,9,12
 97:15 98:22 99:21 100:2,21,25
 102:13 105:8 106:18 108:2,7
 108:17 109:11 110:6,8,16,23
 111:19,20 112:18 113:1,9,11
 114:19,19 115:24 116:7,10,16
 116:20 118:1,10,12,14,23
 119:1,6 121:6,17,22 122:7
 123:8,16,20 124:6,8,11,16
 125:16 126:7,10,12 127:22
 128:3,5,12,17,22,25 129:8

 131:1,4,8,17,21,23 132:10,12
 135:23,25 136:6,9,20 137:9
 138:6,10,12,15,18 139:5,9,11
 139:15,18,22 140:1,4 141:6,9
 141:14 142:10 143:1,7,10,13
 143:15,17,19,22,24 144:3,5,7
 144:11,13,22,25 145:2,4,20,23
 146:1,8,11,12 148:2,8,20
 149:15,20,23 150:24 151:1
 152:4,18,20,25 153:4,7,10,23
 154:1,3,5,7,11,17 155:8 156:6
 156:8,20,22 157:1,4,14,19
 158:14,18 159:15,19 161:6,10
 161:12,21,24 162:4,7 163:2,8
 163:23 164:7,21 165:21,23,25
 166:4,9,11,18,21,23,25 167:3
 168:14,24 169:1,3,7,13 170:1
 170:13,18,24 171:2,5 172:1,17
 173:6,16 174:4,7,13,15,22
 175:2,8,11,21 176:25 177:15
 177:23,25 178:18,25 179:2,5,8
 180:7,9,11 181:17,19 183:6,9
 183:12,14 185:2,15,17,23,25
 186:2,6 187:6,12,14,17 188:3
**Court's** 58:13 66:10 148:10
**Court's** 66:25
**courtroom** 1:8 5:21 6:17,19,21
 6:22 176:2,3 186:8,15,15,25
 187:3
**cover** 2:19 54:4
**coverage** 27:20 28:1,7 70:1
**COVID** 17:7,12 18:3
**crazy** 61:13
**create** 116:4
**created** 48:18
**crediting** 172:3
**criminal** 30:19,20 58:22 102:20
 122:22
**cross** 68:18 88:2 111:19 115:7
 124:17,21 170:7 183:9,15
 186:19
**current** 31:13 57:20 60:5 89:10
 154:7 158:3
**currently** 7:11 15:3 153:24
**CX** 2:3,6

--- **D** ---

**D** 4:7,11 140:8
**damage** 88:21 117:16
**damaged** 107:23

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 199 of 558

800.523.7887                    6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 10

**damages** 75:10 112:1 113:8
**danger** 113:22
**date** 1:6 28:15 31:13 38:25
  45:11 54:15 56:3 87:18 106:14
  109:20 129:22 130:1 146:21
  147:19 150:11 158:3 162:8
  163:22 183:7
**dated** 2:13,14,18,19 29:2 36:7
  39:16 41:22,23 42:11,18 44:12
  44:24 45:9 49:4,16 55:24 69:1
  70:12 72:16,18 73:5 79:14
  80:9,18 87:16 91:6 92:4,9
  95:7 98:19 99:2,24 100:17
  101:4 104:3,19 105:5 109:8
  129:4,18 131:13 140:14 141:18
  161:20 178:4 188:7
**dates** 167:20
**day** 1:7 8:10 10:24 13:15,17,20
  20:19 26:25 60:23 61:6,10
  79:8,9 82:11 100:10 107:22
  108:21 110:17 120:25
**day-** 52:11
**days** 25:3 78:7 104:25
**deal** 112:10 160:9,16 177:8
**dealing** 74:15 111:15
**deals** 160:13
**dean** 12:15 25:13 34:13 43:8
  45:16 46:2,5,6 47:20,25 50:24
  50:24 52:17 53:18 54:11 102:4
  104:17 140:18,20,24,25 141:3
  147:18 154:10 181:3 182:23
  184:4
**deans** 35:1 102:19
**deanship** 53:18 147:23 182:10,16
**dear** 3:16 39:3 80:22 104:16
**debate** 141:12
**decades** 26:3
**December** 18:6 54:10
**decide** 137:15
**decided** 92:19 119:12 152:11
**decision** 79:10 102:7 104:24,25
  106:11 115:13 130:15 139:17
**decisions** 121:20
**declined** 60:18
**dedicated** 78:10
**deep** 64:15
**DEF** 4:4
**defamation** 84:10 174:25
**Defendant** 1:5,15 5:22
**Defendant's** 6:25 7:3,8 93:5

  128:22 132:9 134:3 140:8,14
  141:16 146:16 147:5,11
**Defense** 158:18
**defer** 102:10
**define** 34:13 144:19 163:23
  165:7
**defined** 34:25 102:25
**Definitely** 66:7
**definition** 116:11
**degree** 15:16 16:5 17:6,18 18:11
  18:17 101:20
**degrees** 17:5 18:10 19:4 30:22
  32:22 62:10
**delves** 113:6
**democratic** 61:16
**department** 12:9 19:11 21:3
  30:11,21,22 33:7 49:23 59:16
  65:3 133:3 149:18 152:1 181:3
  184:2,15,18
**departments** 34:5 45:18 47:18
  50:24 53:18 124:2 135:10
  183:25
**depends** 144:19 181:2
**deposition** 166:2,5,14,15,18
  167:9 169:17 182:19 183:6
**depression** 117:7
**deprived** 121:10
**dermatologist** 118:20
**dermatology** 119:19,19
**described** 116:10
**deserve** 47:2
**design** 18:2 164:6
**designated** 34:10 96:18 135:13
  137:23
**desist** 91:11
**desk** 155:5
**despite** 89:4,13,16,22 103:21
**destroyed** 122:23
**detail** 41:10
**detailed** 41:7
**details** 55:5
**determination** 175:10
**determine** 44:7 148:4
**develop** 47:15 62:9 135:15
  155:15,17
**developed** 19:13 34:15 41:9
  47:17 71:12 101:20,23 102:1
  102:24 103:11
**developing** 155:18
**development** 154:16

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 11

**diagnosis** 112:8
**diagnostic** 119:13
**Diaz** 48:20 72:17 73:15,18,23
  133:24
**died** 26:4
**diet** 96:7
**different** 11:23 12:2 20:9 32:3
  34:4 35:23 45:18 47:18,21
  79:4 80:20 119:17 140:12
  141:10 149:12 175:4
**differently** 35:24
**difficult** 24:19
**difficulties** 22:4
**digital** 188:4
**DIGITALLY** 1:21
**Dina** 80:24
**direct** 8:22 11:7 55:8 56:23
  66:22 68:3 104:21 124:16
  133:17 154:22 171:13
**directed** 60:3 76:6 89:8
**directly** 31:24 49:21 51:16 90:5
**director** 12:11 19:10 30:17 33:9
  46:21 52:6,16 83:13 91:14
  102:19 125:8,10,11 133:22,23
  165:2 178:13
**directors** 50:1,4,12,16,21,22
  51:9,14,16,19 52:9 65:7,11
  89:24 178:7,14
**disadvantaged** 18:15 19:21 22:7
**disagree** 176:7
**discard** 152:22
**discharging** 154:18
**disciplinary** 57:24 74:20 88:19
  89:6 91:13 95:17 98:6 107:5,9
  107:13
**discipline** 75:4 89:6,14,17,23
  108:10
**disclosure** 122:22
**discriminated** 175:24
**discrimination** 173:21 174:19
**discriminatory** 175:9
**discuss** 60:3 66:1 73:24 80:3
  89:8 126:24 127:3 144:15
  148:19
**discussed** 96:14 97:19 111:16
  137:19 139:19 149:2
**discussing** 102:23 162:17,19
**discussion** 52:23 84:16 162:22
**discussions** 45:23 148:15 171:3
**dispute** 89:13 94:8,8

**distanced** 6:18
**distress** 74:18,22,25 75:9,10,19
  111:13 112:3,12,13,17,20
  113:19,21 114:15,21 116:5,13
**distressed** 75:12,17 111:24
  115:3
**doable** 187:4
**doctor** 5:20 9:9,18 10:15 16:2,7
  18:20 29:12 33:24 39:2 44:19
  45:22 60:17 61:21 66:1,22
  68:12 70:20 71:23 75:16 78:9
  81:13 82:24 83:24 86:15 88:22
  93:3 108:2 110:16 111:20,22
  112:24 114:6 115:6,18 118:10
  119:12 123:9 124:22 128:12,13
  129:3 131:6,17 136:6,7,12,20
  139:18 140:8 141:6 142:13
  143:17 152:21 153:24 165:25
  166:4 173:8 175:22 183:17
  185:17
**doctor's** 115:2
**doctorate** 15:17 17:1,16,22,24
  18:1,4,5
**doctors** 24:10 112:4,7 113:2
  119:9,10 184:22
**document** 29:16 37:21 38:4 44:24
  49:17,19 56:7 61:1 63:20,22
  99:1,6,13 116:15 148:11 150:1
  157:24 161:14 169:1
**documented** 19:14,15
**documents** 2:19 40:14 41:20
  112:6,7
**doing** 92:6 117:1 128:18
**dollar** 112:16
**dollars** 18:25 19:20 31:18,24
  32:14 41:12 101:16 105:23
  133:9 142:5,18 147:22
**door** 82:13,14
**dot** 77:4,4
**double** 171:25
**Dr** 2:2,5,14 5:5,18,20 9:15 11:8
  14:17 29:1,16 36:8,20 37:2,10
  39:19 41:22,24 42:11,17 44:12
  44:22,25 45:8 48:3,3 49:15
  55:24 56:7 59:6 62:14,16 63:4
  63:18,22 66:20 68:15 69:1,8,8
  70:6,21 71:3 72:16,18 73:4
  78:23 79:23 80:17 89:7,8,14
  89:17,20,21,23 91:13 95:6,11
  95:16 99:1,10,16 100:5,16

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 201 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 12

102:5 105:6,14 106:23 109:14
111:12 116:22 117:24 118:5,7
123:12 146:15 148:14 150:1
153:2,5,7 154:23 155:12,16
157:12,16,22 158:21 161:20
162:12,15,19,22 163:13,14
164:15,18 165:2,17 167:7,12
167:16 168:2,8 171:7,21 172:9
172:20,23 173:14 177:4 178:10
178:12,13 182:9,15,21 185:6,6
185:9,10
**Drive** 1:22 4:4 188:8
**drug** 22:8
**dry** 11:2
**due** 21:14,15 23:1 43:3,8 44:14
117:8,10,12,17,18,19 122:24
176:4
**dues** 92:12
**duration** 156:24
**duties** 154:12,18
**DX** 2:3,5

---

**E**

**E** 2:1,1,9 4:8
**E-V-I-N** 23:17
**E-Y** 46:10
**E.N.T** 118:11,13
**earlier** 28:11 60:17 77:23 87:6
119:23 163:13 187:3,7
**East** 14:25 17:8 19:14
**Eastern** 20:10
**education** 15:13,14 17:9,15 25:6
25:9,18 46:7 47:25 48:2,19
55:11 59:18 154:14
**educational** 160:8
**effect** 176:22
**effective** 45:11 80:23 109:24
150:11 178:11
**efforts** 18:22 48:6 52:18,21
85:12 99:9 121:12 165:1
**eight** 2:20 7:16 19:20 55:23
56:2 60:2,3 76:3,6 167:2
**Eighteen** 3:2 72:15 73:1
**eighty-five** 23:9 103:7,17 170:4
**eighty-six** 41:12
**either** 6:14 8:14 91:1 143:24
174:17 185:20
**elected** 109:24
**eleven** 2:23 69:19 79:13,15,20
79:24

**elicit** 94:7 121:24
**Elizabeth** 26:2,6
**Ellis** 26:15,15,24 27:17
**email** 2:23,23,24,24,25 3:1,1,2
3:2,3,3,4,4,6,7,9,10,11,12,13
3:13,14,19,20,21,21,22,22,23
4:1,1,2 56:16 63:4 64:3 68:25
69:8 70:8,9,11,21 72:6,12,16
72:17 73:5,12,13 76:18,19,25
77:1,2,7,9,13,18,21 79:10,14
79:24 80:4,9,18,20 87:4 89:15
89:21 91:15 99:1 100:15 101:5
104:2 105:12,15 107:25 121:10
122:5 125:2 129:4 161:19
162:12,15,18 168:16,17 169:10
169:16,19,21 170:23 171:7
175:16,20 176:23 177:1,12
178:3,5
**emails** 2:22 77:16 81:1 82:5
86:14 98:18 107:23 173:4
**embarrassed** 111:25 117:21
**embarrassing** 74:6 75:20
**embarrassment** 113:5
**emotional** 14:5 74:18,22,25 75:9
75:10 111:13,22 112:3,12,13
112:17,19 113:19,21 114:8,9
114:14,21 116:5,13 145:12
**emotionally** 116:25
**employed** 11:11 12:24,25 28:10
28:16 94:16 126:1 153:24
159:10
**employee** 74:3,14 75:7 92:14
125:3,6,12 145:14
**employees** 178:17 179:12
**employment** 13:4 30:25 32:11
43:19 45:10 84:18 104:7,12
110:17 129:20 136:13 137:6
138:5,13 146:25 149:11 158:8
158:11 160:9
**EMRO** 20:10
**en** 68:20
**encountered** 22:4
**endeavor** 8:9 182:13
**endeavors** 21:8
**ended** 23:10 46:24 94:9,11 98:2
**ends** 107:11
**endure** 113:18
**endured** 112:20
**enemy** 22:21 23:2
**enforce** 92:19,20

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 202 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 13

**engage** 45:18 47:3,21
**engaged** 17:13 45:19 117:2,3
  120:12
**engagements** 69:10,25 74:14
**Engineering** 25:15
**enrollment** 106:2
**entail** 104:6 161:4
**entered** 140:7
**entertain** 6:14 114:20
**entire** 32:4 54:11 61:7 71:10
  143:6
**entities** 31:22
**entitled** 44:2 99:5 111:1
**entity** 32:3
**epidemiology** 17:7,21
**equipment** 188:5
**ER** 3:8
**especially** 61:8
**ESQ** 1:11,11
**essentially** 93:23
**essentials** 94:2
**establish** 50:5
**established** 41:2 50:15 83:14
  112:19 120:15
**establishing** 40:13
**ethnic** 14:23
**European** 24:10
**evaluate** 33:15
**evaluated** 103:1 156:7
**evaluation** 33:15 48:13,13 102:4
**evaluations** 48:25
**event** 9:11 69:20
**events** 69:14,16 71:4 74:2 75:6
  75:13,18 120:16,17
**Evergreen** 32:20 33:3,10 34:3,7
  34:22 41:19 43:13,18 52:24
  99:18 110:4 135:4,17,18,20,21
  137:7,19 143:3,10 149:2,2
  150:5 155:19,22,25 156:16,19
  156:25 157:7,16 161:2,3
**everybody** 186:17
**everybody's** 61:7
**evidence** 7:2,19 28:20 36:13
  44:23 55:22 63:7 67:7 69:3
  70:15 72:12,20 80:7 87:13
  94:3 98:17 100:20 105:4 114:9
  131:8,10 132:8 134:3 140:7
  161:18 177:23,24
**evidentiary** 9:11
**Evin** 23:17

**ex-prisoners** 22:8
**exact** 28:15 167:20
**exactly** 32:6 55:3 103:13 147:4
  159:2 173:4 176:22 180:5
**exam** 15:17
**examination** 11:7 68:3,12 124:17
  124:18,21 146:14 154:22 170:7
  183:9,15 185:4
**examine** 81:13 115:8 170:2
**example** 89:8 119:14 151:23
**Excel** 41:10 103:17
**exception** 170:11,17 176:8
**exchange** 34:24 83:2
**excuse** 31:8 35:4 55:23 64:3
  68:25 72:13 76:2 89:11 94:1
  94:14 156:11 186:9
**exercise** 117:2 142:21
**exercising** 109:23
**exhibit** 7:3 8:6 27:11,13 28:18
  28:21,24,25 29:9 35:4,4,5,7,8
  35:13 36:6,16,21,21 38:16,21
  39:10 40:18 41:21 42:7,17
  44:11 45:24,25 49:7,16 55:23
  55:25 60:2,3 62:13 63:4,19
  67:3 68:16,24 69:2,6,8 70:7
  72:15,19,24 76:6 79:13,18
  80:11 87:13,14 88:6,11,23
  98:20 99:23,25 100:15,23
  101:3 104:1 105:5,8 109:7,7
  109:11 128:15,18 129:1,3
  131:7 132:9 134:4,8 140:14
  141:16 146:16 147:5,11 149:14
  149:23 155:7,8,12 160:17,23
  161:19,23,25 162:3 168:11,11
  168:11,13,13,15 177:21 178:3
**exhibits** 2:10,12 4:5 6:24,25
  7:9,10,18,21 40:11 67:5 68:6
  128:21,22 143:20 146:11,12
  186:8,10,21
**exist** 96:24
**existing** 149:12
**expand** 136:23
**expect** 61:13 66:9 93:4
**expectation** 82:15
**expense** 81:9
**experience** 14:6 19:5,8 20:7
  54:1 62:6
**experienced** 181:4,8
**experiences** 114:17 121:19
**expert** 20:11

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 14

experts 52:3 151:25
explain 11:21 12:23 13:6 14:18
 14:23 15:14 17:24 19:8 20:6
 21:24 31:14 37:24 40:23 41:5
 42:19 43:12 46:17 48:9 49:19
 50:3,11 51:24 52:21 54:1
 57:25 58:4 59:12 60:6 69:16
 71:4 78:4 82:16 83:3 88:12
 102:22 104:19 106:9,23 107:1
 107:13 116:23 120:11 121:11
 151:20 155:24 156:15 160:4
 161:3 162:17 165:6 167:10,17
 172:14 178:23 179:7
explained 112:8
explaining 43:13 103:11
explanation 57:12 141:11,11
explore 114:18
exposed 22:7
expressed 176:14,15
expressing 64:15
expressions 173:8
extended 41:18 44:15 109:20
 146:23
extension 32:12 129:21 136:14
 136:16 158:10,12
extensions 40:20
extensive 60:15
extent 41:3 106:18 113:13
 114:25 121:23 137:9
external 32:21 34:17 103:6
externally 101:17
extramural 101:17
eye 187:1
eyes 89:20 119:14

─────────────────────────────
                 F
F 1:11 4:8 55:25 140:14 147:11
F-A-R-D-I-N 51:11
face 9:21,23,24 117:19 153:10
 153:10 185:19
faces 117:2
facie 112:19
fact 44:6 69:10 74:24 89:21
 111:23,24 113:13,15 132:2
 140:3 148:3 184:22
facts 90:23 137:13
factual 91:1 94:8
faculties 32:21 33:12,21 45:18
 46:23 47:22 50:17 53:19 135:6
 138:17 151:22

faculty 12:8 30:19,23 33:20
 35:18 37:5,12 38:1 41:11,14
 47:15 52:15 74:3 83:20,21
 102:21 103:16,22 140:17,25
 141:1,21 147:19 156:13 160:10
 160:22 178:18,20,23 179:1,10
 180:6 181:2
fair 14:7 75:16,18 86:16 88:23
 101:9 105:19 110:16 116:7
 130:5,9,17 131:17 134:8 155:9
 173:6
fairly 173:7
faith 14:25 75:11
familiar 155:21 157:23,25
 160:21 178:16 180:21 182:25
 183:1 184:7
family 22:18 60:13 117:3
far 7:24 94:22 121:25 151:16
 173:18
Fardin 51:11 127:16,20
Farsi 65:1
fashion 8:8
father 26:1
fear 113:25 114:1,2,15,15
feared 115:21
February 11:12 13:4 49:4,16
 55:24 56:3,13,15 62:14 69:1
 70:12 72:17,18 73:5 79:14
 80:10,18 92:9 116:24 119:5
 120:13 145:15,16,17 152:7
 166:16 167:2 168:17,18 169:22
 178:4,8
federal 18:24 31:23 59:15 83:9
 124:2 151:23 152:9 174:20
feedback 102:9
feel 62:5 74:13 111:14 113:14
feeling 119:11
fellow 83:25
fellowship 16:15 21:1
fertile 115:7
fields 21:11
fifteen 2:25 8:15,15 19:20 63:1
 65:24 66:16 80:9,15,17 177:14
 177:21 178:3 187:9
fifteenth 146:7
fifty 3:18 19:15 124:12
fifty-eight 3:22 21:15
Fifty-five 3:21
Fifty-four 3:20
fifty-nine 3:23 46:24 58:21

800.523.7887                6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

**Fifty-one** 3:19
**Fifty-seven** 3:22
**Fifty-six** 3:21
**Fifty-three** 3:20
**Fifty-two** 3:19
**fight** 19:18
**file** 104:24 105:1
**filed** 5:10 91:17 92:17 150:20
**filing** 150:17,18
**fill** 54:23
**filled** 122:8
**final** 139:17
**finalist** 54:10,17,18 182:16,18
  182:22
**finalized** 35:2
**financial** 106:4
**find** 21:12 57:17 85:8,8 103:15
**finder** 113:13,15 137:13 148:3
**finding** 148:3
**findings** 75:6
**fine** 40:15 94:4 128:12 129:16
  144:1,7 187:7
**finish** 24:1
**finished** 18:6 23:25 54:25 81:11
**firm** 85:19,20 86:4
**firm's** 86:17
**first** 5:11 6:14 9:8,14 15:16,18
  15:19 19:13 21:12 26:5 29:22
  37:2 38:14 43:1 47:15 54:17
  55:13 57:23 58:2 64:25 71:15
  86:7 87:15,19 88:11 91:6
  95:19 100:10 101:15,20 105:21
  105:21 106:14 107:4 147:25
  148:14 164:3 166:15 167:11,17
  168:1 169:3,16 186:7,17
**five** 2:17 5:9,9 22:20 23:1 24:2
  26:20 30:21 31:17,23 41:13,16
  61:12 66:21,21 97:2 98:1
  101:16 103:5,7,17 104:25
  105:25 150:12
**five-minute** 124:9
**fix** 107:24 132:3 139:4,14
  151:15
**fixed** 132:7
**flew** 26:7
**flip** 29:24
**focus** 18:14 21:7 60:2 71:13
**focused** 16:14 19:25 31:23,24
**focusing** 22:6
**folks** 124:9 185:23 186:25

**follow-up** 64:21
**following** 46:17 74:19 75:4 89:4
**foregoing** 59:9 89:25 188:2
**forewarn** 115:19
**forgot** 50:10
**form** 2:14 54:23 55:5 89:5,14,17
  89:23 99:3,11,12 100:8 104:17
  122:10 129:23 149:11
**formal** 90:5 100:5 150:17,18,20
**formally** 37:4,11 151:4
**formation** 165:11
**former** 25:13 27:19 57:20 60:5
  69:15 89:10 90:11
**forms** 100:18
**forth** 45:25
**fortunate** 15:23 19:1 20:15 21:5
  21:10 26:5 33:9
**Forty** 3:13
**Forty-** 44:11 109:11
**Forty-eight** 3:17 45:1,6,9
**forty-five** 3:15 8:11
**Forty-four** 3:15 109:7
**Forty-nine** 3:18
**forty-one** 3:13 99:2
**Forty-seven** 3:17 41:21 42:2,8
  42:13,14,17
**Forty-six** 3:16
**Forty-three** 3:14
**Forty-two** 3:14
**forward** 9:17,19 10:1 12:19
  124:8 147:2
**forwards** 169:24
**found** 13:17 108:11 112:1
**foundation** 20:25 31:13,15,18,21
  32:2,4 156:18 158:4
**foundational** 170:13
**founded** 107:21
**four** 2:16 5:9 8:11 13:2 49:3,10
  49:16 51:20 66:21 71:16 99:2
  99:25,25 103:5,8 105:22
  109:12 129:8,25 181:18,18
  182:4
**Fourteen** 2:24
**fourth** 59:5 91:10 129:7
**Frank** 1:10 5:3
**Frederick** 39:1
**free** 152:21 185:25
**freshmen** 71:13
**Friday** 79:16 80:1,3
**fringe** 35:14

800.523.7887            6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 16

front 70:11 137:12 160:18,22
fulfill 59:7
full 17:13,14 18:9
full- 158:4
full-time 134:15 141:20 146:18
  147:6,13
fulltime 32:8 37:4,11
fund 19:17 39:16 145:7
funded 59:15 101:17
funding 32:21 34:17 101:17
  103:6,15,16,19 136:4 149:7
  150:8
fundraising 105:22 165:1,4,7,8
further 111:25 115:2 141:11
  185:15

---

**G**

G 4:9 78:13 125:5 133:25 141:16
G-I-H-H-R 133:25
G.I.H.H.R 12:18 30:18 33:9
  47:14 49:25 50:14,15 52:16
  59:12 65:11 69:16 73:22 78:6
  78:15 79:7,16 80:1,10,21,22
  85:9 86:9 89:19,24 90:11
  91:14 97:20 102:19,21 109:19
  124:24 125:8,10 127:19 128:10
  133:22 135:12 142:24 159:4,6
  164:11,16 165:2,11,15 171:9
  178:8,11
gays 22:10
general 1:14 19:17 55:14 97:19
  154:13 156:15 172:19 173:5
generally 11:10 12:23 40:23
  50:3 79:2 82:12 86:6 96:14
  160:7 178:22 179:11,19,20,22
  179:25 180:4,23,25
generate 32:23 41:14 103:4
generated 106:3 165:13
gentleman 56:17 86:1 170:2
gentlemen 57:6 96:6 107:16
getting 11:11 35:22 150:19
GG 45:1
GI 109:18
gifted 32:22 33:11,19 47:1
GIHA 91:14
Gina 80:24
gist 172:25
give 10:4 13:25 26:7 32:10
  33:11,19 47:11 53:11 57:11,12
  68:7,19 81:21 91:15 110:25

115:16 129:20 130:10,20 132:2
  136:12,19 137:4 151:21,22
  153:14 158:7
given 6:22 56:10 111:10 163:24
  167:7
gives 141:8
giving 156:11,12 166:18
global 8:8 12:11,15,17 17:11
  19:1,16,18 23:9 24:7,13 25:23
  30:17 43:8 45:16,20 46:7,21
  47:15,20 48:1 52:17 70:1
  80:25 109:19 124:25 125:6,22
  144:16 145:7
global's 86:12
Global\Interdisciplinary 140:18
globally 17:12 20:14 27:21 62:8
go 6:13 13:8,17,21 14:10,15
  15:18 33:1 36:1 46:13 47:12
  51:6 54:10 57:10 58:19,22,23
  59:1 60:10,20 61:9,23 62:1,2
  63:13 66:3 67:12,19 68:5,23
  74:6 76:21 77:15 78:20 87:1
  87:21 90:17 91:3,24 95:24
  97:15 107:15,21 108:16,16,21
  108:25 110:23 114:6 115:18
  116:16 117:21 118:14 119:1
  124:8 128:5 136:7,11,24
  137:16,18 138:18 140:25
  141:14 145:4 152:4 157:5,19
  158:15 164:7 169:4 170:24
  172:18 174:5 177:13,15 180:25
  181:3 185:25
goal 187:7
God 10:5 153:16
goes 69:14 73:10 75:8 84:10
  112:24 113:8 123:18 137:13
  174:9,25
going 8:15 9:19 12:19 27:6
  35:23 36:11 44:22 56:21 58:6
  62:5 65:23,24 67:20,20 70:20
  70:20 72:7 74:23 81:8 84:25
  85:2 86:8,15 88:22 89:3 91:3
  92:10,13,19 93:6 94:11,15,25
  102:13 108:10,12 111:14
  113:14,17 114:16 115:9,19,20
  115:22 120:21 121:17 124:25
  128:13 130:10 132:2,19 133:17
  136:21 137:10,12 146:4,6
  148:12 149:20 153:12 156:17
  166:6 167:6,22 169:19 170:5

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 206 of 558

800.523.7887               6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 17

171:8 172:1,5,17 173:7 174:8
175:21 176:2 177:13 186:20,24
**gold** 26:20
**good** 5:2 9:9 21:9 33:16 44:19
53:4,11 66:19 94:19 107:21
108:17 124:20,22,23 144:11
154:23 175:3
**gotten** 173:17
**government** 22:9,21 23:2
**governments** 22:5
**governor** 32:18
**grab** 28:18 116:15 153:4
**graduate** 17:6,18 30:22 62:9
101:23 154:10,14,15
**grant** 18:23,24 19:20 31:16
65:14 83:19 123:23 165:12,13
**grants** 18:25 31:18,19,23 41:10
47:4,5,22 59:12,13,14,15,17
59:17 62:16,17,23,24 63:24
64:4,13 65:6,17 83:5 106:2
124:2 144:15,16,18,20,23,24
145:6 151:19,21,22,24 152:8
152:13,14 164:4 165:8
**Graziano** 67:2 186:9,9,11
**Great** 146:8,9
**grievance** 88:24 89:4 90:2,3,15
90:24 91:7,8,17 92:17 93:3
94:9 130:2 132:1 150:18,19,20
**grievances** 92:14,20
**grieve** 132:1
**grieved** 132:5
**ground** 115:7
**group** 22:12 83:20,21 85:5
**guaranteed** 136:16,17 137:2
**guess** 115:17 157:15 180:5
**guidance** 73:25

### H

**H** 2:9 4:9
**H-A-N-D-I-A** 83:17
**H-A-R-V-** 46:9
**H-I** 118:20
**H.I.V** 122:22
**H.R** 61:10 62:1 73:24 98:9
**hair** 117:11
**Haley** 73:12
**Hall** 80:3
**hand** 10:2 153:13
**Handia** 83:17
**handwritten** 150:8

**Hannah** 1:21 188:2,7
**happen** 96:25 180:4
**happened** 13:19 23:7,10 54:14
55:16,18 57:5 64:8 65:6,14,17
82:10,15 90:3 92:7 94:7 96:25
108:23 110:20 115:3 116:5
122:24 124:3 145:15
**happening** 57:4 139:2
**happy** 28:7,8 38:12 48:13 54:6
117:2
**Harvard** 15:12 17:10,19 18:7
23:3 25:13 52:3
**Harvey** 46:3,9,9 47:24,25 48:24
55:9 56:25 57:1 58:24 63:5
64:18 68:25 69:9 70:2,8,12,22
71:19 72:6,9,10,13 73:25 76:7
76:9,23 79:14,17,25 80:9,18
85:3 90:4,10 96:8,11,12,16
98:18 99:15 100:16 102:5
104:3,10,14,17,22 120:24
171:8 177:12 178:4
**heads** 149:18
**health** 12:12,18 17:10,11,16,18
18:1,2 19:1,4,6,11,21 20:13
21:3,8 24:11,12,18 25:23,24
26:1,13,14 30:17,21 46:22
47:16 52:5,6 59:20 80:25
83:14 101:20 102:20 109:19
111:3,4 116:23,24 119:18,23
120:3,4 123:6
**healthy** 117:11
**hear** 10:20,20 12:6 58:12,12
115:1,22 122:3 174:4 175:22
**heard** 112:1 113:16 156:2 172:5
**hears** 171:24
**hearsay** 58:7,8 84:13,20 169:11
169:13 170:5,14,17 171:25
172:16 174:1 176:8
**heavily** 164:6
**Hedberg** 98:19 99:2,7,7,24
100:16,19 101:5 104:2 106:25
131:11,11
**Hedberg's** 105:15
**Heirs** 92:1
**held** 143:6
**help** 10:5 21:17 24:6 71:12
112:20 113:17 117:14 120:5
145:7 153:15 165:10 166:16
**helping** 155:15 164:4
**helpless** 117:18

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 207 of 558

800.523.7887                    6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 18

**high** 164:23
**high-** 62:25
**higher** 103:8,23 105:23
**highest** 20:16
**highlighted** 48:22
**hire** 19:1 85:25
**hired** 31:18,20 33:22 47:4
  155:13
**history** 14:18 18:19 20:21 184:2
  184:14
**HIV** 19:13 21:8
**HIV/AIDS** 16:14,15 17:7 19:10,12
  19:18 21:13 22:7 24:4 26:4
  61:8
**hold** 14:9 100:14 136:20 148:12
  170:1 181:19
**home** 62:2 77:15 99:4 126:22
**homework** 186:23
**honor** 5:13,16,23 7:6,21 9:1,4,7
  10:12 11:1,6 26:15,21 27:3,15
  28:17,20 29:8,20 35:21 36:12
  36:18 38:15,22 39:6,12 42:6,9
  47:9 60:21 61:15 65:21 66:14
  67:9 68:4,13,22 70:15 71:21
  71:24 74:9,16,17,24 78:21
  80:6,7 81:20,24 82:19 84:7,9
  84:20 87:2,13 88:5,8 91:5
  92:22 95:14 97:16 98:17 99:20
  105:12 106:16 111:18 112:11
  112:24 114:5 116:2 123:17
  124:5,19 130:25 138:9 145:19
  145:21,24 148:1,5 149:22
  152:3,19,24 153:3,6 154:21
  156:17 157:17 161:5,17 162:10
  164:8,20 168:12,22 169:15,20
  170:9 171:23 172:15 173:25
  174:24 175:6 176:6 183:4,10
  185:16,24 186:5 187:11,13
**HONORABLE** 1:10
**honors** 47:17,18 148:5
**Hopkins** 52:3,7
**hospital** 117:9
**hosted** 52:11
**hour** 8:11,16 86:10
**hours** 8:17 175:23
**house** 82:10,12 128:9
**housekeeping** 144:8 186:7 187:9
**huge** 24:7,15 120:25
**human** 12:12,18 13:8,22 18:13,14
  19:1 24:13 25:22,25 26:1,14

30:17 37:18 46:22 47:16 52:5
52:6 56:16,18,21 57:2,5,15
59:18 61:13 62:8,10 65:1 71:5
71:13 80:25 96:7,17 101:21
108:6 109:1,19 122:18,19
134:22 139:3 179:20
**hundred** 15:20 18:25 24:11 28:9
31:23 32:14 41:12,15 42:25
44:16 53:19 59:19,21 60:9
71:16 89:11 103:7,16,17,20
105:25 120:19 133:9 142:5,18
147:22

---

### I

**I-A-M-S** 153:22
**I-R-A-N** 16:22 20:3 59:23
**I.A.P** 159:4
**I.H.H.R** 78:14
**I.T.S** 108:1
**idea** 22:18 104:21 183:23
**identified** 35:13 38:21 41:21
44:24,25 45:8 49:15 55:22
59:7 63:18 64:13 68:6 70:7,13
79:24 80:8,8 88:10 91:7,10
98:25 101:7,16 151:25 162:25
178:2 182:16
**identify** 55:7 67:20 79:2,12,13
86:6 87:12 97:18 98:16 102:3
105:17,24 151:6 161:18 168:10
**identifying** 26:23 49:2 112:3
**image** 34:23
**images** 55:6
**immediate** 9:20
**Immediately** 85:11
**immigrant** 26:5,13,14
**immunosuppressant** 21:14
**impact** 117:9
**impacting** 13:3
**impacts** 120:11 121:11
**implement** 31:19
**implicitly** 173:13
**important** 62:23 64:22 81:22
**impose** 108:10
**imprisoned** 115:21
**in-person** 34:23
**incarceration** 114:21
**incident** 117:5 122:15,16
**include** 41:22
**included** 77:14 103:19
**includes** 60:5 89:10 91:11

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 208 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 19

**including** 19:2 34:10 50:16 52:1
  52:6 59:9,14 60:4 66:22 71:3
  73:21 75:6 83:22 86:13 88:17
  89:9 100:18
**incompetent** 122:12
**incorrect** 129:24
**increase** 41:18 43:2 45:11,13
  142:6,8
**increased** 34:18 43:16 142:2
  147:21
**index** 47:16
**indicated** 8:19 45:11 113:3
**indicating** 171:8
**individual** 69:15 70:3 72:3
**individually** 138:17
**individuals** 79:17 80:11 89:18
**inform** 80:23 146:8 178:11
**information** 50:17 77:24,25
  78:18 84:17 93:6 137:10 168:7
**informed** 53:17 83:7 86:10
**inherently** 114:14
**initial** 31:11 40:25 43:5,17
  129:18,22 130:1 132:17,20,25
  136:11 146:16,17,19 157:12
  158:1
**initially** 35:8 96:16 99:2
**initiated** 98:12
**initiates** 180:3
**initiating** 88:24 130:16 180:1
**initiative** 32:18,20
**initiatives** 45:20
**injecting** 22:8
**injuries** 145:13
**injury** 113:22 114:9
**innovative** 32:22
**input** 172:24
**inquire** 78:24
**inquiry** 111:25 115:25
**inside** 59:18
**insight** 176:16
**insisted** 57:19 96:19
**instance** 169:16 180:12 184:2,3
**institute** 12:11,17,21 21:3
  30:17 46:22 78:11 80:4,25
  86:9 89:25 109:19 124:25
  125:6,22 144:16 145:7 164:2
  165:9
**institution** 73:21 135:5
**instruct** 8:24 136:9
**instruction** 66:10

**insurance** 19:21 111:3,4 119:23
  120:3,4
**Int'l** 188:8
**INT'L** 1:22
**intention** 130:20
**interdisciplinary** 12:16 32:22
  43:8 45:17 47:14,21
**interest** 90:22
**interested** 122:24
**interim** 65:7,11,11,11 67:1
  80:24 89:19,24 129:23
**internal** 16:11,13,17 37:17
  134:10,13,17,21
**international** 17:18 18:13 20:19
  26:11 46:6 47:25 48:2,19
  52:17 55:11 62:25 83:9 85:7
  165:14
**interpret** 137:13 161:10
**interpretation** 148:11
**interrogation** 78:7 98:15 100:10
  106:12,14
**interview** 54:5,5,10,17
**interviews** 54:25 117:20
**intimates** 174:18
**introduce** 49:2 54:23 55:21
  67:19 99:23 100:15,20 168:12
**introduced** 63:19
**introducing** 109:7
**introduction** 79:13
**invasive** 119:13
**investigating** 167:12
**investigation** 57:24 75:5 84:6
  85:9 95:18 98:6 107:5,9,14
  165:17 167:15,22 168:8 182:23
**investigator** 165:12
**Investigators** 145:1,3
**invitation** 34:4 79:15,16,25
**invite** 80:2
**invited** 20:11,12,21 52:10 54:4
  54:9 69:22 71:7,8,10 83:21
  107:15
**involved** 69:25 72:3 138:23
  139:7,20 140:2 159:2,5,8
  164:3,6 183:21 184:23
**involvement** 155:18
**involves** 178:24
**involving** 179:22
**IQ's** 22:8
**Iran** 14:20 15:17 16:4,18,20,21
  16:23 20:1,1,3,4,18 22:9,12

800.523.7887          6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 20

23:15,16 24:18 59:18,23,24
61:12,13 64:11,23 114:21
115:21
**Iranian** 120:18,19
**Iraq** 16:3,17 59:22 83:10,11,12
83:14,15
**IREX** 83:20
**is/was** 73:18
**Isfahan** 15:24
**ISIS** 83:15
**Island** 26:15,24 27:17
**isolation** 21:16
**issue** 34:22 40:11 75:2 99:12,14
114:23 150:21 151:10,16
160:16 169:16 170:14
**issues** 24:18 86:6,18 91:8 98:6
101:8,13 111:15 146:15 160:9
176:20
**it'd** 131:17
**it'll** 8:14 155:5
**it's** 81:8
**Italy** 117:9
**item** 67:3 105:1

---
**J**
---

**J** 4:10 104:2 129:19 168:11,19
**J-One** 168:16,20,21
**J-Two** 168:15
**James** 36:8 48:20 53:2 72:17
73:15 100:16 104:3 133:24
167:22 169:10 181:15
**January** 5:10 45:11 52:13 54:16
122:4 182:10 183:8
**JESSE** 1:11
**Jessie** 5:13
**job** 81:11 121:24 122:11 183:20
**jobs** 46:18
**Joe** 36:1 67:22 97:14 128:15
186:11 187:4
**John** 72:16 73:5
**Johns** 52:3,7
**join** 19:2 30:22 47:19
**joined** 35:18 97:8
**Jonathan** 25:25 26:1
**Jones** 129:19 137:20 138:12
**Joseph** 1:11 5:12
**judge** 5:3 10:22 18:18 26:17
59:2 81:25 116:10 186:20
**judge's** 46:17
**judges** 66:25

**judicial** 26:22 27:9
**July** 41:22 42:11,18 140:15
147:19,20
**June** 1:6 5:3 26:23
**jury** 8:21 9:11
**justice** 26:25 30:19,20 102:20
122:22
**justification** 46:3,15 53:11
106:5

---
**K**
---

**K** 4:11 7:1,2,4,9 80:11 168:11
169:10
**K-A-M-I-A-R** 10:13 77:4
**K-E-V-I-N** 153:21
**K-I** 6:8
**Kamiar** 1:3 2:2,15 5:5,19 9:15
10:7,13 29:1 66:20 70:24 85:9
86:9 98:18,19 104:16 137:8
154:23 159:5 162:15 165:20,22
188:3
**Karl** 80:20 102:4
**Kathleen** 118:3
**keep** 9:19,23 10:15,23 68:7
126:15 153:8
**Kennett** 86:1
**Kermanshah** 19:10
**Kevin** 2:5,15 34:12 51:1,4 53:9
80:19 128:7 153:2,5,18,21
158:22 161:19
**keynote** 20:23
**keys** 186:19
**Kim** 159:18,19,22
**kind** 16:7,10 27:25 33:23 52:21
57:13 67:2 112:8 118:10
**knew** 130:10,18,20
**know** 7:17,20,20,25 13:7,8 15:16
17:13 18:24 20:11,16,19,22
24:4,19,22 25:14,21 26:19,20
27:20 28:2,7,15 31:19 32:2
33:22 34:2 35:19 41:2,15 43:4
44:5 46:20,20,21,24 47:7
49:22,23,24 51:1,4,11 53:11
54:3,8,24 55:16,17,18,18
56:16,23 57:13,13,14,16 60:13
60:14 62:11 64:20,25 65:5,14
65:16,18 68:19 71:9,13 72:1,2
72:3,21 79:4,5 81:7,16 83:6,8
83:25 84:5 85:5 88:17,21
99:11 107:16 109:1 111:20

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 21

112:15 113:5,7,22 114:12,13
114:19,23 116:8 117:1,2,6,18
119:21 120:17,25 121:15 122:6
124:1 125:1 126:5 127:17
139:16,21,22,24 143:6,10,13
143:14 145:11 148:17 150:24
150:25 151:1,1,6 154:23
157:15 164:4,5 167:20 168:14
170:18,24 172:21,22 173:16
175:2,23 176:17,20 181:25
182:17,17 184:3
**knowledge** 65:5 93:1 156:18
176:1
**known** 5:24 83:18
**knows** 143:7,7
**Korean** 73:11
**Kurdish** 14:24
**Kurdistan** 83:14

---

### L

**L** 2:9
**L-LC** 71:4
**L.L.C** 1:12
**L.L.M** 101:20
**L.M** 168:18 169:11
**lab** 69:19
**Laboratory** 73:7
**language** 32:15 65:1 137:15
158:10,13 162:22 163:4 175:12
**largest** 21:4 25:24 69:19
**Lastly** 151:19
**latitude** 47:11 81:22
**law** 18:11,13,17,17 19:3 43:1
52:1 57:13 85:19,20 101:21
113:24 120:16
**lawsuit** 14:7
**lawyer** 85:19 141:10
**lawyers** 18:16,25 59:18 163:8
185:20
**laying** 106:2
**lead** 115:17
**leader** 120:14
**leaders** 63:1
**leadership** 26:14 80:3 154:13
171:10
**leading** 59:17 138:6,7 167:4
**learn** 21:6 34:2 167:14
**learned** 107:14
**learning** 71:11,18
**leave** 25:2 75:13 152:12 186:12

186:15
**leaves** 186:8
**lecture** 32:8
**lecturer** 12:9 30:11 37:5,13
52:16 109:18 133:3,6,11,12,15
140:18 141:2,4,21 142:16
147:21 150:3 158:5
**led** 165:13
**leeway** 115:16
**left** 9:20 25:3 61:25 152:7
181:25
**legal** 85:10,12 86:17 91:1 116:8
116:11
**Leslie** 87:16
**let's** 6:13 14:10 36:1 67:8
75:11 90:17 116:16 124:11,11
129:3 136:11 137:18 141:6,7
141:12 158:14 161:13 169:4
170:24 177:14 186:24
**letter** 2:13,14,19 3:5,5,6,7,9
3:10,11,12,15,16,17,18,18,19
3:23,24 4:6,7,7,8,8,9,10
13:23 24:11,12 29:1,4 30:2,15
35:16 36:8,17,22,22 37:2,10
37:17 38:7,24 41:2,22,23
42:11,18,20 43:5,20 44:2,5,12
44:13,13,24 45:9 46:3,14 49:3
49:16,22 54:4 55:20,23 56:3,9
56:12 57:7,23 58:7 59:13
62:15 64:3 68:25 75:24 76:2
85:21 86:17,22 87:14,17 88:11
91:6 92:4,8 94:2 95:7 98:8
99:24,25 100:11,19 101:4,5,7
101:14,15 102:3,25 104:16,18
105:5 109:2,8,14,17 110:8
111:10 130:19 131:10 132:17
134:10,13,17,23,23 135:1,3,16
135:19,21,22 136:2,11,12,15
137:1 138:5,24 139:6,19 140:3
140:15 142:2,11 146:7,17
149:6 157:23 158:21 159:1,7
160:1 162:23,25 163:4 166:17
167:7,10,19,19 178:10 183:6
**letterhead** 36:7
**letters** 3:17 24:8,9,10 42:3
50:17 85:14 86:5,6,16 106:25
160:22
**letting** 74:2
**level** 63:1 116:4 183:24
**LGBT** 22:8

800.523.7887              6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 22

**liability** 112:1 116:3
**library** 70:23 71:5
**life** 21:17 116:25 123:13
**limited** 59:10 60:4,5 115:1,16
**Linda** 70:8
**line** 79:25 103:22 115:25 133:15
  161:10 176:4
**lines** 103:16 111:25
**linked** 136:3 150:16
**list** 7:11 8:4 45:2 49:8 55:25
  67:3 68:6 70:14 79:18 80:12
  86:13 109:8
**listed** 58:25 125:5,5 138:5
**listing** 89:24
**litter** 166:17
**little** 21:25 29:17 47:11 117:22
  187:6
**live** 15:10 125:24
**lived** 15:7
**living** 21:13 26:3 61:8 71:11,18
  32:1
**located** 32:1
**location** 1:8 58:4,18
**locked** 186:16
**logistical** 6:13
**long** 12:23 15:7 23:21 52:12,24
  83:18,24 181:13,15 182:2
**longer** 70:24 92:13,14,19 94:15
  135:6 156:12
**look** 36:22 67:12 99:12 129:7
  147:18
**looking** 129:1 155:6 162:12
**looks** 132:14,25 157:25
**Los** 69:19 73:6
**loss** 83:3
**lost** 77:22 117:12 121:15 123:2
  123:6
**lot** 28:1,7 33:7,21 46:23 47:1
  61:23,24 62:24 64:23 85:6
  122:20 128:9 137:12
**louder** 11:25 12:5
**lucky** 180:8,10
**lunch** 8:7,12,12 65:24 66:3,23
**luncheon** 67:1
**luxury** 21:11

---

**M**

**M** 70:14 72:24
**M-A-L-E-S-** 6:7
**M-A-N-I-E-J-E-H** 118:16
**M-E-H-D-I** 118:19

**magazine** 28:6 48:18
**mailed** 99:4
**main** 21:12
**major** 59:14 120:16
**making** 117:2 137:14,14 171:22
  173:13 181:11
**Maleszweski** 1:14 6:1,7,11 81:25
  82:2
**manage** 164:4
**management** 18:2
**Mancuso** 36:8
**mandate** 89:5,13,16
**mandates** 89:22
**Maniejeh** 118:16
**Mann** 25:25 26:1
**manner** 171:21
**March** 35:3 87:16,19 88:11 91:6
  95:7 102:25 135:15 152:7
**marital** 121:2
**mark** 27:6,11
**marked** 6:24,25 7:23,24 8:6
  28:21 35:7,24 36:6,20 38:20
  41:25 68:15 128:14 131:7
  143:20 146:12 155:3 161:18,21
  161:22,25 168:12 186:10
**married** 121:2
**mask** 9:19,23,24,25 152:20,22
  153:8,11 185:18
**masks** 6:18
**masse** 68:20
**Massena** 1:23 188:9
**materials** 39:20,22 71:1 186:13
**math** 184:17
**matter** 5:5 11:8 60:4 66:20 89:9
  94:11 111:13
**matters** 6:13 164:16 187:9
**Maureen** 132:6 150:22 151:6
**mean** 11:14 13:2 40:10 41:6
  67:19 93:23 116:1 163:25
  165:6 170:6 176:7,17
**meaning** 136:5
**means** 15:20 33:13,15,17 41:17
  43:12,14,16,21 44:18 60:10
  74:21 79:10 90:6,12 98:14
  103:22 134:21 137:15 146:23
  151:24
**meant** 57:25 60:7
**measure** 75:10
**measured** 179:13
**measures** 89:6

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 212 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 23

**mechanism** 33:3
**medal** 26:15,20
**media** 28:1
**medical** 15:16,19,20,23,24,25
  16:5 17:1 21:10,11 24:8,9
  52:4 117:23 119:25 120:5,8
**medication** 19:24 112:9 114:7
  117:13 119:11,13,15,17,19,20
**medicine** 16:8,9,10,12,13,17
  21:12 25:15
**Mediterranean** 20:10
**meet** 13:8 43:24 52:8 98:4 103:5
  116:11,12
**meeting** 13:16 34:23 43:21 46:2
  52:12 61:10,18,21 62:1 73:24
  79:5,6,6,7,16 80:1,2 91:18,20
  91:21 92:1 95:12,17,19 96:2,3
  96:15,24,25 97:5,6,19,24 98:2
  98:5 107:4,15,15 108:2,9
  120:24 169:22 171:8,14,15,16
  171:17,18,22,24 172:8 173:13
  174:12
**meetings** 51:18 61:24
**Mehdi** 118:19
**member** 38:2 52:15 74:3 87:6
  102:6 127:18 180:6,12 181:2
**members** 35:15 38:2 51:25 60:13
  82:9 128:10 135:14
**membership** 38:12 55:14
**memo** 3:14 4:6 99:17 102:24
  136:3 150:6,7,15
**Memorandum** 102:18
**memos** 71:8 138:5
**men** 97:9
**mental** 116:22 119:18
**mentally** 116:25
**mention** 135:16,19,22
**mentioned** 7:14 51:21 97:9
  119:22 151:19 167:21
**Mentioning** 135:23
**merely** 10:19 93:23
**messages** 176:15
**met** 41:3 102:11 103:12 107:8
**method** 10:23
**metric** 103:9
**metrics** 34:15,16,25 35:1,1 41:1
  41:3,6 43:21 102:12,23 103:1
  103:1,2 107:8 135:15,22,24,25
  136:3,3 138:5 145:9 150:16,16
**microphone** 10:16 12:5 28:22

**Middle** 14:25 17:8 19:14
**Milano** 1:10 5:3 116:10
**million** 15:18 18:24 19:11,20
  24:9 31:18 101:16 103:8,20
  105:23,24
**mind** 84:10,13 112:5
**mine** 128:20
**minimum** 137:5
**ministers** 24:12
**minute** 22:20 36:2 68:5 90:18
  116:17 125:16 177:16
**minutes** 23:1 56:17 67:17 187:3
**misinformation** 121:1
**mister** 93:15,22
**model** 20:24
**moment** 14:10 63:14 86:21 169:4
**Monday** 5:3
**money** 19:22 114:11,12 133:20
  149:9,13,13 165:9,13
**monitor** 8:4 10:3,8,10 14:12,14
  36:3,5 63:16 66:18 67:2,24
  68:1,10 90:21 116:19 124:15
  125:17,19 131:3 146:12 153:13
  153:19 158:17 163:11 169:6
  177:17,19 187:5
**months** 13:15,21 22:17,18,19,20
  24:2,20 51:20 60:25 65:19
  71:9 95:19 96:20 98:7 107:11
  107:23 108:22
**morning** 5:2 8:5 107:24
**Morris** 118:3
**mortality** 21:13
**motivation** 21:16,18 174:10
**motives** 106:19
**MoU** 102:10,11,22
**move** 9:7,8 28:20 29:17 36:11,13
  44:9,23 58:13 63:6 69:2 70:15
  72:4,12,19 74:9 82:19 98:17
  106:16 121:6 144:20 157:10
  175:22
**moves** 144:22
**moving** 112:11
**Muslim** 14:24

---

**N**

**N** 2:1 69:2,8
**N-A-V-E-E-N** 117:24
**N.I.H** 47:7
**N.Y.S.U.T** 87:15
**name** 6:6 10:10,12,13 34:11 46:8

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 213 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 24

70:25 83:16 153:20
**named** 80:24
**Nancy** 49:12
**Nation** 19:14 20:12 26:12 69:21
**nation's** 73:8
**national** 15:17 20:16 24:15
  25:14,14,15 69:19 73:7,8
**Nations** 19:17 20:9
**Naveen** 117:24
**necessarily** 112:21 172:2
**necessary** 141:11
**need** 8:21,22 10:19 12:5 19:18
  24:23 38:17 40:12 57:18 63:2
  64:25 67:11,11,12 81:18
  116:15 126:18 128:17 129:15
  170:23 173:17 185:20
**needed** 64:14
**needs** 65:2 186:23
**negative** 48:14 102:4
**negotiated** 135:3
**negotiating** 139:6
**nervous** 57:4
**never** 87:5 95:1 102:3 151:18
  180:5,14,17,19
**new** 1:1,5,8 5:4,4,6,7,7 11:14
  11:18 18:11 21:3 22:9 25:22
  32:10,19 33:2 49:24 53:5,5,21
  53:24 61:14 83:20 101:23
  120:3,4 121:22 135:4 143:16
  147:17,23 149:13 154:16,16
  156:1 158:7 178:14 181:14,23
  188:3,9
**Nikki** 73:12
**nine** 2:21 8:10 13:18 79:17 80:1
  97:2 103:20 107:22 187:4
**nine-** 187:8
**nine-fifteen** 186:25
**nine-ten** 187:8
**nine-thirty** 187:1,8
**Nineteen** 3:2 70:8,13,18
**ninety-** 32:13
**ninety-nine** 15:21,21
**ninety-six** 41:15
**ninety-two** 43:6 133:8
**Nobel** 24:7,14 26:16 123:12
**nominated** 123:12
**non** 8:21
**non-** 52:23 98:12 106:16 179:16
  181:9 184:7
**non-approval** 181:6

**non-for-profit** 31:22
**non-renew** 99:3 130:6,22 178:17
  180:14,19 182:7
**non-renewal** 98:11 99:14 102:7
  104:17,20 105:15 106:4,8,9,24
  107:3 130:18 139:3 150:7
  178:22,23 179:11,13,19 180:1
  180:3,6,23 182:6 183:16,22
  184:4,23
**non-renewals** 183:23 184:14,17
**non-renewed** 180:12
**non-responsive** 61:17
**non-solicitated** 151:24
**non-solicited** 59:17
**non-stipendiary** 133:19
**non-tenure** 32:9 33:21 133:6,15
**non-tenured** 156:9,10,13 158:5
**noon** 8:13
**normal** 177:5
**North** 73:11
**note** 115:9 176:9
**noted** 27:4
**notes** 3:8 95:13
**notice** 3:15 26:22 27:9 77:19
  91:12 99:14,16 130:11 132:2
  137:3 179:22
**notified** 110:17
**notify** 109:18
**numb** 72:23
**number** 5:9 6:24 7:20 27:11
  35:22 36:16 40:10 41:8 45:1
  49:3 63:4 66:20 70:13 72:21
  75:25 76:3,3 79:15,17,24 80:9
  80:11,19,20 93:8 100:21 103:2
  105:17 112:6 122:14 128:18
  129:8 142:10 150:10 167:2
**numbered** 7:18
**numbers** 8:2 55:5 103:3,4
**numerous** 89:18 102:1
**NY** 1:23 4:10
**NYSUT** 2:19

---

### O

**O'Connor** 26:25
**object** 156:17
**objected** 96:18 158:19
**objecting** 7:21 91:1
**objection** 7:1,7,8,9 27:3,13,14
  27:15 29:6,9 36:14,17 39:4,7
  39:10 42:7 45:3,4,5 49:5,9,10

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 214 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 25

56:1,2 58:13 61:17 63:10,13
69:4,5 70:16,17 71:21 72:25
73:1 74:16 75:14 79:19,20
80:13,14 82:19 84:7 88:6
98:21,22 99:20 100:1,2,24,25
105:7,8 106:20 109:10,11
111:18 115:10,25 121:14,18
123:7,15,20 143:5 148:1
149:24 157:4,10 158:19 161:5
161:12 162:6,7 164:20 168:23
168:24 169:8,8,9 170:8,15,20
171:23 172:2,15 173:15,18,22
174:22 175:4 176:9

**objections** 42:5 85:1
**obligated** 186:13
**obligation** 32:8 146:19 158:5
**obligatory** 8:12
**observation** 111:21
**obviously** 19:5 24:22 80:18
  123:18
**October** 31:20
**off-campus** 69:24
**offer** 30:24 80:7 87:13 122:11
  133:1 161:18
**offered** 43:7 53:10
**offering** 137:10
**offers** 53:4,14
**office** 1:14 20:10 32:1 34:11
  48:18 58:23 109:1 135:14
  137:22 149:1 160:2,5,7,9,13
  160:15 181:5 185:7
**officer** 58:21 66:8
**OFFICIAL** 1:19
**OFFICIALS** 3:16
**oh** 12:7 164:10 168:20 182:24
**okay** 5:24 7:5 9:2 10:15,24
  11:10,17,21 12:14,17,21,23
  13:1,3 14:4,6,21 15:3,5,9,13
  16:19 17:5,22 18:7,10 19:4
  20:4 21:19 25:19 27:4,10,12
  28:10 29:11,14,21,24 30:9,14
  32:7 34:6,21 35:4,11,20 36:3
  36:24,25 37:19,21 38:3,6,9,19
  39:4,17 40:13,23 41:20 42:15
  43:10,15,23 44:8,16,20 45:21
  47:24 48:5,14,23 49:25 51:18
  51:21 52:13,18 53:22 54:1,14
  54:18 55:4,10,12,20 56:3,12
  58:2,15 59:1,2,24 60:20 62:3
  62:22 63:3,22 64:10,13 65:5

65:20 66:12 67:10,13 68:2,11
68:21,23 69:24 70:6 72:11
73:20 74:8 75:15,21 76:21
77:23 79:12 80:6 81:6,17 82:8
84:5 85:12,23 86:3,5,15 87:1
87:21,24 88:1,6 89:3 90:19
91:5 92:21 93:13 94:19,19,24
95:11 96:14 97:23 98:4,8,11
99:10 100:8,14 101:7,11
102:13 103:14 104:1,16,23
105:17,21 106:13 107:3,7,13
107:19 108:2,7,15,17,21
110:23 111:12 115:23 118:14
120:7,10 124:4,6,16,25 126:5
126:21 128:5,12,22 129:3,7
131:15 132:5,12,14 133:17
135:25 138:10 140:17 141:12
141:18 142:7,21 143:9,22
144:12 145:20 147:5,11 148:14
150:17 151:16 152:16,18,20,23
153:4 154:7,11 155:3,21 157:6
159:9,23,25 160:25 161:24
162:15,17,21,25 164:7,13,18
165:1,10,16 166:11,25 167:9
168:2,10 169:7 170:1,13,22
171:1,2 176:24 177:12 178:7
178:10,22 179:16,19,22,25
180:3,11,25 181:4 182:2,5,9
182:19 183:3,23 184:20,22,25
185:13,17 187:17,17
**old** 72:21,23
**older** 78:6
**oldest** 18:12
**once** 92:17 153:11
**one-year** 33:12 110:9 130:11,11
  130:21 132:2 142:4
**ones** 67:20 82:5 92:18
**ongoing** 164:1
**online** 19:15
**open** 6:18,19,21 187:3
**opened** 82:14
**opening** 6:14 9:6,10,12
**operating** 6:15
**ophthalmologist** 118:5,17
**opine** 148:8
**opinion** 157:13 164:18
**opportunities** 47:7 121:16,25
**opportunity** 53:6,17 68:20 73:25
  121:9,23 123:4 135:5 152:6,12
**opposed** 74:24

800.523.7887                6-6-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 26

**opposite** 122:19
**oral** 45:23
**order** 68:18 75:8 146:7 170:22
**Organization** 20:13 26:13
**organized** 69:20 97:22 120:16
**Otolaryngologist** 118:8
**outbreaks** 17:7
**outrage** 60:15
**outside** 136:4
**overcome** 117:15
**overnight** 65:8,12 186:7,15,17
  186:24
**overrule** 157:4,5
**overruled** 47:12 164:21 172:2,18
**oversaw** 104:12
**oversee** 104:10
**oversees** 19:11 49:21 53:18
  73:21
**oversight** 59:12 64:14 154:14
**overtime** 25:20 48:5
**owns** 93:2,3
**Oxford** 18:11,13,21 19:2

---
**P**

**P** 1:10 5:3
**P-26** 150:6
**P-O-U-R-T-A-H-E-R** 168:18
**P-R-O-F-E-S-S-O-R** 30:7
**P.I** 101:17 144:25 151:19,20
  152:1,7,13
**P.I.s** 144:20,20,23
**p.m** 90:20,20 97:2 98:1 99:3
  116:18,18 124:14,14 125:18,18
  131:2,2 187:19
**package** 39:21
**PACKET-** 4:2
**page** 2:2 4:7,7,8,9,9,10 29:19
  29:22 31:2 35:14 60:1,2 91:8
  91:10 95:7 99:12 101:15
  103:14 104:2 105:21 150:9
  166:16 182:20
**pages** 2:11,13 4:6,6,11,11 19:15
  29:20 54:4
**PAHO** 20:13 26:12
**paid** 92:12 110:3,3 127:6,9,11
  133:8
**Pan** 20:13,14 26:13
**pandemics** 17:11
**panel** 69:22 73:11
**panelist** 20:11

**paragraph** 31:7,7,9,11 32:7 37:3
  40:18 57:23 58:2 59:5 102:17
  106:1 129:7,17,25 131:15
  132:20 133:1,14,18 136:12
  137:2 158:1
**parenthesis** 141:3
**part** 19:16 28:3 31:21 37:2 38:2
  40:16 42:13,14,17 44:11 70:24
  72:15 73:6 74:11,17,18 75:3
  78:16 80:2,22 82:20 84:10
  89:3 90:8,8 95:9 101:3 103:11
  104:1,9 106:8 109:17 112:2
  114:1,10,14 120:18 126:2
  128:1 135:13 145:7,8 160:12
  170:10 179:13 183:16,20
**participate** 69:14 70:2 74:2
  120:24
**participated** 128:2
**participating** 70:25
**particular** 18:21 156:8
**particularly** 57:15 156:8
**parties** 66:21,23 69:3
**partners** 85:6,7
**parts** 117:12
**party** 93:1
**pass** 68:19 177:6,9
**path** 170:25
**pay** 18:7 109:25 110:2,12,15,19
  133:20 142:22
**paying** 38:13
**payment** 160:16
**Peace** 24:14 123:12
**pedigree** 153:24
**people** 6:17,19 21:13 26:3,10,25
  50:3,20 61:8 64:23 77:20 79:3
  79:4,5 81:4 82:6,8,12 83:2
  86:9 92:9 97:10 128:9 151:25
  171:17 179:3,10
**percent** 21:15 43:3 71:17 111:1
  170:4
**percentiles** 15:21
**perform** 58:3
**performance** 48:6,15,25 106:3,5
  179:11,12,23,24
**performed** 127:14
**period** 8:12 37:13 42:23 43:11
  135:6 140:22 141:23 147:7,14
  147:24 154:19 156:25
**permanent** 142:8 156:3
**permission** 38:17

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 216 of 558

800.523.7887          6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 27

permit 115:9,20 170:5 172:17
permitted 59:8
permitting 172:3 186:18
Persian 120:14,15 121:1 128:1,2
  128:3
person 71:1 83:12,18 84:5,17,17
  97:12 106:6 158:23 178:13
person's 83:16 84:13
personal 65:5 77:7,9 86:14
  113:21 175:25
personally 180:14,17
personnel 2:21,22 91:19 95:17
  169:23 171:21
Pharmacy 52:2
PhD 137:20
Phillips 159:24 160:1
phone 56:18 64:11 71:19 76:23
  139:14
phonetic 39:1 86:2 92:1
physical 114:7 116:23 117:1
physician 24:13
pick 12:5 58:20
place 9:25 43:2 55:13 153:11
placed 106:7 120:13 126:3,19,25
places 53:4 69:12
Plaintiff's 131:7 161:19,22
  168:13
plaintiffs 55:22,22
plan 73:10 179:13
played 90:25
pleading 29:4 174:17 175:12
please 5:22 6:5,10 9:13,25
  10:15 11:25 27:11 28:22 33:25
  38:23 57:12 62:24 68:8,11
  73:24 99:14 145:23 148:4
  152:25 153:1,7,8 167:13 169:1
  186:24 187:9
pleasure 37:3,11 133:1 147:12
pled 175:3,7
plus 19:15 54:3
point 12:24 15:21 18:24 19:20
  23:23 24:22 31:17 46:17 47:13
  52:14,19 59:6 73:4 77:7 81:7
  81:22 83:1 85:10 87:25 92:13
  94:7,25 98:2 101:16 112:18,21
  113:6,12 115:5 116:2,8,8
  119:7 136:21 137:11 139:5,6
  147:15,16,17 168:2 170:3
  174:6 175:11
points 59:4 101:15 105:24

police 58:20,22
policies 2:18 32:9 154:15 158:6
policy 12:10 17:16 18:1,2 19:4
  19:6 30:12,21 96:17 108:13
  133:4
political 22:15 23:18
popular 101:24
population 18:15 19:11,21 22:7
portion 74:10
position 7:13,17 11:21 12:2
  32:9 34:16 37:23 45:18 52:14
  53:7 54:7 89:20 90:13 92:17
  104:6 122:8 131:19 133:10
  148:17 154:8,18 158:6 161:7
  170:20 177:4 181:25 182:22
  186:20
positions 11:23,23 102:21 156:9
  156:11 179:10
positive 102:9
possession 186:9
possible 32:12 68:21 73:25
  91:20 93:11 129:21 136:14,15
  158:9,11,12
possibly 69:12
post 91:12 137:11
Posted 134:18
Pourtaher 168:18 169:11
Powell 39:1
practice 9:12 16:16 19:15 20:24
  21:2,5 53:9 138:22 144:21
  152:15
practices 61:2
Preceding 70:11
precluding 75:6
prepare 98:8 100:12 105:2
prepared 101:5 105:14 149:19
  188:4
prescribe 119:10
present 5:21 66:21 69:22 109:20
presentation 60:24
presentations 69:11,17
presented 99:6,6
president 22:9 24:10 25:13
  27:20 37:3,11 42:22 48:19
  51:13 52:2,10 53:5,5 73:19
  99:8 104:8,24 105:6,12 106:25
  127:18 129:4,19 134:11,14,23
  148:23 160:6 184:4
presidents 26:16 50:25 52:1,11
prestigious 47:6 51:25 69:18

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 217 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 28

**previous** 45:15 135:1 159:4
**previously** 131:6,7 155:3
**price** 19:24
**prima** 112:19
**primary** 30:1,3 52:13 142:24
  147:18
**principal** 145:1,2 165:12
**prior** 7:14 43:5 75:17 114:17,20
**prison** 22:11,14,16 23:16,21
  24:3,6,17 25:1 123:14
**prisoners** 23:18
**private** 33:22 69:15 70:3 74:1
  79:6
**prize** 24:7,14 26:17 123:13
**pro** 120:3 140:12
**Probably** 159:18
**problem** 6:20 107:24
**problems** 114:8 116:23
**procedure** 90:25 96:20 119:14
**procedures** 8:21 154:15
**proceed** 8:5,17
**PROCEEDING** 1:21
**proceedings** 188:3,6
**process** 13:16 27:22 34:9 40:24
  54:22 78:8 79:11 82:17 90:13
  92:3 94:9 98:12 104:23 106:8
  107:3 111:14 130:15,18 135:2
  135:9 178:16,23 179:14,20
  180:1,4,23 183:16
**processes** 139:2
**product** 48:7
**production** 186:3
**professional** 19:5 20:7 21:8,22
  35:15 117:4 121:9
**professionals** 25:24 59:20,21
**professions** 2:17 3:24 4:11
  37:22,25 38:25 138:21
**professor** 12:9 18:17 30:4,6,6,7
  30:7,10 37:13 52:15 133:3,10
  133:11,13 140:11 150:3
**professors** 19:2,3
**program** 18:20 19:13,25 71:5,6
  103:11 150:5 154:16,16 159:3
  160:8 165:14
**programs** 63:24 64:5 71:17
  154:15
**prohibited** 77:17
**project** 62:25 83:9,11 122:21
  123:5 159:5 163:24 164:4
**projected** 103:15

**projects** 61:23 62:24 78:6 83:5
  83:8,9 101:18 102:1 107:23
  152:1 163:16,20,21 164:6
**promote** 18:14 22:6
**promotional** 70:25
**pronounced** 41:8
**proof** 114:20 115:1 122:10
**properly** 75:4 112:1 115:14,14
**property** 92:17
**proposal** 34:8 135:8,11 151:22
**protect** 35:18 55:19
**protected** 55:17
**protects** 38:1
**protocol** 74:19
**protocols** 6:15,16
**prove** 112:20 113:18
**provide** 28:2 48:25 59:11 99:5
  154:13 156:2
**provided** 10:24 24:5 55:2,14
  64:18 73:7 112:8 120:3 186:19
**provides** 156:4
**providing** 35:16 66:22
**provision** 90:1
**provost** 42:22 48:1 51:2,7 53:1
  53:8 54:6 55:11 99:6 102:18
  104:5,16,19,22 105:15 129:23
  135:14,14 137:22,22 148:25
  149:1 154:9,12 158:22 159:11
  159:13,14 160:1,2,6,7,9,13,15
  167:21,21,22 168:16 176:13,17
  177:5 181:1,3,14,14,15,23,24
  181:25 182:3 184:4 185:7,10
**Provost's** 160:5,20 181:5
**Provosts** 160:24
**proximate** 114:22
**psoriasis** 117:16
**psychiatrist** 117:24
**psychologist** 117:14 118:3
**psychology** 119:21
**public** 6:19 12:9 17:10 19:4,6
  21:8 30:11 79:6 102:19 133:3
**published** 48:16
**purpose** 166:12
**pursue** 92:10,14 94:15 182:6
**pursuing** 90:2 121:12
**pursuits** 182:13
**pushed** 147:2
**put** 9:23 10:1 13:11 22:11,14,16
  22:25 23:18 85:6 86:5 88:17
  91:14 112:9,16 152:20 153:10

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 218 of 558

800.523.7887                    6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 29

185:18
**putting** 60:2 62:15 77:24 155:5

---

**Q**

**qualification** 151:23
**qualified** 50:3 65:2
**quality** 19:23 164:24
**quantification** 112:15,22
**question** 33:25 40:5 47:10 50:10
51:3 58:14 61:18,18 62:3
65:13 71:23 83:24 84:8,14,23
89:1 95:4 99:21 110:6 116:3
118:1 122:7 123:9,21 136:1,8
136:22 137:8,18 138:6,7,8
139:6,18 141:7 143:1,15 148:4
152:11 156:23 157:18 158:14
158:18 164:22 167:4,4 174:23
175:13 176:5 181:20 184:7
**questioning** 8:23 161:11 176:4
**questions** 8:18,24 11:11 21:9
59:11 73:9 96:21 99:11 101:11
101:13 115:20 122:20 124:5
148:2 183:5
**quick** 96:22 177:15 185:3
**quickly** 102:22
**quite** 161:7
**quote** 163:4
**quoted** 175:12

---

**R**

**R-** 150:14
**R-2/P-26** 150:4
**R-A-S-H-I-G-** 118:19
**R-E-T-H-E-M-E-** 102:4
**racial** 173:21 174:18
**raise** 10:2 41:11 151:10 153:13
166:6
**raised** 86:6,16 101:14 146:15
172:12 173:4
**raises** 114:22
**raising** 64:16,19 86:17 89:4
171:20 173:20 176:21
**Randy** 57:24 85:18 96:8,10
107:16,25 108:4,5 109:2
**Rashighi** 118:19
**rate** 71:16
**RD** 2:4,6
**re-cross** 152:18
**re-direct** 124:5 145:23 146:1,14
185:4

**reach** 78:24 82:6 83:6 103:22
120:2 172:7
**reached** 73:15 79:3 82:8 84:2
88:14,15 90:15 97:3 122:23
**reaching** 62:16 85:7 171:17
**read** 89:3 106:1 128:17 131:16
169:3,19,20
**real** 96:21
**realized** 47:1 77:16
**really** 21:9 27:20 60:14 82:16
165:8
**Reappointment** 2:14
**rear** 93:23
**reason** 13:24,25 20:25 22:15,17
22:22 24:3,20 33:2 57:9,11,13
57:14 86:8 106:4
**reasonable** 106:6,19
**reasons** 106:7 175:25 179:24
**rebut** 170:19
**recall** 13:3,6 28:13 38:11 39:24
40:24 44:13 48:14 49:17 64:18
81:15 96:2,14 97:23 98:12
111:6,8,8 150:20 155:12
162:12 163:20,21 165:10,19
166:18,21 167:6,9,24,25 168:5
171:2,3,7,14,15,16,17,20
172:11,14,25 173:20 175:15,19
175:19 177:12 178:12 182:9,12
182:15,18
**recalling** 180:12
**receive** 25:21 26:2,9,16,20 28:9
38:14 39:24 40:6,8 43:2 48:6
56:12 73:12,12 95:8 103:6,8
124:1 177:5
**received** 13:7,22 15:11,17 16:3
17:20,21 18:9,13,24 19:20
20:16 24:14 25:19,23 26:8,12
26:15 27:24 31:16,17 33:10
35:19 38:7 39:22,23 40:1,14
48:9 56:16,17 61:2 83:19 99:3
100:6 102:3,9 109:14 112:4,9
122:14,15,16,18 147:22 149:7
149:9 158:25 171:13 176:11
**receiving** 48:14 123:24 150:13
171:7 175:15,19,20 176:15
177:12
**recess** 66:15 67:13 124:9,12
**recessed** 66:23
**recipient** 26:6,11,24 178:5
**recipients** 26:18 27:24 80:19

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 219 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 30

**recognition** 26:4 27:24 28:3
**recognize** 29:16 36:22 39:19
   42:12 44:13 49:22 56:7 63:20
   134:4 140:8 141:16
**recognized** 20:14 62:9 71:9
**recollection** 165:20,21 166:9,16
   173:2,3,5
**recommendation** 181:6,9,11 182:7
**recommended** 184:4
**reconvened** 66:20
**record** 2:11 10:11 14:10,13,14
   26:23 36:1,4,5 63:13,15,16
   66:17,18 67:22,23,24,25 68:1
   68:5,8,9,10 90:17,20,21
   111:21 115:10 116:16,18,19
   124:13,14,15 125:16,18,19
   128:18 131:2,3,4 153:20
   158:15,16,17 163:9,10,11
   169:4,5,6 170:10,11,16 176:8
   176:9 177:15,18,19 187:16,18
   188:5
**RECORDED** 1:21
**records** 10:19
**recounting** 176:1
**recover** 113:20
**redesign** 18:2
**refer** 11:17 12:18 31:6 35:20
   48:23 68:15 70:7 75:23 99:22
   103:14 109:6 131:15 132:19
   147:5,11 149:14 157:22 161:14
   166:2 182:19
**reference** 55:1 70:22 78:17 88:2
   121:22 150:15 186:19
**referenced** 12:17
**references** 55:2,7
**referencing** 68:18 109:15
**referred** 29:3 62:16 69:17
   160:16
**referring** 11:18 31:9,14,19
   32:16 37:16 41:5 76:5,5 80:4
   80:17 81:2 101:4 103:24 150:5
   155:6 157:11,12 158:13 167:19
   177:21 186:19
**refers** 150:10 155:22
**Refki** 80:24
**reflect** 110:9
**reflected** 42:19 45:24 73:13
   92:4 95:7 160:17
**reflective** 150:4
**reflects** 45:10 49:19 147:12

**refresh** 166:9,16 173:2
**refugees** 73:11
**regard** 186:24
**regarding** 2:20 95:17 167:16
**regardless** 116:5
**regards** 163:3
**regime** 61:13
**region** 17:9 20:14
**regional** 20:10,11
**regular** 149:9
**regularly** 117:20
**reiterated** 93:24,25 94:1
**related** 21:22 25:20 71:4 106:7
   106:10 172:4
**relationships** 120:11,12
**released** 23:24 24:1,16
**relevance** 74:16 123:15 173:24
**relevancy** 169:12
**relevant** 20:6
**relief** 95:1,6,8
**Remain** 10:1
**remaining** 67:5 109:25
**remark** 150:14
**remedy** 91:10
**remember** 34:10 55:8 57:3 127:25
   150:25 151:4 163:4 176:22
**removal** 172:20
**remove** 9:24 153:11
**removed** 78:2,3,5,8,18 79:7
   82:15,17 85:5 86:10 89:23
   90:6,12
**removing** 89:19 90:14,14 178:13
**renew** 98:15 130:12,14 158:11
**renewal** 3:20 40:20,24 42:3,21
   42:23 43:10 98:13 99:16
   102:10 129:23 130:1 140:15,21
   141:20 147:12,13,19,23,24
   179:17
**renewals** 147:14 184:8
**renewed** 40:19 43:11,22 44:1,14
   101:8,9 147:3,3
**renewing** 142:15
**repeat** 50:10
**rephrase** 156:3 160:19 167:13
   175:17 181:20 184:6
**replaced** 82:17
**replicated** 20:24
**report** 31:8 48:12,17,22 51:16
   58:24 76:10 78:6 110:18
   149:10 183:22 185:10 186:25

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 31

**reported** 52:12 111:2 185:9
**Reporters** 1:22 188:8
**reports** 78:5
**represent** 74:13 85:25 90:24
**representation** 91:22,23,25
**representations** 45:23 93:15
**representative** 88:15 97:7
 107:17 150:23 151:8
**represented** 37:23 91:21
**representing** 75:7 97:13
**represents** 88:23
**request** 3:25 28:20 149:17 150:2
 150:10
**requested** 95:6
**requesting** 182:6
**required** 43:1 103:16
**requirements** 154:12
**rescind** 91:15
**research** 12:8,16 22:13 30:3,5
 30:10 31:13,15,18,21 32:2,4
 37:13 43:8 45:17,19 47:3,3,14
 47:21,22 48:20,21 52:15,17
 73:19,21 106:2 133:2,11,12,13
 140:18 150:3 158:4 163:16,19
 164:1
**reservation** 187:14
**reserve** 115:11
**reside** 15:3
**resolve** 91:19 92:2
**resolved** 151:16
**resource** 13:8,22 37:18 56:16,18
 57:2 96:7,17 109:1 134:22
 139:4
**resources** 56:22 57:5 108:6
 179:20
**respect** 103:15 115:18 176:5
**respective** 50:25 52:6 119:20
**respond** 86:22 92:21 100:11
**responded** 99:10
**response** 2:19 27:2 40:3 64:19
 82:5 85:14 90:4,15 99:5 100:9
 100:12,13 105:1,2,10,11,14
 130:8 176:20 185:3
**responsibilities** 46:1,18,21
 160:4,21 183:20
**responsibility** 45:13 179:25
**responsive** 47:9 106:17 137:8
**restaurants** 47:2
**restored** 91:13
**restrictions** 126:24 127:3

**result** 22:24 121:20 179:16
**resume** 68:3
**retain** 85:10
**retention** 71:16
**Rethemeyer** 102:4
**return** 65:24 99:18 146:11
**returned** 66:23 87:4
**revenue** 32:23
**review** 41:16 104:24,25 148:4
**reviewed** 32:12,17 35:1 50:18
 129:21 136:14 146:22 147:2
 149:18 158:9 179:12
**reviews** 48:6,15 179:12,16
**Reza** 118:5
**right** 6:3,5,13 8:1 9:5,8,17
 10:2 22:6 29:6 55:19 57:13
 62:8 65:23 66:15 67:18 68:17
 83:13 86:20 93:4 94:4,17
 109:23 113:23 116:15 119:6
 122:19 124:11 125:11 129:17
 130:24 132:15,19,25 140:1
 142:21 145:4 153:13 159:17
 169:3 170:1,4 173:3 174:13
 177:13 185:18,19 186:6 187:18
**rights** 12:12,18 18:13,14,14
 19:1 24:13 25:23,25 26:1,3,14
 30:18 35:18 38:1 39:23 46:22
 47:16 52:5,7 57:15,15 59:18
 59:21 61:8,9,14 62:8,10 65:1
 71:13 80:25 88:17,21 91:13,13
 92:18 101:21 109:19 122:18
 174:21
**rises** 116:4
**River** 1:22 188:8
**Robert** 129:19 137:20 138:12
**Rockefeller** 12:10 30:12 34:13
 102:20
**Rodriguez** 105:6 106:25 129:4
**role** 59:7 159:11
**rollover** 156:5
**Rothermeyer** 80:20
**Rotondi** 1:13 2:3,6 5:23,23 6:1
 6:4 7:13,20,24 8:2 9:3,4 27:2
 27:3,14,15 29:7,8 36:9,10,14
 36:15 39:5,6 40:11 42:5,6
 45:3,4 47:9,12 49:5,6,9 56:1
 61:15,17 63:8,9,11 66:13,14
 67:5,8,11,15,18,23 68:5,20
 69:4 70:16 71:21 72:21,25
 74:9,16,22 75:2 79:19 80:13

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 221 of 558

800.523.7887          6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 32

81:12 82:19 84:7,20 88:3,5
90:25 91:2 92:22 93:2,7,10,12
93:17,22 94:1,4,10 98:21
99:20 100:1,24 105:7 106:16
109:10 111:18 112:19 113:20
115:1,25 116:1,9 121:14 123:7
123:15 124:10,17,19,21 125:20
126:14 127:24 128:6,13,20,23
129:1,2,9,12 130:24 131:5,9
131:24,25 132:11,13 135:24
136:8,10,25 137:17 138:8,11
138:19 139:8,10,12 140:6
141:8,9,15 142:12,14 143:2
144:13,14 145:5,19,21 146:2,4
148:1 149:21,22 150:17,18
152:19 156:17,21 157:10 161:5
161:24,25 162:3,6 164:20
168:14,20,22,25 169:7,9 170:3
171:23 172:15,17 173:15,22,24
174:1 183:10,13,15 185:1,16
185:24 186:18 187:12,13,15
**ruling** 115:13 161:11 175:4
**run** 8:14 52:24
**runs** 160:7

---

**S**

**S** 2:1,1,1,9
**S-A-N-A-I** 51:11
**S-U-F-I** 15:2
**safety** 113:25 114:1,3,15 115:21
**salary** 32:13 38:14 42:24 43:2
 44:16 45:11 109:25 110:9,19
 111:2 127:7,10,11 130:11,21
 130:23 133:8 134:1 137:2
 142:2 147:21
**Sam** 6:7,8
**Sanai** 51:11 127:16,20
**sanctions** 22:5
**Sandra** 26:25
**save** 21:17 94:23,23
**saw** 24:21 117:14
**saying** 78:18 82:23,24 83:1 92:9
 180:14,15
**says** 31:7,11 32:7 37:2,10,21
 42:23 57:23 58:2 59:6 64:3
 69:10 70:24 71:3 73:6,23 80:2
 80:22 81:12 84:19 92:5 99:14
 103:15 104:16,23 106:1 109:17
 109:22 122:11 129:18 132:20
 133:1 136:12 140:21 141:2,4

146:17 147:12 150:1,2,4,8,11
158:1 160:1 169:18 177:1
178:10
**schedule** 61:6
**scheduled** 54:15 60:23,24 71:9
**scholarship** 17:13,14 18:9,15
**school** 15:19,20,23 17:10 18:8
 19:3 30:19 52:1 101:21 102:19
 102:20 120:16 154:10
**schools** 30:20 45:19 50:24
**Science** 25:14,22
**scope** 123:8
**screen** 39:20 60:25 73:5 95:13
 155:6 157:23
**scroll** 129:3
**seated** 10:8 153:19 183:11
**sec** 14:9
**second** 17:15 18:1,4,12,19 24:23
 31:9 32:7 35:14 59:5 60:1,2
 65:1 72:2 87:22 132:19 133:14
 133:18 140:21 145:19 158:1
 170:1
**secondary** 103:22
**Secretary** 19:17
**secured** 101:16 146:24
**securing** 105:24
**security** 32:11,16 33:11,19 73:8
 129:20 136:13 137:4,5 158:7
 158:11
**see** 12:7 29:12,17,22,24 67:8
 73:15 99:10 100:5 102:6
 105:21 114:6 115:18 117:23
 118:3,5,7,16,22 129:10,13
 137:12 149:10 161:13 169:1
 170:23 177:14 178:5
**seeing** 112:14 120:7 167:6
**seek** 119:25 120:5 121:24
**seeking** 91:11 106:24 120:7
 182:10
**seen** 112:5,7 115:6 157:24
**Seidel** 151:7
**Selchick** 2:21 72:12 96:10 108:5
 148:15
**selected** 48:20 182:22
**self-** 113:16
**semester** 71:15
**semi-permanent** 156:2
**Senate** 50:18
**send** 49:21 58:20 79:10 86:12
 172:7 185:21

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 33

**sending** 64:20
**senior** 42:22 50:22 54:7 99:8
  182:22
**sensitive** 59:15,21 62:23 64:14
  64:22
**sent** 80:10 85:14,21 134:20,21
  134:22
**sentence** 59:9 140:21
**sentenced** 23:11,13
**separate** 31:22
**separately** 41:25
**series** 87:14
**serve** 20:8 30:17 109:17
**served** 12:11 43:7 45:16
**service** 49:23
**serving** 52:5 113:17
**session** 119:21
**set** 34:15 43:17 45:25 90:23
  124:19
**settlement** 4:3 94:21 95:2
**settlements** 92:23
**seven** 2:19 7:16 19:13 26:16
  44:12 53:18 105:9
**seven-minute** 124:12
**Seventeen** 3:1
**seventy** 59:21
**seventy-five** 73:6
**Shahid** 15:24
**share** 21:5 71:7,8 139:1
**shared** 54:6 64:10,22 138:25
  169:24
**sharing** 73:23
**sharp** 65:25 187:1,2
**sharpen** 129:15
**sheet** 7:25 103:18
**sheets** 41:10
**Shia** 14:24
**shield** 9:24,25 152:21 153:10
  185:19
**shields** 9:21
**shocked** 57:4 128:11
**shocking** 57:2,9 61:11 82:16
  99:17
**short** 68:18 135:6
**shot** 10:22
**show** 13:23 41:20 44:22 53:3,10
  55:20 57:7 63:3 70:20,21
  109:2 112:12 128:13 132:8
  134:3 137:1 150:9 155:3,5
  158:21 166:11 171:10

**showed** 150:7
**showing** 36:20 42:11,17 44:11
  45:8 49:15 63:18 79:23,23
  88:10 98:25 112:2 131:6 140:7
  140:14 178:2
**shown** 39:20 167:10
**shows** 149:11
**side** 85:3,4 117:10,19 158:22
  159:25
**sign** 57:18,19 60:18
**signature** 31:2 38:3
**signed** 99:15,16,16 104:17,19
  105:15 129:19,23 134:6,10,13
  134:23 149:5,17,19
**significance** 165:4
**significant** 43:3 50:23 117:12
  121:13 122:18
**significantly** 147:20
**similar** 26:16 64:23 82:5 105:17
  105:24 122:15 160:22 162:20
  169:18
**sir** 7:2,19 10:2 66:11 157:5
  166:19 183:9 185:25
**sister** 60:14
**sit** 73:10 173:3
**sitting** 5:4 57:6 170:2
**situation** 82:16 121:2 123:18
  181:4,8
**six** 2:18 13:15,21 18:24 22:17
  22:19 24:2,9,20 32:14 60:24
  65:19 71:9 89:11 101:16
  105:24 107:11,23 108:22 123:2
  133:9
**sixteen** 3:1 103:21
**sixty** 3:23 28:9 54:3 60:9 89:11
  111:1
**Sixty-eight** 4:4
**sixty-five** 4:1 33:4 49:21 135:8
**Sixty-four** 4:1
**sixty-one** 3:24 7:11 38:22 39:10
**Sixty-seven** 4:2
**Sixty-six** 4:2
**sixty-three** 3:25 67:3 149:14,15
  149:16,23
**Sixty-two** 3:24 36:7,16,21,21
**skill** 188:6
**slash** 79:16 80:1
**sleep** 62:7 117:7
**slot** 71:1
**social** 21:16

800.523.7887                6-6-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 34

socially 6:17
Society 62:25
solemnly 10:3 153:14
solicit 168:7
solitary 22:18 24:20
solutions 73:7
somebody 50:11 96:18 112:13,14
  114:5 122:10 180:16 181:5,8
Sommer 1:11 5:13,13,14 68:17,22
  161:16
Sommer's 81:11
SONY 2:17 188:4
soon 43:24
sooner 24:2
sorry 10:18 12:1,7 14:5 15:1
  16:23 17:17 20:2 22:14,23
  23:10,12 24:25 26:9 28:23
  30:7 33:1 38:6 50:7,10 56:14
  60:1 67:23 72:14,24,24 79:15
  93:20 101:12 102:15 113:1
  126:17,17 130:13,25 134:12
  142:12 148:20 152:3 159:21
  164:10 165:21 166:14,15,17
  178:20 180:7,9 181:14 184:7
  184:12 185:6
sort 172:24
sought 95:1
sound 121:15 182:24 183:1
sounds 121:15
source 149:11,12
Southern 15:6
speak 10:20 12:5 37:6 84:12
  185:21
SPEAKER 35:10 37:6 64:1
speakers 20:23
speaking 69:25 72:3 74:14 75:6
  178:22
speaks 58:7
special 32:18 69:22 71:6 149:8
  151:24
specialty 64:25
specific 21:25 41:9 103:3
  163:21
specifically 81:13 137:19 177:8
specified 112:24
spell 6:6 10:10 15:1 153:19
spelling 39:1 86:2 92:2
spoke 145:12
spotlights 48:17
spring 71:4

staff 35:15 57:21 69:20 89:10
  148:18,21,23 171:9
stand 9:20,20 66:15 151:20
standards 103:10,12,12
standing 10:1
Stark 57:24 96:10 108:5
start 11:11 33:14 78:8 79:11
  82:17 150:21 183:24
started 17:12 28:13,15 38:13
  46:23 90:13 97:1 98:15 106:12
  107:3 119:5 130:15,18 137:18
  145:16,17 164:3 182:24
starting 32:13
state 1:1,5 4:3,5,10 5:4,6,6,7
  10:10 11:14,18 21:3 32:10,19
  33:20,21 49:24 59:16 65:3
  84:10 124:2 135:4 149:10,13
  153:19 158:7 169:8 188:3
stated 129:25
statement 9:6,8 75:18 91:8
  105:1
statements 6:14 9:10 91:16
  171:22 173:12 174:25 175:16
states 15:9 21:2 22:21 23:2
  129:19 152:1 174:17
Station 1:8
status 35:16 45:11 84:18 150:10
stay 33:20 135:6 183:11
Stefano 118:7
Stellar 53:2 100:16 104:2,3
  167:23 168:17 169:10 176:14
  176:18 181:16,24,25 182:3
  185:10
step 91:17,18 92:4,5,6,7,23
  104:23 152:21 153:7 170:25
steps 115:6 130:6 150:21
sticker 42:1
stipend 140:11
stipulate 7:15,17,18 67:7 68:20
  91:3 149:20 186:21
stipulated 69:3 88:5 132:8
stipulating 7:2 112:5
STIPULATION 4:2
stop 33:24 43:24,25 58:6 71:22
  86:15 88:22 102:13 136:20
  140:4 143:1,17
stopped 167:21
strategies 46:7
strategist 48:1
stress 113:4 117:8,10,13,17,19

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 224 of 558

800.523.7887                 6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 35

**stressful** 61:11
**stricken** 74:11
**strike** 74:9 82:20 106:16 157:10
  177:13 181:14
**strong** 114:22
**strongest** 114:24
**structure** 50:16 97:20
**struggling** 18:3
**student** 31:17
**student's** 169:24
**students** 21:10,11 22:12 32:23
  46:23,24,24 47:1,17,18 57:20
  58:22 60:6,10,14 71:12 89:9
  101:24 171:9,17,20 172:7
  173:12,20 174:11 175:16,20
  176:11 177:6
**studied** 57:13
**studies** 18:22
**study** 15:12 17:7,11 21:12 57:15
**studying** 18:23 23:3,4
**stuff** 138:17 186:14
**subject** 42:25 79:25 80:10,21
  90:25 170:7 176:8
**submit** 76:25 98:9 105:1,4 123:4
  135:8 151:22
**submitted** 50:15 54:3 76:10,12
  76:12,14,15,16 90:2 91:6
  112:6 135:11,12
**submitting** 27:8 106:24
**subpoena** 2:19
**subsequent** 40:20
**subsequently** 98:8 105:2 110:2
**substantial** 165:9
**substantive** 64:19
**successful** 54:9 71:17 117:15
  120:19 151:15
**sudden** 13:7 117:12
**suffer** 21:21 24:18 75:9 112:17
**suffered** 83:15 112:3,4,13 117:6
  145:13
**suffering** 75:8
**Sufi** 14:25
**suggested** 54:15
**suicide** 21:15
**summarized** 173:7
**SUNY** 1:14 2:16,18,20 6:1,4
  11:17 18:4 27:18,19,21 28:2
  28:11 31:13,14,21,21,25 32:1
  32:3,4 33:4 34:7 36:7 41:22
  41:23 42:12,18 44:12 45:9

47:16 49:3,13,20 55:18,20,24
56:10 58:11 62:15 70:3 71:25
74:2,3,14 75:4,7 77:12,18,23
77:25 81:4 84:11,18,25 85:1
85:21 86:21 87:16 88:16 91:19
92:2,15,16,24 93:18,18 94:5,5
94:16,21 95:8,17 96:10 107:4
107:20 109:8 110:2 111:14
113:4,25 120:22 121:10,20
123:25 125:2,3,6,12 126:1
130:10 131:18 132:2 135:7
144:18 145:14 148:17 149:8,17
149:19 152:7 153:2 154:3
155:1 158:4 165:11 167:12,14
169:23 171:21 173:12,14 175:1
175:16 178:16
**SUNY's** 107:19
**SUNYA** 2:13,14,21,22
**super** 59:16
**supervised** 63:2
**supervising** 180:18
**supervision** 185:7
**supervisor** 48:4 55:9 56:23
  96:12 104:14,21 159:12 169:25
  180:2,3,25 181:6,9 182:6,7
  183:24
**supervisors** 54:23 181:10
**support** 19:20 83:14 113:18
  115:2 123:24,24 173:8
**supporters** 80:23
**supportive** 54:22
**supposed** 94:13 133:12,13 147:16
**supreme** 18:18 26:17
**sure** 10:21 11:23 12:22 14:11
  19:10,23 22:2 30:3 37:8 50:5
  50:11 51:25 52:23 66:5 67:15
  94:20 96:23 102:15,24 106:21
  121:13 124:10 141:13 151:21
  159:2,3 160:20 167:14 168:1
  169:2 171:4 175:18,19 180:5
  181:21 184:7
**surpassed** 103:12
**surprised** 73:24
**surprising** 21:15
**Susan** 159:24 160:1,1
**sustain** 114:9 121:18 123:20
  173:18
**sustainable** 52:25
**sustained** 61:20 71:22 74:11
  75:14 84:8,22 99:21 106:20

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 225 of 558

800.523.7887            6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 36

148:2 158:19 161:12 170:8,15
174:22 175:5
**swear** 10:3 153:14
**sworn** 9:21 10:7 153:12,18
**system** 18:3 27:21 31:25 33:4
47:16 49:21 87:17 88:16 135:7
149:8
**systemwide** 31:25
**Szelest** 34:19,21

---

**T**

**T** 2:1,9,9
**T.V** 61:3 117:20
**take** 9:25 24:23 26:22 36:22
65:22 67:16 70:25 75:11 77:25
81:8 99:12 112:18 124:9,10
144:7 152:8,12,21 183:16
**taken** 8:12 89:6 92:16 115:6
130:6
**talent** 73:8
**talented** 32:21 135:6
**talk** 11:10 14:17 15:13 53:5
55:12 56:21 57:17,18,20 60:9
61:8 66:3 73:10 96:19 98:5,11
107:25,25 111:12 114:2,3
116:22 120:10 124:24 132:3
138:12,17 168:2 187:10
**talked** 40:18 53:8 85:3,5 121:9
132:14 137:22 150:22
**talking** 17:22 59:13 86:18
102:17 105:22 114:11
**talks** 35:14 59:4,9 69:9 113:25
**target** 103:23
**targeted** 43:17
**targets** 43:17
**Taylor** 26:2,6
**teach** 133:12
**teaching** 47:15
**team** 19:16,19 34:9 135:14
**technical** 64:25 73:7
**technically** 90:6,12 106:11
**Tehran** 14:22 17:8,21
**tell** 13:11 24:20 55:19 58:18
60:16 61:5 67:6,6 72:7 108:23
115:24 119:15 126:18 143:3
**telling** 22:19 81:4 86:8
**temporary** 20:8 142:6
**ten** 2:22 102:1
**tenure** 33:12,23 52:24 53:6,11
179:10

**term** 4:11 23:25 24:1,17 37:4,12
37:15,20 43:10 109:18,25
129:23 134:16 135:6 141:20
142:4,15 143:3,10,16 145:9
146:20 147:1,3,6,8,13,16
148:7 150:11,12 155:21 161:2
161:3 178:14
**terminal** 18:17
**terminate** 109:24 142:22
**terminated** 13:24 92:11 109:3
111:4,6,8 120:22 123:25
**terminating** 14:1 174:11
**termination** 74:19 75:3 109:20
174:3,10,20
**terms** 43:13,19,19 45:24 104:6
114:14 137:21,24,25 138:13
139:19 156:15,16 160:12,17
183:23 186:6
**testified** 16:3 27:1 28:10 75:12
77:23 86:24 87:6 111:23,24
113:2 163:13
**testify** 58:8 60:17 86:21 121:19
122:1 172:5
**testimony** 10:4,24 66:22 75:17
111:22 113:16,18 115:2,22
122:12 153:14 169:18 173:7
175:23 187:10
**textbook** 123:1,3,4
**thank** 5:16 6:12 10:9,12 11:4,6
24:24 27:10 28:18 36:18 42:9
49:25 59:2 60:21 62:13 64:20
65:21 66:16,24 68:12,13 72:11
78:21 81:21,24 82:3 87:2 88:8
95:14,25 97:16 116:20 123:9
124:7,12 129:16 145:22 152:17
152:23,24 153:5,11 154:21
164:8 176:9,22,25 179:8 183:4
183:13 185:14,17,18,19,22,25
186:1
**thanks** 68:23 73:23 183:9
**that's** 174:18
**therapy** 119:20,21
**thing** 82:21 186:18
**things** 58:20 112:10,11 114:4,13
169:23
**think** 17:13 18:19 20:20 26:10
27:23 28:8 32:19 34:10 35:2,5
35:8,24 38:13,14 41:8,11,15
48:2 54:16 56:13 65:3,7 67:8
69:3 76:1 77:7 83:1 96:7 97:2

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 226 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 37

98:14 107:11 112:2,12,23,23
113:6 114:10,17,25 115:5
116:1,2 119:6 121:18 126:6
129:15 139:5 148:6,18,20
159:3 162:2 164:10 170:23
173:17 175:6 187:3
**thinks** 141:10
**third** 31:7,7 91:8 99:12 133:15
**Thirteen** 2:24
**thirty** 3:8 8:10 20:22 32:14
42:25 44:17 97:2,2 98:1 133:9
142:5,18 147:22
**Thirty-** 105:8
**Thirty-eight** 3:12
**thirty-five** 3:10 43:3 99:23
100:2
**thirty-four** 3:10 98:17,20,22
99:1 148:9
**Thirty-nine** 3:12
**Thirty-one** 3:8
**thirty-seven** 3:11 105:5 182:20
**thirty-six** 3:11 100:15,22,25
101:3 104:1 131:7 182:20
**Thirty-three** 3:9
**Thirty-two** 3:9
**thought** 21:14 111:19 148:9
164:23 175:24
**thousand** 15:19 26:10 31:24
32:14 41:12 42:25 43:6 44:17
60:10 69:20 89:11,11 103:7,17
103:21 105:25 133:9 138:16
142:5,18 147:22
**three** 2:15 5:9 18:25 22:18
23:11,13 25:2 26:3 31:12
37:20 46:23 59:5,19 66:21
84:3 92:4,6,7,23 95:7,19 96:6
96:20 97:9 98:7 103:20,20
120:17 122:17,21 123:6 132:20
133:18 146:18,21 147:8 158:2
161:14,23 162:1,7
**three-year** 147:1,3,24 161:3
**throw** 185:19
**THUMB** 4:4
**till** 8:10 21:20 84:2
**time** 6:23 8:7 10:24 11:22 13:2
19:9 20:12,22 21:11,20 23:3
24:19 25:17 26:22 27:18 32:19
34:3,6,22 38:7,13 39:14 40:21
53:1 64:23 65:24 76:13 81:9
84:2,2 95:11,16 98:12 104:4

117:21 119:3,22 120:1 121:12
130:9 133:8 137:7 148:25
149:1 155:18 156:1,16,24
158:5 159:3,7 163:17 165:16
170:25 176:13 182:5,13,23
185:11,20
**times** 103:5,8,23 105:23 111:21
**tissues** 62:11
**title** 4:11 32:8 37:13 45:13
74:5 129:10 133:6,15 150:3
158:5
**titled** 150:3
**today** 18:3 21:20 80:23 86:18
111:16 120:8 146:13 178:11
186:3
**told** 22:16 58:2 72:9 74:4 77:15
85:4 90:5,10 94:14,14 95:1
107:20 108:9,12 130:19 165:20
165:22,23 176:14 182:15
**tomorrow** 107:24 108:18 186:18
**top** 15:20,22,25 21:10 30:20
54:10 120:19 169:10
**topics** 97:19
**track** 10:23 32:9 133:6,15
156:13 158:6
**traditional** 33:18
**train** 18:25 59:18 71:14
**training** 65:2
**trainings** 64:24
**TRANSCRIBED** 1:21
**transcript** 166:3,5 182:20 188:2
**transcription** 188:5
**Transcriptionist** 188:7
**transfer** 150:11
**transition** 171:9
**transmit** 76:8 77:2
**treated** 123:19 173:9
**treating** 84:25 171:21
**treatment** 112:4,9 113:7 114:4
120:8
**trend** 33:21 41:17
**trial** 1:7 5:1 6:21 7:14 22:20
22:23 23:1,7,8,10 113:18
115:2,12 116:3 187:19
**tried** 8:19 85:8 117:14 139:16
**trier** 44:6
**triggered** 114:21
**trip** 97:21
**triple** 25:16
**trouble** 81:9

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 227 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 38

**true** 94:17 188:5
**trust** 39:13,16
**trustees** 2:18 28:7 32:10 158:6
**truth** 10:4,5,5 83:1 153:15,15
153:15
**truthfulness** 172:4
**try** 24:5 78:24 141:7 171:12
**trying** 53:14 77:8 91:19 92:2
94:6
**turned** 165:14
**twelve** 2:23 8:14,14,17 168:11
168:13,15
**twelve-month** 32:8 146:18 158:4
**twenty-** 19:12
**Twenty** 3:3 72:19
**Twenty-eight** 3:7 87:14 88:7,11
**twenty-five** 3:5 26:10
**Twenty-four** 3:5
**Twenty-nine** 3:7
**twenty-one** 3:3 68:16,24 69:6
103:8,23 105:23
**twenty-seven** 3:6 20:15,20
**twenty-six** 3:6 19:12 41:8 99:19
103:2
**Twenty-three** 3:4 63:4,12,19
**twenty-two** 3:4 148:9
**twice** 64:11
**two** 2:14 5:9 8:15,17 15:8 19:11
24:11 29:20 31:17 32:11,14,16
33:13,19 35:5,8,22 40:18
41:11 43:25 44:3,4 52:24
53:19 57:6 59:5,14,17,21 61:4
65:7,10 66:21 79:16 80:1,11
83:9 91:18 92:5 102:21 103:5
103:16 107:16 110:4 120:17
121:25 124:12 125:24 129:20
133:10 136:12,13,17,18 137:2
137:2,2,4,5 138:16 143:21,24
146:24 150:19 151:10,25 157:7
158:8,11
**two-and-a-half** 23:22
**two-thirds** 24:1
**two-year** 130:23
**type** 50:20 82:8 105:18 113:7,21
120:12 123:18,24
**types** 79:2 105:24 119:15 177:5
**typically** 183:19

---

**U**

**U.N** 73:12

**U.S** 17:10 25:3,7 26:16 59:16
69:12,21 73:11 83:22 151:25
**U.U.P** 35:17,19 37:25 38:6 39:21
39:24 40:8 55:13,17 57:17
87:7,9 88:12,16 91:6 92:9,16
92:18,23 93:2 94:15,21 95:8
109:22 132:3,3 138:20,22
139:6,14,20,24 140:3,5 143:4
143:6,11,19 145:9 150:20
151:9
**UAlbany** 11:13,14,22 23:4 24:21
28:8 32:5 34:24 60:12 71:12
83:22 89:6,14,23 91:12 98:12
122:25
**ubiquitous** 176:25
**ultimately** 30:24 65:16 94:9
107:9 115:11 148:3
**undergoing** 24:17
**undergraduate** 101:23
**underlying** 167:15
**underneath** 30:1 180:18
**understand** 16:2 40:2 66:2 70:24
82:21 94:7 110:23 112:11
176:7 181:19
**understanding** 32:15 35:15 37:15
37:23,24 42:19 43:18 45:22
55:14 84:16,21 92:22 99:15
102:18 128:23 146:19 147:8,15
148:6,10 155:24 156:12 158:13
160:16 161:2,9 163:2,6,7
167:11,11,17,18,18
**understood** 66:6 81:14,20 116:14
**undertake** 18:21 85:12 87:9
**undertaking** 52:18
**unfairly** 173:9
**unfavorable** 179:16
**unfortunately** 74:4 77:14 78:2
90:4 92:3,7 117:6,15 119:24
120:2,23 122:17 124:1,3
**UNIDENTIFIED** 35:10 37:6 64:1
**uniform** 6:15
**unintelligible** 8:20 13:22 20:25
26:6 34:9,12 35:2,10 37:7
39:13 47:3,7 53:1 61:12,12,14
62:7 64:1 66:24 68:19 69:21
70:23 74:7,24 88:20 113:12
117:8,17 128:14 131:19 141:9
144:25 146:5,8,15 149:19
153:23 155:8 157:19 161:11
164:14 166:5,20 167:2 177:22

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 228 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 39

178:3,5,11  179:1,5  186:2,14
186:20
**unintelligible) this** 87:25
**union** 24:11  38:1,2,6  55:17
88:23  91:22,23,25  92:5,9,12
**Union's** 35:17
**unit** 184:8,23
**United** 2:17  3:24  4:10  15:9
19:14,17  20:9,12  21:2  22:21
23:2  26:12  37:22,24  38:24
69:21  138:20
**units** 32:24  34:17  41:14  103:4
**universities** 15:25,25  32:23
33:20,22  53:10  89:18  151:21
**university** 2:17  3:16,24  4:3,11
5:6,7  11:14,17,18  12:16,24
15:12,22,24,24  17:8  18:11,12
22:10  25:9,13  27:21,25  28:1,5
28:13,16  29:1  31:17  32:10
33:3,7  36:7  37:5,12,22,24
38:25  44:25  50:18,19,23  51:13
52:3,4,4,14  54:24,25  62:9
63:23  64:4  71:2  72:4  74:5
78:16  80:3  81:1  85:16  88:14
89:10,12,15  96:6  98:4  99:4
102:6  104:9  107:17  108:4
109:23  127:11  133:2  135:10
136:4  138:20  144:21  146:25
147:21  149:13,17  151:8  152:10
154:2,14  155:13  158:7  160:7
178:17  184:11,13
**university-wide** 45:17
**unrelated** 170:14
**unsatisfactory** 179:23
**untenured** 179:2,2
**unwilling** 186:21
**use** 71:20  74:4  76:25  77:1,2
90:5,11  112:21  135:18  146:2,4
172:22
**users** 22:8
**usually** 53:9

---

                    **V**

**v** 188:4
**vague** 173:13  175:12
**Valley** 92:1
**value** 112:16
**various** 46:18  69:12  101:7
**vary** 157:2
**Ventura** 72:16  73:5

**verse** 81:18
**version** 159:5
**versus** 5:6  151:10
**vice** 42:22  48:19  50:24  51:2,7
51:13  52:11  53:8,8,8  54:6
55:11  73:19  99:8  104:8  127:18
154:9,12  158:22  159:11  160:6
177:4
**Vice-President** 20:17
**Victor** 102:5
**violated** 88:17  91:12
**violates** 174:20
**violating** 91:12
**violation** 152:9
**violations** 91:9  108:13
**virtual** 54:5,5
**visibility** 70:1
**visible** 27:21
**vision** 117:10,10
**visit** 20:23  21:2
**visited** 21:1  83:22
**visiting** 22:12
**visits** 118:23
**voice** 10:16,17  126:16
**voluntarily** 152:6,12
**Volynsky** 80:24
**VS** 1:4

---

                    **W**

**W** 2:1  100:22,23
**W-E-S** 6:8
**W-I-L-L-** 153:21
**w/** 2:19
**waive** 9:8,12
**want** 9:23  11:10  14:5,17  39:7
55:12,20  57:16  67:16,16  68:7
68:19  81:12  98:11  101:11,13
106:1  115:24  116:22  120:10
124:8,8  130:12,14  157:14,15
166:14,14  167:3  169:19  174:7
186:12,14,17  187:2,6,8
**wanted** 19:23  23:5  30:22  57:17
58:20  60:25  69:10,22  71:13
84:1  87:23  130:22
**wasn't** 61:13  75:4  82:25  95:3
171:24
**waste** 152:22
**water** 11:1  148:12
**way** 13:21  33:18  53:4  54:20  60:4
84:25  94:3  108:25  143:19

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 229 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 40

156:11,11,12 185:21
**we'll** 8:5,5,6,17 71:1 75:13
  81:23 144:7 155:4 157:19
  176:8 187:3
**we're** 9:9 27:8 35:8 65:23,24
  67:18 74:23 86:18 92:6,9
  93:17,20,22 94:19 114:11,17
  114:17,17 124:20 128:18
  171:25
**we've** 111:15
**wearing** 6:18
**website** 28:6 77:24,25 78:2,3,7
  78:10,10,15 89:24 90:14 91:15
  125:6
**week** 61:3 76:10,22 83:23 123:2
  126:10
**weeks** 62:7 111:9,10 117:7,9,12
**welcome** 5:15,20 183:14
**well-established** 71:7
**well-establishment** 48:21
**went** 13:9,19 20:22 21:11 34:25
  54:5,16,21 56:23 57:5,6 79:5
  82:5 83:20 92:3,8 108:23
  109:1 113:7 114:3,6,13 117:17
  122:9 176:13
**whatnot** 112:8
**wide** 32:5 60:25 79:16 80:1
**William** 98:18 99:2,7 100:16
  131:11
**Williams** 2:5,15 34:12 51:1,4
  53:9 80:20 128:7 153:2,5,7,9
  153:17,18,21 154:23 157:22
  158:21,22 161:19 162:12
  163:13 168:16 169:10,11,17
  170:12 171:7 177:4
**willing** 7:15 114:18,20
**winners** 24:8 26:17
**wish** 8:6 9:6 61:13 92:21 93:14
  153:5
**wishes** 66:25,25
**witness** 6:15,22 8:23,24 9:8,14
  9:20 10:7,9,12,18,21,25 11:1
  11:4,5 12:1,7 16:4,6,9,11,14
  16:18,20,22,24 22:25 23:13,15
  23:17 28:19 29:13,22 30:6,10
  40:4,12 44:20 46:2,6,9,12,14
  47:13 49:1 50:7 51:7 53:24
  56:15 60:19 61:16,22 62:2,20
  65:10 66:5,7 75:19 76:12,14
  76:16,18,20,22 77:6,10 78:12

78:14,16,19 81:9 84:1 85:16
  85:18,20,22 86:19,23,25 88:25
  90:8,10 91:3 94:18 95:21,23
  97:1,4,7,11,14 108:4,19 110:7
  110:10,21 115:17 118:11,13,25
  121:19 122:1 126:8,11,13
  127:22,25 128:4 129:10 131:20
  131:22 136:2,9 137:9 138:14
  138:16 139:13,16,21,24 140:2
  140:5 141:13 143:12,14,16,18
  144:23 145:1,3,22 148:21
  150:25 151:3 152:24 153:1,8
  153:18,21,25 154:2,4,6,9,13
  154:20 155:10 156:7,10 157:2
  157:6 163:7 164:1,23 165:22
  165:24 166:20,22,24 172:4,19
  173:10,17,23 176:1 177:2
  179:4 180:8,10 181:18 185:21
  186:1
**witness'** 156:18
**witnesses** 9:18 93:8 186:3
**women** 83:15
**women's** 59:20 61:9 83:13
**wondering** 83:2
**word** 135:16,18,19,22 137:5
  166:23 172:22 175:22
**words** 69:24 77:17 103:10 112:21
  147:1
**work** 13:17,19,21 19:5,19 20:8
  20:14,17 21:22 25:18,20 34:6
  34:12 48:3,3,5,6,6,15,16,21
  57:10 58:3,19 60:23 61:5,23
  64:11 76:7,8,8,9 77:2 105:19
  107:21 108:16,17,21,24,25
  110:18 126:22 127:14 155:1,15
  160:12,15,21 163:14,16,19
  164:18 179:13,20 184:17,19,20
  186:17
**worked** 160:2 163:23 164:15
  181:13 182:2
**working** 24:4 27:17,19 28:13
  33:9 34:11 46:24 47:2,4 58:22
  64:5 65:6 67:18 71:15 83:5
  104:25 122:21 123:5,23 135:15
  145:6 148:25 149:1 159:6
  163:21 164:19 165:2 181:15
**world** 19:15 24:9,11,12 26:19
  52:2 86:13 89:12
**worry** 12:4
**wouldn't** 112:20

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 230 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 41

**writing** 80:2,23 164:3 178:10
**written** 99:5 148:11
**wrong** 54:16 129:17 132:4 174:16
  174:16
**wrongful** 74:19 75:3 174:2,10,10
  174:20
**wrote** 24:8,8,10,11,12 46:3,14
  100:13 110:9 123:1 165:12

---

### X

**X** 1:2,6 2:9 175:25

---

### Y

**Y** 175:25
**Y-E-R** 102:5
**Y-O-R-K** 53:19
**yahoo** 77:1,4,6
**Yale** 52:3
**Yea** 61:20
**yeah** 13:7 14:8,20 16:24 23:25
  24:19 25:6,9,16 27:6,8 33:2
  35:3 37:17,20 41:1,7,7 42:21
  44:3,3 46:20 49:20 50:9 55:16
  56:5 57:3 59:14 65:13,16
  67:19 71:6 76:3 83:8 86:4
  90:10 93:17 97:1,4 108:19
  111:11,17 117:1 126:9 128:16
  129:10 131:1 132:16 133:16
  134:17,21 135:18 139:24
  140:12,20 146:3,3,10 153:9
  156:1 162:4,5 165:24 166:22
  167:1 168:22,22 175:18 179:6
  182:24
**year** 17:19 18:5 32:13 33:15,16
  33:18 41:3,16,17,18 48:21
  52:10 99:14 110:2,3,12,19,21
  120:17 126:6,8,10,11,11,12,13
  129:22 130:23 131:19 132:7
  136:15,16 140:25 142:1,23
  146:22,23,23 147:1,2,25
  150:19,19 151:10,14 156:7
  158:10,12
**years** 13:2 15:8 23:11,13,22
  24:2 31:12 32:11,16 33:13,19
  37:20 41:13,16 43:20,25 44:2
  44:3,4 52:24 71:16 73:6 83:19
  84:3 103:5,6,7 110:4 117:13
  122:17,22 123:6 129:20 132:21
  136:13,17,18 137:3,4,5 146:18
  146:21,24 147:9 151:11 157:7

158:2,8 181:18 182:4
**years'** 137:2 158:11
**York** 1:1,5,8 5:4,5,6,7,8 11:14
  11:18 21:3 25:22 32:10,19
  49:24 53:19,20,21,24 54:1,11
  54:14,20 61:14 121:22 135:5
  149:13 158:7 188:3,9
**young** 5:13,13 54:8
**YOUNG/SOMMER** 1:12
**youngest** 20:21 27:23
**youth** 123:6

---

### Z

**Z** 6:7 175:25
**Z-R-G-Y-K-O-W-S-K-I** 70:9
**Zebra** 6:8
**Ziegelbauer** 87:16
**Zimpher** 49:12
**zone** 113:22
**Zrgykowski** 70:9,10,12,22 72:7,7

---

### 0

**02/08/2018** 2:20,21,22
**02/10/2017** 2:16
**04/16/2014** 2:13
**04/19/2022** 2:19
**04/30/18** 99:2
**05/01/14** 150:12
**05/01/17** 150:12
**05/31/2017** 2:15
**07/02/2011–07/01/2016** 2:17

---

### 1

**1** 1:7,8 4:7,7,8,8,9,9,10 31:12
  42:24 43:11 45:12 147:7,14
  158:2
**1/23/19** 3:15
**10** 1:22 49:4,16 188:8
**10/10/18** 4:10
**10/20/15** 4:8,8
**10:49** 5:1
**10:50** 1:6
**10th** 109:8,24 110:1 142:9
**11** 2:3
**11/25/20** 3:8
**11:00:07** 14:13
**11:00:27** 14:13
**11:28:42** 36:4
**11:29:47** 36:4
**12/04/2017** 2:14

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 231 of 558

800.523.7887                6-6-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 42

**12/09/2014-2** 2:13
**12/4/17** 4:9
**12:06:20** 63:15
**12:08:25** 63:15
**12:11:06** 66:17
**1222** 1:8
**124** 2:3
**13** 37:14
**13:21:01** 66:17
**13:22:42** 67:25
**13:23:3** 67:25
**13:23:52** 68:9
**13:26:56** 68:9
**13:56:57** 90:20
**13:58:07** 90:20
**13255** 1:2  188:4
**13662** 1:23  188:9
**13th** 69:1  183:8
**14:32:57** 116:18
**14:34:34** 116:18
**14:43:57** 124:14
**14:56:43** 124:14
**14:57:55** 125:18
**14:58:08** 125:18
**140** 4:11
**146** 2:4
**149** 3:25
**14th** 70:13  100:17  104:3  168:17
  168:18
**15:05:48** 131:2
**15:06:57** 131:2
**15:39:28** 158:16
**15:40:13** 158:16
**15:46:54** 163:10
**15:48:21** 163:10
**15:56:46** 169:5
**15:57:36** 169:5
**154** 2:5
**16** 29:2  54:16
**16:07:38** 177:18
**16:09:59** 177:18
**16th** 129:18  146:17  157:23
**18** 41:22  42:11,18  95:20,22
  110:2  163:20
**183** 2:6
**185** 2:6
**18th** 140:15  147:19
**19** 110:2
**19.10** 90:1
**1987** 154:6

**1st** 37:14  132:21  140:22  141:23
  146:22

---

**2**

**2** 4:6
**2-14-18** 2:23
**2-15-18** 2:24
**2/13/18** 3:3
**2/14/18** 3:2,5,21,22,22
**2/15/18** 3:23  4:1
**2/16/18** 3:5
**2/22/18** 3:1,3
**2/23/21** 3:14
**2/27/18** 3:4
**2/28/18** 3:6
**2/5/15** 4:7
**2/8/18** 2:23  3:4  4:1
**2/9/18** 2:25  3:2,19
**2/P-26** 150:15
**20** 87:19  91:6
**2000** 17:4  182:1
**2001** 19:18
**2002** 19:19
**2003** 21:2
**2005** 15:11  17:21  61:2
**2007** 17:20  22:10
**2008** 22:11,14
**2011** 31:20  144:2
**2012** 26:10
**2013** 18:6  32:19  38:14  39:13,16
**2014** 12:25  28:16  29:2  31:12
  33:14  36:8,17  37:14  39:13,16
  46:18  102:21,25  129:19  132:21
  134:6,24  135:15  139:24  146:17
  146:22  147:7  154:19  155:16
  157:23  158:2  159:23
**2015** 26:20,23  33:15,17  84:1
  103:19  146:23
**2016** 41:22  42:12,18  44:24  45:10
  45:12  140:15  144:2,2
**2017** 2:18  33:14,17  37:14  41:23
  42:24  43:11  44:12  49:4,16
  54:10  103:19  126:8  129:24
  132:23  140:22  141:18  146:22
  146:24  147:7,14,25  161:20
  162:9  163:20
**2017-18** 164:4
**2018** 11:12  13:4  28:11  33:17
  42:24  43:12  44:1,4  46:19
  52:13  54:16  55:24  56:15  69:1

800.523.7887                6-6-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

72:17,18 73:6 79:14 80:10,18
87:16,20 88:12 91:6 92:5,11
95:7,21 96:2 99:24 100:17
101:4 105:6 107:12 109:9,25
110:1 116:24 118:24 120:13
129:5 130:5,10,17 131:13
140:23 141:23 142:9 146:24
147:15,25 154:19 164:10
167:16 168:17,19 178:4,8
182:1,3,10 185:6
**2019** 5:10 44:15 92:9,12 109:21
110:1 129:23 130:2 141:24
**2020** 32:20 34:16 102:21 110:12
135:4 149:10,11 150:4,5,8,10
150:14
**2021** 110:14 183:8
**2022** 1:6 5:3
**20th** 87:16 88:12 95:7 134:24
**22nd** 105:6 129:5
**23rd** 5:10 92:5
**27** 2:11 92:9
**28th** 134:6

---

**3**
**3** 4:6
**3-4-18** 2:24
**3/1/18** 3:21
**3/20/18** 3:7
**3/26/18** 3:7
**3/7/18** 3:6
**3/8/18** 3:20
**3/9/18** 4:2
**30** 43:12
**30th** 42:24 44:15 98:19 99:24
106:14 129:22 130:2,5,10
132:23 140:22 141:24 147:7,15
**31** 161:20 162:9
**32.3** 109:22
**33-43** 4:11
**36** 3:24

---

**4**
**4** 26:23
**4/22/2014** 4:6
**4/27/18** 3:9
**4/28/18** 3:9
**4/29/14** 3:25
**4/30/18** 3:10,10
**4/31** 3:8
**4/6/17** 4:9

**4/7/16** 3:17
**4:21** 187:19

---

**5**
**5/1/18** 3:20
**5/14/18** 3:11
**5/20/14** 4:7
**5/21/18** 3:12
**5/22/18** 3:11
**5/23/18** 4:6
**5/8/14** 3:24

---

**6**
**6** 1:6 4:6,6,7,7,8,8,9,9,10,10
4:11 5:3 41:23 44:12
**6/4/2015-2** 2:11
**6/7/18** 3:23
**6th** 129:24 141:18

---

**7**
**7** 2:13,14,15,16,17,18,19,20,21
2:22,23,23,24,24,25 3:1,1,2,2
3:3,3,4,4,5,5,6,6,7,7,8,8,9,9
3:10,10,11,11,12,12,13,13,14
3:14,15,15,16,17,17,18,18,19
3:19,20,20,21,21,22,22,23,23
3:24 44:24 45:10
**7/10/18** 3:13
**7/2/16-7/1/22** 4:11
**7/2/19** 3:1
**7/27/18** 3:19
**7/6/18** 3:12
**7/9/18** 3:13

---

**8**
**8** 13:4 36:8,17 55:24 56:3,13
104:19
**8/1/2022** 188:7
**8/10/18** 3:15
**8/13/18** 3:18
**8/21/18** 3:18
**8/9/18** 3:14
**8th** 56:15 62:14 72:17,18 73:6
79:14 100:9 101:4 131:13,18
166:16

---

**9**
**9** 13:16 96:2
**9/18/17** 4:3
**9th** 80:10,18 95:21 98:5 106:15

800.523.7887                    6-6-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 44

```
107:12 108:9 109:21 110:1
169:22 178:4
```

```
 1  NEW YORK STATE

 2  COURT OF CLAIMS
    _____X CLAIM NO.: 132554
 3  KAMIAR ALAEI,
          Claimant
 4  VS

 5  STATE OF NEW YORK,
          Defendant
 6  _____X
    DATE:          June 7, 2022 at 9:35 a.m.
 7                 Trial – Day 2

 8  LOCATION:      Capitol Station, Courtroom 1
                   Albany, New York 12224
 9

10  BEFORE:        HONORABLE FRANK P. MILANO

11  APPEARANCES:   JOSEPH F. CASTIGLIONE, ESQ.
                   JESSE SOMMER, ESQ.
12                 YOUNG/SOMMER, L.L.C.
                       - For the Claimant
13
                   ANTHONY ROTONDI, A.A.G.
14                 AMANDA MALESZWESKI (Counsel SUNY Albany)
                   OFFICE OF THE ATTORNEY GENERAL
15                     - For the Defendant

16

17

18

19                                   OFFICIAL COURT COPY

20

21  DIGITALLY RECORDED PROCEEDING
    TRANSCRIBED BY: Hannah Allen
22  ASSOCIATED REPORTERS INT'L., INC.
    10 River Drive
23  Massena, NY 13662

24

25
```

**Associated Reporters Int'l., Inc.   518-465-8029**

1               W I T N E S S E S

2    FOR THE CLAIMANT:                        Page:
     HARVEY CHARLES:
3    DX by Mr. Castiglione                    10
     CX by Mr. Rotondi                        35
4    RD by Mr. Castiglione                    36

5    FORDIN SANAI:
     DX by Mr. Castiglione                    38
6
     RANDY STARK:
7    DX by Mr. Castiglione                    51

8    BRIAN SELCHICK:
     DX by Mr. Castiglione                    90
9    CX by Mr. Rotondi                        138
     RD by Mr. Castiglione                    151
10

11

12               E X H I B I T   L I S T

13   COURT EXHIBITS

14   One - CONGRESSIONAL RECORD 6/4/2015-2 PAGES

15   CLAIMANT EXHIBITS

16   One - SUNYA Appt Letter for Alaei dated      6
            04/16/2014 & 12/09/2014-2 PAGES
17   Two - Reappointment letter from SUNYA dated  6
            12/04/2017 for Dr. Alaei, with form
18   Three - from Kevin Williams to Kamiar Alaei  6
            05/31/2017
19   Four - from SUNY chancellor to Alaei         6
            02/10/2017
20   Five - Agreement b/t the United University   6
            Professions and the SONY 07/02/2011-07/01/2016
21   Six - SUNY Policies of the Board of Trustees 6
            dated April 2017
22   Seven - Certified documents from NYSUT in    6
            response to subpoena w/ cover letter dated 04/19/2022
23   Eight - from SUNY to Alaei regarding         6
            Alternate Assignment 02/08/2018
24   Nine - from Selchick to SUNYA personnel      6
            02/08/2018
25   Ten - Chain of emails between SUNYA          6

```
 1          personnel 02/08/2018
    Eleven - EMAIL 2/8/18                          6
 2  Twelve - EMAIL 2-14-18
    Thirteen - EMAIL 2-15-18
 3  Fourteen - EMAIL 3-4-18                        6
    Fifteen - EMAIL - 2/9/18                       6
 4  Sixteen - EMAIL 7/2/19
    Seventeen - EMAIL 2/22/18                      6
 5  Eighteen - EMAIL 2/9/18                        6
    Nineteen - EMAIL 2/14/18                       6
 6  Twenty - EMAIL 2/22/18                         6
    Twenty-one - EMAIL 2/13/18                     6
 7  Twenty-two - EMAIL 2/8/18                      6
    Twenty-three - EMAIL 2/27/18                   6
 8  Twenty-four - LETTER 2/14/18
    Twenty-five - LETTER 2/16/18
 9  Twenty-six - LETTER 2/28/18
    Twenty-seven - EMAIL 3/7/18
10  Twenty-eight - LETTER 3/20/18                  6
    Twenty-nine - EMAIL 3/26/18                    6
11  Thirty - ER 11/25/20                          70
    Thirty-one - NOTES 4/31                        6
12  Thirty-two - LETTER 4/27/18                    6
    Thirty-three - EMAIL 4/28/18                   6
13  Thirty-four - EMAIL 4/30/18                    6
    Thirty-five - LETTER 4/30/18                   6
14  Thirty-six - EMAIL 5/14/18                     6
    Thirty-seven - LETTER 5/22/18                  6
15  Thirty-eight - LETTER 5/21/18
    Thirty-nine - email 7/6/18                     6
16  Forty - EMAIL 7/10/18                         58
    Forty-one - EMAIL 7/9/18                       6
17  Forty-two - MEMO 8/9/18                        6
    Forty-three - EMAIL 2/23/21                    6
18  Forty-four - LETTER 8/10/18                    6
    Forty-five - NOTICE OF CLAIM 1/23/19           6
19  Forty-six - LETTER DEAR UNIVERSITY OF ALBANY   6
         OFFICIALS
20  Forty-seven - LETTERS
    Forty-eight - LETTER 4/7/16                    6
21  Forty-nine - LETTER 8/13/18                    6
    Fifty - LETTER 8/21/18                         6
22  Fifty-one - EMAIL 2/9/18                       6
    Fifty-two - LETTER 7/27/18                     6
23  Fifty-three - EMAIL 3/8/18                     6
    Fifty-four - APPOINTMENT RENEWAL 5/1/18        6
24  Fifty-five - EMAIL 3/1/18                      6
    Fifty-six - EMAIL 2/14/18                      6
25  Fifty-seven - EMAIL 2/14/18                    6
```

```
 1   Fifty-eight - EMAIL 2/14/18
     Fifty-nine - EMAIL 2/15/18                    6
 2   Sixty - LETTER 6/7/18
     Sixty-one - UNITED UNIVERSITY PROFESSIONS     6
 3   Sixty-two - LETTER 5/8/14                      6
     Sixty-three - APPOINTMENT REQUEST 4/29/14      6
 4   Sixty-four - EMAIL 2/15/18
     Sixty-five - EMAIL 2/8/18                      6
 5   Sixty-six - EMAIL 3/9/18                       6
     Sixty-seven - PACKET- STIPULATION OF
 6        SETTLEMENT BETWEEN STATE UNIVERSITY OF ALBANY AND ARASH
          ALAEI 9/18/17
 7   Sixty-eight - DEF THUMB DRIVE

 8   STATE EXHIBITS

 9   A - MEMO 5/23/18 (3) PAGES
     B - LETTER 4/22/2014 (2) PAGES
10   C - LETTER 5/20/14 (1) PAGE
     D - LETTER 2/5/15 (1) PAGE
11   E - LETTER 10/20/15 - 1 PAGE
     F - LETTER 10/20/15 - 1 PAGE
12   G - 4/6/17 1 PAGE
     H - LETTER 12/4/17 1 PAGE
13   I - LETTER 10/10/18 1 PAGE
     J - CBA BETWEEN STATE OF NY AND UNITED
14       UNIVERSITY PROFESSIONS 7/2/16-7/1/22 - 140 pages
     K - TITLE D. TERM APPOINTMENT PAGES 33-43    94
15

16

17

18

19

20

21

22

23

24

25
```

Alaei v SONY – 6/7/2022

5

1              (The trial commenced at 9:35 a.m.)

2              THE COURT:  Good morning, everyone.  It is

3       Tuesday, June 7th, 2022.  I'm Judge Frank P. Milano

4       sitting in Albany, New York to resume the trial of Dr.

5       Kamiar Alaei versus State University of New York et al.

6       It's claim number one three two five five four.

7              Yesterday, we heard from the Claimant, Dr. Alaei

8       and from one witness, Dr. Williams.  And this is the

9       resumption of the trial.  Could we have appearances made

10      today for the Claimant, please?

11             MR. CASTIGLIONE:  Joseph Castiglione with Young

12      Sommer, Your Honor, as well as Jesse Sommer from Young

13      Sommer and Dr. Alaei.

14             THE COURT:  Dr. Alaei is present.  And for the

15      Defendant, please?

16             MR. ROTONDI:  Anthony Rotondi, Assistant

17      Attorney General.

18             THE COURT:  Very well.  Welcome, Mr. Rotondi and

19      Ms. Amanda.  Again, we're under, I believe,

20      notwithstanding the fact that I think I read in the

21      newspaper last night that the office, Governor's Office of

22      Employee Relations has indicated that state agency

23      employees are no longer under a mask mandate.

24             I don't know that I've yet heard from the

25      appropriate authorities at the Office of Court

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1    Administration.  And as far as I know, we're still under a

2    mask mandate for courtroom proceedings.  So we are all

3    appropriately masked and socially distanced.  Thank you.

4          The last, one of the last items we were

5    addressing yesterday was a ... that had been previously

6    marked as Claimant's exhibits and provided to Mr. Rotunda

7    with the numerically marked Claimant's exhibits in the

8    court of claims.

9          So is -- who can speak to what can now be easily

10   stipulated into evidence regarding the marked court

11   exhibits.  Can you, Mr. Rotondi?

12         MR. ROTONDI:  Yes, I can, Your Honor.

13         THE COURT:  Please do.

14         MR. ROTONDI:  The Defendant stipulating to

15   exhibits -- Claimant's Exhibits One through Eleven,

16   Fourteen, Fifteen, Seventeen, Eighteen through Twenty-

17   three, Twenty-eight, Twenty-nine, Thirty-one through

18   Thirty-seven, Thirty-nine through Fifty-seven, Fifty-nine,

19   Sixty-one, Sixty-two, Sixty-three, Sixty-five, Sixty-six.

20         THE COURT:  Okay.  Let me repeat that and you

21   can use this as a double-check.  Mr. Rotondi has indicated

22   that the Defendant is stipulating into evidence upon

23   agreement with the Claimant, Claimant's Exhibits One

24   through Eleven, Fourteen, Fifteen, Seventeen, Eighteen

25   through Twenty-three, Twenty-eight, Twenty-nine, Thirty-

Alaei v SONY – 6/7/2022

7

1       one through Thirty-seven.

2               Thirty-nine through Fifty-seven, Fifty-nine,

3       Sixty-one, -two and -three, Sixty-five and Sixty-six.  Is

4       that it, Mr. Rotondi?

5               MR. ROTONDI:  Yes, Your Honor.

6               THE COURT:  Excellent.  Thank you.  Any other

7       housekeeping, Mr. Castiglione, we need to do before we

8       call your next witness.

9               MR. CASTIGLIONE:  No, Your Honor.

10              THE COURT:  Mr. Rotondi?

11              MR. ROTONDI:  No, Your Honor.

12              THE COURT:  All right.  Can I have your next

13      witness, Mr. Castiglione, please?

14              MR. CASTIGLIONE:  The Claimant calls Dr. Harvey

15      Charles.

16              THE COURT:  All right.  Can we have Dr. Charles?

17              UNIDENTIFIED SPEAKER:  May I bring him in?

18              THE COURT:  Please do.  Harvey is the first

19      name?  Mr. Castiglione, you said it's Harvey Charles?

20              MR. CASTIGLIONE:  Harvey Charles.  Yes.

21              THE COURT:  Okay.  Very well.  Thank you.  Dr.

22      Charles, please come up to the witness stand and remain

23      standing.  Before you remove your mask, could you please

24      put on one of the shields --

25              MR. CHARLES:  Okay.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

8

1          THE COURT:  Over your -- over your face?

2          MR. CHARLES:  Yeah.

3          THE COURT:  Do that first.  Now if you wish, and

4      I guess it would be easier to hear you if you can remove

5      your mask.  Thank you.  You're going to be sworn now, sir,

6      so remain standing.

7          THE MONITOR:  Raise your right hand.  Do you

8      solemnly swear the testimony you're about to give is the

9      truth, the whole truth, nothing but the truth, so help you

10     God?

11         MR. CHARLES:  Yes.

12         WITNESS; HARVEY CHARLES; Sworn

13         THE MONITOR:  Be seated.  State and spell your

14     name for the record.

15         THE COURT:  Dr. Charles, please keep your voice

16     up.  That doesn't amplify your voice, it just records your

17     voice.

18         THE WITNESS:  Sure.

19         THE COURT:  So speak up.  Your full name, spell

20     it, please?

21         THE WITNESS:  Harvey Charles, H-A-R-V-E-Y C-H-A-

22     R-L-E-S.

23         THE COURT:  Great.  Little pedigree for me.  Is

24     that all right?

25         MR. CASTIGLIONE:  Yes, Your Honor.

Alaei v SONY – 6/7/2022

1                    THE COURT:  Dr. Charles, where're you currently

2        employed?

3                    THE WITNESS:  At the University of Albany.

4                    THE COURT:  SUNY Albany?

5                    THE WITNESS:  Yeah.

6                    THE COURT:  And what position?

7                    THE WITNESS:  I am Professor of International

8        Education, School of Education.

9                    THE COURT:  Okay.  And how long have you had

10       that post?

11                   THE WITNESS:  I have been in that position since

12       January of 2020.

13                   THE COURT:  So 2020?

14                   THE WITNESS:  Yes.

15                   THE COURT:  And what was your -- were you

16       employed by SUNY Albany in the years between 2014 and

17       2018?

18                   THE WITNESS:  No.  My employment began in 2015.

19                   THE COURT:  In 2015?

20                   THE WITNESS:  Yes.

21                   THE COURT:  And when you began your employment

22       in 2015, what was your position?

23                   THE WITNESS:  I was dean and vice provost for

24       International Educational Global Strategy.

25                   THE COURT:  Okay.  And you remain in that

Alaei v SONY - 6/7/2022

1    position until 2020?

2              THE WITNESS:  Until -- yes, December 31st, 2019,

3    January 1st, 2020, yes.

4              THE COURT:  And in that position, what were your

5    duties?

6              THE WITNESS:  I was responsible for providing

7    leadership on international education matters for the

8    entire campus.

9              THE COURT:  Bless you.  Go ahead.

10             THE WITNESS:  Working with faculty to support

11   the efforts to international -- internationalized teaching

12   and research, providing services to international students

13   and education-abroad students, and practically anything

14   that involved international education matters for the

15   campus.

16             THE COURT:  Of SUNY Albany?

17             THE WITNESS:  Yes.

18             THE COURT:  Thank you.

19             MR. CASTIGLIONE:  Thank you, Your Honor.  Your

20   Honor, do you mind if I stay seated while I question?

21             THE COURT:  No, that's fine.

22             MR. CASTIGLIONE:  Thank you.

23             DIRECT EXAMINATION BY MR. CASTIGLIONE:

24   Q.   Good morning, Dr. Charles.

25   A.   Morning.

Alaei v SONY - 6/7/2022

1    Q.   The Judge just went through some preliminary issues

2    with you, so I'll hop to it.  Do you know Dr. Kamiar Alaei?

3    A.   Yes, I do.

4    Q.   Okay.  And did you work with Dr. Alaei in 2018?

5    A.   Yes, I did.

6    Q.   Okay.  Can you explain to me your work relationship

7    with Dr. Alaei in 2018 in terms of your position as dean for

8    International Education and Vice Provost?

9    A.   Sure.  Dr. Alaei was the director of the Global

10   Institute for Health and Human Rights, G.I.H.H.R.  And I can't

11   remember exactly when, but we had an agreement that his

12   Institute would report directly to me.  And so it is within

13   that context that I worked closely with him.

14   Q.   Okay.  And so you oversaw Dr. Alaei's work for

15   G.I.H.H.R. and his efforts?

16   A.   Yes.

17   Q.   Okay.  Dr. Alaei was also an associate dean at that

18   time.  Is that correct?  If you recall.

19   A.   I can't recall exactly his title, but I believe that

20   that had to do with his involvement with the Rockefeller

21   College.

22   Q.   Okay.

23   A.   Yeah.

24   Q.   Working with Dr. Alaei, overseeing the work of

25   G.I.H.H.R.  Did you have any opinion of the quality of Dr.

Alaei v SONY - 6/7/2022

1   Alaei's work?

2        A.   Yes.  Yes.

3        Q.   Can you explain to me what your opinion was?

4        A.   Sure.  I believe that he did outstanding work in

5   leading the Institute and procuring grants and in pursuing the

6   mission of G.I.H.H.R.

7        Q.   Okay.

8               THE COURT:  Would you work with him on a daily

9        basis?

10              THE WITNESS:  When you say work, if you mean --.

11              THE COURT:  Communicate with him, sir.

12              THE WITNESS:  I -- I wouldn't say on a daily

13       basis, but when G.I.H.H.R. moved over to the suite of

14       offices adjacent to mine, I would see him from time to

15       time.  We would not necessarily have conversations on a

16       daily basis, but you know.

17              THE COURT:  Would you have periodically

18       scheduled interaction with him?

19              THE WITNESS:  Yes, at least once a month.

20              THE COURT:  Okay.  Go ahead, Counsel.

21              BY MR. CASTIGLIONE:  (Cont'g.)

22       Q.   Did you ever give any evaluations for Dr. Alaei's

23   work?

24       A.   I believe I provided an evaluation after his first-

25   year reporting to me.

Alaei v SONY – 6/7/2022

13

 1       Q.   And do you recall what the nature of that evaluation

 2    was?

 3       A.   Yes.  It was very good.

 4       Q.   Okay.  If I could show you what's been introduced as

 5    Exhibit Thirty-six.

 6            THE COURT:  Just an interjection.  Mr. Rotondi,

 7        when you recited the stipulated -- I'm just verifying what

 8        I believe to be true.  The stipulated exhibits, we covered

 9        some of the grounds of the exhibits that were admitted

10        yesterday, correct?

11            MR. ROTONDI:  Yes.  Yes, we did.

12            THE COURT:  Okay.  Mr. Castiglione.

13            MR. CASTIGLIONE:  Thank you, Your Honor.  Okay.

14        Sorry, I'm just looking at the new exhibits here.

15            BY MR. CASTIGLIONE:  (Cont'g.)

16       Q.   So Dr. Charles, just so you're aware.  I'll be

17    showing you a document that will appear on your screen, so

18    we're not handing papers back and forth.  I'm showing you

19    what's been marked as Claimant's Exhibit Thirty-six and a

20    portion of it, which is a letter dated --.

21            THE COURT:  Excuse me, Counsel, take the mic

22        with you?

23            MR. CASTIGLIONE:  Apologies, sir.

24            BY MR. CASTIGLIONE:  (Cont'g.)

25       Q.   A portion of it, which is a letter dated May 8th,

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

14

1  2018 from Dr. Alaei to -- as you can see here, to William

2  Hedberg.  Do you know who William Hedberg was at the time in

3  2018?

4       A.   Yes.

5       Q.   Can you tell me what position he held?

6       A.   I believe that he was the Senior Vice Provost for

7  Academic Affairs reporting to the provost.

8       Q.   Okay.  In this letter, and I'm identifying with my

9  pen along these dots.  Are you aware of those being activities

10 by Dr. Alaei while at SUNY Albany?

11            THE COURT:  He's (unintelligible) purport to be

12       with Dr. Alaei indicated he had accomplished learning

13       standards.

14            THE WITNESS:  I -- I believe that yes, for the

15       most part to be in -- many of these things occurred prior

16       to his reporting directly to me, but that is consistent

17       with what I have known, what I had known about his

18       involvement with G.I.H.H.R., yes.

19            BY MR. CASTIGLIONE:  (Cont'g.)

20       Q.   Okay.  And if I could also refer you to the next

21 page, which discusses fundraising of three million nine hundred

22 sixteen thousand dollars and change.  Were you aware of that

23 fundraising activity by Dr. Alaei?

24       A.   I know that he was involved in fundraising.  I know

25 that he was very successful in fundraising, but I -- I can't

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1    vouch to the precise amount.

2        Q.    Sure.  Did you -- would you identify Dr. Alaei's

3    efforts including the fundraising is quite meaningful in terms

4    of his employment with SUNY?

5        A.    Yes.

6        Q.    Okay.  Are you aware that there came a time -- or

7    strike that.

8        Are you aware of whether there came a time when Dr. Alaei

9    was put on alternative assignment in February 2018?

10       A.    Yes.

11       Q.    Okay.  And do you recall the day of Dr. Alaei being

12   put on alternative assignment, Dr. Alaei coming to see you

13   first?

14       A.    Yes, I believe that he came to see me that morning,

15   yes.

16       Q.    And do you recall of your interaction with Dr. Alaei

17   that morning?

18       A.    Anything specifically about the interaction?

19       Q.    Sure.  What did Dr. Alaei say to you?

20            THE COURT:  In sum and substance.

21            MR. CASTIGLIONE:  Yes.

22            THE WITNESS:  Well, he seemed confused as to why

23       he was put on alternate assignment.  And he wanted to know

24       from me what precipitated that decision.

25            THE COURT:  Specifically, what?  He wanted to

Alaei v SONY - 6/7/2022

1    know what?

2                THE WITNESS:  He wanted to know what

3        precipitated the decision for his being put on alternate

4        assignment.

5                THE COURT:  Okay.  Thank you.

6                THE WITNESS:  Yeah.

7                BY MR. CASTIGLIONE:  (Cont'g.)

8        Q.    I'm showing you what's been introduced in evidence as

9    Claimant's Fifty-three.  You can take a look at the top email.

10   It's an email from you to Randy Stark in February 2018.

11       A.    Could you repeat the question?  I guess, I was busy

12   reading.

13       Q.    Sure.  Does that -- does that give you a -- does that

14   refresh your recollection about your interactions with Dr.

15   Alaei the morning of?

16       A.    Yes.

17       Q.    And your characterization he was nervous and worried?

18       A.    Yes.

19       Q.    Okay.  Did you ever learn -- strike that.

20       During 2018 between February and August, did you ever

21   learn the underlying basis for SUNY's investigation concerning

22   Dr. Alaei?  In other words, during that time, did anybody tell

23   you the basis of the investigation while he was on alternative

24   assignment?

25       A.    I think the only thing I -- I was -- I was told was

Alaei v SONY - 6/7/2022

1  that the investigation had to do with allegations made about

2  his conduct with some of the interns at the conference.  And

3  that's pretty much all I was told.

4       Q.   Okay.  Do you recall the specifics about what the

5  alleged conduct was that you were told?

6       A.   I don't -- the one word that comes to my mind, the

7  one adjective is inappropriate, but -- but no.

8       Q.   Do you recall who told you that?

9       A.   I believe that that came out in one of the earlier

10 meetings that the provost called when this issue came to a

11 head.

12      Q.   Okay.  If I could show you --.

13           THE COURT:  And you said you testified regarding

14      contact with interns at the conference.  What conference?

15           THE WITNESS:  There was a conference in -- in

16      Beirut or at the University of Beirut.

17           THE COURT:  Okay.  That's fine.

18           THE WITNESS:  Yeah.

19           BY MR. CASTIGLIONE:  (Cont'g.)

20      Q.   Showing you what's been previously introduced as

21 Claimant's Exhibit Eight.  You can take a look at this letter.

22           THE COURT:  And can you show the doctor who the

23      letter is from?

24           MR. CASTIGLIONE:  Sure.

25           THE COURT:  Okay.  You got that, Doctor?

Alaei v SONY – 6/7/2022

1                    THE WITNESS:  Yes.

2                    THE COURT:  You're CC'd as you said?

3                    THE WITNESS:  Yes.

4                    THE COURT:  Go ahead, Mr. Castiglione.

5                    MR. CASTIGLIONE:  Thank you, Your Honor.

6                    BY MR. CASTIGLIONE:  (Cont'g.)

7        Q.    This letter refers to a disciplinary investigation

8    being conducted by Human Resources.  Did you participate in any

9    manner in undertaking that investigation?

10       A.    I did not.

11       Q.    Okay.  Did -- did anybody ever contact you to ask you

12   information as part of that investigation about what knowledge

13   you might have had about Dr. Alaei or G.I.H.H.R. or structure

14   or funding?

15       A.    With reference to the allegations made against him,

16   you mean?

17       Q.    Yes.

18       A.    No, not that I recall.

19       Q.    So people conducting the investigation never

20   contacted you to ask you information?

21       A.    No.

22       Q.    Okay.  Do you recall immediately after -- a short

23   time after Dr. Alaei was put on alternative assignment that

24   UAlbany had blocked his email access?

25       A.    I believe I was made aware of that when I was told

Alaei v SONY - 6/7/2022

19

1    that this would happen.

2        Q.   And you -- you didn't have any involvement in that

3    decision?

4        A.   I did not.

5        Q.   Okay.  Do you recall -- if I can refer you to Exhibit

6    Twenty-two.  I'm showing you Claimant's Exhibit Twenty-two

7    specifically an email from Karl Rethemeyer to James Stellar in

8    you're CC'd on here.

9        A.   Uh-huh.

10       Q.   Dated February 8th, 2018.

11       A.   Uh-huh.

12       Q.   It says, we will also need to change all references

13   to K.A.  Do you recall SUNY removing Dr. Alaei's references as

14   director and other information from the G.I.H.H.R. website?

15       A.   What I recall is that it was discussed that that may

16   happen.  I was not involved in doing the actual removal, but --

17   .

18       Q.   Okay.

19               THE COURT:  But were you aware that it happened?

20               THE WITNESS:  I -- I don't recall going back to

21       the website to check. But, you know, since I was very

22       tangential to all of these decisions, you know, it was

23       neither here nor there for me.

24               THE COURT:  Okay.

25               MR. CASTIGLIONE:  Okay.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1           BY MR. CASTIGLIONE:  (Cont'g.)

2       Q.   I'd like to talk to you about non-renew of Dr. Alaei.

3   Are you aware that there came a time when Dr. Alaei -- efforts

4   had started by SUNY Albany to non-renew his term appointment?

5       A.   I believe I heard something to that effect, yes.

6       Q.   Okay.  If I can refer you to Exhibit Thirty-two.  I'm

7   showing you what's been marked in evidence as Claimant's

8   Exhibit Thirty-two, a letter dated April 27th, 2018 purportedly

9   from you to Provost Stellar.  Do you recall seeing this before?

10          THE COURT:  Well, the exhibit is -- ostensibly

11      is authored by you.  Do you recall this exhibit?

12          THE WITNESS:  No, I do not recall this exhibit.

13          BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.   Do you recall somebody preparing this letter and

15   giving it to you and asking you to sign it?

16      A.   For this particular letter, no.

17      Q.   Okay.  If I can refer you to Exhibit Thirty-three.

18   Exhibit Thirty-three.  Exhibit Thirty -- Claimant's Exhibit

19   Thirty-three is an email first between a Harvey Charles, dated

20   April 28th, 2018 and William Hedberg, and there's a follow-up

21   email attached.  There's three emails actually.  If I can refer

22   you to this – what appears to be an email from Mr. Hedberg

23   saying, Harvey, are you available to sign a non-renewal letter

24   for K.A.?

25          Your response says, yes, I am.  Would you like me to do it

**Associated Reporters Int'l., Inc.   518-465-8029**

1    today?  Then your follow-up response at three twenty-one p.m.

2    says, hello, Bill, I'm looking at the letter of non-renewal and

3    it is actually a recommendation for me to the provost.  As you

4    know, I know practically nothing about this situation, and I

5    feel uncomfortable making a recommendation to the provost

6    without a basis to do so.

7        Could this be handled differently?  Does that refresh your

8    recollection as to whether or not Mr. Hedberg had provided this

9    letter, Claimant's Exhibit Thirty-two to you, making it seem as

10   if you wrote it and asking you to sign it?

11       A.   I -- I am well aware of the fact that he did provide

12   me with a letter that I certainly did not author, but indicated

13   that it was coming from me requesting that I sign, yes, I -- I

14   do re -- recall that.

15       Q.   But you didn't prepare this letter?

16       A.   Oh, I did not, no.

17            THE COURT:  Can you flip back to Thirty-five --?

18            MR. CASTIGLIONE:  Three.

19            THE COURT:  Oh, Three for a second?  Now the

20       Bill is William -- William Hedberg?

21            THE WITNESS:  Yes.

22            THE COURT:  Okay.  Go ahead, Counsel.

23            BY MR. CASTIGLIONE:  (Cont'g.)

24       Q.   Do you -- can you explain to meet your understanding

25   of what Mr. Hedberg's responsibilities were at the time in 2018

Alaei v SONY – 6/7/2022

1   concerning faculty members appointments, faculty member

2   positions?

3        A.   You know, I -- I can't provide you a whole lot of

4   details about his responsibilities other than to say that he

5   was the point person in the office of the provost to handle

6   facul -- matters of faculty appointments, and I would imagine

7   faculty dismissal.

8        And that's what I understood his role to be.  I -- I can't

9   provide you with additional detail.

10       Q.   That's -- that's okay.  Do you know was he involved

11   with financial terms for faculties appointments?

12       A.   I believe he was, yes.

13       Q.   Had anyone ever prepared a recommendation of non-

14   renewal before for you to sign for another faculty member?

15       A.   No.

16       Q.   So if I can refer you to Claimant's Exhibit Thirty --

17   .

18            THE COURT:  During this period of time, Dr.

19       Charles, how many -- for my purposes, refer to the doctor

20       this time as your subordinate.  How many subordinates did

21       you have?

22            THE WITNESS:  Well, in terms of direct reports,

23       I would say maybe about eight or nine.  But of course,

24       there were about, including the staff of G.I.H.H.R., I

25       would say in excess of fifty or sixty people within the

Alaei v SONY - 6/7/2022

1    larger center for International Education of Global

2    Strategy.

3              THE COURT:  Okay.  Thank you.

4              THE WITNESS:  Yeah.

5              BY MR. CASTIGLIONE:  (Cont'g.)

6    Q.   If I can refer you, it's part of Exhibit Thirty-

7    three, Claimant's Exhibit Thirty-three.  There's an email here,

8    dated May 2nd, 2018 from you to Randy.  Can you just take a

9    look at this email?

10   A.   Sure.

11             THE COURT:  Which number is this, Counsel?

12             MR. CASTIGLIONE:  It's part of Claimant's

13   Exhibit Thirty-three.

14             THE COURT:  Okay.

15             BY MR. CASTIGLIONE:  (Cont'g.)

16   Q.   This email says, and I'm writing to let you know that

17   Bill Hedberg sent me both the H.R.M. dash three for Kamiar as

18   shown in the attachment, and a letter addressed to the provost

19   for me recommending, underlined, that Kamiar not be renewed.

20   In the first instance, what is the H.R.M. Three form you're

21   referring to?

22   A.   I believe that that is a document that comes from the

23   Human Resources Office that effectively allows a supervisor to

24   determine an employee's status.  I haven't looked at the H.R.M.

25   Three in a long time.  So I can't give you additional details

Alaei v SONY - 6/7/2022

1  on that, but.

2       Q.   If I -- if I refer you to Claimant's Exhibit Thirty-

3  four, part of this is a change of status request form, H.R.M.

4  Three.  It's for Dr. Alaei, your signature on here, dated

5  04/28/2018.  Do you recall this?

6       A.   Yes.

7       Q.   Oh, I'm sorry.

8       A.   Yes.

9       Q.   Is this the H.R.M. Three form as you recall that you

10  were referring to?

11       A.   Yes.

12       Q.   And so back to Claimant's Thirty-three, your email.

13  It says, I declined to sign that letter because I have no

14  information that could be used as a basis to recommend that

15  Kamiar not be renewed.  I am not seeking such information since

16  it's clear to me that the Provost has decided to not renew

17  Kamiar's contract.  I did sign the H.R.M. dash Three.  However,

18  in order to complete the paperwork per the wishes of the

19  provost.

20       Does that reflect that you agreed and signed the H.R.M.

21  Three form that was included as part of Claimant's Exhibit

22  Thirty-four?

23       A.   Yes, because I was instructed to do so.

24       Q.   Okay.  And did anyone consult with you before

25  approaching you about signing non-renewal forms for Dr. Alaei's

Alaei v SONY - 6/7/2022

1    employment?

2        A.    No.

3        Q.    Did you have any basis to recommend that Dr. Alaei

4    not be renewed on the merits of his work at the time?

5        A.    I did not.

6        Q.    Would you have made a recommendation that Dr. Alaei

7    be renewed on the merits of his work if asked?

8                    MR. ROTONDI:  Objection, Your Honor.

9                    THE COURT:  Why?

10                    MR. ROTONDI:  Relevance.

11                    THE COURT:  Overruled.  You can answer.

12        A.    I had no reason to recommend that Dr. Alaei not be

13    renewed.  So based on the information I had, I would have

14    recommended that he continue.  In fact, the issue of

15    recommending would not have come up because there -- there was

16    nothing there as far as I'm -- I was concerned.

17                    BY MR. CASTIGLIONE:  (Cont'g.)

18        Q.    If this was left to you, you would not have initiated

19    non-renewal.  Is that fair?

20                    MR. ROTONDI:  Objection, Your Honor.

21                    THE COURT:  Essentially asked and answered.

22        Sustained.  Go ahead, Counsel.

23                    THE WITNESS:  Could you ask the question again?

24                    THE COURT:  No, that's --

25                    THE WITNESS:  Okay.

Alaei v SONY - 6/7/2022

1          BY MR. CASTIGLIONE:  (Cont'g.)

2      Q.   Did -- did you have any personal knowledge of why the

3  provost have made the decision to -- to non-renew Dr. Alaei's

4  employment?

5      A.   No, I -- I did not.

6      Q.   Actually, I'll show it to you exhibit -- I'm showing

7  you what's been entered into evidence as Claimant's Exhibit

8  Eleven.  It's a email from you, dated February 2018 to various

9  email recipients.  It says, invitation to a G.I.H.H.R. wide

10 meeting, February 4-29 and -- I'm trying to -- you can see.

11 Then there's -- continues on.  Do you recall this email?

12     A.   Yes, I do.

13     Q.   Okay.  Was it your idea to draft and send this email?

14     A.   It was not my idea to -- to --.

15     Q.   Did -- did other people at SUNY, Albany prepare this

16 email on your behalf?

17     A.   I -- I'm not sure.  I, however, I know that all

18 communications to G.I.H.H.R. once the allegations were made

19 against Dr. Alaei, it -- it had to be run through the Office of

20 Communications.  So if I, indeed authored the text, I would

21 have sent it to, I believe, his name was Jordan Carlo

22 Evangelist (phonetic spelling) to -- for his review and -- and

23 vetting an approval.

24     Q.   Okay.  If I can refer you to what's identified as

25 Claimant's Exhibit Ten.  This is an email, a series of emails.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1  The first one is from Jordan Carlo Evangelist, dated February

2  8th, ten thirty-nine a.m. to a number of people.

3       It looks like he's providing you a draft email to review.

4                 THE COURT:  Question?

5                 BY MR. CASTIGLIONE:  (Cont'g.)

6       Q.   Do you recall this as  -- that Jordan Carlo

7  Evangelist had prepared an email for your review and input?

8       A.   Yes, that seems -- that seems entirely reasonable.

9       Q.   Okay.  And there's an email from you to him, Mr.

10 Carlo Evangelist and others saying this looks good.  I'm all

11 teed up to send this out.  Just awaiting Randy's call.  Can you

12 explain to me what you meant by just awaiting Randy's call?

13      A.   You know, I -- I -- I don't remember.

14      Q.   Do you recall -- you're referring to Randy Stark?

15      A.   Randy Stark at H.R., yes.

16      Q.   He was the head of H.R. at the time?

17      A.   Yes.

18      Q.   Okay.  And do you recall Mr. Stark was conducting the

19 disciplinary investigation into Dr. Alaei from H.R.?

20      A.   Yes, I was aware of that.

21      Q.   So was there subsequently a meeting held by SUNY,

22 Albany on February 9th concerning Dr. Alaei and G.I.H.H.R. and

23 Dr. Alaei's brother?

24      A.   I'm not quite sure of your question.  Could you --

25 because this -- this -- I think this meeting that we're talking

Alaei v SONY - 6/7/2022

1    about here has to do with meeting with the G.I.H.H.R. staff.

2        Q.    Yes.

3        A.    So -- yeah.

4        Q.    So was there a meeting by SUNY personnel, UAlbany

5    personnel with G.I.H.H.R. staff with students on February 9th?

6        A.    I believe so.

7        Q.    Okay.  You recall at some point there was a meeting

8    where SUNY personnel were discussing with staff and students

9    the status of G.I.H.H.R. and Dr. Alaei and his brother?

10       A.    Yeah, it had to do with the leadership of G.I.H.H.R.,

11   yes, yes.

12       Q.    Okay.

13       A.    Yeah.

14              MR. CASTIGLIONE:  And Your Honor, just for the

15         record, there is a notice to admit that Mr. Rotondi

16         referred to yesterday that contains various admissions by

17         the State for statements that were made at the meeting,

18         there's an audio recording of that meeting that was

19         attached.  We don't need to go through that here, but it's

20         part of the record in evidence as judicial admissions.

21              THE COURT:  Well, is the notice to admit marked?

22         Or is it just a pleading in the case?

23              MR. CASTIGLIONE:  Just a pleading.  I mean, if

24         you want, we can mark it and bring it tomorrow.  And I'm

25         not sure -- do we have that?

Alaei v SONY - 6/7/2022

1              THE COURT:  Let's go off the record for a

2        minute, folks.

3                  THE MONITOR:  Sure.

4                  THE COURT:  I'd like you to come up and talk to

5        me for a minute on this issue.

6                  (Off the record, 10:08:58 to 10:13:22)

7                  THE MONITOR:  On the record.

8                  MR. CASTIGLIONE:  Sorry here.  Little sidetrack,

9        Your Honor.

10                 BY MR. CASTIGLIONE:  (Cont'g.)

11       Q.   If I can refer you to exhibit --

12                 THE COURT:  Guilty as charged.

13                 MR. CASTIGLIONE:  I meant mentally for me.

14                 THE COURT:  I mean, I was indicting and

15       convicting myself.

16                 BY MR. CASTIGLIONE:  (Cont'g.)

17       Q.   Dr. Charles, if I can refer you to what's been

18       identified as Claimant's Exhibit Fifteen.  And I'm referring

19       you to this portion of Fifteen which is an email purportedly

20       from you to a number of individuals, dated February 9th, 2018

21       has the subject line of G.I.H.H.R., and it says, title -- or

22       the intro is Dear, G.I.H.H.R. Colleagues and Staff -- excuse

23       me, colleagues and supporters.

24         I'm writing to inform you that effective today, I've named

25       in term.  I've named Dana Refki and Gina Volynsky as intern co-

Alaei v SONY – 6/7/2022

1  directors of the Global Institute for Health and Human Rights

2  at the University of Albany.  Do you recall this email?

3       A.   Yes.

4       Q.   And do you recall why this email was sent?

5       A.   The email was sent to advise the recipients of the

6  change in leadership.  I'll be a temporary given that Dr. Alaei

7  was given an alternate assignment and that assignment was of a

8  temporary nature.

9       Q.   And who -- who were the people that you were sending

10 this email to?  Generally speaking.  You don't have to go

11 through each person.

12      A.   Yeah, I -- I believe that they were members of the

13 advisory board of G.I.H.H.R.

14      Q.   And could you explain to me your understanding of,

15 generally speaking, who the members of the advisory board for

16 G.I.H.H.R. were?

17      A.   Yeah, they were academics and professionals whose

18 work was very much aligned with the activities of G.I.H.H.R.

19      Q.   And if I can refer you to -- where is that?

20           MR. CASTIGLIONE:  Apologize, Your Honor.  Sorry.

21      I'll move on, Your Honor.

22           BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.   As far as you're aware, did anyone ever raise

24 concerns about sending emails to G.I.H.H.R. board members or

25 advisory board members concerning Dr. Alaei's privacy or about

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1  giving the wrong impression concerning what was going on with

2  Dr. Alaei?

3       A.   I don't recall anyone raising such concerns to me.

4       Q.   Did you make the determination to appoint interim co-

5  directors?

6       A.   I did not.

7       Q.   Do you know who did?

8       A.   I -- I can't say definitively, but in light of the

9  fact that the provost has ultimate decision-making

10 responsibilities for directors and leaders within academic

11 affairs.  I would assume that he made that decision, but I

12 don't know.

13      Q.   But ultimately, you didn't have any input?

14      A.   No, I did not.

15      Q.   Okay.

16           THE COURT:  The nature of the question.  Any

17      input into the decision to appoint interim chairs or the

18      decision to appoint specific individuals as.  So which is

19      it?

20           MR. CASTIGLIONE:  I'll clarify.

21           BY MR. CASTIGLIONE:  (Cont'g.)

22      Q.   Did you have any input in the decision to appoint

23 intern directors of G.I.H.H.R.?

24      A.   I did not.

25      Q.   Did you have any input into the selection of who was

Alaei v SONY - 6/7/2022

1    appointed as the intern directors of G.I.H.H.R.?

2        A.    I did not.

3        Q.    Okay.  Did you receive any emails from individuals

4    responding to your email about the appointment of intern

5    directors?

6        A.    I -- I may have.  I can't really remember

7    definitively, but I may have.

8        Q.    Okay.  If I can refer you to Exhibit Fifteen.  If I

9    can refer you to Claimant's Exhibit Fifteen.  There is an email

10   from a David O'Carpenter (phonetic spelling) responding to your

11   February 9th email.

12       A.    Uh-huh.

13       Q.    Would this be the type of email you -- you would

14   receive from people in response to your February 9th email as

15   far as you recall?

16       A.    Yes.  Yes.

17       Q.    Okay.  If I can refer you to Claimant's Exhibit

18   Fifty-one.  This is an email from you to Randy Stark and others

19   concerned -- dated February 9th, 2018.

20                THE COURT:  Slide it down, please?

21                MR. CASTIGLIONE:  Sure.

22                THE COURT:  Okay.

23                BY MR. CASTIGLIONE:  (Cont'g.)

24       Q.    If you could just take a look at this, please?  I

25   don't know.  Do you recall this email?

Alaei v SONY - 6/7/2022

1      A.   Yes.

2      Q.   Okay.  And so in this email, you -- it says, you

3  advise Dr. Alaei he must cut all ties with the university and

4  follow scrupulously the guidelines associated with the

5  alternative assignment.  Did you convey that to Dr. Alaei

6  reflected in this email?

7      A.   I believe I did.

8      Q.   Okay.  Do you recall at some point attending a

9  meeting with H.R. people, Randy Stark, Brian Selchick and Dr.

10  Alaei in early May, identified as an interrogation?

11      A.   Yes.

12      Q.   Okay.  Did you voluntarily go to that interrogation?

13      A.   No, I did not.

14      Q.   Were you told you had to attend the interrogation?

15      A.   Yes, I was told I had to attend.

16      Q.   Have you ever been in a situation like that before

17  where you were told to go to an interrogation for an employee?

18      A.   No, I have not.

19      Q.   Before the interrogation, did anybody from SUNY

20  conducting the investigation concerning Dr. Alaei reach out to

21  you to ask you about any information that might be relevant to

22  that interrogation?

23      A.   I don't recall, so.

24      Q.   Okay.  Dr. Charles, are you aware that there

25  ultimately came a time where Dr. Alaei's employment was

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1  terminated in about August 2018?

2      A.   Yes, I believe so, yes.

3      Q.   Do you recall did anyone consult with you regarding

4  the determination to terminate Dr. Alaei's employ -- employment

5  before he was terminated?

6      A.   No one consulted with me on this.

7      Q.   Okay.  I can show you Claimant's Exhibit Fifty-four.

8  If you can take a look at what's been introduced in evidence as

9  Claimant's Exhibit Fifty-four.  And then there is a subsequent

10  page.  Do you recall receiving this document from human

11  resources?

12      A.   Could you -- could you turn to the next page to see

13  if I signed it?

14      Q.   Sure.

15      A.   Because I -- yeah.  So there is no signature from me.

16  So I -- I cannot recall whether it was sent to me or not.

17      Q.   Okay.  In this form, it says, current term ends

18  4/30/2019.  Do you have any understanding of what that's

19  referring to, this term appointment renewal notice reminder

20  that was sent to you?

21      A.   Well, first, I -- I don't know that it was sent to

22  me.  But to get to your question, I -- I -- I -- I don't know

23  the significance of this date other than it may represent the

24  end of his -- the end of the contract that he signed the

25  previous year.

Alaei v SONY – 6/7/2022

1      Q.    Okay.  Actually, if I can ask you.  You're familiar

2  with Arash Alaei?

3      A.    Yes.

4      Q.    Arash Alaei, when he was part of G.I.H.H.R. in 2017,

5  were you his supervisor?

6      A.    Yes.

7      Q.    Okay.  If Arash Alaei was on alternative assignment

8  in 2018, would he be reporting to you?

9      A.    He would have been reporting to me, yes.

10     Q.    Okay.

11              MR. CASTIGLIONE:  No more questions, Your Honor.

12              THE COURT:  Cross examination.

13              MR. ROTONDI:  Just real briefly, Your Honor.

14       Can I remain at the table?

15              THE COURT:  Yeah, that -- that can be a standing

16       order.  You don't need to ask me.

17              MR. ROTONDI:  I just want -- I'm not sure if

18       that was a new thing or not?

19              THE COURT:  Well, it sort of is.

20              CROSS-EXAMINATION BY MR. ROTONDI:

21     Q.    Dr. Charles, you were provided a letter for you to

22  sign indicating you are recommending that Dr. Alaei be non-

23  renewed, correct?

24     A.    Correct.

25     Q.    You did not sign it?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

36

1      A.   That's right.

2      Q.   You -- and you did not feel that you, as a

3  supervisor, you had any reason to non-renew, correct?

4      A.   That's right.

5      Q.   Okay.  Did -- were there any consequences for you at

6  SUNY for not signing that non-renewal recommendation?

7      A.   There were no consequences.

8              THE COURT:  I'm sorry?

9              THE WITNESS:  There were no consequences.

10              MR. ROTONDI:  All right.  That's all I have,

11      Your Honor.

12              RE-DIRECT EXAMINATION BY MR. CASTIGLIONE:

13      Q.   Just to follow-up.  About not signing the -- the non-

14  renewal letter, did the Provost, James Stellar call you at some

15  point and ask you personally to sign it?

16      A.   I don't recall him doing that.

17      Q.   Okay.

18              THE COURT:  Okay.  Dr. Charles, thank you so

19      much for your time.  You can put the mask on before you

20      remove the shield.  Once you put the mask on, take the

21      shield off and you can discard it.  Thank you.  There's a

22      wastepaper basket to your left, I believe, down below.

23      Yup.

24              Okay.  Go in academia, Doctor.  All right.

25      Let's go off the record for a minute.

Alaei v SONY – 6/7/2022

1        (Off the record, 10:29:18 to 10:40:32)

2            THE MONITOR:  On the record.

3            THE COURT:  Mr. Castiglione, please call the

4    Claimant's next witness?

5            MR. CASTIGLIONE:  The Claimant calls Fardin

6    Sanai.

7            THE COURT:  Mr. Sanai, please come forward and

8    remain standing in the witness box.  Keep the mask on.

9    Please before you take your mask off, can you put on one

10   of the plastic face shield.  Yup.  And now you can take

11   your mask off and remain standing to be sworn.

12           THE MONITOR:  Raise your right hand.  Do you

13   solemnly swear the testimony you're about to give is the

14   truth, the whole truth, nothing but the truth, so help you

15   God?

16           MR. SANAI:  Yes, I do.

17           WITNESS; FARDIN SANAI; Sworn

18           THE MONITOR:  Be seated.  State and spell your

19   name for the record?

20           THE COURT:  Keep your voice up, please?  That

21   does not amplify your voice, it just records the voice.

22           THE WITNESS:  Okay.  My name is Fardin Sanai.

23   First name is F-A-R-D-I-N and the last name is S-A-N-A-I.

24           THE COURT:  Thank you, sir.

25           THE WITNESS:  Thank you.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/7/2022

1           MR. CASTIGLIONE:  Your witness, Mr. Castiglione.

2           MR. CASTIGLIONE:  Thank you, Your Honor.

3           DIRECT EXAMINATION BY MR. CASTIGLIONE:

4      Q.   Good morning, Mr. Sanai.  Is it Dr. Sanai or --?

5      A.   Just Mr. Sanai.

6      Q.   All right.  Okay.  I just -- there's so many people

7  coming in.  I -- I want to make sure I get it right.

8      A.   That's okay.

9      Q.   Can you explain to me your current employment

10 position?

11     A.   I'm the Vice President of University Advancement and

12 Executive Director of University at Albany Foundation.

13     Q.   And --.

14          THE COURT:  And how long have you been in that

15     position?

16          THE WITNESS:  Fifteen years, sir.

17          THE COURT:  In that very position?

18          THE WITNESS:  Yes, fifteen years.

19          THE COURT:  What are your responsibilities, job

20     responsibilities?

21          THE WITNESS:  I oversee fundraising and alumni

22     engagement at the university.

23          THE COURT:  Overall fundraising?

24          THE WITNESS:  Yes, overall fundraising for the

25     State University of New York at Albany.

Alaei v SONY – 6/7/2022

```
 1              THE COURT:  You're the one who sends me all
 2        those emails?
 3              THE WITNESS:  Yes, and I appreciate your
 4        support.
 5              BY MR. CASTIGLIONE:  (Cont'g.)
 6        Q.   And you held that position in -- those positions in
 7   2018?
 8        A.   Yes, I -- I did.
 9        Q.   Okay.  You just mentioned the UAlbany foundation.
10   During your time with UAlbany Foundation, did the foundation
11   give Dr. Alaei any particular awards?
12        A.   Yes, the university did.
13        Q.   Yes.  Was one the Citizenship Award?
14        A.    It's called a citizen of the university award that is
15   awarded through the president's office to a non-alumni
16   individual who has contributed above and beyond the call of
17   duty for the advancement of the university.
18        Q.   And do you recall when that award was given?
19        A.   I beg your pardon?
20        Q.   Do you recall when that award was given?
21        A.   2016, I'm not sure about the timing.
22        Q.   Okay.  Were you on the Board of Directors of the
23   Global Institute of Health and Human Rights?
24        A.   Yes, sir.
25        Q.   Okay.  Were you on the Board of Directors as of 2018?
```

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1      A.   Yes.

2      Q.   Okay.  Do you recall a time where it was announced

3  that two intern directors had been appointed to G.I.H.H.R. in

4  about February 2018?

5      A.   Yes, sir.

6      Q.   Did anybody consult with the Board of Directors in

7  making the decision to appoint interim directors?

8      A.   Not to the best of my knowledge, no.

9      Q.   Are you aware of whether anybody consulted with the -

10  - the G.I.H.H.R. Board of Directors before selecting the

11  specific two individuals to be intern directors?

12      A.   No.

13      Q.   Can you explain to me generally the type of people

14  that held the position of a board -- member of the Board of

15  Directors for G.I.H.H.R., what their qualifications were?

16      A.   Yeah, the board was established to advance the causes

17  that supported Global Health and Human Rights, and these were

18  individuals with international and national reputation for

19  advancement of human rights, not just in the United States, all

20  over the world.  And we use this board as our conduit for

21  fundraising and increasing the profile of the center.

22      Q.   Okay.  And generally speaking, board -- if you were

23  on the Board of Directors, were you required to have an

24  affiliation with University at Albany?

25      A.   No, we had board members from Harvard University,

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/7/2022

41

```
 1   Yale and Doctors without Borders and it wasn't just University
 2   at Albany.
 3       Q.   I'm sorry.  Are you referring to the advisory board
 4   for the G.I. --?
 5       A.   Yeah, advisory board, yeah.
 6       Q.   Okay.  So the advisory board was com -- comprised of
 7   people from all over the globe?
 8       A.   Yes.
 9       Q.   And people from Hopkins, Harvard, Yale?
10       A.   Yes.
11       Q.   Okay.  Was the President of Albany Law School one of
12   the members?
13       A.   Yes, yes.
14       Q.   Okay.  And for the --?
15               THE COURT:  I believe it's (unintelligible)
16               MR. CASTIGLIONE:  I believe it's the dean of
17       Albany Law School.
18               THE WITNESS:  Dean and president.  Alicia is
19       Dean and the president.  They changed the title when
20       former dean came.
21               THE COURT:  Dean Rulette (phonetic spelling)?
22               THE WITNESS:  Rulette, yeah, yeah.
23               THE COURT:  Go ahead, Counsel.
24               MR. CASTIGLIONE:  Thank you, Your Honor.
25               BY MR. CASTIGLIONE:  (Cont'g.)
```

Alaei v SONY – 6/7/2022

1      Q.   But the -- the Board of Directors members, not the

2   advisory board, were those people generally affiliated with --

3      A.   Yes.

4      Q.   -- Albany?

5      A.   Yes.

6      Q.   Okay.  Did you work with Dr. Alaei over time while he

7   was at SUNY, Albany?

8      A.   Yes.  As I said, my responsibility is raising

9   dollars, private philanthropic dollars, and we worked with Dr.

10  Alaei to raise philanthropic support for G.I.H.H.R.

11     Q.   Okay.  And as a board member for G.I.H.H.R., that

12  included overseeing work by Dr. Alaei?

13     A.   Yes.

14     Q.   And did you have any opinion of the quality of Dr.

15  Alaei's work based on your personal observations and -- and

16  involvement with Dr. Alaei?

17     A.   It was excellent work.

18     Q.   Okay.  What about as to fundraising efforts for

19  G.I.H.H.R. overtime.  How would you qualify those -- those

20  efforts by Dr. Alaei?

21     A.   Dr. Alaei was one of the most effective fundraisers,

22  one of the best faculty that we had to work with.

23     Q.   Okay.  Are you aware at some point Dr. Alaei's

24  employment was non-renewed?

25     A.   Yes.

Alaei v SONY - 6/7/2022

1    Q.   Would you have agreed to non-renewed Dr. Alaei's

2   employment?

3                    MR. ROTONDI:  Objection, You Honor.  Just

4        opinion.  He's not part of the non-renewal process.

5                    MR. CASTIGLIONE:  He is part of the -- he was

6        part the Board of Directors for G.I.H.H.R., Your Honor.

7                    MR. ROTONDI:  There's no found -- there's no

8        foundation to suggest that the Board of Directors appoints

9        the director.

10                    THE COURT:  I'll overrule the objection.  You

11        can answer the question.

12                    THE WITNESS:  I can answer it?

13    A.   I would have renewed him, yes.

14                    MR. CASTIGLIONE:  Okay.

15                    BY MR. CASTIGLIONE:  (Cont'g.)

16    Q.   Were you familiar at some point in time -- or strike

17   that, Your Honor.  Were you aware at some point in time there

18   was an investigation started concerning Dr. Kamiar Alaei in

19   about February 2018?

20    A.   Not officially, but on hearsay, yes.  I am

21   (unintelligible) alert.

22    Q.   Do you recall having a conversation with Jordan Carlo

23   Evangelist at some point who informed you that there was an

24   accusation of sexual harassment by students against one of our

25   faculty member, and then at that point, he told you who the

Alaei v SONY - 6/7/2022

44

1  faculty member was?

2      A.    Yes, at the time, I oversaw Marketing and

3  Communications at the University.  So anything that related to

4  the reputation of the University and affected communication, I

5  was brought up to date.  And I, our spokesperson, Jordan, let

6  me know that this was happening.

7      Q.    So he conveyed to you that there was an allegation of

8  sexual harassment by a student against Dr. Alaei?

9      A.    Yes.

10     Q.    Okay.  Do you recall receiving -- or strike that.  Do

11 you recall having any discussions with students overtime during

12 the investigation of Dr. Alaei concerning the process SUNY was

13 employing in its investigation of Dr. Alaei?

14     A.    With students?

15     Q.    Yes.

16     A.    We received -- I received a number of emails from

17 concerned students and interns, but I did not respond to any of

18 it.

19     Q.    Okay.  What about staff, did you have similar

20 discussions or conversations, I'll say?

21     A.    Again, there was many conversations with the staff,

22 but I would not call it a conversation.  It was just hearsay

23 and given it was Title IX, I just could not comment on it as a

24 university official.

25     Q.    Understood.  Do you recall attending any cultural

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1  events held by Dr. Alaei outside of the university?

2      A.   Yeah, I've attended a number of events, yes.

3      Q.   Okay.  Do you -- did you have an understanding of Dr.

4  Alaei's reputation in the local Persian community at the time

5  before February 2018?

6      A.   Yes, Dr. Alaei is a known figure  nationally and

7  internationally.  I knew of him, yes, before even meeting him.

8      Q.   Okay.  And -- and are you aware of whether that

9  status had changed after the investigation by SUNY, Albany?

10             MR. ROTONDI:  Objection, Your Honor.

11             THE COURT:  Well, now we're into the character

12      evidence in -- in -- it's a very narrow, permissiveness --

13      permissiveness.  I'm going to allow it, Counsel.

14      Overruled.  Go ahead.

15             THE WITNESS:  Yes, number of individuals

16      contacted me asking me to (unintelligible) raped woman at

17      a hotel in Beirut.

18             MR. CASTIGLIONE:  Okay.

19             THE COURT:  I'm sorry.  And I don't mean to --

20      did you -- would you repeat what you just said?

21             THE WITNESS:  Yes, number of individuals from

22      the Iranian community contacted me, wanted to know if it

23      was accurate that Dr. Alaei raped a student in a hotel in

24      Beirut.

25             THE COURT:  Okay.

Alaei v SONY - 6/7/2022

 1                    THE WITNESS:  But then again, this was rumors.

 2                    THE COURT:  Okay.  Go ahead, Counsel.  That's

 3        fine.  Thank you.  Go ahead, Counsel.

 4                    MR. CASTIGLIONE:  Thank you.

 5                    BY MR. CASTIGLIONE:  (Cont'g.)

 6        Q.   And did you ever -- were you ever told how these

 7    individuals were getting their information?

 8                    THE COURT:  No, Counsel, no.

 9                    MR. CASTIGLIONE:  Okay.

10                    THE COURT:  You're saying on hearsay, no.

11                    MR. CASTIGLIONE:  I just meant the source, but -

12        -.

13                    THE COURT:  No.

14                    BY MR. CASTIGLIONE:  (Cont'g.)

15        Q.   Let me ask you.  Were you -- you were familiar.  Did

16    you interact with Dr. Alaei before the investigation started?

17        A.   Yes.

18        Q.   And did you -- can you explain to me your

19    observations about Dr. Alaei's personality and attitude

20    generally before the investigation started?

21                    MR. ROTONDI:  Objection, Your Honor.

22                    THE COURT:  Counsel, to the extent that I think

23        Claimant's counsel was trying to make a point about the

24        emotional effect that had upon the witness, and if this --

25        upon the Claimant.  And if this witness is competent to

1          testify about his observations of the Claimant's ethics

2          before and after, I'm going to permit it.  So overruled.

3          Go ahead.

4                    Ask the question again.

5                    MR. CASTIGLIONE:  Sure.

6                    BY MR. CASTIGLIONE:  (Cont'g.)

7          Q.   Can you explain to me your observations regarding Dr.

8     Alaei's overall -- the words just left.

9                    THE COURT:  Demeanor?

10                   BY MR. CASTIGLIONE:  (Cont'g.)

11         Q.   Yes, overall demeanor and attitude and -- and

12    personality before the investigation began, concerning him in -

13    - in 2018?

14         A.   He was an amazing partner.  He had a great attitude.

15    It was an honor to work with him and I took Dr. Alaei to a

16    number of visits and comf -- and talks to donors who were not

17    even related to G.I.H.H.R. to just promote the university and

18    what we were doing in this space of human rights.

19         Q.   In your observations, was he generally an upbeat

20    happy person?

21         A.   Oh, yeah, yeah.

22         Q.   Okay.  Can you explain -- did you have any

23    observations regarding interactions with Dr. Alaei after the

24    investigation started in 2018?

25         A.   I just had one.  Actually, he called me after he was

Alaei v SONY - 6/7/2022

48

1    told he was dismissed and was very dazed and confused.  And I

2    told him, don't -- don't worry and we'll do an investigation.

3    You see University you'll be fine.

4          Q.   And do you -- do you recall his general attitude and

5    demeanor at that point?  Was it different than from when you

6    first -- before the investigation?

7                    THE COURT:  No, we're talking about the one-time

8          call?

9                    THE WITNESS:  No, actually I called him, again,

10         I believe it was in 2019 or '18 after I thought he was --

11         the case was dismissed, and he was gone.  I just overheard

12         that he was not doing well.  I called him to check up on

13         him and he -- I was very concerned about his well-being

14         and I thought he was -- he was suffering from depression.

15         And I --.

16                   THE COURT:  That's good.  Next question.

17                   THE WITNESS:  Sure.

18                   MR. CASTIGLIONE:  I'm sorry, Your Honor.

19                   BY MR. CASTIGLIONE:  (Cont'g.)

20         Q.   Is it your then assessment that Dr. Alaei standing in

21    the Persian community was otherwise negatively impacted based

22    upon the investigation by SUNY, Albany?

23                   THE COURT:  No, not an opinion whether or not he

24         had specific observations related there to, Counsel.

25                   BY MR. CASTIGLIONE:  (Cont'g.)

1    Q.    Did you have specific observations regarding Dr.

2  Alaei, he's standing and reputation in the Persian community

3  after SUNY Albany initiating and conducting its investigation

4  and actions being negatively impacted?

5    A.    Yes.

6    Q.    Okay.

7            MR. CASTIGLIONE:  Thank you, Your Honor.

8            THE COURT:  Okay.  Cross examination?

9            MR. ROTONDI:  No questions, Your Honor.

10           THE COURT:  Okay, Mr. Sanai -- Dr. Sanai, if, in

11       fact, you are a doctor?

12           THE WITNESS:  No, I'm not a doctor, please.

13           THE COURT:  Okay.

14           THE WITNESS:  I don't want to get in trouble

15       with the president, yeah.

16           THE COURT:  So -- yes.  Very good.  Well, thank

17       you for your time.

18           THE WITNESS:  All right.

19           THE COURT:  Please put your mask on first and

20       then you can discard the -- the face shield into the

21       wastebin next to you.  And thank you for your time.

22           THE WITNESS:  Thank you.  Just put it in the

23       trash here?

24           THE COURT:  Yup.  Okay.  Off the record.  Okay,

25       you're free to go, sir.

Alaei v SONY – 6/7/2022

1            THE WITNESS:  Thank you, sir.

2            THE COURT:  Thank you.

3            (Off the record, 10:56:09 to 11:33:09)

4            THE MONITOR:  On the record.

5            THE COURT:  Okay.  Counsel, testimony.  Please

6     call your next witness.

7            MR. CASTIGLIONE:  The Claimant calls Randy

8     Stark.

9            THE COURT:  Okay.  Right up here, Mr. Stark.

10    Over here.  You have a mask?

11           MR. STARK:  Yes, I do.

12           THE COURT:  Please put it on.  This way, sir.

13    That way.  Yup.  Come on up here to the stand and remain

14    standing.  Keep your mask on for right now.

15           MR. STARK:  Okay.

16           THE COURT:  You have a plastic shield behind,

17    could you put that over?  Okay.  You take the -- the mask

18    off now.  And you're going to be sworn.  So raise your

19    right hand, please?

20           THE MONITOR:  Raise your right hand.

21            Do you solemnly swear the testimony you're

22    about to give is the truth, the whole truth and nothing

23    but the truth, so help you God?

24           MR. STARK:  I do, yes.

25           WITNESS; RANDY STARK; Sworn

Alaei v SONY - 6/7/2022

```
 1              THE MONITOR:  Be seated.  State and spell your
 2       name for the record.
 3              THE WITNESS:  Randy L. Stark, R-A-N-D-Y S-T-A-R-
 4       K.
 5              THE COURT:  Okay.  Welcome, Mr. Stark.  Mr.
 6       Castiglione.
 7              DIRECT EXAMINATION BY MR. CASTIGLIONE:
 8       Q.   Good morning, Mr. Stark, and thank you for coming
 9   down on short notice.  Can you explain to me, were you employed
10   in February 2018?
11       A.   Yes.
12       Q.   Okay.  What was your position and where were you
13   employed?
14       A.   I was the Associate Vice President for Human
15   Resources at the University at Albany.
16       Q.   Okay.  And -- and can you explain to me your general
17   job functions and duties at that time?
18       A.   I was responsible for the entire H.R. function which
19   included compensation, benefits, processing of H.R. paperwork,
20   employee relations and labor relations.
21       Q.   Okay.  So when you say involved (unintelligible), if
22   somebody had an issue concerning their salary, if they were not
23   being paid the full amount, would that go to H.R.?
24       A.   Yes, it would.
25       Q.   Same thing.  If they weren't receiving benefits,
```

Alaei v SONY - 6/7/2022

52

1  insurance, some other benefit, it would go to H.R.?

2      A.   That's correct.

3      Q.   Okay.

4           THE COURT:  So did you say you were the head of

5      the H.R. Department?

6           THE WITNESS:  Yes.

7           THE COURT:  And how many people were in the H.R.

8      Department?

9           THE WITNESS:  At that time, I believe we had

10     thirty-three people.

11          THE COURT:  Thirty-three?

12          THE WITNESS:  Yes.

13          THE COURT:  Counsel.

14          MR. CASTIGLIONE:  Thank you, Your Honor.

15          THE COURT:  This is H.R. for SUNY, Albany?

16          THE WITNESS:  Correct.

17          BY MR. CASTIGLIONE:  (Cont'g.)

18     Q.   Do you recall -- strike that.  I apologize.  If I can

19  refer you to what's been identified as Claimant's Exhibit

20  Eight.  Please take a quick look at this.  It's up on your

21  screen in front of you.

22     A.   I don't have my glasses on here.  Okay.

23          THE COURT:  Can you show him the

24     (unintelligible) to this?

25          MR. CASTIGLIONE:  Here is the full page and then

Alaei v SONY - 6/7/2022

53

```
 1        here is --.

 2                THE COURT:  Your signature is --?

 3                THE WITNESS:  Yes.

 4                THE COURT:  Go ahead, Counsel.

 5                BY MR. CASTIGLIONE:  (Cont'g.)

 6     Q.   Are you familiar with this document?

 7     A.   Yes, I am.

 8     Q.   Is this document -- is it fair to say the -- the

 9  letter from SUNY Albany Human Resources advising Dr. Alaei he's

10  being put on alternative assignment?

11     A.   That's correct.

12     Q.   And that it was due in part because there was a

13  disciplinary investigation being conducted?

14     A.   Yes.

15     Q.   Okay.  Did you work with Brian Selchick from Human

16  Resources or I'll say H.R. as part of undertaking that

17  disciplinary investigation?

18     A.   Yes, I did.

19     Q.   Okay.

20                THE COURT:  Is he a subordinate of yours?

21                THE WITNESS:  Yes, he was.

22                THE COURT:  Okay.

23                BY MR. CASTIGLIONE:  (Cont'g.)

24     Q.   And are you familiar with what's identified as the

25  United University Professions Agreement, agreement between
```

Alaei v SONY – 6/7/2022

54

1  United University professions in the State of New York?  And

2  I'll hold that up on the screen in a second, if I can find it.

3  Five.

4            THE COURT:  You're familiar with that agreement,

5      sir?

6            THE WITNESS:  Yes, I am.

7            BY MR. CASTIGLIONE:  (Cont'g.)

8      Q.  And I apologize.  I'm not going to ask you, you know,

9  verbatim about this.  But this  appears to be the agreement

10  that was in effect in February 2018 as far as you can recall?

11            THE MONITOR:  We see the -- the date on?

12            THE COURT:  It's the one that goes through 2016.

13      What exhibit is it?

14            MR. CASTIGLIONE:  This is Exhibit Five.

15            THE COURT:  Okay.

16            BY MR. CASTIGLIONE:  (Cont'g.)

17      Q.  And I can ask, do you recall in 2018 whether the July

18  2nd, 2011 to July 1st, 2016 U.U.P. agreement was still in

19  effect in 2018?

20      A.  I don't recall.  I believe that the contracts are

21  still being negotiated.  And as the contract is being

22  negotiated, I believe that this one continued on until the

23  contract was negotiated.  I believe that was the situation.

24            MR. CASTIGLIONE:  And -- and just to confirm

25      with counsel, that's your understand --  I mean, there's -

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

55

1        - there's not a dispute, that it --?

2                    MR. ROTONDI:  I don't know.

3                    MR. CASTIGLIONE:  Okay.

4                    THE COURT:  This is not under oath.

5                    MR. CASTIGLIONE:  I wasn't sure if they were

6        stipulating or --.

7                    THE COURT:  Never.

8                    BY MR. CASTIGLIONE:  (Cont'g.)

9        Q.   But as far as you recall, then it -- this was most

10   likely the one in effect because there had been no other

11   negotiated agreement at the time?

12       A.   I believe so.

13       Q.   Okay.

14                   THE COURT:  Let's go off the record for a

15       moment.

16                   (Off the record, 11:39:03 to 11:39:37)

17                   THE MONITOR:  On the record.

18                   BY MR. CASTIGLIONE:  (Cont'g.)

19       Q.   As part of your role in undertaking the investigation

20   concerning Dr. Alaei, was it also to determine if there were

21   violations of the U.U.P. as part of the investigation?

22       A.   Yes.

23       Q.   Okay.  So you were familiar with the version of the

24   U.U.P. agreement in effect at the time?

25                   MR. ROTONDI:  Of 2018.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

```
 1              BY MR. CASTIGLIONE:   (Cont'g.)

 2       Q.   In 2018, yes.

 3       A.   Familiar with it.  But obviously not word for word.

 4       Q.   Sure.

 5       A.   Of the specifics.

 6       Q.   That's understandable.  At the time that you were

 7  undertaking the disciplinary investigation through H.R., was

 8  there another investigation being done by U Albany's Title Nine

 9  office?

10       A.   Yes.

11       Q.   For those two investigations, do you recall what the

12  primary issues of concern being investigated were?

13       A.   I believe they had to do with a hostile work

14  environment, sexual in nature.

15       Q.   Was there -- was there anything related involving the

16  structural funding of the Global Institute of Health and Human

17  Rights, which I'll refer to as G.I.H.H.R.?

18       A.   The funding and structure of it?

19       Q.   Yes.

20       A.   I recall, there was a question with regards to the

21  funds.

22       Q.   And was there also an issue related to Arash Alaei

23  and his involvement with G.I.H.H.R.?

24       A.   I believe so.

25       Q.   Okay.  Do you recall any other major topics besides
```

Alaei v SONY - 6/7/2022

1  those three?

2              THE COURT:  More specific questions, please.

3              BY MR. CASTIGLIONE:  (Cont'g.)

4     Q.   Do you recall if there were any other main topics

5  that were being investigated besides the three we just went

6  through?

7              THE COURT:  At that time?

8              BY MR. CASTIGLIONE:  (Cont'g.)

9     Q.   At that time?

10    A.   Not that I recall.

11    Q.   Okay.  Human Resources ultimately determined that the

12  allegations and issues being investigated by University at

13  Albany concerning Dr. Alaei and Kamiar Alaei were unfounded and

14  there were no violations of policy.  Is that fair to say?

15    A.   That's correct, to our investigation.  And the H.R.

16  investigation, yes.

17    Q.   And ultimately H.R. determined there were no grounds

18  to impose discipline?

19    A.   That's correct.

20    Q.   If I can refer you to -- referring you to Claimant's

21  Exhibit Thirty-nine.  This is introduced into evidence.  This

22  is an email purportedly from you to another individual dated

23  July 6th, 2018.  The email says I've attached a counseling that

24  we worked on for Kamiar Alaei, it was a struggle writing it as

25  there wasn't really anything to counsel him on since the sexual

Alaei v SONY – 6/7/2022

1  misconduct allegations were unfounded.

2       We planned to give him policies on sexual harassment,

3  workplace violence, et cetera.  But for what purpose, as we are

4  going to non-renew him and buy him out after discussing the

5  question, does it really serve any purpose to issue this memo

6  other than it gives K.A. and his attorney more info for their

7  war chest.

8       We are now thinking that we do not issue the memo unless

9  there's some value to having issued it.  Do you recall writing

10 this email?

11      A.   Yes.

12      Q.   Do you recall -- if I can refer you to Claimant's

13 Exhibit Forty, which is in evidence.

14               THE COURT:  What was the date of that email?

15               MR. CASTIGLIONE:  That email was dated July 6th,

16      2018.

17               BY MR. CASTIGLIONE:  (Cont'g.)

18      Q.   If I can refer you to Claimant's Exhibit Forty,

19 specifically, which is introduced into evidence, specifically

20 an email from Valerie Ayers to you, dated July 9th, 2018.  Ms.

21 Ayers responds, I agree that you need to wrap it up.  I am at

22 an arbitration today and tomorrow but we can talk Wednesday,

23 there has to be something you can get out of the student's

24 complaint.  Do you recall receiving that email from Ms. Ayers?

25      A.   It's addressed to me, I'm pretty sure I read it.

1    Q.   Okay.

2                THE COURT:  Who's Valerie Ayers?

3                THE WITNESS:  She's counsel for SUNY system,

4    entire SUNY.

5                THE COURT:  All of the SUNY system?

6                THE WITNESS:  All of the SUNY system.

7                BY MR. CASTIGLIONE:  (Cont'g.)

8    Q.   Ms. Ayers there refers --

9                THE COURT:  This is Exhibit Forty?

10               MR. CASTIGLIONE:  This is Exhibit Forty, Your

11   Honor.

12               THE COURT:  Okay.

13               BY MR. CASTIGLIONE:  (Cont'g.)

14   Q.   Ms. Ayers refers to a student's complaint.  Do you

15   recall whether or not there was actually a complaint by any

16   student formally or informally?

17   A.   I'm not aware of anything nor did I recall ever

18   having read anything.

19   Q.   Okay.  If I can refer you to Claimant's Exhibit

20   Forty-one, which is in evidence, email from Brian Selchick,

21   you're C.C.'ed on it, or somebody to Tricia George dated July

22   9th.  It says, in part, do you happen to know if blank filed an

23   informal or formal complaint against K.A. per Title Nine or

24   university policy.  Can you let us know if it is one or the

25   other or neither?  Thanks.

1    And the response being, Brian, I don't see any record of

2    an informal or formal complaint filed by blank.  And then

3    Brian, following up to others saying no record of formal or

4    informal complaint.  Does that refresh your recollection about

5    whether there's a complaint or not filed?

6       A.   Yes.

7       Q.   So there was no formal or informal complaint?

8       A.   That's correct.

9            THE COURT:  It is still unclear, Mr. Stark, can

10           you answer that question, no formal or informal complaint,

11           student complaint, was that within the confines of the

12           Title Nine investigation or the H.R. investigation or

13           both?

14           THE WITNESS:  We found nothing on the H.R.

15           investigation.  Because we would interview any of the

16           students is (unintelligible) because it is a student

17           complaint is my understanding.  And those names were

18           provided to us by the Title Nine office.  And during our

19           interviews with any of the students, if there were other

20           people named, names that were brought up in our

21           investigation, we would invite them in to discuss it with

22           them.

23           So to answer your question, from an H.R.

24           standpoint -- I'm not sure if I'm answering your question.

25           Can you repeat that I'm sorry?

1          THE COURT:  The intention is just directed to

2     Exhibit Forty-one, in which you testified to no formal or

3     informal student complaint, having been lodged.  Were you

4     specifically referring to the Title Nine investigation in

5     these -- in this email?

6          THE WITNESS:  I believe it would have been for

7     Title Nine and for H.R. because Tricia George is from the

8     Title Nine office and she was responding from -- from the

9     Title Nine office standpoint.

10          THE COURT:  Okay.  Thanks.

11          MR. CASTIGLIONE:  Thank you, Your Honor.

12          BY MR. CASTIGLIONE:  (Cont'g.)

13     Q.   Do you recall did your office or anybody at SUNY

14 Albany as far as you're aware, advise G.I.H.H.R. board members

15 or advisory board members of SUNY's determination regarding

16 this investigation?

17          THE COURT:  Repeat the question, please.

18          MR. CASTIGLIONE:  Sure.

19          BY MR. CASTIGLIONE:  (Cont'g.)

20     Q.   Do you recall your office ever advising anybody on

21 the G.I.H.H.R. board of directors or advisory board about the

22 ultimate findings from the investigation concerning Dr. Alaei?

23     A.   I recall no communication with G.I.H.H.R. board.

24     Q.   Okay.  Did you ultimately convey your determination

25 that there were no violations of policy or no grounds for

1  imposing discipline and that allegations were unfounded to the

2  provost office?

3      A.   Yes.

4      Q.   Did you also advise the president's office of the

5  same through Bruce Szelest?

6      A.   Yes.

7      Q.   Would that have been in about July 2018?

8      A.   That sounds -- that sounds about right.

9      Q.   Okay.  Before the February 2018 investigation, during

10  - during, excuse me, concerning Kamiar Alaei you involved --

11  you have been involved with three or four disciplinary

12  investigations at that point.  Is that correct?

13      A.   I believe so, yes.

14      Q.   Okay.

15              THE COURT:  Of any nature?

16              MR. CASTIGLIONE:  Any disciplinary

17      investigations.

18              THE COURT:  Not relative to this person?

19              MR. CASTIGLIONE:  No, other disciplinary

20      investigation.

21              BY MR. CASTIGLIONE:  (Cont'g.)

22      Q.   So in other words, your experience at that point was

23  you've dealt with three or four disciplinary investigations?

24      A.   Yeah, yes, we had, we obviously had issues, other

25  issues that we would have to, you know, follow-up on

Alaei v SONY - 6/7/2022

```
 1  complaints, but no investigation to this magnitude.

 2      Q.   When you say investigation to this magnitude, were

 3  there a number of people, a large number of people interviewed

 4  as part of the investigation concerning Dr. Alaei?

 5               THE COURT:  Say again.

 6               BY MR. CASTIGLIONE:  (Cont'g.)

 7      Q.   Were there -- was there a significant number of

 8  people interviewed as part of the investigation concerning Dr.

 9  Alaei?

10      A.   Yes.

11      Q.   When -- when you say significant, would it be about

12  forty?

13      A.   I would say so.

14      Q.   Okay.

15      A.   Yes.

16      Q.   Were you at some point directed to remove Dr. Alaei's

17  access keys and card access to SUNY buildings by Provost

18  Stellar and Bruce Szelest?

19      A.   Yes, I was.

20      Q.   Was that near the outset of the investigation on

21  February 8th, 2018?

22      A.   Yes.

23      Q.   Okay.  Do you recall a SUNY -- excuse me, University

24  of Albany, preventing Dr. Alaei from accessing his SUNY email

25  account?
```

1    A.    Yes, we cut off his access to SUNY email.

2    Q.    And were you directed to do that by the president

3  that Dr. Alaei not have access to his email account?

4    A.    Yes, it was.

5    Q.    Okay.

6              THE COURT:  Who is the president?

7              MR. CASTIGLIONE:  Who's the president -- sorry,

8       go ahead.

9              THE COURT:  Who?

10             THE WITNESS:  Havidan Rodriguez's the president.

11             BY MR. CASTIGLIONE:  (Cont'g.)

12   Q.    The president never explained to you why he issued

13  that directive.  Is that correct?

14   A.    No, just wanted it cut off.

15   Q.    And cutting off email for a person on alternative

16  assignment for disciplinary investigation was not common at

17  that point.  Is that fair to say?

18   A.    Yes, it is.

19   Q.    Okay.  Were any concerns ever raised with you at the

20  time that Dr. Alaei was using his email properly -- improperly

21  or violating any SUNY Albany policies?

22   A.    I was not aware of any improprieties.

23   Q.    Okay.  You had said that earlier it was part of your

24  role to determine whether violations in the U.U.P. agreement in

25  undertaking the investigation.  Based on your work and efforts,

Alaei v SONY - 6/7/2022

 1  was it consistent with the U.U.P. to remove Dr. Alaei's email

 2  access?

 3       A.   No, it wasn't.

 4       Q.   And was that essentially a form of disciplinary -- or

 5  disciplinary action?

 6       A.   Yes, removing, yes, removing email address and an

 7  alternate assignment would be considered a form of discipline.

 8       Q.   Okay.  But obviously, there was no finding in the

 9  investigation at the time his email had been removed?

10       A.   That's correct.

11       Q.   Okay.  Do you recall in your experience with other

12  investigations and alternative assignments previously removing

13  an employee's reference or information from a SUNY Albany

14  website?

15       A.   No, I don't recall.

16       Q.   Do you recall Dr. Alaei here being told not to attend

17  speaking engagements or lectures and representing himself as

18  employed by SUNY Albany or as a representative of SUNY Albany?

19       A.   I believe so.

20       Q.   And that was -- do you recall that issue having been

21  raised in prior investigations or other matters or other

22  employees?

23            THE COURT:  Were you aware of -- did you have

24       much experience in other matters prior to this matter, in

25       which people receive alternative assignments?

**Associated Reporters Int'l., Inc.   518-465-8029**

1             THE WITNESS:  Yes.

2             THE COURT:  Could -- in the previous five years

3       to be -- quantified that prior to 2018?

4             THE WITNESS:  The number of people who may have

5       had alternative assignments, maybe --.

6             THE COURT:  If you can't, you can't.

7             THE WITNESS:  Yeah, I --.

8             THE COURT:  Just try to get a ballpark.

9             THE WITNESS:  I'd be guessing, maybe half a

10      dozen, if that.

11            THE COURT:  Okay.  And there's a common

12      component of the alternative assignment were those people

13      in the prior instances instructed not to represent SUNY

14      Albany.

15            THE WITNESS:  They were not, to my recollection

16      at the level or exposure to the community into, you know,

17      their program.

18            THE COURT:  Understood.  So you are essentially

19      telling this person had more --

20            THE WITNESS:  Correct.

21            THE COURT:  -- community exposure?

22            THE WITNESS:  Correct.

23            THE COURT:  To the earlier people -- than the

24      earlier people.

25            THE WITNESS:  Correct.

1          THE COURT:  Okay.  Go ahead, Counsel.

2          BY MR. CASTIGLIONE:  (Cont'g.)

3     Q.   So directing Dr. Alaei not to go to speaking

4 (unintelligible) identify -- identify himself as an employee of

5 SUNY.  That's not something that had been done to other people

6 in the past on alternative assignments?

7     A.   Not that I recall.

8     Q.   And you were just advising the Judge, the concern was

9 because Dr. Alaei had a more noted community reputation?

10          THE COURT:  Not reputation, I said involvement.

11          BY MR. CASTIGLIONE:  (Cont'g.)

12     Q.   More noted community involvement?

13     A.   That's correct.

14     Q.   Okay.  Directing Dr. Alaei, to -- Alaei, excuse me,

15 to not go to speaking engagements and identify himself as an

16 employee of SUNY, was that within the authority of Human

17 Resources?

18     A.   No.

19     Q.   So there was somebody else who had that authority

20 made that decision?

21     A.   That's correct.

22     Q.   Okay.  In your experience, with prior disciplinary

23 investigations after there was an investigation but a

24 determination of no policy violations or determination not to

25 impose discipline, before Dr. Alaei, it never happened before

1   that the employee was still terminated.  Is that fair?

2                  THE COURT:  I don't understand the question,

3         rephrase.

4                  MR. CASTIGLIONE:  Sure.

5                  BY MR. CASTIGLIONE:  (Cont'g.)

6         Q.   So you've dealt with other investigations where there

7   was an ultimate determination of no policy violations or

8   determination not to impose discipline, correct?

9         A.   Probably.

10                 THE COURT:  Do you recall an instance, I guess,

11        the question counsel is seeking the (unintelligible).  Do

12        you recall prior incidents in which allegations were

13        unfounded and no discipline was imposed where that

14        quotation marks, innocent individual was nevertheless

15        terminated?  Can you recall any such instance?

16                 THE WITNESS:  I believe there was.

17                 THE COURT:  Okay.

18                 THE WITNESS:  I don't recall any specifics, but

19        I believe there was.

20                 THE COURT:  Okay.

21                 BY MR. CASTIGLIONE:  (Cont'g.)

22        Q.   If I can refer you to your deposition transcript page

23   fifty-one.

24                 MR. ROTONDI:  Objection, Your Honor, if he's

25        going to impeach his own witness.

1              THE COURT:  Well, overruled, you can  -- you can

2      refresh --.

3              MR. CASTIGLIONE:  Sure.  Yeah.

4              BY MR. CASTIGLIONE:  (Cont'g.)

5      Q.   If I can refer you to your deposition transcript.  It

6   says in part, let me ask you a follow-up to that last exhibit,

7   the August 10th, 2018 letter.

8        "After there has been a determination of no policy

9   violations or determination not to impose discipline, is it

10  common to terminate that employee," your response, "It hasn't.

11  It did not happen while I was at the University of Albany."

12       Do you recall saying that?

13       A.   If it's in the transcript, I would say that I said

14  it.

15       Q.   Okay.  Relative to the Title Nine investigation, was

16  that being conducted in part by a person named Chantelle

17  Cleary?

18       A.   Yes.

19              THE COURT:  Which investigation, the

20              --

21              MR. CASTIGLIONE:  The Title Nine investigation.

22              THE COURT:  Then that person was heading up that

23      -- was that the question?

24              MR. CASTIGLIONE:  Yes.

25              BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY - 6/7/2022

1      Q.    Do you recall Chantelle Cleary being the primary

2   person dealing with the Title Nine investigation concerning Dr.

3   Alaei?

4      A.    Yes.

5      Q.    Okay.   If I can refer you to Claimant's Exhibit or

6   Proposed Exhibit Thirty.   Claimant's Proposed Exhibit Thirty is

7   a decision issued by the appellate division Third Department

8   dated November 25th, 2020, identified -

9              THE COURT:   Is this in evidence?

10              MR. CASTIGLIONE:   This is -- we had identified

11      it and marked it into evidence.

12              THE COURT:   It's not admitted?

13              MR. ROTONDI:   No.

14              MR. CASTIGLIONE:   No.   I'm just identifying what

15      it is.

16              THE COURT:   Okay.   I get you.

17              MR. CASTIGLIONE:   In the matter of Alexander M,

18      appellant Petitioner V. Chantelle Cleary as former Title

19      Nine coordinator at the State University of New York.

20      It's dated November 25th, 2020.   Your Honor, we'd ask that

21      the Court take judicial notice of this decision pursuant

22      to C.P.L.R. 4511 as a decision of binding law.

23              THE COURT:   (unintelligible).

24              MR. ROTONDI:   Yeah, I'm objecting to this, Your

25      Honor.

**Associated Reporters Int'l., Inc.   518-465-8029**

1          THE COURT:  Let me -- let me see, go ahead, keep

2     talking.  Can I see the exhibit, please?

3          MR. CASTIGLIONE:  Sure.

4          MR. ROTONDI:  There's been subsequent decision

5     which determined that the investigator -- the investigator

6     was unbiased.  But more importantly, it appears that the

7     Claimant would like to impeach --.

8          THE COURT:  Well, here's -- here's my -- my

9     concern, regardless of what the appellate division says

10    here about Alexander M's allegation against Chantelle

11    Cleary and I assume it says something along the lines that

12    Ms. Cleary did bad things --.

13         MR. CASTIGLIONE:  Well, it was findings by the

14    court.

15         THE COURT:  Yes.

16         MR. CASTIGLIONE:  So the court reviewed and made

17    judicial findings about certain actions.

18         THE COURT:  Okay.  My -- and let says an article

19    of faith say, Chantelle Cleary in the matter involving

20    Alexander M acted inappropriately, let's, as an article of

21    faith, say that.  Of what relevance is that to this claim?

22         MR. CASTIGLIONE:  Ms. Cleary, you'll -- there's

23    other evidence showing that Ms. Cleary was -- was clearly

24    biased against my client from the outset.  And --.

25         THE COURT:  Well, that may be well and good, but

1    that evidence isn't yet in front of me and not defending

2    the fact that I could take judicial notice of an early

3    decision involving this person.  I don't think it's

4    relevant to these proceedings.

5              MR. CASTIGLIONE:  Well, the other issue would be

6    the specific allegations and the specific findings by the

7    Third Department about what happened factual behavior.  I

8    would like to ask the witness if they were ever -- if

9    there was any investigation concerning those facts, those

10   actions?

11             THE COURT:  Well, I might allow a limited line

12   of inquiry, but I'm not going to take judicial notice of

13   this and if it's an application to move this into evidence

14   based upon that, it's denied.

15             MR. CASTIGLIONE:  Okay.

16             THE COURT:  Okay.

17             MR. CASTIGLIONE:  Would I be able to read  --

18   ask questions about some issues raised in here?

19             THE COURT:  And then follow it up with what type

20   of question.

21             ME. CASTIGLIONE:  Yes.  Whether they were

22   investigated by SUNY Albany?

23             THE COURT:  I'll allow a limited inquiry to

24   that.

25             MR. ROTONDI:  Your Honor, (unintelligible)

Alaei v SONY – 6/7/2022

1    getting into evidence?

2              THE COURT:  No.

3              MR. ROTONDI:  If it's --.

4              THE COURT:  I think, to the extent that counsel,

5    I believe is attempting to convey to the court as I think

6    he's done in this line of questioning that the traditional

7    handling of a complaint of this claimant was out of the

8    ordinary, I will permit that.  And that's why I am

9    permitting it.  I'm not -- and that's the reason I would

10    permit it, Mr. Rotondi.

11              MR. ROTONDI:  Permit questions based on

12    something that's not in evidence, I'm just confused, it's

13    not admitted into evidence.

14              THE COURT:  Well, he can -- he can refer to it

15    and say, are you -- do you remember that instance and this

16    happened and so on and so forth.  So let's see where the

17    line of inquiry goes.  But the exhibit is not in evidence,

18    ask a series of questions and I'll entertain any objection

19    as they go.

20              MR. CASTIGLIONE:  So I'll just close that book

21    so it's not on the screen.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23    Q.    Do you recall in your time, you were -- strike that.

24    You were head of H.R. for what years?

25    A.    2000 -- October 2015 through May of 2020.

**Associated Reporters Int'l., Inc.    518-465-8029**

1      Q.    Okay.  Do you recall ever -- ever investigating any

2   complaints relative to Chantelle Cleary altering facts that

3   were reported to her as part of her investigation into sexual

4   harassment allegations?

5      A.    No, I'm not aware.

6      Q.    Are you aware of whether SUNY H.R. had ever

7   investigated allegations about Ms. Cleary changing wording of a

8   complaint as part of her report of information reported to her?

9      A.    No, I'm not aware.

10     Q.    Are you aware of whether Ms. Cleary there were ever

11   any complaints against her that were investigated by H.R. where

12   Ms. Cleary was accused of -- strike that.

13     Where Ms. Cleary was acting aggressively raising her voice

14   and physically leaning towards --?

15             THE COURT:  All right.  That's enough, Counsel.

16         We have a situation here where an Article Nine

17         investigation contemporaneously or parallel took place

18         which additionally became unfounded.  So I've heard enough

19         on this line of questioning.

20             MR. CASTIGLIONE:  Okay, Your Honor, thank you.

21             BY MR. CASTIGLIONE:  (Cont'g.)

22     Q.    If I could show you what's been marked as Claimant's

23   Exhibit in evidence Forty-four, which is a letter dated August

24   10, 2018 from you to Dr. Alaei.  Sorry, it's sliding, if you

25   can take a look at that.

1          THE COURT:  Question.

2          BY MR. CASTIGLIONE:  (Cont'g.)

3     Q.   Do you recall this document?

4     A.   Yes.

5     Q.   Okay.  Is it fair to say this document reflects SUNY

6  Albany making -- conveying its determination to terminate Dr.

7  Alaei's appointment effective August 10, 2018?

8     A.   It looks like your salary will be paid for the

9  remainder through August of 2019.  But yes, I believe August

10  10th, would -- would have been the termination date.

11     Q.   Okay.  Were you involved in the determination by

12  University at Albany to terminate Dr. Alaei's appointment as

13  reflected in that letter?

14     A.   No.

15          THE COURT:  (unintelligible).

16          MR. CASTIGLIONE:  Sure.

17          BY MR. CASTIGLIONE:  (Cont'g.)

18     Q.   Did you participate in the merits of discussing the

19  termination of Dr. Alaei's termination as reflected in that

20  letter?

21     A.   The only information that I'm provided is that our

22  investigation found it was unfounded for any -- any claims

23  against him.

24     Q.   So in other words, you didn't provide any input on

25  deciding to terminate Dr. Alaei's employment that decision was

Alaei v SONY - 6/7/2022

1  made by somebody else and conveyed to you?

2      A.   Yes, it was.

3      Q.   Okay.  Were you ever told why the decision was made

4  to terminate Dr. Alaei's employment as reflected in the exhibit

5  in front of you?

6      A.   No, I was not.

7      Q.   Okay.  Do you know who was involved in making the

8  determination to terminate Dr. Alaei's appointment?

9      A.   I don't know all the individuals who may have been

10  involved, that would have been a decision that would have come

11  down through the president's office.

12      Q.   Okay.  Would the Provost, Provost James Stellar been

13  involved in that to your knowledge?

14              THE COURT:  Do you know?

15              THE WITNESS:  I don't know.

16              BY MR. CASTIGLIONE:  (Cont'g.)

17      Q.   Okay.  Do you recall a time where University at

18  Albany had initiated non-renewal for -- non-renewal for Dr.

19  Alaei's appointment?

20      A.   Could you repeat that again?

21      Q.   Sure.  Do you recall a time where SUNY Albany or

22  University at Albany initiated non-renewal of Dr. Alaei's

23  appointment?  In other words, do you recall when they started

24  initiating non-renewal for Dr. Alaei?

25      A.   Yes.

Alaei v SONY - 6/7/2022

1      Q.   Okay.

2      A.   Yes.

3      Q.   I refer you -- I'm referring to you what's into

4  evidence as Claimant's Exhibit Fifty-four, it says determine --

5  term appointment renewal notice reminder dated May 1, 2018 to

6  Harvey Charles from Human Resources and then there was a form

7  attached.  Do you recall seeing this form?

8      A.   I believe so, it was -- it would have been issued by

9  one of the staff that handles the -- the paperwork.

10     Q.   Okay.  So you don't know if you were directly

11 involved in preparing it but somebody from H.R. probably did?

12     A.   Somebody from H.R. would have prepared it, based on

13 information received from either Dr. Charles or Dr. Hedberg,

14 Bill Hedberg.

15     Q.   Okay.  Do you recall why the non-renewal process

16 started as to Dr. Alaei around this time of --?

17          THE COURT:  Why it started?

18          MR. CASTIGLIONE:  Yes.

19          THE WITNESS:  Why it started or when?

20          BY MR. CASTIGLIONE:  (Cont'g.)

21     Q.   Why, I said -- I'll -- strike that.

22     Do you recall why the renewal process started as to Dr.

23 Alaei that initiated around this May 1, 2018 appointment

24 renewal notice?

25     A.   I don't know the reasons behind it.

Alaei v SONY - 6/7/2022

1      Q.   So nobody ever told you why University of Albany was

2   seeking to start to non-renew Dr. Alaei?

3      A.   I would be speculating.

4      Q.   Okay.

5             THE COURT:  No.

6             MR. CASTIGLIONE:  No, I said, okay, I

7        understood, sorry.

8             THE COURT:  Don't speculate.

9             THE WITNESS:  Okay.

10            BY MR. CASTIGLIONE:  (Cont'g.)

11     Q.   Back to the August 10 letter, regarding Dr. Alaei's

12   termination.

13            THE COURT:  Is that Forty-four?

14            MR. CASTIGLIONE:  Forty-four.

15            BY MR. CASTIGLIONE:  (Cont'g.)

16     Q.   Do you recall having a meeting with Dr. Alaei that

17   day?  Excuse me, do you recall having a meeting with Dr. Alaei

18   the day before on August 9?

19     A.   Yes.

20     Q.   And Brian Selchick attended, I also attended.

21     A.   Yeah, there was -- I had two meetings with Dr. Alaei.

22     Q.   When was the first meeting?

23     A.   I don't know the date.

24     Q.   About May, 2018.

25     A.   I believe they were a Thursday and a Friday.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/7/2022

1      Q.   Was that the first meeting about May, 2018.  Is that

2   fair to say?

3      A.   No, I'm thinking August.

4            THE COURT:  Were you testifying -- did you just

5       testify you met the doctor on back-to-back days?

6            THE WITNESS:  Yes.

7            THE COURT:  Okay.  That's what he just said.

8            MR. CASTIGLIONE:  Okay.

9            BY MR. CASTIGLIONE:  (Cont'g.)

10     Q.   Sorry.  Let me clarify.  As to this letter, August

11  10, 2018.  Do you recall having a meeting with Dr. Alaei, the

12  day before this letter was issued?

13     A.   I had a meeting with him.  I believe it was the day

14  before this letter was issued.  I just -- I recall two meetings

15  with Dr. Alaei in August.  I believe one was in the

16  (unintelligible).

17            THE COURT:  (unintelligible)

18            MR. CASTIGLIONE:  Sure.

19            THE COURT:  -- received under the basis that it

20       was on back-to-back days?  You don't have to belabor that

21       point.

22            BY MR. CASTIGLIONE:  (Cont'g.)

23     Q.   All right.  If I can refer you to Claimant's Exhibit

24  Forty-two, which is in evidence, it's identified as a

25  counseling memorandum to Dr. Alaei from Randy Stark and others.

Alaei v SONY - 6/7/2022

```
 1                  THE COURT:  Including Brian Selchick.

 2                  BY MR. CASTIGLIONE:  (Cont'g.)

 3       Q.    Including Brian Selchick.

 4                  THE COURT:  What exhibit number is this?

 5                  MR. CASTIGLIONE:  This is Exhibit Forty-two.

 6                  THE COURT:  Okay.

 7                  BY MR. CASTIGLIONE:  (Cont'g.)

 8       Q.    If you could take a look at this document and this

 9  document says in part this memorandum is intended to summarize

10  the counseling session that occurred on August 9th, 2018.  Does

11  that refresh your recollection that there was a counseling

12  session meeting with Dr. Alaei on August 9, 2018?

13       A.    Yes, it does.

14       Q.    Okay.  And so going back to Exhibit Forty-four.  This

15  is a letter dated August 10, 2018, the next day.

16       A.    Correct.

17       Q.    Okay.  So going back to the counseling session

18  meeting.

19       A.    Uh-huh.

20       Q.    Do you recall meeting with Dr. Alaei, to explain to

21  Dr. Alaei the results or findings of the disciplinary

22  investigation?

23       A.    Yes, I do.

24       Q.    And do you recall did you explain to Dr. Alaei that

25  there was no discipline going to be imposed and that he was to
```

1    return to work?

2        A.    Yes.

3        Q.    Okay.  And on August 10th, 2018, do you recall

4    contacting Dr. Alaei or H.R. contacting Dr. Alaei and advising

5    him to meet with you about this letter?

6        A.    Yes.

7        Q.    Okay.  And so Dr. Alaei came, met with you, you hand

8    him this letter and advised him it was terminating his

9    appointment?

10        A.    Yes.

11        Q.    Okay.  As to the -- the non-renewal as of 2018, did

12    you have prior experience with the non-renewal process for

13    employees -- in faculty, you know, any type of employee at --

14    at University at Albany?

15        A.    Yes.

16        Q.    Is it generally, in most instances, the supervisor of

17    the employee who initiates non-renewal?

18        A.    Yes, it is.

19        Q.    Is it within the job responsibilities or authority of

20    H.R. to initiate non-renewal?

21        A.    No, it's not.

22        Q.    Okay.  Do you recall whether when this investigation

23    started in February 2018, if Dr. Alaei was a member of the

24    United University Professions?

25        A.    (unintelligible) that he was a member, yes.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/7/2022

82

1      Q.   Okay.  And as being a member, he had certain rights

2  generally under the U.U.P. agreement, we had referred to

3  earlier?

4      A.   That's correct.

5      Q.   Okay.  And as part of the process, it was your job to

6  make sure that, you know, that agreement was followed and to

7  identify any violations?

8      A.   Yes.

9      Q.   Do you recall as part of the non-renewal process, an

10  issue being raised about whether Dr. Alaei's employment term

11  required an additional year or two years of payment or

12  compensation?

13      A.   Yes, I did.

14      Q.   Okay.  Would it be part of your usual job

15  responsibilities to determine compensation owed to employees

16  that were being non-renewed?

17      A.   No, whatever would have been stipulated in the

18  agreement, was what would have been followed unless there was a

19  contract that may have superseded what was in the -- in the

20  contract.

21      Q.   Do you -- do you have any recollection of what the

22  payment terms were for Dr. Alaei for his position at that time?

23      A.   There was, other than what was in, I believe, the

24  initial contract, but didn't quite understand in terms of, you

25  know, what the salary continuation might be if the contract was

Alaei v SONY – 6/7/2022

1  or if employment was severed.

2      Q.    If I can refer you to Claimant's Exhibit One, if you

3  can just take a quick look at this that's in evidence, the

4  letter dated April 16, 2014.

5      A.    Uh-huh.

6      Q.    Do you have any recollection of this being an

7  appointment letter for Dr. Alaei?

8      A.    Yes, it wasn't issued when I was there.  But I recall

9  seeing this.

10     Q.    And were you familiar at the time of the non-renewal

11  for Dr. Alaei if that process was going forward of the term

12  Evergreen?

13     A.    When Evergreen -- I became aware of Evergreen when

14  this process began.  I was unaware of it prior to that.

15     Q.    Okay.  Do you recall Dr. Alaei's union representative

16  named Maureen Seidel?

17     A.    Do I recall her?  Yes.

18     Q.    Yes.

19     A.    Yes.

20     Q.    Okay.  Do you recall during the time of Dr. Alaei's

21  representation, having email communications with her about the

22  Evergreen appointment and whether Dr. Alaei was entitled to,

23  you know, two additional years versus one?

24     A.    There may have been correspondence with regards to

25  the Evergreen again, that was something, it was a new term, if

**Associated Reporters Int'l., Inc.   518-465-8029**

1    you will, to me and my understanding was it is something that

2    ... occur that often.

3        Q.    Had you dealt with it before in your capacity as H.R.

4    in determining employee entitlement to compensation?

5        A.    No, no, not Evergreen, no.

6        Q.    Okay.  So ultimately, based on your investigation,

7    you had determined there was -- the allegations about sexual

8    harassment were unfounded and there was no basis otherwise of

9    any policy violations or reason to impose just discipline?

10            MR. ROTONDI:  Objection, Your Honor, leading.

11            THE COURT:  Asked and answered already.

12        Sustained on that basis.

13            MR. CASTIGLIONE:  Do you want me to ask it again

14        or --

15            THE COURT:  That would be the third time.

16            MR. CASTIGLIONE:  Seeing if he was responding,

17        but I can refer him back to --.

18            THE COURT:  He answered that question

19        previously.

20            MR. CASTIGLIONE:  Okay.

21            BY MR. CASTIGLIONE:  (Cont'g.)

22        Q.    So in July, I'm referring to -- I'm referring to

23    Claimant's Exhibit Thirty-nine, you had ultimately made a

24    determination that allegations were unfounded.  And you had

25    communicated those to the president and president's office

Alaei v SONY – 6/7/2022

1   through Mr. Szelest.  Is that correct?

2        A.   That's correct.

3        Q.   Okay.  And then after communicating those to the

4   president's office, did the president's office provide any

5   response to you about the process for dealing with the

6   investigation?

7        A.   I don't recall.

8        Q.   Okay.  Do you recall ultimately a decision being made

9   about whether Dr. Alaei was entitled to one year or two years

10  of compensation?

11       A.   I don't recall what the final -- what the final

12  decision was.

13       Q.   Okay.

14            THE COURT:  Were you involved in that decision?

15            THE WITNESS:  No.

16            BY MR. CASTIGLIONE:  (Cont'g.)

17       Q.   Based on your understanding of the U.U.P. at the

18  time, after an employee is terminated and is term --

19  terminated.  But he claims he's entitled to more money than

20  what the university is giving him.  Is that something that's a

21  grievable process under the U.U.P.?

22       A.   I don't know for sure.  But it may be something in

23  the contract that would allow for that, I don't know for sure.

24            THE COURT:  I don't think you need to ask any

25       additional questions on that, Counsel, the U.U.P.

Alaei v SONY - 6/7/2022

1      agreement and especially since this witness answered he's

2      not sure.  Especially -- the agreements in evidence, I

3      could read it and determine for myself whether or not

4      there is a grievable point.

5             MR. CASTIGLIONE:  Sure.  I was going to refer to

6      specific language and see if he has any recollection.

7             THE COURT:  Just -- you can call the court's

8      attention to the section you're interested in, what is it?

9             MR. CASTIGLIONE:  It's Section 7.2, which is

10     grievance procedure 7.1 purpose, then Section 7.2 provides

11     definitions about what is grievable.

12            THE COURT:  Correct.  I don't need you to show

13     them to him and have him interpret the contract for me.

14            BY MR. CASTIGLIONE:  (Cont'g.)

15     Q.   Do you recall as part of the termination process and

16  determination about what monies Dr. Alaei may have been

17  entitled to or not, whether there was any discussion about

18  whether he would also be entitled to benefits besides just

19  salary?

20     A.   I don't recall.

21     Q.   So referring back to Claimant's Forty-four.  This

22  identifies that salary was being paid out for two thousand --

23  the year 2019.  Would that payout include benefits or any other

24  non-salary related components?

25     A.   I don't believe so.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1    Q.    So that would just be straight salary?

2    A.    I believe so.

3    Q.    Okay.  So I want to ask you in nine -- or 2018, do

4  you know how many employees at SUNY Albany that you would be

5  dealing with as H.R. that were members of the U.U.P.?

6    A.    That are members of the U.U.P.?

7    Q.    Yeah, at that time.

8    A.    It was between two thousand and twenty-five hundred.

9    Q.    Okay.  And of those two thousand or twenty-five

10 hundred, do you know how many of those employees had their

11 contracts approved by the New York State Comptroller's office?

12   A.    I don't know who approves them.

13   Q.    Did H.R. have any process set in place for having

14 appointment letters for -- or contracts for employees to be

15 approved by the State comptroller's office?

16   A.    That's what I'm aware of, I was never involved with

17 the State comptroller's office.

18   Q.    Are you aware of any contract issued -- any contract

19 or appointment letter ever being approved by the State

20 comptroller's office for U.U.P. member?

21   A.    No.

22   Q.    Do you recall University at Albany refusing to pay

23 any U.U.P. member for their contract or appointment because it

24 wasn't approved by the comptroller's office?

25              THE COURT:  Well, he said he had no contacts

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

88

```
 1        with the comptroller's office.
 2                MR. CASTIGLIONE:  No, I understand.  But I'm
 3        asking him if he -- if he's aware of whether SUNY Albany
 4        ever refused to pay any U.U.P. employee at that time
 5        because they did not have their contract or appointment
 6        approved by the comptroller's office?
 7                THE COURT:  Do you know that?
 8                THE WITNESS:  No.
 9                BY MR. CASTIGLIONE:  (Cont'g.)
10    Q.    They're not aware of any such situation?
11    A.    That we had no -- had no involvement whatsoever
12  personally or that my department had with the controller's
13  office.
14    Q.    Do you recall anyone ever raising with H.R. during
15  your time there about being told they would not be paid because
16  their contract was not approved by the comptroller's office?
17    A.    I don't recall.
18    Q.    So you don't recall that ever being raised?
19    A.    No.
20                MR. CASTIGLIONE:  That's all.  Thank you, Your
21        Honor.
22                THE COURT:  Okay.  Cross examination?
23                MR. CASTIGLIONE:  No questions, Your Honor.
24                THE COURT:  Okay.  Mr. Stark, please put your
25        mask on.  Off the record, Joe.
```

Alaei v SONY – 6/7/2022

1              (Off the record, 12:28:39 to 13:31:55)

2              THE MONITOR:  On the record.

3              THE COURT:  Good afternoon.  We reconvened after

4      the luncheon recess in the matter of Dr. Kamiar Alaei v

5      State of New York, University of New York at Albany et al.

6      It is claim number one three two five five four.  And we

7      are about to commence the afternoon session.  All parties

8      are present including Claimant.

9              So Mr. Castiglione, could you please call the

10     Plaintiff's next witness?

11             MR. CASTIGLIONE:  Yes, Your Honor.  The Claimant

12     calls Brian Selchick.

13             THE COURT:  Mr. Selchick, can you come up and

14     stand in the witness box over here, sir.

15             MR. SELCHICK:  Yes.

16             THE COURT:  Keep your mask on, there's a shield

17     right in front of you.  Please place the shield on before

18     you take your mask off.  Put the shield on and then remove

19     your mask.  And now you're going to be sworn, if you could

20     raise your right hand.

21             THE MONITOR:  Raise your right hand.  Do you

22     solemnly swear the testimony you're about to give is the

23     truth, the whole truth and nothing but the truth so help

24     you God?

25             MR. SELCHICK:  I do.

Alaei v SONY – 6/7/2022

1                    WITNESS; BRIAN SELCHICK; Sworn

2                    THE MONITOR:  Be seated, state and spell your

3          name for the record.

4                    THE WITNESS:  My name is Brian Selchick, B-R-I-

5          A-N S-E-L-C-H-I-C-K.

6                    THE COURT:  First name is B-R-I-A-N?

7                    THE WITNESS:  That's correct.

8                    THE COURT:  Okay.  That does not amplify your

9          voice, it just records your voice so speak up please.

10                    THE WITNESS:  Understood, Judge.

11                    THE COURT:  Counsel, your witness.

12                    MR. CASTIGLIONE:  Thank you.

13                    DIRECT EXAMINATION BY MR. CASTIGLIONE:

14          Q.   Good afternoon, Mr. Selchick.  Can you identify for

15   the court in February 2018, who you were employed by?

16          A.   The State University of New York, University at

17   Albany.

18          Q.   And what was your position at the time?

19          A.   At the time, I was the Employee Relations Specialist

20   for the University at Albany.

21          Q.   Okay.  And were you -- who are you reporting to in

22   your position at the time?

23          A.   Randy L. Stark, the Associate Vice President for

24   Human Resources.

25          Q.   And can you explain to the court, your basic job

Alaei v SONY – 6/7/2022

1  responsibilities in your role at that time?

2        A.   Yes.  My job entailed essentially fostering a

3  positive relationship between the university and its unionized

4  workforce, including but not limited to all of the employees

5  covered by collective bargaining agreements, that would include

6  approximately five thousand employees, as well as enforcing and

7  making sure that university complies with those collective

8  bargaining agreements.

9        Q.   And are you familiar -- strike that, I'm sorry.

10 What's your current employment position?

11       A.   I'm currently employed at University at Albany.

12       Q.   And what's the position there?

13       A.   I hold the title and position of Director of Employee

14 Relations.

15       Q.   So you're now director of basically Human Resources

16 at SUNY Albany?

17       A.   No.

18       Q.   Okay.  Can you explain to me your position today?

19       A.   So my role as director of employee relations is I'm

20 in charge of employee relations, which includes the collective

21 bargaining agreements, disciplinary investigations, contract

22 grievances and proper practice charges as well as training.

23       Q.   Okay.

24            THE COURT:  It's not the position -- the

25       position you now hold is not the position that Mr. Stark

Alaei v SONY – 6/7/2022

1    held back in '18?

2                    THE WITNESS:  That's correct.

3                    THE COURT:  It is not?

4                    THE WITNESS:  Correct.

5                    THE COURT:  Okay.  The position you now hold

6        just for my own curiousness, who held that position in

7        '18?

8                    THE WITNESS:  No one.

9                    THE COURT:  It's a different, it's a new

10       position?

11                   THE WITNESS:  Correct.

12                   THE COURT:  Okay.  And you started in that new

13       position when?

14                   THE WITNESS:  In October of '19, Judge.

15                   THE COURT:  October of '19.  Okay.  Mr.

16       Castiglione.

17                   MR. CASTIGLIONE:  Thank you, Your Honor.

18                   BY MR. CASTIGLIONE:  (Cont'g.)

19       Q.   In your position in February 2018, did your position

20   involve addressing employee salary or benefit entitlements, if

21   there were any questions by employees about what they were

22   entitled to?

23       A.   Only if filed by contract grievance.

24       Q.   I'm sorry.  Can you explain that?

25       A.   So no would be the answer.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1       Q.   Okay.  Did you deal with any employee salary issues

2   at that time?

3       A.   Yes.

4               THE COURT:  Did I take your previous answer to

5       mean that if an employee had a salary dispute that was

6       covered by the collective bargaining agreement, then and

7       only then would you be involved?

8               THE WITNESS:  That's correct, Judge.

9               MR. CASTIGLIONE:  Okay.  Thank you, Your Honor.

10              BY MR. CASTIGLIONE:  (Cont'g.)

11      Q.   Do you recall -- or strike that.  Are you aware of a

12  document identified as agreement between United University

13  Professors Professions and the State of New York from July 11 -

14  - from July 2011 to July 2016 and I'll show it to you.  It is -

15  -

16              THE COURT:  It's the collective bargaining

17      agreement, are you familiar with it?

18              THE WITNESS:  I am, Judge.

19              BY MR. CASTIGLIONE:  (Cont'g.)

20      Q.   And I'm showing you generally, first page of this

21  agreement.  And this is identified as Claimant's Five, do you

22  recall that this was the version of the U.U.P. agreement, I'll

23  refer to it as in 2018.  This is -- was this the controlling

24  U.U.P. agreement?

25      A.   I do not believe it was.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

94

```
1              THE COURT:  I'll ask a question.  It was in 2018
2         between the date that that document is dated of
3         (unintelligible) 2016.  And it was while the new contract
4         is still being negotiated, that was subsequently adopted
5         after 2018.  Would that document we just saw have been in
6         effect?
7              THE WITNESS:  Yes.
8              BY MR. CASTIGLIONE:  (Cont'g.)
9      Q.   So if I could just refer you to page eight of your
10  deposition, just to refresh your recollection or try to.  It
11  says, are you familiar -- I've identified with -- the document
12  identified as agreement between United University Professions
13  and the State of New York, this one here, particularly from
14  July 2011 to July 2016.
15      A.   I am familiar with this agreement as well as its, you
16  know, predecessor preceding it
17      Q.   Is this the agreement that's still in place between
18  SUNY Albany and its employees?
19      Q.   No, the current applicable collective bargaining
20  agreement is effective July 16 to, I want to say, I'm not sure
21  exactly but somewhere in the middle of 2022.
22      Q.   And do you recall this agreement that I'm showing you
23  here as Exhibit K was the agreement in effect in 2018.
24      A.   I do and it was -- no, so I don't believe it was,
25  okay, my apologies.
```

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1              MR. CASTIGLIONE:  So I apologize, strike that,

2        Your Honor.

3              BY MR. CASTIGLIONE:  (Cont'g.)

4        Q.   If there was no collective bargaining agreement in

5   2018, would the predecessor still be in place?

6        A.   Yes.

7        Q.   Okay.  So if in 2018, there was no agreement here and

8   this was the predecessor, this would be the agreement in place?

9        A.   That's correct.

10        Q.   Okay.  And you had responsibilities in your job

11   duties in 2018, dealing with U.U.P. related matters.  Is that

12   fair to say?

13        A.   Yes.

14        Q.   Okay.  If I can refer you to the letter on the

15   screen, which is claiming -- Claimant's Exhibit Eight, take a

16   look at this.  And it'll show up on the monitor there.  Switch

17   over the next page.

18              THE COURT:  Question.

19              BY MR. CASTIGLIONE:  (Cont'g.)

20        Q.   Do you recall this document?

21        A.   I do.

22        Q.   Okay.  And so you're aware that there came a time

23   when Dr. Kamiar Alaei was put on alternative assignment in

24   February 2018?

25        A.   Yes.

Alaei v SONY - 6/7/2022

1    Q.   Okay.  Were you involved in the -- strike that.  This

2  letter references a disciplinary investigation.  Were you

3  involved in the disciplinary investigation concerning Dr.

4  Alaei?

5    A.   Yes.

6    Q.   Okay.  Can you explain to me generally, what your

7  role was in that investigation?

8    A.   My role was to collect evidence documentary, as well

9  as witness statements and to review policies, procedures, as

10  well as to effectuate the collective bargaining agreement

11  disciplinary procedure.

12    Q.   Okay.  And was it just you and Mr. Randy Stark from

13  Human Resources working on that?

14    A.   No.

15    Q.   Who else was working on it?

16    A.   There was a collaborative investigation between the

17  Title Nine Office and the Office of Human Resources.

18    Q.   And what --.

19         THE COURT:  Title Nine and what?

20         THE WITNESS:  The Title Nine office and the

21      Office of Human Resources, Judge.

22         THE COURT:  Your office?

23         THE WITNESS:  Yes.

24         THE COURT:  Question.

25         BY MR. CASTIGLIONE:  (Cont'g.)

1     Q.   So for your office, it was you and Randy Stark, in

2   the Title Nine office, it was Chantelle Cleary.  Is that

3   accurate?

4     A.   That's correct.

5     Q.   Okay.  Were you the primary individual conducting the

6   investigation on behalf of Human Resources?

7     A.   Yes.

8     Q.   Okay.  As of 2008, how many disciplinary

9   investigations have you been involved with up to that point,

10  I'm sorry, 2018?

11    A.   Approximately three hundred and eight cases a year,

12  give or take.

13             THE COURT:  You sure it's not three hundred and

14       nine, sir?  Approximately three hundred and eight.

15             THE WITNESS:  Approximately, Judge.

16             THE COURT:  Okay.

17             BY MR. CASTIGLIONE:  (Cont'g.)

18    Q.   As of February 2018, how many alternative assignments

19  have you been involved with, if you recall?

20    A.   A handful, you know, somewhere or in the neighborhood

21  of five or so.

22    Q.   Okay.  As to Dr. Alaei, do you recall if there was

23  any formal complaint registered with SUNY Albany, Title Nine

24  office or with H.R.?

25    A.   Formal complaint, no.

Alaei v SONY - 6/7/2022

1    Q.  What about an informal complaint?

2    A.  Yes.

3    Q.  Excuse me?

4    A.  Yes.

5    Q.  Okay.  If I can refer you --.

6          THE COURT:  What is the formal complaint from an

7    informal complaint?

8          THE WITNESS:  A written filing, Judge.

9          THE COURT:  And what constitutes an informal

10    complaint?

11          THE WITNESS:  Typically a verbal report or a

12    third party report, Judge.

13          THE COURT:  Okay.  Go ahead, Counsel.

14          BY MR. CASTIGLIONE:  (Cont'g.)

15    Q.  If I can refer you to what's in evidence as

16  Claimant's Exhibit Forty-one.  There's a series of emails here.

17  It's between you and a Tricia George and Randy Stark.  Is

18  Tricia George -- at the time is somebody with Title Nine

19  office?

20    A.  Yes.

21    Q.  Do you recall, if you take a look at this, you're

22  inquiring whether an informal or formal complaint against Dr.

23  Alaei had been filed per Title Nine or university policy and

24  the response was there was no record of any informal or formal

25  complaint?

Alaei v SONY - 6/7/2022

99

1           THE COURT:  That's the question, Counsel?  Yeah.

2           BY MR. CASTIGLIONE:  (Cont'g.)

3      Q.   So is this -- is this email consistent with -- I'm

4  sorry, is this email record that you wrote that there was no

5  formal or informal complaint at the time against Dr. Alaei as

6  of July 9, 2018?

7      A.   No, I didn't write this.

8           THE COURT:  So you were asking if there was a

9      informal or a formal complaint?

10          THE WITNESS:  I see.  It was -- it appears to be

11     Randy's understanding that there was none.

12          THE COURT:  As well as Title Nine saying, I

13     don't see any record of an informal or formal complaint.

14          THE WITNESS:  That's correct.

15          THE COURT:  Okay.

16          BY MR. CASTIGLIONE:  (Cont'g.)

17     Q.   If I can refer you to Exhibit Thirty-nine.  This is

18  Claimant's Thirty-nine in evidence, identified as an email from

19  Valerie Ayers, excuse me, an email from Randy Stark to Valerie

20  Ayers.  You're also C.C.'ed on there.  It says, counseling memo

21  for K.A.  This email identifies it was a struggle writing in

22  this there wasn't really anything announced, as the sexual

23  misconduct allegations were unfounded.

24      You agreed with Mr. Stark's opinion that the sexual

25  misconduct allegations were unfounded?

**Associated Reporters Int'l., Inc.   518-465-8029**

1       A.   I did.

2       Q.   Okay.  And did ultimately Human Resources explained

3  that to the president's office that there was no basis to

4  impose just or excuse me, no just cause to impose discipline

5  against Dr. Alaei, based on the findings of the Human Resource

6  investigation?

7       A.   No, we advise that we could prove by a preponderance

8  of the evidence that a violation.

9       Q.   Okay.

10              THE COURT:  You advise, who did that?

11              THE WITNESS:  I advised Mr. Stark.

12              THE COURT:  Mr. --.

13              THE WITNESS:  Mr. Randy Stark.

14              THE COURT:  Okay.

15              BY MR. CASTIGLIONE:  (Cont'g.)

16       Q.   If I can refer you to your transcript page one o

17  seven.  When we're talking about the findings, I asked, are you

18  aware of, does your office ever communicate these findings

19  about allegations being unfounded to the president's office,

20  your answer was, we did.  It was framed in the way that we, you

21  know, to be blunt, that we didn't have it, you know, that there

22  was not sufficient evidence and that we did not feel we had

23  just cause.

24              THE COURT:  So what's the question?

25              BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY - 6/7/2022

1      Q.   Is that an accurate reflection of your testimony from

2  your deposition, if you recall?

3      A.   It is.

4      Q.   Okay.  So as to the process for Dr. Alaei during

5  alternative assignment, do you recall that Dr. Alaei had his

6  card and key access removed when he was placed on alternative

7  assignment?

8      A.   I did.

9      Q.   And do you recall -- strike that.  It's not typical

10  to remove current key access for employees on an alternative

11  assignment at that point.  Isn't that correct?

12      A.   The situation over it is atypical.

13      Q.   Okay.  And were you and Mr. Stark actually directed

14  to do so by the president, Havidan Rodriguez?

15      A.   That's correct.

16      Q.   Okay.  Did President Rodriguez also direct that you

17  and Mr. Stark remove Dr. Alaei's access to his SUNY Albany

18  email account?

19      A.   Yes.

20      Q.   And wasn't that also atypical at the time for

21  somebody on an alternative assignment?

22      A.   Yes.

23      Q.   Was there any -- is there any basis in the U.U.P.

24  agreement at that time for removing Dr. Alaei's access to his

25  email account?

1      A.    Say again.

2      Q.    Sure.  Is there any basis under the U.U.P. agreement

3  at that time to remove Dr. Alaei's access to his email account?

4      A.    There's nothing, no.

5      Q.    Okay.  What about as to removing information or

6  changing references to Dr. Alaei on the G.I.H.H.R. website?

7      A.    Nothing specific.

8      Q.    Okay.  Were any concerns conveyed to you at the time

9  or H.R. that Dr. Alaei was using his email improperly or

10  violating SUNY policy?

11      A.    We did receive some concern of that.

12      Q.    About him using his email?

13      A.    About communications that he made from the

14  (unintelligible).

15      Q.    So can you explain to me what communications you're

16  referring to about what email, what issue with email access

17  there was?

18      A.    So the concern was presented to us by students at

19  large that they were under the impression and belief that

20  Kamiar was aware that Arash, his brother should not be having

21  contact with them or with others.  And they -- there was a

22  belief that he was assisting and/or facilitating in that by

23  email.

24      Q.    Do you know Dr. Kamiar Alaei was not the supervisor

25  of Arash Alaei during that time you're raising?

1       A.   Yes.

2       Q.   And do you know that Harvey Charles had never

3   directed Dr. Alaei not to allow his brother to have

4   communications with anybody?

5       A.   I don't know that for sure.

6       Q.   Okay.  Did you ever ask Dr. Charles that?

7       A.   I had a conversation with him about it.  I don't

8   recall specifically.

9       Q.   If I can refer you to -- if I can refer you to

10  Exhibit Forty-three, Exhibit Forty-three, which is in evidence.

11              THE COURT:  Microphone, Counsel.

12              MR. CASTIGLIONE:  Sorry, Your Honor.

13              BY MR. CASTIGLIONE:  (Cont'g.)

14      Q.   Exhibit Forty-three, which is in evidence as emails

15  between Harvey Charles and Arash Alaei.  First dated June 13th,

16  2017 and June 14th.  Do you recall in 2017 was Arash Alaei and

17  alternative --?

18      A.   He was not.

19      Q.   In 2017, he was not?

20      A.   Correct.

21      Q.   Okay.  Was Harvey Charles, his supervisor in 2017?

22      A.   He was not.

23      Q.   Okay.  This email on my report communications with

24  intern from Arash Alaei.  He says in part, as you know, I've

25  been assigned to work remotely to develop grant proposals and

Alaei v SONY – 6/7/2022

1  report to you, writing grants is a progressive effort and time

2  consuming, giving it takes time to identify --.

3                    THE COURT:  That's not on the screen.

4                    MR. CASTIGLIONE:  I'm sorry.

5                    THE COURT:  Go ahead and start over.

6                    MR. CASTIGLIONE:  Sure.

7                    BY MR. CASTIGLIONE:  (Cont'g.)

8       Q.   So the bottom email June 13th, from Arash Alaei to

9  Harvey Charles, I hope this email finds you well, as you know,

10  I've been assigned to work remotely to develop grant proposals

11  and send reports to you.  Writing grant is a progressive effort

12  and time consuming given it takes time to identify relevant

13  grant opportunities and develop grants.

14      Could you please advise me how quickly you want me to send

15  a regular report in order to have a more tangible output?  He

16  talks about a weekly, monthly report, he then adds, in

17  addition, I just want to --.

18                    THE COURT:  (unintelligible).

19                    MR. CASTIGLIONE:  Excuse me?

20                    THE COURT:  (unintelligible).

21                    MR. CASTIGLIONE:  Sorry.

22                    BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.   He says, in addition, I just want to inform you that

24  I need to have Skype communication with some person, another

25  person and another person.  They're identified as students.

Alaei v SONY - 6/7/2022

1   And then the University at Albany alumni.  He also says our

2   G.I.H.H.R.s interns and I need to have meetings with them to

3   develop grant proposals.

4        Harvey Charles responds, I've inquired of H.R. and

5   awaiting advice on this matter.  I'll be in touch after I hear

6   something.  Do you recall that Harvey Charles was communicating

7   with Arash Alaei regarding communications with interns and

8   students and people at SUNY Albany?

9        A.   What I can see here, Counsel, this predates my

10  appointment at the University.

11       Q.   No, I understand.  But you had said that students

12  were raising concerns about my client allowing his brother to

13  have communications with people at SUNY.  And my question was,

14  were you aware, I'm sorry, that Arash Alaei was having

15  conversations with Harvey Charles, about whether he could

16  contact people at SUNY.

17       A.   I was not.

18       Q.   And are you aware -- did this email ever was -- was

19  it ever -- strike that.  Did H.R. ever come across this email

20  as part of its investigation concerning my client?

21       A.   I don't recall.

22       Q.   Okay.  Did anybody ever ask during the investigation,

23  whether Harvey Charles was having conversations with Arash at

24  the time about communications with students?

25       A.   Specifically, I don't recall.

Alaei v SONY – 6/7/2022

1    Q.   Okay.  So was there ever any concerns about my client

2    using his email inappropriately?  So I'm not referring to Arash

3    Alaei having communications or whatnot.  But my client actually

4    using his email in an inappropriate manner.

5    A.   (unintelligible).

6    Q.   Can you explain to me what you mean?

7         THE COURT:  Well, I think he previously

8         testified that there was concerns expressed as a -- and

9         (unintelligible) the Claimant was allowing his brother who

10        was otherwise barred from such access to utilize the

11        Claimant's email access.  Is that the summary?

12        THE WITNESS:  That's correct, Judge.

13        BY MR. CASTIGLIONE:  (Cont'g.)

14   Q.   But ultimately, there was no finding of any policy

15   violation or wrongdoing by my client as to that issue.  Is that

16   correct?

17   A.   That's correct.

18   Q.   As to the email issue, did any student ever file

19   formally or informally, any complaint regarding inappropriate

20   use of email as you just raised?

21   A.   No.

22   Q.   Okay.  Do you know who raised the concern about my

23   client using his email to somehow facilitate Arash Alaei having

24   contact with individuals?

25   A.   Sorry.  Can you repeat the question?

Alaei v SONY – 6/7/2022

1    Q.   Sure.  Do you know who raised the concern about my
2  client somehow facilitating Arash Alaei with having emails with
3  interns or whomever?

4    A.   Yes, so there were a multitude of concerns raised,
5  not formal complaints, but multitude of concerns raised in a
6  variety of different forums, in which the school is being
7  criticized for how they allegedly handled Arash Alaei's case
8  and contacted Mr. Arash.  And there were a multitude of
9  allegations that came out of those discussions, including but
10  not limited to, concerns about calming or having anger or
11  facilitating communication between Arash and the students.

12    Q.   Okay.  These communications and facilitating, how
13  would my client have been facilitating them, were they
14  explained in any of these alleged complaints or, excuse me, not
15  complaints, these allegations by people?

16    A.   They was just allegation.

17    Q.   Okay.  And -- and I'm sorry, did you indicate that
18  removing an employee's email or excuse me, removing employee's
19  information from a website during an alternative assignment is
20  not typical?

21    A.   I did.

22    Q.   Is there anything in the U.U.P. that prohibits
23  employees from representing their affiliation with SUNY Albany,
24  if they're on an alternative assignment?

25    A.   Say that again.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1    Q.   Is there anything in the U.U.P. agreement that

2  prohibits employees from representing their affiliation with

3  SUNY Albany, if they're on an alternative assignment, at least

4  as of February 2018?

5    A.   Expressly, no.

6    Q.   Yeah.  Is there anything in there that you recall?

7    A.   We have copies of it but no.  The policies of the

8  university are not -- and the employer are not contained in the

9  collective bargaining agreement.

10    Q.   So when you say policies of the university, you mean,

11  written policies or non-recorded policies?

12    A.   I would say written policies, yes.

13    Q.   Okay.  Is there a written policy on that issue for

14  SUNY Albany?

15    A.   On alternative assignments, no.

16    Q.   Okay.

17    A.   Outside of collective bargaining agreement, no.  But

18  there is the specific alternative assignment letter, which

19  provides the employer's directives.

20    Q.   Okay.  And if an employee doesn't follow those

21  directives, it's considered insubordination.  Is that fair to

22  say?

23    A.   Correct.

24    Q.   Okay.

25              THE COURT:  Well, let's go off the record for a

**Associated Reporters Int'l., Inc.   518-465-8029**

1    minute.

2              MR. CASTIGLIONE:  Sure.

3              (Off the record, 13:57:50 to 13:58:26)

4              BY MR. CASTIGLIONE:  (Cont'g.)

5     Q.    When you -- sorry when the university issues an

6    alternative assignment, do they distinguish between directives

7    in their letter versus directives that have a direct nexus to

8    employment?

9     A.    No.

10    Q.    So any directive is a directive?

11    A.    Correct.

12    Q.    I want to talk to you about Chantelle Cleary.  You

13    had indicated earlier Ms. Clearly was conducting an

14    investigation under Title Nine of the -- for the Title Nine

15    Office, I'm sorry.

16    A.    That's correct.

17    Q.    Okay.  If I can show you Exhibit Sixty-six.  Exhibit

18    Sixty-six is in evidence, Claimant Sixty-six, so it's email

19    from Chantelle Cleary to a number of people.  You're a

20    recipient on here.  It's a follow-up flag, status flagged to

21    the G.I.H.H.R. investigations, it's dated March 9, 2018.

22    Apologize.  Claimant's Exhibit Sixty-six, is an email from

23    Chantelle Cleary.  You are a recipient on here as identified,

24    dated March 9, 2018.  The subject is G.I.H.H.R. Investigation.

25    It's identified as a follow-up and flagged.  This says, I've

Alaei v SONY - 6/7/2022

1  been asked by Bruce to make this matter our top priority.

2       At the end she says, I know this case is a big lift.  Did

3  Ms. Cleary ever explain those statements to you?

4       A.   No.

5       Q.   I can refer you to the Claimant's Exhibit Twenty-nine

6  in evidence.  Claimant's Exhibit Twenty-nine is in evidence,

7  email chain between you and Ms. Cleary dated March 26 in

8  response to your below email at six twenty-five.  You're asking

9  (unintelligible) Kamiar (unintelligible) comes back.

10      Ms. Clary response, I thought we agreed he wasn't going to

11 come back I'm confused.  Around that time, was it clear that

12 Ms. Cleary had a strong opinion that Dr. Alaei was not coming

13 back to SUNY Albany for employment?

14      A.   Yes, she desired that he be non-renewed.

15      Q.   And but the -- the investigations had not concluded

16 at that point.

17      A.   That's correct.

18      Q.   And in fact, your -- the investigation ultimately

19 concluded for H.R. in about July.  Is that fair to say?

20      A.   I don't recall the specific date.

21      Q.   But it was a few months or a couple of months after

22 this email.  Is that fair to say?

23      A.   Yes.

24      Q.   In fact, did Ms. Clearly express an opinion -- an

25 opinion to you at some point that Dr. Alaei was guilty of

Alaei v SONY - 6/7/2022

1   violating SUNY policies?

2       A.   Not specifically, no.  She -- she did feel that he

3   was a bad actor, and that she felt that the complaint against

4   Dr. Alaei was credible.  And based upon that she felt that he

5   should not return to the university.

6       Q.   If I can refer you to your transcript page fifty-one

7   or fifty-two.

8       During 2018, did Ms. Cleary ever express an opinion to you

9   that she believed Dr. Alaei was guilty of violating any SUNY

10  policies?

11      She did, was your answer.

12      When did she express that opinion?

13      I don't recall exactly, but it was some time in between

14  the email that you had showed me previously and I was speaking

15  with all other graduate students and teaching assistants and

16  shortly after the conclusion of that discussion.

17      Is it fair to say it was before May 2018?

18      I think that's fair.

19      If I can refer you to Claimant's Exhibit, Claimant's

20  Exhibit Thirty-one.  Just take a look at Claimant's Exhibit

21  Thirty-one.

22              THE COURT:  Is it in evidence or not?

23              MR. CASTIGLIONE:  Yes, I'm sorry Claimant's

24      Exhibit Thirty-one is in evidence.

25              THE COURT:  All right.  And they're handwritten

Alaei v SONY - 6/7/2022

1       notes?

2                   MR. CASTIGLIONE:  These are handwritten notes.

3                   BY MR. CASTIGLIONE:  (Cont'g.)

4       Q.   Mr. Selchick, are these your handwritten notes?

5       A.   They are.

6       Q.   And these appear to be dated April 3, '18.  It's in

7       the upper right corner.

8       A.   Yes.

9       Q.   And in the left corner, there is and unfortunately a

10      hole punch.  But it says B.B.S. R.S. and something R.  Do you

11      have any recollection of what those notes were referring to?

12      A.   I do.

13      Q.   Can you explain to me what the recollection of the

14      notes in the upper left-hand corner of this part here referring

15      to?

16      A.   Those -- those would be the initials of some

17      individuals present.

18      Q.   So --

19                  THE COURT:  So initials of people present?

20                  THE WITNESS:  Correct.

21                  BY MR. CASTIGLIONE:  (Cont'g.)

22      Q.   So does this -- were these notes taken at a meeting

23      concerning Dr. Alaei?

24      A.   Yes.

25      Q.   And those indicate the people who are present?

Alaei v SONY - 6/7/2022

113

1      A.   Yes, but maybe not all the people.

2      Q.   Okay.

3      A.   Sometimes I get it all, sometimes I don't.

4      Q.   Was Chantelle Cleary at this meeting?

5      A.   I don't recall.

6      Q.   Right here there's a note it says, goal is to make

7   sure he does not come back.  Is that an accurate reflection of

8   discussions at that meeting?

9      A.   I believe it is.

10      Q.   It says also, could interrogate slash N.O.D., what

11   does N.O.D. stands for?

12      A.   Notice of discipline.

13      Q.   So could interrogate slash notice of discipline, then

14   suspend W slash O, is that pay?

15      A.   Correct.

16      Q.   And then says (unintelligible) termination and non-

17   renewal, then negotiate?

18      A.   Correct.

19      Q.   Is that reflective of discussions at that meeting?

20      A.   Reflective of options discussion.

21      Q.   Okay.  And then this also says performance evaluation

22   to support non-renewal, we could recreate them.  Were there any

23   written performance evaluations at the time for Dr. Alaei?

24      A.   No.

25      Q.   Did you contact Harvey Charles to ask what his

Alaei v SONY – 6/7/2022

1    performance evaluation if any was for Dr. Alaei?

2        A.    I did.

3        Q.    And what did he tell you?

4        A.    That he didn't have any on file that he was not

5    particularly familiar with the work that Dr. Alaei did.

6        Q.    As of April 4, 2018, is it fair to say Ms. Cleary's

7    position was that Dr. Alaei should be terminated?

8        A.    That he should not come back.

9        Q.    I can refer you to your deposition page eighty-seven

10   and -- eighty, eighty-seven.  And ask the question.  Okay.

11       Is it fair to say that Ms. Cleary's Title Nine

12   investigation had ended at this point?

13       Yes.

14       You say -- I -- I say and is it clear to say Ms. Cleary's

15   position was that Dr. Alaei should be terminated.

16       You said, yes.

17       Do you recall giving that testimony?

18       A.    Yes.

19       Q.    Okay.

20                THE COURT:  Can I have counsel approach?

21                MR. CASTIGLIONE:  Sure.

22                THE COURT:  Off the record.

23                (Off the record 14:08:04 to 14:09:34)

24                THE MONITOR:  On the record.

25                THE COURT:  In the sidebar with defense counsel,

Alaei v SONY – 6/7/2022

1    without objection, the court has been permitted to ask the

2    following two questions.  Sir, you said in the middle of

3    this process, along around April, you had formed the

4    opinion that Chantelle Cleary was of the opinion that Dr.

5    Alaei should not be returned, correct?

6              THE WITNESS:  That's correct.

7              THE COURT:  How do you reconcile that with the

8    fact that the Title Nine investigation ultimately resulted

9    in a finding of no misconduct?

10             THE WITNESS:  Just as a difference between

11   terminating for just cause and non-renewing under the

12   collective bargaining agreement.  We don't need a reason

13   to non-renew.  So if you don't want to extend the contract

14   beyond on that day, we have the right to do so.

15             THE COURT:  You've answered my question.  Thank

16   you.  Counsel, your -- your --.

17             MR. CASTIGLIONE:  Thank you.

18             BY MR. CASTIGLIONE:  (Cont'g.)

19   Q.   Mr. Selchick, Ms. Cleary, as far as you're aware,

20   never conducted any interview or meeting with Dr. Alaei at any

21   point regarding her alleged investigation?

22   A.   That's correct.

23   Q.   I'd like to talk to you about the non-renewal

24   process.  Do you recall between January 2018 and September

25   2018, there being approximately five to ten disciplinary

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1   investigations conducted by your office?

2        A.   What were the dates?

3        Q.   January 1, 2018 and September 1, 2018.

4        A.   If we're talking about only U.U.P. related, then yes,

5   I do.

6        Q.   Okay.  Only U.U.P. you said?

7        A.   Yes.

8        Q.   Okay.  And as part of those investigations, there

9   were no other instances where it was determined not to issue

10  discipline against the employee, but the employee was still

11  bought out and had his employment not renewed.

12       A.   Not that I can recall, no.

13       Q.   Okay.

14            THE COURT:  Was that question --?

15            MR. CASTIGLIONE:  As to these others -- sorry.

16            THE COURT:  Please repeat the question please.

17            MR. CASTIGLIONE:  Sure.

18            THE COURT:  Go ahead.

19            MR. CASTIGLIONE:  As to those investigations,

20       excluding my client, obviously, or excluding Dr. Alaei,

21       there were no other instances where it was determined that

22       there was no discipline, there was no reason to discipline

23       the employees.  However, SUNY Albany had still determined

24       to non-renew and buyout that employee?

25            THE COURT:  Renew indicated, you're unaware of

Alaei v SONY - 6/7/2022

117

1      any such circumstance.

2                    THE WITNESS:  Correct.

3                    THE COURT:  Go ahead, Counsel.

4                    BY MR. CASTIGLIONE:  (Cont'g.)

5      Q.    Isn't it not typical to seek non-renewal of an

6   employee without having a supervisor being supportive of the

7   non-renewal in your experience?

8      A.    That is atypical, yes.

9      Q.    Okay.  And here wasn't James Stellar pushing the non-

10  renewal and not Dr. Harvey Charles, Dr. Alaei's supervisor?

11     A.    Sorry, James who, Counsel?

12     Q.    James Stellar.

13     A.    Can you repeat -- repeat the question?

14     Q.    Sure.  Here it was James Stellar, the Provost pushing

15  for non-renewal of Dr. Alaei, not Harvey Charles, Dr. Alaei's

16  supervisor.

17     A.    That's correct, among others, but yes.

18     Q.    Was the President also pushing non-renewal?

19     A.    President didn't seem to have I -- I wasn't that

20  close to (unintelligible).

21     Q.    Okay.  Do you recall -- strike that.

22         Was it uncommon at the time to have direct and specific

23  involvement by a provost in seeking to pro -- promote non-

24  renewal of employee at that time, as compared to the Kamair

25  Alaei situation?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

 1        A.    It's uncommon, yes.

 2        Q.    Was James -- provost micromanaging that non-renewal?

 3              THE COURT:  Argumentative, next question.  And

 4        not terribly specific.

 5              MR. CASTIGLIONE:  Sure.

 6              BY MR. CASTIGLIONE:  (Cont'g.)

 7        Q.   If I can refer you to your transcript.

 8              THE COURT:  No, no, because there's no question

 9        on the floor.  Next question.

10              MR. CASTIGLIONE:  Okay.

11              BY MR. CASTIGLIONE:  (Cont'g.)

12        Q.    Was Provost Stellar undertaking such a level --

13   degree of supervision that was not previously done, it was very

14   unusual?

15        A.    I'd say it was uncommon.

16        Q.    Usually in a non-renewable situation, the provost

17   isn't pushing either way for renewable or non-renewable.  Isn't

18   that fair to say?

19        A.    For professionals, yes.  For faculty, the provost is

20   an integral part of the continuing appointment and tenure

21   process.

22        Q.    I'm sorry, I couldn't hear you.

23        A.    I said, so professionals, it's uncommon.  For faculty

24   the provost is an integral part of all tenure reviews and

25   continuing appointment reviews.

```
 1       Q.    Okay.  Do you know was Dr. Alaei tenured at that
 2  time?
 3       A.    He was not.
 4       Q.    Who's Bruce Szelest at the time in February of 2018?
 5       A.    Bruce Szelest is the -- was the Chief of Staff to the
 6  President.
 7       Q.    Was he --
 8                   THE COURT:  President?
 9                   THE WITNESS:  To the -- to the President of the
10       university, Judge.
11                   BY MR. CASTIGLIONE:  (Cont'g.)
12       Q.    Was he playing a substantial role in overseeing
13  employment issues concerning Dr. Alaei relative to this
14  disciplinary investigation?
15       A.    He was, yeah, in this particular one he was involved,
16  yeah.
17       Q.    Well, wasn't he playing a substantial role?
18                   THE COURT:  It's an imprecise question, Counsel.
19                   MR. CASTIGLIONE:  I'm sorry.
20                   THE COURT:  It's an imprecise question.
21                   BY MR. CASTIGLIONE:  (Cont'g.)
22       Q.    Was Bruce Szelest playing a -- a large role in
23  overseeing and making decisions or at least conveying decisions
24  regarding issues with Dr. Alaei while during the disciplinary
25  investigation?
```

1      A.    I could say he was playing the same role that he's

2  played in any high-level investigation that we make the

3  President's office aware of.

4                    THE COURT:  And what role would that be?

5                    THE WITNESS:  For essentially being a conduit

6        for information, Judge.

7                    THE COURT:  Between the boots on the ground and

8        the President?

9                    THE WITNESS:  Yes, Judge.

10                   MR. CASTIGLIONE:  (Cont'g.)

11     Q.    If I can refer you to your deposition transcript page

12  forty-two.

13     The question posed, is it fair to say Mr. Szelest was

14  overseeing employment issues at that time for Dr. Alaei?

15     He was certainly playing a substantial role?  No, he was

16  certainly playing a substantial role.

17     Does that recall your -- do you recall that testimony?

18     A.    I do.

19     Q.    Okay.  And is it fair to say that based upon your

20  interactions, Mr. Szelest was also pushing the efforts to non-

21  renew Dr. Alaei and buy him out?

22     A.    That seemed to be the position of leadership, yes.

23     Q.    Okay.  Do you recall an issue being raised during the

24  non-renewal process for Dr. Alaei about Dr. Alaei being

25  entitled to two years of payment for continued employment based

Alaei v SONY - 6/7/2022

1  upon his hiring agreement?

2       A.   I do.

3            THE COURT:  That discussion with who counsel,

4       did you say?

5            MR. CASTIGLIONE:  A discussion amongst SUNY

6       personnel?

7            THE COURT:  And you answered?

8            THE WITNESS:  Yes.

9            THE COURT:  Go ahead.

10           BY MR. CASTIGLIONE:  (Cont'g.)

11      Q.   If I can refer you to Claimant's Exhibit One.  Do you

12  recognize this document?

13           THE COURT:  It's the appointment letter, sir.

14           THE WITNESS:  Yes, I do.

15           MR. CASTIGLIONE:  Okay.

16           BY MR. CASTIGLIONE:  (Cont'g.)

17      Q.   Let me ask you, at the time there was a discussion

18  about payment to Dr. Alaei if he was being non-renewed and

19  bought out.  Was there any discussion amongst SUNY personnel or

20  H.R. about benefits besides salary owed to Dr. Alaei?

21      A.   Not that I can recall.

22           THE COURT:  Outside of comp -- outside of

23      salary, Counsel?

24           BY MR. CASTIGLIONE:  (Cont'g.)

25      Q.   Yes.  Separate from salary.

1      A.   Not that I can recall.

2      Q.   Okay.  As part of your investigation and work in H.R.

3   regarding the Alaei matter, you had read this April 16, 2014,

4   appointment letter.  Is that correct?

5      A.   Yes, sir.

6      Q.   And your understanding was the terms were that Dr.

7   Alaei was entitled to two additional years of compensation if

8   SUNY determined to non-renew his employment?

9               MR. ROTONDI:  Objection, Your Honor.

10              THE COURT:  Repeat the question, I'm sorry.

11              MR. CASTIGLIONE:  Your understanding of the

12         terms of this agreement was that Dr. Alaei was entitled to

13         two additional years of compensation if SUNY Albany

14         determined to non-renew his employment?

15              THE COURT:  The objection is sustained.

16              MR. CASTIGLIONE:  Your Honor, this was part of

17         his duties with H.R. in this matter.  And so I think it's

18         entirely relevant if the person charged with making these

19         decisions and advising the president had an opinion based

20         on his job function that it should be admitted as

21         evidence.

22              THE COURT:  The objection is sustained.

23              MR. CASTIGLIONE:  Your Honor, I would just like

24         to note for the record, the issue with an agreement it is

25         certainly a contract.  Interpretation is a function for

Alaei v SONY - 6/7/2022

1    the court.  If the interpretation is considered -- excuse

2    me.  If the contract has been ambiguous, the court is able

3    to take information outside of the four corners of the

4    document.

5          And so just for the record as to these issues,

6    my client would like to preserve his right that he's --

7    attempted to introduce that evidence and --

8          THE COURT:  Second time he's gone on record

9    (unintelligible), Counsel.  Thank you.

10         MR. CASTIGLIONE:  Thank you.

11         BY MR. CASTIGLIONE:  (Cont'g.)

12    Q.   Did you advise the President's office about your

13 opinion regarding what kind of compensation Dr. Alaei was

14 entitled to under his appointment letter as part of the non-

15 renewal buyout process?

16         MR. ROTONDI:  Objection, Your Honor.

17         THE COURT:  Sustained.

18         BY MR. CASTIGLIONE:  (Cont'g.)

19    Q.   I want to talk to you about U.U.P. issues.  As of

20 2018, do you know how many U.U.P. covered members were working

21 for SUNY Albany?

22    A.   Approximately, yes.

23    Q.   How many?

24    A.   Approximately twenty-four hundred.

25    Q.   And did H.R. have a process for having those

1    employees' appointment and agreements or contracts approved by

2    the Office of State Comptroller?

3        A.    I don't know.

4        Q.    Are you aware of SUNY Albany ever seeking to have

5    contracts or appointment letters for U.P.P. members approved by

6    the Office of State Comptroller?

7        A.    I'm not.

8        Q.    Okay.  Are you aware of whether SUNY Albany had

9    pursued at any point in 2018 or to present, not paying a U.U.P.

10   member because their contract or appointment letter had not

11   been approved by the Office of State Comptroller?

12       A.    Can you repeat that question?

13       Q.    Sure.  Are you aware of whether SUNY Albany from 2018

14   to today has ever sought to not pay an employee based on their

15   appointment letter or contract not being approved by the

16   Comptroller's Office?

17       A.    SUNY Albany's specifically not in any public forum.

18              THE COURT:  I'm sorry, say it again?

19              THE WITNESS:  Not in any public forum, Judge.

20              THE COURT:  Not in any public forum?

21              THE WITNESS:  Correct.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23       Q.    Can you explain what that means?

24       A.    We've never argued in court and UAlbany argued in

25   court, but we've certainly had discussions about it and other

Alaei v SONY – 6/7/2022

1  unrelated personnel matters.

2      Q.   So are you aware of SUNY Albany not paying -- strike

3  that.

4      If a person who was covered by the U.U.P. they were a

5  member and SUNY Albany refused to pay them because their

6  appointment letter or contract had not been approved by the

7  Comptroller's Office?

8      A.   No.

9      Q.   You're not aware of that?

10     A.   That we -- that we haven't actually never -- restate

11  the question, please?

12     Q.   Sure.

13          THE COURT:  I got -- I got it.

14          BY MR. CASTIGLIONE:  (Cont'g.)

15     Q.   If I can refer you to Claimant's Exhibit Forty-four.

16  Are you -- if I can show you Claimant's Exhibit Forty-four in

17  evidence.  Are you somewhat --recognize this letter from

18  several years ago?

19     A.   I do.

20     Q.   Okay.  And is this the letter that H.R. had provided

21  to Dr. Alaei after the counseling session on August 9, 2018?

22     A.   It is.

23     Q.   Okay.  And this letter, the salary hundred and thirty

24  thousand annual salary this notes University will pay the

25  balance of salary meaning on your term appointment for August

Alaei v SONY - 6/7/2022

1    10, 2018 through August 9, 2019.  Did this payment include any

2    benefits or other financial compensation besides salary?

3        A.   No.  The Health Insurance (unintelligible)

4    approximately a month and a half thereafter (unintelligible)

5    payroll and there are some U.U.P. benefits that go on for some

6    months, but no.

7        Q.   Okay.  Do you know did SUNY Albany pay Social

8    Security in that a hundred-and thirty-thousand-dollar payment

9    or any other taxes or anything?

10       A.   I don't know.  But I can tell you that it's customary

11   for standard withholdings, federal state, taxes, et cetera to

12   come out of such checks.  And I -- I don't know.

13       Q.   Okay.  Do you know who Bill Hedberg was at the time

14   in 2018?

15       A.   Yes.

16       Q.   Can you explain to me who he was and what position he

17   held?

18       A.   Still alive.  He's a --.

19               THE COURT:  What's that?

20               THE WITNESS:  I said Bill is still alive.

21               THE COURT:  Okay.  Right, right.

22               THE WITNESS:  Bill is recently retired.  Bill

23       was at the time the Senior Vice Provost for Academic

24       Affairs was his title.  And he worked for the Provost.

25               BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY - 6/7/2022

1    Q.    And would Mr. Hedberg have responsibility or -- or

2    oversight over issues concerning employee compensation under

3    their appointment letters or contracts?

4    A.    Yes.  Under Academic Affairs, yes.

5    Q.    Okay.  I can refer you to -- if I can refer you to

6    Claimant's Exhibit Fifty-four, which is in evidence says a term

7    appointment renewal notice reminder to Harvey Charles from

8    Human Resources.  Are you familiar with this document?  There's

9    a second page.

10    A.    This -- yes.

11    Q.    Can you explain to me what this is?

12    A.    So this is a -- a standard what appears to be a

13    standard renewal notice that we sent (unintelligible) we're

14    getting close to the renewal time period.  And the second page

15    is (unintelligible) can just, thank you and move it up -- yeah,

16    there you go.  So that would be the actual form that gets

17    processed by personnel operations assuming that the supervisor

18    approves of the renewal.

19    Q.    Okay.  This document dated May 1, 2018 says, next

20    renewal period 5/1/2019 to 4/30/2020.  Does that mean that

21    there was already a period of renewal through 5/18 to 5/19?  So

22    in other words, that was already a period of employment given

23    to Dr. Alaei?

24    A.    The dates again, please?

25    Q.    So this -- this letter -- this form it says, next

1    renewal period 5/1/2019 to 4/30/2020.

2        A.    Yes.

3        Q.    And so that would mean if there was going to be a

4    renewal, it would be for that period?

5        A.    That's correct.

6        Q.    Okay.  So it's fair to say then at this time when

7    this letter was issued, Dr. Alaei had already been renewed for

8    5/1/2017 -- excuse me, 5/1/2018 to 5/1/2019.  So the prior

9    period he had already been renewed?

10       A.    It -- it would mean that he likely, yeah, that he

11   likely had a term appointment that was already approved up

12   until prior to the 5/1/19.

13       Q.    So if there was a new appointment, it would be

14   effective 5/1/2019 to 4/30/2020?

15       A.    Correct.  If there was, correct.

16       Q.    If there was, okay.  And is that reflective of the

17   form itself that says current end date 4/30/2019 if it was

18   renewed?

19       A.    If it was renewed, yes.

20       Q.    Showing you what's been marked into evidence as

21   Exhibit Forty-nine.  It's a notice from Randy Stark to Bureau

22   of Payroll Service, New York State Office of Comptroller.  It

23   says, per Article 32.3 of the agreement between N.Y.S. and

24   United University Professions, we are exercising our right to

25   terminate the reference employee, effective 8/11/2018 and pay

Alaei v SONY - 6/7/2022

1  him the balance of salary on his appointment through the

2  expiration of that appointment 8/10/2019, B.O.B.  What does

3  B.O.B. mean?

4       A.   Beginning of business.

5       Q.   Okay.  Do you recognize this form is something

6  typical H.R. would put together?

7       A.   No.  But I can tell you that we are occasionally

8  asked by R.C. to certify, you know why we are paying --.

9       Q.   Okay.  And --.

10      A.   (unintelligible) since that time.

11      Q.   So this is the balance of salary on his appointment

12  through the expiration of appointment 8/10/2019.  So it was --

13  the period was 8/11/2018 paid to 8/10/2019?

14      A.   Yes.

15      Q.   But the exhibit at Claimant's Fifty-four indicates

16  that Dr. Alaei had already been renewed through 5/1 - excuse

17  me, 4/30/2019?

18      A.   No, it doesn't.  What it indicates is that if they

19  wanted to renew him, they could have renewed him through that

20  period.

21      Q.   But doesn't it say the next renewal period?  It says

22  next renewal, meaning if they wanted to renew him again, it

23  would be for 5/1/2019 to 4/30/2020.

24      A.   They could have, but they didn't.

25      Q.   Right.  So his existing renewal would have gone up to

Alaei v SONY – 6/7/2022

1  4/30/2019.

2        A.    No, that's not how the contract operates.  So Article

3  32 says that based upon your years of service in the

4  university, you get a certain time period of notice

5  (unintelligible).  So in this case, there was not a new term

6  appointment, right.  So he (unintelligible) more than two years

7  of service.

8        So he got one year's notice of non-renewal and his non-

9  renewal on 8/10/18 and that ending 8/10/19.

10        Q.    8/10/19, okay.  So he already had employment through

11  8/10/19?

12        A.    No, he was renewed to 8/10/19, non-renewed beyond

13  that, and then bought out for the year in between.

14        Q.    So when you say he was renewed to 8/10/19.  Wouldn't

15  that only be a renewal for a few months and his term was a

16  year?

17        A.    No, not if we effectuated on 8/10/18.

18        Q.    But if he had a one-year appointment, and his

19  appointment --.

20        A.    You get one year notice.

21              THE COURT:  Leave that out for a second?

22              MR. CASTIGLIONE:  Sure.

23              THE WITNESS:  One year notice, not a one-year

24        appointment.  So the way this works when we -- when there

25        is no new term appointment, that becomes a rolling

1          calendar basis, like, rolling date basis.  So if you would

2          be due one year's notice of non-renewal as of let's say

3          5/1/18, right.

4                    BY MR. CASTIGLIONE:  (Cont'g.)

5          Q.   So you're saying he had to have notice of non-renewal

6    one year before his terms were to expire?

7          A.   Correct.

8          Q.   Okay.  And so here he was given notice of non-renewal

9    when?

10         A.   He's given notice of non-renewal on 8/10/18 and that

11   it was his renewal -- that his term would end on 8/10/19 and

12   then we said, we're going to buyout that contract.

13         Q.   But my point is -- so he already had the year 2019 up

14   to 8/10, because you were giving him notice twelve months of

15   non-renewal in August, saying we're giving you twelve months

16   and your term is going to -- your existing term was going to

17   expire in 2019.

18         A.   No.  What -- what this is saying to the supervisor

19   is, hey, if you want to do this, you can.  But this would be

20   the day that you would typically be (unintelligible) they

21   didn't do that.  The days rolled forward, then we non-renewed.

22   You got the one year's notice of non-renewal, we bought out the

23   in-between.

24         Q.   Right.  But if you were required under U.P.P. to give

25   him twelve-months advance notice of a non-renewal --

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1       A.   Right.

2       Q.   -- wouldn't that mean he already had guarantee for

3   those twelve months?

4       A.   No, wouldn't mean that he -- would not guarantee an

5   additional future (unintelligible) it would only guarantee the

6   notice period of employment.

7       Q.   Right.  But -- but twelve months before the notice

8   period ends, you have to give notice that you're not renewing.

9   Meaning you already have those twelve months and we're giving

10  you twelve-months' notice now that we're not going to renew you

11  in twelve months.

12      A.   No, it's not a compounded notice.  It's not notice on

13  notice, in less, right.  There's already an existing general

14  appointment.  I know this is confusing.  But you know it -- so

15  that -- yeah, there's that notice on top of notice.  He

16  received his one-year notice of non-renewal and then he was

17  subsequently non-renewed in the same letter and bought out.

18              THE COURT:  No, so it is confusing but let me.

19      All right keep -- keep that exhibit.

20              MR. CASTIGLIONE:  Sure.

21              THE COURT:  So Exhibit Fifty-four.  And counsel

22      I'm going to try and characterize the point I think you're

23      trying to make and if it's so I'll ask the witness to

24      respond to it.  Are you trying to make the point that

25      Exhibit Fifty-four had already renewed him?

1          MR. CASTIGLIONE:  Not that it already renewed

2      him that there was a prior letter and I'll pull it up.  So

3      if I can refer you to Exhibit Forty-seven -- Claimant's

4      Exhibit which is a series of letters, appointment letters,

5      including one dated April 6, 2017.  This letter says it is

6      my pleasure to confirm a renewal of your full-time term

7      appointment to the faculty as lecturer.

8              This renewal is for the period beginning May 1,

9      2018 and ending April 30th, 2019.  Your annual salary

10      would be a hundred and thirty thousand dollars.  Does not

11      this letter established that he had already been renewed

12      for May 1, 2018 ending April 30th, 2019.

13              THE WITNESS:  It does.

14          BY MR. CASTIGLIONE:  (Cont'g.)

15      Q.   And so if you are going to non-renew him.  You would

16   need to give him twelve-months' notice of non-renewal before

17   April 30, 2019, correct?

18      A.   No, we would have to give him one year's notice prior

19   to the end of what the actual term was.  So what we did was --

20   I understand they're confusing.  I think I -- if you allow me,

21   Judge.  Okay.  So he had an appointment until 30th, 2019,

22   right.  In August of '18, the University decides we're non-

23   renewing.

24      In order to comply with the one-year notice of non-

25   renewal.  They extended this appointment from April 3, 2019 to

Alaei v SONY - 6/7/2022

134

1   August 10th, '19 and then bought it out.

2       Q.   So they extended it you're saying for May, June,

3   July, August, even though he had a one term -- one year term,

4   at least, appointment was his full-time appointment?

5       A.   That's correct.

6       Q.   So where does it say that they can renew him for

7   months only and not the one-year term?

8       A.   Board of Trustees policies allows us to renew term --

9   .

10      Q.   Glad you brought that up.  I'm going to ask you to

11  show me where it says that?  Showing you the board -- the

12  policies of the Board of Trustee for the State University of

13  New York in a claim number six, if you can direct me to the

14  section that says they can do month-to- month extension versus

15  a one-year appointment if that was the term.

16              THE COURT:  Do you know where to look?

17              THE WITNESS:  I don't.  We typically -- at the

18        collective bargaining agreement, Judge.

19              BY MR. CASTIGLIONE:  (Cont'g.)

20      Q.   How about --?

21      A.   (unintelligible).

22      Q.   Let's see here I'll -- I'll -- I'll pull it up.  If I

23  can refer you to page twenty-five -- if I can refer you to --,

24              THE COURT:  What exhibit are we in?

25              MR. CASTIGLIONE:  This is Exhibit Six, Your

1    Honor.

2              THE COURT:  Okay and -- and --.

3              MR. CASTIGLIONE:  State Policies of the Board of

4    Trustees.

5              THE COURT:  You're referring the witness'

6    attention to which section?

7              MR. CASTIGLIONE:  Title D, it's page thirteen in

8    this document.  It's part of Section Article 11

9    Appointment of Employees.

10             THE COURT:  Okay.  Go ahead.

11             BY MR. CASTIGLIONE:  (Cont'g.)

12   Q.   It says definition except as provided in Section 6, a

13   term appointment shall be an appointment for a specified period

14   of not more than three years which shall automatically expire

15   at the end of that period unless terminated earlier because of

16   resignation, resentment or termination.

17        Then under renewal of term at number four it says, except

18   as provided in this article term appointments may be renewed by

19   the chief administrative officer of the college for successive

20   period of not more than three years.  Such renewal shall be

21   reported to the chancellor.  No term appointment of itself

22   shall be deemed to create any manner of legal right interest or

23   expectancy in any other appointment or renewal.

24        And then I can refer you to the definition eligibility for

25   five.  Section 5 says notice, in the event a term appointment

Alaei v SONY - 6/7/2022

1   is not to be renewed upon expiration, the chief administrative

2   officer, chief administrative officer's representative will

3   notify the appointee in writing not less than twelve months

4   prior to the expiration of a term after two more years of an

5   interrupted -- interrupted service with the university.

6        So can you explain to me where it says that they can renew

7   for months versus the employees actual term in their employment

8   letter?

9              THE WITNESS:  For successive periods of not more

10          than three years.  Doesn't mean we can't do a term

11          appointment for one month, three months, four months, six

12          months to the extent we want to, and frankly, it's our

13          practice to do so.  Particularly when it's routine to do

14          it in order to meet the notice requirements in sec --

15          subsection 5.

16              BY MR. CASTIGLIONE:  (Cont'g.)

17       Q.   So if you do that, don't you have to give twelve

18   months' notice before May 2018 when you renewed for monthly

19   periods?

20       A.   We didn't renew for a monthly period.  We renewed for

21   the one-year notice period.  We didn't have an appointment to

22   (unintelligible).  He had an appointment till April 30th of

23   '19.

24       Q.   Yeah, but under the letter I previously referred you

25   to April 6, 2017.  He had the appointment through April 30th,

Alaei v SONY - 6/7/2022

1  2019 already.

2      A.   That's correct.

3      Q.   And so you're saying you just renewed for May, June,

4  July, August 2019?

5      A.   Correct.  We renewed and non-renewed in the same

6  notice so he got the full year.

7      Q.   And was there any notice of renewal that was

8  processed that says four months that was provided to Harvey

9  Charles or my client or any, anybody else besides that

10  termination letter?

11     A.   It's in the notice letter which I mean referring his

12  termination ... in the notice letter provided on May 10th, '19.

13     Q.   So you're saying the letter --

14     A.   Sixty-six.

15     Q.   Sixty-six.

16     A.   Nope sorry.

17     Q.   That's all right.

18             THE COURT:  Isn't it Forty-four.

19             MR. CASTIGLIONE:  Forty-four.

20             THE WITNESS:  It was (unintelligible) the same

21      numbers, Judge, I was (unintelligible).

22             BY MR. CASTIGLIONE:  (Cont'g.)

23     Q.   So you're saying this letter about paying the balance

24  on your term appointment from August '18 through August '19, so

25  that was the notice of renewal for a few months calling it a

Alaei v SONY – 6/7/2022

1    term appointment for that year period?

2        A.    Correct.

3        Q.    Okay.

4        A.    So that first paragraph and then subsequently the

5    dates, yeah.

6        Q.    And then even though -- even though Mr. Stark had

7    identified they were exercising a right to terminate as well if

8    I can refer you to -- I'm sorry.  Even though Mr. Stark had

9    issued this letter dated, which is in evidence Claimant's

10   Fifty, August 21, 2018, saying this confirms that the non-

11   renewal and contract buyout of the referenced employee not

12   disciplinary matter?

13       A.    Yes, I'm sorry.  What was the question?

14       Q.    So you said there was a renewal for a few months

15   period but the letter from Mr. Stark to the comptroller

16   indicates it was a non-renewal and contract buyout?

17       A.    So -- yeah, I mean, we didn't need to notify O.S.C.

18   that we renewed and non-renewed.  They needed to know that we

19   non-renewed and bought out that's how Article 32 operates.

20       Q.    Okay.

21            MR. CASTIGLIONE:  That's all I have.

22            THE COURT:  Cross examination.

23            MR. ROTONDI:  Yes, Your Honor.

24            CROSS EXAMINATION BY MR. ROTONDI:

25       Q.    Mr. Selchick, you were asked questions about the

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/7/2022

1   alternate assignment letter?

2       A.   Yes.

3       Q.   Is that letter a letter like what the claimant here

4   received.  Is that typically sent when someone's put on

5   alternate assignment?

6       A.   Yes, it's a template.

7       Q.   And it's a template?

8       A.   Yes.

9       Q.   All right.  And I assume the -- the -- the actual

10  alter -- alternate assignment offered the employee differs?

11      A.   That's -- that's correct, yeah.

12      Q.   But the remainder of the language is -- is fairly --

13  is pretty much a template?

14      A.   Correct.  I -- I apologize for interrupting but if I

15  may, can I use the bathroom?

16              THE COURT:  Can you what?

17              THE WITNESS:  May I use the bathroom?

18              THE COURT:  Yeah, everybody stand at ease he's

19      off the record at ease.

20              (Off the record 14:50:12 to 14:51:46)

21              THE MONITOR:  On the record.

22              BY MR. ROTONDI:  (Cont'g.)

23      Q.   Mr. Selchick, when an employee is placed on alternate

24  assignment is it typical that they will be working from home?

25      A.   Yes.

Alaei v SONY – 6/7/2022

1    Q.    And is it typical they are asked to stay off campus?

2    A.    Yes.

3    Q.    Okay.  During the course of an investigation, do you

4    inform the subject of the investigation, the nature of the

5    investigation?

6    A.    No.

7    Q.    Okay.  And why is that?

8    A.    To protect the sanctity of the investigation.

9    Q.    Elaborate on that a little more.

10    A.    To protect the evidence, the witnesses and to protect

11    the, you know, the complainants as well as the witnesses from

12    potential interference, retaliation from the -- from the

13    potential respondent and/or the respondent.  Ultimately to --

14    to have people free from coercion, duress, things of that

15    nature.

16    Q.    Is that true in all the investigations you've

17    conducted?

18    A.    It is.

19    Q.    I'm not going to go through -- I'm not going to go

20    through the U.U.P. with you.  But is grievance defined in the

21    U.U.P.?

22    A.    It is.

23    Q.    Okay.  And do you know where it's found?

24    A.    It should be found in Article 7.

25    Q.    Mr. Selchick -- excuse me, I'm going to show you

1  what's in evidence as Plaintiff's Exhibit Five and I believe

2  you were asking questions about that previously.

3       A.   Yes.

4       Q.   So U.U.P agreement?

5       A.   Yes.

6       Q.   And I just want to direct your attention to Section

7  4.12.  And is grievance defined in that section?

8       A.   It is.

9       Q.   Okay.  Where is the grievance procedure found --

10      A.   Grievance --

11      Q.   -- in the U.U.P.?

12      A.   The grievance procedure in and of itself is contained

13 in Article 7.

14               THE COURT:  What did you say?

15               THE WITNESS:  In Article 7, Judge.

16               BY MR. ROTONDI:  (Cont'g.)

17      Q.   And under the U.U.P. is an Alternative Assignment

18 considered disciplinary?

19               MR. CASTIGLIONE:  (unintelligible), Counsel.

20               MR. ROTONDI:  See, now you know how it feels.

21               MR. CASTIGLIONE:  Yeah, I know.

22               BY MR. ROTONDI:  (Cont'g.)

23      Q.   How -- are you familiar with the terms and conditions

24 in the U.U.P.?

25      A.   I am.

Alaei v SONY - 6/7/2022

1    Q.   And how have you become familiar with -- with those

2   terms and conditions?

3    A.   During the course of my employment for almost five

4   years.

5    Q.   Is there anything in the U.U.P. which requires a non-

6   renewal begin with the employee's supervisor?

7    A.   No.

8    Q.   In what section of the U.U.P. can the non-renewal

9   process be found?

10    A.   Just Article 32.

11    Q.   Is there anything in the U.U.P. that prevents the

12   non-renewal process to operate simultaneously with a Title Nine

13   investigation?

14    A.   No.

15    Q.   Is there anything that U.U.P. that requires --

16   withdrawn.

17    How many non-renewals have you been involved with?

18    A.   To date?

19    Q.   Yes.

20    A.   Approximately, two dozen.

21    Q.   Okay.  And back in February 2018, it was -- it was

22   about how many?

23    A.   Maybe a handful.

24    Q.   How often is the -- the recipient of a non-renewal

25   letter told the reason for the non-renewal?

Alaei v SONY - 6/7/2022

1        A.   Never.

2              THE COURT:  Did you say never?

3              THE WITNESS:  Never.

4              BY MR. ROTONDI:  (Cont'g.)

5        Q.   If you know, does U.U.P. require grounds for non-

6    renewal?

7        A.   Does not.

8        Q.   When Mr. Stark had testified and there was testimony

9    regarding -- withdrawn.

10       Do you know if -- if the doctor was given what's known as

11   a counseling letter?

12       A.   Yes.

13       Q.   Okay.  And do you know if that was after it was

14   determined that the -- the allegations are unsubstantiated?

15       A.   Yes.

16       Q.   Okay.

17              THE COURT:  Was that the letter given the day

18       before he was terminated?

19              THE WITNESS:  Yes.

20              THE COURT:   Is that to what you're referring?

21              THE WITNESS:  Yes.

22              THE COURT:  Okay.  Counsel, go ahead.

23              BY MR. ROTONDI:  (Cont'g.)

24       Q.   Is that standard practice to give someone a

25   counseling memo if -- if Title Nine charges are

1   unsubstantiated?

2       A.   There's not -- there's no standard practice.

3   Everything is case-by-case basis.  But, you know, given the

4   information that we received we felt the counseling was

5   appropriate.

6       Q.   You were also asked this question about the Title

7   Nine formal complaint versus informal complaint, correct?

8       A.   That's correct.

9       Q.   And then you in the course of answering, I believe

10  you talked about third-party complaints.

11      A.   That's correct.

12      Q.   What do you mean by third-party complaints?

13      A.   Mandatory reports or reports made by other employees,

14  community members, or the like who make, you know, either human

15  resources or other mandatory reporters aware of these types of

16  allegations.

17      Q.   Okay.  Do you know who Elizabeth Grey is?

18      A.   I do.

19      Q.   Who is she?

20      A.   Elizabeth Grey was previously employed by the

21  university.  I believe Elizabeth was an assistant vice provost.

22  I don't recall beyond that.

23      Q.   Okay.  And do you know if Elizabeth Grey brought the

24  student complaints to the Title Nine office?

25      A.   I do.

Alaei v SONY - 6/7/2022

1     Q.    Okay.  She did?

2     A.    I was told that she brought these concerns to Jim

3  Stellar who brought them to the Title Nine Office.

4              MR. CASTIGLIONE:  Objection.  I don't think

5      Elizabeth Grey from my understanding brought anything.  I

6      think it was a discussion with --.

7              THE COURT:  Hold on.

8              MR. CASTIGLIONE:  Sure.  Okay. I'll object facts

9      not in evidence.

10             THE COURT:  Well, you can cross examine this

11     witness.

12             MR. CASTIGLIONE:  Okay.

13             THE COURT:  Now, is it Ray or Grey?

14             THE WITNESS:  Grey, Judge.

15             THE COURT:  G --

16             THE WITNESS: G-R-E-Y if I recall, correctly.

17             THE COURT:  Okay.  And -- and your testimony was

18     some complaint was brought to her.  She brought it to --.

19             THE WITNESS:  To the then interim president,

20     provost -- an actual provost, James Stellar.

21             THE COURT:  Who took it to Title Nine.

22             THE WITNESS:  Correct.

23             THE COURT:  Go ahead, Counsel.

24             BY MR. ROTONDI:  (Cont'g.)

25     Q.    And is that something you would call third- party

Alaei v SONY – 6/7/2022

1   complaint?

2       A.   Correct.

3       Q.   And just based on what you know, was the student

4   interviewed by the Title Nine Office?

5       A.   She was.

6       Q.   You were questioned about the -- about the allegation

7   being unfounded.  And you had mentioned something about

8   preponderance of the evidence.  There was no notice of

9   discipline served upon the doctor, correct?

10      A.   That's correct.

11      Q.   Okay.  Why was that?

12      A.   Because I did not believe that we could prove that he

13  violated any particular policy.

14      Q.   What was the level of proof you require to serve a

15  notice of discipline?

16      A.   An arbitration, the just-cause standard requires that

17  we show by preponderance of the evidence.

18      Q.   So your determination defines the allegation

19  unfounded, doesn't mean there was no evidence, correct?

20      A.   That's correct.

21      Q.   Did you find evidence of wrongdoing?

22      A.   Evidence of, yeah.

23              MR. CASTIGLIONE:  Objection.

24              THE COURT:  Sustained.

25              BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY - 6/7/2022

1      Q.    Can we -- can we talk about the notice provision when

2  there is a non-renewal?

3      A.    Certainly.

4      Q.    First of all, when an employee subject to the terms

5  and conditions of the U.U.P. agreement is non-renewed, is there

6  a notice requirements found in the U.U.P.?

7      A.    Yes.

8      Q.    Okay.  Do you know where that is in the U.U.P.?

9      A.    Yes, Article 32.

10     Q.    Again, I'm going to show you what's been placed into

11  evidence as Plaintiff's Exhibit Five, U.U.P. agreement?

12     A.    Yes.

13     Q.    Okay.  And you'd mentioned that the non-renewal

14  provisions are found in Article 32.

15     A.    That's correct.

16     Q.    Okay.  Is this what you're referring to?

17     A.    It is.

18     Q.    Okay.  And this is the article that governs non-

19  renewals?

20     A.    That's correct.

21     Q.    I'm going to direct your attention to Section 32.3.

22  What is -- what is that provision?

23     A.    That provision allows the university to essentially

24  elect to buyout -- sorry, excuse me.  To -- to ... a term

25  appointment before it typically would, right?  And then to pay

1 the employee out the balance of their contract up to the

2 maximum, but it could be less.

3      Q.   And I believe Mr. Castiglione referred you to Section

4 32.1.d.

5      A.   Yes.

6      Q.   Is that a notice provision?

7      A.   It is.

8      Q.   Okay.  Twelve months prior to the expiration of a

9 term after two or more years of uninterrupted service within

10 the university?

11      A.   That's correct.

12      Q.   Is that the -- for the U.U.P., is that the longest

13 notice provision for a non-renewal?

14      A.   It is.

15      Q.   So there's nothing in the U.U.P. that would require

16 two years notice for non-renewable?

17      A.   No.

18      Q.   Now you explained how non-renewal works, can you when

19 -- there may have been some confusion on my part.  If you look

20 at the employees' term, they're currently serving.  How does

21 the notice -- the one-year notice kind of fit into the existing

22 term?

23      A.   So the employee has to receive the appropriate amount

24 of notice prior to the expiration of that term, right.  Or the

25 remedy is that the term has to be extended to meet that notice

Alaei v SONY - 6/7/2022

1   period.  This is a frequent grievance that we received from

2   U.U.P.

3        Q.   I'm sorry?

4        A.   It's a frequent grievance we received from U.U.P.

5             THE COURT:  So is that your way of explaining

6        why the doctor was paid for one year from August of 2018

7        to August of 2019?

8             THE WITNESS:  It is, Judge.

9             THE COURT:  Which was not coterminous with his

10       previous dates of -- of service.

11            THE WITNESS:  That's correct, Judge.

12            BY MR. ROTONDI:  (Cont'g.)

13       Q.   And was there anything unusual about that notice of

14   non-renewal in Dr. Alaei's case compared to other notices of

15   non-renewal?

16       A.   No.

17       Q.   Okay.  You've dealt with -- would you -- do you deal

18   with grievances?

19       A.   Yes.

20       Q.   Have you dealt with a grievance based upon the notice

21   provision in Article 32 of the U.U.P.?

22       A.   I have.

23       Q.   Okay.  Is there anything in the U.U.P. that requires

24   an employee be informed of why his contract has been bought

25   out?

Alaei v SONY − 6/7/2022

1     A.   No.

2     Q.   Have you been involved in other buyouts?

3     A.   Yes.

4     Q.   Okay.  How often?

5     A.   As of late, a quite number of -- excuse me, a quite

6 larger number, I would say approximately eight.

7             MR. ROTONDI:  Just one minute, Your Honor.

8             BY MR. ROTONDI:  (Cont'g.)

9     Q.   Are you -- are you aware Dr. Alaei did bring a

10 grievance during this time period we've been discussing?

11    A.   I am.

12    Q.   And do you know what the -- what the grievance --

13 what the complaints were in the grievance?

14    A.   Yes, the grievance we received alleged that he was

15 subject to discipline outside of Article 19 when we revoked his

16 email access.

17           THE COURT:  When what?

18           THE WITNESS:  When we revoked his email access,

19    Judge.

20           BY MR. ROTONDI:  (Cont'g.)

21    Q.   Do you know if there was ever a resolution to that

22 grievance?

23    A.   I do.

24    Q.   What was the resolution?

25    A.   I would receive notice that the -- excuse me, that

Alaei v SONY - 6/7/2022

1    the grievance was settled by mutual agreement between the

2    parties by the State reaffirming its obligations and you know,

3    under Article 19.

4        Q.   Is that after Dr. Alaei had already -- after his

5    contract had already been bought out, if you know?

6        A.   I don't recall what the exact (unintelligible).

7                MR. ROTONDI:  That's all I have, Your Honor.

8                THE COURT:  Redirect.

9                MR. CASTIGLIONE:  Yes, thank you, Your Honor.

10        The grievance -- sorry, I'm just trying to find the

11        grievance documents.  Oh I got it.

12                REDIRECT EXAMINATION BY MR. CASTIGLIONE:

13        Q.   Mr. Selchick --

14                THE COURT:  Counsel, microphone.

15                MR. CASTIGLIONE:  Sorry, Your Honor.

16                THE WITNESS:  Happy mine is stationary.

17                BY MR. CASTIGLIONE:  (Cont'g.)

18        Q.   What's that?

19        A.   I'm happy mine is stationery.

20        Q.   If I can refer you to Claimant's Exhibit Twenty-

21    eight.  You had mentioned that Dr. Alaei had filed grievances,

22    were they filed with the Human Resource Office or with the

23    Assistant Vice Chancellor for Employee Relations for SUNY

24    system?

25        A.   They were filed directly with system administration.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/7/2022

1    Q.    And is that what's required under the U.U.P.?

2    A.    I believe it's an option, but not necessarily

3 required.

4    Q.    You had mentioned there was a settlement.  Did you --

5 do you recall when that settlement was?

6    A.    I don't.

7    Q.    And then I -- and I'm sorry, I didn't hear Mr.

8 Rotondi.  Was it after my client had been terminated by

9 UAlbany?

10    A.    I don't recall.

11    Q.    Okay.  If I can show you a letter dated it's part of

12 Exhibit Twenty-eight, February 27, 2019 continuing with the

13 grievance this is in evidence on behalf of Dr. Alaei says in

14 the grievance involving Kamiar Alaei, grievant.  Was the

15 settlement after this letter when it went -- when it was set to

16 go to arbitration?

17    A.    I don't know.

18    Q.    Will they have a settlement before a case being set

19 for arbitration and still going?

20    A.    I can't imagine -- I can't imagine they would.

21    Q.    Okay.  So it's probably the settlement happened after

22 this letter?

23    A.    Most likely, yeah.

24    Q.    And do you know what the terms of the settlement

25 were?

Alaei v SONY - 6/7/2022

1      A.    I do.

2      Q.    What were they?

3      A.    All I recall is that it was that the State would

4   reaffirm its obligations under Article 19 and in exchange the

5   Union will withdraw the contract grievance.

6      Q.    And the grievance stated Claimant's Twenty-eight,

7   grievance March 20, 2018, Dr. Alaei was seeking certain relief

8   including cease and desist from violating the agreement ... to

9   note that UAlbany violated Dr. Alaei's contract and all

10  disciplinary rights.  Restored Dr. Alaei as Director of

11  G.I.H.H.R.

12      Restore Dr. Alaei as director of G.I.H.H.R. website.

13  Restore Dr. Alaei's access to his email account.  Rescind the

14  statements made by Dr. Charles and any other UAlbany employees

15  or agents that Dr. Alaei is no longer associated with or

16  director of G.I.H.H.R.  Was any of that relief provided in the

17  settlement between U.U.P. and the State as far as you're aware?

18      A.    Agreed to by the parties, no.

19      Q.    Okay.  Do you recall Dr. Alaei's U.U.P.

20  representative's name Maureen Seidel?

21      A.    I do.

22      Q.    Do you recall if Ms. Seidel had raised in May or

23  April 2018, the issue of Dr. Alaei being entitled to two years

24  of employment?

25      A.    I do.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/7/2022

1    Q.   And do you recall H.R. saying we're -- no we're going

2  with one year?

3    A.   I don't recall specifically, believe we said

4  something to that effect.

5    Q.   And ultimately it was H.R. said we're paying you from

6  August 2018 to August 2019.

7    A.   The one year, correct.

8    Q.   Yes.  Okay.

9    A.   That's correct.

10    Q.   Do you know in Article 7, if somebody can claim a

11  grievance after they've been terminated that they were

12  wrongfully not given their full salary or benefits under the

13  U.U.P.?

14    A.   I have had former employee contract grievances.  It's

15  -- they're few and far between.  So to answer your question

16  directly, no, I don't know.

17    Q.   And -- and isn't it clear -- strike that.

18    Isn't it understood by SUNY Albany that U.U.P. owns the

19  grievances not that U.U.P. member?

20    A.   Depends upon what step but as you get typically with

21  all unions, as you get further on in the steps, either the

22  Union or the grievant, you know, has the decision, but more

23  likely than not the Union would have the decision power later

24  on in the step process.

25    Q.   So ultimately, union could just decide to settle it

Alaei v SONY - 6/7/2022

1  before arbitration or at arbitration anyway the Union wanted

2  to?

3      A.    Should the exclusive bargaining agent decide to do so

4  I believe that they're welcome to.

5      Q.    Okay.  And -- and do you know in -- in Article 7 of

6  the U.U.P. which was -- Five.  Showing you Exhibit five, page

7  eight.  In this grievance procedure, if there's any language

8  that says after an employee has been terminated by SUNY Albany

9  and the Union decides they're not going to pursue any

10 grievances or any issues for that employee that the employee

11 can still maintain a grievance for money?

12     A.    Without -- I don't know without reviewing the whole

13 doc.

14     Q.    Okay.

15     A.    I don't believe so but I'm not -- it's a lengthy --.

16     Q.    And in fact at 7.6 of this document, 7.6.D.  This

17 says a grievance may be withdrawn at any time by the grievant

18 or U.U.P. as grievance representative?

19     A.    It's what it says.

20     Q.    Okay.  You talked about whether or not an employee

21 had a right to know about non-renewal, if I can refer you to

22 Article 33.  Article 33.2 says, request for reason an academic

23 or professional employee within ten working days following

24 receipt of a written notice that the employee's term

25 appointment will not be renewed upon the expiration.

1       Further employment following which expiration will be

2   required by the policies of Board of Trustees to be on the

3   basis of continuing permanent employment as the case may be,

4   may submit to the college president in writing and request that

5   the employee be apprised of the reasons for the notice of non-

6   renewal.

7       Do you know did the president here provide any reason for

8   notice and non-renewal to Dr. Alaei?

9       A.   The best of my knowledge, he did not.

10      Q.   Okay.  I want to talk to you now about you talked

11  about the appointments.  This is Article 30.  Are you familiar

12  with the appointment process for new faculty when they first

13  receive an appointment letter?

14      A.   Generally, yeah.

15      Q.   So this Article 30 talks about appointments, says

16  appointments of employees shall be made in accordance with

17  Article X of the policies, then goes on 30.3, all employees

18  shall upon appointment receive a notice of appointment or

19  reappointment containing the following information, academic or

20  professional rank.

21      It goes on to say, type of appointment term continuing

22  permanent or temporary duration or of appointment if a term or

23  expected duration of a temporary appointment basic annual

24  salary, effective date.  So if somebody comes on who's in the

25  U.U.P. as a new employee, they receive an appointment letter

Alaei v SONY - 6/7/2022

1   under this provision?

2        A.   Yes.

3        Q.   Okay.  So that's just part of the normal process?

4        A.   Correct.

5        Q.   Even if they're not in the U.U.P. Union before they

6   get their appointment letter?

7        A.   Correct.  Even I -- I have an appointment letter.

8        Q.   So you were appointed to -- to your job by an

9   appointment letter?

10       A.   My current title position --

11       Q.   When you first came on.

12       A.   -- yes, yes.

13       Q.   Okay.  So when you first started working with SUNY

14  Albany you received an appointment letter?

15       A.   That's correct.

16       Q.   Were you in the U.U.P. Union at that point?

17       A.   No.

18       Q.   Do you know if your contract was approved by the

19  State Comptroller's Office?

20       A.   I do not.

21       Q.   You had mentioned Elizabeth Grey.  Wasn't there an

22  investigation and a transcribe -- excuse me.  Wasn't there an

23  interview and a transcribed copy or transcription of that

24  interview?

25       A.   There was an interview.  I can't remember if we

Alaei v SONY - 6/7/2022

158

 1 || recorded it or not.

 2 ||      Q.   Did you ever directly discuss with Ms. Grey anything

 3 || about my client?

 4 ||      A.   I did.

 5 ||      Q.   You did?  Doesn't the -- well, you've never read the

 6 || transcript, is that what you're saying?

 7 ||      A.   What I'm saying is, I don't recall if -- if the

 8 || interview that I had with her was transcribed or not.

 9 ||      Q.   Right.

10 ||           MR. CASTIGLIONE:  Your Honor, based on testimony

11 ||      given earlier about Ms. Grey allegedly making a report.

12 ||      There is a transcript.  We do have a copy.  I don't have a

13 ||      copy here.  We would like to call Mr. Selchick tomorrow to

14 ||      rebut that testimony based on what's in the transcript.

15 ||           THE COURT:  Rebut what testimony?

16 ||           MR. CASTIGLIONE:  Mr. Selchick's testimony that

17 ||      Elizabeth Grey allegedly reported some concern to

18 ||      somebody.  We think the transcript from Ms. Grey, from her

19 ||      discussion is completely the opposite.

20 ||           THE COURT:  Well, I -- I don't know that we need

21 ||      to hear from this witness that yes, this transcription

22 ||      contradicts what I said earlier.  If you want to attempt

23 ||      to get the transcript before the court, I

24 ||      (unintelligible).

25 ||           MR. CASTIGLIONE:  Okay.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/7/2022

1         THE COURT:  I don't know that we need the

2     witness here.

3         MR. CASTIGLIONE:  I agree.  That's fine.

4         THE COURT:  Okay.

5         MR. CASTIGLIONE:  Okay.  I have no other

6     questions.  Thank you, Your Honor.

7         THE COURT:  Any re-cross?

8         MR. ROTONDI:  No, Your Honor.

9         THE COURT:  Okay.  And put your mask on and then

10    remove your shield, please.  And thank you for your time.

11    You're free to go, sir.

12        THE WITNESS:  Thank you, Judge.  Have a nice

13    afternoon.

14        THE COURT:  All right.  As I understand that

15    gentleman, that does it for witnesses today, correct, Mr.

16    Castiglione?

17        MR. CASTIGLIONE:  Yes, Your Honor.

18        THE COURT:  All right.  Let's just go off the

19    record for a minute.

20        (Off the record 15:22:55 to 16:01:00)

21        THE MONITOR:  On the record.

22        THE COURT:  Thank you everyone for your time and

23    meeting with the court subsequent to today's proceedings.

24    Any housekeeping we need to do Mr. Castiglione before we

25    conclude today?

Alaei v SONY – 6/7/2022

1          MR. CASTIGLIONE:  No, Your Honor.

2          THE COURT:  Mr. Rotondi?

3          MR. ROTONDI:  No, Your Honor.

4          THE COURT:  Okay.  Very well.  Let's reconvene

5    tomorrow morning promptly at nine thirty.  We'll hear

6    first from who tomorrow at nine thirty?

7          MR. ROTONDI:  Tomorrow, I think is -- is the

8    president going first, Mr. Stellar?

9          MR. CASTIGLIONE:  I think it is the president.

10         MR. ROTONDI:  President.

11         THE COURT:  Okay.  And Mr. Rotondi, be in a

12   position if you would first thing tomorrow to advise us

13   whether or not you would indicate there's a possibility to

14   called Ms. Lisa (unintelligible). Is that her name?

15         MR. ROTONDI:  Yes.

16         THE COURT:  And let us know what the --.

17         MR. ROTONDI:  If I find out I'll email you

18   tonight.

19         MR. CASTIGLIONE:  Sure.

20         MR. ROTONDI:  Or give you a call.

21         MR. CASTIGLIONE:  Yeah.

22         THE COURT:   Okay.  That concludes today's

23   proceedings.  Thanks, gentlemen.  Bye.

24         MR. CASTIGLIONE:  Thank you.

25         MR. ROTONDI:  Thanks, Your Honor.

Alaei v SONY – 6/7/2022

1          THE COURT:  Off the record.

2              (The trial adjourned at 4:01 p.m.)

3

4              CERTIFICATION

5    I, Hannah Allen, certify that the foregoing transcript of

6    proceedings in the State of New York, Court of Claims, Kamiar

7    Alaei v SONY, Claim #132554, was prepared using digital

8    transcription equipment and is a true and accurate record of the

9    proceedings to the best of our skill and ability.

10   _____/ DATED:  8/1/2022
     Hannah Allen, Transcriptionist

11   Associated Reporters Int'l., Inc.
     10 River Drive

12   Massena, New York 13662

13

14

15

16

17

18

19

20

21

22

23

24

25

800.523.7887            6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 1

---

**A**

**A-N** 90:5
**A.A.G** 1:13
**a.m** 1:6 5:1 27:2
**ability** 161:9
**able** 72:17 123:2
**academia** 36:24
**academic** 14:7 31:10 126:23
  127:4 155:22 156:19
**academics** 30:17
**access** 18:24 63:17,17 64:1,3
  65:2 101:6,10,17,24 102:3,16
  106:10,11 150:16,18 153:13
**accessing** 63:24
**accomplished** 14:12
**account** 63:25 64:3 101:18,25
  102:3 153:13
**accurate** 45:23 97:3 101:1 113:7
  161:8
**accusation** 43:24
**accused** 74:12
**acted** 71:20
**acting** 74:13
**action** 65:5
**actions** 49:4 71:17 72:10
**activities** 14:9 30:18
**activity** 14:23
**actor** 111:3
**actual** 19:16 127:16 133:19
  136:7 139:9 145:20
**addition** 104:17,23
**additional** 22:9 23:25 82:11
  83:23 85:25 122:7,13 132:5
**additionally** 74:18
**address** 65:6
**addressed** 23:18 58:25
**addressing** 6:5 92:20
**adds** 104:16
**adjacent** 12:14
**adjective** 17:7
**adjourned** 161:2
**administration** 6:1 151:25
**administrative** 135:19 136:1,2
**admissions** 28:16,20
**admit** 28:15,21
**admitted** 13:9 70:12 73:13
  122:20
**adopted** 94:4
**advance** 40:16 131:25

**advancement** 38:11 39:17 40:19
**advice** 105:5
**advise** 30:5 33:3 61:14 62:4
  100:7,10 104:14 123:12 160:12
**advised** 81:8 100:11
**advising** 53:9 61:20 67:8 81:4
  122:19
**advisory** 30:13,15,25 41:3,5,6
  42:2 61:15,21
**affairs** 14:7 31:11 126:24 127:4
**affiliated** 42:2
**affiliation** 40:24 107:23 108:2
**afternoon** 89:3,7 90:14 159:13
**agency** 5:22
**agent** 155:3
**agents** 153:15
**aggressively** 74:13
**ago** 125:18
**agree** 58:21 159:3
**agreed** 24:20 43:1 99:24 110:10
  153:18
**agreement** 2:20 6:23 11:11 53:25
  53:25 54:4,9,18 55:11,24
  64:24 82:2,6,18 86:1 93:6,12
  93:17,21,22,24 94:12,15,17,20
  94:22,23 95:4,7,8 96:10
  101:24 102:2 108:1,9,17
  115:12 121:1 122:12,24 128:23
  134:18 141:4 147:5,11 151:1
  153:8
**agreements** 86:2 91:5,8,21 124:1
**ahead** 10:9 12:20 18:4 21:22
  25:22 41:23 45:14 46:2,3 47:3
  53:4 64:8 67:1 71:1 98:13
  104:5 116:18 117:3 121:9
  135:10 143:22 145:23
**al** 5:5 89:5
**Alaei** 1:3 2:16,17,18,19,23 4:6
  5:5,7,13,14 11:2,4,7,9,17,24
  14:1,10,12,23 15:8,11,12,16
  15:19 16:15,22 18:13,23 20:2
  20:3 24:4 25:3,6,12 26:19
  27:19,22 28:9 30:6 31:2 33:3
  33:5,10,20 35:2,4,7,22 39:11
  42:6,10,12,16,20,21 43:18
  44:8,12,13 45:1,6,23 46:16
  47:15,23 48:20 49:2 53:9
  55:20 56:22 57:13,13,24 61:22
  62:10 63:4,9,24 64:3,20 65:16
  67:3,9,14,14,25 70:3 74:24

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 396 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 2

76:24 77:16,23 78:2,16,17,21
79:11,15,25 80:12,20,21,24
81:4,4,7,23 82:22 83:7,11,22
85:9 86:16 89:4 95:23 96:4
97:22 98:23 99:5 100:5 101:4
101:5 102:6,9,24,25 103:3,15
103:16,24 104:8 105:7,14
106:3,23 107:2 110:12,25
111:4,9 112:23 113:23 114:1,5
114:7,15 115:5,20 116:20
117:15,25 119:1,13,24 120:14
120:21,24,24 121:18,20 122:3
122:7,12 123:13 125:21 127:23
128:7 129:16 150:9 151:4,21
152:13,14 153:7,10,12,15,23
156:8 161:7
**Alaei's** 11:14 12:1,22 15:2
19:13 24:21 26:3 27:23 30:25
33:25 34:4 42:15,23 43:1 45:4
46:19 47:8 63:16 65:1 75:7,12
75:19,25 76:4,8,19,22 78:11
82:10 83:15,20 101:17,24
102:3 107:7 117:10 149:14
153:9,13,19
**Alaei's** 117:15
**Albany** 1:8,14 3:19 4:6 5:4 9:3
9:4,16 10:16 14:10 20:4 26:15
27:22 30:2 38:12,25 40:24
41:2,11,17 42:4,7 45:9 48:22
49:3 51:15 52:15 53:9 57:13
61:14 63:24 64:21 65:13,18,18
66:14 69:11 72:22 75:6,12
76:18,21,22 78:1 81:14 87:4
87:22 88:3 89:5 90:17,20
91:11,16 94:18 97:23 101:17
105:1,8 107:23 108:3,14
110:13 116:23 122:13 123:21
124:4,8,13 125:2,5 126:7
154:18 155:8 157:14
**Albany's** 56:8 124:17
**alert** 43:21
**Alexander** 70:17 71:10,20
**Alicia** 41:18
**aligned** 30:18
**alive** 126:18,20
**allegation** 44:7 71:10 107:16
146:6,18
**allegations** 17:1 18:15 26:18
57:12 58:1 62:1 68:12 72:6
74:4,7 84:7,24 99:23,25

100:19 107:9,15 143:14 144:16
**alleged** 17:5 107:14 115:21
150:14
**allegedly** 107:7 158:11,17
**Allen** 1:21 161:5,10
**allow** 45:13 72:11,23 85:23
103:3 133:20
**allowing** 105:12 106:9
**allows** 23:23 134:8 147:23
**alter** 139:10
**altering** 74:2
**alternate** 2:23 15:23 16:3 30:7
65:7 139:1,5,10,23
**alternative** 15:9,12 16:23 18:23
33:5 35:7 53:10 64:15 65:12
65:25 66:5,12 67:6 95:23
97:18 101:5,6,10,21 103:17
107:19,24 108:3,15,18 109:6
141:17
**alumni** 38:21 105:1
**Amanda** 1:14 5:19
**amazing** 47:14
**ambiguous** 123:2
**amount** 15:1 51:23 148:23
**amplify** 8:16 37:21 90:8
**and/or** 102:22 140:13
**anger** 107:10
**announced** 40:2 99:22
**annual** 125:24 133:9 156:23
**answer** 25:11 43:11,12 60:10,23
92:25 93:4 100:20 111:11
154:15
**answered** 25:21 84:11,18 86:1
115:15 121:7
**answering** 60:24 144:9
**Anthony** 1:13 5:16
**anybody** 16:22 18:11 33:19 40:6
40:9 61:13,20 103:4 105:22
137:9
**anyway** 155:1
**apologies** 13:23 94:25
**apologize** 30:20 52:18 54:8 95:1
109:22 139:14
**appear** 13:17 112:6
**appearances** 1:11 5:9
**appears** 20:22 54:9 71:6 99:10
127:12
**appellant** 70:18
**appellate** 70:7 71:9
**applicable** 94:19

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 397 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 3

**application** 72:13
**appoint** 31:4,17,18,22 40:7
**appointed** 32:1 40:3 157:8
**appointee** 136:3
**appointment** 3:23 4:3,14 20:4
    32:4 34:19 75:7,12 76:8,19,23
    77:5,23 81:9 83:7,22 87:14,19
    87:23 88:5 105:10 118:20,25
    121:13 122:4 123:14 124:1,5
    124:10,15 125:6,25 127:3,7
    128:11,13 129:1,2,11,12 130:6
    130:18,19,24,25 132:14 133:4
    133:7,21,25 134:4,4,15 135:9
    135:13,13,21,23,25 136:11,21
    136:22,25 137:24 138:1 147:25
    155:25 156:12,13,18,18,21,22
    156:23,25 157:6,7,9,14
**appointments** 22:1,6,11 135:18
    156:11,15,16
**appoints** 43:8
**appreciate** 39:3
**apprised** 156:5
**approach** 114:20
**approaching** 24:25
**appropriate** 5:25 144:5 148:23
**appropriately** 6:3
**approval** 26:23
**approved** 87:11,15,19,24 88:6,16
    124:1,5,11,15 125:6 128:11
    157:18
**approves** 87:12 127:18
**approximately** 91:6 97:11,14,15
    115:25 123:22,24 126:4 142:20
    150:6
**Appt** 2:16
**April** 2:21 20:8,20 83:4 112:6
    114:6 115:3 122:3 133:5,9,12
    133:17,25 136:22,25,25 153:23
**Arash** 4:6 35:2,4,7 56:22 102:20
    102:25 103:15,16,24 104:8
    105:7,14,23 106:2,23 107:2,7
    107:8,11
**arbitration** 58:22 146:16 152:16
    152:19 155:1,1
**argued** 124:24,24
**Argumentative** 118:3
**article** 71:18,20 74:16 128:23
    130:2 135:8,18 138:19 140:24
    141:13,15 142:10 147:9,14,18
    149:21 150:15 151:3 153:4

    154:10 155:5,22,22 156:11,15
    156:17
**asked** 25:7,21 84:11 100:17
    110:1 129:8 138:25 140:1
    144:6
**asking** 20:15 21:10 45:16 88:3
    99:8 110:8 141:2
**assessment** 48:20
**assigned** 103:25 104:10
**assignment** 2:23 15:9,12,23 16:4
    16:24 18:23 30:7,7 33:5 35:7
    53:10 64:16 65:7 66:12 95:23
    101:5,7,11,21 107:19,24 108:3
    108:18 109:6 139:1,5,10,24
    141:17
**assignments** 65:12,25 66:5 67:6
    97:18 108:15
**assistant** 5:16 144:21 151:23
**assistants** 111:15
**assisting** 102:22
**associate** 11:17 51:14 90:23
**associated** 1:22 33:4 153:15
    161:11
**assume** 31:11 71:11 139:9
**assuming** 127:17
**attached** 20:21 28:19 57:23 77:7
**attachment** 23:18
**attempt** 158:22
**attempted** 123:7
**attempting** 73:5
**attend** 33:14,15 65:16
**attended** 45:2 78:20,20
**attending** 33:8 44:25
**attention** 86:8 135:6 141:6
    147:21
**attitude** 46:19 47:11,14 48:4
**attorney** 1:14 5:17 58:6
**atypical** 101:12,20 117:8
**audio** 28:18
**August** 16:20 34:1 69:7 74:23
    75:7,9,9 78:11,18 79:3,10,15
    80:10,12,15 81:3 125:21,25
    126:1 131:15 133:22 134:1,3
    137:4,24,24 138:10 149:6,7
    154:6,6
**author** 21:12
**authored** 20:11 26:20
**authorities** 5:25
**authority** 67:16,19 81:19
**automatically** 135:14

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 398 of 558

800.523.7887          6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 4

**available** 20:23
**awaiting** 27:11,12 105:5
**award** 39:13,14,18,20
**awarded** 39:15
**awards** 39:11
**aware** 13:16 14:9,22 15:6,8
  18:25 19:19 20:3 21:11 27:20
  30:23 33:24 40:9 42:23 43:17
  45:8 59:17 61:14 64:22 65:23
  74:5,6,9,10 83:13 87:16,18
  88:3,10 93:11 95:22 100:18
  102:20 105:14,18 115:19 120:3
  124:4,8,13 125:2,9 144:15
  150:9 153:17
**Ayers** 58:20,21,24 59:2,8,14
  99:19,20

---

**B**

**B** 2:12 4:9
**B-R-I-** 90:4
**B-R-I-A-N** 90:6
**B.B.S** 112:10
**B.O.B** 129:2,3
**b/t** 2:20
**back** 13:18 19:20 21:17 24:12
  78:11 80:14,17 84:17 86:21
  92:1 110:9,11,13 113:7 114:8
  142:21
**back-to-back** 79:5,20
**bad** 71:12 111:3
**balance** 125:25 129:1,11 137:23
  148:1
**ballpark** 66:8
**bargaining** 91:5,8,21 93:6,16
  94:19 95:4 96:10 108:9,17
  115:12 134:18 155:3
**barred** 106:10
**based** 25:13 42:15 48:21 64:25
  72:14 73:11 77:12 84:6 85:17
  100:5 111:4 120:19,25 122:19
  124:14 130:3 146:3 149:20
  158:10,14
**basic** 90:25 156:23
**basically** 91:15
**basis** 12:9,13,16 16:21,23 21:6
  24:14 25:3 79:19 84:8,12
  100:3 101:23 102:2 131:1,1
  144:3 156:3
**basket** 36:22
**bathroom** 139:15,17

**beg** 39:19
**began** 9:18,21 47:12 83:14
**beginning** 129:4 133:8
**behalf** 26:16 97:6 152:13
**behavior** 72:7
**Beirut** 17:16,16 45:17,24
**belabor** 79:20
**belief** 102:19,22
**believe** 5:19 11:19 12:4,24 13:8
  14:6,14 15:14 17:9 18:25 20:5
  22:12 23:22 26:21 28:6 30:12
  33:7 34:2 36:22 41:15,16
  48:10 52:9 54:20,22,23 55:12
  56:13,24 61:6 62:13 65:19
  68:16,19 73:5 75:9 77:8 78:25
  79:13,15 82:23 86:25 87:2
  93:25 94:24 113:9 141:1 144:9
  144:21 146:12 148:3 152:2
  154:3 155:4,15
**believed** 111:9
**benefit** 52:1 92:20
**benefits** 51:19,25 86:18,23
  121:20 126:2,5 154:12
**best** 40:8 42:22 156:9 161:9
**beyond** 39:16 115:14 130:12
  144:22
**biased** 71:24
**big** 110:2
**Bill** 21:2,20 23:17 77:14 126:13
  126:20,22,22
**binding** 70:22
**blank** 59:22 60:2
**Bless** 10:9
**blocked** 18:24
**blunt** 100:21
**board** 2:21 30:13,15,24,25 39:22
  39:25 40:6,10,14,14,16,20,22
  40:23,25 41:3,5,6 42:1,2,11
  43:6,8 61:14,15,21,21,23
  134:8,11,12 135:3 156:2
**book** 73:20
**boots** 120:7
**Borders** 41:1
**bottom** 104:8
**bought** 116:11 121:19 130:13
  131:22 132:17 134:1 138:19
  149:24 151:5
**box** 37:8 89:14
**Brian** 2:8 33:9 53:15 59:20 60:1
  60:3 78:20 80:1,3 89:12 90:1

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 399 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 5

90:4
**briefly** 35:13
**bring** 7:17 28:24 150:9
**brother** 27:23 28:9 102:20 103:3
105:12 106:9
**brought** 44:5 60:20 134:10
144:23 145:2,3,5,18,18
**Bruce** 62:5 63:18 110:1 119:4,5
119:22
**buildings** 63:17
**Bureau** 128:21
**business** 129:4
**busy** 16:11
**buy** 58:4 120:21
**buyout** 116:24 123:15 131:12
138:11,16 147:24
**buyouts** 150:2
**Bye** 160:23

_____
C
_____

**C** 4:10
**C-H-A-** 8:21
**C.C.'ed** 59:21 99:20
**C.P.L.R** 70:22
**calendar** 131:1
**call** 7:8 27:11,12 36:14 37:3
39:16 44:22 48:8 50:6 86:7
89:9 145:25 158:13 160:20
**called** 17:10 39:14 47:25 48:9
48:12 160:14
**calling** 137:25
**calls** 7:14 37:5 50:7 89:12
**calming** 107:10
**campus** 10:8,15 140:1
**capacity** 84:3
**Capitol** 1:8
**card** 63:17 101:6
**Carlo** 26:21 27:1,6,10 43:22
**case** 28:22 48:11 107:7 110:2
130:5 149:14 152:18 156:3
**case-by-case** 144:3
**cases** 97:11
**Castiglione** 1:11 2:3,4,5,7,8,9
5:11,11 7:7,9,13,14,19,20
8:25 10:19,22,23 12:21 13:12
13:13,15,23,24 14:19 15:21
16:7 17:19,24 18:4,5,6 19:25
20:1,13 21:18,23 23:5,12,15
25:17 26:1 27:5 28:14,23 29:8
29:10,13,16 30:20,22 31:20,21

32:21,23 35:11 36:12 37:3,5
38:1,1,2,3 39:5 41:16,24,25
43:5,14,15 45:18 46:4,5,9,11
46:14 47:5,6,10 48:18,19,25
49:7 50:7 51:6,7 52:14,17,25
53:5,23 54:7,14,16,24 55:3,5
55:8,18 56:1 57:3,8 58:15,17
59:7,10,13 61:11,12,18,19
62:16,19,21 63:6 64:7,11 67:2
67:11 68:4,5,21 69:3,4,21,24
69:25 70:10,14,17 71:3,13,16
71:22 72:5,15,17,21 73:20,22
74:20,21 75:2,16,17 76:16
77:18,20 78:6,10,14,15 79:8,9
79:18,22 80:2,5,7 84:13,16,20
84:21 85:16 86:5,9,14 88:2,9
88:20,23 89:9,11 90:12,13
92:16,17,18 93:9,10,19 94:8
95:1,3,19 96:25 97:17 98:14
99:2,16 100:15,25 103:12,13
104:4,6,7,19,21,22 106:13
109:2,4 111:23 112:2,3,21
114:21 115:17,18 116:15,17,19
117:4 118:5,6,10,11 119:11,19
119:21 120:10 121:5,10,15,16
121:24 122:11,16,23 123:10,11
123:18 124:22 125:14 126:25
130:22 131:4 132:20 133:1,14
134:19,25 135:3,7,11 136:16
137:19,22 138:21 141:19,21
145:4,8,12 146:23,25 148:3
151:9,12,15,17 158:10,16,25
159:3,5,16,17,24 160:1,9,19
160:21,24
**cause** 100:4,23 115:11
**causes** 40:16
**CBA** 4:13
**CC'd** 18:2 19:8
**cease** 153:8
**center** 23:1 40:21
**certain** 71:17 82:1 130:4 153:7
**certainly** 21:12 120:15,16
122:25 124:25 147:3
**CERTIFICATION** 161:4
**Certified** 2:22
**certify** 129:8 161:5
**cetera** 58:3 126:11
**chain** 2:25 110:7
**chairs** 31:17
**chancellor** 2:19 135:21 151:23

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 400 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 6

**change** 14:22  19:12  24:3  30:6
**changed** 41:19  45:9
**changing** 74:7  102:6
**Chantelle** 69:16  70:1,18  71:10
 71:19  74:2  97:2  109:12,19,23
 113:4  115:4
**character** 45:11
**characterization** 16:17
**characterize** 132:22
**charge** 91:20
**charged** 29:12  122:18
**charges** 91:22  143:25
**Charles** 2:2  7:15,16,19,20,22,25
 8:2,11,12,15,21  9:1  10:24
 13:16  20:19  22:19  29:17  33:24
 35:21  36:18  77:6,13  103:2,6
 103:15,21  104:9  105:4,6,15,23
 113:25  117:10,15  127:7  137:9
 153:14
**check** 19:21  48:12
**checks** 126:12
**chest** 58:7
**chief** 119:5  135:19  136:1,2
**circumstance** 117:1
**citizen** 39:14
**Citizenship** 39:13
**claim** 1:2  3:18  5:6  71:21  89:6
 134:13  154:10  161:7
**claimant** 1:3,12  2:2,15  5:7,10
 6:23  7:14  37:5  46:25  50:7
 71:7  73:7  89:8,11  106:9
 109:18  139:3
**Claimant's** 6:6,7,15,23  13:19
 16:9  17:21  19:6  20:7,18  21:9
 22:16  23:7,12  24:2,12,21  26:7
 26:25  29:18  32:9,17  34:7,9
 37:4  46:23  47:1  52:19  57:20
 58:12,18  59:19  70:5,6  74:22
 77:4  79:23  83:2  84:23  86:21
 93:21  95:15  98:16  99:18
 106:11  109:22  110:5,6  111:19
 111:19,20,23  121:11  125:15,16
 127:6  129:15  133:3  138:9
 151:20  153:6
**claiming** 95:15
**claims** 1:2  6:8  75:22  85:19
 161:6
**clarify** 31:20  79:10
**Clary** 110:10
**clear** 24:16  110:11  114:14

154:17
**clearly** 71:23  109:13  110:24
**Cleary** 69:17  70:1,18  71:11,12
 71:19,22,23  74:2,7,10,12,13
 97:2  109:12,19,23  110:3,7,12
 111:8  113:4  115:4,19
**Cleary's** 114:6,11,14
**client** 71:24  105:12,20  106:1,3
 106:15,23  107:2,13  116:20
 123:6  137:9  152:8  158:3
**close** 73:20  117:20  127:14
**closely** 11:13
**co-** 29:25  31:4
**coercion** 140:14
**collaborative** 96:16
**colleagues** 29:22,23
**collect** 96:8
**collective** 91:5,7,20  93:6,16
 94:19  95:4  96:10  108:9,17
 115:12  134:18
**college** 11:21  135:19  156:4
**com** 41:6
**come** 7:22  25:15  29:4  37:7  50:13
 76:10  89:13  105:19  110:11
 113:7  114:8  126:12
**comes** 17:6  23:22  110:9  156:24
**comf** 47:16
**coming** 15:12  21:13  38:7  51:8
 110:12
**commence** 89:7
**commenced** 5:1
**comment** 44:23
**common** 64:16  66:11  69:10
**communicate** 12:11  100:18
**communicated** 84:25
**communicating** 85:3  105:6
**communication** 44:4  61:23  104:24
 107:11
**communications** 26:18,20  44:3
 83:21  102:13,15  103:4,23
 105:7,13,24  106:3  107:12
**community** 45:4,22  48:21  49:2
 66:16,21  67:9,12  144:14
**comp** 121:22
**compared** 117:24  149:14
**compensation** 51:19  82:12,15
 84:4  85:10  122:7,13  123:13
 126:2  127:2
**competent** 46:25
**complainants** 140:11

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 401 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 7

complaint 58:24 59:14,15,23
  60:2,4,5,7,10,11,17 61:3 73:7
  74:8 97:23,25 98:1,6,7,10,22
  98:25 99:5,9,13 106:19 111:3
  144:7,7 145:18 146:1
complaints 63:1 74:2,11 107:5
  107:14,15 144:10,12,24 150:13
complete 24:18
completely 158:19
complies 91:7
comply 133:24
component 66:12
components 86:24
compounded 132:12
comprised 41:6
comptroller 124:2,6,11 128:22
  138:15
comptroller's 87:11,15,17,20,24
  88:1,6,16 124:16 125:7 157:19
concern 56:12 67:8 71:9 102:11
  102:18 106:22 107:1 158:17
concerned 25:16 32:19 44:17
  48:13
concerning 16:21 22:1 27:22
  30:25 31:1 33:20 43:18 44:12
  47:12 51:22 55:20 57:13 61:22
  62:10 63:4,8 70:2 72:9 96:3
  105:20 112:23 119:13 127:2
concerns 30:24 31:3 64:19 102:8
  105:12 106:1,8 107:4,5,10
  145:2
conclude 159:25
concluded 110:15,19
concludes 160:22
conclusion 111:16
conditions 141:23 142:2 147:5
conduct 17:2,5
conducted 18:8 53:13 69:16
  115:20 116:1 140:17
conducting 18:19 27:18 33:20
  49:3 97:5 109:13
conduit 40:20 120:5
conference 17:2,14,14,15
confines 60:11
confirm 54:24 133:6
confirms 138:10
confused 15:22 48:1 73:12
  110:11
confusing 132:14,18 133:20
confusion 148:19

CONGRESSIONAL 2:14
consequences 36:5,7,9
considered 65:7 108:21 123:1
  141:18
consistent 14:16 65:1 99:3
constitutes 98:9
consult 24:24 34:3 40:6
consulted 34:6 40:9
consuming 104:2,12
Cont'g 12:21 13:15,24 14:19
  16:7 17:19 18:6 20:1,13 21:23
  23:5,15 25:17 26:1 27:5 29:10
  29:16 30:22 31:21 32:23 39:5
  41:25 43:15 46:5,14 47:6,10
  48:19,25 52:17 53:5,23 54:7
  54:16 55:8,18 56:1 57:3,8
  58:17 59:7,13 61:12,19 62:21
  63:6 64:11 67:2,11 68:5,21
  69:4,25 73:22 74:21 75:2,17
  76:16 77:20 78:10,15 79:9,22
  80:2,7 84:21 85:16 86:14 88:9
  92:18 93:10,19 94:8 95:3,19
  96:25 97:17 98:14 99:2,16
  100:15,25 103:13 104:7,22
  106:13 109:4 112:3,21 115:18
  117:4 118:6,11 119:11 120:10
  121:10,16,24 123:11,18 124:22
  125:14 126:25 131:4 133:14
  134:19 135:11 136:16 137:22
  139:22 141:16,22 143:4,23
  145:24 146:25 149:12 150:8,20
  151:17
Cont'g 119:21
contact 17:14 18:11 102:21
  105:16 106:24 113:25
contacted 18:20 45:16,22 107:8
contacting 81:4,4
contacts 87:25
contained 108:8 141:12
containing 156:19
contains 28:16
contemporaneously 74:17
context 11:13
continuation 82:25
continue 25:14
continued 54:22 120:25
continues 26:11
continuing 118:20,25 152:12
  156:3,21
contract 24:17 34:24 54:21,23

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 402 of 558

800.523.7887                 6-7-2022, WORD INDEX, Alaei case           Associated Reporters Int'l., Inc.

Page 8

82:19,20,24,25 85:23 86:13
87:18,18,23 88:5,16 91:21
92:23 94:3 115:13 122:25
123:2 124:10,15 125:6 130:2
131:12 138:11,16 148:1 149:24
151:5 153:5,9 154:14 157:18
**contracts** 54:20 87:11,14 124:1
124:5 127:3
**contradicts** 158:22
**contributed** 39:16
**controller's** 88:12
**controlling** 93:23
**conversation** 43:22 44:22 103:7
**conversations** 12:15 44:20,21
105:15,23
**convey** 33:5 61:24 73:5
**conveyed** 44:7 76:1 102:8
**conveying** 75:6 119:23
**convicting** 29:15
**coordinator** 70:19
**copies** 108:7
**copy** 1:19 157:23 158:12,13
**corner** 112:7,9,14
**corners** 123:3
**correct** 11:18 13:10 35:23,24
36:3 52:2,16 53:11 57:15,19
60:8 62:12 64:13 65:10 66:20
66:22,25 67:13,21 68:8 80:16
82:4 85:1,2 86:12 90:7 92:2,4
92:11 93:8 95:9 97:4 99:14
101:11,15 103:20 106:12,16,17
108:23 109:11,16 110:17
112:20 113:15,18 115:5,6,22
117:2,17 122:4 124:21 128:5
128:15,15 131:7 133:17 134:5
137:2,5 138:2 139:11,14 144:7
144:8,11 145:22 146:2,9,10,19
146:20 147:15,20 148:11
149:11 154:7,9 157:4,7,15
159:15
**correctly** 145:16
**correspondence** 83:24
**coterminous** 149:9
**counsel** 1:14 12:20 13:21 21:22
23:11 25:22 41:23 45:13 46:2
46:3,8,22,23 48:24 50:5 52:13
53:4 54:25 57:25 59:3 67:1
68:11 73:4 74:15 85:25 90:11
98:13 99:1 103:11 105:9
114:20,25 115:16 117:3,11

119:18 121:3,23 123:9 132:21
141:19 143:22 145:23 151:14
**counseling** 57:23 79:25 80:10,11
80:17 99:20 125:21 143:11,25
144:4
**couple** 110:21
**course** 22:23 140:3 142:3 144:9
**court** 1:2,19 2:13 5:2,14,18,25
6:8,10,13,20 7:6,10,12,16,18
7:21 8:1,3,15,19,23 9:1,4,6,9
9:13,15,19,21,25 10:4,9,16,18
10:21 12:8,11,17,20 13:6,12
13:21 14:11 15:20,25 16:5
17:13,17,22,25 18:2,4 19:19
19:24 20:10 21:17,19,22 22:18
23:3,11,14 25:9,11,21,24 27:4
28:21 29:1,4,12,14 31:16
32:20,22 35:12,15,19 36:8,18
37:3,7,20,24 38:14,17,19,23
39:1 41:15,21,23 43:10 45:11
45:19,25 46:2,8,10,13,22 47:9
48:7,16,23 49:8,10,13,16,19
49:24 50:2,5,9,12,16 51:5
52:4,7,11,13,15,23 53:2,4,20
53:22 54:4,12,15 55:4,7,14
57:2,7 58:14 59:2,5,9,12 60:9
61:1,10,17 62:15,18 63:5 64:6
64:9 65:23 66:2,6,8,11,18,21
66:23 67:1,10 68:2,10,17,20
69:1,19,22 70:9,12,16,21,23
71:1,8,14,15,16,18,25 72:11
72:16,19,23 73:2,4,5,14 74:15
75:1,15 76:14 77:17 78:5,8,13
79:4,7,17,19 80:1,4,6 84:11
84:15,18 85:14,24 86:7,12
87:25 88:7,22,24 89:3,13,16
90:6,8,11,15,25 91:24 92:3,5
92:9,12,15 93:4,16 94:1 95:18
96:19,22,24 97:13,16 98:6,9
98:13 99:1,8,12,15 100:10,12
100:14,24 103:11 104:3,5,18
104:20 106:7 108:25 111:22,25
112:19 114:20,22,25 115:1,7
115:15 116:14,16,18,25 117:3
118:3,8 119:8,18,20 120:4,7
121:3,7,9,13,22 122:10,15,22
123:1,2,8,17 124:18,20,24,25
125:13 126:19,21 130:21
132:18,21 134:16,24 135:2,5
135:10 137:18 138:22 139:16

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 403 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 9

139:18 141:14 143:2,17,20,22
145:7,10,13,15,17,21,23
146:24 149:5,9 150:17 151:8
151:14 158:15,20,23 159:1,4,7
159:9,14,18,22,23 160:2,4,11
160:16,22 161:1,6
court's 86:7
courtroom 1:8 6:2
cover 2:22
covered 13:8 91:5 93:6 123:20
125:4
create 135:22
credible 111:4
criticized 107:7
cross 35:12 49:8 88:22 138:22
138:24 145:10
CROSS-EXAMINATION 35:20
cultural 44:25
curiousness 92:6
current 34:17 38:9 91:10 94:19
101:10 128:17 157:10
currently 9:1 91:11 148:20
customary 126:10
cut 33:3 64:1,14
cutting 64:15
CX 2:3,9

---

D

D 4:10,14 135:7
daily 12:8,12,16
Dana 29:25
dash 23:17 24:17
date 1:6 34:23 44:5 54:11 58:14
75:10 78:23 94:2 110:20
128:17 131:1 142:18 156:24
dated 2:16,17,21,22 13:20,25
19:10 20:8,19 23:8 24:4 26:8
27:1 29:20 32:19 57:22 58:15
58:20 59:21 70:8,20 74:23
77:5 80:15 83:4 94:2 103:15
109:21,24 110:7 112:6 127:19
133:5 138:9 152:11 161:10
dates 116:2 127:24 138:5 149:10
David 32:10
day 1:7 15:11 78:17,18 79:12,13
80:15 115:14 131:20 143:17
days 79:5,20 131:21 155:23
dazed 48:1
deal 93:1 149:17
dealing 70:2 85:5 87:5 95:11

dealt 62:23 68:6 84:3 149:17,20
dean 9:23 11:7,17 41:16,18,19
41:20,21
Dear 3:19 29:22
December 10:2
decide 154:25 155:3
decided 24:16
decides 133:22 155:9
deciding 75:25
decision 15:24 16:3 19:3 26:3
31:11,17,18,22 40:7 67:20
70:7,21,22 71:4 72:3 75:25
76:3,10 85:8,12,14 154:22,23
decision-making 31:9
decisions 19:22 119:23,23
122:19
declined 24:13
deemed 135:22
DEF 4:7
Defendant 1:5,15 5:15 6:14,22
defending 72:1
defense 114:25
defined 140:20 141:7
defines 146:18
definition 135:12,24
definitions 86:11
definitively 31:8 32:7
degree 118:13
demeanor 47:9,11 48:5
denied 72:14
department 52:5,8 70:7 72:7
88:12
Depends 154:20
deposition 68:22 69:5 94:10
101:2 114:9 120:11
depression 48:14
desired 110:14
desist 153:8
detail 22:9
details 22:4 23:25
determination 31:4 34:4 61:15
61:24 67:24,24 68:7,8 69:8,9
75:6,11 76:8 84:24 86:16
146:18
determine 23:24 55:20 64:24
77:4 82:15 86:3
determined 57:11,17 71:5 84:7
116:9,21,23 122:8,14 143:14
determining 84:4
develop 103:25 104:10,13 105:3

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 404 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 10

**difference** 115:10
**different** 48:5 92:9 107:6
**differently** 21:7
**differs** 139:10
**digital** 161:7
**DIGITALLY** 1:21
**direct** 10:23 22:22 38:3 51:7
   90:13 101:16 109:7 117:22
   134:13 141:6 147:21
**directed** 61:1 63:16 64:2 101:13
   103:3
**directing** 67:3,14
**directive** 64:13 109:10,10
**directives** 108:19,21 109:6,7
**directly** 11:12 14:16 77:10
   151:25 154:16 158:2
**director** 11:9 19:14 38:12 43:9
   91:13,15,19 153:10,12,16
**directors** 30:1 31:5,10,23 32:1
   32:5 39:22,25 40:3,6,7,10,11
   40:15,23 42:1 43:6,8 61:21
**discard** 36:21 49:20
**disciplinary** 18:7 27:19 53:13
   53:17 56:7 62:11,16,19,23
   64:16 65:4,5 67:22 80:21
   91:21 96:2,3,11 97:8 115:25
   119:14,24 138:12 141:18
   153:10
**discipline** 57:18 62:1 65:7
   67:25 68:8,13 69:9 80:25 84:9
   100:4 113:12,13 116:10,22,22
   146:9,15 150:15
**discuss** 60:21 158:2
**discussed** 19:15
**discusses** 14:21
**discussing** 28:8 58:4 75:18
   150:10
**discussion** 86:17 111:16 113:20
   121:3,5,17,19 145:6 158:19
**discussions** 44:11,20 107:9
   113:8,19 124:25
**dismissal** 22:7
**dismissed** 48:1,11
**dispute** 55:1 93:5
**distanced** 6:3
**distinguish** 109:6
**division** 70:7 71:9
**doc** 155:13
**doctor** 17:22,25 22:19 36:24
   49:11,12 79:5 143:10 146:9

   149:6
**Doctors** 41:1
**document** 13:17 23:22 34:10 53:6
   53:8 75:3,5 80:8,9 93:12 94:2
   94:5,11 95:20 121:12 123:4
   127:8,19 135:8 155:16
**documentary** 96:8
**documents** 2:22 151:11
**doing** 19:16 36:16 47:18 48:12
**dollars** 14:22 42:9,9 133:10
**donors** 47:16
**dots** 14:9
**double-check** 6:21
**dozen** 66:10 142:20
**Dr** 2:17 5:4,7,8,13,14 7:14,16
   7:21 8:15 9:1 10:24 11:2,4,7
   11:9,14,17,24,25 12:22 13:16
   14:1,10,12,23 15:2,8,11,12,16
   15:19 16:14,22 18:13,23 19:13
   20:2,3 22:18 24:4,25 25:3,6
   25:12 26:3,19 27:19,22,23
   28:9 29:17 30:6,25 31:2 33:3
   33:5,9,20,24,25 34:4 35:21,22
   36:18 38:4 39:11 42:6,9,12,14
   42:16,20,21,23 43:1,18 44:8
   44:12,13 45:1,3,6,23 46:16,19
   47:7,15,23 48:20 49:1,10 53:9
   55:20 57:13 61:22 63:4,8,16
   63:24 64:3,20 65:1,16 67:3,9
   67:14,25 70:2 74:24 75:6,12
   75:19,25 76:4,8,18,22,24
   77:13,13,16,22 78:2,11,16,17
   78:21 79:11,15,25 80:12,20,21
   80:24 81:4,4,7,23 82:10,22
   83:7,11,15,20,22 85:9 86:16
   89:4 95:23 96:3 97:22 98:22
   99:5 100:5 101:4,5,17,24
   102:3,6,9,24 103:3,6 110:12
   110:25 111:4,9 112:23 113:23
   114:1,5,7,15 115:4,20 116:20
   117:10,10,15,15 119:1,13,24
   120:14,21,24,24 121:18,20
   122:6,12 123:13 125:21 127:23
   128:7 129:16 149:14 150:9
   151:4,21 152:13 153:7,9,10,12
   153:13,14,15,19,23 156:8
**draft** 26:13 27:3
**Drive** 1:22 4:7 161:11
**due** 53:12 131:2
**duration** 156:22,23

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 405 of 558

800.523.7887                    6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 11

**duress** 140:14
**duties** 10:5 51:17 95:11 122:17
**duty** 39:17
**DX** 2:3,5,7,8

---

**E**

**E** 2:1,1,12 4:11
**earlier** 17:9 64:23 66:23,24
  82:3 109:13 135:15 158:11,22
**early** 33:10 72:2
**ease** 139:18,19
**easier** 8:4
**easily** 6:9
**education** 9:8,8 10:7,14 11:8
  23:1
**education-abroad** 10:13
**Educational** 9:24
**effect** 20:5 46:24 54:10,19
  55:10,24 94:6,23 154:4
**effective** 29:24 42:21 75:7
  94:20 128:14,25 156:24
**effectively** 23:23
**effectuate** 96:10
**effectuated** 130:17
**effort** 104:1,11
**efforts** 10:11 11:15 15:3 20:3
  42:18,20 64:25 120:20
**eight** 2:23 17:21 22:23 52:20
  94:9 95:15 97:11,14 150:6
  151:21 155:7
**Eighteen** 3:5 6:16,24
**eighty** 114:10
**eighty-seven** 114:9,10
**either** 77:13 118:17 144:14
  154:21
**Elaborate** 140:9
**elect** 147:24
**Eleven** 3:1 6:15,24 26:8
**eligibility** 135:24
**Elizabeth** 144:17,20,21,23 145:5
  157:21 158:17
**email** 3:1,2,2,3,3,4,4,5,5,6,6,7
  3:7,9,10,12,13,14,15,16,16,17
  3:22,23,24,24,25 4:1,1,4,4,5
  16:9,10 18:24 19:7 20:19,21
  20:22 23:7,9,16 24:12 26:8,9
  26:11,13,16,25 27:3,7,9 29:19
  30:2,4,5,10 32:4,9,11,13,14
  32:18,25 33:2,6 57:22,23
  58:10,14,15,20,24 59:20 61:5

63:24 64:1,3,15,20 65:1,6,9
  83:21 99:3,4,18,19,21 101:18
  101:25 102:3,9,12,16,16,23
  103:23 104:8,9 105:18,19
  106:2,4,11,18,20,23 107:18
  109:18,22 110:7,8,22 111:14
  150:16,18 153:13 160:17
**emails** 2:25 20:21 26:25 30:24
  32:3 39:2 44:16 98:16 103:14
  107:2
**emotional** 46:24
**employ** 34:4
**employed** 9:2,16 51:9,13 65:18
  90:15 91:11 144:20
**employee** 5:22 33:17 51:20 67:4
  67:16 68:1 69:10 81:13,17
  84:4 85:18 88:4 90:19 91:13
  91:19,20 92:20 93:1,5 108:20
  116:10,10,24 117:6,24 124:14
  127:2 128:25 138:11 139:10,23
  147:4 148:1,23 149:24 151:23
  154:14 155:8,10,10,20,23
  156:5,25
**employee's** 65:13 107:18 142:6
**employee's** 23:24 107:18 155:24
**employees** 5:23 65:22 81:13
  82:15 87:4,10,14 91:4,6 92:21
  94:18 101:10 107:23 108:2
  116:23 135:9 136:7 144:13
  148:20 153:14 156:16,17
**employees'** 124:1
**employer** 108:8
**employer's** 108:19
**employing** 44:13
**employment** 9:18,21 15:4 25:1
  26:4 33:25 34:4 38:9 42:24
  43:2 75:25 76:4 82:10 83:1
  91:10 109:8 110:13 116:11
  119:13 120:14,25 122:8,14
  127:22 130:10 132:6 136:7
  142:3 153:24 156:1,3
**ended** 114:12
**ends** 34:17 132:8
**enforcing** 91:6
**engagement** 38:22
**engagements** 65:17 67:15
**entailed** 91:2
**entered** 26:7
**entertain** 73:18
**entire** 10:8 51:18 59:4

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 406 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 12

**entirely** 27:8 122:18
**entitled** 83:22 85:9,19 86:17,18
  92:22 120:25 122:7,12 123:14
  153:23
**entitlement** 84:4
**entitlements** 92:20
**environment** 56:14
**equipment** 161:8
**ER** 3:11
**especially** 86:1,2
**ESQ** 1:11,11
**essentially** 25:21 65:4 66:18
  91:2 120:5 147:23
**established** 40:16 133:11
**et** 5:5 58:3 89:5 126:11
**ethics** 47:1
**evaluation** 12:24 13:1 113:21
  114:1
**evaluations** 12:22 113:23
**Evangelist** 26:22 27:1,7,10
  43:23
**event** 135:25
**events** 45:1,2
**Evergreen** 83:12,13,13,22,25
  84:5
**everybody** 139:18
**evidence** 6:10,22 16:8 20:7 26:7
  28:20 34:8 45:12 57:21 58:13
  58:19 59:20 70:9,11 71:23
  72:1,13 73:1,12,13,17 74:23
  77:4 79:24 83:3 86:2 96:8
  98:15 99:18 100:8,22 103:10
  103:14 109:18 110:6,6 111:22
  111:24 122:21 123:7 125:17
  127:6 128:20 138:9 140:10
  141:1 145:9 146:8,17,19,21,22
  147:11 152:13
**exact** 151:6
**exactly** 11:11,19 94:21 111:13
**examination** 10:23 35:12 36:12
  38:3 49:8 51:7 88:22 90:13
  138:22,24 151:12
**examine** 145:10
**excellent** 7:6 42:17
**excess** 22:25
**exchange** 153:4
**excluding** 116:20,20
**exclusive** 155:3
**excuse** 13:21 29:22 62:10 63:23
  67:14 78:17 98:3 99:19 100:4

104:19 107:14,18 123:1 128:8
  129:16 140:25 147:24 150:5,25
  157:22
**Executive** 38:12
**exercising** 128:24 138:7
**exhibit** 13:5,19 17:21 19:5,6
  20:6,8,10,11,12,17,18,18,18
  21:9 22:16 23:6,7,13 24:2,21
  26:6,7,25 29:11,18 32:8,9,17
  34:7,9 52:19 54:13,14 57:21
  58:13,18 59:9,10,19 61:2 69:6
  70:5,6,6 71:2 73:17 74:23
  76:4 77:4 79:23 80:4,5,14
  83:2 84:23 94:23 95:15 98:16
  99:17 103:10,10,14 109:17,17
  109:22 110:5,6 111:19,20,20
  111:24 121:11 125:15,16 127:6
  128:21 129:15 132:19,21,25
  133:3,4 134:24,25 141:1
  147:11 151:20 152:12 155:6
**exhibits** 2:13,15 4:8 6:6,7,11
  6:15,15,23 13:8,9,14
**existing** 129:25 131:16 132:13
  148:21
**expectancy** 135:23
**expected** 156:23
**experience** 62:22 65:11,24 67:22
  81:12 117:7
**expiration** 129:2,12 136:1,4
  148:8,24 155:25 156:1
**expire** 131:6,17 135:14
**explain** 11:6 12:3 21:24 27:12
  30:14 38:9 40:13 46:18 47:7
  47:22 51:9,16 80:20,24 90:25
  91:18 92:24 96:6 102:15 106:6
  110:3 112:13 124:23 126:16
  127:11 136:6
**explained** 64:12 100:2 107:14
  148:18
**explaining** 149:5
**exposure** 66:16,21
**express** 110:24 111:8,12
**expressed** 106:8
**Expressly** 108:5
**extend** 115:13
**extended** 133:25 134:2 148:25
**extension** 134:14
**extent** 46:22 73:4 136:12

---

**F**

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 407 of 558

800.523.7887                 6-7-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 13

**F** 1:11 4:11
**F-A-R-D-I-N** 37:23
**face** 8:1 37:10 49:20
**facilitate** 106:23
**facilitating** 102:22 107:2,11,12
 107:13
**fact** 5:20 21:11 25:14 31:9
 49:11 72:2 110:18,24 115:8
 155:16
**facts** 72:9 74:2 145:8
**factual** 72:7
**facul** 22:6
**faculties** 22:11
**faculty** 10:10 22:1,1,6,7,14
 42:22 43:25 44:1 81:13 118:19
 118:23 133:7 156:12
**fair** 25:19 53:8 57:14 64:17
 68:1 75:5 79:2 95:12 108:21
 110:19,22 111:17,18 114:6,11
 118:18 120:13,19 128:6
**fairly** 139:12
**faith** 71:19,21
**familiar** 35:1 43:16 46:15 53:6
 53:24 54:4 55:23 56:3 83:10
 91:9 93:17 94:11,15 114:5
 127:8 141:23 142:1 156:11
**far** 6:1 25:16 30:23 32:15 54:10
 55:9 61:14 115:19 153:17
 154:15
**Fardin** 37:5,17,22
**February** 15:9 16:10,20 19:10
 26:8,10 27:1,22 28:5 29:20
 32:11,14,19 40:4 43:19 45:5
 51:10 54:10 62:9 63:21 81:23
 90:15 92:19 95:24 97:18 108:4
 119:4 142:21 152:12
**federal** 126:11
**feel** 21:5 36:2 100:22 111:2
**feels** 141:20
**felt** 111:3,4 144:4
**fifteen** 3:3 6:16,24 29:18,19
 32:8,9 38:16,18
**fifty** 3:21 22:25 138:10
**Fifty-eight** 4:1
**Fifty-five** 3:24
**Fifty-four** 3:23 34:7,9 77:4
 127:6 129:15 132:21,25
**Fifty-nine** 4:1 6:18 7:2
**fifty-one** 3:22 32:18 68:23
 111:6

**Fifty-seven** 3:25 6:18 7:2
**Fifty-six** 3:24
**Fifty-three** 3:23 16:9
**fifty-two** 3:22 111:7
**figure** 45:6
**file** 106:18 114:4
**filed** 59:22 60:2,5 92:23 98:23
 151:21,22,25
**filing** 98:8
**final** 85:11,11
**financial** 22:11 126:2
**find** 54:2 146:21 151:10 160:17
**finding** 65:8 106:14 115:9
**findings** 61:22 71:13,17 72:6
 80:21 100:5,17,18
**finds** 104:9
**fine** 10:21 17:17 46:3 48:3
 159:3
**first** 7:18 8:3 15:13 20:19
 23:20 27:1 34:21 37:23 48:6
 49:19 78:22 79:1 90:6 93:20
 103:15 138:4 147:4 156:12
 157:11,13 160:6,8,12
**first-** 12:24
**fit** 148:21
**five** 2:20 5:6,6 54:3,14 66:2
 89:6,6 91:6 93:21 97:21
 115:25 135:25 141:1 142:3
 147:11 155:6,6
**flag** 109:20
**flagged** 109:20,25
**flip** 21:17
**floor** 118:9
**folks** 29:2
**follow** 33:4 72:19 108:20
**follow-up** 20:20 21:1 36:13
 62:25 69:6 109:20,25
**followed** 82:6,18
**following** 60:3 115:2 155:23
 156:1,19
**FORDIN** 2:5
**foregoing** 161:5
**form** 2:17 23:20 24:3,9,21 34:17
 65:4,7 77:6,7 127:16,25
 128:17 129:5
**formal** 59:23 60:2,3,7,10 61:2
 97:23,25 98:6,22,24 99:5,9,13
 107:5 144:7
**formally** 59:16 106:19
**formed** 115:3

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 408 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 14

former 41:20 70:18 154:14
forms 24:25
forth 13:18 73:16
forty 3:16 58:13,18 59:9,10
  63:12
Forty-eight 3:20
Forty-five 3:18
Forty-four 3:18 74:23 78:13,14
  80:14 86:21 125:15,16 137:18
  137:19
Forty-nine 3:21 128:21
Forty-one 3:16 59:20 61:2 98:16
Forty-seven 3:20 133:3
Forty-six 3:19
Forty-three 3:17 103:10,10,14
forty-two 3:17 79:24 80:5
  120:12
forum 124:17,19,20
forums 107:6
forward 37:7 83:11 131:21
fostering 91:2
found 43:7 60:14 75:22 140:23
  140:24 141:9 142:9 147:6,14
foundation 38:12 39:9,10,10
  43:8
four 2:19 5:6 24:3 62:11,23
  89:6 123:3 135:17 136:11
  137:8
Fourteen 3:3 6:16,24
framed 100:20
Frank 1:10 5:3
frankly 136:12
free 49:25 140:14 159:11
frequent 149:1,4
Friday 78:25
front 52:21 72:1 76:5 89:17
full 8:19 51:23 52:25 137:6
  154:12
full-time 133:6 134:4
function 51:18 122:20,25
functions 51:17
funding 18:14 56:16,18
fundraisers 42:21
fundraising 14:21,23,24,25 15:3
  38:21,23,24 40:21 42:18
funds 56:21
further 154:21 156:1
future 132:5

—————————————
G
—————————————

G 4:12 145:15
G-R-E-Y 145:16
G.I 41:4
G.I.H.H.R 11:10,15,25 12:6,13
  14:18 18:13 19:14 22:24 26:9
  26:18 27:22 28:1,5,9,10 29:21
  29:22 30:13,16,18,24 32:1 31:23
  32:1 35:4 40:3,10,15 42:10,11
  42:19 43:6 47:17 56:17,23
  61:14,21,23 102:6 109:21,24
  153:11,12,16
G.I.H.H.R.s 105:2
general 1:14 5:17 48:4 51:16
  132:13
generally 30:10,15 40:13,22
  42:2 46:20 47:19 81:16 82:2
  93:20 96:6 156:14
gentleman 159:15
gentlemen 160:23
George 59:21 61:7 98:17,18
getting 46:7 73:1 127:14
Gina 29:25
give 8:8 12:22 16:13 23:25
  37:13 39:11 50:22 58:2 89:22
  97:12 131:24 132:8 133:16,18
  136:17 143:24 160:20
given 30:6,7 39:18,20 44:23
  104:12 127:22 131:8,10 143:10
  143:17 144:3 154:12 158:11
gives 58:6
giving 20:15 31:1 85:20 104:2
  114:17 131:14,15 132:9
Glad 134:10
glasses 52:22
Global 9:24 11:9 23:1 30:1
  39:23 40:17 56:16
globe 41:7
go 10:9 12:20 18:4 21:22 25:22
  28:19 29:1 30:10 33:12,17
  36:24,25 41:23 45:14 46:2,3
  47:3 49:25 51:23 52:1 53:4
  55:14 64:8 67:1,3,15 71:1
  73:19 98:13 104:5 108:25
  116:18 117:3 121:9 126:5
  127:16 135:10 140:19,19
  143:22 145:23 152:16 159:11
  159:18
goal 113:6
God 8:10 37:15 50:23 89:24
goes 54:12 73:17 156:17,21

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 409 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case                Associated Reporters Int'l., Inc.

Page 15

**going** 8:5 19:20 31:1 45:13 47:2
  50:18 54:8 58:4 68:25 72:12
  80:14,17,25 83:11 86:5 89:19
  110:10 128:3 131:12,16,16
  132:10,22 133:15 134:10
  140:19,19,25 147:10,21 152:19
  154:1 155:9 160:8
**good** 5:2 10:24 13:3 27:10 38:4
  48:16 49:16 51:8 71:25 89:3
  90:14
**Governor's** 5:21
**governs** 147:18
**graduate** 111:15
**grant** 103:25 104:10,11,13 105:3
**grants** 12:5 104:1,13
**great** 8:23 47:14
**Grey** 144:17,20,23 145:5,13,14
  157:21 158:2,11,17,18
**grievable** 85:21 86:4,11
**grievance** 86:10 92:23 140:20
  141:7,9,10,12 149:1,4,20
  150:10,12,13,14,22 151:1,10
  151:11 152:13,14 153:5,6,7
  154:11 155:7,11,17,18
**grievances** 91:22 149:18 151:21
  154:14,19 155:10
**grievant** 152:14 154:22 155:17
**ground** 120:7
**grounds** 13:9 57:17 61:25 143:5
**guarantee** 132:2,4,5
**guess** 8:4 16:11 68:10
**guessing** 66:9
**guidelines** 33:4
**guilty** 29:12 110:25 111:9

─────────────────────────
                **H**
─────────────────────────

**H** 2:12 4:12
**H-A-R-V-E-Y** 8:21
**H.R** 27:15,16,19 33:9 51:18,19
  51:23 52:1,5,7,15 53:16 56:7
  57:15,17 60:12,14,23 61:7
  73:24 74:6,11 77:11,12 81:4
  81:20 84:3 87:5,13 88:14
  97:24 102:9 105:4,19 110:19
  121:20 122:2,17 123:25 125:20
  129:6 154:1,5
**H.R.M** 23:17,20,24 24:3,9,17,20
**half** 66:9 126:4
**hand** 8:7 37:12 50:19,20 81:7
  89:20,21

**handful** 97:20 142:23
**handing** 13:18
**handle** 22:5
**handled** 21:7 107:7
**handles** 77:9
**handling** 73:7
**handwritten** 111:25 112:2,4
**Hannah** 1:21 161:5,10
**happen** 19:1,16 59:22 69:11
**happened** 19:19 67:25 72:7 73:16
  152:21
**happening** 44:6
**happy** 47:20 151:16,19
**harassment** 43:24 44:8 58:2 74:4
  84:8
**Harvard** 40:25 41:9
**Harvey** 2:2 7:14,18,19,20 8:12
  8:21 20:19,23 77:6 103:2,15
  103:21 104:9 105:4,6,15,23
  113:25 117:10,15 127:7 137:8
**Havidan** 64:10 101:14
**head** 17:11 27:16 52:4 73:24
**heading** 69:22
**Health** 11:10 30:1 39:23 40:17
  56:16 126:3
**hear** 8:4 105:5 118:22 152:7
  158:21 160:5
**heard** 5:7,24 20:5 74:18
**hearsay** 43:20 44:22 46:10
**Hedberg** 14:2,2 20:20,22 21:8,20
  23:17 77:13,14 126:13 127:1
**Hedberg's** 21:25
**held** 14:5 27:21 39:6 40:14 45:1
  92:1,6 126:17
**hello** 21:2
**help** 8:9 37:14 50:23 89:23
**hey** 131:19
**high-level** 120:2
**hiring** 121:1
**hold** 54:2 91:13,25 92:5 145:7
**hole** 112:10
**home** 139:24
**honor** 5:12 6:12 7:5,9,11 8:25
  10:19,20 13:13 18:5 25:8,20
  28:14 29:9 30:20,21 35:11,13
  36:11 38:2 41:24 43:3,6,17
  45:10 46:21 47:15 48:18 49:7
  49:9 52:14 59:11 61:11 68:24
  70:20,25 72:25 74:20 84:10
  88:21,23 89:11 92:17 93:9

800.523.7887                6-7-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 16

95:2 103:12 122:9,16,23
123:16 135:1 138:23 150:7
151:7,9,15 158:10 159:6,8,17
160:1,3,25
**HONORABLE** 1:10
**hop** 11:2
**hope** 104:9
**Hopkins** 41:9
**hostile** 56:13
**hotel** 45:17,23
**housekeeping** 7:7 159:24
**human** 11:10 18:8 23:23 30:1
34:10 39:23 40:17,19 47:18
51:14 53:9,15 56:16 57:11
67:16 77:6 90:4 91:15 96:13
96:17,21 97:6 100:2,5 127:8
144:14 151:22
**hundred** 14:21 87:8,10 97:11,13
97:14 123:24 125:23 133:10
**hundred-and** 126:8

---

**I**

**idea** 26:13,14
**identified** 26:24 29:18 33:10
52:19 53:24 70:8,10 79:24
93:12,21 94:11,12 99:18
104:25 109:23,25 138:7
**identifies** 86:22 99:21
**identify** 15:2 67:4,4,15 82:7
90:14 104:2,12
**identifying** 14:8 70:14
**imagine** 22:6 152:20,20
**immediately** 18:22
**impacted** 48:21 49:4
**impeach** 68:25 71:7
**importantly** 71:6
**impose** 57:18 67:25 68:8 69:9
84:9 100:4,4
**imposed** 68:13 80:25
**imposing** 62:1
**imprecise** 119:18,20
**impression** 31:1 102:19
**improperly** 64:20 102:9
**improprieties** 64:22
**in-between** 131:23
**inappropriate** 17:7 106:4,19
**inappropriately** 71:20 106:2
**incidents** 68:12
**include** 86:23 91:5 126:1
**included** 24:21 42:12 51:19

**includes** 91:20
**including** 15:3 22:24 80:1,3
89:8 91:4 107:9 133:5 153:8
**increasing** 40:21
**indicate** 107:17 112:25 160:13
**indicated** 5:22 6:21 14:12 21:12
109:13 116:25
**indicates** 129:15,18 138:16
**indicating** 35:22
**indicting** 29:14
**individual** 39:16 57:22 68:14
97:5
**individuals** 29:20 31:18 32:3
40:11,18 45:15,21 46:7 76:9
106:24 112:17
**info** 58:6
**inform** 29:24 104:23 140:4
**informal** 59:23 60:2,4,7,10 61:3
98:1,7,9,22,24 99:5,9,13
144:7
**informally** 59:16 106:19
**information** 18:12,20 19:14
24:14,15 25:13 33:21 46:7
65:13 74:8 75:21 77:13 102:5
107:19 120:6 123:3 144:4
156:19
**informed** 43:23 149:24
**initial** 82:24
**initials** 112:16,19
**initiate** 81:20
**initiated** 25:18 76:18,22 77:23
**initiates** 81:17
**initiating** 49:3 76:24
**innocent** 68:14
**input** 27:7 31:13,17,22,25 75:24
**inquired** 105:4
**inquiring** 98:22
**inquiry** 72:12,23 73:17
**instance** 23:20 68:10,15 73:15
**instances** 66:13 81:16 116:9,21
**Institute** 11:10,12 12:5 30:1
39:23 56:16
**instructed** 24:23 66:13
**insubordination** 108:21
**insurance** 52:1 126:3
**Int'l** 161:11
**INT'L** 1:22
**integral** 118:20,24
**intended** 80:9
**intention** 61:1

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 411 of 558

800.523.7887            6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 17

interact 46:16
interaction 12:18 15:16,18
interactions 16:14 47:23 120:20
interest 135:22
interested 86:8
interference 140:12
interim 31:4,17 40:7 145:19
interjection 13:6
intern 29:25 31:23 32:1,4 40:3
  40:11 103:24
international 9:7,24 10:7,11,12
  10:14 11:8 23:1 40:18
internationalized 10:11
internationally 45:7
interns 17:2,14 44:17 105:2,7
  107:3
interpret 86:13
interpretation 122:25 123:1
interrogate 113:10,13
interrogation 33:10,12,14,17,19
  33:22
interrupted 136:5,5
interrupting 139:14
interview 60:15 115:20 157:23
  157:24,25 158:8
interviewed 63:3,8 146:4
interviews 60:19
intro 29:22
introduce 123:7
introduced 13:4 16:8 17:20 34:8
  57:21 58:19
investigated 56:12 57:5,12
  72:22 74:7,11
investigating 74:1
investigation 16:21,23 17:1
  18:7,9,12,19 27:19 33:20
  43:18 44:12,13 45:9 46:16,20
  47:12,24 48:2,6,22 49:3 53:13
  53:17 55:19,21 56:7,8 57:15
  57:16 60:12,12,15,21 61:4,16
  61:22 62:9,20 63:1,2,4,8,20
  64:16,25 65:9 67:23 69:15,19
  69:21 70:2 72:9 74:3,17 75:22
  80:22 81:22 84:6 85:6 96:2,3
  96:7,16 97:6 100:6 105:20,22
  109:14,24 110:18 114:12 115:8
  115:21 119:14,25 120:2 122:2
  140:3,4,5,8 142:13 157:22
investigations 56:11 62:12,17
  62:23 65:12,21 67:23 68:6

91:21 97:9 109:21 110:15
  116:1,8,19 140:16
investigator 71:5,5
invitation 26:9
invite 60:21
involve 92:20
involved 10:14 14:24 19:16
  22:10 51:21 62:10,11 75:11
  76:7,10,13 77:11 85:14 87:16
  93:7 96:1,3 97:9,19 119:15
  142:17 150:2
involvement 11:20 14:18 19:2
  42:16 56:23 67:10,12 88:11
  117:23
involving 56:15 71:19 72:3
  152:14
Iranian 45:22
issue 17:10 25:14 29:5 51:22
  56:22 58:5,8 65:20 72:5 82:10
  102:16 106:15,18 108:13 116:9
  120:23 122:24 153:23
issued 58:9 64:12 70:7 77:8
  79:12,14 83:8 87:18 128:7
  138:9
issues 11:1 56:12 57:12 62:24
  62:25 72:18 93:1 109:5 119:13
  119:24 120:14 123:5,19 127:2
  155:10
it'll 95:16
it's 39:14 41:15
items 6:4
IX 44:23

---

**J**

J 4:13
James 19:7 36:14 76:12 117:9,11
  117:12,14 118:2 145:20
January 9:12 10:3 115:24 116:3
Jesse 1:11 5:12
Jim 145:2
job 38:19 51:17 81:19 82:5,14
  90:25 91:2 95:10 122:20 157:8
Joe 88:25
Jordan 26:21 27:1,6 43:22 44:5
Joseph 1:11 5:11
Judge 5:3 11:1 67:8 90:10 92:14
  93:8,18 96:21 97:15 98:8,12
  106:12 119:10 120:6,9 124:19
  133:21 134:18 137:21 141:15
  145:14 149:8,11 150:19 159:12

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 412 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 18

**judicial** 28:20 70:21 71:17 72:2
  72:12
**July** 54:17,18 57:23 58:15,20
  59:21 62:7 84:22 93:13,14,14
  94:14,14,20 99:6 110:19 134:3
  137:4
**June** 1:6 5:3 103:15,16 104:8
  134:2 137:3
**just-cause** 146:16

---

**K**

**K** 4:14 51:4 94:23
**K.A** 19:13 20:24 58:6 59:23
  99:21
**Kamair** 117:24
**Kamiar** 1:3 2:18 5:5 11:2 23:17
  23:19 24:15 43:18 57:13,24
  62:10 89:4 95:23 102:20,24
  110:9 152:14 161:6
**Kamiar's** 24:17
**Karl** 19:7
**keep** 8:15 37:8,20 50:14 71:1
  89:16 132:19,19
**Kevin** 2:18
**key** 101:6,10
**keys** 63:17
**kind** 123:13 148:21
**knew** 45:7
**know** 5:24 6:1 11:2 12:16 14:2
  14:24,24 15:23 16:1,2 19:21
  19:22 21:4,4 22:3,10 23:16
  26:17 27:13 31:7,12 32:25
  34:21,22 44:6 45:22 54:8 55:2
  59:22,24 62:25 66:16 76:7,9
  76:14,15 77:10,25 78:23 81:13
  82:6,25 83:23 85:22,23 87:4
  87:10,12 88:7 94:16 97:20
  100:21,21 102:24 103:2,5,24
  104:9 106:22 107:1 110:2
  119:1 123:20 124:3 126:7,10
  126:12,13 129:8 132:14,14
  134:16 138:18 140:11,23
  141:20,21 143:5,10,13 144:3
  144:14,17,23 146:3 147:8
  150:12,21 151:2,5 152:17,24
  154:10,16,22 155:5,12,21
  156:7 157:18 158:20 159:1
  160:16
**knowledge** 18:12 26:2 40:8 76:13
  156:9

**known** 14:17,17 45:6 143:10

---

**L**

**L** 2:12 51:3 90:23
**L.L.C** 1:12
**labor** 51:20
**language** 86:6 139:12 155:7
**large** 63:3 102:19 119:22
**larger** 23:1 150:6
**late** 150:5
**law** 41:11,17 70:22
**leaders** 31:10
**leadership** 10:7 28:10 30:6
  120:22
**leading** 12:5 84:10
**leaning** 74:14
**learn** 16:19,21
**learning** 14:12
**Leave** 130:21
**lecturer** 133:7
**lectures** 65:17
**left** 25:18 36:22 47:8 112:9
**left-hand** 112:14
**legal** 135:22
**lengthy** 155:15
**let's** 29:1 36:25 55:14 71:20
  73:16 108:25 131:2 134:22
  159:18 160:4
**letter** 2:16,17,22 3:8,8,9,10,12
  3:13,14,15,18,19,20,21,21,22
  4:2,3,9,10,10,11,11,12,13
  13:20,25 14:8 17:21,23 18:7
  20:8,14,16,23 21:2,9,12,15
  23:18 24:13 35:21 36:14 53:9
  69:7 74:23 75:13,20 78:11
  79:10,12,14 80:15 81:5,8 83:4
  83:7 87:19 95:14 96:2 108:18
  109:7 121:13 122:4 123:14
  124:10,15 125:6,17,20,23
  127:25 128:7 132:17 133:2,5
  133:11 136:8,24 137:10,11,12
  137:13,23 138:9,15 139:1,3,3
  142:25 143:11,17 152:11,15,22
  156:13,25 157:6,7,9,14
**letters** 3:20 87:14 124:5 127:3
  133:4,4
**level** 66:16 118:12 146:14
**lift** 110:2
**light** 31:8
**limited** 72:11,23 91:4 107:10

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 19

**line** 29:21 72:11 73:6,17 74:19
**lines** 71:11
**Lisa** 160:14
**little** 8:23 29:8 140:9
**local** 45:4
**LOCATION** 1:8
**lodged** 61:3
**long** 9:9 23:25 38:14
**longer** 5:23 153:15
**longest** 148:12
**look** 16:9 17:21 23:9 32:24 34:8
  52:20 74:25 80:8 83:3 95:16
  98:21 111:20 134:16 148:19
**looked** 23:24
**looking** 13:14 21:2
**looks** 27:3,10 75:8
**lot** 22:3
**luncheon** 89:4

_____

**M**

**M** 70:17 71:20
**M's** 71:10
**magnitude** 63:1,2
**main** 57:4
**maintain** 155:11
**major** 56:25
**making** 21:5,9 40:7 75:6 76:7
  91:7 119:23 122:18 158:11
**MALESZWESKI** 1:14
**mandate** 5:23 6:2
**mandatory** 144:13,15
**manner** 18:9 106:4 135:22
**March** 109:21,24 110:7 153:7
**mark** 28:24
**marked** 6:6,7,10 13:19 20:7
  28:21 70:11 74:22 128:20
**Marketing** 44:2
**marks** 68:14
**mask** 5:23 6:2 7:23 8:5 36:19,20
  37:8,9,11 49:19 50:10,14,17
  88:25 89:16,18,19 159:9
**masked** 6:3
**Massena** 1:23 161:12
**matter** 65:24 70:17 71:19 89:4
  105:5 110:1 122:3,17 138:12
**matters** 10:7,14 22:6 65:21,24
  95:11 125:1
**Maureen** 83:16 153:20
**maximum** 148:2
**mean** 12:10 18:16 28:23 29:14

45:19 54:25 93:5 106:6 108:10
  127:20 128:3,10 129:3 132:2,4
  136:10 137:11 138:17 144:12
  146:19
**meaning** 125:25 129:22 132:9
**meaningful** 15:3
**means** 124:23
**meant** 27:12 29:13 46:11
**meet** 21:24 81:5 136:14 148:25
**meeting** 26:10 27:21,25 28:1,4,7
  28:17,18 33:9 45:7 78:16,17
  78:22 79:1,11,13 80:12,18,20
  112:22 113:4,8,19 115:20
  159:23
**meetings** 17:10 78:21 79:14
  105:2
**member** 22:1,14 40:14 42:11
  43:25 44:1 81:23,25 82:1
  87:20,23 124:10 125:5 154:19
**members** 22:1 30:12,15,24,25
  40:25 41:12 42:1 61:14,15
  87:5,6 123:20 124:5 144:14
**memo** 3:17 4:9 58:5,8 99:20
  143:25
**memorandum** 79:25 80:9
**mentally** 29:13
**mentioned** 39:9 146:7 147:13
  151:21 152:4 157:21
**merits** 25:4,7 75:18
**met** 79:5 81:7
**mic** 13:21
**micromanaging** 118:2
**microphone** 103:11 151:14
**middle** 94:21 115:2
**Milano** 1:10 5:3
**million** 14:21
**mind** 10:20 17:6
**mine** 12:14 151:16,19
**minute** 29:2,5 36:25 109:1 150:7
  159:19
**misconduct** 58:1 99:23,25 115:9
**mission** 12:6
**moment** 55:15
**money** 85:19 155:11
**monies** 86:16
**monitor** 8:7,13 29:3,7 37:2,12
  37:18 50:4,20 51:1 54:11
  55:17 89:2,21 90:2 95:16
  114:24 139:21 159:21
**month** 12:19 126:4 134:14 136:11

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 414 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 20

**month-to-** 134:14
**monthly** 104:16 136:18,20
**months** 110:21,21 126:6 130:15
  131:14,15 132:3,7,9,11 134:7
  136:3,7,11,11,12 137:8,25
  138:14 148:8
**months'** 136:18
**morning** 5:2 10:24,25 15:14,17
  16:15 38:4 51:8 160:5
**move** 30:21 72:13 127:15
**moved** 12:13
**multitude** 107:4,5,8
**mutual** 151:1

### N

**N** 2:1
**N.O.D** 113:10,11
**N.Y.S** 128:23
**name** 7:19 8:14,19 26:21 37:19
  37:22,23,23 51:2 90:3,4,6
  153:20 160:14
**named** 29:24,25 60:20 69:16
  83:16
**names** 60:17,20
**narrow** 45:12
**national** 40:18
**nationally** 45:6
**nature** 13:1 30:8 31:16 56:14
  62:15 140:4,15
**near** 63:20
**necessarily** 12:15 152:2
**need** 7:7 19:12 28:19 35:16
  58:21 85:24 86:12 104:24
  105:2 115:12 133:16 138:17
  158:20 159:1,24
**needed** 138:18
**negatively** 48:21 49:4
**negotiate** 113:17
**negotiated** 54:21,22,23 55:11
  94:4
**neighborhood** 97:20
**neither** 19:23 59:25
**nervous** 16:17
**never** 18:19 55:7 64:12 67:25
  87:16 103:2 115:20 124:24
  125:10 143:1,2,3 158:5
**nevertheless** 68:14
**new** 1:1,5,8 5:4,5 13:14 35:18
  38:25 54:1 70:19 83:25 87:11
  89:5,5 90:16 92:9,12 93:13

94:3,13 128:13,22 130:5,25
  134:13 156:12,25 161:6,12
**newspaper** 5:21
**nexus** 109:7
**nice** 159:12
**night** 5:21
**nine** 2:24 14:21 22:23 56:8
  59:23 60:12,18 61:4,7,8,9
  69:15,21 70:2,19 74:16 87:3
  96:17,19,20 97:2,14,23 98:18
  98:23 99:12 109:14,14 114:11
  115:8 142:12 143:25 144:7,24
  145:3,21 146:4 160:5,6
**Nineteen** 3:5
**non-** 22:13 35:22 36:13 113:16
  117:9,23 120:20 123:14 130:8
  133:22,24 138:10 142:5 143:5
  147:18 156:5
**non-alumni** 39:15
**non-recorded** 108:11
**non-renew** 20:2,4 26:3 36:3 58:4
  78:2 115:13 116:24 122:8,14
  133:15
**non-renewable** 118:16,17 148:16
**non-renewal** 20:23 21:2 24:25
  25:19 36:6 43:4 76:18,18,22
  76:24 77:15 81:11,12,17,20
  82:9 83:10 113:22 115:23
  117:5,7,15,18 118:2 120:24
  130:8 131:2,5,8,10,15,22,25
  132:16 133:16 138:16 142:8,12
  142:24,25 147:2,13 148:13,18
  149:14,15 155:21 156:8
**non-renewals** 142:17
**non-renewed** 42:24 43:1 82:16
  110:14 121:18 130:12 131:21
  132:17 137:5 138:18,19 147:5
**non-renewing** 115:11
**non-salary** 86:24
**Nope** 137:16
**normal** 157:3
**note** 113:6 122:24 153:9
**noted** 67:9,12
**notes** 3:11 112:1,2,4,11,14,22
  125:24
**notice** 3:18 28:15,21 34:19 51:9
  70:21 72:2,12 77:5,24 113:12
  113:13 127:7,13 128:21 130:4
  130:8,20,23 131:2,5,8,10,14
  131:22,25 132:6,7,8,10,12,12

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 415 of 558

800.523.7887              6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 21

132:13,15,15,16 133:16,18,24
135:25 136:14,18,21 137:6,7
137:11,12,25 146:8,15 147:1,6
148:6,13,16,21,21,24,25
149:13,20 150:25 155:24 156:5
156:8,18
**notices** 149:14
**notify** 136:3 138:17
**notwithstanding** 5:20
**November** 70:8,20
**number** 5:6 23:11 27:2 29:20
44:16 45:2,15,21 47:16 63:3,3
63:7 66:4 80:4 89:6 109:19
134:13 135:17 150:5,6
**numbers** 137:21
**numerically** 6:7
**NY** 1:23 4:13
**NYSUT** 2:22

---

**O**

**o** 100:16 113:14
**O'Carpenter** 32:10
**O.S.C** 138:17
**oath** 55:4
**object** 145:8
**objecting** 70:24
**objection** 25:8,20 43:3,10 45:10
46:21 68:24 73:18 84:10 115:1
122:9,15,22 123:16 145:4
146:23
**obligations** 151:2 153:4
**observations** 42:15 46:19 47:1,7
47:19,23 48:24 49:1
**obviously** 56:3 62:24 65:8
116:20
**occasionally** 129:7
**occur** 84:2
**occurred** 14:15 80:10
**October** 73:25 92:14,15
**offered** 139:10
**office** 1:14 5:21,21,25 22:5
23:23 26:19 39:15 56:9 60:18
61:8,9,13,20 62:2,4 76:11
84:25 85:4,4 87:11,15,17,20
87:24 88:1,6,13,16 96:17,17
96:20,21,22 97:1,2,24 98:19
100:3,18,19 109:15 116:1
120:3 123:12 124:2,6,11,16
125:7 128:22 144:24 145:3
146:4 151:22 157:19

**officer** 135:19 136:2
**officer's** 136:2
**offices** 12:14
**official** 1:19 44:24
**officially** 43:20
**OFFICIALS** 3:19
**Oh** 21:16,19 24:7 47:21 151:11
**okay** 6:20 7:21,25 9:9,25 11:4,6
11:14,17,22 12:7,20 13:4,12
13:13 14:8,20 15:6,11 16:5,19
17:4,12,17,25 18:11,22 19:5
19:18,24,25 20:6,17 21:22
22:10 23:3,14 24:24 25:25
26:13,24 27:9,18 28:7,12
31:15 32:3,8,17,22 33:2,8,12
33:24 34:7,17 35:1,7,10 36:5
36:17,18,24 37:22 38:6,8 39:9
39:22,25 40:2,22 41:6,11,14
42:6,11,18,23 43:14 44:10,19
45:3,8,18,25 46:2,9 47:22
49:6,8,10,13,24,24 50:5,9,15
50:17 51:5,12,16,21 52:3,22
53:15,19,22 54:15 55:3,13,23
56:25 57:11 59:1,12,19 61:10
61:24 62:9,14 63:14,23 64:5
64:19,23 65:8,11 66:11 67:1
67:14,22 68:17,20 69:15 70:5
70:16 71:18 72:15,16 74:1,20
75:5,11 76:3,7,12,17 77:1,10
77:15 78:4,6,9 79:7,8 80:6,14
80:17 81:3,7,11,22 82:1,5,14
83:15,20 84:6,20 85:3,8,13
87:3,9 88:22,24 90:8,21 91:18
91:23 92:5,12,15 93:1,9 94:25
95:7,10,14,22 96:1,6,12 97:5
97:8,16,22 98:5,13 99:15
100:2,9,14 101:4,13,16 102:5
102:8 103:6,21,23 105:22
106:1,22 107:12,17 108:13,16
108:20,24 109:17 113:2,21
114:10,19 116:6,8,13 117:9,21
118:10 119:1 120:19,23 121:15
122:2 124:8 125:20,23 126:7
126:13,21 127:5,19 128:6,16
129:5,9 130:10 131:8 133:21
135:2,10 138:3,20 140:3,7,23
141:9 142:21 143:13,16,22
144:17,23 145:1,8,12,17
146:11 147:8,13,16,18 148:8
149:17,23 150:4 152:11,21

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 416 of 558

800.523.7887              6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 22

153:19 154:8 155:5,14,20
156:10 157:3,13 158:25 159:4
159:5,9 160:4,11,22
**once** 12:19 26:18 36:20
**one-time** 48:7
**one-year** 130:18,23 132:16
133:24 134:7,15 136:21 148:21
**operate** 142:12
**operates** 130:2 138:19
**operations** 127:17
**opinion** 11:25 12:3 42:14 43:4
48:23 99:24 110:12,24,25
111:8,12 115:4,4 122:19
123:13
**opportunities** 104:13
**opposite** 158:19
**option** 152:2
**options** 113:20
**order** 24:18 35:16 104:15 133:24
136:14
**ordinary** 73:8
**ostensibly** 20:10
**output** 104:15
**outset** 63:20 71:24
**outside** 45:1 108:17 121:22,22
123:3 150:15
**outstanding** 12:4
**overall** 38:23,24 47:8,11
**overheard** 48:11
**overrule** 43:10
**overruled** 25:11 45:14 47:2 69:1
**oversaw** 11:14 44:2
**oversee** 38:21
**overseeing** 11:24 42:12 119:12
119:23 120:14
**oversight** 127:2
**overtime** 42:19 44:11
**owed** 82:15 121:20
**owns** 154:18

**P**

**P** 1:10 5:3
**p.m** 21:1 161:2
**PACKET-** 4:5
**page** 2:2 4:10,10,11,11,12,12,13
14:21 34:10,12 52:25 68:22
93:20 94:9 95:17 100:16 111:6
114:9 120:11 127:9,14 134:23
135:7 155:6
**pages** 2:14,16 4:9,9,14,14

**paid** 51:23 75:8 86:22 88:15
129:13 149:6
**papers** 13:18
**paperwork** 24:18 51:19 77:9
**paragraph** 138:4
**parallel** 74:17
**pardon** 39:19
**part** 14:15 18:12 23:6,12 24:3
24:21 28:20 35:4 43:4,5,6
53:12,16 55:19,21 59:22 63:4
63:8 64:23 69:6,16 74:3,8
80:9 82:5,9,14 86:15 103:24
105:20 112:14 116:8 118:20,24
122:2,16 123:14 135:8 148:19
152:11 157:3
**participate** 18:8 75:18
**particular** 20:16 39:11 119:15
146:13
**particularly** 94:13 114:5 136:13
**parties** 89:7 151:2 153:18
**partner** 47:14
**party** 98:12 145:25
**pay** 87:22 88:4 113:14 124:14
125:5,24 126:7 128:25 147:25
**paying** 124:9 125:2 129:8 137:23
154:5
**payment** 82:11,22 120:25 121:18
126:1,8
**payout** 86:23
**payroll** 126:5 128:22
**pedigree** 8:23
**pen** 14:9
**people** 18:19 22:25 26:15 27:2
30:9 32:14 33:9 38:6 40:13
41:7,9 42:2 52:7,10 60:20
63:3,3,8 65:25 66:4,12,23,24
67:5 105:8,13,16 107:15
109:19 112:19,25 113:1 140:14
**performance** 113:21,23 114:1
**period** 22:18 127:14,20,21,22
128:1,4,9 129:13,20,21 130:4
132:6,8 133:8 135:13,15,20
136:20,21 138:1,15 149:1
150:10
**periodically** 12:17
**periods** 136:9,19
**permanent** 156:3,22
**permissiveness** 45:12,13
**permit** 47:2 73:8,10,11
**permitted** 115:1

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 417 of 558

800.523.7887                    6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 23

permitting 73:9
Persian 45:4 48:21 49:2
person 22:5 30:11 47:20 62:18
  64:15 66:19 69:16,22 70:2
  72:3 104:24,25,25 122:18
  125:4
personal 26:2 42:15
personality 46:19 47:12
personally 36:15 88:12
personnel 2:24 3:1 28:4,5,8
  121:6,19 125:1 127:17
Petitioner 70:18
philanthropic 42:9,10
phonetic 26:22 32:10 41:21
physically 74:14
place 74:17 87:13 89:17 94:17
  95:5,8
placed 101:6 139:23 147:10
Plaintiff's 89:10 141:1 147:11
planned 58:2
plastic 37:10 50:16
played 120:2
playing 119:12,17,22 120:1,15
  120:16
pleading 28:22,23
please 5:10,15 6:13 7:13,18,22
  7:23 8:15,20 32:20,24 37:3,7
  37:9,20 49:12,19 50:5,12,19
  52:20 57:2 61:17 71:2 88:24
  89:9,17 90:9 104:14 116:16,16
  125:11 127:24 159:10
pleasure 133:6
point 22:5 28:7 33:8 36:15
  42:23 43:16,17,23,25 46:23
  48:5 62:12,22 63:16 64:17
  79:21 86:4 97:9 101:11 110:16
  110:25 114:12 115:21 124:9
  131:13 132:22,24 157:16
policies 2:21 58:2 64:21 96:9
  108:7,10,11,11,12 111:1,10
  134:8,12 135:3 156:2,17
policy 57:14 59:24 61:25 67:24
  68:7 69:8 84:9 98:23 102:10
  106:14 108:13 146:13
portion 13:20,25 29:19
posed 120:13
position 9:6,11,22 10:1,4 11:7
  14:5 38:10,15,17 39:6 40:14
  51:12 82:22 90:18,22 91:10,12
  91:13,18,24,25 92:5,6,10

92:13,19,19 114:7,15 120:22
  126:16 157:10 160:12
positions 22:2 39:6
positive 91:3
possibility 160:13
post 9:10
potential 140:12,13
power 154:23
practically 10:13 21:4
practice 91:22 136:13 143:24
  144:2
preceding 94:16
precipitated 15:24 16:3
precise 15:1
predates 105:9
predecessor 94:16 95:5,8
preliminary 11:1
prepare 21:15 26:15
prepared 22:13 27:7 77:12 161:7
preparing 20:14 77:11
preponderance 100:7 146:8,17
present 5:14 89:8 112:17,19,25
  124:9
presented 102:18
preserve 123:6
president 38:11 41:11,18,19
  49:15 51:14 64:2,6,7,10,12
  84:25 90:23 101:14,16 117:18
  117:19 119:6,8,9 120:8 122:19
  145:19 156:4,7 160:8,9,10
president's 39:15 62:4 76:11
  84:25 85:4,4 100:3,19 120:3
  123:12
pretty 17:3 58:25 139:13
preventing 63:24
prevents 42:11
previous 34:25 66:2 93:4 149:10
previously 6:5 17:20 65:12
  84:19 106:7 111:14 118:13
  136:24 141:2 144:20
primary 56:12 70:1 97:5
prior 14:15 65:21,24 66:3,13
  67:22 68:12 81:12 83:14 128:8
  128:12 133:2,18 136:4 148:8
  148:24
priority 110:1
privacy 30:25
private 42:9
pro 117:23
probably 68:9 77:11 152:21

800.523.7887                6-7-2022, WORD INDEX, Alaei case                Associated Reporters Int'l., Inc.

Page 24

**procedure** 86:10 96:11 141:9,12
  155:7
**procedures** 96:9
**PROCEEDING** 1:21
**proceedings** 6:2 72:4 159:23
  160:23 161:6,9
**process** 43:4 44:12 77:15,22
  81:12 82:5,9 83:11,14 85:5,21
  86:15 87:13 101:4 115:3,24
  118:21 120:24 123:15,25 142:9
  142:12 154:24 156:12 157:3
**processed** 127:17 137:8
**processing** 51:19
**procuring** 12:5
**professional** 155:23 156:20
**professionals** 30:17 118:19,23
**professions** 2:20 4:2,14 53:25
  54:1 81:24 93:13 94:12 128:24
**Professor** 9:7
**Professors** 93:13
**profile** 40:21
**program** 66:17
**progressive** 104:1,11
**prohibits** 107:22 108:2
**promote** 47:17 117:23
**promptly** 160:5
**proof** 146:14
**proper** 91:22
**properly** 64:20
**proposals** 103:25 104:10 105:3
**Proposed** 70:6,6
**protect** 140:8,10,10
**prove** 100:7 146:12
**provide** 21:11 22:3,9 75:24 85:4
  156:7
**provided** 6:6 12:24 21:8 35:21
  60:18 75:21 125:20 135:12,18
  137:8,12 153:16
**provides** 86:10 108:19
**providing** 10:6,12 27:3
**provision** 147:1,22,23 148:6,13
  149:21 157:1
**provisions** 147:14
**provost** 9:23 11:8 14:6,7 17:10
  20:9 21:3,5 22:5 23:18 24:16
  24:19 26:3 31:9 36:14 62:2
  63:17 76:12,12 117:14,23
  118:2,12,16,19,24 126:23,24
  144:21 145:20,20
**public** 124:17,19,20

**pull** 133:2 134:22
**punch** 112:10
**purport** 14:11
**purportedly** 20:8 29:19 57:22
**purpose** 58:3,5 86:10
**purposes** 22:19
**pursuant** 70:21
**pursue** 155:9
**pursued** 124:9
**pursuing** 12:5
**pushing** 117:9,14,18 118:17
  120:20
**put** 7:24 15:9,12,23 16:3 18:23
  36:19,20 37:9 49:19,22 50:12
  50:17 53:10 88:24 89:18 95:23
  129:6 139:4 159:9

## Q

**qualifications** 40:15
**qualify** 42:19
**quality** 11:25 42:14
**quantified** 66:3
**question** 10:20 16:11 25:23 27:4
  27:24 31:16 34:22 43:11 47:4
  48:16 56:20 58:5 60:10,23,24
  61:17 68:2,11 69:23 72:20
  75:1 84:18 94:1 95:18 96:24
  99:1 100:24 105:13 106:25
  114:10 115:15 116:14,16
  117:13 118:3,8,9 119:18,20
  120:13 122:10 124:12 125:11
  138:13 144:6 154:15
**questioned** 146:6
**questioning** 73:6 74:19
**questions** 35:11 49:9 57:2 72:18
  73:11,18 85:25 88:23 92:21
  115:2 138:25 141:2 159:6
**quick** 52:20 83:3
**quickly** 104:14
**quite** 15:3 27:24 82:24 150:5,5
**quotation** 68:14

## R

**R** 112:10
**R-A-N-D-Y** 51:3
**R-L-E-S** 8:22
**R.C** 129:8
**R.S** 112:10
**raise** 8:7 30:23 37:12 42:10
  50:18,20 89:20,21

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 419 of 558

800.523.7887              6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 25

**raised** 64:19 65:21 72:18 82:10
  88:18 106:20,22 107:1,4,5
  120:23 153:22
**raising** 31:3 42:8 74:13 88:14
  102:25 105:12
**Randy** 2:6 16:10 23:8 27:14,15
  32:18 33:9 50:7,25 51:3 79:25
  90:23 96:12 97:1 98:17 99:19
  100:13 128:21
**Randy's** 27:11,12 99:11
**rank** 156:20
**raped** 45:16,23
**Ray** 145:13
**RD** 2:4,9
**re-cross** 159:7
**RE-DIRECT** 36:12
**reach** 33:20
**read** 5:20 58:25 59:18 72:17
  86:3 122:3 158:5
**reading** 16:12
**reaffirm** 153:4
**reaffirming** 151:2
**real** 35:13
**really** 32:6 57:25 58:5 99:22
**reappointment** 2:17 156:19
**reason** 25:12 36:3 73:9 84:9
  115:12 116:22 142:25 155:22
  156:7
**reasonable** 27:8
**reasons** 77:25 156:5
**rebut** 158:14,15
**recall** 11:18,19 13:1 15:11,16
  17:4,8 18:18,22 19:5,13,15,20
  20:9,11,12,14 21:14 24:5,9
  26:11 27:6,14,18 28:7 30:2,4
  31:3 32:15,25 33:8,23 34:3,10
  34:16 36:16 39:18,20 40:2
  43:22 44:10,11,25 48:4 52:18
  54:10,17,20 55:9 56:11,20,25
  57:4,10 58:9,12,24 59:15,17
  61:13,20,23 63:23 65:11,15,16
  65:20 67:7 68:10,12,15,18
  69:12 70:1 73:23 74:1 75:3
  76:17,21,23 77:7,15,22 78:16
  78:17 79:11,14 80:20,24 81:3
  81:22 82:9 83:8,15,17,20 85:7
  85:8,11 86:15,20 87:22 88:14
  88:17,18 93:11,22 94:22 95:20
  97:19,22 98:21 101:2,5,9
  103:8,16 105:6,21,25 108:6

110:20 111:13 113:5 114:17
115:24 116:12 117:21 120:17
120:17,23 121:21 122:1 144:22
145:16 151:6 152:5,10 153:3
153:19,22 154:1,3 158:7
**receipt** 155:24
**receive** 32:3,14 65:25 102:11
  148:23 150:25 156:13,18,25
**received** 44:16,16 77:13 79:19
  132:16 139:4 144:4 149:1,4
  150:14 157:14
**receiving** 34:10 44:10 51:25
  58:24
**recess** 89:4
**recipient** 109:20,23 142:24
**recipients** 26:9 30:5
**recited** 13:7
**recognize** 121:12 125:17 129:5
**recollection** 16:14 21:8 60:4
  66:15 80:11 82:21 83:6 86:6
  94:10 112:11,13
**recommend** 24:14 25:3,12
**recommendation** 21:3,5 22:13
  25:6 36:6
**recommended** 25:14
**recommending** 23:19 25:15 35:22
**reconcile** 115:7
**reconvene** 160:4
**reconvened** 89:3
**record** 2:14 8:14 28:15,20 29:1
  29:6,7 36:25 37:1,2,19 49:24
  50:3,4 51:2 55:14,16,17 60:1
  60:3 88:25 89:1,2 90:3 98:24
  99:4,13 108:25 109:3 114:22
  114:23,24 122:24 123:5,8
  139:19,20,21 159:19,20,21
  161:1,8
**recorded** 1:21 158:1
**recording** 28:18
**records** 8:16 37:21 90:9
**recreate** 113:22
**Redirect** 151:8,12
**refer** 14:20 19:5 20:6,17,21
  22:16,19 23:6 24:2 26:24
  29:11,17 30:19 32:8,9,17
  52:19 56:17 57:20 58:12,18
  59:19 68:22 69:5 70:5 73:14
  77:3 79:23 83:2 84:17 86:5
  93:23 94:9 95:14 98:5,15
  99:17 100:16 103:9,9 110:5

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 420 of 558

800.523.7887                 6-7-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 26

111:6,19 114:9 118:7 120:11
121:11 125:15 127:5,5 133:3
134:23,23 135:24 138:8 151:20
155:21
**reference** 18:15 65:13 128:25
**referenced** 138:11
**references** 19:12,13 96:2 102:6
**referred** 28:16 82:2 136:24
148:3
**referring** 23:21 24:10 27:14
29:18 34:19 41:3 57:20 61:4
77:3 84:22,22 86:21 102:16
106:2 112:11,14 135:5 137:11
143:20 147:16
**refers** 18:7 59:8,14
**Refki** 29:25
**reflect** 24:20
**reflected** 33:6 75:13,19 76:4
**reflection** 101:1 113:7
**reflective** 113:19,20 128:16
**reflects** 75:5
**refresh** 16:14 21:7 60:4 69:2
80:11 94:10
**refused** 88:4 125:5
**refusing** 87:22
**regarding** 2:23 6:10 17:13 34:3
47:7,23 49:1 61:15 78:11
105:7 106:19 115:21 119:24
122:3 123:13 143:9
**regardless** 71:9
**regards** 56:20 83:24
**registered** 97:23
**regular** 104:15
**related** 44:3 47:17 48:24 56:15
56:22 86:24 95:11 116:4
**relations** 5:22 51:20,20 90:19
91:14,19,20 151:23
**relationship** 11:6 91:3
**relative** 62:18 69:15 74:2
119:13
**relevance** 25:10 71:21
**relevant** 33:21 72:4 104:12
122:18
**relief** 153:7,16
**remain** 7:22 8:6 9:25 35:14 37:8
37:11 50:13
**remainder** 75:9 139:12
**remedy** 148:25
**remember** 11:11 27:13 32:6 73:15
157:25

**reminder** 34:19 77:5 127:7
**remotely** 103:25 104:10
**removal** 19:16
**remove** 7:23 8:4 36:20 63:16
65:1 89:18 101:10,17 102:3
159:10
**removed** 65:9 101:6
**removing** 19:13 65:6,6,12 101:24
102:5 107:18,18
**renew** 24:16 116:25 120:21
129:19,22 132:10 134:6,8
136:6,20
**renewable** 118:17
**renewal** 3:23 22:14 34:19 36:14
77:5,22,24 113:17 117:10,24
123:15 127:7,13,14,18,20,21
128:1,4 129:21,22,25 130:9,15
131:11 133:6,8,25 135:17,20
135:23 137:7,25 138:11,14
142:6 143:6 156:6
**renewals** 147:19
**renewed** 23:19 24:15 25:4,7,13
35:23 43:13 116:11 128:7,9,18
128:19 129:16,19 130:12,14
132:25 133:1,11 135:18 136:1
136:18,20 137:3,5 138:18
155:25
**renewing** 132:8 133:23
**repeat** 6:20 16:11 45:20 60:25
61:17 76:20 106:25 116:16
117:13,13 122:10 124:12
**rephrase** 68:3
**report** 11:12 74:8 98:11,12
103:23 104:1,15,16 158:11
**reported** 74:3,8 135:21 158:17
**reporters** 1:22 144:15 161:11
**reporting** 12:25 14:7,16 35:8,9
90:21
**reports** 22:22 104:11 144:13,13
**represent** 34:23 66:13
**representation** 83:21
**representative** 65:18 83:15
136:2 155:18
**representative's** 153:20
**representing** 65:17 107:23 108:2
**reputation** 40:18 44:4 45:4 49:2
67:9,10
**request** 4:3 24:3 155:22 156:4
**requesting** 21:13
**require** 143:5 146:14 148:15

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 421 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 27

**required** 40:23 82:11 131:24
  152:1,3 156:2
**requirements** 136:14 147:6
**requires** 142:5,15 146:16 149:23
**Rescind** 153:13
**research** 10:12
**resentment** 135:16
**resignation** 135:16
**resolution** 150:21,24
**Resource** 100:5 151:22
**resources** 18:8 23:23 34:11
  51:15 53:9,16 57:11 67:17
  77:6 90:24 91:15 96:13,17,21
  97:6 100:2 127:8 144:15
**respond** 44:17 132:24
**respondent** 140:13,13
**responding** 32:4,10 61:8 84:16
**responds** 58:21 105:4
**response** 2:22 20:25 21:1 32:14
  60:1 69:10 85:5 98:24 110:8
  110:10
**responsibilities** 21:25 22:4
  31:10 38:19,20 81:19 82:15
  91:1 95:10
**responsibility** 42:8 127:1
**responsible** 10:6 51:18
**restate** 125:10
**Restore** 153:12,13
**Restored** 153:10
**resulted** 115:8
**results** 80:21
**resume** 5:4
**resumption** 5:9
**retaliation** 140:12
**Rethemeyer** 19:7
**retired** 126:22
**return** 81:1 111:5
**returned** 115:5
**review** 26:22 27:3,7 96:9
**reviewed** 71:16
**reviewing** 155:12
**reviews** 118:24,25
**revoked** 150:15,18
**right** 7:12,16 8:7,24 36:1,4,10
  36:24 37:12 38:6,7 49:18 50:9
  50:14,19,20 62:8 74:15 79:23
  89:17,20,21 111:25 112:7
  113:6 115:14 123:6 126:21,21
  128:24 129:25 130:6 131:3,24
  132:1,7,13,19 133:22 135:22

137:17 138:7 139:9 147:25
  148:24 155:21 158:9 159:14,18
**rights** 11:10 30:1 39:23 40:17
  40:19 47:18 56:17 82:1 153:10
**River** 1:22 161:11
**Rockefeller** 11:20
**Rodriguez** 101:14,16
**Rodriguez's** 64:10
**role** 22:8 55:19 64:24 91:1,19
  96:7,8 119:12,17,22 120:1,4
  120:15,16
**rolled** 131:21
**rolling** 130:25 131:1
**Rotondi** 1:13 2:3,9 5:16,16,18
  6:11,12,14,21 7:4,5,10,11
  13:6,11 25:8,10,20 28:15
  35:13,17,20 36:10 43:3,7
  45:10 46:21 49:9 55:2,25
  68:24 70:13,24 71:4 72:25
  73:3,10,11 84:10 122:9 123:16
  138:23,24 139:22 141:16,20,22
  143:4,23 145:24 149:12 150:7
  150:8,20 151:7 152:8 159:8
  160:2,3,7,10,11,15,17,20,25
**Rotunda** 6:6
**routine** 136:13
**Rulette** 41:21,22
**rumors** 46:1
**run** 26:19

-------

| **S** |
| --- |

**S** 2:1,1,1,12
**S-A-N-A-I** 37:23
**S-E-L-C-H-I-C-K** 90:5
**S-T-A-R-** 51:3
**salary** 51:22 75:8 82:25 86:19
  86:22 87:1 92:20 93:1,5
  121:20,23,25 125:23,24,25
  126:2 129:1,11 133:9 154:12
  156:24
**Sanai** 2:5 37:6,7,16,17,22 38:4
  38:4,5 49:10,10
**sanctity** 140:8
**saw** 94:5
**saying** 20:23 27:10 46:10 60:3
  69:12 99:12 131:5,15,18 134:2
  137:3,13,23 138:10 154:1
  158:6,7
**says** 19:12 20:25 21:2 23:16
  24:13 26:9 29:21 33:2 34:17

Case 1:21-cv-00377-BKS-TWD     Document 119-9     Filed 04/29/25     Page 422 of 558

800.523.7887                  6-7-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 28

57:23 59:22 69:6 71:9,11,18
77:4 80:9 94:11 99:20 103:24
104:23 105:1 109:25 110:2
112:10 113:6,10,16,21 127:6
127:19,25 128:17,23 129:21
130:3 133:5 134:11,14 135:12
135:17,25 136:6 137:8 152:13
155:8,17,19,22 156:15
**scheduled** 12:18
**school** 9:8 41:11,17 107:6
**screen** 13:17 52:21 54:2 73:21
95:15 104:3
**scrupulously** 33:4
**seated** 8:13 10:20 37:18 51:1
90:2
**sec** 136:14
**second** 21:19 54:2 123:8 127:9
127:14 130:21
**section** 86:8,9,10 134:14 135:6
135:8,12,25 141:6,7 142:8
147:21 148:3
**Security** 126:8
**see** 12:14 14:1 15:12,14 26:10
34:12 48:3 54:11 60:1 71:1,2
73:16 86:6 99:10,13 105:9
134:22 141:20
**seeing** 20:9 77:7 83:9 84:16
**seek** 117:5
**seeking** 24:15 68:11 78:2 117:23
124:4 153:7
**Seidel** 83:16 153:20,22
**Selchick** 2:8,24 33:9 53:15
59:20 78:20 80:1,3 89:12,13
89:15,25 90:1,4,14 112:4
115:19 138:25 139:23 140:25
151:13 158:13
**Selchick's** 158:16
**selecting** 40:10
**selection** 31:25
**send** 26:13 27:11 104:11,14
**sending** 30:9,24
**sends** 39:1
**Senior** 14:6 126:23
**sent** 23:17 26:21 30:4,5 34:16
34:20,21 127:13 139:4
**Separate** 121:25
**September** 115:24 116:3
**series** 26:25 73:18 98:16 133:4
**serve** 58:5 146:14
**served** 146:9

**service** 128:22 130:3,7 136:5
148:9 149:10
**services** 10:12
**serving** 148:20
**session** 80:10,12,17 89:7 125:21
**set** 87:13 152:15,18
**settle** 154:25
**settled** 151:1
**settlement** 4:6 152:4,5,15,18,21
152:24 153:17
**seven** 2:22 100:17
**Seventeen** 3:4 6:16,24
**severed** 83:1
**sexual** 43:24 44:8 56:14 57:25
58:2 74:3 84:7 99:22,24
**shield** 36:20,21 37:10 49:20
50:16 89:16,17,18 159:10
**shields** 7:24
**short** 18:22 51:9
**shortly** 111:16
**show** 13:4 17:12,22 26:6 34:7
52:23 74:22 86:12 93:14 95:16
109:17 125:16 134:11 140:25
146:17 147:10 152:11
**showed** 111:14
**showing** 13:17,18 16:8 17:20
19:6 20:7 26:6 71:23 93:20
94:22 128:20 134:11 155:6
**shown** 23:18
**sidebar** 114:25
**sidetrack** 29:8
**sign** 20:15,23 21:10,13 22:14
24:13,17 35:22,25 36:15
**signature** 24:4 34:15 53:2
**signed** 24:20 34:13,24
**significance** 34:23
**significant** 63:7,11
**signing** 24:25 36:6,13
**similar** 44:19
**simultaneously** 142:12
**sir** 8:5 12:11 13:23 37:24 38:16
39:24 40:5 49:25 50:1,12 54:5
89:14 97:14 115:2 121:13
122:5 159:11
**sitting** 5:4
**situation** 21:4 33:16 54:23
74:16 88:10 101:12 117:25
118:16
**six** 2:21 110:8 134:13,25 136:11
**sixteen** 3:4 14:22

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 423 of 558

800.523.7887    6-7-2022, WORD INDEX, Alaei case    Associated Reporters Int'l., Inc.

Page 29

**sixty** 4:2 22:25
**Sixty-eight** 4:7
**Sixty-five** 4:4 6:19 7:3
**Sixty-four** 4:4
**Sixty-one** 4:2 6:19 7:3
**Sixty-seven** 4:5
**Sixty-six** 4:5 6:19 7:3 109:17
  109:18,18,22 137:14,15
**Sixty-three** 4:3 6:19
**Sixty-two** 4:3 6:19
**skill** 161:9
**Skype** 104:24
**slash** 113:10,13,14
**Slide** 32:20
**sliding** 74:24
**Social** 126:7
**socially** 6:3
**solemnly** 8:8 37:13 50:21 89:22
**somebody** 20:14 51:22 59:21
  67:19 76:1 77:11,12 98:18
  101:21 154:10 156:24 158:18
**someone's** 139:4
**somewhat** 125:17
**Sommer** 1:11 5:12,12,13
**SONY** 2:20 161:7
**sorry** 13:14 24:7 29:8 30:20
  36:8 41:3 45:19 48:18 60:25
  64:7 74:24 78:7 79:10 91:9
  92:24 97:10 99:4 103:12 104:4
  104:21 105:14 106:25 107:17
  109:5,15 111:23 116:15 117:11
  118:22 119:19 122:10 124:18
  137:16 138:8,13 147:24 149:3
  151:10,15 152:7
**sort** 35:19
**sought** 124:14
**sounds** 62:8,8
**source** 46:11
**space** 47:18
**speak** 6:9 8:19 90:9
**SPEAKER** 7:17
**speaking** 30:10,15 40:22 65:17
  67:3,15 111:14
**Specialist** 90:19
**specific** 31:18 40:11 48:24 49:1
  57:2 72:6,6 86:6 102:7 108:18
  110:20 117:22 118:4
**specifically** 15:18,25 19:7
  58:19,19 61:4 103:8 105:25
  111:2 124:17 154:3

**specifics** 17:4 56:5 68:18
**specified** 135:13
**speculate** 78:8
**speculating** 78:3
**spell** 8:13,19 37:18 51:1 90:2
**spelling** 26:22 32:10 41:21
**spokesperson** 44:5
**staff** 22:24 28:1,5,8 29:22
  44:19,21 77:9 119:5
**stand** 7:22 50:13 89:14 139:18
**standard** 126:11 127:12,13
  143:24 144:2 146:16
**standards** 14:13
**standing** 7:23 8:6 35:15 37:8,11
  48:20 49:2 50:14
**standpoint** 60:24 61:9
**stands** 113:11
**Stark** 2:6 16:10 27:14,15,18
  32:18 33:9 50:8,9,11,15,24,25
  51:3,5,8 60:9 79:25 88:24
  90:23 91:25 96:12 97:1 98:17
  99:19 100:11,13 101:13,17
  128:21 138:6,8,15 143:8
**Stark's** 99:24
**start** 78:2 104:5
**started** 20:4 43:18 46:16,20
  47:24 76:23 77:16,17,19,22
  81:23 92:12 157:13
**state** 1:1,5 4:6,8,13 5:5,22
  8:13 28:17 37:18 38:25 51:1
  54:1 70:19 87:11,15,17,19
  89:5 90:2,16 93:13 94:13
  124:2,6,11 126:11 128:22
  134:12 135:3 151:2 153:3,17
  157:19 161:6
**stated** 153:6
**statements** 28:17 96:9 110:3
  153:14
**States** 40:19
**Station** 1:8
**stationary** 151:16
**stationery** 151:19
**status** 23:24 24:3 28:9 45:9
  109:20
**stay** 10:20 140:1
**Stellar** 19:7 20:9 36:14 63:18
  76:12 117:9,12,14 118:12
  145:3,20 160:8
**step** 154:20,24
**steps** 154:21

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 424 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 30

stipulated 6:10 13:7,8 82:17
stipulating 6:14,22 55:6
STIPULATION 4:5
straight 87:1
Strategy 9:24 23:2
strike 15:7 16:19 43:16 44:10
  52:18 73:23 74:12 77:21 91:9
  93:11 95:1 96:1 101:9 105:19
  117:21 125:2 154:17
strong 110:12
structural 56:16
structure 18:13 56:18
struggle 57:24 99:21
student 44:8 45:23 59:16 60:11
  60:16 61:3 106:18 144:24
  146:3
student's 58:23 59:14
students 10:12,13 28:5,8 43:24
  44:11,14,17 60:16,19 102:18
  104:25 105:8,11,24 107:11
  111:15
subject 29:21 109:24 140:4
  147:4 150:15
submit 156:4
subordinate 22:20 53:20
subordinates 22:20
subpoena 2:22
subsection 136:15
subsequent 34:9 71:4 159:23
subsequently 27:21 94:4 132:17
  138:4
substance 15:20
substantial 119:12,17 120:15,16
successful 14:25
successive 135:19 136:9
suffering 48:14
sufficient 100:22
suggest 43:8
suite 12:13
sum 15:20
summarize 80:9
summary 106:11
SUNY 1:14 2:19,21,23 9:4,16
  10:16 14:10 15:4 19:13 20:4
  26:15 27:21 28:4,8 33:19 36:6
  42:7 44:12 45:9 48:22 49:3
  52:15 53:9 59:3,4,5,6 61:13
  63:17,23,24 64:1,21 65:13,18
  65:18 66:13 67:5,16 72:22
  74:6 75:5 76:21 87:4 88:3

91:16 94:18 97:23 101:17
  102:10 105:8,13,16 107:23
  108:3,14 110:13 111:1,9
  116:23 121:5,19 122:8,13
  123:21 124:4,8,13,17 125:2,5
  126:7 151:23 154:18 155:8
  157:13
SUNY's 16:21 61:15
SUNYA 2:16,17,24,25
superseded 82:19
supervision 118:13
supervisor 23:23 35:5 36:3
  81:16 102:24 103:21 117:6,10
  117:16 127:17 131:18 142:6
support 10:10 39:4 42:10 113:22
supported 40:17
supporters 29:23
supportive 117:6
sure 8:18 11:9 12:4 15:2,19
  16:13 17:24 23:10 26:17 27:24
  28:25 29:3 32:21 34:14 35:17
  38:7 39:21 47:5 48:17 55:5
  56:4 58:25 60:24 61:18 68:4
  69:3 71:3 75:16 76:21 79:18
  82:6 85:22,23 86:2,5 91:7
  94:20 97:13 102:2 103:5 104:6
  107:1 109:2 113:7 114:21
  116:17 117:14 118:5 124:13
  125:12 130:22 132:20 145:8
  160:19
suspend 113:14
sustained 25:22 84:12 122:15,22
  123:17 146:24
swear 8:8 37:13 50:21 89:22
Switch 95:16
sworn 8:5,12 37:11,17 50:18,25
  89:19 90:1
system 59:3,5,6 151:24,25
Szelest 62:5 63:18 85:1 119:4,5
  119:22 120:13,20

| T |
| --- |

T 2:1,12,12
table 35:14
take 13:21 16:9 17:21 23:8
  32:24 34:8 36:20 37:9,10
  50:17 52:20 70:21 72:2,12
  74:25 80:8 83:3 89:18 93:4
  95:15 97:12 98:21 111:20
  123:3

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 31

**taken** 112:22
**takes** 104:2,12
**talk** 20:2 29:4 58:22 109:12
  115:23 123:19 147:1 156:10
**talked** 144:10 155:20 156:10
**talking** 27:25 48:7 71:2 100:17
  116:4
**talks** 47:16 104:16 156:15
**tangential** 19:22
**tangible** 104:15
**taxes** 126:9,11
**teaching** 10:11 111:15
**teed** 27:11
**tell** 14:5 16:22 114:3 126:10
  129:7
**telling** 66:19
**template** 139:6,7,13
**temporary** 30:6,8 156:22,23
**ten** 2:25 26:25 27:2 115:25
  155:23
**tenure** 118:20,24
**tenured** 119:1
**term** 4:14 20:4 29:25 34:17,19
  77:5 82:10 83:11,25 85:18
  125:25 127:6 128:11 130:5,15
  130:25 131:11,16,16 133:6,19
  134:3,3,7,8,15 135:13,17,18
  135:21,25 136:4,7,10 137:24
  138:1 147:24 148:9,20,22,24
  148:25 155:24 156:21,22
**terminate** 34:4 69:10 75:6,12,25
  76:4,8 128:25 138:7
**terminated** 34:1,5 68:1,15 85:18
  85:19 114:7,15 135:15 143:18
  152:8 154:11 155:8
**terminating** 81:8 115:11
**termination** 75:10,19,19 78:12
  86:15 113:16 135:16 137:10,12
**terms** 11:7 15:3 22:11,22 82:22
  82:24 122:6,12 131:6 141:23
  142:2 147:4 152:24
**terribly** 118:4
**testified** 17:13 61:2 106:8
  143:8
**testify** 47:1 79:5
**testifying** 79:4
**testimony** 8:8 37:13 50:5,21
  89:22 101:1 114:17 120:17
  143:8 145:17 158:10,14,15,16
**text** 26:20

**thank** 6:3 7:6,21 8:5 10:18,19
  10:22 13:13 16:5 18:5 23:3
  36:18,21 37:24,25 38:2 41:24
  46:3,4 49:7,16,21,22 50:1,2
  51:8 52:14 61:11 74:20 88:20
  90:12 92:17 93:9 115:15,17
  123:9,10 127:15 151:9 159:6
  159:10,12,22 160:24
**Thanks** 59:25 61:10 160:23,25
**thing** 16:25 35:18 51:25 160:12
**things** 14:15 71:12 140:14
**think** 5:20 16:25 27:25 46:22
  72:3 73:4,5 85:24 106:7
  111:18 122:17 132:22 133:20
  145:4,6 158:18 160:7,9
**thinking** 58:8 79:3
**third** 70:7 72:7 84:15 98:12
**third-** 145:25
**third-party** 144:10,12
**thirteen** 3:2 135:7
**thirty** 3:11 20:18 22:16 70:6,6
  125:23 133:10 160:5,6
**Thirty-** 6:25 23:6 24:2
**Thirty-eight** 3:15
**Thirty-five** 3:13 21:17
**Thirty-four** 3:13 24:22
**thirty-nine** 3:15 6:18 7:2 27:2
  57:21 84:23 99:17,18
**Thirty-one** 3:11 6:17 111:20,21
  111:24
**Thirty-seven** 3:14 6:18 7:1
**Thirty-six** 3:14 13:5,19
**thirty-thousand-dollar** 126:8
**thirty-three** 3:12 20:17,18,19
  23:7,13 24:12 52:10,11
**Thirty-two** 3:12 20:6,8 21:9
**thought** 48:10,14 110:10
**thousand** 14:22 86:22 87:8,9
  91:6 125:24 133:10
**three** 2:18 5:6 6:17 7:3 14:21
  20:21 21:1,18,19 23:7,17,20
  23:25 24:4,9,17,21 57:1,5
  62:11,23 89:6 97:11,13,14
  135:14,20 136:10,11
**THUMB** 4:7
**Thursday** 78:25
**ties** 33:3
**till** 136:22
**time** 11:18 12:14,15 14:2 15:6,8
  16:22 18:23 20:3 21:25 22:18

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 426 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 32

22:20 23:25 25:4 27:16 33:25
36:19 39:10 40:2 42:6 43:16
43:17 44:2 45:4 49:17,21
51:17 52:9 55:11,24 56:6 57:7
57:9 64:20 65:9 73:23 76:17
76:21 77:16 82:22 83:10,20
84:15 85:18 87:7 88:4,15
90:18,19,22 91:1 93:2 95:22
98:18 99:5 101:20,24 102:3,8
102:25 104:1,2,12,12 105:24
110:11 111:13 113:23 117:22
117:24 119:2,4 120:14 121:17
123:8 126:13,23 127:14 128:6
129:10 130:4 150:10 155:17
159:10,22
**timing** 39:21
**title** 4:14 11:19 29:21 41:19
44:23 56:8 59:23 60:12,18
61:4,7,8,9 69:15,21 70:2,18
91:13 96:17,19,20 97:2,23
98:18,23 99:12 109:14,14
114:11 115:8 126:24 135:7
142:12 143:25 144:6,24 145:3
145:21 146:4 157:10
**today** 5:10 21:1 29:24 58:22
91:18 124:14 159:15,25
**today's** 159:23 160:22
**told** 16:25 17:3,5,8 18:25 33:14
33:15,17 43:25 46:6 48:1,2
65:16 76:3 78:1 88:15 142:25
145:2
**tomorrow** 28:24 58:22 158:13
160:5,6,7,12
**tonight** 160:18
**top** 16:9 110:1 132:15
**topics** 56:25 57:4
**touch** 105:5
**traditional** 73:6
**training** 91:22
**transcribe** 157:22
**transcribed** 1:21 157:23 158:8
**transcript** 68:22 69:5,13 100:16
111:6 118:7 120:11 158:6,12
158:14,18,23 161:5
**transcription** 157:23 158:21
161:8
**Transcriptionist** 161:10
**trash** 49:23
**trial** 1:7 5:1,4,9 161:2
**Tricia** 59:21 61:7 98:17,18

**trouble** 49:14
**true** 13:8 140:16 161:8
**Trustee** 134:12
**Trustees** 2:21 134:8 135:4 156:2
**truth** 8:9,9,9 37:14,14,14 50:22
50:22,23 89:23,23,23
**try** 66:8 94:10 132:22
**trying** 26:10 46:23 132:23,24
151:10
**Tuesday** 5:3
**turn** 34:12
**twelve** 3:2 131:14,15 132:3,7,9
132:11 136:3,17 148:8
**twelve-months** 131:25
**twelve-months'** 132:10 133:16
**Twenty** 3:6
**Twenty-** 6:16 151:20
**Twenty-eight** 3:10 6:17,25
152:12 153:6
**twenty-five** 3:8 87:8,9 110:8
134:23
**twenty-four** 3:8 123:24
**Twenty-nine** 3:10 6:17,25 110:5
110:6
**twenty-one** 3:6 21:1
**Twenty-seven** 3:9
**Twenty-six** 3:9
**Twenty-three** 3:7 6:25
**Twenty-two** 3:7 19:6,6
**two** 2:17 5:6 7:3 40:3,11 56:11
78:21 79:14 82:11 83:23 85:9
86:22 87:8,9 89:6 115:2
120:25 122:7,13 130:6 136:4
142:20 148:9,16 153:23
**type** 32:13 40:13 72:19 81:13
156:21
**types** 144:15
**typical** 101:9 107:20 117:5
129:6 139:24 140:1
**typically** 98:11 131:20 134:17
139:4 147:25 154:20

---

**U**

**U** 56:8
**U.P.P** 124:5 131:24
**U.U.P** 54:18 55:21,24 64:24 65:1
82:2 85:17,21,25 87:5,6,20,23
88:4 93:22,24 95:11 101:23
102:2 107:22 108:1 116:4,6
123:19,20 124:9 125:4 126:5

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 427 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 33

140:20,21 141:4,11,17,24
142:5,8,11,15 143:5 147:5,6,8
147:11 148:12,15 149:2,4,21
149:23 152:1 153:17,19 154:13
154:18,19 155:6,18 156:25
157:5,16
**UAlbany** 18:24 28:4 39:9,10
124:24 152:9 153:9,14
**Uh-huh** 19:9,11 32:12 80:19 83:5
**ultimate** 31:9 61:22 68:7
**ultimately** 31:13 33:25 57:11,17
61:24 84:6,23 85:8 100:2
106:14 110:18 115:8 140:13
154:5,25
**unaware** 83:14 116:25
**unbiased** 71:6
**unclear** 60:9
**uncomfortable** 21:5
**uncommon** 117:22 118:1,15,23
**underlined** 23:19
**underlying** 16:21
**understand** 54:25 68:2 82:24
88:2 105:11 133:20 159:14
**understandable** 56:6
**understanding** 21:24 30:14 34:18
45:3 60:17 84:1 85:17 99:11
122:6,11 145:5
**understood** 22:8 44:25 66:18
78:7 90:10 154:18
**undertaking** 18:9 53:16 55:19
56:7 64:25 118:12
**unfortunately** 112:9
**unfounded** 57:13 58:1 62:1 68:13
74:18 75:22 84:8,24 99:23,25
100:19 146:7,19
**UNIDENTIFIED** 7:17
**unintelligible** 14:11 41:15
43:21 45:16 51:21 52:24 60:16
67:4 68:11 70:23 72:25 75:15
79:16,17 81:25 94:3 102:14
104:18,20 106:5,9 110:9,9
113:16 117:20 123:9 126:3,4
127:13,15 129:10 130:5,6
131:20 132:5 134:21 136:22
137:20,21 141:19 151:6 158:24
160:14
**uninterrupted** 148:9
**union** 83:15 153:5 154:22,23,25
155:1,9 157:5,16
**unionized** 91:3

**unions** 154:21
**United** 2:20 4:2,13 40:19 53:25
54:1 81:24 93:12 94:12 128:24
**university** 2:20 3:19 4:2,6,14
5:5 9:3 17:16 30:2 33:3 38:11
38:12,22,25 39:12,14,17 40:24
40:25 41:1 44:3,4,24 45:1
47:17 48:3 51:15 53:25 54:1
57:12 59:24 63:23 69:11 70:19
75:12 76:17,22 78:1 81:14,24
85:20 87:22 89:5 90:16,16,20
91:3,7,11 93:12 94:12 98:23
105:1,10 108:8,10 109:5 111:5
119:10 125:24 128:24 130:4
133:22 134:12 136:5 144:21
147:23 148:10
**unrelated** 125:1
**unsubstantiated** 143:14 144:1
**unusual** 118:14 149:13
**upbeat** 47:19
**upper** 112:7,14
**use** 6:21 40:20 106:20 139:15,17
**usual** 82:14
**Usually** 118:16
**utilize** 106:10

|       V       |
**v** 70:18 89:4 161:7
**Valerie** 58:20 59:2 99:19,19
**value** 58:9
**variety** 107:6
**various** 26:8 28:16
**verbal** 98:11
**verbatim** 54:9
**verifying** 13:7
**version** 55:23 93:22
**versus** 5:5 83:23 109:7 134:14
136:7 144:7
**vetting** 26:23
**vice** 9:23 11:8 14:6 38:11 51:14
90:23 126:23 144:21 151:23
**violated** 146:13 153:9
**violating** 64:21 102:10 111:1,9
153:8
**violation** 100:8 106:15
**violations** 55:21 57:14 61:25
64:24 67:24 68:7 69:9 82:7
84:9
**violence** 58:3
**visits** 47:16

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 428 of 558

800.523.7887                 6-7-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 34

**voice** 8:15,16,17 37:20,21,21
  74:13 90:9,9
**voluntarily** 33:12
**Volynsky** 29:25
**vouch** 15:1
**VS** 1:4

---

**W**

**W** 2:1 113:14
**w/** 2:22
**want** 28:24 35:17 38:7 49:14
  84:13 87:3 94:20 104:14,17,23
  109:12 115:13 123:19 131:19
  136:12 141:6 156:10 158:22
**wanted** 15:23,25 16:2 45:22
  64:14 129:19,22 155:1
**war** 58:7
**wasn't** 41:1 55:5 57:25 65:3
  83:8 87:24 99:22 101:20
  110:10 117:9,19 119:17 157:21
  157:22
**wastebin** 49:21
**wastepaper** 36:22
**way** 50:12,13 100:20 118:17
  130:24 149:5
**we'll** 48:2 160:5
**we're** 5:19 6:1 13:18 27:25
  45:11 48:7 100:17 116:4
  127:13 131:12,15 132:9,10
  133:22 154:1,1,5
**we've** 124:24,25 150:10
**website** 19:14,21 65:14 102:6
  107:19 153:12
**Wednesday** 58:22
**weekly** 104:16
**welcome** 5:18 51:5 155:4
**well-being** 48:13
**went** 11:1 57:5 152:15
**weren't** 51:25
**whatnot** 106:3
**whatsoever** 88:11
**where're** 9:1
**wide** 26:9
**William** 14:1,2 20:20 21:20,20
**Williams** 2:18 5:8
**wish** 8:3
**wishes** 24:18
**withdraw** 153:5
**withdrawn** 142:16 143:9 155:17
**withholdings** 126:11

**witness** 5:8 7:8,13,22 8:12,18
  8:21 9:3,5,7,11,14,18,20,23
  10:2,6,10,17 12:10,12,19
  14:14 15:22 16:2,6 17:15,18
  18:1,3 19:20 20:12 21:21
  22:22 23:4 25:23,25 36:9 37:4
  37:8,17,22,25 38:1,16,18,21
  38:24 39:3 41:18,22 43:12
  45:15,21 46:1,24,25 48:9,17
  49:12,14,18,22 50:1,6,25 51:3
  52:6,9,12,16 53:3,21 54:6
  59:3,6 60:14 61:6 64:10 66:1
  66:4,7,9,15,20,22,25 68:16,18
  68:25 72:8 76:15 77:19 78:9
  79:6 85:15 86:1 88:8 89:10,14
  90:1,4,7,10,11 92:2,4,8,11,14
  93:8,18 94:7 96:9,20,23 97:15
  98:8,11 99:10,14 100:11,13
  106:12 112:20 115:6,10 117:2
  119:9 120:5,9 121:8,14 124:19
  124:21 126:20,22 130:23
  132:23 133:13 134:17 136:9
  137:20 139:17 141:15 143:3,19
  143:21 145:11,14,16,19,22
  149:8,11 150:18 151:16 158:21
  159:2,12
**witness'** 135:5
**witnesses** 140:10,11 159:15
**woman** 45:16
**word** 17:6 56:3,3
**wording** 74:7
**words** 16:22 47:8 62:22 75:24
  76:23 127:22
**work** 11:4,6,14,24 12:1,4,8,10
  12:23 25:4,7 30:18 42:6,12,15
  42:17,22 47:15 53:15 56:13
  64:25 81:1 103:25 104:10
  114:5 122:2
**worked** 11:13 42:9 57:24 126:24
**workforce** 91:4
**working** 10:10 11:24 96:13,15
  123:20 139:24 155:23 157:13
**workplace** 58:3
**works** 130:24 148:18
**world** 40:20
**worried** 16:17
**worry** 48:2
**wouldn't** 12:12 130:14 132:2,4
**wrap** 58:21
**write** 99:7

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 429 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 35

**writing** 23:16 29:24 57:24 58:9
  99:21 104:1,11 136:3 156:4
**written** 98:8 108:11,12,13
  113:23 155:24
**wrong** 31:1
**wrongdoing** 106:15 146:21
**wrongfully** 154:12
**wrote** 21:10 99:4

---
### X
---

**X** 1:2,6 2:12 156:17

---
### Y
---

**Yale** 41:1,9
**yeah** 8:2 9:5 11:23 16:6 17:18
  23:4 28:3,10,13 30:12,17
  34:15 35:15 40:16 41:5,5,22
  41:22 45:2 47:21,21 49:15
  62:24 66:7 69:3 70:24 78:21
  87:7 99:1 108:6 119:15,16
  127:15 128:10 132:15 136:24
  138:5,17 139:11,18 141:21
  146:22 152:23 156:14 160:21
**year** 12:25 34:25 82:11 85:9
  86:23 97:11 130:13,16,20,23
  131:6,13 134:3 137:6 138:1
  149:6 154:2,7
**year's** 130:8 131:2,22 133:18
**years** 9:16 38:16,18 66:2 73:24
  82:11 83:23 85:9 120:25 122:7
  122:13 125:18 130:3,6 135:14
  135:20 136:4,10 142:4 148:9
  148:16 153:23
**yesterday** 5:7 6:5 13:10 28:16
**York** 1:1,5,8 5:4,5 38:25 54:1
  70:19 87:11 89:5,5 90:16
  93:13 94:13 128:22 134:13
  161:6,12
**Young** 5:11,12
**YOUNG/SOMMER** 1:12
**Yup** 36:23 37:10 49:24 50:13

---
### Z
---

---
### 0
---

**02/08/2018** 2:23,24 3:1
**02/10/2017** 2:19
**04/16/2014** 2:16
**04/19/2022** 2:22
**04/28/2018** 24:5

**05/31/2017** 2:18
**07/02/2011-07/01/2016** 2:20

---
### 1
---

**1** 1:8 4:10,10,11,11,12,12,13
  77:5,23 116:3,3 127:19 133:8
  133:12
**1/23/19** 3:18
**10** 1:22 2:3 74:24 75:7 78:11
  79:11 80:15 126:1 161:11
**10/10/18** 4:13
**10/20/15** 4:11,11
**10:08:58** 29:6
**10:13:22** 29:6
**10:29:18** 37:1
**10:40:32** 37:1
**10:56:09** 50:3
**10th** 69:7 75:10 81:3 134:1
  137:12
**11** 93:13 135:8
**11/25/20** 3:11
**11:33:09** 50:3
**11:39:03** 55:16
**11:39:37** 55:16
**12/04/2017** 2:17
**12/09/2014-2** 2:16
**12/4/17** 4:12
**12:28:39** 89:1
**12224** 1:8
**13:31:55** 89:1
**13:57:50** 109:3
**13:58:26** 109:3
**132554** 1:2 161:7
**13662** 1:23 161:12
**138** 2:9
**13th** 103:15 104:8
**14:08:04** 114:23
**14:09:34** 114:23
**14:50:12** 139:20
**14:51:46** 139:20
**140** 4:14
**14th** 103:16
**15:22:55** 159:20
**151** 2:9
**16** 83:4 94:20 122:3
**16:01:00** 159:20
**18** 48:10 92:1,7 112:6 133:22
  137:24
**19** 92:14,15 134:1 136:23 137:12
  137:24 150:15 151:3 153:4

800.523.7887              6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 36

**1st** 10:3 54:18

**2**

**2** 1:7 4:9
**2-14-18** 3:2
**2-15-18** 3:2
**2/13/18** 3:6
**2/14/18** 3:5,8,24,25 4:1
**2/15/18** 4:1,4
**2/16/18** 3:8
**2/22/18** 3:4,6
**2/23/21** 3:17
**2/27/18** 3:7
**2/28/18** 3:9
**2/5/15** 4:10
**2/8/18** 3:1,7 4:4
**2/9/18** 3:3,5,22
**20** 153:7
**2000** 73:25
**2008** 97:8
**2011** 54:18 93:14 94:14
**2014** 9:16 83:4 122:3
**2015** 9:18,19,22 73:25
**2016** 39:21 54:12,18 93:14 94:3
  94:14
**2017** 2:21 35:4 103:16,16,19,21
  133:5 136:25
**2018** 9:17 11:4,7 14:1,3 15:9
  16:10,20 19:10 20:8,20 21:25
  23:8 26:8 29:20 32:19 34:1
  35:8 39:7,25 40:4 43:19 45:5
  47:13,24 51:10 54:10,17,19
  55:25 56:2 57:23 58:16,20
  62:7,9 63:21 66:3 69:7 74:24
  75:7 77:5,23 78:24 79:1,11
  80:10,12,15 81:3,11,23 87:3
  90:15 92:19 93:23 94:1,5,23
  95:5,7,11,24 97:10,18 99:6
  108:4 109:21,24 111:8,17
  114:6 115:24,25 116:3,3 119:4
  123:20 124:9,13 125:21 126:1
  126:14 127:19 133:9,12 136:18
  138:10 142:21 149:6 153:7,23
  154:6
**2019** 10:2 48:10 75:9 86:23
  126:1 131:13,17 133:9,12,17
  133:21,25 137:1,4 149:7
  152:12 154:6
**2020** 9:12,13 10:1,3 70:8,20
  73:25

**2022** 1:6 5:3 94:21
**21** 138:10
**25th** 70:8,20
**26** 110:7
**27** 152:12
**27th** 20:8
**28th** 20:20
**2nd** 23:8 54:18

**3**

**3** 4:9 112:6 133:25
**3-4-18** 3:3
**3/1/18** 3:24
**3/20/18** 3:10
**3/26/18** 3:10
**3/7/18** 3:9
**3/8/18** 3:23
**3/9/18** 4:5
**30** 133:17 156:11,15
**30.3** 156:17
**30th** 133:9,12,21 136:22,25
**31st** 10:2
**32** 130:3 138:19 142:10 147:9,14
  149:21
**32.1.d** 148:4
**32.3** 128:23 147:21
**33** 155:22
**33-43** 4:14
**33.2** 155:22
**35** 2:3
**36** 2:4
**38** 2:5

**4**

**4** 114:6
**4-29** 26:10
**4.12** 141:7
**4/22/2014** 4:9
**4/27/18** 3:12
**4/28/18** 3:12
**4/29/14** 4:3
**4/30/18** 3:13,13
**4/30/2019** 34:18 128:17 129:17
  130:1
**4/30/2020** 127:20 128:1,14
  129:23
**4/31** 3:11
**4/6/17** 4:12
**4/7/16** 3:20
**4:01** 161:2

Case 1:21-cv-00377-BKS-TWD   Document 119-9   Filed 04/29/25   Page 431 of 558

800.523.7887                6-7-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 37

**4511** 70:22

---
**5**
---

**5** 135:25 136:15
**5/1** 129:16
**5/1/18** 3:23 131:3
**5/1/19** 128:12
**5/1/2017** 128:8
**5/1/2018** 128:8
**5/1/2019** 127:20 128:1,8,14
 129:23
**5/14/18** 3:14
**5/18** 127:21
**5/19** 127:21
**5/20/14** 4:10
**5/21/18** 3:15
**5/22/18** 3:14
**5/23/18** 4:9
**5/8/14** 4:3
**51** 2:7
**58** 3:16

---
**6**
---

**6** 2:16,17,18,19,20,21,22,23,24
 2:25 3:1,3,3,4,5,5,6,6,7,7,10
 3:10,11,12,12,13,13,14,14,15
 3:16,17,17,18,18,19,20,20,21
 3:21,22,22,23,23,24,24,25 4:1
 4:2,3,3,4,5 133:5 135:12
 136:25
**6/4/2015-2** 2:14
**6/7/18** 4:2
**6th** 57:23 58:15

---
**7**
---

**7** 1:6 140:24 141:13,15 154:10
 155:5
**7.1** 86:10
**7.2** 86:9,10
**7.6** 155:16
**7.6.D** 155:16
**7/10/18** 3:16
**7/2/16-7/1/22** 4:14
**7/2/19** 3:4
**7/27/18** 3:22
**7/6/18** 3:15
**7/9/18** 3:16
**70** 3:11
**7th** 5:3

---
**8**
---

**8/1/2022** 161:10
**8/10** 131:14
**8/10/18** 3:18 130:9,17 131:10
**8/10/19** 130:9,10,11,12,14
 131:11
**8/10/2019** 129:2,12,13
**8/11/2018** 128:25 129:13
**8/13/18** 3:21
**8/21/18** 3:21
**8/9/18** 3:17
**8th** 13:25 19:10 27:2 63:21

---
**9**
---

**9** 78:18 80:12 99:6 109:21,24
 125:21 126:1
**9/18/17** 4:6
**9:35** 1:6 5:1
**90** 2:8
**94** 4:14
**9th** 27:22 28:5 29:20 32:11,14
 32:19 58:20 59:22 80:10

1 | NEW YORK STATE

2 | COURT OF CLAIMS
_____X CLAIM NO.: 132554

3 | KAMIAR ALAEI,
        Claimant

4 | VS

5 | STATE OF NEW YORK,
        Defendant

6 | _____X
  | DATE:          June 8, 2022 at 9:33 a.m.

7 |                Trial – Day 3

8 | LOCATION:      Capitol Station, Courtroom 1
  |                Albany, New York 12224

9 |

10 | BEFORE:        HONORABLE FRANK P. MILANO

11 | APPEARANCES:   JOSEPH F. CASTIGLIONE, ESQ.
   |                JESSE SOMMER, ESQ.

12 |                YOUNG/SOMMER, L.L.C.
   |                    - For the Claimant

13 |
   |                ANTHONY ROTONDI, A.A.G.

14 |                AMANDA MALESZWESKI (Counsel SUNY Albany)
   |                OFFICE OF THE ATTORNEY GENERAL

15 |                    - For the Defendant

16 |

17 |

18 |

19 |
   |                                    OFFICIAL COURT COPY

20 |

21 |

22 | DIGITALLY RECORDED PROCEEDING
   | TRANSCRIBED BY: Hannah Allen
   | ASSOCIATED REPORTERS INT'L., INC.

23 | 10 River Drive
   | Massena, NY 13662

24 |

25 |

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1                W I T N E S S E S

 2   FOR THE CLAIMANT:                        Page:
     PRESIDENT HAVIDAN RODRIGUEZ:
 3   DX by Mr. Castiglione                    6

 4   JAMES STELLAR:
     DX by Mr. Castiglione                    43
 5

 6

 7
                  E X H I B I T   L I S T
 8
     COURT EXHIBITS
 9
     One - CONGRESSIONAL RECORD 6/4/2015-2 PAGES
10
     CLAIMANT EXHIBITS
11
     One - SUNYA Appt Letter for Alaei dated    36
12        04/16/2014 & 12/09/2014-2 PAGES
     Two - Reappointment letter from SUNYA dated
13        12/04/2017 for Dr. Alaei, with form
     Three - from Kevin Williams to Kamiar Alaei
14        05/31/2017
     Four - from SUNY chancellor to Alaei
15        02/10/2017
     Five - Agreement b/t the United University   13
16        Professions and the SONY 07/02/2011-07/01/2016
     Six - SUNY Policies of the Board of Trustees
17        dated April 2017
     Seven - Certified documents from NYSUT in
18        response to subpoena w/ cover letter dated 04/19/2022
     Eight - from SUNY to Alaei regarding         9
19        Alternate Assignment 02/08/2018
     Nine - from Selchick to SUNYA personnel
20        02/08/2018
     Ten - Chain of emails between SUNYA
21        personnel 02/08/2018
     Eleven - EMAIL 2/8/18
22   Twelve - EMAIL 2-14-18
     Thirteen - EMAIL 2-15-18
23   Fourteen - EMAIL 3-4-18
     Fifteen - EMAIL - 2/9/18                     27
24   Sixteen - EMAIL 7/2/19
     Seventeen - EMAIL 2/22/18                    67
25   Eighteen - EMAIL 2/9/18
```

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1  Nineteen - EMAIL 2/14/18
    Twenty - EMAIL 2/22/18
 2  Twenty-one - EMAIL 2/13/18
    Twenty-two - EMAIL 2/8/18
 3  Twenty-three - EMAIL 2/27/18
    Twenty-four - LETTER 2/14/18
 4  Twenty-five - LETTER 2/16/18
    Twenty-six - LETTER 2/28/18
 5  Twenty-seven - EMAIL 3/7/18
    Twenty-eight - LETTER 3/20/18
 6  Twenty-nine - EMAIL 3/26/18
    Thirty - ER 11/25/20
 7  Thirty-one - NOTES 4/31
    Thirty-two - LETTER 4/27/18
 8  Thirty-three - EMAIL 4/28/18              48
    Thirty-four - EMAIL 4/30/18               50
 9  Thirty-five - LETTER 4/30/18
    Thirty-six - EMAIL 5/14/18                33
10  Thirty-seven - LETTER 5/22/18             33
    Thirty-eight - LETTER 5/21/18
11  Thirty-nine - email 7/6/18                77
    Forty - EMAIL 7/10/18
12  Forty-one - EMAIL 7/9/18
    Forty-two - MEMO 8/9/18
13  Forty-three - EMAIL 2/23/21               62
    Forty-four - LETTER 8/10/18               79
14  Forty-five - NOTICE OF CLAIM 1/23/19
    Forty-six - LETTER DEAR UNIVERSITY OF ALBANY
15        OFFICIALS
    Forty-seven - LETTERS
16  Forty-eight - LETTER 4/7/16
    Forty-nine - LETTER 8/13/18               77
17  Fifty - LETTER 8/21/18
    Fifty-one - EMAIL 2/9/18
18  Fifty-two - LETTER 7/27/18
    Fifty-three - EMAIL 3/8/18
19  Fifty-four - APPOINTMENT RENEWAL 5/1/18
    Fifty-five - EMAIL 3/1/18
20  Fifty-six - EMAIL 2/14/18                 17
    Fifty-seven - EMAIL 2/14/18               19
21  Fifty-eight - EMAIL 2/14/18               69
    Fifty-nine - EMAIL 2/15/18
22  Sixty - LETTER 6/7/18
    Sixty-one - UNITED UNIVERSITY PROFESSIONS
23  Sixty-two - LETTER 5/8/14
    Sixty-three - APPOINTMENT REQUEST 4/29/14
24  Sixty-four - EMAIL 2/15/18
    Sixty-five - EMAIL 2/8/18
25  Sixty-six - EMAIL 3/9/18                  18
```

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1   Sixty-seven - PACKET- STIPULATION OF          59
             SETTLEMENT BETWEEN STATE UNIVERSITY OF ALBANY AND ARASH
 2           ALAEI 9/18/17
     Sixty-eight - DEF THUMB DRIVE                  89
 3
     STATE EXHIBITS
 4
     A - MEMO 5/23/18 (3) PAGES
 5   B - LETTER 4/22/2014 (2) PAGES
     C - LETTER 5/20/14 (1) PAGE
 6   D - LETTER 2/5/15 (1) PAGE
     E - LETTER 10/20/15 - 1 PAGE
 7   F - LETTER 10/20/15 - 1 PAGE
     G - 4/6/17 1 PAGE
 8   H - LETTER 12/4/17 1 PAGE
     I - LETTER 10/10/18 1 PAGE
 9   J - CBA BETWEEN STATE OF NY AND UNITED
             UNIVERSITY PROFESSIONS 7/2/16-7/1/22 - 140 pages
10   K - TITLE D. TERM APPOINTMENT PAGES 33-43

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Alaei v SONY – 6/8/2022

1           (The trial commenced at 9:33 a.m.)

2           THE MONITOR:  On the record.

3           THE COURT:  Good morning, everyone.  It is

4    Wednesday June 8th, 2022, I'm Judge Frank P. Milano of New

5    York State Court of Claims sitting in Albany, New York.

6    We're here to continue trial of the claim of Alaei v. SUNY

7    et al.  It's claim number one three two five five four.

8    All parties are present including the Claimant Dr. Kamiar

9    Alaei.

10           So I guess I'll ask Mr. Castiglione to call the

11   Claimant's next witness please.

12           MR. CASTIGLIONE:  The claimant calls Havidan

13   Rodriguez.

14           THE COURT:  All right please bring him forward.

15   Do we address him as Mister or President?

16           MS. MALESZWESKI:  President or Doctor?

17           THE COURT:  We'll go with Doctor.

18           MR. CASTIGLIONE:  Mister Doctor.

19           THE COURT:  Could you please remain standing and

20   put on one of the plastic face shields before you take

21   your mask off?  And now please take -- thank you.  Remain

22   standing and you're going to be sworn.

23           THE MONITOR:  Raise your right hand.  Do you

24   solemnly swear the testimony you're about to give is the

25   truth, the whole truth and nothing but the truth, so help

Alaei v SONY - 6/8/2022

1    you God?

2                    DR. RODRIGUEZ:  I do.

3                    WITNESS; HAVIDAN RODRIGUEZ; Sworn

4                    THE MONITOR:  Be seated.  State and spell your

5    name for the record.

6                    MR. CASTIGLIONE:  Before you do that, sir, let's

7    go off the record, Your Honor.

8                    (Off the record, 09:35:16 to 09:36:31)

9                    THE MONITOR:  On the record.

10                    THE COURT:  Could you please state and spell

11    your complete name, sir?

12                    THE WITNESS:  Yes.  Good morning.  My name is

13    Havidan Rodriguez, H-A-V-I-D-A-N R-O-D-R-I-G-U-E-Z.

14                    THE COURT:  All right.  Sir, do you prefer being

15    addressed as Doctor or President, sir?

16                    THE WITNESS:  I have no preference whatsoever.

17                    THE COURT:  Okay.  Your witness.

18                    MR. CASTIGLIONE:  Thank you, Your Honor.

19                    DIRECT EXAMINATION BY MR. CASTIGLIONE:

20    Q.   Dr. Rodriguez, can you explain to me if you're

21    currently employed?

22    A.   I am currently employed.

23    Q.   And who's the employer?

24    A.   The University at Albany, State University of New

25    York.

Alaei v SONY – 6/8/2022

7

1    Q.    Okay.  And what's your position there?

2    A.    I am President of the University at Albany.

3    Q.    Okay.  And how long have you had that position?

4    A.    In September it will be five years.

5    Q.    Five years September, so that goes back to 2017?

6    A.    I started my position September of 2017.

7    Q.    Okay.  Can you explain to me your job

8    responsibilities as President of University at Albany?

9    A.    As the President of the University at Albany I am the

10   Chief Executive Officer, if you will, the C.E.O. and so the

11   University reports to me through a number of representatives in

12   my Executive Council.  Vice President for Student Affairs,

13   Financial Administration, Academic Affairs, Advancement,

14   Research, Government Community Relations and -- and others.  So

15   I am the person in-charge of running the University in

16   partnership with my executive council.

17            THE COURT:  Doctor, (unintelligible) how does

18       one become president of SUNY at Albany?

19            THE WITNESS:  It varies.  But in my case, I went

20       through the ranks, if you will.  I was -- initially I

21       started as a Department Chair.  Then became Associate

22       Dean.  Then Dean and then Vice Provost and then Provost.

23       Chief Academic Officer and then President.  These are all

24       competitive positions.

25            THE COURT:  Who is the appointing authority?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1                THE WITNESS:  The appointing authority in my

2        case as President of University at Albany is the

3        Chancellor of the State University of New York and the

4        Board of Trustees of SUNY.

5                THE COURT:  Okay.  At the time of your

6        appointment who was the Chancellor?

7                THE WITNESS:  At the -- at the time of my

8        appointment it was Dr. Nancy Zimpher.

9                THE COURT:  And -- and was it through that

10       process that you were appointed President through Nancy

11       Zimpher and -- and the Board of Trustees?

12               A.   There was a national search for the

13       President of the University at Albany.  I was one of the

14       candidates after thorough interview process.  The Board

15       and the Chancellor decided that I should be the next

16       President of the University at Albany, yes.

17               THE COURT:  And how long have you been at SUNY

18       Albany?

19               THE WITNESS:  Now in September would be five

20       years, sir.

21               THE COURT:  No, in all?

22               THE WITNESS:  Oh, five years in all.

23               THE COURT:  Oh, you when you came to the

24       (unintelligible).

25               THE WITNESS:  It -- it was not.  I was at

Alaei v SONY - 6/8/2022

 1    different institutions.

 2                MR. CASTIGLIONE:  Thank you, Your Honor.

 3                BY MR. CASTIGLIONE:  (Cont'g.)

 4                Q.   Your job as President, does that include

 5    overseeing investigations by what's known as the Title

 6    Nine Office at University of Albany?

 7                A.   I wouldn't say that's necessarily

 8    overseeing those investigations.  But investigations that

 9    transpire in the Title Nine Office and other offices do

10    come to me on a regular basis to update me on any

11    particular issues or situations that may be of importance

12    to the university.

13                Q.   And does that include investigations by the

14    Office of Human Resources at the university?

15                A.   The same thing applies, yes.

16                Q.   Okay.  So in other words, if there's an

17    investigation going on, it goes all the way to the top,

18    you're informed, you oversee, you're advised?

19                A.   Not necessarily in all cases.  But yes, I

20    am regularly informed of any investigations that we -- may

21    be transpiring at the university.

22                Q.   Okay.  If I can show you what's been

23    identified as Claimant's Exhibit Number Eight into

24    evidence.  This is a letter dated February 8, 2018

25    concerning Dr. Alaei from the University of Albany.  I'll

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/8/2022

1      show you this letter and take a look at it.

2                  THE COURT:  Can you show the witness the --.

3                  MR. CASTIGLIONE:  (unintelligible).

4                  THE COURT:  You see that, sir?

5                  THE WITNESS:  Yes sir.

6                  BY MR. CASTIGLIONE:  (Cont'g.)

7      Q.   Are you familiar with this document?

8      A.   I think I've seen the document before.  Yes.

9      Q.   Okay.  So this document pertains to an alternative

10     assignment for Dr. Kamiar Alaei that was advised to him by

11     Human Resources in February of 2018.  Do you recall that

12     situation?

13     A.   I do.

14     Q.   And do you recall the related disciplinary

15     investigation that's identified in that letter?

16     A.   I do.

17     Q.   Okay.  Do you recall giving prior testimony in this

18     matter at a deposition on April 12, 2021?

19     A.   I do.

20     Q.   Okay.  Do you recall at that deposition that you had

21     said overall human resources was in-charge of conducting that

22     investigation?

23     A.   Yes, sir.

24     Q.   Okay.  Can you explain to me your understanding what

25     an alternative assignment is?

Alaei v SONY - 6/8/2022

1   A.   Alternative assignments vary, but typically they --

2   they mean that you are removed from the responsibilities, your

3   current responsibilities of your current office and other

4   duties are assigned to you that are of benefit to the

5   institution but they do not directly interrelate necessarily

6   with the work that you're performing in your current job or

7   position.

8   Q.   Okay.  Were you provided updates regarding the

9   investigation concerning Dr. Alaei including the outcome of the

10  investigation?

11  A.   I was.

12  Q.   Okay.  Did you issue any directives to Human

13  Resources about how to conduct the investigation or the terms

14  of Dr. Alaei's work during the investigation?

15  A.   I typically don't issue any directives to Human

16  Resources regarding their investigations.  They conduct their

17  investigations and keep me addressed or informed of what is

18  transpiring.

19  Q.   So in this case, you did not issue any directives to

20  Human Resources?

21  A.   Not that I recall, no.

22  Q.   Okay.  And -- and do you recall ultimately the

23  investigation concerning Dr. Alaei came to a conclusion?

24  A.   I'm sorry.  I didn't get that.

25  Q.   Sure.  Do you recall that the investigation

Alaei v SONY - 6/8/2022

1  concerning Dr. Alaei ultimately came to a conclusion?

2      A.   Yes, I do.

3      Q.   And -- and if I can refer you to your deposition

4  testimony, page twelve.

5      Asked the question, do you recall what the conclusion was

6  as a result of the investigation?

7      Your answer was, I do.

8      The question was posed, what was that conclusion as you

9  recall?

10     Your answer was, as I recall and provided by legal counsel

11 here at the university.  There were no findings regarding

12 mismanagement of funds.  That is everything seemed to be in

13 order.  And there were no specific conclusions regarding Title

14 Nine issues because at the end of the day -- we -- there were

15 no people that wanted to move forward with this investigation.

16     Then asked, so you're saying that there was nobody --

17 nobody reached the conclusion about whether or not the

18 allegations under Title Nine are being investigated by Title

19 Nine.

20     Nobody reached the conclusion about whether there was any

21 merit to those allegations.  At this point in time there was no

22 evidence to say that there were any merits to the

23 investigation.

24     Do you recall giving that testimony?

25     A.   I do.

**Associated Reporters Int'l., Inc.   518-465-8029**

```
 1        Q.   Okay.  Decisions concerning Dr. Alaei's appointment,

 2   excuse me, Dr. Alaei's employment after the February 2008

 3   letter was issued, who would be the person or persons giving

 4   direction on that?

 5               THE COURT:  Say again please.

 6               MR. CASTIGLIONE:  Sure.

 7               BY MR. CASTIGLIONE:  (Cont'g.)

 8        Q.   After the February 8 letter on the screen that was

 9   issued, do you know who would be in-charge of directing and

10   supervising Dr. Alaei's employment?

11        A.   Well, Dr. Alaei would report to the Dean of -- of

12   that corresponding unit who reports to the Provost of Academic

13   Affairs.

14        Q.   So in other words the Dean overseeing Dr. Alaei's

15   appointment would be making decisions and then the Provost

16   overseeing that Dean would be making decisions?

17        A.   Not necessarily but that would generally be the

18   process, yes.

19        Q.   Okay.  Are you familiar -- well, let me show you.

20   Actually strike that.

21        Are you familiar with what's known as the United

22   University Professions Agreement with the State of New York?

23        A.   Generally, I know of the agreement, yes.

24        Q.   Okay.  If I can, I'll identify it for you on the

25   screen.  I'm showing you Exhibit Five in evidence.  And this
```

```
 1   generally would be the document I'm referring to.

 2        A.   Yes.

 3        Q.   Are you familiar with the document with that title,

 4   is that fair to say?

 5        A.   Generally, yes.  I don't know all the items within

 6   the agreement.  But yes, I know of the agreement.

 7        Q.   Okay.  Do you recall testifying at your deposition?

 8             MR. ROTONDI:  Mr. Castiglione (unintelligible).

 9             THE COURT:  Let's go off the record.

10             MR. CASTIGLIONE:  Sure.

11             (Off the record, 09:46:02 to 09:46:47)

12             THE MONITOR:  On the record.

13             THE COURT:  Okay.  Go head, sir.

14             BY MR. CASTIGLIONE:  (Cont'g.)

15        Q.   Was the Office of Human Resources and Title Nine

16   Office and legal counsel responsible to assure you that SUNY

17   Albany was following all the provisions required under the

18   U.U.P. Agreement concerning the investigation regarding Dr.

19   Alaei?

20        A.   They -- they are responsible that we're following

21   those guidelines.

22        Q.   Okay.  Did you rely upon those offices to ensure

23   compliance with the U.U.P. Agreement as to the investigation

24   concerning Dr. Alaei?

25        A.   I did.
```

Alaei v SONY - 6/8/2022

1      Q.    Okay.  You did?  Is that correct?

2      A.    I did.

3      Q.    Okay.  Did you issue any directives that Dr. Alaei's

4   email access be removed as part of the investigation concerning

5   Dr. Alaei?

6      A.    I did not.

7      Q.    Okay.  Who is Bruce Szelest?

8      A.    Bruce Szelest is my Chief of Staff.

9      Q.    Is he typically involved in Title Nine or

10  Disciplinary Investigations concerning SUNY faculty or

11  employees?

12     A.    He is not involved in these investigations, but he is

13  as my Chief of Staff he has kept informed and abreast of

14  anything issue -- any issues that might transpire in that

15  regard or any other matters.

16     Q.    Were you aware of any concerns being raised about

17  actions taken by SUNY Albany during the course of investigation

18  that were affecting or relative to Dr. Alaei?

19            THE COURT:  Can you be more specific?

20            MR. CASTIGLIONE:  Sure.  Do you recall learning

21      of any concerns being raised about the process that was

22      implemented for the investigation concerning Dr. Alaei?

23            THE WITNESS:  I received no concerns, we were

24      following the U.U.P. Agreement.

25            BY MR. CASTIGLIONE:  (Cont'g.)

Alaei v SONY – 6/8/2022

16

1    Q.    Okay.  Are you aware whether Dr. Alaei had his access

2    keys and card access to SUNY Albany removed as part of this

3    investigation?

4    A.    I believe he was.

5    Q.    Okay.  Are you aware -- strike that.

6    Randy Stark was here yesterday providing testimony.  His

7    testimony included that he was directed, or Human Resources was

8    directed to remove Dr. Alaei's access keys and card access by

9    James Stellar and Bruce Szelest.  Why would Bruce Szelest have

10   any involvement with that based on your testimony that he

11   generally is not involved in these matters?

12   A.    Bruce Szelest would not generally be involved in

13   these matters.  Bruce Szelest may get recommendations as what -

14   - what is being recommended in this particular case.  Bruce

15   Szelest would then consult with the President and see if I'm in

16   agreement or not.

17   Q.    Was Mr. Szelest reviewing emails and to dictate

18   course of conduct as to the investigation and actions by SUNY

19   Albany concerning Dr. Alaei and G.I.H.H.R. during this

20   investigation?

21   A.    The answer is no.  Bruce Szelest gets information is

22   informed about the situation and communicates that information

23   to me.

24   Q.    Okay.  If I can refer you to -- I'm going to show you

25   what's been marked in evidence as Claimant's Exhibit Sixty-

Alaei v SONY - 6/8/2022

1  five.  It's an email from Harvey Charles dated February 8, 2018

2  which was sent in part -- it's new (unintelligible).  If I can

3  refer you to Claimant's Exhibit Sixty-five into evidence which

4  is an email from Harvey Charles to several people including,

5  what's his name, Bruce Szelest, dated February 8th, 2018.

6       Part of this says as we await tomorrow's meeting, I

7  believe that some consideration should be given to providing

8  communication to G.I.H.H.R.'s Advisory Board.  Many of the

9  members are very influential people associated with prestigious

10 universities and organizations.

11      I imagined that my letter to the students will somehow get

12 to one or more of them and they too will have questions who

13 want to know what's happening with G.I.H.H.R., I recommend some

14 sort of communication be prepared and delivered.  Do you know

15 why Mr. Szelest was on this email about having communications

16 to advisory board members?

17      A.  As you can see there's a long list of individuals

18 copied in this email or that have relevant information

19 regarding what to do and how to move forward.  And Bruce

20 Szelest, as my Chief of Staff, is kept abreast of many of the

21 issues that transpire in the university.  And as my Chief of

22 Staff, he is responsible for collecting that information and

23 informing me.

24           MR. CASTIGLIONE:  Your Honor, I'd like to

25      identify as Exhibit OO, excuse me, as Exhibit Fifty-six.

Alaei v SONY – 6/8/2022

1          THE COURT:  Were you marking those exhibits?

2          MR. CASTIGLIONE:  It was -- it was objected to,

3     so it hasn't been submitted into evidence.

4          THE COURT:  What number -- what --?

5          MR. CASTIGLIONE:  It's Exhibit Sixty -- oh

6     that's not it.

7          THE COURT:  (unintelligible) approved Sixty-six.

8          MR. CASTIGLIONE:  Yes, but there was some

9     objection as to some of these.

10          THE COURT:  Okay.  And which one are we talking

11     about?

12          MR. CASTIGLIONE:  Sorry.  Fifty-six I read it

13     backwards.

14          THE COURT:  Fifty-six is in evidence.

15          MR. CASTIGLIONE:  Is this in evidence.  There

16     was no objection.  Maybe I wrote it wrong.

17          THE COURT:  Fifty-six is in evidence.

18          BY MR. CASTIGLIONE:  (Cont'g.)

19     Q.   Okay.  I'm referring you to what's been introduced

20     and marked into evidence as Claimant's Exhibit Fifty-six.

21     Exhibit Fifty-six is an email, a chain of emails really from

22     Mr. Szelest, James Stellar dated February 14.  There's an email

23     here where Mr. Stellar is contacting Mr. Szelest and saying,

24     making sure you have this one too.  It's a subject concerning

25     Dr. Kamiar Alaei providing an email from a third-party.

1    It appears to be a former intern of Dr. Alaei explaining

2 her experience and asking why such a huge life- changing

3 decision for such an honorable person is made so fast without

4 having reasonable due process.  And Mr. Stellar is sending that

5 along to Mr. Szelest.  Do you know why he was doing that?  Why

6 was Mr. Szelest receiving these emails and communicating on it?

7    A.    As I said on multiple occasions Dr. -- Dr. Szelest is

8 my Chief of Staff.  As Chief of Staff he collects information,

9 forwards that information.  In this case from this particular

10 situation puts all that information together for my review and

11 information.

12    Q.    If I can refer you to what's in evidence as

13 Claimant's Exhibit Fifty-seven.  This is a series of emails

14 with Mr. Szelest and James Stellar.  It appears initially Mr.

15 Stellar is forwarding an email from Kevin Williams dated

16 February 14th.  It says concerns regarding Dr. Alaei and

17 beyond.

18    Mr. Stellar says Bruce, Kevin sent this to me see below.

19 I figured I would share.  I feel sorry for the student.  We can

20 really do no better as we must use an alternative assignment

21 while the investigation happens.  I hope the new directors will

22 have a helpful effect on the folks.  And it looks like Mr.

23 Szelest was forwarding this on to you directly?

24    A.    Yes, he did.

25    Q.    So were you being kept aware of emails raising

Alaei v SONY - 6/8/2022

20

1  concerns that were going along the chain of people who are

2  overseeing the investigation over -- overseeing Dr. Alaei's

3  appointment?

4      A.   There were a number of email informations forward to

5  me about the case, yes.

6      Q.   So information with concerns went all the way to the

7  top, to you?

8      A.   In some cases, yes.

9      Q.   Okay.  But otherwise, it was not typical to have Mr.

10 Szelest involved in these types of matters?

11     A.   As the Chief of Staff for the President of the

12 University at Albany, Dr. Szelest responsibility is to gather

13 information and get information.  People approached Dr. Szelest

14 in order to brief him and he briefed me in turn.

15     Q.   As I stated yesterday Randy Stark was here.  He

16 provided testimony in part that said his office was directed by

17 you that Dr. Alaei not have access to his SUNY email account.

18 You want -- can you -- do you understand why Mr. Stark would

19 say that in light of your testimony that you said you issued no

20 directives concerning this matter?

21     A.   I receive recommendations from the particular units,

22 in this case, maybe Human Resources and Title Nine.  And I say

23 whether I agree or disagree with the recommendation.

24     Q.   Mr. Stark also testified yesterday to the effect that

25 removing email access was not common for these types of

Alaei v SONY - 6/8/2022

1  alternative assignments like Dr. Alaei's.  Are you suggesting

2  that Human Resources contacted you to recommend that you remove

3  Dr. Alaei's email?

4      A.   There were a number of recommendations.  I can't

5  remember all the specific recommendations.  It's not atypical

6  to remove email access to individuals who (unintelligible) on

7  these types of situations.

8      Q.   Understood.  But Mr. Stark provided testimony that it

9  wasn't common to remove email access -- access in these types

10 of situations?

11     A.   And I'm saying that it varies --.

12          THE COURT:  Hold on, that wasn't a question.

13          MR. ROTONDI:  That was my objection.

14          BY MR. CASTIGLIONE:  (Cont'g.)

15     Q.   Are you able to address why Mr. Stark would say that?

16          MR. ROTONDI:  Objection.

17          THE COURT:  Sustained.

18          BY MR. CASTIGLIONE:  (Cont'g.)

19     Q.   Mr. Stark also testified that it was not consistent

20 with the U.U.P. Agreement to remove Dr. Alaei's email access as

21 it constituted a form of discipline.  Are you able to comport

22 that with your statement that it was a recommendation to you?

23     A.   I'm not sure what the U.U.P. statement relates

24 regarding we move or not, but that is an administrative

25 decision made by the university.

Alaei v SONY - 6/8/2022

22

```
 1        Q.   So did you make that decision?

 2        A.   As I said before I receive recommendations and I

 3   agree or disagree with them.

 4        Q.   Understood.  But I asked if you made that decision.

 5        A.   And I said that I receive recommendations on these

 6   matters.  And I determine whether I agree or disagree with

 7   them.  In this case, if that was the recommendation and his

 8   email access was removed, obviously I agreed with the

 9   recommendation.

10        Q.   So you're suggesting that somebody recommended this

11   to you?

12        A.   If I recall correctly, yes.

13        Q.   Who recommended it?

14        A.   It all depends what the particular situation is.  In

15   this case it could be Human Resources.

16        Q.   So you're saying Human Resources recommended it to

17   you even though Mr. Stark said he was told by you to do it.

18             MR. ROTONDI:  Objection, Your Honor.

19             THE COURT:  I'm going to sustain the objection

20        and (unintelligible) if you wish or can't.

21             MR. CASTIGLIONE:  Okay.

22             BY MR. CASTIGLIONE:  (Cont'g.)

23        Q.   So you previously testified that you relied on H.R.

24   as the basis to ensure that the investigation comported with

25   the U.U.P., correct?
```

Alaei v SONY – 6/8/2022

23

1          THE COURT:  The -- the question was, you relied

2     on H.R. to adhere to the U.U.P. in undertaking these --.

3          THE WITNESS:  H.R. and a number of other areas,

4     yes.

5          BY MR. CASTIGLIONE:  (Cont'g.)

6     Q.   H.R. in this instance made clear that it was a

7  violation of U.U.P. Agreement constituted discipline as to

8  removing email access.

9          THE COURT:  I'm sorry?

10          MR. CASTIGLIONE:  So H.R. in this instance as to

11     removing email access, made it clear that it constituted a

12     violation of the U.U.P. Agreement and constituted

13     discipline.  So are you suggesting that H.R. would suggest

14     to you something that was violative of the U.U.P.

15     Agreement and constituted discipline in their own opinion?

16          THE COURT:  Is this because you're making

17     representation that Mr. Stark's testimony was that to

18     remove email access was discipline?  Is that what you're

19     saying?

20          THE WITNESS:  That it was discipline, and it was

21     inconsistent with the U.U.P.  And he's suggesting then

22     that H.R. would go against its own interpretation and

23     advise.

24          THE COURT:  And I must confess, I don't remember

25     exactly what -- specifically what -- what -- what --.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/8/2022

24

```
1            MR. CASTIGLIONE:  Sure.

2            THE COURT:  Mr. Stark says your

3        (unintelligible).

4            MR. ROTONDI:  First of all, it seems like it's a

5        compound question.  I think it's been asked and answered.

6        And --

7            THE COURT:  It is a compound question.  And --

8        and I'll sustain it on that basis.

9            BY MR. CASTIGLIONE:  (Cont'g.)

10       Q.   If I can refer you to Mr. Stark's deposition

11   transcript page twenty.  Question was posed.  You said you were

12   looking at U.U.P. Agreement issues.  Did you ever determine if

13   removing email access was a violation of the U.U.P. Agreement

14   or consistent with U.U.P. Agreement?  Mr. Stark said it was not

15   consistent with the U.U.P. Agreement.

16       Alternative assignment is an alternative assignment.  It's

17   not a form of discipline action and being that disciplinary

18   action than the email would have remained in place.

19       Question, but for the directive of the President here?

20       Correct.

21           THE COURT:  Question.

22           BY MR. CASTIGLIONE:  (Cont'g.)

23       Q.   Question is, are you saying that Human Resources

24   advised you to or recommended it to you to remove email access?

25       A.   I'm saying that Human Resources and others made
```

Alaei v SONY — 6/8/2022

1  recommendations to me.  I reviewed them and if I agreed I would

2  approve them.

3      Q.   Is it possible you could have made a decision without

4  a recommendation?

5      A.   No, the answer is typically no.  I count on

6  individual recommendations from the corresponding offices

7  before making my determination.

8      Q.   Okay.  Mr. Stark had also testified, and I can refer

9  you to page twenty-six in his deposition.  Actually, let me ask

10  you this.  Do you recall any directive to Dr. Alaei that he did

11  not represent himself as an employee of SUNY or representative

12  of SUNY if he undertook off-campus speaking engagements?

13      A.   Can you repeat that please?

14      Q.   Sure.  Do you recall a directive being given by SUNY

15  Albany that Dr. Alaei not represent himself as being an

16  employee or affiliated with SUNY Albany while he was on

17  alternative assignment if he was speaking at a off-campus

18  speaking engagement?

19      A.   I believe I saw some information regarding that.

20      Q.   Do you know who made that decision?

21      A.   I do not know what the final determination was, no.

22      Q.   Okay.  In Mr. Stark's deposition, page twenty-six.

23  Question, in your prior experience with investigations or

24  alternative assignments, was that common or typical protocol

25  that the person subject to the investigation or alternative

Alaei v SONY – 6/8/2022

1  assignment was not able to attend these types of lectures or

2  speaking engagements and that represent -- represent themselves

3  as being an employee or being a representative of SUNY Albany?

4      Answer, I don't recall that having come up in the previous

5  investigations.

6      Do you recall if there was a determination by the

7  President or Mr. Szelest about this issue?

8      I don't.

9      Again, with regards to this I don't recall what the

10  outcome was of that.  That was not a decision that H.R. would

11  have made.

12      So you don't know if H.R. didn't make that decision, do

13  you know who would have made that decision?

14      A.   I do not.

15      Q.   Okay.  As to the email issue again.  Do you know why

16  Mr. Selchick would have testified yesterday that there was no

17  basis in the U.U.P. Agreement to remove email access?

18              MR. ROTONDI:  Objection, Your Honor.

19              THE COURT:  Basis?

20              MR. ROTONDI:  Calls for speculation.

21              MR. CASTIGLIONE:  I'm asking him if he knows

22      why.

23              THE COURT:  No, you're asking him why Mr.

24      Selchick would have said that.  Sustained.

25              MR. CASTIGLIONE:  But he was -- he was in-charge

Alaei v SONY - 6/8/2022

1      with overseeing all the investigations on campus.

2                  THE COURT:  Objection sustained.

3                  BY MR. CASTIGLIONE:  (Cont'g.)

4      Q.   Did anyone ever raise concerns with you about an

5  email being sent by Harvey Charles dated February 9, 2018

6  concerning Dr. Alaei being perceived as discipline?

7      A.   There were many emails that were being sent.  So I

8  don't remember a specific email.

9      Q.   Okay.  Showing you what's been introduced into

10  evidence as Claimant's Exhibit Fifteen.  Claimant's Exhibit

11  fifteen includes an email from Harvey Charles dated February 9,

12  2018.

13                  THE COURT:  Center that, Counsel.

14                  BY MR. CASTIGLIONE:  (Cont'g.)

15      Q.   And the next -- next page is on the screen.  The

16  subject is G.I.H.H.R.  Mr. Szelest was a recipient.  That says

17  in part I'm writing to inform you that effective today I've

18  named Dina Refki and Gina Volynsky as interim co-directors of

19  the Global Institute for Health and Human Rights at the

20  University of Albany.  Do you recall that email?

21      A.   I don't remember that I specifically saw that email

22  but it looks familiar.

23      Q.   And again Mr. Szelest is on this email indicating

24  that it was something he would have forwarded on to you and

25  kept you abreast of?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/8/2022

1      A.    There's many people copied in that email, but Bruce

2   Szelest is one of them, yes.

3      Q.    But if he received this, was he keeping you advised

4   of the situation?

5      A.    That is his role and responsibility.

6      Q.    Okay.  Again, did you recall receiving any concerns

7   or hearing any concerns from Brian Selchick and Randy Stark

8   that this email could be perceived as discipline against Dr.

9   Alaei?

10     A.    I did not.

11     Q.    Mr. Selchick said in his deposition, page twenty-two.

12     Regarding removing Dr. Alaei from the website in your

13  prior experience with other investigations and alternative

14  assignments was removing an employee's reference from the SUNY

15  website consistent with those prior investigatory or

16  alternative assignment practices by SUNY Albany?

17     His response, I don't recall that having happened.

18     Are you aware of Mr. Alaei's references being removed from

19  the G.I.H.H.R. website at the, you know, outset of the

20  investigation?

21     A.    I don't recall, but I would assume they would have.

22     Q.    Okay.  Why would they have done that?

23     A.    Because if you remove a person from a position and

24  was placed in alternate assignment and they no longer direct in

25  this case you are pointing to interim directors you have to

1   make the corresponding changes in the website.  So the external

2   and internal community are informed.  In this case, who is

3   running the Global Institute for Health and Human Rights at the

4   University at Albany.

5       Q.    So at that point, Dr. Alaei had been removed from his

6   director position and was replaced by two other people?

7       A.    He was put on alternate assignment and these were

8   placed as interim directors of the Global Institute for Health

9   and Human Rights.

10      Q.    As to Mr. Szelest, did he have a particularly more --

11  strike that.  Did he have a -- strike that.

12      Was his involvement in this matter more significant than

13  the -- the level of his involvement in other types of

14  investigations?

15      A.    His involvement in this case is as significant as it

16  would be in any other type of investigation.  He is kept

17  informed.  He collects the information.  He provides it to me.

18      Q.    Did you also recall that as to removing Dr. Alaei's

19  information from the website removing all prior work history

20  that Dr. Alaei had performed as part of G.I.H.H.R. from the

21  website?

22      A.    I would not be involved in that process.

23      Q.    Okay.  Do you know who would be?

24      A.    It would depend on -- on the particular situation but

25  a number of factors including Academic Affairs.

1      Q.    Do you know if that was consistent with the U.U.P.

2  Agreement?

3      A.    I don't know that there's any U.U.P. Agreement

4  related to this.  It's an administrative decision.

5      Q.    As to Mr. Szelest involvement, Mr. Selchick testified

6  at his deposition when asked, is it fair to say Mr. Szelest was

7  overseeing employment issues at that time for Dr. Alaei?

8      Mr. Selchick responded, no, he was certainly playing a

9  substantial role.

10     Question.  Okay.  Is that common to have the Chief of

11  Staff of the President play a substantial role in employment

12  issues when an employee's on alternative assignment.

13     Depends on the issue.  Typically, it's not.

14     Mr. Selchick continues.  It is less frequent, and I would

15  say infrequent for Bruce to be directly involved in the

16  decision making.

17     Question.  So his involvement in this matter concerning

18  Dr. Alaei was not typical in terms of alternative assignment

19  employee matters.  Is that fair to say?

20     Mr. Selchick responded.  I think that is a fair statement.

21     So you had just testified that this was the typical type

22  of involvement by your Chief of Staff in these investigations.

23  But is this the type of involvement he actually usually has in

24  these types of investigations or was this more heightened and

25  more involved?

1      A.   Dr. Szelest is not a decision-maker, first of all.

2  And second of all, his responsibility is to collect information

3  from all parties involved and report that information to the

4  President.  I would expect his involvement in this situation to

5  be similar in other situations that are of this nature.

6      Q.   So to the extent that Mr. Szelest was involved here,

7  he was providing you with the information.

8      A.   That is his responsibility.

9      Q.   Were you directing information or directions through

10  Mr. Szelest to be distributed to other SUNY employees about

11  this matter?

12      A.   It -- it all depends what the situation is.

13      Q.   Was Mr. Szelest involved in any other alternative

14  assignments that year?

15      A.   I can't recall that.

16      Q.   Do you know if there were any other alternative

17  assignments that year?

18      A.   There's been many alternative assignments.  I'm not

19  sure about that particular year.  But yes, there's alternative

20  assignments at the university.

21      Q.   Okay.  I'd like to talk to you about non-renewal of

22  Dr. Alaei.  Do you recall a time where non-renewal process for

23  Dr. Alaei was initiated by SUNY Albany?

24      A.   I know the process was initiated.  Yes.

25      Q.   Okay.  Do you know here if Dr. Alaei's supervisor was

Alaei v SONY – 6/8/2022

32

1   supportive of Dr. Alaei being non-renewed?

2       A.   I do not know that he was or he wasn't.

3       Q.   Okay.  Was the Provost James Stellar pushing for non-

4   renewal?

5       A.   As part of the reorganization that we were

6   contemplating, that's part of his role.

7       Q.   Okay.

8               THE COURT:  Was that yes?

9               THE WITNESS:  Yes.

10              BY MR. CASTIGLIONE:  (Cont'g.)

11      Q.   Was Mr. Szelest also pushing for non-renewal and

12   buyout of Dr. Alaei?

13      A.   Dr. Szelest has no decision-making power in this

14   situation, no.

15      Q.   But was he promoting that Dr. Alaei be non-renewed?

16      A.   That is not his role and responsibility, no.

17              THE COURT:  Well, that's not --.

18              MR. CASTIGLIONE:  That's not responsive --

19              THE COURT:  (unintelligible), Doctor.  The

20       question was, was he in favor of non-renewal essentially.

21       Can you answer that question?

22              THE WITNESS:  No, that -- that is not something

23       that would be under his scope and so, he was not pushing

24       for non-renewal or dismissal.  He was keeping me informed

25       and I made the corresponding determinations based on the

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1      information that I receive.

2                  MR. CASTIGLIONE:  Concerning non-renewal of Dr.

3      Alaei if I can refer you to -- if I can refer you to

4      Exhibit Thirty-six.

5                  THE COURT:  Three six?

6                  BY MR. CASTIGLIONE:  (Cont'g.)

7      Q.    Thirty-six.  Actually, I'm sorry, I meant Exhibit

8  Thirty-seven.  Exhibit Thirty-seven in evidence is a -- is a

9  letter from Dr. Alaei to you, Doctor, dated May 22nd, 2018.

10  I'll slowly flip through this document to see if it refreshes

11  your memory.  Do you recall this letter from Dr. Alaei?

12      A.    I believe this was part of the information that I

13  reviewed.  Yes.

14      Q.    Did you have any opinion of what was raised by Dr.

15  Alaei in this letter regarding the merits of his work?

16      A.    I did not.

17      Q.    Did you review it?

18      A.    Review what?

19      Q.    Did you review this letter at the time it was sent to

20  you?

21      A.    I believe I did.

22      Q.    And you had no opinion about what was being raised in

23  this letter?

24      A.    I read the letter.  I (unintelligible) the

25  information and that's about it.

Alaei v SONY - 6/8/2022

1    Q.   So you didn't give any particular concern or credence

2   to any issue raised in this letter?

3    A.   I read the letter.  I took into consideration what

4   the letter said.  And then I reviewed the information that was

5   provided to me.

6    Q.   Did the Provost James Stellar make a recommendation

7   to you to non-renew Dr. Alaei's employment?

8    A.   In conversations with the Provost, yes, that was one

9   of the recommendations.

10    Q.   Did he explain to you why he was recommending a non-

11   renewal?

12    A.   This was part of an overall process at the University

13   of reorganization of -- of the university.  And we were in the

14   -- in the process of changing a number of units.  And we had

15   decided that we no longer get into restructural --

16   restructuring at the university.  And the issues that we were

17   focusing on that this would be a -- an institute that we will

18   no longer have at the university at Albany.

19    Q.   So you were, in other words, you're saying here today

20   that you were looking to -- to get rid of G.I.H.H.R. at the

21   time?

22    A.   What I'm saying is that as part of the reorganization

23   process at the university we had restructured and we had

24   (unintelligible) a number of institutes and centers at the

25   University at Albany including a variety of offices.  And yes,

**Associated Reporters Int'l., Inc.   518-465-8029**

1    this was one of them.

2        Q.    If I can refer you to Exhibit Four -- actually --.

3            THE COURT:  Off the record just for a quick

4        minute.  Keep going, Mr. Castiglione.  Off the record.

5            (Off the record, 10:22:09 to 10:22:16)

6            THE MONITOR:  On the record.

7            BY MR. CASTIGLIONE:  (Cont'g.)

8        Q.    Just quickly back to Thirty-seven.  On this page, it

9    says by laying out at the bottom.  It says by laying out the

10   enrollment and research grants that I have generated it is

11   clear that there is no performance-based or financial reason

12   for the non-renewal in the absence of any performance-based

13   justification for this action a reasonable person can only

14   assume and is related to reasons that I have been placed on

15   alternative assignment.  Did you provide any response to Dr.

16   Alaei to this letter and what was raised in this letter?

17       A.    I don't recall.

18       Q.    Okay.  In this letter, Dr. Alaei also references

19   certain fundraising including about receiving four million

20   dollars in funding from various matters.  Do you recall if

21   other faculty brought in that type of money within a short

22   period of time, consistent with what how Dr. Alaei had

23   performed?

24       A.    We are a research one institution.  So part of the

25   process is for faculty to be engaged in research and generate

Alaei v SONY - 6/8/2022

1   funding and there are faculty that have brought in less than

2   two point nine million dollars and there is faculty that have

3   brought in more than three point nine million dollars.

4       Q.   What percentage of your faculty has brought in over

5   six million dollars within a short period of time?

6               THE COURT:  Next question (unintelligible).

7               MR. CASTIGLIONE:  If I can refer you to what's

8       been marked into evidence as Exhibit One.

9               THE COURT:  You want Exhibit One?

10              MR. CASTIGLIONE:  Yes, Your Honor.

11              THE COURT:  This is the appointment letter, sir.

12              BY MR. CASTIGLIONE:  (Cont'g.)

13      Q.   Showing you what's been marked into evidence as

14  Claimant's Exhibit one.  A letter dated April -- a letter dated

15  April 16, 2014.  This is an appointment letter for Dr. Alaei.

16  And I'll show you the second page.  Do you recall seeing this

17  letter at any point in time, sir?

18      A.   I believe I have yeah.

19      Q.   Okay.  You had just mentioned that the university was

20  considering getting rid of G.I.H.H.R. and restructuring.  Are

21  you aware that -- strike that.

22      You are aware that Dr. Alaei's appointment, his initial

23  appointment was actually as a Research Associate Professor and

24  lecturer in the Department of Public Administration and Policy

25  with Rockefeller College and that his secondary appointments

Alaei v SONY - 6/8/2022

 1  which were non-stipend  included Director of G.I.H.H.R. as well

 2  as courtesy affiliation appointments in the School of Public

 3  Health and School of Criminal Justice.

 4       So ultimately, the university decided to terminate Dr.

 5  Alaei's appointment.  Is that correct?

 6       A.   To non-renew his appointment, yes.

 7       Q.   And did you also terminate his employment effective

 8  August 10, 2018?

 9       A.   I can't remember the exact date.

10       Q.   Okay.  But at some point it was terminated.

11       A.   Yes.

12       Q.   Okay.  And you had said it was because part of it you

13  were seeking to reorganize the -- the university you're seeking

14  to get rid of G.I.H.H.R.?

15       A.   That's correct.

16       Q.   So why wouldn't Dr. Alaei have been able to continue

17  on as a Associate Professor and Lecturer which was his actual

18  primary appointment?

19       A.   His primary appoint -- depending on how you see this.

20  One of his responsibilities was to be Director of G.I.H.H.R.,

21  his contract was coming to an end and we decided not to renew

22  the contract.

23       Q.   So his -- his appointment as Director of G.I.H.H.R.

24  though, pursuant to this letter was complimentary

25  (unintelligible) appointments, initially professional

1 employment.  So why wouldn't he be allowed to continue as just

2 an Associate Professor and Lecturer?  And at that point, I

3 believe it was an Associate Dean.

4     A.   I'm not sure what the question is?

5     Q.   What if -- if you were getting rid of a entity that

6 my client -- my client was simply having a non-stipend

7 complimentary appointment for and his primary appointment was

8 as a Associate Professor and Lecturer and then in 2018 was

9 Associate Dean.  Why would he not be able to continue on as

10 simply Associate Professor and Lecturer and Associate Dean and

11 just leave and let go of his appointment as complimentary

12 appointment as Director of G.I.H.H.R.?

13     A.   First of all, I don't know that he was an Associate

14 Dean, but regardless of the matter, one of his primary roles

15 and responsibilities was directing the G.I.H.H.R.  Once his

16 contract is coming to a termination we decided not to renew his

17 agreement.

18     Q.   So you didn't know at the time that he was an

19 Associate Dean?

20     A.   I do -- I do not know.

21     Q.   Okay.  Did you solicit any input from Dr. Alaei's

22 Supervisor, Harvey Charles, or anyone else regarding the

23 quality of work before deciding to terminate him?

24     A.   What we were looking at was the elimination of the

25 G.I.H.H.R.  And so I received the information from the Provost

1  office regarding this matter and how we would proceed.

2                THE COURT:  The question was did you solicit Dr.

3       Charles' opinion?

4                THE WITNESS:  I did not.

5                BY MR. CASTIGLIONE:  (Cont'g.)

6       Q.   And did you solicit anybody else's opinion about the

7  quality of work and if it was worth maintaining Dr. Alaei's

8  just as a Research Associate Professor and Lecturer and

9  Associate Dean?

10      A.   I don't recall that conversation, no.

11      Q.   Okay.  Let me ask you about personnel.  Do you know

12  how many SUNY Albany -- excuse me University of Albany faculty

13  or employees are part of the U.U.P.?

14      A.   I couldn't give the number, but a substantial number

15  of the faculty are U.U.P. members.

16      Q.   Are there other unions with employees that are

17  operating at the University at Albany campus?

18      A.   There are number of other unions, yes.

19      Q.   Okay.  I mean, are most of the employees at SUNY

20  Albany or University at Albany in some sort of union or other?

21      A.   I would say so.

22      Q.   Okay.  And do you know how many employees SUNY Albany

23  has?

24      A.   Roughly between part-time and full-time maybe close

25  to four thousand.

Alaei v SONY - 6/8/2022

40

1      Q.    Okay.  Can you explain to me the process for having

2   New York State Comptroller's Office review faculty or employee

3   appointments or contracts?

4      A.    I cannot.

5      Q.    Are you familiar with the Office of Comptroller

6   reviewing any of SUNY Albany's faculty appointments or

7   contracts for any employees?

8      A.    There are a number of contracts that go to the

9   Comptroller's office, but I don't remember any specifically,

10  no.

11     Q.    Okay.  When you say there are a number of contracts,

12  do you know what those issues are for?

13     A.    I can't -- there might be different I cannot recall,

14  no.

15     Q.    Do you know of anybody in the U.U.P., who, the

16  process has set out where they have their contracts approved by

17  the comptroller's office?

18     A.    I -- I don't recall that, no.

19     Q.    As you're the President of SUNY Albany, has SUNY

20  Albany initiated any actions to not pay U.U.P. employees

21  because their appointment letters or contracts were not

22  approved by the Comptroller's Office?

23     A.    I can't recall that, no.

24     Q.    So you don't recall it.  Is it likely it didn't

25  happen?  There's been no such --.

Alaei v SONY – 6/8/2022                    41

```
 1              THE COURT:  No, no.  Next question.

 2              BY MR. CASTIGLIONE:  (Cont'g.)

 3    Q.   Okay.  Do you have an appointment letter or contract?

 4    A.   I do.

 5    Q.   At SUNY -- your work with SUNY Albany?

 6    A.   I do.

 7    Q.   Okay.  And do you know when that was issued?

 8    A.   Sometime in June of 2017.

 9    Q.   Okay.  Was that for over fifty thousand dollars?

10    A.   It was.

11              MR. ROTONDI:  Your Honor.

12              THE COURT:  I'll allow.  You said yes.

13              THE WITNESS:  It was yes.

14              BY MR. CASTIGLIONE:  (Cont'g.)

15    Q.   Was your contract approved by the Office of the State

16 Comptroller?

17    A.   I do not know.

18    Q.   Okay.  Are you refusing to pay yourself under that

19 contract?

20              THE COURT:  Next question -- next question.

21              MR. ROTONDI:  Your Honor, I have no questions.

22       No question, Your Honor.

23              THE COURT:  I'm sorry?

24              MR. ROTONDI:  No questions.

25              THE COURT:  There is no cross-examination, Dr.
```

**Associated Reporters Int'l., Inc.   518-465-8029**

1    Rodriguez. So you are free to go. Thank you for your

2    time. Put your mask on first right now. And then discard

3    your -- your shield.

4                    THE WITNESS: Thank you.

5                    THE COURT: You're welcome. Okay. You can just

6    put it in the wastepaper basket.

7                    THE WITNESS: Okay. Thank you, sir.

8                    MR. CASTIGLIONE: We're going to take ten minute

9    recess. Ten minutes recess folks.

10                   THE COURT: That's fine.

11                   MR. CASTIGLIONE: Thank you, Your Honor.

12                   (Off the record, 10:31:49 to 10:41:36)

13                   THE MONITOR: On the record.

14                   THE COURT: All right. We have reconvened. Mr.

15   Castiglione, please call your next witness.

16                   MR. CASTIGLIONE: The Claimant calls James

17   Stellar.

18                   THE COURT: You're James Stellar?

19                   MR. STELLAR: I am.

20                   THE COURT: All right. Please put on -- before

21   you take the mask off, please put the plastic shield over

22   your -- over your face please. And then remove your mask

23   after that. And you're going to be sworn now.

24                   THE MONITOR: Raise your right hand. Do you

25   solemnly swear the testimony you're about to give is the

Alaei v SONY – 6/8/2022

1    truth, the whole truth, nothing but the truth so help you

2    God?

3                    MR. STELLAR:  Yes, I do.

4                    WITNESS; JAMES RANDOLPH STELLAR; Sworn

5                    THE MONITOR:  Be seated.  State and spell your

6    name for the record.

7                    THE WITNESS:  My name is James Randolph Stellar.

8    J-A-M-E-S R-A-N-D-O-L-P-H S-T-E-L-L-A-R.

9                    THE COURT:  Okay.  Mr. Stellar, keep your voice

10   elevated.  That microphone doesn't amplify your voice, it

11   just records.

12                   THE WITNESS:  Okay.

13                   THE COURT:  Thank you.  Mr. Castiglione?

14                   MR. CASTIGLIONE:  Thank you, Your Honor.

15                   DIRECT EXAMINATION BY MR. CASTIGLIONE:

16   Q.   Good morning, is it Dr. Stellar or Mr. Stellar?

17   A.   Dr. Stellar.

18   Q.   Sure.  Good morning, Dr. Stellar.  Were you employed

19   in 2018?

20   A.   Yes, I was.

21   Q.   What -- who were you employed by?

22   A.   University at Albany.

23   Q.   And what was your position at the time?

24   A.   In 2018 I was the Provost.

25   Q.   And can you explain to me what your responsibilities

1  entailed at that point?

2      A.   The provost is the chief academic officer in-charge

3  of faculty and students and things associated with the academic

4  operation like course approval.

5      Q.   Okay.  Did you have any involvement with disciplinary

6  investigations for employees under the United University

7  Professions Agreement?

8      A.   I did.

9      Q.   You're familiar with the United University

10 Professions Agreement that was in effect at that point?

11     A.   I am basically --.

12     Q.   Generally speaking, yeah.  Okay.  And I'll just refer

13 to that as the U.U.P. Agreement going forward.

14     Can you explain to me what the usual process was that you

15 were involved with if a matter was identified or how it became

16 identified as flagged for a possible disciplinary

17 investigation?

18     A.   Yes.  There were two types in my opinion, one came

19 out of H.R. and often involved things that didn't have to do

20 directly with the academic mission such as a professor not

21 showing up for a course.  The second form would be as I

22 described something that came out of the academic enterprise,

23 like a professor not showing up for a course.

24     Q.   Okay.  What if they had a personnel issue that --

25 strike that.

Alaei v SONY – 6/8/2022

45

1      Do you know who Chantelle Cleary was at the time in terms

2  of employment with SUNY Albany?

3      A.   I do.

4      Q.   Who was Chantelle Cleary?

5      A.   She was the Title Nine coordinator.

6      Q.   And did she report directly to the President?

7      A.   She did.

8      Q.   Did the President oversee her work and efforts as

9  Title Nine coordinator?

10      A.   He did.

11      Q.   If I could refer you to what's been marked into

12  evidence as -- and introduced in evidence as Claimant's Exhibit

13  Eight.  If you can take a look at this letter for a minute.

14  And I'll show it to you on your screen.

15      A.   Okay.

16      Q.   Here's the second page.  Do you recall seeing this

17  letter before?

18      A.   I do.

19      Q.   Do you recall what this letter is?

20      A.   This is a directive to be placed on alternate

21  assignment.

22      Q.   This directive also identifies that a disciplinary

23  investigation was being undertaken.  Is that correct?

24      A.   Yes, it is.

25      Q.   Okay.  Did you have any involvement with the

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1  disciplinary investigation identified in this letter?

2      A.   Not with the investigation per se.  But as it was

3  reported to me by Harvey Charles and other people, Chantelle

4  Cleary who did the investigation.

5            THE COURT:  (unintelligible) what?  I'm sorry,

6       as reported to by Chantelle Cleary, Your Honor and Harvey

7       Charles has mentioned under the fourth bullet here.

8            BY MR. CASTIGLIONE:  (Cont'g.)

9      Q.   Do you recall did Harvey Charles conduct any part of

10  the investigation?

11     A.   I believe that the academic side, which included

12  Harvey Charles, mainly relied on Chantelle Cleary and H.R. to

13  conduct the investigations.

14     Q.   Was information reported to you over time about the

15  investigation?

16     A.   Yes.

17     Q.   Did you --?

18            THE COURT:  Hold on, Counsel.  Could you

19       describe the -- the investigation as two parallel

20       investigations or collaborative investigation?

21            THE WITNESS:  I would say, Your Honor that it

22       was a collaborative investigation with me as the academic

23       chief officer relying on Chantelle Cleary and H.R. to do

24       the actual investigation.

25            THE COURT:  Mr. Selchick?

Alaei v SONY – 6/8/2022

1            THE WITNESS:  Yes.  And -- and Randy Stark who

2       is the head of H.R.

3            THE COURT:  But my question would be more in

4       your opinion described as a collaborative investigation.

5            THE WITNESS:  I would, Your Honor.

6            THE COURT:  Okay.  I'm just asking.

7            THE WITNESS:  Sure.

8            BY MR. CASTIGLIONE:  (Cont'g.)

9       Q.   Did individuals conducting the investigation convey

10  information to you on a periodic basis?

11      A.   Yes.

12      Q.   And did you convey that information to the President

13  over time on a periodic basis?

14      A.   Yes.

15      Q.   Did you convey to the President directly?

16      A.   Yes.

17      Q.   Did you also convey information to Bruce Szelest, the

18  President's Chief of Staff?

19      A.   Yes.

20      Q.   Were you involved in the determination to non-renew

21  Dr. Alaei?

22      A.   Yes.

23      Q.   Explain to me your involvement.

24      A.   As the Chief Academic Officer and Senior Vice

25  President, the President, often consulted with me so did Randy

Alaei v SONY – 6/8/2022

48

```
 1  Stark, head of H.R.  So I would participate in those

 2  conversations and offer advice.

 3       Q.   Were you the person that initiated the non-renewal

 4  process to get the process started?

 5       A.   No.

 6       Q.   You are not?

 7       A.   I was not.

 8       Q.   Who was?

 9       A.   I believe it was Randy Stark, Head of H.R.

10       Q.   Do you know who Bill Hedberg is or was at the time in

11  2018, during the non-renewal process related to Dr. Alaei?

12       A.   Yes.

13       Q.   Explain to me who he was.

14       A.   He was my Vice-Provost and performed a variety of

15  functions around management on the academic side.

16       Q.   Showing you -- to identify this claimant's Thirty-

17  two.  Actually Claimant's Thirty-three.  Claimant's Thirty-

18  three in evidence is emails between Harvey Charles and Bill

19  Hedberg.

20       Starting with Mr. Hedberg asking Harvey, are you available

21  to sign a non-renewal letter for K.A?

22       Harvey responding, Yes, I am.  Would you like me to do it?

23       And Harvey responding to Bill saying, I am looking at the

24  letter of non-renewal, it is actually a recommendation from me

25  to the Provost.  As you know, I know practically nothing about
```

Alaei v SONY – 6/8/2022

1    this situation.  And I feel uncomfortable making a

2    recommendation to the Provost without a basis to do so.  Could

3    this be handled differently?

4         Do you recall, after reading this, whether Mr. Hedberg

5    started the non-renewal process?

6         A.   I don't believe he did.  It was a long time ago, so I

7    can't be exactly sure.

8         Q.   So if he didn't start it and Harvey Charles pursuant

9    to this email didn't start it, who did?

10        A.   I believe it was Randy Stark.

11        Q.   You believe it was Randy Stark.  So you're saying it

12   was not you?

13        A.   Yes.

14        Q.   Okay.  Did you ultimately accept and sign off on the

15   non-renewal for Dr. Alaei?

16        A.   I accepted it.  I can't recall at the moment whether

17   I signed off on it.  It was possible because Harvey Charles

18   reported to me.

19        Q.   I can refer you to Exhibit, which is part of Thirty-

20   three, I apologize.  Exhibit Thirty-three, as we said is an

21   evidence.  I'm referring to the portion which is an email

22   between Harvey Charles, Randy, it appears Randy Stark, William

23   Hedberg.  There's an email from Harvey Charles says Dear Randy,

24   I'm writing to let you know that Bill Helberg sent me both the

25   H.R. M dash three for Kamiar as shown in this attachment and a

1    letter addressed to the Provost for me recommending that Kamiar

2    not be renewed.

3         I declined to sign that letter because I have no

4    information that can be used as a basis to recommend that

5    Kamiar not be renewed.  I am not seeking such information.

6    Since it is clear to me that the Provost has decided to not

7    renew Kamiar's contract.

8         Do you have an understanding why Mr. Charles would be

9    saying that he believed you, at that point had decided not to

10   renew Dr. Alaei's contract?

11        A.   I believe what he's referring to is that I was his

12   direct supervisor.

13        Q.   But this is May 2nd, 2018?

14        A.   Yes.

15        Q.   And this was before he was indicating he was just

16   signing the initial H.R.M. three form?  I'm going to refer you

17   to Claimant's Exhibit Thirty-four.  This is an email form which

18   is in evidence from William Hedberg dated 04/30/18 to Dr.

19   Alaei, saying he's received the attached form to non-renew your

20   university appointment that is dated 04/30.  The prior email is

21   dated May 2nd.  Do you recall when you accepted the non-renewal

22   recommendation?

23        A.   I can't recall precisely, but it would have been

24   about this time.

25        Q.   And if I could refer you to the form here that's

Alaei v SONY – 6/8/2022

51

1  attached.  Do you recognize what this form is?

2      A.    It's a change of status form.

3      Q.    And this is for Dr. Alaei?

4      A.    Yes.

5      Q.    So as of 04/28 Dr. Charles had signed it, but you had

6  not signed it as of 04/28?

7      A.    That seems to be the case.

8      Q.    Okay.  If I can refer you over to Claimant's Exhibit

9  Thirty-six, which is in evidence, an email from William Hedberg

10 to Dr. Alaei and you're C.C.'ed on here with Harvey Charles.

11 This email says in part, the Provost has signed the form from

12 Dean Harvey Charles with non-renewal for your appointment.  And

13 again, this is dated May 14th it's referring to the form you

14 have dated signed 05/14/2018.  Is that reflective of when you

15 actually signed-off on the non-renewal?

16     A.    Yes.

17     Q.    So do you have --?

18             THE COURT:  What's the date, Counsel?

19             MR. CASTIGLIONE:  The non-renewal was signed

20     05/14/2018.

21             THE COURT:  05/14?

22             MR. CASTIGLIONE:  May 14, 2018.

23             THE COURT:  Okay.  So, sir, that's your name.

24     That's your signature, right?

25             THE WITNESS:  It is.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1           THE COURT:  To the right, mine is reading, it

2      looks like March 14.  Is that -- am I reading that wrong?

3           THE WITNESS:  I think that's (unintelligible),

4      sorry.

5           THE COURT:  Okay.  Under the 04/28?

6           THE WITNESS:  Yes.

7           THE COURT:  You think that's designating

8      05/14/18?

9           THE WITNESS:  Yes.

10           THE COURT:  Okay.

11           BY MR. CASTIGLIONE:  (Cont'g.)

12      Q.   So would you have any understanding of why Dr.

13 Charles, when he was first provided this form and requests had

14 said, he believes you've already signed off on the non-renewal

15 process?

16           THE COURT:  What's the question, Counsel?

17           BY MR. CASTIGLIONE:  (Cont'g.)

18      Q.   So referring back to Claimant's Thirty-three.  Do you

19 have any understanding why as of May 2nd, Dr. Charles would say

20 he was -- he was declining to sign the letter of recommend --

21 recommendation because he has no information to be used as the

22 basis to recommend non-renewal and he was not seeking such

23 information.  It's  clear to him that the Provost has declined

24 to not renew or decide -- excuse me to not renew Dr. Alaei's

25 contract.

Alaei v SONY - 6/8/2022

1    Do you have any understanding of why Harvey Charles would

2  be making that statement at that point in time?

3              MR. ROTONDI:  Objection, Your Honor.

4              MR. CASTIGLIONE:  I asked him if he has any

5      understanding.

6              THE COURT:  The objection is sustained.

7              BY MR. CASTIGLIONE:  (Cont'g.)

8      Q.   Before signing the non-renewal form, did you consult

9  with Harvey Charles to get any input regarding Dr. Alaei's work

10  product or quality of work?

11     A.   Yes.

12     Q.   Could you explain to me what your conversation with

13  Dr. Charles was?

14     A.   Sure.  Harvey Charles and I met as provost and

15  associate provost, perhaps every week or two, during which time

16  we discussed many issues related to his responsibility.  And in

17  that initial conversation, we discussed this topic.

18     Q.   And what did -- what did Harvey Charles convey to you

19  about the quality -- quality of Dr. Alaei's work in terms of

20  non-renewal?

21     A.   Given that the investigation was done by Chantelle

22  Cleary and H.R. he said, as he indicated here, that he didn't

23  have a lot of details, but he was the supervisor.

24     Q.   Correct.  And I asked you about what Mr. Charles told

25  you about the quality of Dr. Alaei's work in terms of non-

Alaei v SONY - 6/8/2022

1  renewal?

2          THE COURT:  Well, let's drop the in terms of

3      non-renewal.

4          MR. CASTIGLIONE:  Sure.

5          THE COURT:  Did Dr. Charles advise you one way

6      or the other about the quality of the doctor's work?

7          THE WITNESS:  He did and the quality was good.

8          BY MR. CASTIGLIONE:  (Cont'g.)

9      Q.   Do you recall being deposed in this matter on April

10  9, 2021?

11     A.   I do.

12     Q.   When asked is it your recollection that Dr. Charles

13  felt that Dr. Alaei's appointment not be renewed, you said yes,

14  it is.

15     So Dr. Charles was, however, not looking to renew Dr.

16  Alaei based upon his own emails.  Is that fair to say?

17     A.   I'm not sure I understand the question.

18     Q.   Sure.  Dr. Charles' emails that you -- we just went

19  through those reflected he was not looking to recommend that

20  Dr. Alaei be non-renewed.  Is that fair to say?

21     A.   That's what those emails say.

22     Q.   Okay.  And do you recall testifying however that was

23  your recollection that Dr. Charles felt that Dr. Alaei's

24  appointment not be renewed?

25     A.   Yes.  As a result of the conversations that we had

Alaei v SONY – 6/8/2022

55

1  between him and me, between other people and him, Chantelle

2  Cleary, for example, it's hard to remember exactly what.

3      Q.   So you're saying your recollection based on what

4  you're saying conversations with Dr. Charles and others was

5  that Dr. Charles actually did recommend non-renewal of Dr.

6  Alaei?

7      A.   Yes, he came around to that opinion and signed the

8  document.

9      Q.   Were you advocating at the time that Dr. Charles sign

10 the recommendation to not renew Dr. Alaei's contract?

11     A.   I was.

12     Q.   Okay.  And why were you recommending that?

13     A.   Based on reports given to me by Randy Stark,

14 Chantelle Cleary, I came to the conclusion that that was the

15 right course of action and recommended it to the President.

16     Q.   What were these reports you're referring to?

17     A.   Conversations and documents describing the results of

18 their investigation.

19     Q.   So do you recall when you received those alleged

20 results of the investigations?

21     A.   I'm sorry, I can't remember exactly when I received

22 them.

23     Q.   Would it be before you sign the non-renewal form on -

24 - on May 2018?

25     A.   Yes, it would.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/8/2022

56

1    Q.    Okay.  Do you recall the basis of what those reports

2    were that you were relying on?

3                    THE COURT:  What --

4                    MR. CASTIGLIONE:  Strike that.

5                    THE COURT:  -- the reports were.  Is that what

6         you're asking?

7                    BY MR. CASTIGLIONE:  (Cont'g.)

8    Q.    Do you recall the basis of purported findings or

9    determinations and the other reports that you were relying

10   upon?

11   A.    I do.

12   Q.    Can you explain to me what those were?

13   A.    The allegations were that Kamiar had allowed his

14   brother to have contact with students and staff and G.I.H.H.R.

15   when that was not supposed to happen, according to our

16   understanding with him based on his brother's circumstances.

17   Q.    When you say understanding with him, what -- can you

18   explain to me what you're referring to?

19   A.    Arash was separated from the university.  And the

20   understanding we had was that Kamiar would run G.I.H.H.R., but

21   there would be no contact between Arash and anybody in

22   G.I.H.H.R.

23   Q.    Now at that time, so we're talking about May of '18

24   was Arash at that time on alternative assignment?

25   A.    I can't remember whether he was on alternative

**Associated Reporters Int'l., Inc.   518-465-8029**

 1  assignment or whether he was separated.

 2              THE COURT:  Go ahead, Counsel.

 3              BY MR. CASTIGLIONE:  (Cont'g.)

 4      Q.   So are you saying there was some directive given to

 5  Dr. Alaei that he not allow Arash Alaei to have any involvement

 6  with G.I.H.H.R. or have any communications with people at

 7  G.I.H.H.R.?

 8      A.   That is my understanding.

 9      Q.   What's your understanding based on?

10      A.   Conversations with the people who prepared the

11  document I would refer that to Human Resources.

12      Q.   What document are you referring to?

13      A.   The document that separated Arash as I recall from

14  the institution and the instructions to Kamiar associated with

15  that by H.R.

16      Q.   If I can refer you to what's being identified as --,

17              THE COURT:  The new marked exhibit?

18              MR. CASTIGLIONE:  The new marked exhibit.

19              THE COURT:  Sixty-seven.

20              MR. CASTIGLIONE:  Sixty-seven.

21              THE COURT:  (unintelligible) given a copy of

22      this?

23              THE WITNESS:  Yes.

24              MR. CASTIGLIONE:  Yes.

25              THE COURT:  Okay.

Alaei v SONY – 6/8/2022

58

1          MR. CASTIGLIONE:  Sixty-seven is a packet

2     essentially with a few documents.

3          THE COURT:  Can you characterize it for the

4     witness --

5          MR. CASTIGLIONE:  Sure.  The -- the first

6     document, the first page is a stipulation of settlement

7     between the State University of New York, University at

8     Albany and Arash Alaei.  It is a few pages in length that

9     is signed by Randy Stark and Dr. Arash Alaei in September

10     2017.  There is also a page about a resignation in

11     September 2017.  There is --.

12          THE COURT:  Okay.  That's fine.  That's fine.

13          MR. CASTIGLIONE:  Sure.  There's also an

14     alternative assignment document from February 10, 2017.

15          THE COURT:  Counsel?

16          MR. CASTIGLIONE:  Your Honor, I offer this into

17     evidence.

18          MR. ROTONDI:  (unintelligible).

19          MR. CASTIGLIONE:  Sure.  The witness just

20     testified that he was recommending non-renewal of my

21     client based on an alleged agreement concerning SUNY and

22     Arash Alaei and my clients alleged violation of directives

23     given to him related to issues in that agreement

24     supposedly not facilitating contact between his brother

25     and G.I.H.H.R.  This is offered to rebut and to impeach

**Associated Reporters Int'l., Inc.   518-465-8029**

1    the witness.

2                   THE COURT:  The objection is overruled.  The

3        document in exhibit -- it is admitted.

4                   MR. CASTIGLIONE:  If I can refer you --.

5                   THE COURT:  Can we go off the record?

6                   MR. CASTIGLIONE:  Sure.

7                   (Off the record, 11:05:49 to 11:06:01)

8                   THE MONITOR:  On the record.

9                   BY MR. CASTIGLIONE:  (Cont'g.)

10       Q.    All right.  Dr. Stellar, are you -- are you familiar

11   with what's being shown to you as Exhibit Sixty-seven, which is

12   a settlement agreement between Arash Alaei and -- and

13   University at Albany?

14       A.    I have both familiarity with it.

15       Q.    Okay.  If I can refer you to paragraph five.  It

16   says, and it's not the best copy, and in the first line says

17   the parties agree that on the effective date of his resignation

18   employee will return all office keys, his university

19   identification card.  Goes on.  It says, and will henceforth be

20   prohibited from entering the premises or initiating any verbal

21   written or electronic communication with a current or former

22   University students or employees, except as expressly approved

23   in writing by the Associate Vice-President for Human Resources.

24       Can you -- are you aware of where in this document that

25   Dr. Kamiar Alaei had any responsibilities or obligations for

1  enforcing a settlement agreement between Arash Alaei and the

2  State of excuse me, University at Albany?

3      A.   I'm not.

4      Q.   You're not.  Do you -- you don't recall -- strike

5  that.

6      You don't recall actually ever having a conversation with

7  Dr. Alaei about his brother not being able to communicate with

8  anybody at SUNY Albany.  Is that correct?

9      A.   That is correct.

10     Q.   Okay.  Do you know if anybody ever gave him any

11  directives to actually not be involved with his brother having

12  contact with people at SUNY Albany?

13     A.   My understanding from Randy Stark was that that was

14  transmitted to him.

15     Q.   So Randy Stark was the person conducting the

16  investigation concerning my client about whether or not my

17  client was somehow facilitating or causing a breach of his

18  brother's contract with University at Albany regarding contact.

19  He was the one looking into that?

20     A.   He and Chantelle Cleary and others I suppose Bruce

21  Szelest.

22     Q.   And your understanding is that Mr. Stark would have

23  been the one to advise Dr. Kamiar Alaei about that prohibition

24  about his brother contacting people.

25     A.   That is my inference.

Alaei v SONY – 6/8/2022

61

1       Q.   And -- and do you ultimately recall that Mr. Stark

2  and Human Resources determined there was no basis to impose

3  discipline, no policy violations, no violations concerning my

4  client in his disciplinary investigation?

5       A.   I don't recall.

6                THE COURT:  You do not recall?

7                THE WITNESS:  I do not recall.

8                THE COURT:  You do not recall whether or not the

9       Title Nine and H.R. investigation resulted in a -- an

10      unfounded allegation, you do not recall that?

11               THE WITNESS:  I don't recall the unfounded part,

12      Your Honor.  I do recall the investigation and the

13      complaints received as they were reported to me.

14               MR. CASTIGLIONE:  And ultimately, your

15      determination to non-renew was based upon an alleged

16      breach but my client had some obligation to prohibit his

17      brother from contacting people pursuant to a settlement

18      agreement between SUNY Albany and Arash Alaei?

19               THE COURT:  That's such a -- pretty involved

20      question.

21      MR. CASTIGLIONE:  Okay.

22               BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.   But ultimately, you support -- you pursued non-

24  renewal of my client based on what you felt were findings by

25  Title Nine and Human Resources concerning Kamiar Alaei somehow

 1  not complying with a prohibition about his brother talking to

 2  people?

 3      A.   I supported that yes.

 4      Q.   Okay.  If I can refer you to part of Exhibit Sixty-

 5  seven.  This is a letter from Randy Stark to Arash Alaei dated

 6  February 10, 2017 it's been an alternative assignment.  In this

 7  it says at the bottom, you are further expressly prohibited

 8  from having any verbal written or electronic communication with

 9  any current or former university students, employees, except as

10  approved in writing by Dr. Charles.

11      Are you aware that Arash was able to have communications

12  if Dr. Charles had reviewed and approved them?

13      A.   That was my understanding.

14      Q.   Okay.  Do you know if Arash and Dr. Charles Harvey

15  were having those types of discussions about who Arash could

16  communicate with and who he couldn't communicate with?

17      A.   I believe Harvey told me that he asked permission and

18  Harvey said no.  On one occasion that's all I can recall.

19              THE COURT:  He declined permission on one

20      occasion?

21              THE WITNESS:  Yes, Your Honor.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23      Q.   I can refer you to Exhibit Forty-three.  Exhibit

24  Forty-three is in evidence.  It's emails between Arash Alaei

25  and Harvey Charles.  It says my report and communication with

1  interns.  The prior page dated June 13, 2017.  Arash

2  identifies, in addition, I just want to inform you that I need

3  to have Skype communications with various people who were

4  identified in here as part of his work and Mr. Charles responds

5  or Dr. Charles, I inquired of H.R. and waiting response in this

6  matter.

7      Were you familiar with that email as part of your review

8  of the investigation information provided by Human Resources

9  and Chantelle Cleary to you?

10     A.    I was.  I don't recall how I became informed of it.

11     Q.    Okay.  Was the investigation concerning Dr. Kamiar

12  Alaei the first investigation you participated with while at

13  SUNY Albany?

14     A.    Yes, of that nature.

15     Q.    When you say of that nature did, were you involved in

16  other types of disciplinary investigations?

17     A.    It's hard to remember because there are so many

18  faculty and students, but there could be things like, adjunct

19  professor not showing up for a class which could trigger a

20  response for me as Provost to the Dean suggesting the

21  Department Chair not permit that activity to happen, that sort

22  of routine.

23     Q.    I mean you've alluded to that a few times.  So are

24  you telling me that that is something that you dealt with at

25  Albany?

1      A.   I dealt with academic matters like this frequently at

2  Albany and previously in other jobs.

3      Q.   Okay.  Are you aware that Dr. Alaei had his card

4  access and key removed as part of his alternative assignment?

5      A.   I was.  I can't recall when.

6      Q.   Okay.  Was that normal and routine practice at -- at

7  the time?

8      A.   I believe so.

9      Q.   Okay.  Was it -- it was not a specific direction from

10  you?

11      A.   It was not.

12      Q.   Did you take any action to ensure that SUNY Albany

13  was following standard practice and U.U.P. protocol regarding

14  the investigation of Dr. Alaei and employment related decisions

15  that were being made about Dr. Alaei?

16      A.   I did not.  I relied on H.R.

17      Q.   Okay.  Are you aware of Dr. Alaei's information on

18  the G.I.H.H.R. website being removed including past -- past

19  accomplishments?

20      A.   I am.

21      Q.   As far as you're aware, was that consistent with

22  existing protocol at the time?

23      A.   Yes, it was consistent.

24      Q.   What about as to email, are you aware that Dr. Alaei

25  was prohibited from having access to his email?

Alaei v SONY - 6/8/2022

1      A.   Yes, it was.

2      Q.   Was that a violation of the U.U.P. Agreement or

3  consistent with protocol?

4      A.   I believe it was consistent with protocol.

5      Q.   And what's that belief based on?

6      A.   Conversations with people who knew, like Randy Stark

7  from H.R.

8      Q.   Okay.  Did you have any oversight over Chantelle

9  Cleary in her investigation?

10     A.   I did not.

11     Q.   Okay.  Are you -- do you recall Dr. Alaei being

12  directed not to represent him -- or excuse me, not to identify

13  himself as an employee or represent himself as being affiliated

14  with SUNY Albany, well, if engaged in outside speaking

15  engagements?

16     A.   Yes, I was.

17     Q.   And what was the basis for that?

18     A.   I believe that was standard practice.

19     Q.   Okay.  Do you recall any other specific incidents

20  where people on alternative assignments were not allowed to

21  identify themselves as affiliated with SUNY Albany or employed

22  by SUNY Albany if they're engaged in outside engagements?

23     A.   I do not.

24     Q.   Do you -- you are aware at some point interim co-

25  directors were named for G.I.H.H.R.?

1      A.   Yes, I was aware.

2      Q.   Do you know who made the decision to appoint interim

3   co-directors?

4      A.   The decision was made by the academic and hierarchy

5   to make sure that we had some oversight of the people who work

6   there underneath Harvey Charles.

7      Q.   Do you recall who made that decision?  Who ultimately

8   said this is what we are going to do?

9      A.   I believe that was my recommendation on advice from

10  Charles, Hedberg, other people involved after consultation with

11  the relevant deans who had authority over those faculty

12  members.

13     Q.   What about Harvey Charles?  Did he provide any input

14  to you?

15          THE COURT:  I think he identified Dr. Charles

16     and William Hedberg is two of the people who rely on that.

17     Is that what you said?

18          THE WITNESS:  That's correct.

19          BY MR. CASTIGLIONE:  (Cont'g.)

20     Q.   Okay.  Do you know who chose these two people to be

21  the interim directors?

22     A.   On the basis of the discussion between the people

23  named and in my consultation with the relevant deans it came

24  out.  So I think it was an academic hierarchy, conversation and

25  decision.  But obviously, I take responsibility for it.

Alaei v SONY – 6/8/2022

1    Q.   Do you know if Harvey Charles had any input on the

2  names of people being chosen for Intern Directors?

3    A.   I discussed them with him as I recall.

4    Q.   Okay.  Did the President's office have any

5  involvement with appointing Interim Directors and choosing the

6  people?

7    A.   I kept the President's office particularly through

8  Bruce Szelest involved -- apprised of everything we were doing.

9  So they -- they knew, but they left that decision to us in the

10  provost office.

11    Q.   Did the interim directors have academic titles at the

12  time?

13    A.   They did.  I forget exactly what they were.  But they

14  were appointed at the University with titles.

15    Q.   So a title being associate dean somebody had of this

16  group, something like that?

17    A.   Exactly.

18    Q.   Okay.  And you consider these interim directors as

19  being the new directors.  Is that fair to say?

20    A.   Yes.

21    Q.   And you had email communications reflecting such if I

22  can refer you to Claimant's Exhibit Seventeen in evidence.  I

23  refer you to Claimant's Seventeen that includes an email from

24  you to Bruce Szelest and others, where you're saying that you

25  just set up a meeting of the new directors Harvey and me.  Do

1  you recall this email or does it look familiar?

2       A.   It looks familiar.

3       Q.   Okay.  And why was Bruce -- why were you writing

4  Bruce about this issue, Bruce Szelest?

5       A.   Bruce was the Chief of Staff for the President.  And

6  it was the most effective way for me to keep in touch with the

7  President's office.

8       Q.   Okay.  So you were making sure that a lot of

9  communication went all the way to the top?

10      A.   That's correct.

11      Q.   Okay.  If I can refer you to Exhibit Fifty-seven.

12 This is an email in evidence between you and the pro -- Bruce

13 Stellar and others that you were forwarding on a -- a concern

14 from a student that was provided to you by Kevin Williams, you

15 can see that below.

16      A.   Right.

17      Q.   And again, you're saying I hope the new directors

18 will have helpful effect on the folks.  As to this email, why

19 are you sending out an email from Kevin Williams with -- about

20 a concern regarding Dr. Alaei and beyond?  Why are you sending

21 out to Bruce Szelest?

22      A.   As I described, the academic hierarchy worked as a

23 team.  Kevin Williams was a vice-provost and so was Bill

24 Hedberg.  So we would talk and information will -- came to my

25 attention that was relevant that I thought was significant, I

1  would force it -- forwarded on to the President's office.

2      Q.    Did you feel this issue was significant being raised

3  here?

4      A.    I thought the President's office needed to know.

5          MR. CASTIGLIONE:  Your Honor, I'd like to

6      introduce into evidence Claimant's Fifty-eight.  It was

7      introduced, I think there was an objection about being

8      admitted.  I'd like to admit it at this point based on Dr.

9      Stellar acknowledging those concerns (unintelligible)

10      forward to the President's office.  Fair?

11          THE COURT:  Fair.  Can you --?

12          MR. CASTIGLIONE:  It's fifty-eight.

13          THE COURT:  (unintelligible)

14          MR. CASTIGLIONE:  Okay.

15          THE COURT:  Are you going to object, Mr. --?

16          MR. ROTONDI:  Yes.

17          THE COURT:  Okay let me look at please.  Let's

18      go off the record for second.

19          (Off the record, 11:23:03 to 11:23:54)

20          THE MONITOR:  On the record.

21          THE COURT:  So counsel, how does -- there's been

22      an objection to the admission of this.  What's the basis

23      of the objection?

24          MR. ROTONDI:  That out-of-court statement being

25      offered for the truth of the matter asserted, and it's not

1    relevant.

2           THE COURT:  Well, I guess my question along

3    those lines was (unintelligible) how does this contradict

4    what the witness just testified to?

5           MR. ROTONDI:  This provides the specific context

6    of issues being raised of concern and whether they were

7    being dealt with by the President's office.

8           THE COURT:  I'm sorry, Mr. Castiglione I don't

9    accept that, the objection is sustained.

10          MR. CASTIGLIONE:  Your Honor, we would also say

11   this is clearly a business record, which is an exception

12   to the hearsay rule.  It was a student raising a concern

13   with one professor --.

14          THE COURT:  I'm -- I'm basing my ruling on

15   relevance.  Objection is sustained.

16          MR. CASTIGLIONE:  Relevance, it goes --.

17          THE COURT:  Stop.  That's fine, Counsel.  We've

18   heard you.

19          MR. CASTIGLIONE:  What about this part with just

20   the professor?

21          THE COURT:  The objection has been sustained.  I

22   asked counsel to set the court's ruling like it or not,

23   and then move on.

24          MR. CASTIGLIONE:  No, I understand.  We've noted

25   our objection as to the students email and also Kevin

Alaei v SONY – 6/8/2022

1        Williams' email.  Thank you, Your Honor.

2                THE COURT:  I don't appreciate speaking

3        objections.  So thank you, Counsel.

4                BY MR. CASTIGLIONE:  (Cont'g.)

5        Q.    Back to Exhibit Forty-three just to clarify

6   concerning Harvey Charles and Arash.  Back to Exhibit Forty-

7   three concerning Harvey Charles and Arash.  Do you recall

8   giving your deposition testimony on April 9, 2021?

9        A.    I do.

10       Q.    And as to this email I wrote -- or excuse me I

11  question and if I could refer you to this email dated June

12  14th, 2017.  Dr. Charles is responding to Arash and I've

13  inquired of H.R. and awaiting their advice in the matter.

14       Right is your answer.

15       Question, do you know if Dr. Charles approved this request

16  by Arash to have communication with G.I.H.H.R. interns as

17  requested?

18       I do not know was your answer.

19       Do you recall giving that testimony?

20       A.    I do.

21       Q.    When asked if you know if there would be any records

22  from H.R. approving such a request by Harvey Charles, your

23  response was I do not know.  Do you recall that?

24       A.    I do.

25       Q.    If I can refer you to Claimant's Exhibit Thirty-six.

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY – 6/8/2022

1  Claimant's Exhibit Thirty-six is an email from Bill Hedberg to

2  Dr. Alaei you're C.C.'ed on here.  Here's the document that

3  says the Provost has signed the form from Dean Harvey Charles

4  for non-renewal of your appointment.  A copy is attached

5  together with your letter dated May 8, 2018.  If I can refer

6  you to the letter dated May 8, 2018.  Did you read this letter

7  before deciding to non-renew Dr. Alaei?

8          A.   I can't remember.  But I assume I did.

9          Q.   Do you recall if you had any particular opinion about

10  issues raised in this letter in terms of quality of Dr. Alaei's

11  work and whether to renew him or not?

12          A.   Not sure I understand the question.

13          Q.   Sure.  As you're considering whether to non-renew Dr.

14  Alaei, did you consider the issues raised in this letter on the

15  merits and did they have any impact on your determination or --

16  or -- or consideration of whether to review or non-review him?

17  Excuse me, renew or non-renew him?

18          A.   Excuse me for clarifying.  But I think you're asking

19  me, did I read the letter and understand the points in it in

20  terms of making my determination or are you asking for a more

21  general assessment of --?

22          Q.   I'm asking as part of your consideration of

23  (unintelligible) but for non-renewals submitted to you this

24  letter was submitted to you.  Did you consider what was raised

25  in this letter as part of your evaluation whether to renew or

Alaei v SONY – 6/8/2022

1  not renew?

2       A.   I'm sure I did.  But I don't recall paragraph by

3  paragraph.

4       Q.   Okay.  Do you recall the fundraising issues

5  identified by Dr. Alaei at the second page about -- about three

6  point nine million?

7       A.   Yes.

8       Q.   Did you have an opinion that that was impressive

9  work?

10      A.   Yes.

11      Q.   Okay.

12      THE COURT:  Was that opinion that it was impressive work?

13      THE WITNESS:  Yes, the opinion -- my opinion was that it

14  was impressive work.

15      THE COURT:  Thank you.

16            BY MR. CASTIGLIONE:  (Cont'g.)

17      Q.   In this letter, if I can refer you to Dr. Alaei, the

18  -- the second to last paragraph.  And he says as you know,

19  there was a Memorandum of Understanding M.O.U. between the

20  Provost, me as the Director of G.I.H.H.R. and the Deans of

21  School of Public Health, School of Criminal Justice in

22  Rockefeller College in 2014 for two 2020 faculty positions for

23  G.I.H.H.R.

24      This M.O.U. has defined matrix addendum twenty-six called

25  number twenty-six G.I.H.H.R. metrics addendum 03/20/2014.

Alaei v SONY - 6/8/2022

1  Developed by Bruce Szelest and revised, finalized and approved

2  by all participants of this M.O.U. on March 20, 2014 for two

3  faculty positions.  Do you have an understanding of what Dr.

4  Alaei is referring to as to this metrics issue?

5      A.   I do.

6      Q.   Can you explain to me your understanding?

7      A.   Well, metrics are used to decide in a university

8  where to allocate faculty positions which come with a salary

9  costs.  And we had a variety of them.  Bruce Szelest was at one

10 time my Chief of Staff and we developed a fairly extensive

11 system of metrics which were intended to guide the provost

12 office decision-making.  But it wasn't the contract.

13     Q.   Do you recall when -- when Dr. Alaei was first

14 appointed or before he was appointed in 2014, did Bruce, from

15 your office, develop some sort of metrics on Dr. Alaei's

16 appointment?

17     A.   This was before I came in February, 2015.  And after

18 that, I brought Bruce Szelest in from the Research office to my

19 office to be my Chief of Staff with the idea of developing

20 these metrics.  So the dates -- this preceded that development

21 effort by us.

22     Q.   Okay.  You said you brought in Mr. Szelest.  Where

23 was he working before that, the Research Foundation?

24     A.   He was in the Research Operation of the university,

25 all universities have research enterprises operations and I

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1 thought he was doing very good work.  So I asked him to come to

2 be my Chief of Staff and the provost office and specifically to

3 work on this development of metrics by which the provost office

4 would make and communicate decisions on where to apply new

5 faculty hires as requested.

6     Q.   As to Dr. Alaei's position were there metrics

7 associated with his work and measuring his work?

8     A.   One of the reasons I bought Bruce in was to try to

9 make this metrics more visible and clear to everyone.  So one

10 of the problems with metrics in universities is sometimes they

11 aren't as clear as they should be.  So I hope that addresses

12 your question.

13     Q.   I'm saying for Dr. Alaei's employment, was there a

14 particular metric that was in place that applied to whether or

15 not you determined he was successful or not successful or

16 meeting qualified standards?

17     A.   I would say they were generally in place not as

18 specifically as I would have liked and tried to implement

19 through Bruce Szelest starting in 2015.

20     Q.   Okay.  And are you familiar with Dr. Alaei's initial

21 appointment in your role as provost over time?

22     A.   It happened before I got here, but I was aware of his

23 work and Arash's work at G.I.H.H.R.

24     Q.   Are you familiar with the concept of Evergreen?

25     A.   Yes.

Alaei v SONY - 6/8/2022

1      Q.   Okay.  Can you explain to me what your understanding

2  of that concept is?

3      A.   My understanding is that it was a way to give someone

4  a contract that was longer than the one-year that was ordinary

5  so that they could look forward to a renewal in that year for

6  the next year.

7      Q.   So in other words, if somebody had a two-year

8  appointment let's say, they had an automatic one-year, and then

9  what -- next year was included?

10     A.   So they would be evaluated.  And if the evaluation

11  was favorable, they would be offered a contract at the end of

12  their expiring contract.  Thus giving them some certainty that

13  they could continue for the period of the contract let's say

14  one year.

15     Q.   Okay.  Was it an extension of the same contract each

16  time it was reviewed and -- and approved?

17     A.   Each time the contract was reviewed there might be

18  modifications, for example, salary?

19     Q.   Okay.

20              THE COURT:  Example what?

21              THE WITNESS:  Salary.

22              BY MR. CASTIGLIONE:  (Cont'g.)

23     Q.   Okay.  Do you know if Dr. Alaei's appointment was an

24  Evergreen appointment?

25     A.   I don't recall specifically.

1      Q.   Okay.  Are you aware if the President subsequently

2  accepted your recommendation of non-renewal?

3      A.   Yes.

4      Q.   Okay.  Did the President ever explain to you why he

5  accepted the non-renewal?

6      A.   There were many conversations along the way.  So I

7  felt that we were on the same page.  So when he made the

8  decision, it wasn't necessary for him to explain it because he

9  already had.

10      Q.   Okay.  Do you recall any incidents or -- strike that.

11  Do you recall the conclusion of the investigation concerning

12  Dr. Kamiar Alaei?

13      A.   I recall as (unintelligible) Chantelle Cleary and

14  when he started explain it to me.

15      Q.   Okay.  If I can refer you to Exhibit Forty-nine.  No.

16  If I can refer you --?

17              THE COURT:  Thirty-nine?

18              MR. CASTIGLIONE:  Yes.  Thirty-nine, Your Honor.

19         Exhibit Thirty-nine in evidence.  It's an email from Randy

20         Stark to others.

21              BY MR. CASTIGLIONE:  (Cont'g.)

22      Q.   Do you recall ultimately that Dr. Stark or excuse me,

23  Mr. Stark determined there was nothing to counsel on.  And

24  there were no policy violations.

25      A.   It's what it says here.  I can't remember if I was

Alaei v SONY - 6/8/2022

1  apprised of this at the time.

2      Q.   You don't know if you've ever been advised of this

3  type of information by Human Resources?

4      A.   Well, this was a Human Resources matter.  And I was

5  on the academic side.  So I was briefed on many aspects of it,

6  but did not feel a necessary obligation to be included in the

7  data exchange.

8      Q.   Did you ultimately make your determination to support

9  nonrenewable however based on information that was provided to

10 you by Human Resources?

11     A.   I did.  And it is possible that this was provided to

12 me.  I just don't recall.

13     Q.   Referring back to Dr. Alaei's letter regarding his

14 renewal.

15             THE COURT:  You mean the letter from Dr. Alaei?

16             MR. CASTIGLIONE:  Yes.  Part of the

17     (unintelligible).

18             BY MR. CASTIGLIONE:  (Cont'g.)

19     Q.   It would be Exhibit Thirty-six.  It was this --

20 Memorandum of Understanding.  Were you ever given a copy of

21 this - this Memorandum of Understanding number twenty-six?

22     A.   I -- I don't recall.  It looks familiar.  But I may

23 have seen it later.

24     Q.   And would that memorandum have terms regarding Dr.

25 Ali -- Alaei's appointment as reflected in this paragraph?

Alaei v SONY – 6/8/2022

1       A.   It appears to have that.  I'm looking at it now.

2       Q.   But you just don't recall the Memorandum of

3   Understanding as you sit here?

4       A.   That's correct.

5       Q.   Okay.  And ultimately, do you recall that Dr. Alaei's

6   employment was terminated by SUNY?

7       A.   Yes.

8       Q.   Okay.  And did the President consult with you

9   regarding the determination to terminate Dr. Alaei's

10   employment?

11       A.   He did.

12       Q.   Did -- did he provide you any explanation about why

13   he was seeking to terminate Dr. Alaei's employment?

14       A.   As I believe I addressed earlier we had many

15   conversations as the investigation unfolded.  And so I didn't

16   need an explanation at the end because I believe I understood

17   why.

18       Q.   If I can refer you to Exhibit Forty-four in evidence.

19   This is the letter, do you recognize this as a letter

20   terminating Dr. Alaei's employment?

21       A.   Yes.

22       Q.   When you said you didn't need an explanation from the

23   President, I'd asked you beforehand if the President did

24   explain to you why he decided to terminate you said he did.

25       A.   He did in the course of discussion over a period of

Alaei v SONY - 6/8/2022

1    time.

2         Q.   So what was the reason that he gave you for

3    terminating Dr. Alaei's employment?

4         A.   That he allowed Arash to have contact with the

5    students.

6         Q.   Okay.  Do you recall any instances in your term as --

7    as provost where an employee had been subjected to a

8    disciplinary investigation, but Human Resources determined

9    there was no just-cause to impose discipline, but the employee

10   was ultimately terminated after the finding of no just cause?

11        A.   This was my first (unintelligible) as provost.

12        Q.   Okay.  Did you have more involvement in this matter

13   than others -- strike that.  Was this considered by your office

14   a more high-profile matter concerning the investigation

15   regarding Dr. Alaei?

16             THE COURT:  Than what?

17             MR. CASTIGLIONE:  Than typical matters being

18        investigated by SUNY?

19             THE WITNESS:  It's hard to say the G.I.H.H.R.

20        has done good work.  There was a history here I was aware

21        of with Arash.  So there was a lot of reasons for us to

22        try to manage this process well, given the circumstances.

23        I guess that amounts to yes.

24             BY MR. CASTIGLIONE:  (Cont'g.)

25        Q.   And if I could just refer you to your deposition.

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY - 6/8/2022

81

1  When I asked you would you characterize your involvement in

2  this disciplinary investigation concerning Dr. Alaei as unusual

3  as compared to other disciplinary investigations during your

4  time, you said I would say yes because it was high-profile and

5  therefore, I was a bit more involved than I would have been in

6  other activities like that.  Do you recall?

7       A.   Yes.  That's what I believe I said.

8       Q.   Can I ask you while your time at SUNY Albany as

9  Provost can you explain to me the process for having the Office

10 of State Comptroller review and approve appointment letters for

11 faculty or contracts for faculty or employees?

12      A.   This is outside of my expertise which we would rely

13 on H.R. for that.  So I don't really have much experience with

14 the State Comptroller.

15      Q.   So you -- you would rely on whatever the process H.R.

16 had followed for such matters?

17      A.   I would and that would happen sometimes in

18 communication between the people who worked for me and the

19 people who worked for Randy Stark.

20      Q.   Okay.  And just for the record, were you the

21 temporary President at U Albany in 2017?

22      A.   I was temporary President interim for one year.  Yes.

23      Q.   Okay.

24           MR. CASTIGLIONE:  No other questions.

25           THE COURT:  Thank you.  Cross-examination?

**Associated Reporters Int'l., Inc.   518-465-8029**

Alaei v SONY – 6/8/2022

1                    MR. ROTONDI:  No questions, Your Honor.

2                    THE COURT:  Okay no cross.  Please put your mask

3          on before you take shield off.

4                    THE WITNESS:  Certainly.

5                    THE COURT:  You can throw the shield into the

6          waste bin next to you, sir.  Thank you, Dr. Stellar you're

7          free to go.

8                    THE WITNESS:  Thank you.

9                    THE COURT:  Mr. Castiglione any additional

10         witnesses to this claim that you wish to call?

11                   MR. CASTIGLIONE:  No further witnesses at this

12         time, Your Honor.

13                   THE COURT:  And you rest?

14                   MR. CASTIGLIONE:  And we rest our case.

15                   THE COURT:  Any applications or (unintelligible)

16         directed verdict (unintelligible).

17                   MR. CASTIGLIONE:  I'll hold off, your Honor.

18                   APPLICATION

19                   MR. ROTONDI:  This issue is going to be brief.

20         I -- I -- I do have a brief application.  I'm going to

21         make a motion -- motion to dismiss on two grounds, failure

22         to state a cause of action as well as failure to meet

23         burden of proof.  First in reading -- reviewing the claim,

24         there's -- I see three causes of action.

25                    There's two instances where defamation is pled

1    with specificity.  There is negligent infliction of

2    emotional distress and breach of contract.  On the

3    defamation there's been no evidence.  The defamation

4    involves an email.  Harvey Charles, the Board of Advisors

5    at the Global Institute, as well as the email from Stellar

6    to the same recipients regarding leadership changes at the

7    Global Institute.

8           There has been no evidence that the information

9    contained in those emails is false which is necessary for

10   defamation.  And if it is defamation by implication the

11   language in the communication has to be reasonably read to

12   impart a defamatory inference and that inference was

13   intended.  I don't think there's been any evidence that

14   anyone here intended any defamatory inference in those two

15   emails.

16          Any other allegations of defamation I do not

17   believe are pled with specificity pursuant to C.P.L.R. and

18   Court of Claims Act.  So what that leaves us, (clearing

19   throat) excuse me, what that leaves us with is the

20   standard of you can't employ an intern leadership and if

21   you do, you can't tell anyone.  I think that's an

22   impossible standard.

23          With regard to the breach of contract just break

24   it up into two ways.  With regard to the breach of the

25   U.U.P. contract, Claimant testified he was a member of a

1    Collective Bargaining Unit.  An employee cannot sue their

2    employer for a breach of contract if there's a grievance

3    procedure in the collective bargaining agreements.  That

4    grievance process is the remedy claimant has.

5         So the items that are contained at the very

6    least in the -- the -- the grievances brought, if that is

7    the basis for the breach of contract under the U.U.P.,

8    it's not actionable.  As for the alleged breach of

9    contract that pertains to the appointment letter, I know

10   we've been talking about that -- that particular language

11   which you're going to interpret.

12        If that appointment letter is a contract and

13   that specific allegation that the language requires two-

14   years notice, it's not a part of the collective bargaining

15   agreement.  It can't be because we have the collective

16   bargaining agreement and there's no provision that was

17   negotiated for, for a two-year notice requirements.

18        So it's not -- it's not covered under the U.U.P.

19   it's not part of the U.U.P. contract.  If it's not part of

20   the U.P.P. contracts it falls under State Finance Law 112

21   which states that a contract for greater than fifty

22   thousand dollars has to be approved by the State

23   Comptroller's Office.  And the case law shows that has to

24   be pled and proven that it was -- that it was approved by

25   the Comptroller's Office.  Negligent infliction of

1    emotional distress the doctor testified that that began

2    while he was still employed by --.

3         THE COURT:  I'm sorry I didn't hear what you

4    said.

5         MR. ROTONDI:  I'm sorry, the negligent

6    infliction of emotional distress claim the Doctor claimed

7    that started while he was still employed with SUNY.  And

8    if it's based on negligence, his exclusive remedy is

9    workers' compensation.  Which was pled as an affirmative

10   defense in the answer.  That's all I have, Your Honor.

11   Thank you.

12        THE COURT:  All right.  If you want to briefly

13   orally oppose --.

14        MR. CASTIGLIONE:  Sure.  We certainly oppose

15   that, Your Honor.

16        THE COURT:  It's not obligatory, but if you'd

17   like to speak, you may.

18        MR. CASTIGLIONE:  Yeah, I just like to speak.  I

19   think those are substantive arguments that are appropriate

20   for post-trial memo of law that there's no legal issues

21   have been addressed.  There's no briefing, for example --.

22        THE COURT:  That's fine, that's fine.  I mean --

23   I mean, I think for strategic and important legal reasons

24   Defendants often make post-evidentiary -- post-claim

25   evidentiary motions just to preserve the rights, of

1    course.  And the Court will always -- always reserve in

2    any event.  I'm just giving you the opportunity to orally

3    advocate today.  Now, if you wish, if not, that's fine.

4         MR. CASTIGLIONE:  I'll just be short in terms of

5    the contract, my party is a third-part -- excuse me, my

6    client is a third-party beneficiary of the U.U.P.

7    Agreement.  He pursued remedies with the State.  They

8    dropped his grievances.  The Union dropped his grievances.

9    The Union owned his grievance, he has -- I mean, they're

10   basically saying you have no standing to assert a

11   violation if your Union decides not to pursue a grievance

12   because you've been wrongfully terminated.

13        We think he has a third-party beneficiary breach

14   of that agreement such as loss of email caused him

15   damages.  It's clear there were violations of this

16   agreement as admitted by the witnesses.  We think this is

17   for defamation.  It isn't just that the statement has to

18   be untrue.  The standard for defamation per se, slander

19   per se, whether words of the complaint (unintelligible)

20   constitute a libel per se or libel per quad is for the

21   Court to decide.  You have to decide them in context.

22        But any statements that are made that would tend

23   to injure a party's trade, occupation or business are per

24   se defamatory.  And so telling people statements that SUNY

25   took action and those actions violated my client's rights

1    conveys in the entire context that they were just -- they

2    were implying to the world, they had just cause to do what

3    they did.  And they had just cause to remove him and

4    appoint directors and terminate him and all of that.

5            But we think these are issues appropriate for

6    legal brief including specifically a State Finance Law

7    which specifically says any agreement, you know, over

8    fifty thousand or more except those negotiated under a

9    Collective Bargaining Unit.  And there's a whole ambit of

10   law on that under the civil service law about how these

11   appointment letters even the U.U.P. itself says there's

12   got to be an appointment letter first.  Then you get into

13   the Union as explained by Mr. Selchick yesterday.

14           People get appointment letters first then they

15   go into the Union then they're covered.  We don't think

16   there's an exclusion under State Finance Law here.  But

17   otherwise, we would object generally and say these are

18   appropriate for post-trial briefing rather than a -- a

19   motion at this point.

20           THE COURT:  And the Court is going to reserve on

21   the application.  And -- and the Court will address the

22   parties and perhaps we'll do it on the record.  The Court

23   had many of these same thoughts regarding direction to

24   counsel on post-trial briefing which we will take up in

25   due course that the Court reserves.

Alaei v SONY – 6/8/2022

1           Mr. Rotondi, did defendant wish to call any

2     witnesses?

3           MR. ROTONDI:  It does not, Your Honor.

4           THE COURT:  The Defendant rests?

5           MR. ROTONDI:  I do would -- I would like to

6     admit one more piece of evidence.

7           THE COURT:  What is it, sir?

8           MR. ROTONDI:  Which would be Defendant's Exhibit

9     L.  Can I address counsel quickly?  Joe, are you going to

10    --?

11          MR. CASTIGLIONE:  I have no problem with it.

12          THE COURT:  What is it?

13          MR. ROTONDI:  I was just curious if you're going

14    to put now or just in the post-trial brief the notice to

15    admit?

16          THE COURT:  If you want to --

17          MR. CASTIGLIONE:  (unintelligible).

18          MR. ROTONDI:  -- yeah.  Do you want to stipulate

19    in just saying they're part of the evidence and we'll

20    submit them to the Court by separate letter the notice to

21    admit?

22          THE COURT:  You want to make these admitted

23    exhibits?

24          MR. ROTONDI:  So we hadn't noticed

25    (unintelligible) wasn't responded they admitted default.

Alaei v SONY - 6/8/2022

1    Included with that was the recording of a meeting on

2    February 9 that he's now looking to get in.

3          THE COURT:  And again just to refresh me why is

4    it important for the Court to hear the recording?

5          MR. ROTONDI:  Because I want the Court to hear

6    the statements that are in notice to admit it in context.

7          THE COURT:  Okay.  How long is the recording?

8          MR. ROTONDI:  It's an hour.

9          THE COURT:  It's an hour?

10          MR. ROTONDI:  Yes.

11          THE COURT:  Okay.  So why don't we mark the

12    notice to admit as Sixty-eight?  No objections with

13    admission?

14          MR. CASTIGLIONE:  No.

15          MR. ROTONDI:  Because that -- yeah, that would

16    be as part of an attachment to Sixty-eight so.

17          THE COURT:  Oh, yes.

18          MR. ROTONDI:  (unintelligible)

19          THE COURT:  Fair enough.  So the actual written

20    document notice to admit with an attached thumb drive --

21          MR. ROTONDI:  Yeah.

22          THE COURT:  -- is admitted as -- without

23    objection as counsel's -- Claimant Sixty-eight.

24          MR. CASTIGLIONE:  Do you want to send in the

25    notice to admit with that so it's -- I mean you --

**Associated Reporters Int'l., Inc.    518-465-8029**

Alaei v SONY - 6/8/2022

 1           THE COURT:  I want to mark -- I want us to take

 2      physical possession of these things.

 3           MR. ROTONDI:  Okay.

 4           MR. CASTIGLIONE:  You can have my --.

 5           THE MONITOR:  Hold on a second.

 6           MR. ROTONDI:  Sorry.  Let me see if I brought it

 7      up.  Your Honor, I could go back down on the office and I

 8      can bring the original up.

 9           THE COURT:  Was that?

10           MR. ROTONDI:  A notice to admit.

11           THE COURT:  All right.  Well, I'm much pro

12      tuncing, we're going to conclude our business today and

13      then you -- you clean up and you deal with Mr. Graziano.

14      But Sixty-eight is the written notice to admit and the

15      defendant thumb drive without objection.

16           That having been said, Mr. Rotondi, does the

17      Defendant rest?

18           MR. ROTONDI:  It does, Your Honor.

19           THE COURT:  Defendant rest.  Want to renew?

20           MR. ROTONDI:  Yes.

21           THE COURT:  Then it renews its post claimant's

22      application.  The Court reserves.

23           All right so I was going to address Counsel in

24      chambers.  Let's just go off the record.  No, just stay on

25      record, that's fine.

Alaei v SONY - 6/8/2022

1              Okay.  In response to your question as to why we

2        had the close proceedings discussions in chambers

3        yesterday.  And I guess not to put too fine a point on it.

4              It's the Court -- if the Court thought that

5        those discussions could prompt the parties to consider

6        whether or not they wanted to pursue settlement.  So

7        within the confines of making observations known to the

8        parties, the (unintelligible) occurred to me that you

9        folks might want to revisit each other irrespective of

10       what happened to (unintelligible).

11             MR. ROTONDI:  Thank you.  And I hope I didn't

12       sound rude in chambers by --.

13             THE COURT:  No, I, you know, I -- I -- I'm

14       usually pretty direct.  And I thought about I said, well,

15       why don't I just say what we were thinking.  And so I was

16       thinking maybe I could see if the parties were interested

17       in pursuing settlement.

18             MR. ROTONDI:  Thank you.

19             THE COURT:  I assume you took that from the

20       conversations.

21             MR. ROTONDI:  I did, but frankly, usually a bit

22       more direct.

23             THE COURT:  Yes, as you have always been.  All

24       right so on the post-trial briefing I'd like you to take

25       notes about what I'm about to say because -- and I'm going

Alaei v SONY – 6/8/2022

1    to be repeating a lot that we've already said.  I think

2    it's important for the parties to hit following points in

3    their post-trial admission.

4            Did the alternative assignment invitation amount

5    to discipline under -- in violation of the Collective

6    Bargaining Agreement.  And I won't go ad nauseam, but

7    we're talking about the restrictive email.  We're talking

8    about the website information and the key and access to

9    campus type of things.  Did that -- did those limitations

10    as conditions of his alternative assignment violate the

11    C.B.A.  Because they were said in another way discipline.

12            And as -- as an added question to that and if

13    the Court were so confined and I said it yesterday so what

14    the question is, you know, what remedy does the Court of

15    Claims have or is it empowered to provide even if the

16    Court concludes it was improper discipline under the

17    C.B.A.

18            Okay next topic.  I -- I would think it would be

19    a waste of time, money and resources to brief intentional

20    infliction of emotional distress.  I think that would be

21    time not well spent.

22            MR. ROTONDI:  Intentional?

23            THE COURT:  Correct.

24            MR. ROTONDI:  Yes.

25            THE COURT:  Next, I would expect the parties to

1    brief negligent infliction of emotional distress.  And

2    again, a lot of this is repetitive.

3              Next of course, I would want the parties to

4    brief defamation.  And next on the contract issue, I would

5    like the parties to brief why they believe the contract

6    should be interpreted to essentially only obligates the

7    Defendant to give a one-year notice and extension of

8    employment versus the Claimant's position that it should

9    be interpreted to mean two or more years of continued

10   employment.

11             So that would be actual contract interpretation

12   related there to Mr. Rotondi both in chambers and on the

13   record here today talked about whatever that

14   interpretation is, irrespective of what that

15   interpretation is, the Court would under Section 112 of

16   the Finance Law, be required to find that the contract was

17   not lawful, for lack of a better term.

18             Now, just to give me a little bit more.  I know

19   you've referenced it, Mr. Castiglione.  Why -- why would

20   this contract -- very briefly.  Why would this contract

21   not be lawful under 112?

22             MR. CASTIGLIONE:  So under 112, it talks about

23   --

24             THE COURT:  Why would it be lawful

25   notwithstanding 112?

Alaei v SONY - 6/8/2022

1          MR. CASTIGLIONE:  Sure.  112 is limited in

2     application.  It says it's only applied to contracts of

3     the State over fifty thousand dollars but there's an

4     exclusion.  And the exclusion is if there's contracts that

5     were collectively bargained and I just have my --.

6          THE COURT:  This is --- this is language in 112?

7          MR. CASTIGLIONE:  Yes.

8          THE COURT:  Okay.

9          MR. CASTIGLIONE:  So the language in 112 says,

10    except that any agreement or contract negotiated pursuant

11    to Article 14 of the Civil Service Law shall not be

12    subject to the requirements of this section or chapter and

13    shall become effective and binding in accordance with the

14    provisions of said Article 14; where Article 14 of the

15    Civil Service Law deals with state negotiating contracts

16    with employees having organized representative --

17    representation like U.U.P. that says the legislature

18    declares the public policy of the State and purpose of

19    this act to promote harmonious cooperation and whatnot

20    says these policies are best effectuated by granting to

21    public employees the right of organization and

22    representation requiring the State, local and other

23    political subdivisions to negotiate with and enter into

24    written agreements with employee organizations

25    representing public --.

Alaei v SONY - 6/8/2022

95

1          THE COURT:  Okay that's -- that's -- now, if I

2     understood you correctly Mr. Rotondi your position on

3     that, the Defendant's position on that was this person,

4     the Claimant's contract was not collectively -- the

5     appointment letter was not collectively bargained?

6          MR. ROTONDI:  (unintelligible).

7          THE COURT:  I'm sorry.

8          MR. ROTONDI:  Yes, a part of the agreement,

9     correct.

10          THE COURT:  Okay.  That's fine.  All right.

11     That was it.  I mean, and as I said --.

12          MR. CASTIGLIONE:  Your Honor, just quickly, the

13     U.U.P. has the process for appointments.  So the U.U.P.

14     said, Okay, well, we're collective bargaining.  Here's the

15     process we're dealing with SUNY.  This is how we do it.

16     Article 30 --.

17          THE COURT:  Save -- save it for the written.

18          MR. CASTIGLIONE:  Sure.  Okay.

19          THE COURT:  Save it for the written submissions,

20     please.  Then I'll have it in front of me and I'll

21     actually go read the (unintelligible).  Any other -- I

22     can't imagine, but I'll -- I'll -- before we close

23     business today.  Are there any other matters that you

24     think the Court would wish you before -- you would wish to

25     brief, anything we've collectively missed that you think,

**Associated Reporters Int'l., Inc.    518-465-8029**

1    sir?

2              MR. CASTIGLIONE:  As part of the claim there was

3    a wrongful termination kind of an alternative to breach of

4    contract so if there was no breach it was wrongful

5    termination.  We will just add language about that.

6              THE COURT:  Okay.  Mr. Rotondi, any add-on?

7              MR. ROTONDI:  No, Your Honor.

8              THE COURT: All right.  Well, Doctor, let me make

9    this observation.  I can't imagine, and the same goes for

10   Mr. Rotondi.  I can't -- this was a claim unusual in the

11   Court's experience and different which is always

12   interesting.  It has a lot of moving parts, this claim.

13   It's obviously a significant claim both to the Claimant

14   and to the Defendant.  I can't imagine the amount of work

15   that went into this both on the Claimant's part and on the

16   Defendant's part.

17              And unfortunately, their work is largely

18   concluded and the Court's will be beginning.  Theirs is

19   not concluded because they have post-trial briefing to do.

20   But I just want to observe that the lawyers have done an

21   incredible amount of work and they've acted professionally

22   and collegiately at all times.  And I always appreciate

23   that.  And irrespective of what the outcome is, Dr. Alaei

24   and I'm not suggesting it's going to be one way or the

25   other the lawyers have well represented you.

Alaei v SONY – 6/8/2022

1          Similarly, Mr. Rotondi always does fine

2     professional work for defendants.  And I just would like

3     to commend both parties for the amount of work they've

4     done and the quality of the work they've done.  So let me

5     make that -- make that clear.

6          So I want to establish a briefing scheduled at

7     this time.  I assume a transcript is going to be ordered.

8          MR. ROTONDI:  Yes, I spoke to Mr. Castiglione

9     about --

10         THE COURT:  (unintelligible)

11         MR. ROTONDI:  -- (unintelligible) splitting the

12    cost.

13         THE COURT:  I'm going to give a full three-

14    months for the production of the transcript.  So today is

15    June what June 8, July, August, September.  So this is a

16    target date.  And if it comes in sooner, share it with

17    each other and get a copy to the Court.  But I'm going to

18    just establish for subsequent briefing purposes the target

19    date of September 12 for the receipt of the transcript.

20         And Mr. Rotondi, I -- I do (unintelligible)

21    procedures here and there.  But in this case, I -- I think

22    given that the burden of proof resides with the Claimant

23    I'm going to give them the last bite of the apple.  So

24    we're not going to have simultaneous submissions.  Will

25    two months thereafter give you sufficient time?  October,

1    November.

2              MR. ROTONDI:  Could we push that -- that a

3    little bit more?  I think I'm going to be away.

4              THE COURT:  That's fine.

5              MR. ROTONDI:  My anniversary.

6              THE COURT:  September, October, November.  I'm

7    going to indicate then, sir.  I would like the Defendant's

8    brief by Friday, December 2nd so you don't have to work

9    the weekend.  All right, Friday, December 2nd so that's --

10             MR. ROTONDI:  Thank you, Judge.

11             THE COURT:  -- almost three months.  I'm going

12   to give you the same amount of time if that's --.

13             MR. CASTIGLIONE:  If I need less time I'll just

14   submit it.

15             THE COURT:  That's fine.  So December, January,

16   February and March.  Looking at my calendar.  Okay Friday,

17   February 24th for Claimant's brief.  February 24, '23.  So

18   Doctor just to manage your expectations.  If this is fully

19   briefed by late February I'll give myself two to three

20   months to write a decision.  You'll be getting a written

21   decision on this case absent settlement which I wouldn't

22   discourage the parties from doing.  After that you'll be

23   getting a decision on this case in about a year's time.

24   Okay, that's how long it will take.

25             DR. ALAEI:  (unintelligible)

Alaei v SONY – 6/8/2022

```
1              THE COURT:  I mean, talk to your attorney, sir.

2              MR. ROTONDI:  My client is just wanting to raise

3       his concern with the length of the schedule based on harm

4       he's suffering all along with loss and whatnot.

5              THE COURT:  I -- I understand that but please

6       advised your client that this is a matter of some

7       significance and depth and weight and it's going to take

8       that long.  Anything else from you, Mr. Castiglione?

9              MR. CASTIGLIONE:  No, Your Honor.

10             THE COURT:  Mr. Sommer, anything from you?

11             MR. SOMMER:  No, Your Honor.

12             THE COURT:  Mr. Rotondi?

13             MR. ROTONDI:  No, Your Honor.

14             THE COURT:  And Ms. --

15             MS. MALESZWESKI:  Maleszweski.

16             THE COURT:  -- Maleszweski?

17             MS. MALESZWESKI:  Maleszweski

18             THE COURT:  Well I got it.  I remember the

19      second time.  Maleszweski.  Thank you all.  That concludes

20      this trial.  Thank you for your time.  Go in peace.  Thank

21      you.

22             MR. CASTIGLIONE:  Thank you, Your Honor.

23             (The trial concluded at 12:10 p.m.)

24

25
```

Alaei v SONY – 6/8/2022

1                      CERTIFICATION

2  I, Hannah Allen, certify that the foregoing transcript of

3  proceedings in the State of New York, Court of Claims, Kamiar

4  Alaei v SONY, Claim #132554, was prepared using digital

5  transcription equipment and is a true and accurate record of the

6  proceedings to the best of our skill and ability.

7  _____ / DATED:  8/1/2022
   Hannah Allen, Transcriptionist
8  Associated Reporters Int'l., Inc.
   10 River Drive
9  Massena, New York 13662

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 1

## A

**A.A.G** 1:13
**a.m** 1:6 5:1
**ability** 100:6
**able** 21:15,21 26:1 37:16 38:9
  60:7 62:11
**abreast** 15:13 17:20 27:25
**absence** 35:12
**absent** 98:21
**academic** 7:13,23 13:12 29:25
  44:2,3,20,22 46:11,22 47:24
  48:15 64:1 66:4,24 67:11
  68:22 78:5
**accept** 49:14 70:9
**accepted** 49:16 50:21 77:2,5
**access** 15:4 16:1,2,8,8 20:17,25
  21:6,9,9,20 22:8 23:8,11,18
  24:13,24 26:17 64:4,25 92:8
**accomplishments** 64:19
**account** 20:17
**accurate** 100:5
**acknowledging** 69:9
**act** 83:18 94:19
**acted** 96:21
**action** 24:17,18 35:13 55:15
  64:12 82:22,24 86:25
**actionable** 84:8
**actions** 15:17 16:18 40:20 86:25
**activities** 81:6
**activity** 63:21
**actual** 37:17 46:24 89:19 93:11
**ad** 92:6
**add** 96:5
**add-on** 96:6
**added** 92:12
**addendum** 73:24,25
**addition** 63:2
**additional** 82:9
**address** 5:15 21:15 87:21 88:9
  90:23
**addressed** 6:15 11:17 50:1 79:14
  85:21
**addresses** 75:11
**adhere** 23:2
**adjunct** 63:18
**Administration** 7:13 36:24
**administrative** 21:24 30:4
**admission** 69:22 89:13 92:3
**admit** 69:8 88:6,15,21 89:6,12

89:20,25 90:10,14
**admitted** 59:3 69:8 86:16 88:22
  88:25 89:22
**Advancement** 7:13
**advice** 48:2 66:9 71:13
**advise** 23:23 54:5 60:23
**advised** 9:18 10:10 24:24 28:3
  78:2 99:6
**Advisors** 83:4
**advisory** 17:8,16
**advocate** 86:3
**advocating** 55:9
**Affairs** 7:12,13 13:13 29:25
**affiliated** 25:16 65:13,21
**affiliation** 37:2
**affirmative** 85:9
**ago** 49:6
**agree** 20:23 22:3,6 59:17
**agreed** 22:8 25:1
**agreement** 2:15 13:22,23 14:6,6
  14:18,23 15:24 16:16 21:20
  23:7,12,15 24:12,13,14,15
  26:17 30:2,3 38:17 44:7,10,13
  58:21,23 59:12 60:1 61:18
  65:2 84:15,16 86:7,14,16 87:7
  92:6 94:10 95:8
**agreements** 84:3 94:24
**ahead** 57:2
**al** 5:7
**Alaei** 1:3 2:11,13,13,14,18 4:2
  5:6,9 9:25 10:10 11:9,23 12:1
  13:11 14:19,24 15:5,18,22
  16:1,19 18:25 19:1,16 20:17
  25:10,15 27:6 28:9,12 29:5,20
  30:7,18 31:22,23 32:1,12,15
  33:3,9,11,15 35:16,18,22
  36:15 37:16 47:21 48:11 49:15
  50:19 51:3,10 54:16,20 55:6
  57:5,5 58:8,9,22 59:12,25
  60:1,7,23 61:18,25 62:5,24
  63:12 64:3,14,15,24 65:11
  68:20 72:2,7,14 73:5,17 74:4
  74:13 77:12 78:15 80:15 81:2
  96:23 98:25 100:4
**Alaei's** 11:14 13:1,2,10,14 15:3
  16:8 20:2 21:1,3,20 28:18
  31:25 34:7 36:22 37:5 38:21
  39:7 50:10 52:24 53:9,19,25
  54:13,23 55:10 64:17 72:10
  74:15 75:6,13,20 76:23 78:13

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

78:25 79:5,9,13,20 80:3
**Alaei's** 29:18
**Albany** 1:8,14 3:14 4:1 5:5 6:24
  7:2,8,9,18 8:2,13,16,18 9:6
  9:25 14:17 15:17 16:2,19
  20:12 25:15,16 26:3 27:20
  28:16 29:4 31:23 34:18,25
  39:12,12,17,20,20,22 40:19,20
  41:5 43:22 45:2 58:8 59:13
  60:2,8,12,18 61:18 63:13,25
  64:2,12 65:14,21,22 81:8,21
**Albany's** 40:6
**Ali** 78:25
**allegation** 61:10 84:13
**allegations** 12:18,21 56:13
  83:16
**alleged** 55:19 58:21,22 61:15
  84:8
**Allen** 1:22 100:2,7
**allocate** 74:8
**allow** 41:12 57:5
**allowed** 38:1 56:13 65:20 80:4
**alluded** 63:23
**alternate** 2:19 28:24 29:7 45:20
**alternative** 10:9,25 11:1 19:20
  21:1 24:16,16 25:17,24,25
  28:13,16 30:12,18 31:13,16,18
  31:19 35:15 56:24,25 58:14
  62:6 64:4 65:20 92:4,10 96:3
**AMANDA** 1:14
**ambit** 87:9
**amount** 92:4 96:14,21 97:3 98:12
**amounts** 80:23
**amplify** 43:10
**anniversary** 98:5
**answer** 12:7,10 16:21 25:5 26:4
  32:21 71:14,18 85:10
**answered** 24:5
**ANTHONY** 1:13
**anybody** 39:6 40:15 56:21 60:8
  60:10
**apologize** 49:20
**APPEARANCES** 1:11
**appears** 19:1,14 49:22 79:1
**apple** 97:23
**application** 82:18,20 87:21
  90:22 94:2
**applications** 82:15
**applied** 75:14 94:2
**applies** 9:15

**apply** 75:4
**appoint** 37:19 66:2 87:4
**appointed** 8:10 67:14 74:14,14
**appointing** 7:25 8:1 67:5
**appointment** 3:19,23 4:10 8:6,8
  13:1,15 20:3 36:11,15,22,23
  37:5,6,18,23 38:7,7,11,12
  40:21 41:3 50:20 51:12 54:13
  54:24 72:4 74:16 75:21 76:8
  76:23,24 78:25 81:10 84:9,12
  87:11,12,14 95:5
**appointments** 36:25 37:2,25 40:3
  40:6 95:13
**appreciate** 71:2 96:22
**apprised** 67:8 78:1
**approached** 20:13
**appropriate** 85:19 87:5,18
**approval** 44:4
**approve** 25:2 81:10
**approved** 18:7 40:16,22 41:15
  59:22 62:10,12 71:15 74:1
  76:16 84:22,24
**approving** 71:22
**Appt** 2:11
**April** 2:17 10:18 36:14,15 54:9
  71:8
**Arash** 4:1 56:19,21,24 57:5,13
  58:8,9,22 59:12 60:1 61:18
  62:5,11,14,15,24 63:1 71:6,7
  71:12,16 80:4,21
**Arash's** 75:23
**areas** 23:3
**arguments** 85:19
**Article** 94:11,14,14 95:16
**asked** 12:5,16 22:4 24:5 30:6
  53:4,24 54:12 62:17 70:22
  71:21 75:1 79:23 81:1
**asking** 19:2 26:21,23 47:6 48:20
  56:6 72:18,20,22
**aspects** 78:5
**assert** 86:10
**asserted** 69:25
**assessment** 72:21
**assigned** 11:4
**assignment** 2:19 10:10,25 19:20
  24:16,16 25:17 26:1 28:16,24
  29:7 30:12,18 35:15 45:21
  56:24 57:1 58:14 62:6 64:4
  92:4,10
**assignments** 11:1 21:1 25:24

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 534 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 3

28:14 31:14,17,18,20 65:20
**associate** 7:21 36:23 37:17 38:2
38:3,8,9,10,10,13,19 39:8,9
53:15 59:23 67:15
**associated** 1:22 17:9 44:3 57:14
75:7 100:8
**assume** 28:21 35:14 72:8 91:19
97:7
**assure** 14:16
**attached** 50:19 51:1 72:4 89:20
**attachment** 49:25 89:16
**attend** 26:1
**attention** 68:25
**attorney** 1:14 99:1
**atypical** 21:5
**August** 37:8 97:15
**authority** 7:25 8:1 66:11
**automatic** 76:8
**available** 48:20
**await** 17:6
**awaiting** 71:13
**aware** 15:16 16:1,5 19:25 28:18
36:21,22 59:24 62:11 64:3,17
64:21,24 65:24 66:1 75:22
77:1 80:20

---
**B**

**B** 2:7 4:5
**b/t** 2:15
**back** 7:5 35:8 52:18 71:5,6
78:13 90:7
**backwards** 18:13
**bargained** 94:5 95:5
**bargaining** 84:1,3,14,16 87:9
92:6 95:14
**based** 16:10 32:25 54:16 55:3,13
56:16 57:9 58:21 61:15,24
65:5 69:8 78:9 85:8 99:3
**basically** 44:11 86:10
**basing** 70:14
**basis** 9:10 22:24 24:8 26:17,19
47:10,13 49:2 50:4 52:22 56:1
56:8 61:2 65:17 66:22 69:22
84:7
**basket** 42:6
**began** 85:1
**beginning** 96:18
**belief** 65:5
**believe** 16:4 17:7 25:19 33:12
33:21 36:18 38:3 46:11 48:9

49:6,10,11 50:11 62:17 64:8
65:4,18 66:9 79:14,16 81:7
83:17 93:5
**believed** 50:9
**believes** 52:14
**beneficiary** 86:6,13
**benefit** 11:4
**best** 59:16 94:20 100:6
**better** 19:20 93:17
**beyond** 19:17 68:20
**Bill** 48:10,18,23 49:24 68:23
72:1
**bin** 82:6
**binding** 94:13
**bit** 81:5 91:21 93:18 98:3
**bite** 97:23
**board** 2:16 8:4,11,14 17:8,16
83:4
**bottom** 35:9 62:7
**bought** 75:8
**breach** 60:17 61:16 83:2,23,24
84:2,7,8 86:13 96:3,4
**break** 83:23
**Brian** 28:7
**brief** 20:14 82:19,20 87:6 88:14
92:19 93:1,4,5 95:25 98:8,17
**briefed** 20:14 78:5 98:19
**briefing** 85:21 87:18,24 91:24
96:19 97:6,18
**briefly** 85:12 93:20
**bring** 5:14 90:8
**brother** 56:14 58:24 60:7,11,24
61:17 62:1
**brother's** 56:16 60:18
**brought** 35:21 36:1,3,4 74:18,22
84:6 90:6
**Bruce** 15:7,8 16:9,9,12,13,14,21
17:5,19 19:18 28:1 30:15
47:17 60:20 67:8,24 68:3,4,4
68:5,12,21 74:1,9,14,18 75:8
75:19
**bullet** 46:7
**burden** 82:23 97:22
**business** 70:11 86:23 90:12
95:23
**buyout** 32:12

---
**C**

**C** 4:5
**C.B.A** 92:11,17

800.523.7887                6-8-2022, WORD INDEX, Alaei case                Associated Reporters Int'l., Inc.

Page 4

**C.C** 72:2
**C.C.'ed** 51:10
**C.E.O** 7:10
**C.P.L.R** 83:17
**calendar** 98:16
**call** 5:10 42:15 82:10 88:1
**called** 73:24
**calls** 5:12 26:20 42:16
**campus** 27:1 39:17 92:9
**can't** 95:22
**candidates** 8:14
**Capitol** 1:8
**card** 16:2,8 59:19 64:3
**case** 7:19 8:2 11:19 16:14 19:9
  20:5,22 22:7,15 28:25 29:2,15
  51:7 82:14 84:23 97:21 98:21
  98:23
**cases** 9:19 20:8
**Castiglione** 1:11 2:3,4 5:10,12
  5:18 6:6,18,19 9:2,3 10:3,6
  13:6,7 14:8,10,14 15:20,25
  17:24 18:2,5,8,12,15,18 21:14
  21:18 22:21,22 23:5,10 24:1,9
  24:22 26:21,25 27:3,14 32:10
  32:18 33:2,6 35:4,7 36:7,10
  36:12 39:5 41:2,14 42:8,11,15
  42:16 43:13,14,15 46:8 47:8
  51:19,22 52:11,17 53:4,7 54:4
  54:8 56:4,7 57:3,18,20,24
  58:1,5,13,16,19 59:4,6,9
  61:14,21,22 62:22 66:19 69:5
  69:12,14 70:8,10,16,19,24
  71:4 73:16 76:22 77:18,21
  78:16,18 80:17,24 81:24 82:9
  82:11,14,17 85:14,18 86:4
  88:11,17 89:14,24 90:4 93:19
  93:22 94:1,7,9 95:12,18 96:2
  97:8 98:13 99:8,9,22
**cause** 80:10 82:22 87:2,3
**caused** 86:14
**causes** 82:24
**causing** 60:17
**CBA** 4:9
**Center** 27:13
**centers** 34:24
**certain** 35:19
**certainly** 30:8 82:4 85:14
**certainty** 76:12
**CERTIFICATION** 100:1
**Certified** 2:17

**certify** 100:2
**chain** 2:20 18:21 20:1
**Chair** 7:21 63:21
**chambers** 90:24 91:2,12 93:12
**chancellor** 2:14 8:3,6,15
**change** 51:2
**changes** 29:1 83:6
**changing** 19:2 34:14
**Chantelle** 45:1,4 46:3,6,12,23
  53:21 55:1,14 60:20 63:9 65:8
  77:13
**chapter** 94:12
**characterize** 58:3 81:1
**Charles** 17:1,4 27:5,11 38:22
  46:3,7,9,12 48:18 49:8,17,22
  49:23 50:8 51:5,10,12 52:13
  52:19 53:1,9,13,14,18,24 54:5
  54:12,15,23 55:4,5,9 62:10,12
  62:14,25 63:4,5 66:6,10,13,15
  67:1 71:6,7,12,15,22 72:3
  83:4
**Charles'** 39:3 54:18
**chief** 7:10,23 15:8,13 17:20,21
  19:8,8 20:11 30:10,22 44:2
  46:23 47:18,24 68:5 74:10,19
  75:2
**choosing** 67:5
**chose** 66:20
**chosen** 67:2
**circumstances** 56:16 80:22
**civil** 87:10 94:11,15
**claim** 1:2 3:14 5:6,7 82:10,23
  85:6 96:2,10,12,13 100:4
**claimant** 1:3,12 2:2,10 5:8,12
  42:16 83:25 84:4 89:23 96:13
  97:22
**claimant's** 5:11 9:23 16:25 17:3
  18:20 19:13 27:10,10 36:14
  45:12 48:16,17,17 50:17 51:8
  52:18 67:22 69:6 71:25 72:1
  90:21 93:8 95:4 96:15 98:17
**Claimant's** 67:23
**claimed** 85:6
**Claims** 1:2 5:5 83:18 92:15
  100:3
**clarify** 71:5
**clarifying** 72:18
**class** 63:19
**clean** 90:13
**clear** 23:6,11 35:11 50:6 52:23

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 536 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 5

75:9,11 86:15 97:5
**clearing** 83:18
**clearly** 70:11
**Cleary** 45:1,4 46:4,6,12,23
  53:22 55:2,14 60:20 63:9 65:9
  77:13
**client** 38:6,6 58:21 60:16,17
  61:4,16,24 86:6 99:2,6
**client's** 86:25
**clients** 58:22
**close** 39:24 91:2 95:22
**co-** 65:24
**co-directors** 27:18 66:3
**collaborative** 46:20,22 47:4
**collect** 31:2
**collecting** 17:22
**collective** 84:1,3,14,15 87:9
  92:5 95:14
**collectively** 94:5 95:4,5,25
**collects** 19:8 29:17
**College** 36:25 73:22
**collegiately** 96:22
**come** 9:10 26:4 74:8 75:1
**comes** 97:16
**coming** 37:21 38:16
**commenced** 5:1
**commend** 97:3
**common** 20:25 21:9 25:24 30:10
**communicate** 60:7 62:16,16 75:4
**communicates** 16:22
**communicating** 19:6
**communication** 17:8,14 59:21
  62:8,25 68:9 71:16 81:18
  83:11
**communications** 17:15 57:6 62:11
  63:3 67:21
**community** 7:14 29:2
**compared** 81:3
**compensation** 85:9
**competitive** 7:24
**complaint** 86:19
**complaints** 61:13
**complete** 6:11
**compliance** 14:23
**complimentary** 37:24 38:7,11
**complying** 62:1
**comport** 21:21
**comported** 22:24
**compound** 24:5,7
**Comptroller** 40:5 41:16 81:10,14

**comptroller's** 40:2,9,17,22
  84:23,25
**concept** 75:24 76:2
**concern** 34:1 68:13,20 70:6,12
  99:3
**concerning** 9:25 11:9,23 12:1
  13:1 14:18,24 15:4,10,22
  16:19 18:24 20:20 27:6 30:17
  33:2 58:21 60:16 61:3,25
  63:11 71:6,7 77:11 80:14 81:2
**concerns** 15:16,21,23 19:16 20:1
  20:6 27:4 28:6,7 69:9
**conclude** 90:12
**concluded** 96:18,19 99:23
**concludes** 92:16 99:19
**conclusion** 11:23 12:1,5,8,17,20
  55:14 77:11
**conclusions** 12:13
**conditions** 92:10
**conduct** 11:13,16 16:18 46:9,13
**conducting** 10:21 47:9 60:15
**confess** 23:24
**confined** 92:13
**confines** 91:7
**CONGRESSIONAL** 2:9
**consider** 67:18 72:14,24 91:5
**consideration** 17:7 34:3 72:16
  72:22
**considered** 80:13
**considering** 36:20 72:13
**consistent** 21:19 24:14,15 28:15
  30:1 35:22 64:21,23 65:3,4
**constitute** 86:20
**constituted** 21:21 23:7,11,12,15
**consult** 16:15 53:8 79:8
**consultation** 66:10,23
**consulted** 47:25
**Cont'g** 9:3 10:6 13:7 14:14
  15:25 18:18 21:14,18 22:22
  23:5 24:9,22 27:3,14 32:10
  33:6 35:7 36:12 39:5 41:2,14
  46:8 47:8 52:11,17 53:7 54:8
  56:7 57:3 59:9 61:22 62:22
  66:19 71:4 73:16 76:22 77:21
  78:18 80:24
**contact** 56:14,21 58:24 60:12,18
  80:4
**contacted** 21:2
**contacting** 18:23 60:24 61:17
**contained** 83:9 84:5

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 6

**contemplating** 32:6
**context** 70:5 86:21 87:1 89:6
**continue** 5:6 37:16 38:1,9 76:13
**continued** 93:9
**continues** 30:14
**contract** 37:21,22 38:16 41:3,15
  41:19 50:7,10 52:25 55:10
  60:18 74:12 76:4,11,12,13,15
  76:17 83:2,23,25 84:2,7,9,12
  84:19,21 86:5 93:4,5,11,16,20
  93:20 94:10 95:4 96:4
**contracts** 40:3,7,8,11,16,21
  81:11 84:20 94:2,4,15
**contradict** 70:3
**conversation** 39:10 53:12,17
  60:6 66:24
**conversations** 34:8 48:2 54:25
  55:4,17 57:10 65:6 77:6 79:15
  91:20
**convey** 47:9,12,15,17 53:18
**conveys** 87:1
**cooperation** 94:19
**coordinator** 45:5,9
**copied** 17:18 28:1
**copy** 1:19 57:21 59:16 72:4
  78:20 97:17
**correct** 15:1 22:25 24:20 37:5
  37:15 45:23 53:24 60:8,9
  66:18 68:10 79:4 92:23 95:9
**correctly** 22:12 95:2
**corresponding** 13:12 25:6 29:1
  32:25
**cost** 97:12
**costs** 74:9
**council** 7:12,16
**counsel** 1:14 12:10 14:16 27:13
  46:18 51:18 52:16 57:2 58:15
  69:21 70:17,22 71:3 77:23
  87:24 88:9 90:23
**counsel's** 89:23
**count** 25:5
**course** 15:17 16:18 44:4,21,23
  55:15 79:25 86:1 87:25 93:3
**Court** 1:2,19 2:8 5:3,5,14,17,19
  6:10,14,17 7:17,25 8:5,9,17
  8:21,23 10:2,4 13:5 14:9,13
  15:19 18:1,4,7,10,14,17 21:12
  21:17 22:19 23:1,9,16,24 24:2
  24:7,21 26:19,23 27:2,13 32:8
  32:17,19 33:5 35:3 36:6,9,11

39:2 41:1,12,20,23,25 42:5,10
42:14,18,20 43:9,13 46:5,18
46:25 47:3,6 51:18,21,23 52:1
52:5,7,10,16 53:6 54:2,5 56:3
56:5 57:2,17,19,21,25 58:3,12
58:15 59:2,5 61:6,8,19 62:19
66:15 69:11,13,15,17,21 70:2
70:8,14,17,21 71:2 73:12,15
76:20 77:17 78:15 80:16 81:25
82:2,5,9,13,15 83:18 85:3,12
85:16,22 86:1,21 87:20,20,21
87:22,25 88:4,7,12,16,20,22
89:3,4,5,7,9,11,17,19,22 90:1
90:9,11,19,21,22 91:4,4,13,19
91:23 92:13,14,16,23,25 93:15
93:24 94:6,8 95:1,7,10,17,19
95:24 96:6,8 97:10,13,17 98:4
98:6,11,15 99:1,5,10,12,14,16
99:18 100:3
**court's** 70:22 96:11
**Court's** 96:18
**courtesy** 37:2
**Courtroom** 1:8
**cover** 2:18
**covered** 84:18 87:15
**credence** 34:1
**Criminal** 37:3 73:21
**cross** 82:2
**cross-examination** 41:25 81:25
**curious** 88:13
**current** 11:3,3,6 59:21 62:9
**currently** 6:21,22

---
**D**
---

**D** 4:6,10
**damages** 86:15
**dash** 49:25
**data** 78:7
**date** 1:6 37:9 51:18 59:17 97:16
  97:19
**dated** 2:11,12,17,18 9:24 17:1,5
  18:22 19:15 27:5,11 33:9
  36:14,14 50:18,20,21 51:13,14
  62:5 63:1 71:11 72:5,6 100:7
**dates** 74:20
**day** 1:7 12:14
**deal** 90:13
**dealing** 95:15
**deals** 94:15
**dealt** 63:24 64:1 70:7

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 538 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 7

**dean** 7:22,22 13:11,14,16 38:3,9
    38:10,14,19 39:9 51:12 63:20
    67:15 72:3
**deans** 66:11,23 73:20
**Dear** 3:14 49:23
**December** 98:8,9,15
**decide** 52:24 74:7 86:21,21
**decided** 8:15 34:15 37:4,21
    38:16 50:6,9 79:24
**decides** 86:11
**deciding** 38:23 72:7
**decision** 19:3 21:25 22:1,4 25:3
    25:20 26:10,12,13 30:4,16
    66:2,4,7,25 67:9 77:8 98:20
    98:21,23
**decision-maker** 31:1
**decision-making** 32:13 74:12
**decisions** 13:1,15,16 64:14 75:4
**declares** 94:18
**declined** 50:3 52:23 62:19
**declining** 52:20
**DEF** 4:2
**defamation** 82:25 83:3,3,10,10
    83:16 86:17,18 93:4
**defamatory** 83:12,14 86:24
**default** 88:25
**defendant** 1:5,15 88:1,4 90:15
    90:17,19 93:7 96:14
**Defendant's** 88:8 95:3 96:16
    98:7
**defendants** 85:24 97:2
**defense** 85:10
**defined** 73:24
**delivered** 17:14
**Department** 7:21 36:24 63:21
**depend** 29:24
**depending** 37:19
**depends** 22:14 30:13 31:12
**deposed** 54:9
**deposition** 10:18,20 12:3 14:7
    24:10 25:9,22 28:11 30:6 71:8
    80:25
**depth** 99:7
**describe** 46:19
**described** 44:22 47:4 68:22
**describing** 55:17
**designating** 52:7
**details** 53:23
**determination** 25:7,21 26:6
    47:20 61:15 72:15,20 78:8

    79:9
**determinations** 32:25 56:9
**determine** 22:6 24:12
**determined** 61:2 75:15 77:23
    80:8
**develop** 74:15
**developed** 74:1,10
**developing** 74:19
**development** 74:20 75:3
**dictate** 16:17
**different** 9:1 40:13 96:11
**differently** 49:3
**digital** 100:4
**DIGITALLY** 1:21
**Dina** 27:18
**direct** 6:19 28:24 43:15 50:12
    91:14,22
**directed** 16:7,8 20:16 65:12
    82:16
**directing** 13:9 31:9 38:15
**direction** 13:4 64:9 87:23
**directions** 31:9
**directive** 24:19 25:10,14 45:20
    45:22 57:4
**directives** 11:12,15,19 15:3
    20:20 58:22 60:11
**directly** 11:5 19:23 30:15 44:20
    45:6 47:15
**director** 29:6 37:1,20,23 38:12
    73:20
**directors** 19:21 28:25 29:8
    65:25 66:21 67:2,5,11,18,19
    67:25 68:17 87:4
**disagree** 20:23 22:3,6
**discard** 42:2
**disciplinary** 10:14 15:10 24:17
    44:5,16 45:22 46:1 61:4 63:16
    80:8 81:2,3
**discipline** 21:21 23:7,13,15,18
    23:20 24:17 27:6 28:8 61:3
    80:9 92:5,11,16
**discourage** 98:22
**discussed** 53:16,17 67:3
**discussion** 66:22 79:25
**discussions** 62:15 91:2,5
**dismiss** 82:21
**dismissal** 32:24
**distress** 83:2 85:1,6 92:20 93:1
**distributed** 31:10
**doctor** 5:16,17,18 6:15 7:17

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 539 of 558

800.523.7887              6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 8

32:19 33:9 85:1,6 96:8 98:18
**doctor's** 54:6
**document** 10:7,8,9 14:1,3 33:10
55:8 57:11,12,13 58:6,14 59:3
59:24 72:2 89:20
**documents** 2:17 55:17 58:2
**doing** 19:5 67:8 75:1 98:22
**dollars** 35:20 36:2,3,5 41:9
84:22 94:3
**Dr** 2:13 5:8 6:2,20 8:8 9:25
10:10 11:9,14,23 12:1 13:1,2
13:10,11,14 14:18,24 15:3,5
15:18,22 16:1,8,19 18:25 19:1
19:7,7,16 20:2,12,13,17 21:1
21:3,20 25:10,15 27:6 28:8,12
29:5,18,20 30:7,18 31:1,22,23
31:25 32:1,12,13,15 33:2,9,11
33:14 34:7 35:15,18,22 36:15
36:22 37:4,16 38:21 39:2,7
41:25 43:16,17,18 47:21 48:11
49:15 50:10,18 51:3,5,10
52:12,19,24 53:9,13,19,25
54:5,12,13,15,15,18,20,23,23
55:4,5,5,9,10 57:5 58:9 59:10
59:25 60:7,23 62:10,12,14
63:5,11 64:3,14,15,17,24
65:11 66:15 68:20 69:8 71:12
71:15 72:2,7,10,13 73:5,17
74:3,13,15 75:6,13,20 76:23
77:12,22 78:13,15,24 79:5,9
79:13,20 80:3,15 81:2 82:6
96:23 98:25
**drive** 1:23 4:2 89:20 90:15
100:8
**drop** 54:2
**dropped** 86:8,8
**due** 19:4 87:25
**duties** 11:4
**DX** 2:3,4

---

**E**

**E** 2:1,1,7 4:6
**earlier** 79:14
**ed** 72:2
**effect** 19:22 20:24 44:10 68:18
**effective** 27:17 37:7 59:17 68:6
94:13
**effectuated** 94:20
**effort** 74:21
**efforts** 45:8

**Eight** 2:18 9:23 45:13
**Eighteen** 2:25
**electronic** 59:21 62:8
**elevated** 43:10
**Eleven** 2:21
**elimination** 38:24
**else's** 39:6
**email** 2:21,22,22,23,23,24,24,25
3:1,1,2,2,3,5,6,8,8,9,9,11,11
3:12,13,17,18,19,20,20,21,21
3:24,24,25 15:4 17:1,4,15,18
18:21,22,25 19:15 20:4,17,25
21:3,6,9,20 22:8 23:8,11,18
24:13,18,24 26:15,17 27:5,8
27:11,20,21,23 28:1,8 49:9,21
49:23 50:17,20 51:9,11 63:7
64:24,25 67:21,23 68:1,12,18
68:19 70:25 71:1,10,11 72:1
77:19 83:4,5 86:14 92:7
**emails** 2:20 16:17 18:21 19:6,13
19:25 27:7 48:18 54:16,18,21
62:24 83:9,15
**emotional** 83:2 85:1,6 92:20
93:1
**employ** 83:20
**employed** 6:21,22 43:18,21 65:21
85:2,7
**employee** 25:11,16 26:3 30:19
40:2 59:18 65:13 80:7,9 84:1
94:24
**employee's** 28:14 30:12
**employees** 15:11 31:10 39:13,16
39:19,22 40:7,20 44:6 59:22
62:9 81:11 94:16,21
**employer** 6:23 84:2
**employment** 13:2,10 30:7,11 34:7
37:7 38:1 45:2 64:14 75:13
79:6,10,13,20 80:3 93:8,10
**empowered** 92:15
**enforcing** 60:1
**engaged** 35:25 65:14,22
**engagement** 25:18
**engagements** 25:12 26:2 65:15,22
**enrollment** 35:10
**ensure** 14:22 22:24 64:12
**entailed** 44:1
**enter** 94:23
**entering** 59:20
**enterprise** 44:22
**enterprises** 74:25

800.523.7887                    6-8-2022, WORD INDEX, Alaei case                    Associated Reporters Int'l., Inc.

**entire** 87:1
**entity** 38:5
**equipment** 100:5
**ER** 3:6
**ESQ** 1:11,11
**essentially** 32:20 58:2 93:6
**establish** 97:6,18
**et** 5:7
**evaluated** 76:10
**evaluation** 72:25 76:10
**event** 86:2
**Evergreen** 75:24 76:24
**evidence** 9:24 12:22 13:25 16:25
  17:3 18:3,14,15,17,20 19:12
  27:10 33:8 36:8,13 45:12,12
  48:18 49:21 50:18 51:9 58:17
  62:24 67:22 68:12 69:6 77:19
  79:18 83:3,8,13 88:6,19
**evidentiary** 85:25
**exact** 37:9
**exactly** 23:25 49:7 55:2,21
  67:13,17
**EXAMINATION** 6:19 43:15
**example** 55:2 76:18,20 85:21
**exception** 70:11
**exchange** 78:7
**exclusion** 87:16 94:4,4
**exclusive** 85:8
**excuse** 13:2 17:25 39:12 52:24
  60:2 65:12 71:10 72:17,18
  77:22 83:19 86:5
**executive** 7:10,12,16
**exhibit** 9:23 13:25 16:25 17:3
  17:25,25 18:5,20,21 19:13
  27:10,10 33:4,7,8 35:2 36:8,9
  36:14 45:12 49:19,20 50:17
  51:8 57:17,18 59:3,11 62:4,23
  62:23 67:22 68:11 71:5,6,25
  72:1 77:15,19 78:19 79:18
  88:8
**exhibits** 2:8,10 4:3 18:1 88:23
**existing** 64:22
**expect** 31:4 92:25
**expectations** 98:18
**experience** 19:2 25:23 28:13
  81:13 96:11
**expertise** 81:12
**expiring** 76:12
**explain** 6:20 7:7 10:24 34:10
  40:1 43:25 44:14 47:23 48:13

  53:12 56:12,18 74:6 76:1 77:4
  77:8,14 79:24 81:9
**explained** 87:13
**explaining** 19:1
**explanation** 79:12,16,22
**expressly** 59:22 62:7
**extension** 76:15 93:7
**extensive** 74:10
**extent** 31:6
**external** 29:1

---

**F**

**F** 1:11 4:7
**face** 5:20 42:22
**facilitating** 58:24 60:17
**factors** 29:25
**faculty** 15:10 35:21,25 36:1,2,4
  39:12,15 40:2,6 44:3 63:18
  66:11 73:22 74:3,8 75:5 81:11
  81:11
**failure** 82:21,22
**fair** 14:4 30:6,19,20 54:16,20
  67:19 69:10,11 89:19
**fairly** 74:10
**falls** 84:20
**false** 83:9
**familiar** 10:7 13:19,21 14:3
  27:22 40:5 44:9 59:10 63:7
  68:1,2 75:20,24 78:22
**familiarity** 59:14
**far** 64:21
**fast** 19:3
**favor** 32:20
**favorable** 76:11
**February** 9:24 10:11 13:2,8 17:1
  17:5 18:22 19:16 27:5,11
  58:14 62:6 74:17 89:2 98:16
  98:17,17,19
**feel** 19:19 49:1 69:2 78:6
**felt** 54:13,23 61:24 77:7
**fifteen** 2:23 27:10,11
**fifty** 3:17 41:9 84:21 87:8 94:3
**fifty-eight** 3:21 69:6,12
**Fifty-five** 3:19
**Fifty-four** 3:19
**Fifty-nine** 3:21
**Fifty-one** 3:17
**Fifty-seven** 3:20 19:13 68:11
**Fifty-six** 3:20 17:25 18:12,14
  18:17,20,21

ARII@courtsteno.com                                                        www.courtsteno.com

800.523.7887            6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 10

**Fifty-three** 3:18
**Fifty-two** 3:18
**figured** 19:19
**final** 25:21
**finalized** 74:1
**Finance** 84:20 87:6,16 93:16
**financial** 7:13 35:11
**find** 93:16
**finding** 80:10
**findings** 12:11 56:8 61:24
**fine** 42:10 58:12,12 70:17 85:22
   85:22 86:3 90:25 91:3 95:10
   97:1 98:4,15
**first** 24:4 31:1 38:13 42:2
   52:13 58:5,6 59:16 63:12
   74:13 80:11 82:23 87:12,14
**five** 2:15 5:7,7 7:4,5 8:19,22
   13:25 17:1 59:15
**flagged** 44:16
**flip** 33:10
**focusing** 34:17
**folks** 19:22 42:9 68:18 91:9
**followed** 81:16
**following** 14:17,20 15:24 64:13
   92:2
**force** 69:1
**foregoing** 100:2
**forget** 67:13
**form** 2:13 21:21 24:17 44:21
   50:16,17,19,25 51:1,2,11,13
   52:13 53:8 55:23 72:3
**former** 19:1 59:21 62:9
**Forty** 3:11
**Forty-** 71:6
**Forty-eight** 3:16
**Forty-five** 3:14
**Forty-four** 3:13 79:18
**Forty-nine** 3:16 77:15
**Forty-one** 3:12
**Forty-seven** 3:15
**Forty-six** 3:14
**Forty-three** 3:13 62:23,24 71:5
**Forty-two** 3:12
**forward** 5:14 12:15 17:19 20:4
   44:13 69:10 76:5
**forwarded** 27:24 69:1
**forwarding** 19:15,23 68:13
**forwards** 19:9
**Foundation** 74:23
**four** 2:14 5:7 35:2,19 39:25

**Fourteen** 2:23
**fourth** 46:7
**Frank** 1:10 5:4
**frankly** 91:21
**free** 42:1 82:7
**frequent** 30:14
**frequently** 64:1
**Friday** 98:8,9,16
**front** 95:20
**full** 97:13
**full-time** 39:24
**fully** 98:18
**functions** 48:15
**funding** 35:20 36:1
**fundraising** 35:19 73:4
**funds** 12:12
**further** 62:7 82:11

---

**G**

**G** 4:7
**G.I.H.H.R** 16:19 17:13 27:16
   28:19 29:20 34:20 36:20 37:1
   37:14,20,23 38:12,15,25 56:14
   56:20,22 57:6,7 58:25 64:18
   65:25 71:16 73:20,23,25 75:23
   80:19
**G.I.H.H.R.'s** 17:8
**gather** 20:12
**general** 1:14 72:21
**generally** 13:17,23 14:1,5 16:11
   16:12 44:12 75:17 87:17
**generate** 35:25
**generated** 35:10
**getting** 36:20 38:5 98:20,23
**Gina** 27:18
**give** 5:24 34:1 39:14 42:25 76:3
   93:7,18 97:13,23,25 98:12,19
**given** 17:7 25:14 53:21 55:13
   57:4,21 58:23 78:20 80:22
   97:22
**giving** 10:17 12:24 13:3 71:8,19
   76:12 86:2
**Global** 27:19 29:3,8 83:5,7
**go** 5:17 6:7 14:9,13 23:22 38:11
   40:8 42:1 57:2 59:5 69:18
   82:7 87:15 90:7,24 92:6 95:21
   99:20
**God** 6:1 43:2
**goes** 7:5 9:17 59:19 70:16 96:9
**going** 5:22 9:17 16:24 20:1

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 542 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 11

22:19 35:4 42:8,23 44:13
50:16 66:8 69:15 82:19,20
84:11 87:20 88:9,13 90:12,23
91:25 96:24 97:7,13,17,23,24
98:3,7,11 99:7
**good** 5:3 6:12 43:16,18 54:7
75:1 80:20
**Government** 7:14
**granting** 94:20
**grants** 35:10
**Graziano** 90:13
**greater** 84:21
**grievance** 84:2,4 86:9,11
**grievances** 84:6 86:8,8
**grounds** 82:21
**group** 67:16
**guess** 5:10 70:2 80:23 91:3
**guide** 74:11
**guidelines** 14:21

---

### H

**H** 2:7 4:8
**H-A-V-I-D-A-N** 6:13
**H.R** 22:23 23:2,3,6,10,13,22
26:10,12 44:19 46:12,23 47:2
48:1,9 49:25 53:22 57:15 61:9
63:5 64:16 65:7 71:13,22
81:13,15
**H.R.M** 50:16
**hand** 5:23 42:24
**handled** 49:3
**Hannah** 1:22 100:2,7
**happen** 40:25 56:15 63:21 81:17
**happened** 28:17 75:22 91:10
**happening** 17:13
**happens** 19:21
**hard** 55:2 63:17 80:19
**harm** 99:3
**harmonious** 94:19
**Harvey** 17:1,4 27:5,11 38:22
46:3,6,9,12 48:18,20,22,23
49:8,17,22,23 51:10,12 53:1,9
53:14,18 62:14,17,18,25 66:6
66:13 67:1,25 71:6,7,22 72:3
83:4
**Havidan** 2:2 5:12 6:3,13
**he's** 23:21
**head** 14:13 47:2 48:1,9
**Health** 27:19 29:3,8 37:3 73:21
**hear** 85:3 89:4,5

**heard** 70:18
**hearing** 28:7
**hearsay** 70:12
**Hedberg** 48:10,19,20 49:4,23
50:18 51:9 66:10,16 68:24
72:1
**heightened** 30:24
**Helberg** 49:24
**help** 5:25 43:1
**helpful** 19:22 68:18
**henceforth** 59:19
**hierarchy** 66:4,24 68:22
**high-profile** 80:14 81:4
**hires** 75:5
**history** 29:19 80:20
**hit** 92:2
**hold** 21:12 46:18 82:17 90:5
**Honor** 6:7,18 9:2 17:24 22:18
26:18 36:10 41:11,21,22 42:11
43:14 46:6,21 47:5 53:3 58:16
61:12 62:21 69:5 70:10 71:1
77:18 82:1,12,17 85:10,15
88:3 90:7,18 95:12 96:7 99:9
99:11,13,22
**honorable** 1:10 19:3
**hope** 19:21 68:17 75:11 91:11
**hour** 89:8,9
**huge** 19:2
**human** 9:14 10:11,21 11:12,15,20
14:15 16:7 20:22 21:2 22:15
22:16 24:23,25 27:19 29:3,9
57:11 59:23 61:2,25 63:8 78:3
78:4,10 80:8

---

### I

**idea** 74:19
**identification** 59:19
**identified** 9:23 10:15 44:15,16
46:1 57:16 63:4 66:15 73:5
**identifies** 45:22 63:2
**identify** 13:24 17:25 48:16
65:12,21
**imagine** 95:22 96:9,14
**imagined** 17:11
**impact** 72:15
**impart** 83:12
**impeach** 58:25
**implement** 75:18
**implemented** 15:22
**implication** 83:10

implying 87:2
importance 9:11
important 85:23 89:4 92:2
impose 61:2 80:9
impossible 83:22
impressive 73:8,12,14
improper 92:16
in-charge 7:15 10:21 13:9 26:25
  44:2
incidents 65:19 77:10
include 9:4,13
included 16:7 37:1 46:11 76:9
  78:6 89:1
includes 27:11 67:23
including 5:8 11:9 17:4 29:25
  34:25 35:19 64:18 87:6
inconsistent 23:21
incredible 96:21
indicate 98:7
indicated 53:22
indicating 27:23 50:15
individual 25:6
individuals 17:17 21:6 47:9
inference 60:25 83:12,12,14
infliction 83:1 84:25 85:6
  92:20 93:1
influential 17:9
inform 27:17 63:2
information 16:21,22 17:18,22
  19:8,9,10,11 20:6,13,13 25:19
  29:17,19 31:2,3,7,9 33:1,12
  33:25 34:4 38:25 46:14 47:10
  47:12,17 50:4,5 52:21,23 63:8
  64:17 68:24 78:3,9 83:8 92:8
informations 20:4
informed 9:18,20 11:17 15:13
  16:22 29:2,17 32:24 63:10
informing 17:23
infrequent 30:15
initial 36:22 50:16 53:17 75:20
initially 7:20 19:14 37:25
initiated 31:23,24 40:20 48:3
initiating 59:20
injure 86:23
input 38:21 53:9 66:13 67:1
inquired 63:5 71:13
instance 23:6,10
instances 80:6 82:25
institute 27:19 29:3,8 34:17
  83:5,7

institutes 34:24
institution 11:5 35:24 57:14
institutions 9:1
instructions 57:14
Int'l 100:8
INT'L 1:22
intended 74:11 83:13,14
intentional 92:19,22
interested 91:16
interesting 96:12
interim 27:18 28:25 29:8 65:24
  66:2,21 67:5,11,18 81:22
intern 19:1 67:2 83:20
internal 29:2
interns 63:1 71:16
interpret 84:11
interpretation 23:22 93:11,14
  93:15
interpreted 93:6,9
interrelate 11:5
interview 8:14
introduce 69:6
introduced 18:19 27:9 45:12
  69:7
investigated 12:18 80:18
investigation 9:17 10:15,22
  11:9,10,13,14,23,25 12:6,15
  12:23 14:18,23 15:4,17,22
  16:3,18,20 19:21 20:2 22:24
  25:25 28:20 29:16 44:17 45:23
  46:1,2,4,10,15,19,20,22,24
  47:4,9 53:21 55:18 60:16 61:4
  61:9,12 63:8,11,12 64:14 65:9
  77:11 79:15 80:8,14 81:2
investigations 9:5,8,8,13,20
  11:16,17 15:10,12 25:23 26:5
  27:1 28:13 29:14 30:22,24
  44:6 46:13,20 55:20 63:16
  81:3
investigatory 28:15
invitation 92:4
involved 15:9,12 16:11,12 20:10
  29:22 30:15,25 31:3,6,13
  44:15,19 47:20 60:11 61:19
  63:15 66:10 67:8 81:5
involvement 16:10 29:12,13,15
  30:5,17,22,23 31:4 44:5 45:25
  47:23 57:5 67:5 80:12 81:1
involves 83:4
irrespective 91:9 93:14 96:23

Page 13

**issue** 11:12,15,19 15:3,14 26:7
  26:15 30:13 34:2 44:24 68:4
  69:2 74:4 82:19 93:4
**issued** 13:3,9 20:19 41:7
**issues** 9:11 12:14 15:14 17:21
  24:12 30:7,12 34:16 40:12
  53:16 58:23 70:6 72:10,14
  73:4 85:20 87:5
**it's** 94:2
**items** 14:5 84:5

---
### J
---

**J** 4:9
**J-A-M-E-S** 43:8
**James** 2:4 16:9 18:22 19:14 32:3
  34:6 42:16,18 43:4,7
**January** 98:15
**JESSE** 1:11
**job** 7:7 9:4 11:6
**jobs** 64:2
**Joe** 88:9
**JOSEPH** 1:11
**Judge** 5:4 98:10
**July** 97:15
**June** 1:6 5:4 41:8 63:1 71:11
  97:15,15
**just-cause** 80:9
**Justice** 37:3 73:21
**justification** 35:13

---
### K
---

**K** 4:10
**K.A** 48:21
**Kamiar** 1:3 2:13 5:8 10:10 18:25
  49:25 50:1,5 56:13,20 57:14
  59:25 60:23 61:25 63:11 77:12
  100:3
**Kamiar's** 50:7
**keep** 11:17 35:4 43:9 68:6
**keeping** 28:3 32:24
**kept** 15:13 17:20 19:25 27:25
  29:16 67:7
**Kevin** 2:13 19:15,18 68:14,19,23
  70:25
**key** 64:4 92:8
**keys** 16:2,8 59:18
**kind** 96:3
**knew** 65:6 67:9
**know** 13:9,23 14:5,6 17:13,14
  19:5 25:20,21 26:12,13,15

28:19 29:23 30:1,3 31:16,24
  31:25 32:2 38:13,18,20 39:11
  39:22 40:12,15 41:7,17 45:1
  48:10,25,25 49:24 60:10 62:14
  66:2,20 67:1 69:4 71:15,18,21
  71:23 73:18 76:23 78:2 84:9
  87:7 91:13 92:14 93:18
**known** 9:5 13:21 91:7
**knows** 26:21

---
### L
---

**L** 2:7 88:9
**L.L.C** 1:12
**lack** 93:17
**language** 83:11 84:10,13 94:6,9
  96:5
**largely** 96:17
**late** 98:19
**law** 84:20,23 85:20 87:6,10,10
  87:16 93:16 94:11,15
**lawful** 93:17,21,24
**lawyers** 96:20,25
**laying** 35:9,9
**leadership** 83:6,20
**learning** 15:20
**leave** 38:11
**leaves** 83:18,19
**lecturer** 36:24 37:17 38:2,8,10
  39:8
**lectures** 26:1
**left** 67:9
**legal** 12:10 14:16 85:20,23 87:6
**legislature** 94:17
**length** 58:8 99:3
**let's** 6:6 14:9 54:2 69:17 76:8
  76:13 90:24
**letter** 2:11,12,18 3:3,4,4,5,7,9
  3:10,10,13,14,16,16,17,18,22
  3:23 4:5,5,6,6,7,8,8 9:24
  10:1,15 13:3,8 17:11 33:9,11
  33:15,19,23,24 34:2,3,4 35:16
  35:16,18 36:11,14,14,15,17
  37:24 41:3 45:13,17,19 46:1
  48:21,24 50:1,3 52:20 62:5
  72:5,6,6,10,14,19,24,25 73:17
  78:13,15 79:19,19 84:9,12
  87:12 88:20 95:5
**letters** 3:15 40:21 81:10 87:11
  87:14
**level** 29:13

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 14

**libel** 86:20,20
**life-** 19:2
**light** 20:19
**liked** 75:18
**limitations** 92:9
**limited** 94:1
**line** 59:16
**lines** 70:3
**list** 17:17
**little** 93:18 98:3
**local** 94:22
**LOCATION** 1:8
**long** 7:3 8:17 17:17 49:6 89:7
   98:24 99:8
**longer** 28:24 34:15,18 76:4
**look** 10:1 45:13 68:1 69:17 76:5
**looking** 24:12 34:20 38:24 48:23
   54:15,19 60:19 79:1 89:2
   98:16
**looks** 19:22 27:22 52:2 68:2
   78:22
**loss** 86:14 99:4
**lot** 53:23 68:8 80:21 92:1 93:2
   96:12

**M**

**M** 49:25
**M.O.U** 73:19,24 74:2
**maintaining** 39:7
**making** 13:15,16 18:24 23:16
   25:7 30:16 49:1 53:2 68:8
   72:20 91:7
**Maleszweski** 1:14 5:16 99:15,15
   99:16,17,17,19
**manage** 80:22 98:18
**management** 48:15
**March** 52:2 74:2 98:16
**mark** 89:11 90:1
**marked** 16:25 18:20 36:8,13
   45:11 57:17,18
**marking** 18:1
**mask** 5:21 42:2,21,22 82:2
**Massena** 1:23 100:9
**matrix** 73:24
**matter** 10:18 20:20 29:12 30:17
   31:11 38:14 39:1 44:15 54:9
   63:6 69:25 71:13 78:4 80:12
   80:14 99:6
**matters** 15:15 16:11,13 20:10
   22:6 30:19 35:20 64:1 80:17

81:16 95:23
**mean** 11:2 39:19 63:23 78:15
   85:22,23 86:9 89:25 93:9
   95:11 99:1
**meant** 33:7
**measuring** 75:7
**meet** 82:22
**meeting** 17:6 67:25 75:16 89:1
**member** 83:25
**members** 17:9,16 39:15 66:12
**memo** 3:12 4:4 85:20
**memorandum** 73:19 78:20,21,24
   79:2
**memory** 33:11
**mentioned** 36:19 46:7
**merit** 12:21
**merits** 12:22 33:15 72:15
**met** 53:14
**metric** 75:14
**metrics** 73:25 74:4,7,11,15,20
   75:3,6,9,10
**microphone** 43:10
**Milano** 1:10 5:4
**million** 35:19 36:2,3,5 73:6
**mine** 52:1
**minute** 35:4 42:8 45:13
**minutes** 42:9
**mismanagement** 12:12
**missed** 95:25
**mission** 44:20
**Mister** 5:15,18
**modifications** 76:18
**moment** 49:16
**money** 35:21 92:19
**MONITOR** 5:2,23 6:4,9 14:12 35:6
   42:13,24 43:5 59:8 69:20 90:5
**months** 97:14,25 98:11,20
**morning** 5:3 6:12 43:16,18
**motion** 82:21,21 87:19
**motions** 85:25
**move** 12:15 17:19 21:24 70:23
**moving** 96:12
**multiple** 19:7

**N**

**N** 2:1
**name** 6:5,11,12 17:5 43:6,7
   51:23
**named** 27:18 65:25 66:23
**names** 67:2

800.523.7887    6-8-2022, WORD INDEX, Alaei case    Associated Reporters Int'l., Inc.

Page 15

**Nancy** 8:8,10
**national** 8:12
**nature** 31:5 63:14,15
**nauseam** 92:6
**necessarily** 9:7,19 11:5 13:17
**necessary** 77:8 78:6 83:9
**need** 63:2 79:16,22 98:13
**needed** 69:4
**negligence** 85:8
**negligent** 83:1 84:25 85:5 93:1
**negotiate** 94:23
**negotiated** 84:17 87:8 94:10
**negotiating** 94:15
**new** 1:1,5,8 5:4,5 6:24 8:3
  13:22 17:2 19:21 40:2 57:17
  57:18 58:7 67:19,25 68:17
  75:4 100:3,9
**nine** 2:19 9:6,9 12:14,18,19
  14:15 15:9 20:22 36:2,3 45:5
  45:9 61:9,25 73:6
**Nineteen** 3:1
**non-** 32:3 34:10 53:25 61:23
**non-renew** 34:7 37:6 47:20 50:19
  61:15 72:7,13,17
**non-renewal** 31:21,22 32:11,20
  32:24 33:2 35:12 48:3,11,21
  48:24 49:5,15 50:21 51:12,15
  51:19 52:14,22 53:8,20 54:3
  55:5,23 58:20 72:4 77:2,5
**non-renewals** 72:23
**non-renewed** 32:1,15 54:20
**non-review** 72:16
**non-stipend** 37:1 38:6
**nonrenewable** 78:9
**normal** 64:6
**noted** 70:24
**notes** 3:7 91:25
**notice** 3:14 84:14,17 88:14,20
  89:6,12,20,25 90:10,14 93:7
**noticed** 88:24
**notwithstanding** 93:25
**November** 98:1,6
**nuch** 90:11
**number** 5:7 7:11 9:23 18:4 20:4
  21:4 23:3 29:25 34:14,24
  39:14,14,18 40:8,11 73:25
  78:21
**NY** 1:23 4:9
**NYSUT** 2:17

**O**

**object** 69:15 87:17
**objected** 18:2
**objection** 18:9,16 21:13,16
  22:18,19 26:18 27:2 53:3,6
  59:2 69:7,22,23 70:9,15,21,25
  89:23 90:15
**objections** 71:3 89:12
**obligates** 93:6
**obligation** 61:16 78:6
**obligations** 59:25
**obligatory** 85:16
**observation** 96:9
**observations** 91:7
**observe** 96:20
**obviously** 22:8 66:25 96:13
**occasion** 62:18,20
**occasions** 19:7
**occupation** 86:23
**occurred** 91:8
**October** 97:25 98:6
**off-campus** 25:12,17
**offer** 48:2 58:16
**offered** 58:25 69:25 76:11
**office** 1:14 9:6,9,14 11:3 14:15
  14:16 20:16 39:1 40:2,5,9,17
  40:22 41:15 59:18 67:4,7,10
  68:7 69:1,4,10 70:7 74:12,15
  74:18,19 75:2,3 80:13 81:9
  84:23,25 90:7
**officer** 7:10,23 44:2 46:23
  47:24
**offices** 9:9 14:22 25:6 34:25
**OFFICIAL** 1:19
**OFFICIALS** 3:15
**oh** 8:22,23 18:5 89:17
**Okay** 6:17 7:1,3,7 8:5 9:16,22
  10:9,17,20,24 11:8,12,22 13:1
  13:19,24 14:7,13,22 15:1,3,7
  16:1,5,24 18:10,19 20:9 22:21
  25:8,22 26:15 27:9 28:6,22
  29:23 30:10 31:21,25 32:3,7
  35:18 36:19 37:10,12 38:21
  39:11,19,22 40:1,11 41:3,7,9
  41:18 42:5,7 43:9,12 44:5,12
  44:24 45:15,25 47:6 49:14
  51:8,23 52:5,10 54:22 55:12
  56:1 57:25 58:12 59:15 60:10
  61:21 62:4,14 63:11 64:3,6,9

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 547 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 16

64:17 65:8,11,19 66:20 67:4
67:18 68:3,8,11 69:14,17 73:4
73:11 74:22 75:20 76:1,15,19
76:23 77:1,4,10,15 79:5,8
80:6,12 81:20,23 82:2 89:7,11
90:3 91:1 92:18 94:8 95:1,10
95:14,18 96:6 98:16,24
**Once** 38:15
**one-year** 76:4,8 93:7
**OO** 17:25
**operating** 39:17
**operation** 44:4 74:24
**operations** 74:25
**opinion** 23:15 33:14,22 39:3,6
44:18 47:4 55:7 72:9 73:8,12
73:13,13
**opportunity** 86:2
**oppose** 85:13,14
**orally** 85:13 86:2
**order** 12:13 20:14
**ordered** 97:7
**ordinary** 76:4
**organization** 94:21
**organizations** 17:10 94:24
**organized** 94:16
**original** 90:8
**out-of-court** 69:24
**outcome** 11:9 26:10 96:23
**outset** 28:19
**outside** 65:14,22 81:12
**overall** 10:21 34:12
**overruled** 59:2
**oversee** 9:18 45:8
**overseeing** 9:5,8 13:14,16 20:2
20:2 27:1 30:7
**oversight** 65:8 66:5
**owned** 86:9

**P**

**P** 1:10 5:4
**p.m** 99:23
**packet** 58:1
**PACKET-** 4:1
**page** 2:2 4:5,6,6,7,7,8,8 12:4
24:11 25:9,22 27:15 28:11
35:8 36:16 45:16 58:6,10 63:1
73:5 77:7
**pages** 2:9,12 4:4,5,9,10 58:8
**paragraph** 59:15 73:2,3,18 78:25
**parallel** 46:19

**part** 15:4 16:2 17:2,6 20:16
27:17 29:20 32:5,6 33:12
34:12,22 35:24 37:12 39:13
46:9 49:19 51:11 61:11 62:4
63:4,7 64:4 70:19 72:22,25
78:16 84:14,19,19 88:19 89:16
95:8 96:2,15,16
**part-time** 39:24
**participants** 74:2
**participate** 48:1
**participated** 63:12
**particular** 9:11 16:14 19:9
20:21 22:14 29:24 31:19 34:1
72:9 75:14 84:10
**particularly** 29:10 67:7
**parties** 5:8 31:3 59:17 87:22
91:5,8,16 92:2,25 93:3,5 97:3
98:22
**partnership** 7:16
**parts** 96:12
**party** 86:5
**party's** 86:23
**pay** 40:20 41:18
**peace** 99:20
**people** 12:15 17:4,9 20:1,13
28:1 29:6 46:3 55:1 57:6,10
60:12,24 61:17 62:2 63:3 65:6
65:20 66:5,10,16,20,22 67:2,6
81:18,19 86:24 87:14
**perceived** 27:6 28:8
**percentage** 36:4
**performance-based** 35:11,12
**performed** 29:20 35:23 48:14
**performing** 11:6
**period** 35:22 36:5 76:13 79:25
**periodic** 47:10,13
**permission** 62:17,19
**permit** 63:21
**person** 7:15 13:3 19:3 25:25
28:23 35:13 48:3 60:15 95:3
**personnel** 2:19,21 39:11 44:24
**persons** 13:3
**pertains** 10:9 84:9
**physical** 90:2
**piece** 88:6
**place** 24:18 75:14,17
**placed** 28:24 29:8 35:14 45:20
**plastic** 5:20 42:21
**play** 30:11
**playing** 30:8

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 17

**please** 5:11,14,19,21 6:10 13:5
  25:13 42:15,20,21,22 69:17
  82:2 95:20 99:5
**pled** 82:25 83:17 84:24 85:9
**point** 12:21 29:5 36:2,3,17
  37:10 38:2 44:1,10 50:9 53:2
  65:24 69:8 73:6 87:19 91:3
**pointing** 28:25
**points** 72:19 92:2
**policies** 2:16 94:20
**policy** 36:24 61:3 77:24 94:18
**political** 94:23
**portion** 49:21
**posed** 12:8 24:11
**position** 7:1,3,6 11:7 28:23
  29:6 43:23 75:6 93:8 95:2,3
**positions** 7:24 73:22 74:3,8
**possession** 90:2
**possible** 25:3 44:16 49:17 78:11
**post** 90:21
**post-claim** 85:24
**post-evidentiary** 85:24
**post-trial** 85:20 87:18,24 88:14
  91:24 92:3 96:19
**power** 32:13
**practically** 48:25
**practice** 64:6,13 65:18
**practices** 28:16
**preceded** 74:20
**precisely** 50:23
**prefer** 6:14
**preference** 6:16
**premises** 59:20
**prepared** 17:14 57:10 100:4
**present** 5:8
**preserve** 85:25
**president** 2:2 5:15,16 6:15 7:2
  7:8,9,12,18,23 8:2,10,13,16
  9:4 16:15 20:11 24:19 26:7
  30:11 31:4 40:19 45:6,8 47:12
  47:15,25,25 55:15 68:5 77:1,4
  79:8,23,23 81:21,22
**President's** 47:18 67:4,7 68:7
  69:1,4,10 70:7
**prestigious** 17:9
**pretty** 61:19 91:14
**previous** 26:4
**previously** 22:23 64:2
**primary** 37:18,19 38:7,14
**prior** 10:17 25:23 28:13,15

  29:19 50:20 63:1
**pro** 68:12 90:11
**problem** 88:11
**problems** 75:10
**procedure** 84:3
**procedures** 97:21
**proceed** 39:1
**PROCEEDING** 1:21
**proceedings** 91:2 100:3,6
**process** 8:10,14 13:18 15:21
  19:4 29:22 31:22,24 34:12,14
  34:23 35:25 40:1,16 44:14
  48:4,4,11 49:5 52:15 80:22
  81:9,15 84:4 95:13,15
**product** 53:10
**production** 97:14
**professional** 37:25 97:2
**professionally** 96:21
**Professions** 2:16 3:22 4:9 13:22
  44:7,10
**professor** 36:23 37:17 38:2,8,10
  39:8 44:20,23 63:19 70:13,20
**prohibit** 61:16
**prohibited** 59:20 62:7 64:25
**prohibition** 60:23 62:1
**promote** 94:19
**promoting** 32:15
**prompt** 91:5
**proof** 82:23 97:22
**protocol** 25:24 64:13,22 65:3,4
**proven** 84:24
**provide** 35:15 66:13 79:12 92:15
**provided** 11:8 12:10 20:16 21:8
  34:5 52:13 63:8 68:14 78:9,11
**provides** 29:17 70:5
**providing** 16:6 17:7 18:25 31:7
**provision** 84:16
**provisions** 14:17 94:14
**provost** 7:22,22 13:12,15 32:3
  34:6,8 38:25 43:24 44:2 48:25
  49:2 50:1,6 51:11 52:23 53:14
  53:15 63:20 67:10 72:3 73:20
  74:11 75:2,3,21 80:7,11 81:9
**public** 36:24 37:2 73:21 94:18
  94:21,25
**purported** 56:8
**purpose** 94:18
**purposes** 97:18
**pursuant** 37:24 49:8 61:17 83:17
  94:10

Case 1:21-cv-00377-BKS-TWD   Document 119-9   Filed 04/29/25   Page 549 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 18

**pursue** 86:11 91:6
**pursued** 61:23 86:7
**pursuing** 91:17
**push** 98:2
**pushing** 32:3,11,23
**put** 5:20 29:7 42:2,6,20,21 82:2
  88:14 91:3
**puts** 19:10

### Q

**quad** 86:20
**qualified** 75:16
**quality** 38:23 39:7 53:10,19,19
  53:25 54:6,7 72:10 97:4
**question** 12:5,8 21:12 23:1 24:5
  24:7,11,19,21,23 25:23 30:10
  30:17 32:20,21 36:6 38:4 39:2
  41:1,20,20,22 47:3 52:16
  54:17 61:20 70:2 71:11,15
  72:12 75:12 91:1 92:12,14
**questions** 17:12 41:21,24 81:24
  82:1
**quick** 35:3
**quickly** 35:8 88:9 95:12

### R

**R-A-N-D-O-L-P-H** 43:8
**R-O-D-R-I-G-U-E-Z** 6:13
**raise** 5:23 27:4 42:24 99:2
**raised** 15:16,21 33:14,22 34:2
  35:16 69:2 70:6 72:10,14,24
**raising** 19:25 70:12
**Randolph** 43:4,7
**Randy** 16:6 20:15 28:7 47:1,25
  48:9 49:10,11,22,22,23 55:13
  58:9 60:13,15 62:5 65:6 77:19
  81:19
**ranks** 7:20
**reached** 12:17,20
**read** 18:12 33:24 34:3 72:6,19
  83:11 95:21
**reading** 49:4 52:1,2 82:23
**really** 18:21 19:20 81:13
**Reappointment** 2:12
**reason** 35:11 80:2
**reasonable** 19:4 35:13
**reasonably** 83:11
**reasons** 35:14 75:8 80:21 85:23
**rebut** 58:25
**recall** 10:11,14,17,20 11:21,22

  11:25 12:5,9,10,24 14:7 15:20
  22:12 25:10,14 26:4,6,9 27:20
  28:6,17,21 29:18 31:15,22
  33:11 35:17,20 36:16 39:10
  40:13,18,23,24 45:16,19 46:9
  49:4,16 50:21,23 54:9,22
  55:19 56:1,8 57:13 60:4,6
  61:1,5,6,7,8,10,11,12 62:18
  63:10 64:5 65:11,19 66:7 67:3
  68:1 71:7,19,23 72:9 73:2,4
  74:13 76:25 77:10,11,13,22
  78:12,22 79:2,5 80:6 81:6
**receipt** 97:19
**receive** 20:21 22:2,5 33:1
**received** 15:23 28:3 38:25 50:19
  55:19,21 61:13
**receiving** 19:6 28:6 35:19
**recess** 42:9,9
**recipient** 27:16
**recipients** 83:6
**recognize** 51:1 79:19
**recollection** 54:12,23 55:3
**recommend** 17:13 21:2 50:4 52:20
  52:22 54:19 55:5
**recommendation** 20:23 21:22 22:7
  22:9 25:4 34:6 48:24 49:2
  50:22 52:21 55:10 66:9 77:2
**recommendations** 16:13 20:21
  21:4,5 22:2,5 25:1,6 34:9
**recommended** 16:14 22:10,13,16
  24:24 55:15
**recommending** 34:10 50:1 55:12
  58:20
**reconvened** 42:14
**record** 2:9 5:2 6:5,7,8,9 14:9
  14:11,12 35:3,4,5,6 42:12,13
  43:6 59:5,7,8 69:18,19,20
  70:11 81:20 87:22 90:24,25
  93:13 100:5
**RECORDED** 1:21
**recording** 89:1,4,7
**records** 43:11 71:21
**refer** 12:3 16:24 17:3 19:12
  24:10 25:8 33:3,3 35:2 36:7
  44:12 45:11 49:19 50:16,25
  51:8 57:11,16 59:4,15 62:4,23
  67:22,23 68:11 71:11,25 72:5
  73:17 77:15,16 79:18 80:25
**reference** 28:14
**referenced** 93:19

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 550 of 558

800.523.7887          6-8-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 19

**references** 28:18 35:18
**referring** 14:1 18:19 49:21
  50:11 51:13 52:18 55:16 56:18
  57:12 74:4 78:13
**Refki** 27:18
**reflected** 54:19 78:25
**reflecting** 67:21
**reflective** 51:14
**refresh** 89:3
**refreshes** 33:10
**refusing** 41:18
**regard** 15:15 83:23,24
**regarding** 2:18 11:8,16 12:11,13
  14:18 17:19 19:16 21:24 25:19
  28:12 33:15 38:22 39:1 53:9
  60:18 64:13 68:20 78:13,24
  79:9 80:15 83:6 87:23
**regardless** 38:14
**regards** 26:9
**regular** 9:10
**regularly** 9:20
**related** 10:14 30:4 35:14 48:11
  53:16 58:23 64:14 93:12
**relates** 21:23
**Relations** 7:14
**relative** 15:18
**relevance** 70:15,16
**relevant** 17:18 66:11,23 68:25
  70:1
**relied** 22:23 23:1 46:12 64:16
**rely** 14:22 66:16 81:12,15
**relying** 46:23 56:2,9
**remain** 5:19,21
**remained** 24:18
**remedies** 86:7
**remedy** 84:4 85:8 92:14
**remember** 21:5 23:24 27:8,21
  37:9 40:9 55:2,21 56:25 63:17
  72:8 77:25 99:18
**remove** 16:8 21:2,6,9,20 23:18
  24:24 26:17 28:23 42:22 87:3
**removed** 11:2 15:4 16:2 22:8
  28:18 29:5 64:4,18
**removing** 20:25 23:8,11 24:13
  28:12,14 29:18,19
**renew** 37:21 38:16 50:7,10 52:24
  52:24 54:15 55:10 72:11,17,25
  73:1 90:19
**renewal** 3:19 32:4 34:11 54:1
  61:24 76:5 78:14

**renewed** 50:2,5 54:13,24
**renews** 90:21
**reorganization** 32:5 34:13,22
**reorganize** 37:13
**repeat** 25:13
**repeating** 92:1
**repetitive** 93:2
**replaced** 29:6
**report** 13:11 31:3 45:6 62:25
**reported** 46:3,6,14 49:18 61:13
**Reporters** 1:22 100:8
**reports** 7:11 13:12 55:13,16
  56:1,5,9
**represent** 25:11,15 26:2,2 65:12
  65:13
**representation** 23:17 94:17,22
**representative** 25:11 26:3 94:16
**representatives** 7:11
**represented** 96:25
**representing** 94:25
**request** 3:23 71:15,22
**requested** 71:17 75:5
**requests** 52:13
**required** 14:17 93:16
**requirements** 84:17 94:12
**requires** 84:13
**requiring** 94:22
**research** 7:14 35:10,24,25 36:23
  39:8 74:18,23,24,25
**reserve** 86:1 87:20
**reserves** 87:25 90:22
**resides** 97:22
**resignation** 58:10 59:17
**resources** 9:14 10:11,21 11:13
  11:16,20 14:15 16:7 20:22
  21:2 22:15,16 24:23,25 57:11
  59:23 61:2,25 63:8 78:3,4,10
  80:8 92:19
**responded** 30:8,20 88:25
**responding** 48:22,23 71:12
**responds** 63:4
**response** 2:18 28:17 35:15 63:5
  63:20 71:23 91:1
**responsibilities** 7:8 11:2,3
  37:20 38:15 43:25 59:25
**responsibility** 20:12 28:5 31:2
  31:8 32:16 53:16 66:25
**responsible** 14:16,20 17:22
**responsive** 32:18
**rest** 82:13,14 90:17,19

800.523.7887              6-8-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 20

**restrictive** 92:7
**restructural** 34:15
**restructured** 34:23
**restructuring** 34:16 36:20
**rests** 88:4
**result** 12:6 54:25
**resulted** 61:9
**results** 55:17,20
**return** 59:18
**review** 19:10 33:17,18,19 40:2
  63:7 72:16 81:10
**reviewed** 25:1 33:13 34:4 62:12
  76:16,17
**reviewing** 16:17 40:6 82:23
**revised** 74:1
**revisit** 91:9
**rid** 34:20 36:20 37:14 38:5
**right** 5:14,23 6:14 42:2,14,20
  42:24 51:24 52:1 55:15 59:10
  68:16 71:14 85:12 90:11,23
  91:24 94:21 95:10 96:8 98:9
**rights** 27:19 29:3,9 85:25 86:25
**River** 1:23 100:8
**Rockefeller** 36:25 73:22
**Rodriguez** 2:2 5:13 6:2,3,13,20
  42:1
**role** 28:5 30:9,11 32:6,16 75:21
**roles** 38:14
**Rotondi** 1:13 14:8 21:13,16
  22:18 24:4 26:18,20 41:11,21
  41:24 53:3 58:18 69:16,24
  70:5 82:1,19 85:5 88:1,3,5,8
  88:13,18,24 89:5,8,10,15,18
  89:21 90:3,6,10,16,18,20
  91:11,18,21 92:22,24 93:12
  95:2,6,8 96:6,7,10 97:1,8,11
  97:20 98:2,5,10 99:2,12,13
**Roughly** 39:24
**routine** 63:22 64:6
**rude** 91:12
**rule** 70:12
**ruling** 70:14,22
**run** 56:20
**running** 7:15 29:3

---
**S**

**S** 2:1,1,1,7
**S-T-E-L-L-A-R** 43:8
**salary** 74:8 76:18,21
**save** 95:17,17,19

**saw** 25:19 27:21
**saying** 12:16 18:23 21:11 22:16
  23:19 24:23,25 34:19,22 48:23
  49:11 50:9,19 55:3,4 57:4
  67:24 68:17 75:13 86:10 88:19
**says** 17:6 19:16,18 24:2 27:16
  35:9,9 49:23 51:11 59:16,16
  59:19 62:7,25 72:3 73:18
  77:25 87:7,11 94:2,9,17,20
**schedule** 99:3
**scheduled** 97:6
**School** 37:2,3 73:21,21
**scope** 32:23
**screen** 13:8,25 27:15 45:14
**se** 46:2 86:18,19,20,24
**search** 8:12
**seated** 6:4 43:5
**second** 31:2 36:16 44:21 45:16
  69:18 73:5,18 90:5 99:19
**secondary** 36:25
**section** 93:15 94:12
**see** 10:4 16:15 17:17 19:18
  33:10 37:19 68:15 82:24 90:6
  91:16
**seeing** 36:16 45:16
**seeking** 37:13,13 50:5 52:22
  79:13
**seen** 10:8 78:23
**Selchick** 2:19 26:16,24 28:7,11
  30:5,8,14,20 46:25 87:13
**send** 89:24
**sending** 19:4 68:19,20
**Senior** 47:24
**sent** 17:2 19:18 27:5,7 33:19
  49:24
**separate** 88:20
**separated** 56:19 57:1,13
**September** 7:4,5,6 8:19 58:9,11
  97:15,19 98:6
**series** 19:13
**service** 87:10 94:11,15
**set** 40:16 67:25 70:22
**settlement** 4:1 58:6 59:12 60:1
  61:17 91:6,17 98:21
**seven** 2:17 62:5
**Seventeen** 2:24 67:22,23
**share** 19:19 97:16
**shield** 42:3,21 82:3,5
**shields** 5:20
**short** 35:21 36:5 86:4

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 552 of 558

800.523.7887          6-8-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 21

**show** 9:22 10:1,2 13:19 16:24
  36:16 45:14
**showing** 13:25 27:9 36:13 44:21
  44:23 48:16 63:19
**shown** 49:25 59:11
**shows** 84:23
**side** 46:11 48:15 78:5
**sign** 48:21 49:14 50:3 52:20
  55:9,23
**signature** 51:24
**signed** 49:17 51:5,6,11,14,19
  52:14 55:7 58:9 72:3
**signed-off** 51:15
**significance** 99:7
**significant** 29:12,15 68:25 69:2
  96:13
**signing** 50:16 53:8
**similar** 31:5
**Similarly** 97:1
**simply** 38:6,10
**simultaneous** 97:24
**sir** 6:6,11,14,15 8:20 10:4,5,23
  14:13 36:11,17 42:7 51:23
  82:6 88:7 96:1 98:7 99:1
**sit** 79:3
**sitting** 5:5
**situation** 10:12 16:22 19:10
  22:14 28:4 29:24 31:4,12
  32:14 49:1
**situations** 9:11 21:7,10 31:5
**six** 2:16 33:5 36:5
**Sixteen** 2:24
**Sixty** 3:22 18:5
**Sixty-** 16:25 62:4
**Sixty-eight** 4:2 89:12,16,23
  90:14
**Sixty-five** 3:24 17:3
**Sixty-four** 3:24
**Sixty-one** 3:22
**Sixty-seven** 4:1 57:19,20 58:1
  59:11
**Sixty-six** 3:25 18:7
**Sixty-three** 3:23
**Sixty-two** 3:23
**skill** 100:6
**Skype** 63:3
**slander** 86:18
**slowly** 33:10
**solemnly** 5:24 42:25
**solicit** 38:21 39:2,6

**somebody** 22:10 67:15 76:7
**Sommer** 1:11 99:10,11
**SONY** 2:16 100:4
**sooner** 97:16
**sorry** 11:24 18:12 19:19 23:9
  33:7 41:23 46:5 52:4 55:21
  70:8 85:3,5 90:6 95:7
**sort** 17:14 39:20 63:21 74:15
**sound** 91:12
**speak** 85:17,18
**speaking** 25:12,17,18 26:2 44:12
  65:14 71:2
**specific** 12:13 15:19 21:5 27:8
  64:9 65:19 70:5 84:13
**specifically** 23:25 27:21 40:9
  75:2,18 76:25 87:6,7
**specificity** 83:1,17
**speculation** 26:20
**spell** 6:4,10 43:5
**spent** 92:21
**splitting** 97:11
**spoke** 97:8
**staff** 15:8,13 17:20,22 19:8,8
  20:11 30:11,22 47:18 56:14
  68:5 74:10,19 75:2
**standard** 64:13 65:18 83:20,22
  86:18
**standards** 75:16
**standing** 5:19,22 86:10
**Stark** 16:6 20:15,18,24 21:8,15
  21:19 22:17 24:2,14 25:8 28:7
  47:1 48:1,9 49:10,11,22 55:13
  58:9 60:13,15,22 61:1 62:5
  65:6 77:20,22,23 81:19
**Stark's** 23:17 24:10 25:22
**start** 49:8,9
**started** 7:6,21 48:4 49:5 77:14
  85:7
**starting** 48:20 75:19
**state** 1:1,5 4:1,3,9 5:5 6:4,10
  6:24 8:3 13:22 40:2 41:15
  43:5 58:7 60:2 81:10,14 82:22
  84:20,22 86:7 87:6,16 94:3,15
  94:18,22 100:3
**stated** 20:15
**statement** 21:22,23 30:20 53:2
  69:24 86:17
**statements** 86:22,24 89:6
**states** 84:21
**Station** 1:8

800.523.7887                    6-8-2022, WORD INDEX, Alaei case            Associated Reporters Int'l., Inc.

Page 22

**status** 51:2
**stay** 90:24
**Stellar** 2:4 16:9 18:22,23 19:4
  19:14,15,18 32:3 34:6 42:17
  42:18,19 43:3,4,7,9,16,16,17
  43:18 59:10 68:13 69:9 82:6
  83:5
**stipulate** 88:18
**stipulation** 4:1 58:6
**Stop** 70:17
**strategic** 85:23
**strike** 13:20 16:5 29:11,11
  36:21 44:25 56:4 60:4 77:10
  80:13
**student** 7:12 19:19 68:14 70:12
**students** 17:11 44:3 56:14 59:22
  62:9 63:18 70:25 80:5
**subdivisions** 94:23
**subject** 18:24 25:25 27:16 94:12
**subjected** 80:7
**submissions** 95:19 97:24
**submit** 88:20 98:14
**submitted** 18:3 72:23,24
**subpoena** 2:18
**subsequent** 97:18
**subsequently** 77:1
**substantial** 30:9,11 39:14
**substantive** 85:19
**successful** 75:15,15
**sue** 84:1
**suffering** 99:4
**sufficient** 97:25
**suggest** 23:13
**suggesting** 21:1 22:10 23:13,21
  63:20 96:24
**SUNY** 1:14 2:14,16,18 5:6 7:18
  8:4,17 14:16 15:10,17 16:2,18
  20:17 25:11,12,14,16 26:3
  28:14,16 31:10,23 39:12,19,22
  40:6,19,19 41:5,5 45:2 58:21
  60:8,12 61:18 63:13 64:12
  65:14,21,22 79:6 80:18 81:8
  85:7 86:24 95:15
**SUNYA** 2:11,12,19,20
**supervising** 13:10
**supervisor** 31:25 38:22 50:12
  53:23
**support** 61:23 78:8
**supported** 62:3
**supportive** 32:1

**suppose** 60:20
**supposed** 56:15
**supposedly** 58:24
**sure** 11:25 13:6 14:10 15:20
  18:24 21:23 24:1 25:14 31:19
  38:4 43:18 47:7 49:7 53:14
  54:4,17,18 58:5,13,19 59:6
  66:5 68:8 72:12,13 73:2 85:14
  94:1 95:18
**sustain** 22:19 24:8
**sustained** 21:17 26:24 27:2 53:6
  70:9,15,21
**swear** 5:24 42:25
**sworn** 5:22 6:3 42:23 43:4
**system** 74:11
**Szelest** 15:7,8 16:9,9,12,13,15
  16:17,21 17:5,15,20 18:22,23
  19:5,6,7,14,23 20:10,12,13
  26:7 27:16,23 28:2 29:10 30:5
  30:6 31:1,6,10,13 32:11,13
  47:17 60:21 67:8,24 68:4,21
  74:1,9,18,22 75:19

---

**T**

**T** 2:1,7,7
**take** 5:20,21 10:1 42:8,21 45:13
  64:12 66:25 82:3 87:24 90:1
  91:24 98:24 99:7
**taken** 15:17
**talk** 31:21 68:24 99:1
**talked** 93:13
**talking** 18:10 56:23 62:1 84:10
  92:7,7
**talks** 93:22
**target** 97:16,18
**team** 68:23
**tell** 83:21
**telling** 63:24 86:24
**temporary** 81:21,22
**ten** 2:20 42:8,9
**tend** 86:22
**term** 4:10 80:6 93:17
**terminate** 37:4,7 38:23 79:9,13
  79:24 87:4
**terminated** 37:10 79:6 80:10
  86:12
**terminating** 79:20 80:3
**termination** 38:16 96:3,5
**terms** 11:13 30:18 45:1 53:19,25
  54:2 72:10,20 78:24 86:4

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 554 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case         Associated Reporters Int'l., Inc.

Page 23

**testified** 20:24 21:19 22:23
  25:8 26:16 30:5,21 58:20 70:4
  83:25 85:1
**testifying** 14:7 54:22
**testimony** 5:24 10:17 12:4,24
  16:6,7,10 20:16,19 21:8 23:17
  42:25 71:8,19
**thank** 5:21 6:18 9:2 42:1,4,7,11
  43:13,14 71:1,3 73:15 81:25
  82:6,8 85:11 91:11,18 98:10
  99:19,20,20,22
**Theirs** 96:18
**thing** 9:15
**things** 44:3,19 63:18 90:2 92:9
**think** 10:8 24:5 30:20 52:3,7
  66:15,24 69:7 72:18 83:13,21
  85:19,23 86:13,16 87:5,15
  92:1,18,20 95:24,25 97:21
  98:3
**thinking** 91:15,16
**third-part** 86:5
**third-party** 18:25 86:6,13
**Thirteen** 2:22
**Thirty** 3:6
**Thirty-** 48:16,17 49:19
**Thirty-eight** 3:10
**Thirty-five** 3:9
**Thirty-four** 3:8 50:17
**Thirty-nine** 3:11 77:17,18,19
**Thirty-one** 3:7
**Thirty-seven** 3:10 33:8,8 35:8
**Thirty-six** 3:9 33:4,7 51:9
  71:25 72:1 78:19
**Thirty-three** 3:8 48:17 49:20
  52:18
**Thirty-two** 3:7
**thorough** 8:14
**thought** 68:25 69:4 75:1 91:4,14
**thoughts** 87:23
**thousand** 39:25 41:9 84:22 87:8
  94:3
**three** 2:13 5:7 33:5 36:3 48:18
  49:20,25 50:16 71:7 73:5
  82:24 98:11,19
**three-** 97:13
**throat** 83:19
**throw** 82:5
**thumb** 4:2 89:20 90:15
**time** 8:5,7 12:21 30:7 31:22
  33:19 34:21 35:22 36:5,17

38:18 42:2 43:23 45:1 46:14
  47:13 48:10 49:6 50:24 53:2
  53:15 55:9 56:23,24 64:7,22
  67:12 74:10 75:21 76:16,17
  78:1 80:1 81:4,8 82:12 92:19
  92:21 97:7,25 98:12,13,23
  99:19,20
**times** 63:23 96:22
**title** 4:10 9:5,9 12:13,18,18
  14:3,15 15:9 20:22 45:5,9
  61:9,25 67:15
**titles** 67:11,14
**today** 27:17 34:19 86:3 90:12
  93:13 95:23 97:14
**told** 22:17 53:24 62:17
**tomorrow's** 17:6
**top** 9:17 20:7 68:9
**topic** 53:17 92:18
**touch** 68:6
**trade** 86:23
**TRANSCRIBED** 1:22
**transcript** 24:11 97:7,14,19
  100:2
**transcription** 100:5
**Transcriptionist** 100:7
**transmitted** 60:14
**transpire** 9:9 15:14 17:21
**transpiring** 9:21 11:18
**trial** 1:7 5:1,6 99:20,23
**tried** 75:18
**trigger** 63:19
**true** 100:5
**Trustees** 2:16 8:4,11
**truth** 5:25,25,25 43:1,1,1 69:25
**try** 75:8 80:22
**tuncing** 90:12
**turn** 20:14
**twelve** 2:22 12:4
**twenty** 3:1 24:11
**Twenty-eight** 3:5
**Twenty-five** 3:4
**Twenty-four** 3:3
**Twenty-nine** 3:6
**Twenty-one** 3:2
**Twenty-seven** 3:5
**twenty-six** 3:4 25:9,22 73:24,25
  78:21
**Twenty-three** 3:3
**twenty-two** 3:2 28:11
**two** 2:12 5:7 29:6 36:2 44:18

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 555 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case              Associated Reporters Int'l., Inc.

Page 24

46:19 48:17 53:15 66:16,20
73:22 74:2 82:21,25 83:14,24
93:9 97:25 98:19
**two-** 84:13
**two-year** 76:7 84:17
**type** 29:16 30:21,23 35:21 78:3
92:9
**types** 20:10,25 21:7,9 26:1
29:13 30:24 44:18 62:15 63:16
**typical** 20:9 25:24 30:18,21
80:17
**typically** 11:1,15 15:9 25:5
30:13

---

**U**

**U** 81:21
**U.P.P** 84:20
**U.U.P** 14:18,23 15:24 21:20,23
22:25 23:2,7,12,14,21 24:12
24:13,14,15 26:17 30:1,3
39:13,15 40:15,20 44:13 64:13
65:2 83:25 84:7,18,19 86:6
87:11 94:17 95:13,13
**ultimately** 11:22 12:1 37:4
49:14 61:1,14,23 66:7 77:22
78:8 79:5 80:10
**uncomfortable** 49:1
**underneath** 66:6
**understand** 20:18 54:17 70:24
72:12,19 99:5
**understanding** 10:24 50:8 52:12
52:19 53:1,5 56:16,17,20 57:8
57:9 60:13,22 62:13 73:19
74:3,6 76:1,3 78:20,21 79:3
**understood** 21:8 22:4 79:16 95:2
**undertaken** 45:23
**undertaking** 23:2
**undertook** 25:12
**unfolded** 79:15
**unfortunately** 96:17
**unfounded** 61:10,11
**unintelligible** 7:17 8:24 10:3
14:8 17:2 18:7 21:6 22:20
24:3 32:19 33:24 34:24 36:6
37:25 46:5 52:3 57:21 58:18
69:9,13 70:3 72:23 77:13
78:17 80:11 82:15,16 86:19
88:17,25 89:18 91:8,10 95:6
95:21 97:10,11,20 98:25
**union** 39:20 86:8,9,11 87:13,15

**unions** 39:16,18
**unit** 13:12 84:1 87:9
**United** 2:15 3:22 4:9 13:21 44:6
44:9
**units** 20:21 34:14
**universities** 17:10 74:25 75:10
**university** 2:15 3:14,22 4:1,9
6:24,24 7:2,8,9,11,15 8:2,3
8:13,16 9:6,12,14,21,25 12:11
13:22 17:21 20:12 21:25 27:20
29:4 31:20 34:12,13,16,18,23
34:25 36:19 37:4,13 39:12,17
39:20 43:22 44:6,9 50:20
56:19 58:7,7 59:13,18,22 60:2
60:18 62:9 67:14 74:7,24
**untrue** 86:18
**unusual** 81:2 96:10
**update** 9:10
**updates** 11:8
**use** 19:20
**usual** 44:14
**usually** 30:23 91:14,21

---

**V**

**v** 5:6 100:4
**varies** 7:19 21:11
**variety** 34:25 48:14 74:9
**various** 35:20 63:3
**vary** 11:1
**verbal** 59:20 62:8
**verdict** 82:16
**versus** 93:8
**Vice** 7:12,22 47:24
**Vice-President** 59:23
**vice-provost** 48:14 68:23
**violate** 92:10
**violated** 86:25
**violation** 23:7,12 24:13 58:22
65:2 86:11 92:5
**violations** 61:3,3 77:24 86:15
**violative** 23:14
**visible** 75:9
**voice** 43:9,10
**Volynsky** 27:18
**VS** 1:4

---

**W**

**W** 2:1
**w/** 2:18
**waiting** 63:5

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 556 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 25

**want** 17:13 20:18 36:9 63:2 85:12 88:16,18,22 89:5,24 90:1,1,19 91:9 93:3 96:20 97:6
**wanted** 12:15 91:6
**wanting** 99:2
**wasn't** 21:9,12 32:2 74:12 77:8 88:25
**waste** 82:6 92:19
**wastepaper** 42:6
**way** 9:17 20:6 54:5 68:6,9 76:3 77:6 92:11 96:24
**ways** 83:24
**we'll** 5:17 87:22 88:19
**we're** 5:6 14:20 42:8 56:23 90:12 92:7,7 95:14,15 97:24
**we've** 70:17,24 84:10 92:1 95:25
**website** 28:12,15,19 29:1,19,21 64:18 92:8
**Wednesday** 5:4
**week** 53:15
**weekend** 98:9
**weight** 99:7
**welcome** 42:5
**went** 7:19 20:6 54:18 68:9 96:15
**whatnot** 94:19 99:4
**whatsoever** 6:16
**William** 49:22 50:18 51:9 66:16
**Williams** 2:13 19:15 68:14,19,23
**Williams'** 71:1
**wish** 22:20 82:10 86:3 88:1 95:24,24
**witness** 5:11 6:3,12,16,17 7:19 8:1,7,19,22,25 10:2,5 15:23 23:3,20 32:9,22 39:4 41:13 42:4,7,15 43:4,7,12 46:21 47:1,5,7 51:25 52:3,6,9 54:7 57:23 58:4,19 59:1 61:7,11 62:21 66:18 70:4 73:13 76:21 80:19 82:4,8
**witnesses** 82:10,11 86:16 88:2
**words** 9:16 13:14 34:19 76:7 86:19
**work** 11:6,14 29:19 33:15 38:23 39:7 41:5 45:8 53:9,10,19,25 54:6 63:4 66:5 72:11 73:9,12 73:14 75:1,3,7,7,23,23 80:20 96:14,17,21 97:2,3,4 98:8
**worked** 68:22 81:18,19
**workers'** 85:9

**working** 74:23
**world** 87:2
**worth** 39:7
**wouldn't** 9:7 37:16 38:1 98:21
**write** 98:20
**writing** 27:17 49:24 59:23 62:10 68:3
**written** 59:21 62:8 89:19 90:14 94:24 95:17,19 98:20
**wrong** 18:16 52:2
**wrongful** 96:3,4
**wrongfully** 86:12
**wrote** 18:16 71:10

---
**X**
---

**X** 1:2,6 2:7

---
**Y**
---

**yeah** 36:18 44:12 85:18 88:18 89:15,21
**year** 31:14,17,19 76:5,6,9,14 81:22
**year's** 98:23
**years** 7:4,5 8:20,22 84:14 93:9
**yesterday** 16:6 20:15,24 26:16 87:13 91:3 92:13
**York** 1:1,5,8 5:5,5 6:25 8:3 13:22 40:2 58:7 100:3,9
**YOUNG/SOMMER** 1:12

---
**Z**
---

**Zimpher** 8:8,11

---
**0**
---

**02/08/2018** 2:19,20,21
**02/10/2017** 2:15
**03/20/2014** 73:25
**04/16/2014** 2:12
**04/19/2022** 2:18
**04/28** 51:5,6 52:5
**04/30** 50:20
**04/30/18** 50:18
**05/14** 51:21
**05/14/18** 52:8
**05/14/2018** 51:14,20
**05/31/2017** 2:14
**07/02/2011-07/01/2016** 2:16
**09:35:16** 6:8
**09:36:31** 6:8
**09:46:02** 14:11

Case 1:21-cv-00377-BKS-TWD    Document 119-9    Filed 04/29/25    Page 557 of 558

800.523.7887                6-8-2022, WORD INDEX, Alaei case          Associated Reporters Int'l., Inc.

Page 26

**09:46:47** 14:11

---
**1**
---

**1** 1:8 4:5,6,6,7,7,8,8
**1/23/19** 3:14
**10** 1:23 37:8 58:14 62:6 100:8
**10/10/18** 4:8
**10/20/15** 4:6,7
**10:22:09** 35:5
**10:22:16** 35:5
**10:31:49** 42:12
**10:41:36** 42:12
**11/25/20** 3:6
**11:05:49** 59:7
**11:06:01** 59:7
**11:23:03** 69:19
**11:23:54** 69:19
**112** 84:20 93:15,21,22,25 94:1,6
  94:9
**12** 10:18 97:19
**12/04/2017** 2:13
**12/09/2014-2** 2:12
**12/4/17** 4:8
**12:10** 99:23
**12224** 1:8
**13** 2:15 63:1
**132554** 1:2 100:4
**13662** 1:23 100:9
**14** 18:22 51:22 52:2 94:11,14,14
**140** 4:9
**14th** 19:16 51:13 71:12
**16** 36:15
**17** 3:20
**18** 3:25 56:23
**19** 3:20

---
**2**
---

**2** 4:5
**2-14-18** 2:22
**2-15-18** 2:22
**2/13/18** 3:2
**2/14/18** 3:1,3,20,20,21
**2/15/18** 3:21,24
**2/16/18** 3:4
**2/22/18** 2:24 3:1
**2/23/21** 3:13
**2/27/18** 3:3
**2/28/18** 3:4
**2/5/15** 4:6
**2/8/18** 2:21 3:2,24

**2/9/18** 2:23,25 3:17
**20** 74:2
**2008** 13:2
**2014** 36:15 73:22 74:2,14
**2015** 74:17 75:19
**2017** 2:17 7:5,6 41:8 58:10,11
  58:14 62:6 63:1 71:12 81:21
**2018** 9:24 10:11 17:1,5 27:5,12
  33:9 37:8 38:8 43:19,24 48:11
  50:13 51:22 55:24 72:5,6
**2020** 73:22
**2021** 10:18 54:10 71:8
**2022** 1:6 5:4
**22nd** 33:9
**23** 98:17
**24** 98:17
**24th** 98:17
**27** 2:23
**2nd** 50:13,21 52:19 98:8,9

---
**3**
---

**3** 1:7 4:4
**3-4-18** 2:23
**3/1/18** 3:19
**3/20/18** 3:5
**3/26/18** 3:6
**3/7/18** 3:5
**3/8/18** 3:18
**3/9/18** 3:25
**30** 95:16
**33** 3:9,10
**33-43** 4:10
**36** 2:11

---
**4**
---

**4/22/2014** 4:5
**4/27/18** 3:7
**4/28/18** 3:8
**4/29/14** 3:23
**4/30/18** 3:8,9
**4/31** 3:7
**4/6/17** 4:7
**4/7/16** 3:16
**43** 2:4
**48** 3:8

---
**5**
---

**5/1/18** 3:19
**5/14/18** 3:9
**5/20/14** 4:5

800.523.7887                6-8-2022, WORD INDEX, Alaei case        Associated Reporters Int'l., Inc.

Page 27

**5/21/18** 3:10
**5/22/18** 3:10
**5/23/18** 4:4
**5/8/14** 3:23
**50** 3:8
**59** 4:1

---
**6**
---

**6** 2:3
**6/4/2015-2** 2:9
**6/7/18** 3:22
**62** 3:13
**67** 2:24
**69** 3:21

---
**7**
---

**7/10/18** 3:11
**7/2/16-7/1/22** 4:9
**7/2/19** 2:24
**7/27/18** 3:18
**7/6/18** 3:11
**7/9/18** 3:12
**77** 3:11,16
**79** 3:13

---
**8**
---

**8** 1:6  9:24  13:8  17:1  72:5,6
  97:15
**8/1/2022** 100:7
**8/10/18** 3:13
**8/13/18** 3:16
**8/21/18** 3:17
**8/9/18** 3:12
**89** 4:2
**8th** 5:4  17:5

---
**9**
---

**9** 2:18  27:5,11  54:10  71:8  89:2
**9/18/17** 4:2
**9:33** 1:6  5:1