UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DR. KAMIAR ALAEI,

                            *Plaintiff*,

          -against-                          21-CV-0377
                                                         (BKS)

STATE UNIVERSITY OF NEW YORK AT
ALBANY,

                            *Defendant*.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION *IN LIMINE***

LETITIA JAMES
New York State Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

David C. White
Assistant Attorney General
Bar Roll No. 700203
Telephone: 518-776-2601
Email: David.White@ag.ny.gov

Matthew Gallagher
Assistant Attorney General
Bar Roll No. 701111
Telephone: 518 776-2284
Email: Matthew.Gallagher@ag.ny.gov

Date: June 12, 2025

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND........................................................................................... 1

    A.    Defendant's Motion *in Limine* ................................................................... 1

    B.    The Court's Decision on Defendant's Motion *in Limine*........................ 2

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT ............................................................................................................................ 4

    POINT I:    THE COURT FAILED TO PROPERLY CONSTRUE THE REASON THE INVESTIGATIVE REPORT IS BEING PROFFERED, PROPERLY PERFORM A RULE 403 ANALYSIS, AND CONSIDER THE EFFECTIVENESS OF A JURY INSTRUCTION TO CURE ANY RISK OF PREJUDICE OR CONFUSION ................................................................ 5

    POINT II:    ALLOWING PLAINTIFF TO QUESTION CHANTELLE CLEARY ABOUT A PRIOR INSTANCE INVOLVING "SOME MISJUDGMENT" AND AN "UNFORTUNATE TONE" WOULD VIOLATE THE RULES OF EVIDENCE............................... 10

CONCLUSION......................................................................................................................... 11

**PRELIMINARY STATEMENT**

Defendant, State University of New York at Albany (Defendant), submits this memorandum of law in support of its Motion for Reconsideration of certain rulings made by the Court concerning Defendant's Motion *in Limine*. Specifically, Defendant should be permitted to introduce the Title IX investigative report into evidence because the Court failed to properly construe the reason the investigation report is being proffered and properly perform a Rule 403 analysis. Also, Plaintiff should be precluded from attempting to impeach a non-party witness about findings in an unrelated litigation that the witness's prior conduct "indicated some misjudgment" and she used an "unfortunate tone," because impeachment on such grounds violates the Federal Rules Evidence. The Court's rulings to the contrary require reconsideration and reversal.

**PROCEDURAL BACKGROUND**

**A.   Defendant's Motion *in Limine***

On April 28, 2025, Defendant submitted a Memorandum of Law in Support of Defendant's Motion *in Limine* (Motion). *See* ECF No. 110. In the Motion, Defendant sought evidentiary rulings from the Court in advance of trial on eleven issues expected to arise at trial. *See generally id.* Among those issues, and as relevant here, Defendants sought to (1) introduce evidence and testimony regarding the underlying Title IX investigation into Plaintiff, including a written report; and (2) preclude Plaintiff from introducing evidence regarding an unrelated state-court litigation involving non-party witness Chantelle Botticelli.[1] *Id.* at 1-4, 8-9.[2]

---

[1] Chantelle Botticelli was known as Chantelle Cleary during the time period relevant to this litigation.

[2] Citations to docketed materials reference the Court's pagination.

1

Defendant argued that the investigative report[3] is admissible because it is relevant to the underlying investigation into Plaintiff that served as the basis for Plaintiff's nonrenewal, and its probative value is not substantially outweighed by prejudice or confusion of the issues. *Id.* at 1-2 & n.1. Defendant further argued that if the report was considered hearsay, it qualifies under the business record exception of Federal Rule of Evidence (Rule) 803(6). *Id.* at 4. Finally, Defendant contended that Plaintiff is likely to introduce evidence at trial that the relevant investigation resulted in an "unsubstantiated" finding and argue that he was cleared of any wrongdoing. *Id.* Accordingly, Defendant highlighted that, in this instance, the investigative report would be necessary to provide context to the jury, and the defense would be handicapped without said report. *Id.*

With regard to evidence from an unrelated state-court litigation involving a non-party witness, Defendant argued that it (1) is irrelevant, prejudicial, and would confuse the jury; (2) would create a trial within a trial and cause needless delay; (3) is impermissible character evidence intended to paint the witness as a bad actor; and (4) is impermissible propensity evidence.

B.  **The Court's Decision on Defendant's Motion *in Limine***

The Court issued its decision on Defendant's Motion on May 30, 2025. *See* Memorandum-Decision and Order, ECF No. 141 (Decision). Relevantly, the Court held that the investigative report was inadmissible, and the Court reserved decision as to whether Chantelle Botticelli could be cross-examined by Plaintiff about "some misjudgment" and using an "unfortunate tone" in another investigation. *Id.* at 5, 10.

---

[3] The Court referenced in its decision that the investigative report includes 15 exhibits that were not discussed by either party. Decision 3 n.1. Those exhibits are part of the investigative report and should be included for completeness. The exhibits are expressly referenced in the written report as supporting the specific findings. There is nothing in Defendant's original Motion limiting the investigative report to just the 11-page summary.

2

The Court held that the investigative report was inadmissible under Rule 803(6)(E) because it lacked trustworthiness and Rule 403 because its "probative value was substantially outweighed by the dangers of unfair prejudice and confusing the issues." *Id.* at 5. The Court's analysis construed that the investigative report would be proffered for its truth. *See id.* at 2-3 (citing *Accely v. Consol. Edison Co. of N.Y., Inc.*, 2023 WL 3045795 (S.D.N.Y. Apr. 20, 2023), which considered an investigative report that addressed the ultimate issue for the jury and were being admitted for the truth of the matter asserted). Thus, the Court undertook an analysis to determine whether the investigative report was subject to any hearsay exception and considered its trustworthiness and reliability.[4] *Id.* at 3-4. The Court also found a danger of unfair prejudice and confusion of the issues because Plaintiff was not interviewed as part of the investigation, "[the investigative report] contains conclusions on disputed facts,"[5] the investigative report details circumstances leading to Arash Alaei's (Plaintiff's brother's) separation from SUNY Albany, and the report "summarizes 'Other Concerns,' which appear unrelated to the three policy violations [being investigated]." *Id.* at 4.

The Court ultimately reserved decision on whether to permit impeachment of Chantelle Botticelli. *Id.* at 10. However, the Court stated that the Appellate Division's observation that Botticelli's conduct "indicated some misjudgment" and that she used an "unfortunate tone" in her meeting with a separate individual "may be an appropriate ground for impeachment under Rule 607," and the "Court will consider this issue at trial." *Id.*

---

[4] The Court determined that the reliability of the investigative report was questionable because "it contains no conclusion as to the claims it outlines or any recommendation as to Plaintiff's employment," it is undated, unsigned, one-sided, and marked "Draft 1." Decision 4.

[5] The Court cited examples of disputed facts as whether Plaintiff had knowledge that his brother continued to be involved in SUNY Albany projects and whether students were directed by Plaintiff to work with Plaintiff's brother. *Id.*

3

**STANDARD OF REVIEW**

Motions for reconsideration are expressly permitted under Local Rule (L.R.) 60.1. *See* L.R. 60.1. "A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Keir v. Schoeberl*, 2025 WL 520764, at *1 (N.D.N.Y. Feb. 18, 2025) (quoting *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995)). "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable." *Id*. at *2 (quoting *Corpac v. Rubin & Rothman*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013)).

A motion for reconsideration should be granted where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 311 (N.D.N.Y. 2009) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

**ARGUMENT**

The Court clearly erred in the wholesale preclusion of Defendant's Title IX investigative report due to its "lack of trustworthiness" and being substantially outweighed by the dangers of unfair prejudice and confusing the issues. The Court clearly mistook the report for hearsay, when it is not being proffered for its truth, as well as failed to consider necessary issues when conducting a Rule 403 analysis, constituting reversible error. It is a manifest injustice to preclude Defendant from introducing evidence that forms the foundation for its defense that does not go to the ultimate issue to be decided by the jury; especially if Plaintiff intends to introduce evidence that any investigation was "unsubstantiated" to mislead the jury that Plaintiff was cleared of any wrongdoing. Also, the Court clearly erred in not precluding Plaintiff from attempting to impeach

4

Chantelle Botticelli about a prior instance involving "some misjudgment" and an "unfortunate tone." There is no Rule of Evidence that would permit such impeachment.

**POINT I**
**THE COURT FAILED TO PROPERLY CONSTRUE THE REASON THE INVESTIGATIVE REPORT IS BEING PROFFERED, PROPERLY PERFORM A RULE 403 ANALYSIS, AND CONSIDER THE EFFECTIVENESS OF A JURY INSTRUCTION TO CURE ANY RISK OF PREJUDICE OR CONFUSION**

As a threshold matter, Defendant intends to offer the Title IX investigative report into evidence solely to demonstrate that certain complaints were made against Plaintiff and their effect on the decision-making process leading to Plaintiff's non-renewal, not for the truth of its contents. *See* Rule 801, Advisory Committee Notes (1972) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). An investigative report is not hearsay when the report is being used to prove that decision-makers legitimately believed that an employee had acted a certain way, not to prove that employee actually acted improperly. *Vahos v. General Motors Corp.*, 2008 WL 2439643, at *4 (E.D.N.Y. June 16, 2008) (using investigatory report not to prove that employee actually acted improperly, but to prove that the decision-makers who were involved in discharging employee legitimately believed that he had so acted, was legitimate non-hearsay purpose); *see also Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 65 (2d Cir. 2003) (holding statements made to an employer about an employee's abusive behavior towards colleagues were not hearsay when admitted for purposes of establishing whether or not the employer thought the employee was disabled within the meaning of ADA). Thus, the investigative report in this matter

5

is clearly not hearsay. Therefore, the preclusion of the investigative report on hearsay grounds was a clear error of law.[6]

The Court's analysis of the investigative report as "trustworthy" or "reliable,"[7] and the preclusion of the report on any such basis, is equally erroneous. *See* Decision 4-5. The inaccuracy of an investigative report does not matter if the decision maker believed the information. *Cameron*, 335 F.3d at 65. Also, the author of the report will testify at trial about the report, which should extinguish any such concerns, especially since Plaintiff will have an opportunity to cross-examine the witness about the report. *See* Defendant's Witness List, ECF No. 109 (identifying Chantelle Botticelli as a trial witness).

Consequently, the Court's reliance on *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60 (2d Cir. 1998), to assess reliability and trustworthiness is misplaced. In *Paolitto*, the Second Circuit considered whether the district court's preclusion of the findings and investigatory file of the Connecticut Commission on Human Rights and Opportunities (CHRO)[8] (CHRO evidence) was an abuse of discretion. *Paolitto*, 151 F.3d at 64-66. The CHRO evidence was being offered at trial to establish that plaintiff's evidence of age discrimination was insufficient, which was relevant to

---

[6] Defendant initially argued in its Motion that the investigative report satisfied the business record exception to the hearsay rule as part of a comprehensive argument, to the extent the Court considered the report hearsay. *See* Motion 7.

[7] As part of its analysis of the reliability of the investigative report, the Court finds it problematic that the report contains "no conclusions as to the claims it outlines or any recommendation as to Plaintiff's employment." Decision 4. The Court's concerns contrast other instances where courts find it problematic when such reports do, in fact, contain determinations on the issues addressed therein. *See, e.g.*, *Paolitto*, 151 F.3d at 62-64 (affirming trial court's preclusion of investigative file where investigator made ultimate finding on same issue being litigated at trial); *Contra Light v. City of New Haven Board of Education*, 2024 WL 3593817, at *2 (D. Conn. July 31, 2024) (excluding references—testimonial or documentary—to the conclusions of three investigative reports at trial, as such evidence would usurp the role of the jury).

[8] CHRO is "the state equivalent of the [Equal Employment Opportunity Commission]." *Paolitto*, 151 F.3d at 62.

the ultimate issue at trial of whether the plaintiff was subject to age discrimination in his employment. *Id.* at 62, 64-66. Accordingly, the Second Circuit reviewed the district court's analysis under principles of hearsay and prejudice based on the proffer that the evidence was being admitted for its truth and it was directly related to the ultimate issue for the jury. *Id.* at 64-66. Neither concern exists in this matter. As set forth above, the investigative report is not hearsay. Furthermore, the subject matter of the investigative report is not an issue for trial, as the issue for the jury is whether Defendant's decision to non-renew Plaintiff was based on gender bias; not whether Plaintiff committed the acts described in the investigative report.

This erroneous comparison with *Paolitto* applies equally to the Court's determination that introduction of the investigative report will confuse the jury. *See* Decision 4. The Court relies on *Paolitto* to support a suggestion that the investigative report could confuse the jury. *Id.* Confusion of the issues was relevant in *Paolitto* because the evidence being offered went to the ultimate issue of discrimination for the jury—the plaintiff's evidence of age discrimination. *Paolitto*, 151 F.3d at 64-65. However, there is no concern about confusion here because the investigative report does not touch on the ultimate issue—whether the decision to not renew Plaintiff's employment contract was based on sex/gender. Thus, any "conclusions of disputed facts" that could lead to confusion, *see* Decision 4, are not material to the ultimate issue of whether Plaintiff suffered gender discrimination. In other words, whether Plaintiff had knowledge of his brother's continued involvement with SUNY Albany or directed students to work with his brother are not materially relevant to whether Plaintiff suffered gender discrimination. Further, the Court's error surrounding confusion of the issues was compounded by its concern for the portion of the investigative report titled "Other Concern" having no relation to the "three policy violations" that were the focus of the investigation. *See* Decision 4. To the extent the "Other Concerns" were relied upon in

7

Defendant's decision-making, those concerns are as equally relevant to the decision-making process, making it wholly irrelevant whether the concerns are directly related to the original focused areas of the investigation. As none of those concerns address any issues for the jury, there is no real concern of confusion. Thus, the significant weight the Court placed on the possible confusion of the issues is clear error.

The probative value of the investigative report is not substantially outweighed by the danger of unfair prejudice because it does not address an ultimate issue for the jury. *Contra Light v. City of New Haven Board of Education*, 2024 WL 3593817, at *2 (D. Conn. July 31, 2024) (finding admission of investigative reports represented "substantial danger of unfair prejudice" to Plaintiff because the reports reached conclusions on ultimate issues for the jury and were "tantamount to telling the jury 'this case has already been decided and here is the decision'"). To the extent the Court found that the probative value of the report was substantially outweighed by the danger of unfair prejudice based on conclusions of disputed fact, as addressed above, there are no such disputed facts contained in the document that are material to the issue of discrimination. This applies equally to the Court's concern of prejudice arising from a portion of the report titled "Other Concerns." *See* Decision 4. Also, again, the inaccuracy of an investigative report does not matter if the decision maker believed the information. *Cameron*, 335 F.3d at 65. This is not to say that there will be no prejudice to Plaintiff, as the report inherently addresses complaints made by individuals about Plaintiff's problematic behavior. However, any such prejudice does not substantially outweigh the probative value of the report, given (1) that the report serves as the underlying basis for the ultimate decision to non-renew Plaintiff; (2) Defendant's proffered use of the report; and (3) the stark difference between the issues addressed by the report and the issue at trial. As argued in Defendant's initial Motion, testimony or evidence that is adverse to the opposing

8

party does not establish prejudice that is unfair, warranting preclusion. *See United States v. Gelzer,* 50 F.3d 1133, 1139 (2d Cir. 1995) (internal quotation marks omitted); *see also United States v. Figueroa,* 618 F. 2d 934, 943 (2d Cir. 1980).

The Court also erred by not considering the effectiveness of a jury instruction to alleviate any concerns of prejudice. *See United States v. Garnes*, 102 F.4th 628, 642 (2d Cir. 2024) (finding the district court abused its discretion when preluding certain evidence from trial, in part, because the court failed to properly consider a limiting jury instruction as part of its Rule 403 analysis). "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403, Advisory Committee Notes (1972). The Court failed to consider the effectiveness of a jury instruction in this matter, which would limit the jury's use of the investigative report. It is not overly complex for, or beyond the reasonable expectation of, a jury to follow an instruction that jurors are to consider the investigative report only as evidence of what Defendant relied upon in making a determination on Plaintiff's employment and not to assume that any of its contents are true.

Because the Court failed to properly appreciate the purpose of the investigatory report, its contents, relation to the ultimate issue in this matter, and consider the effectiveness of a jury instruction, the determination that the report's probative value is substantially outweighed by the dangers of unfair prejudice and confusion of the issues is clear error. *See Garnes*, 102 F.4th at 642 (finding the district court abused its discretion when precluding evidence under Rule 403 and the trial court failed to properly consider the probative value and possible prejudice of evidence, as well as a jury instruction to limit any prejudice);*United States v. Dupree*, 706 F.3d 131, 138 (2d Cir. 2013) (holding that district court's failure to properly construe a party's proffer of evidence

9

when performing a Rule 403 balancing inquiry is error requiring the order be set aside). Therefore, the Court should reconsider Defendant's request to permit admission of the Title IX investigative report and allow Defendant to admit the report into evidence at trial.

### POINT II
### ALLOWING PLAINTIFF TO QUESTION CHANTELLE CLEARY ABOUT A PRIOR INSTANCE INVOLVING "SOME MISJUDGMENT" AND AN "UNFORTUNATE TONE" WOULD VIOLATE THE RULES OF EVIDENCE

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Similarly, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." *Id.* 404(b)(1). "The Rule 'prohibits the introduction of character evidence to show that an individual has a certain predisposition, and acted consistently with such predisposition during the event in question.'" *Allah v. Kemp*, 2024 WL 1740550, at *5 (N.D.N.Y. Apr. 23, 2024) (quoting *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 46 (N.D.N.Y. 2022)). On cross-examination, however, specific instances of a witness's conduct may be inquired into if they are probative of the character for truthfulness or untruthfulness. *Id.* 608(b). Instances of conduct are probative of a witness's character for truthfulness or untruthfulness when they involve dishonesty. *See, e.g.*, *Solano v. Aubin*, 2024 WL 418787, at *1 n.1 (N.D.N.Y Feb. 5, 2024) (recognizing that testimony of a prior lawsuit is not admissible under Rule 608(b) as probative of Defendant's character for truthfulness because the "underlying conduct does not involve dishonesty"); *United States v. Clanton*, 763 F. Supp. 3d 261, 267 (E.D.N.Y. 2025) ("None of the above conduct is probative of the witnesses' truthfulness or untruthfulness because none of the underlying conduct involves dishonesty.").

10

The Court's reserving on whether to allow Chantelle Botticelli to be impeached with the Appellate Division's findings that her prior conduct "indicated some misjudgment" and she used an "unfortunate tone" in a prior unrelated investigation is clear error. *See* Decision 10. There is no rule that would allow testimony of such conduct to come into evidence. Pursuant to Rule 403, testimony of those "wrongs", to the extent they can be considered wrongs, or "acts" is not admissible to prove Ms. Botticelli's character in order to show that may have acted that way in Plaintiff's investigation. *See* Fed. R. Evid. 403. Also, a court's hearsay opinion about one instance of alleged misjudgment and using an unfortunate tone of voice cannot be said to evidence Ms. Botticelli's character or any character trait, such that it would be admissible. *See id.* 404(a)(1). Additionally, specific instances of "some misjudgment" and using an "unfortunate tone" have nothing to do with dishonesty, and are, therefore, not probative of the witness's character for truthfulness or untruthfulness. *See id.* 608(b); *Solano*, 763 F. Supp. 3d at 267; *Clanton*, 763 F. Supp. 3d at 267. Finally, Ms. Botticelli's actions are not at issue in this case, so such evidence is completely irrelevant. *See id.* 401, 402. Thus, there is no legitimate reason to reserve decision on whether to allow impeachment of Ms. Botticelli on the foregoing issues, and the Court should preclude the evidence at the outset of trial. *See Walker v. Shult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) ("Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."). Because there currently exists no such reason to allow the impeachment, and the Court could change its ruling should the case unfold at trial in a matter permitting such impeachment, *see id.*, the Court should preclude it now.

## CONCLUSION

Pursuant to all the reasons set forth above, Defendant respectfully requests that this Honorable Court reconsider Defendant's Motion *in Limine*, and (1) permit Defendant to introduce the Title IX investigative report into evidence; and (2) preclude Plaintiff from attempting to

11

impeach a non-party witness about findings in an unrelated litigation that the witness's prior conduct "indicated some misjudgment" and she used an "unfortunate tone", and grant such other and further relief as the Court deems just and proper.

Dated: Albany, New York
June 12, 2025

        LETITIA JAMES
        New York State Attorney General
        Attorney for Defendant
        The Capitol
        Albany, New York 12224-0341


        By: _____
        David C. White
        Assistant Attorney General
        Bar Roll No. 700203
        Telephone: 518-776-2601
        Email: David.White@ag.ny.gov


        By: _____
        Matthew J. Gallagher
        Assistant Attorney General
        Bar Roll No.   701111
        Telephone: 518-776-2284
        Email: Matthew.Gallagher@ag.ny.gov

**To (via ECF):**
All counsel of record